Exhibit A-2

8/8/2024 7:28 AM
Velva L. Price
District Clerk
Travis County
D-1-GN-24-004894
Daniel Smith

D-1-GN-24-004894

Cause No. _____

| | | |
|---|---|---|
| JOHN DOE, a minor child, and | § | IN THE DISTRICT COURT |
| JAMES AND JANE DOE, as next friends, | § | |
| | § | |
| *Plaintiff,* | § | 459TH, DISTRICT COURT |
| | § | |
| v. | § | |
| | § | |
| EANES INDEPENDENT SCHOOL | § | _____ JUDICIAL DISTRICT |
| DISTRICT, and JEFF ARNETT, Ph.D., | § | |
| SUPERINTENDENT, KIMBERLY DEWRELL, | § | |
| AND CASSIE WINTER, IN THEIR | § | |
| OFFICIAL CAPACITIES, | § | |
| | § | |
| *Defendants.* | § | TRAVIS COUNTY, TEXAS |

## PLAINTIFF'S VERIFIED ORIGINAL PETITION AND APPLICATION FOR TEMPORARY RESTRAINING ORDER AND INJUNCTIVE RELIEF

## INTRODUCTION

Plaintiff John Doe, and his parents, Jane and James Doe,[1] file this Verified Original Petition and Application for Temporary Restraining Order and Injunctive Relief against Defendants, Eanes Independent School District ("EISD" or "Eanes"), EISD Superintendent Jeffrey Arnett, Ph.D., Kimberly Dewrell, principal of Hill Country Middle School ("HCMS," an Eanes school), and Cassie Winter, an assistant principal at HCMS (collectively, "Defendants" or the "District"). In response to a fight that occurred at the end of the last school year, the Defendants suspended John. After a woefully inadequate investigation that included Defendant Winter instructing students to destroy video evidence of the fight and events that occurred preceeding the fight, Defendants committed

---

1 The name of the plaintiff John is a pseudonym that is being used to protect the privacy of John and prevent further harm to him through disclosure of his actual name and the events described herein. The names of John's parents are also pseudonyms that are used to avoid facilitating identification of John and to protect their privacy.

John to a 45 day term in the Eanes Disciplinary Alternative Education Program ("DAEP") and expelled him from the District.

From virtually the beginning of the school's involvement in this situation, the District has failed to comply with the disciplinary policies adopted by the EISD Board of Trustees. The investigation HCMS and Defendant Winter conducted was incomplete and biased. Defendant Winter declined to consider evidence or interview the witnesses Jane and James presented that would have bolstered John's defense of his actions. The District expelled John, failing to follow state law and its own policies and procedures relating to an expulsion, failing even to notify John's parents that the district was even considering an expulsion.

This Original Petition seeks swift injunctive relief to prevent the Defendants from breaching their contractual obligations to abide by the terms and conditions set forth in the EISD Board of Trustees' publicly adopted policies, to prevent the Defendants from further violating John's constitutional rights, and to prevent John from suffering irreparable harm consequent to being removed from the school he has attended for two years, and being denied the opportunity to engage in extracurricular activities, most immediately playing football football for HCMS.

Finally, this Original Petition seeks redress for the District's breach of contract and violation of John's constitutional rights, as well as a judicial declaration from the Court that the District has failed to afford John the procedural safeguards described in its policies.

John appealed the District's initial decision and his appeal was denied. He has indicated his intent to appeal a second and final time, but there is insufficient time to complete that administrative remedy before football begins August 12, 2024 and school begins August 14, 2024.

The district asserts its decision was within the parameters of the existing policy and is supportable with the facts that were available at the time Defendants Winter and Dewrell made that decision.

## I.    THE PARTIES

1.    Plaintiff John Doe ("John") is a minor, who resides with his parents, Plaintiffs Jane Doe ("Jane") and James Doe ("James") in Austin, Texas. From August 2023 until May 31, 2024, John was a student enrolled in Hill County Middle School in Austin, Texas.

2.    Defendant Eanes Independent School District ("EISD") is a governmental unit, organized and existing under the laws of Texas. EISD's principal office is located at 601 Camp Craft Road, Austin, Texas. EISD oversees the operations of schools located within its geographical boundaries. An elected board of trustees governs the operation of EISD and is charged with the responsibility of creating policies that, among other matters, govern the conduct of students and sets forth disciplinary measures for violations of student conduct policies.

3.    Defendant Jeff Arnett is the Superintendent of EISD; as such Arnett serves as the chief executive officer of EISD. Arnett may be served with process and a copy of this lawsuit at his place of work, 601 Camp Craft Road, Austin, Texas, or wherever he may be found.

4.    Defendant Kimberly Dewrell is employed as the Principal of Hill County Middle School ("HCMS") a middle school within the boundaries of, and under the control of, EISD. Dewrell may be served with process and a copy of this lawsuit at her place of work, 1300 Walsh Tarlton Ln, Austin, TX, at the EISD administrative offices, 601 Camp Craft Road, Austin, Texas, or wherever she may be found.

5.      Defendant Cassie Winter is employed as an Assistant Principal of HCMS. Winter may be served with process and a copy of this lawsuit at her place of work, 1300 Walsh Tarlton Ln, Austin, TX, at the EISD administrative offices, 601 Camp Craft Road, Austin, Texas, or wherever she may be found.

## II.      DISCOVERY CONTROL PLAN AND RULE 47 STATEMENT

6.      Plaintiffs state this case should be conducted under Level III, Rule 190.4 of the Texas Rules of Civil Procedure and therefore request that an appropriate scheduling order be entered after all Defendants have appeared and answered herein.

7.      Plaintiffs further state that they seek injunctive relief and monetary relief in excess of $250,000.00, exclusive of attorneys' fees, costs, and interests.

## III.      JURISDICTION & VENUE

8.      The Court has subject-matter jurisdiction over this dispute because the claims and damages sought are within the jurisdictional limits of this Court. The Court has personal jurisdiction over this dispute because Plaintiffs and Defendants lives in Travis County.

9.      Venue is proper under Section 15.002 of the Texas Civil Practice and Remedies Code because all or a substantial portion of the events giving rise to the claims asserted in this lawsuit occurred in Travis County, Texas; and also under Section 65.023 of the Texas Civil Practice and Remedies Code because Plaintiffs seek injunctive relief against Defendants, all of whom are parties to this action in their official capacities as officials, agents and/or employees of Eanes ISD, which is a political subdivision of the State of Texas, wholly located inside the geographic boundaries of Travis County.

## IV.    FACTS COMMON TO ALL COUNTS

10.    Because Plaintiff John does not reside within the boundaries of EISD, he required EISD approval to attend school at HCMS. EISD granted John approval to attend HCMS as a transfer student for the 2022-2023, 2023-2024 and 2024-2025 school years.

11.    During the 2023 – 2024 school year, Plaintiff John was a student in the seventh grade at HCMS, where he had an outstanding record of academic achievement, participating in school sports and other academic extracurricular activites. At no time prior to the events described in this Complaint (which occurred at the end of the 2023-2024 school year) was John ever subject to school discipline, nor has he had any student conduct issues. To the contrary, John is a model student, as HCMS recognized when it presented him with a PAWS award for embodying the values of HCMS.

### A.    Student M.B.

12.    During the 2022-2023 and 2023-2024 school years, M.B.[2] was also a student at HCMS. M.B. was well-known to the Defendants as having behavioral and impulse control problems that manifested themselves in the form of conduct meriting disciplinary measures (but which behavior HCMS and EISD officials regularly ignored). This behavior included physical confrontations, provocative and racist comments and language, threats, and a general disrespect for other students and teachers. For example, in November of 2023 at school during school hours, M.B. entered a classroom where he was not scheduled or supposed to be and, without warning or provocation, pushed a desk over on another student resulting in the other student requiring

---

2 This Original Petition uses the initials of this student to help protect his privacy because he is a minor.

emergency room treatment and stitches in his face, leaving him with a permanent facial scar. M.B. received no punishment from the school for this behavior.

13.    Other HCMS students are afraid to walk down the hallway when M.B. is nearby and turn their backs to the wall when he passes to prevent him from pushing them in the back. M.B. has acted that way for two years and continues to act that way with impunity. M.B. makes racist comments to other students, referring to Black students as "monkeys." Despite the repugnant violation of school policy that comment represents, there is no evidence M.B. experienced any discipline or corrective actions.

14.    In addition, M.B. is known to be disruptive in class and to verbally assault teachers. In fact, on the morning of Thursday, May 23, 2024, M.B. verbally abused a Spanish teacher in front of other HCMS students. Moreover, upon information and belief, M.B. has a history of similar behavioral problems resulting in discipline while a student in California, a circumstance known to Defendants. Despite his lengthy history of foul-mouthed, racist, disruptive, verbally abusive and physically assaultive actions, Plaintiffs have been unable to identify *any* time that M.B. experienced school discipline, school-initiated corrective or restorative actions, or indeed, suffered *any* consequences for his behavior – including this occasion.[3]

_____

3 As detailed in this Original Petition, M.B. violated the Student Code of Conduct in ways that would require the school – at a minimum – place him in disciplinary alternative education. He was not. In truth, his repeated offensive behavior and violations could easily support expulsion proceedings, had HCMS and the District properly documented the incidents and followed the letter – or even the general spirit – of the Student Code of Conduct. As explained in susbsequent paragraphs, those are all unlikely events to occur. By all appearances, Eanes reserves removal of a child from classes and the school entirely, placement of that child in a disciplinary program, and then expulsion of that child from the District entirely to only a small set of qualifying students. Judging from the facts of this case, and to illustrate the absurdity of this situation with sarcasm, this school district will not even consider that level of punishment unless the offending student has an A+ average, has never been in trouble before, is respectful to teachers and students, and is well liked. Even then, the offending action must be minor.

B. **Events Precipitating This Lawsuit**

15.     According to Defendant Winter, on Thursday May 23, 2024, M.B. admitted that he punched John on the preceding Monday, May 20, 2024 while the two boys were in the locker room at HCMS.

16.     Defendant Winter knew that on Wednesday, May 22, 2024, during the first class period of school while the students were left unsupervised by any teachers or other HCMS personnel, M.B. again attacked John, punching him in the face five times rapidly, breaking his glasses and injuring his face. John did not retaliate or otherwise engage M.B. The impetus for this was that immediately preceding this incident, M.B. had slammed a school door shut, causing the door to lock and preventing other students from entering through the door. M.B. refused to open the door for other students, but instead taunted those who were trying to use the door, hurling insults and other forms of verbal abuse.

17.     Also on Wednesday, May 22, 2024, during the second class period at school, M.B. sought John out in the back of the classroom and verbally threatened him, demanding he not tell an adult about the attack during first period.

18.     On Thursday, May 23, 2024, M.B. verbally harassed John, repeatedly calling him "a pussy." On the same day, M.B. verbally harassed two other HCMS students, leading to talk among students that there was going to be a fight between M.B. and the two other students. Also earlier in the day on May 23, 2024, M.B. verbally abused a Spanish teacher in front of other HCMS students.

19.     At approximately 4:00 p.m. on May 23, 2024, as they left school for the day, dozens of students noisily made their way through a crowed corridor; some of the students were yelling and cursing. No teachers or other HCMS personnel were present to supervise the students or to

prevent the rowdy conduct from continuing. In addition, even though the school has cameras in all hallways that are streamed live into the school administration's office and monitored continuously, no attempt was made to intervene in the rowdy conduct.

20.    John was among the students in the corridor walking behind the two students who supposedly were going to be involved in a fight with M.B.. As the students proceeded down the corridor, M.B. again began calling John a "pussy," threatened John and demanded to fight him and not the other two students who were walking ahead of John. At one point, M.B. stopped, turned around and yelled words to the effect of, "y'all are a bunch of pussies. I want to fight John. I want to fight John alone." Another student can be heard to say, "he's going to jump him! He's going to jump him!" John had not planned to be in a fight but was propelled to the forefront.

21.    The fight apparently had been at least partially organized, and fully prepared for, by M.B. As M.B. and John stood outside the school trying to figure out what was going to happen next, an older student, Dan LNU, approached M.B. and told him urgently in his ear, "I can't do shit! I can't do shit!" M.B. had recruited Dan LNU to provide back up support and jump in to beat John; the presence of John's friends stopped him.

22.    A fight ensued between M.B. and John. The fight ended 26 seconds after it started without any injury of moment to either M.B. or John.[4]

23.    Although the fight on May 23, 2024, ended shortly after it started, M.B.'s taunts to John did not. A short time after the fight ended, M.B. sent a text message to John, telling him, "Yo. You and me only. No one else around. Lets run it again."

---

[4] A number of student made video recordings of the fight existed until all were destroyed at the direction of defendant Winter. The available videos appear to show John dominating the fight, although M.B. walked away with a bloody nose and John walked away with a bruised eye.

**C.    John's Suspension from HCMS**

24.    On May 23, 2024, *less than one hour after the incident at school*, Defendant Winter called Jane to inform her that HCMS had decided to suspend John for his participation in the May 23 incident.

25.    HCMS' decision to suspend John was made without any meaningful investigation, with little or no evidence to support the suspension, without examining any evidence regarding the cause of the incident, without any investigation into John's exemplary performance and history as a student at HCMS and without any opportunity for the Plaintiffs to examine the evidence on which the suspension was based or to present any evidence of their own.

26.    Upon information and belief, the school did not suspend M.B.

**D.    The Sham Meeting of May 31, 2024**

27.    Beginning shortly after the May 23 incident, Plaintiffs Jane and James repeatedly sent notes to Defendant Winter (who was the school assistant principal in charge of investigating this matter and recommending whether the school should take action and if so, what action), requesting a meeting to discuss the incident and the events leading up to it.

28.    Eventually, Defendant Winter responded one time to all the notes Jane and James sent, informing them she would speak with them in due course as part of the school's ongoing, thorough investigation.

29.    Defendants Winter and Dewrell eventually summoned John's parents to a meeting at HCMS on May 31, 2024, to discuss the events that occurred during the week of May 20 (recall Defendant Winter, with the approval of Defedant Dewrell, had had already suspended John from HCMS).

30.     Plaintiffs Jane and James and Defendants Winter and Dewrell attended the May 31 meeting. Jane and James welcomed the opportunity to discuss the May 23 incident, the events preceding it, and a path forward. Jane and James did not know it, but this was not going to be that kind of meeting. Prior to extending the invitation to meet, Winter and Dewrell, with the approval of EISD Defendant Superintendent Arnett, had already decided that John committed an "assault"[5] on M.B. that warranted suspension and the additional extreme disciplinary measures discussed below.[6] Jane and James had never been afforded the opportunity to present a "case" to Defendant Winter, and Winter never advised them John was at risk of severe discipline and/or expulsion, let alone that just such a decision had already been made.

31.     Superintendent Arnett's involvement in the investigation and decision to discipline John was entirely inappropriate because under EISD policies, the Superintendent or his designee is required to consider the merits of an appeal filed by an aggrieved student. Arnett's involvement in or approval of the decision to punish John assured any administrative appeal by the Plaintiffs would be futile.

32.     Winter and Dewrell informed Jane and James of the discipline that John would face near the end of the May 31 meeting, after asking a series of questions which, in retrospect, seemed to be designed to obtain admissions or confirmation the already-made decision was correct. Despite

---

5 EISD's 2023-24 Student Code of Conduct ("SCOC") defines "assault" as "[f]or discipline purposes, intentionally, knowingly, or recklessly causing bodily injury to another." In turn, the Student Code of Conduct defines "bodily injury" this way: "[p]hysical pain, illness, or impairment of a physical condition." Exhibit A, p. 40.

6 The choice Defendants Winter and Dewrell made to classify this incident as an "assault" is significant. It also could have been considered "fighting," which the student code of conduct defines as: "[t]wo or more persons engaged in any mutually violent or physically aggressive contact toward each other, such as scuffling, pushing, shoving, or hitting." Exhibit A, p. 42. The difference between an assault and a fight is that an assault carries a mandatory period in a disciplinary alternative education program, which in turn triggers revocation of a student's transfer into EISD. Exhibit A, p. 23.

promising a "thorough" investigation, the Defendants, each of them, conducted or accepted the conclusions of an investigation that was rushed, unbalanced, incomplete, highly discriminatory against John, performed in violation of nearly every recognized investigative technique, and had an outcome preordained. At no time during the "thorough" investigation did any defendant provide John with an opportunity to present his explanation of what occurred during the week of May 20. Yet during that investigation, as Jane and James continued to send emails to Defendant Winter in unsuccessful efforts to have a direct, in-person discussion, M.B. and his parents had a surfeit of opportunity to get M.B.'s version of what occurred in front of decision-makers, including the day after the incident, when they appeared uninvited at HCMS with their attorney to demand the school take action against John.

33.    Neither did any defendant attempt to hear from other witnesses who supported John's version of the events that occurred during the week of May 20, culminating in the incident of May 23. The HCMS investigation, such as it was, was so untrained, so incomplete, and so inept that it embarrasses use of the word. Conducted primarily by Defendant Winter, there are no contemporaneous notes from interviews she conducted of any witness. There are no recorded interviews. There are no post–interview summaries. No statements from any witness are signed. There is no investigative report. There are no indications of what interviews Defendant Winter conducted. There is no list of witnesses. There is no list of student-made video recordings or audio recordings, nor is there any description of what those videos contained. There is no information about events that contributed to causing the conflict to occur. There is no discussion of the assault

M.B. committed against John the day before.[7] There is no memorialization of information favorable

to John – not a single mention.[8]

34.    At the meeting on May 31, Jane and James presented video evidence (with

accompanying audio) – evidence that confirmed M.B.'s taunts, name-calling, and his demand to

fight John and threats precipitating the May 23 incident. Winter and Dewrell admitted during the

meeting they had not seen this evidence, even though they had already decided that John needed

to be punished. Neither Defendant Winter nor Defendant Dewrell asked for a copy of the video

John's parents had, nor did they express any interest in it or it]s potential implications for the

"investigation" they had completed and the decision they had made. And, although John's parents

offered to provide the video evidence – and other exculpatory evidence as well – to Winter and

Dewrell, neither Defendant requested any evidence of any type that the Plaintiffs had and that

Jane and James had mentioned at the May 31 meeting. The highest levels of EISD and HCMS

made, approved and finalized the decision to discipline John before the meeting, instigated by

M.B.'s parents and lawyer the morning after the incident. John was tried and convicted by the

Defendants without any opportunity to be heard making the May 31 meeting a complete sham,

---

7 Tellingly, however, Defendant Winter did make reference to the Wednesday AM altercation between John and
M.B. in John's permanent school discipline file. Her entry reads, "Student [John] pushed another student 3 times. A
fight of pushing and punching between the two students continued for approximately 15 seconds." Defendant Winter's
description of the altercation between John and M. B. Wednesday morning is so inaccurate and so one-sided, it defies
explanation – other than intentional misrepresentation. That "fight" (according to Defendant Winter, not an
"assault") resulted in John suffering broken glasses, bruising, and a cut on his nose after M. B. struck him five times in
the face. John never hit back.

8 For any mandatory or discretionary disciplinary consequence, including DAEP placement or expulsion, the SCOC
requires the District consider various mitigating factors, including self-defense, the student's intent or lack of intent at
the time of the conduct, and the student's disciplinary history. The SCOC also mandates that "using their professional
judgment, employees shall also consider a variety of factors when administering all disciplinary consequences and
determining the duration of the consequence, including, but not limited to: the degree of severity and risk of danger;
the effective the misconduct; frequency of the misconduct; the agent grade level of the student; and the students
demeanor. Exhibit A, p. 10. There is no evidence or indication, defendants, any of them, gave any thought to these
mandatory considerations.

held for the sole purpose of pretending to create some semblance of due process when in fact due process was totally denied.

35.    Indeed, in correspondence sent to Jane and James on May 31, 2024, immediately following the meeting held on that day, Winter tacitly acknowledged the denial of due process to John when she wrote that the decision to discipline John "was made based solely on the evidence presented" – *i.e.*, without offering the Plaintiffs any opportunity to present their evidence or to examine all evidence that Defendants now claim supported their decision to impose the severest disciplinary measures on John.

36.    Winter and Dewrell have a track record of severely disciplining students without any opportunity to be heard in violation of EISD policies and due process. They suspended least a dozen students during the 2023-2024 school year without the student and his or her parents having an opportunity to be heard on the issue. In addition, Winter and Dewrell are either not aware of or are negligently mismanaging student behavioral problems at HCMS, forcing students like John into a no-win position where they cannot rely on HCMS administrators and must deal with bullying threats on their own, but then face the ridiculously high penalties out of their depth administrators consider reasonable. For example, Dewrell admitted to it being "embarrassing" that she and Winter did not know about the Wednesday, May 22, 2024 fight where M.B. attacked John. Furthermore, the next day, they allowed the hallways of the school to be completely unsupervised. Winter admitted that immediately before, during and after at least eighth period there are no teachers in one section of the school, even though students are in that area and it is highly trafficked, because the teachers with classrooms in that area are in the gym teaching physical education. Dewrell also admitted that there is an issue with the "culture" that needs to be "reshaped," a cultural which has developed under her supervision and control.

37.     Compounding the "culture" concerns Defendant Dewrell noted, after failing to identify or simply ignoring problem behavior in M.B. and consequently creating the environment that led to the physical confrontation between John and M.B., HCMS then exacted the greatest possible punishment on John, with the greatest possible consequences.

**E.   The Punishment**

38.     At the conclusion of the May 31 meeting, Defendants Winter and Dewrell informed Jane and James that John's punishment would take two forms in addition to the suspension that John already was serving: (i) John must serve 45 days in a Disciplinary Alternative Education Program ("DAEP"). The referral to DAEP means John will be banned from the HCMS campus while in DAEP and will be denied access to school premises, activities, extra-curricular activites and resources, including full-time, in-person instruction from teachers. Instead, John's schooling during the 45 day DAEP referral period will consist of receiving assignments through Google Classroom software and occasional Zoom conferences with teachers, which Winter said usually take place once or twice a week.

39.     John won't have to worry about any of that at an Eanes school, however. Because Eanes views its own imposition of DAEP as a good indication of future trouble, (even for a student who has – literally – never had a disciplinary event in school before and is a credit to the school district in every measurable way, and even when the District's DAEP decision is wrong procedurally, legally, situationally and morally), EISD also revoked its acceptance of John's inter-district transfer that enabled John to attend HCMS. , expelling him from HCMS (and all other schools within the boundaries of EISD).

40.     Then, contrary to the reassurances EISD gave to Jane and James that John was not being expelled and that nothing about this disciplinary matter would remain on John's permanent

academic record, Defendant Winter did just that – *she expelled John*. Even a cursory review of John's school discipline record shows Defendant Winter, with the incompetence, malevolence and/or weakness in the face of external threats and pressure that characterized the remainder of her involvement in this incident, expelled John. A copy of John's discipline record is attached, marked Exhibit B and incorporated for all purposes.  Further, she added a code to his disciplinary record (a record unavailable to parents online) that indicates John is in an alternative program to address behavioral problems. He is not. *See* Exhibit B and the corresponding code list in Exhibit C, the Discipline Manual at p. 10. The expulsion and related comments will be available for anyone with access to John's academic and discipline records (other K-12 schools, for example, or colleges) to review.

41.    John does need to worry about DAEP elsewhere, though, beginning August 14, 2024. Although he will not be able to attend the school he has attended for two years and where his friends – all of them – go, and will not play football for the team he has worked for two years to lead -- Defendant Dewrell made sure Jane and James knew their son would have to spend 45 days in DAEP at any public school in the state.[9] The bad decisions made by Eanes will follow John everywhere.

42.    HCMS and EISD confirmed the decision to refer John to DAEP in two letters from Winter to Jane and James. Both letters were dated May 31, 2024 and Winter sent them by email immediately upon concluding the meeting on that date, further confirming Defendants made the

---

9 Winter later joined that part of the conversation, confusing the maximum DAEP placement for an assault (120 days) with an incorrect mandatory minimum. That resulted in her erroneously stating the school had generously reduced John's "mandatory" 120 day DAEP commitment to 45 days, in recognition of his PAWS award. This, again, was untrue. She and Defendant Winter imposed 45 days, but there was no minimum and they could have done as little as nothing, They also could have avoided this situation altogether, or at least recognized their role in creating an environment where it could occur and refused to make a 12 year-old boy pay the price for their errors.

decision to discipline John and cast it in iron before Winter and Dewrell met with Jane and John. Jeremy Trimble, Assistant Superintendent of EISD who previously accepted John's inter-district transfer for the 2024-25 academic year on May 24, 2024, confirmed the decision to deny John's transfer to EISD in a letter – also dated May 31, 2024.

43.     Following notice to EISD that Plaintiffs intended to appeal the decision of Winter and Dewrell, Plaintiff Jane received phone call from the HCMS safety officer, who stated multiple times Plaintiff John could go to jail for assault. When Jane asked if Winter or Dewrell had notified him of the assault by M.B. on the other HCMS student with the desk in November 2023, he responded that they had not. He also stated that neither Winter nor Dewrell notified him that M.B. admitted to punching Plaintiff John on Monday May 20, 2024. He stated no one advised him of the connection between the fight Wednesday morning and the one Thursday after school. Neither was he aware of M.B.'s behavioral problems, including fights, provocative and racist comments and language, threats, and a general disrespect for other students and teachers, nor had anybody advised him of M. B.'s history and propensity for violence and offensive behavior, extending as far back to the time he lived in and was a student in California.

44.     Plaintiffs appealed according to EISD policy and an appeal hearing occurred on July 29, 2024. Plaintiffs must comply with the EISD discipline plan while an appeal is pending, and there is no certainty that appeal will be successful. That is particularly true in this circumstance, given Defendant Superintendent Arnett's unhesitating but uninformed support for the DAEP commitment and expulsion ordered by Defendants Winter and Dewrell. The harm John will suffer, apart from EISD's insults to the rights he is guaranteed by the U.S. Constitution, will accrue on Monday, August 12th when he cannot play football and someone else will take his place, and on

Wednesday, August 14th, when his first day of school will be in a small cubicle, exposed to far more risk than he has ever seen, taught by a computer application.

45.     All of this harm will accrue because Defendants rushed to complete a deficient investigation, destroyed evidence, refused to acknowledge any possibility they erred, trampled John's Constitutional rights, and used the fatally flawed, biased investigation to support a decision they had made within an hour of the incident happening.

## CLAIMS AGAINST ALL DEFENDANTS

### CLAIM I
### BREACH OF CONTRACT

46.     The Eanes ISD Board of Trustees has adopted policies governing all major aspects of student life within the EISD education delivery system. Among those policies is the Student Code of Conduct. The SCOC sets out behavioral expectations EISD has of students, and it also sets out the procedures the District will follow should it need to enforce its policies and/or impose discipline on a student.

47.     By conditioning the District's acceptance of John as an inter-district transfer student on John's agreement to comply with the District's policies, EISD made the those policies – including the SCOC – a valid and enforceable agreement between it and Plaintiffs. More specifically, the SCOC contains the following provisions:

    a.    *All Eanes ISD students are entitled to basic rights of citizenship, recognizing protected by law for persons of their age and maturity.* (Exibiit A, p. 4)

    b.    *When deciding to order any mandatory or discretionary disciplinary, consequence, including, but not limited to, out of school, suspension, DAEP placement, expulsion or placement in a JJAEP of a student, the district shall consider:*

        1.  *Self-defense;*

        2.  *The student's intent for lack of intent, at the time of the conduct;*

3.  *The student's disciplinary history….* (Exhibit A, p. 10).

c.  *[u]sing their professional judgment, district employee shall also consider a variety of factors when administering all disciplinary consequences and determining the duration of the consequence, including, but not limited to:*

> *the degree of severity and the risk of danger;*

> *the effect of the misconduct;*

> *the frequency of the misconduct;*

> *the age and grade level of the student;*

> *the student's demeanor…."* (Exhibit A, p. 10).

d.  *Discipline is designed to improve conduct, correct student behavior, and encourage students to adhere to their responsibilities as members of the school community. Disciplinary action shall draw on the professional judgment of teachers and administrators, and on a range of discipline management techniques, including restorative practices.* (Exhibit A, p. 10).

e.  *No later than three school days after the students removed from class, the campus behavior coordinator/appropriate administrator will schedule a conference with the administrator, the students parent/guardian and the student. At the conference, the administrator shall inform the student, orally or in writing, of the reasons for the removal, so give the student an explanation of the basis for the proposed DAEP placement, and give the student an opportunity to respond to the reasons for the removal.* (Exhibit A, p. 26)

f.  *If the outcome of the conference is to place a student in DAEP, the administrator will issue a DAEP placement order….* (Exhibit A, p. 26).

g.  *The length of a student's placement in DAEP will be determined on a case by case basis, using the criteria identified in the discipline consideration section of this* [SCOC].

h.  *Mandatory DAEP placements may result in placement for up to 120 school days. Discretionary DAEP placements may result in placement for up to 60 school days.* (Exhibit A, p. 27).

i.  *For DAEP placement to extend beyond the end of the school year, the administrator must determine that: (1) the student bus has presents in the regular classroom or campus presents a dangerous physical harm to the student or others; (2) the student has engaged in serious or persistent misbehavior… that violates the* [SCOC].

j.    *The decision of the Superintendent or designee at level two [appeal] his final and may not be appealed.* (Exhibit A, p. 28).

<u>*REASONS FOR DISCRETIONARY EXPULSION*</u>

*School-Related. A student may be expelled for any of the following offenses that occur on school property, within 300 feet of school property or while attending a school – sponsored or school – related activity on off school property:*

➤ *Commit an assault, resulting in bodily injury to a school employee or volunteer.*

➤ *Engages in deadly conduct.*

➤ *Engages in a second or multiple infraction(s) that are reasons for mandatory DAEP placement.* (Exhibit A, p. 34).

48.    Further, Eanes School Board Policy FOD discusses the procedure for and procedural safeguards in expulsion cases. In relevant part, that policy states:

Before a student may be expelled, a board or its designee shall provide the student a hearing at which the student is afforded appropriate due process as required by the federal constitution and which the student's parent or guardian is invited, in writing, to attend. *Education Code 37.009(f)*

The minimum procedural requirements necessary to satisfy due process depend upon the circumstances and the interests of the parties involved. Federal due process requires notice and some opportunity for hearing.

*Notice*

The notice should contain a statement of the specific charges and grounds that, if proven, would justify expulsion. In some cases, the student should be given the names of the witnesses against him or her and an oral or written report on the facts to which each witness testifies.

*Hearing*

The rights of the student may properly be determined upon the hearsay evidence of school administrators who investigate disciplinary infractions.

[See also *Brewer v. Austin Indep. Sch. Dist.*, 779 F.2d 260 (5th Cir. 1985); *Keough v. Tate Cnty. Bd. of Educ.*, 748 F.2d 1077 (5th Cir. 1984); *McClain v. Lafayette Cnty. Sch. Bd. of Educ.*, 673 F.2d 106 (5th Cir. 1982); *Tasby v. Estes*, 643 F.2d 1103 (5th Cir. 1981); *Boykins v. Fairfield Bd. of Educ.*, 492 F.2d 697 (5th Cir. 1974), cert.

denied, 420 US 962 (1975); *Dixon v. Alabama State Bd. of Educ.*, 294 F.2d 150 (5th Cir. 1961), cert. denied, 368 U.S. 930 (1961)]

*Representative*

At the hearing, the student is entitled to be represented by the student's parent, guardian, or another adult who can provide guidance to the student and who is not an employee of the district. If a district makes a good-faith effort to inform the student and the student's parent or guardian of the time and place of the hearing, the district may hold the hearing regardless of whether the student, the student's parent or guardian, or another adult representing the student attends.

*Mitigating Factors Before Ordering Expulsion*

Before ordering the expulsion of a student, the board or the board's designee must consider whether the student acted in self-defense, the intent or lack of intent at the time the student engaged in the conduct, the student's disciplinary history, and whether the student has a disability that substantially impairs the student's capacity to appreciate the wrongfulness of the student's conduct, regardless of whether the decision of the board concerns a mandatory or discretionary action. [See Student Code of Conduct, item 4, at FO(LEGAL) for additional mitigating factors.]

*Appeal*

If the decision to expel a student is made by the board's designee, the decision may be appealed to the board. The decision of the board may be appealed by trial de novo to a district court of the county in which the district's central administrative office is located.

*Education Code 37.009(f)*

**I. Term of Expulsion**

If the period of expulsion is inconsistent with the guidelines on length of expulsion in the Student Code of Conduct, the order must give notice of the inconsistency.

Beyond One Year

The period of expulsion may not exceed one year unless a district determines that:

1. The student is a threat to the safety of other students or to district employees; or

2. Extended placement is in the best interest of the student.

*Education Code 37.009(h).*

49.     Defendants expelled John impermissibly; the offense they used as a basis for his expulsion is not an expellable offense, either under the District's mandatory or discretionary authority.

50.     Defendants expelled John without following their own procedures for notice, hearing, permitting a representative, considering mitigating factors, appeal and assessing a term of expulsion, thereby denying him due process and equal protection of law, and breaching the contract EISD has with all students who must agree to abide by the District's policies.

51.     Plaintiffs have fully performed their obligations under the EISD policies.

52.     As set forth above, Defendants have breached their duties under the EISD-adopted policies, specifically, but not exclusively or limited to: failing to conduct a proper investigation, ordering the destruction of evidence, failing to interview witnesses, failing to provide meaningful due process, failing to ensure equal application and protection of the law, failing to follow processes and procedures described in and guaranteed by EISD Board of Trustees' adopted policies, and imposing punishment impermissible under the SCOC.

53.     As a result of EISD's breach, Plaintiffs have sustained and will continue to sustain irreparable harm, as well as actual, special, and consequential damages.

54.     Plaintiffs are entitled to and do seek injunctive relief restraining the Eanes Independent School District from further violating their own policies and procedures, as more fully described in this Original Petition and Application.

## CLAIM II

### Declaratory Relief

55.     Section 37.002 of the Texas Civil Practices and Remedies Code states that the purpose of the Declaratory Judgment Act is remedial. It is to settle and to afford relief from

uncertainty and insecurity with respect to rights, status, and other legal relations. It is to be liberally construed and administered. Section 37.004 further states it applies to a person interested under a deed, will, written contract, or other writings constituting a contract or whose rights, status, or other legal relations are affected by a statute, municipal ordinance, contract, or franchise may have determined any question of construction or validity arising under the instrument, statute, ordinance, contract, or franchise and obtain a declaration of rights, status, or other legal relations thereunder.

56.    Justifiable controversies exist between Plaintiffs and Defendants.

57.    For the foregoing reasons explained above, Plaintiffs seek a judicial declaration that EISD failed to follow state law and its own policies when it investigated this event, imposed discipline on and expelled John.

## CLAIM III

### Violation of 42 U.S.C §1983 (Deprivation of Property Rights Guaranteed by the Fourteenth Amendment to the United States Constitution)

58.    Plaintiffs reallege and incorporate herein by reference each allegation contained in the preceding paragraphs of this Complaint.

59.    As a student in a public school system, John has a property interest in a public education that is protected by the Due Process Clause of the Fourteenth Amendment to the United States Constitution.

60.    Defendants, individually and collectively, acting in their official capacities as employees, administrators, representatives or agents of EISD or HCMS, or both, violated John's entitlement to due process by (i) immediately suspending John from school, (2) ordering his referral

to DAEP, and (3) terminating his transfer to HCMS, effectively expelling John from HCMS (collectively, the "Disciplinary Measures").

61.     *At a minimum*, the Due Process Clause required the Defendants to provide John with notice of any alleged wrongful conduct and an opportunity to be heard. Defendants not only failed to comply with this most basic requirement of due process, but further violated John's right to due process and his constitutionally protected property right in a public education by failing to:

a.     Conduct any meaningful investigation into whether the discipline was warranted, in violation of federal and state constitutional protections, and in violation of published, EISD policies, and procedure guarantees;

b.     Prepare and maintain records of interviews and other investigative actions, such as contemporaneous interview notes, interview summaries, an investigative report, a list of audio and/or visual recordings, and records relating to aggravating/mitigating factors;

c.     Preserve evidence, relevant or potentially relevant to Jon's defense coming, including, but not limited to, ordering the destruction of audio/visual recordings, failing to provide written, contemporaneous interview notes and/or summaries of interviews to John;

d.     Interview witnesses who could provide exculpatory information, the identities of whom John provided to Defendant Winter through his parents;

e.     Provide the written, contemporaneous interview notes and/or summaries of interviews Defendant Winter and Defendant Dewrell conducted that were exculpatory or that conflicted in someway with the school – approved version of what happened;

f.     Provide John with an opportunity to examine the evidence, if any, that the Defendants had collected to support the Disciplinary Measures;

g.     Provide John with an opportunity to present evidence that would establish the arbitrary nature of the suspension and establish that suspension was not appropriate under all of the circumstances; the failure to provide John with an opportunity to be heard was particularly egregious in that Defendants allowed M.B. to be heard, thereby assuring that the Disciplinary Measures would be imposed on a record that was woefully inadequate and unequivocally biased;

      h.     Examine or consider John's excellent record of achievement at HCMS and the lack of any prior events warranting discipline, or indeed, examine or consider any factor mitigating against DAEP and effective expulsion from EISD;

      i.     Protect John from the willful misconduct of M.B., whom Defendants knew had a history of threats, violence toward others, taunting, disrespect for students and teachers, and other forms of misconduct;

      j.     Supervise M.B., thereby enabling his ongoing wrongful conduct, including M.B.'s role in instigating the misconduct that occurred during the week of May 20, 2024;

each of these enumerated acts being in violation of federal and state constitutional protections, and in violation of published EISD policies and procedure guarantees.

62.     Defendants expelled John without following their own procedures for notice, hearing, permitting a representative, considering mitigating factors, appeal and assessing a term of expulsion, thereby denying him due process and equal protection of law, and breaching the contract EISD has with all students who must agree to abide by the District's policies.

63.     Further, Defendants expelled John impermissibly; the offense they used as a basis for his expulsion is not an expellable offense, either under the District's mandatory or discretionary authority.

64.     Defendants expelled John without following their own procedures for notice, hearing, permitting a representative, considering mitigating factors, appeal and assessing a term of expulsion, thereby denying him due process and equal protection of law, and breaching the contract EISD has with all students who must agree to abide by the District's policies.

65.     In imposing the Disciplinary Measures contrary to John's due process rights, Defendants violated the provisions of 42 U.S.C. §1983, which prohibis them from subjecting John "to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws[.]"

66.     As a direct and proximate cause of the Defendants' deprivation of John's property right to a public education and his right to due process,

67.     John has suffered damage to his reputation, honor, and integrity; suffered physical injuries and damages; will suffer social disadvantage; will be jeopardized in future efforts to obtain educational, employment and other opportunities; and was otherwise harmed.

68.     James and Jane have incurred damages in the form (among others) of medical care for John arising from the events described herein, lost earnings from the time it is taking them to assert and defend John's constitutional and legal rights, legal fees, and will likely incur additional damages for each of those areas in the future.

## CLAIM III

### Violation of 42 U.S.C §1983 (Deprivation of Liberty Interests Guaranteed by the Fourteenth Amendment to the United States Constitution)

69.     Plaintiffs reallege and incorporate herein by reference each allegation contained in the preceding paragraphs of this Complaint.

70.     Separately from the protected right to a public education, the Due Process Clause of the Fourteenth Amendment to the United States Constitution also proscribes the arbitrary deprivation of liberty.

71.     Like their deprivation of John's property right in a public education and their resulting violation of the Due Process Clause, Defendants deprived John of his right to liberty, and thereby violated the Due Process Clause through the conduct alleged in Claim I, which is incorporated herein by reference.

72.     By imposing the Disciplinary Measures contrary to John's right to liberty protected under the Due Process Clause, Defendants, acting in their official capacities as employees,

administrators, representatives or agents of EISD or HCMS, or both, violated the provisions of 42 U.S.C. § 1983.

73.     As a direct and proximate cause of the Defendants' deprivation of John's right to liberty and his entitlement to due process,

74.     John has suffered damage to his reputation, honor, and integrity; suffered physical injuries and damages; will be jeopardized in future efforts to obtain educational, employment and other opportunities; will suffer social stigma and the loss of friends and social support, and was otherwise harmed.

75.     James and Jane have incurred damages in the form of medical care for John arising from the events described herein, lost earnings from the time it is taking them to assert and defend John's constitutional and legal rights, legal fees, and will likely incur additional damages for each of those areas in the future.

## CLAIM IV

### Violation of 42 U.S.C §1983 (Failure to Supervise M.B. and Protect Students, Including John)

76.     Plaintiffs reallege and incorporate herein by reference each allegation contained in the preceding paragraphs of this Complaint.

77.     The Defendants, who, at all times material to this Claim, were acting in their official capacities as school administrators, agents or representatives, owed students in their schools an obligation to protect against foreseeable harm.

78.     John has a substantive due process right to bodily integrity.

79.     M.B. repeatedly engaged in conduct that exhibited serious behavioral problems (see, e.g., para. 8. M.B.'s history of inappropriate conduct in both HCMS and a school in California

included physical violence toward other students. This history predated the events of the week of May 20, 2024 described above. For example, an incident that occurred in November 2023, resulted in M.B.'s victim sustaining serious injuries that required medical attention in a hospital emergency room.

80.     Through formal and informal reports regarding M.B.'s conduct and their personal observations, the Defendants were well aware of M.B.'s behavioral issues, including his history of violence to other students, before the events that occurred during the week of May 20, 2024.

81.     The Defendants' knowledge of M.B.'s behavior problems, including his propensity for causing bodily harm, made the incidents during the week of May 20, 2024 (described above; see, e.g., par. 9-17) foreseeable and alerted the Defendants to the real possibility that M.B.'s physical violence would continue if the Defendants did not take measures to protect students and carefully monitor M.B.'s activities.

82.     Notwithstanding their knowledge that M.B. had serious behavioral problems, the Defendants rarely, if ever, disciplined M.B. (or disciplined him with negligible sanctions) and turned a blind eye to the harm he was causing, thereby increasing the risk that he would continue to cause harm.

83.     Under the circumstances described above, the Defendants had an obligation to protect students, specifically including John, from the ongoing threat of harm caused by M.B. Defendants had the accompanying obligation to closely monitor M.B.'s conduct to minimize the continued risk that M.B. posed. Defendants failed to meet these obligations through their deliberate indifference to the risk of harm that M.B. presented.

84.     By failing to protect John and to monitor M.B.'s conduct, Defendants exposed students, including John, to the risks of violence that M.B. presented and violated John's

substantive due process right to bodily integrity in contravention of the Fourteenth Amendment of the United States Constitution.

85.     The bodily injury and damages sustained by John when M.B. accosted him during the week of May 20, 2024, were proximately caused by Defendants' deliberate indifference to the risks presented by M.B.'s conduct and their violation of John's due process right to bodily integrity.

86.     As a direct and proximate result of Defendants' denial of John's right to due process, John has suffered damage to his reputation, honor, and integrity; suffered physical injuries and damages; will be jeopardized in future efforts to obtain educational, employment and other opportunities; will suffer social stigma and the loss of friends and social support, and was otherwise harmed.

87.     James and Jane have incurred damages in the form of medical care for John arising from the events described herein, lost earnings from the time it is taking them to assert and defend John's constitutional and legal rights, legal fees, and will likely incur additional damages for each of those areas in the future.

## CLAIM V

### Violation of 42 U.S.C §1983 (Denial Of Equal Protection Under The Fourteenth Amendment To The United States Constitution)

88.     Plaintiffs reallege and incorporate herein by reference all prior allegations contained in this Complaint.

89.     The Fourteenth Amendment to the United States Constitution prohibits states from "deny[ing] to any person within its jurisdiction the equal protection of the laws." To comply with the Equal Protection Clause, a governing body must treat an individual in the same manner as others who are similarly situated.

90.     The Defendants have a history of either excusing M.B.'s conduct when it warranted discipline or providing discipline that ignored the severity of his conduct. For example, M.B. was not expelled from HCMS following the November 2023 incident described above. Nor was he expelled from HCMS for his involvement in incidents that occurred during the week of May 20, 2024. Upon information and belief, M.B. suffered no disciplinary consequences whatsoever for any of his actions.

91.     By the Defendants' order to revoke John's transfer rights, the Defendants have effectively permanently expelled John from HCMS and EISD, despite John's record of scholastic achievement, his lack of any disciplinary history, and his recognition by HCMS that John embodies the values of HCMS and EISD.

92.     By expelling John for his involvement in the incident on May 23, 2024, but not M.B. despite his history of wrongful conduct (which includes violence), the Defendants have treated John and M.B. disparately. The imbalanced punishment meted out by Defendants deprives John of his right to equal protection, as contemplated by the Fourteenth Amendment.

93.     By expelling John,, but not M.B., contrary to John's right to equal protection under the Fourteenth Amendment, Defendants, acting in their official capacities as employees, administrators, representatives or agents of EISD or HCMS, or both, violated the provisions of 42 U.S.C. §1983.

94.     As a direct and proximate cause of the Defendants' deprivation of John's right to equal protection:

      a.     John has suffered damage to his reputation, honor, and integrity; suffered physical injuries and damages; will be jeopardized in future efforts to obtain educational, employment and other opportunities; will suffer social stigma and the loss of friends and social support, and was otherwise harmed.

b. James and Jane have incurred damages in the form of medical care for John arising from the events described herein, lost earnings from the time it is taking them to assert and defend John's constitutional and legal rights, legal fees, and will likely incur additional damages for each of those areas in the future.

## CLAIM VI

### Common Law Violation of Defendants' Duties to
### Supervise and to Protect

95.    Plaintiffs reallege and incorporate each prior allegation contained in the preceding paragraphs of this Complaint.

96.    By virtue of the relationship between the parties, the Defendants assumed the responsibility to monitor the conduct of students in order to prevent harm to other students.

97.    Given M.B.'s history of discipline-worthy conduct that included threats and inflicting bodily harm on other students, Defendants knew or should have known of M.B.'s propensity to engage in conduct that put other students, including John, at risk of bodily harm. As a result, Defendants assumed the twin duties of monitoring M.B.'s conduct and protecting John, and all other students, so as to prevent the harm to John that occurred during the events of the week of May 20, 2024.

98.    The Defendants breached each of these duties by:

a. Ignoring M.B.'s prior history of wrongful conduct;

b. Imposing no disciplinary measures on M.B. even though warranted by his wrongful conduct or imposing disciplinary measures that were inadequate in light of the nature of M.B.'s school offense.

c. Allowing M.B. continually to engage in conduct prohibited by policies promulgated by the Defendants, even when school personnel personally witnessed the behavior, or worse, when personnel, including teachers, were victims of M.B.'s abusive conduct.

99.     The harm suffered by John as a result of M.B.'s assaults on John during the week of May 20, 2024, was entirely foreseeable, given Defendants' knowledge of M.B.'s history.

100.    As a direct and proximate cause of the Defendants' breach of their duties to supervise M.B. and protect students, including John, from foreseeable harm.

    a.    John has suffered damage to his reputation, honor, and integrity; suffered physical injuries and damages; will be jeopardized in future efforts to obtain educational, employment and other opportunities; will suffer social stigma and the loss of friends and social support, and was otherwise harmed.

    b.    James and Jane have incurred damages in the form of medical care for John arising from the events described herein, lost earnings from the time it is taking them to assert and defend John's constitutional and legal rights, legal fees, and will likely incur additional damages for each of those areas in the future.

101.    John is the quarterback for the HCMS football team. Practice for the football season begins on Monday, August 12, 2024. If John fails to appear on August 12, 2024 to check in and obtain his equipment, he will, at a minimum, lose his hard earned position on the team. At best, he will have to compete again for a position he has already earned. At worst, he will be unable to join the team at all.

102.    According to EISD policy, John has the right to appeal his DAEP commitment to two different levels of appeal within the EISD hierarchy. On July 29, 2024 John appealed the DAEP commitment and the revocation of his school district transfer, and that appeal has been denied. It is unclear whether a reversal of the DAEP commitment will also reverse the revocation of his transfer status. What is clear is that both of the two appeals are to Defendant Superintendent Arnett or his designee. Further, it is also clear Defendant Superintendent Arnett is already fully advised of this event, of the "investigation," and of the outcome of the disciplinary matter itself…

since early June. Not only is the Superintendent fully advised, he has approved of and continues to support the determination of Defendants Winter and Dewrell.

103.    Beyond the Superintendent being fully advised, he has already refused to meet with James and Jane, stating that any meeting would be "unproductive" and that his role is to support the decision of the school administrators who made the determination in the first place.

104.    The harm that will accrue to John, Jane and James includes, inter alia, the stigma of being expelled, the requirement for John to complete a full academic quarter of alternative education placement (DAEP sanctions will follow him, even to a new school), loss of his position on the school football team (if his current sanction is not withdrawn or stayed by August 12, 2024), tremendous stress and anxiety, additional expenses, and the necessity to move homes in order to try to maintain John's residency in EISD.[10]

105.    Because the superintendent has been advised of and supports the sanctions imposed on John, and because it is implausible that any appeal to one of his subordinates would result in a different outcome, EISD has made it clear that teachers and administrators are "turning their attention" to the new school year, and that a second level appeal, should one be necessary, will not happen with alacrity.

106.    As a result, Plaintiffs have suffered irreparable harm, along with actual, special, and/or consequential damages.

---

10 If a move is even possible, it could not occur quickly and would be a significant economic harm to the family from which it would take years to recover.

## V.     APPLICATION FOR TEMPORARY RESTRAINING ORDER, TEMPORARY & PERMANENT INJUNCTION

107.     A temporary restraining order or temporary injunction is an extraordinary remedy, the purpose of which is to preserve the status quo. Butnuru v. Ford Motor Co., 84 S.W.3d 198, 204 (Tex. 2002). An applicant may obtain a temporary restraining order or temporary injunction by showing: 1) a cause of action, 2) a probable right to the relief sought, and 3) a probable, imminent, and irreparable injury in the interim. In re Tex. Natural Res. Conservation Comm'n, 85 S.W. 3d 201, 204 (Tex. 2004). The applicant bears the burden of offering some evidence of each of these elements. Injunctions are permitted when: (i) the applicant is entitled to the relief demanded, all are part of which requires a restraint of an act prejudicial to the applicant, (ii) a party performs, or is about to perform, an act relating to the subject of pending litigation, in violation of the rights of the applicant, and the act would render the judgment in the litigation ineffectual, or (iii) the principles of equity dictate that an injunction be issued.

108.     Here, Plaintiffs seeks a temporary restraining order (and, after notice and hearing, a temporary and permanent injunction) enjoining EISD from violating John's constitutional rights by imposing an unduly harsh, disparately impactful sanction that is predicated on a biased, incomplete, amateur and ineffective investigation that is so infected with incompetent techniques and conclusions that it cannot be corrected. Further, they request a temporary restraining order and subsequent temporary and permanent injunctions based on their inability ever to secure a fair and impartial decision from EISD, because the final decision maker, the superintendent, was involved in the initial decision-making process and has already indicated (without reviewing any evidence or argument presented in John's favor) that he continues to support the erroneous

decision of his subordinates. That request is authorized and consistent with Chapter 65 of the Texas Civil Practice and Remedies Code and applicable law.

109.    It is substantially likely that Plaintiffs will prevail on their claims against EISD and the Defendants.

110.    As a direct and proximate result of the Defendants' breach of John's constitutional rights, violation of common law and breach of contract, Plaintiffs have suffered and will continue to suffer imminent injury that will be irreparable and for which no remedy at law exists without the protections of a temporary restraining order and injunctive relief. Specifically, the Defendants have violated Title 42 U.S.C. §1983 as described above and in so doing, have (1) prevented John from obtaining the education they had agreed to provide, (2) placed him in a punitive educational environment where he will be one of the youngest attendees and at risk for learning very little, but being exposed to too much, (3) illegally expelled him from EISD, (4) prevented him from participating in extracurricular activities, such that even if John prevails in his claims quickly, he will still lose being able to play or meaningfully play in the coming football season.

111.    The only adequate, effective, and complete relief to Plaintiffs is to restrain the Defendants from further engaging in certain proscribed activities, as set forth below.

112.    Consistent with TEX. R. CIV. P. 680 et seq. and TEX. CIV. PRAC. & REM. CODE § 65.001 et seq., and to preserve the status quo during the pendency of this action, Plaintiffs seek, after a hearing, a temporary restraining order, and temporary and permanent injunction, ordering and immediately restraining the Defendants and their agents, servants, employees, independent contractors, attorneys, representatives, and those persons or entities in active concert or participation with them (collectively, the "EISD Restrained Parties") from, directly or indirectly:

    a.    Imposing any DAEP sanction on John;

    b.    Revoking John's 2024-25 school year transfer into EISD;

    c.    Conducting any additional efforts to interview or intimidate any student, parent or employee regarding this matter;

    d.    Retaliating in any way against John, Jane or James Doe or other Doe family members; and

    e.    Entering any adverse coding or descriptions of this event in John's academic or discipline records.

113.    Plaintiffs additionally request, after a hearing and trial, a temporary and permanent injunction for the above-mentioned relief.

114.    Plaintiffs are willing to post a reasonable bond.

115.    Plaintiffs ask the Court to set their application for temporary injunction for hearing after authorizing expedited discovery and, after the hearing, issue a temporary injunction against the EISD Restrained Parties as above requested.

116.    Plaintiffs seek recovery of their reasonable and necessary attorneys' fees from the Defendants for violating John's constitutional rights.

## VI.    CONDITIONS PRECEDENT

117.    Consistent with Rule 54 of the Texas Rules of Civil Procedure, Plaintiffs have successfully performed, tendered performance, or was excused from performing all of their obligations. Further, all conditions precedent to performance have been performed, excused, waived, or otherwise satisfied.

## VII.    PRAYER

Plaintiffs requests they be awarded the injunctive relief sought herein, and upon final trial, be further awarded damages and permanent injunctive relief as requested herein, along with pre- and post-judgment interest, attorneys' fees, court costs, and all such other and further relief to which it may be justly entitled.

Respectfully submitted:

By:  /s/ Jack Stick
     Jack Stick
     State Bar No. 00795156
     VERISLAW, PLLC
     3801 North Capital of Texas Highway
     Suite E240-624
     Austin, Texas 78746
     (512) 710-6000 telephone
     (512) 717-7230 fax
     jstick@verislaw.net

     AND

     Michael S. Alfred
     State Bar No. 24014416
     VERISLAW, PLLC
     4843 Colleyville Boulevard
     Suite 251-391
     Colleyville, Texas 76034
     (817) 678-4121 telephone
     (512) 717-7230 fax
     malfred@verislaw.net


     COUNSEL FOR PLAINTIFFS

## FORM OF REQUESTED TO BE FILED UNDER SEAL
## UNSWORN DECLARATION

My name is **[REDACTED]**. I have read the foregoing Plaintiff's Verified Original Petition, and Application for Temporary Restraining Order and Injunctive Relief, and the factual allegations stated therein are within my personal knowledge and are true and correct to the best of my knowledge, unless otherwise previously qualified.

### JURAT

My name is **[REDACTED]**. My date of birth is **[REDACTED]**, and my address is **[REDACTED]**. I declare under penalty of perjury that the foregoing is true and correct.

_____

**[REDACTED]**



# Eanes Independent School District

# Student Code of Conduct
# 2023–24 School Year



Approved by the Eanes ISD Board of Trustees on August 8, 2023.

If you have difficulty accessing the information in this document because of disability, please contact the Communication Department at 512-732-9002.

GENERAL OVERVIEW ........................................................................................................................ 4

    PURPOSE ....................................................................................................................................... 4

    ADDITIONAL RULES ....................................................................................................................... 4

    GENERAL STANDARDS OF CONDUCT ............................................................................................ 4

    NOTICE OF DISCIPLINARY ACTION ............................................................................................... 5

    ELEMENTARY STUDENTS .............................................................................................................. 5

    ANTI-DISCRIMINATION ................................................................................................................. 6

    OFFENSIVE LANGUAGE ................................................................................................................. 6

    DISCIPLINE OF STUDENTS WITH DISABILITIES ............................................................................ 6

    DISCIPLINE APPEALS ..................................................................................................................... 6

    EFFECT OF STUDENT WITHDRAWAL ............................................................................................ 7

    ACADEMIC AND DISCIPLINE RECORDS ........................................................................................ 7

SCOPE OF THE DISTRICT'S DISCIPLINARY AUTHORITY ................................................................... 8

    GENERAL AUTHORITY ................................................................................................................... 8

    THREAT ASSESSMENT AND SAFE AND SUPPORTIVE SCHOOL TEAM ........................................... 8

    SEARCHES ..................................................................................................................................... 8

    CRIMINAL CONDUCT .................................................................................................................... 9

    SECURITY PERSONNEL .................................................................................................................. 9

    EJECTION FROM CAMPUS ............................................................................................................ 9

DISCIPLINE CONSIDERATIONS AND TECHNIQUES ........................................................................ 10

    DISCIPLINE CONSIDERATIONS .................................................................................................... 10

    DISCIPLINE MANAGEMENT TECHNIQUES .................................................................................. 10

    PROHIBITED AVERSIVE TECHNIQUES ......................................................................................... 11

GENERAL TYPES OF PROHIBITED CONDUCT ................................................................................. 12

    MISCONDUCT INVOLVING OTHERS ............................................................................................ 12

    POSSESSING, USING, OFFERING, GIVING, DISTRIBUTING, SELLING, OR BUYING PROHIBITED ITEMS . 13

    MISUSE OF PROPERTY ................................................................................................................ 14

    SAFETY/DISRUPTION .................................................................................................................. 14

    TECHNOLOGY ............................................................................................................................. 15

    FAILURE TO FOLLOW RULES ....................................................................................................... 16

    OTHER MISCONDUCT ................................................................................................................. 17

REMOVAL FROM DISTRICT-OWNED OR OPERATED TRANSPORTATION ........................................ 18

    REASONS FOR REMOVAL ............................................................................................................ 18

    PROCEDURE FOR REMOVAL ....................................................................................................... 18

REMOVAL FROM THE CLASSROOM ................................................................................................ 19

    ROUTINE REFERRAL ................................................................................................................ 19

    FORMAL REMOVAL ................................................................................................................ 19

    PROCEDURES FOR FORMAL REMOVAL ..................................................................................... 19

    PLACEMENT DURING REMOVAL .............................................................................................. 19

    RETURN TO THE CLASSROOM ................................................................................................. 19

IN-SCHOOL SUSPENSION (ISS) .................................................................................................... 21

    REASONS FOR ISS ................................................................................................................. 21

    PROCEDURE FOR ISS ............................................................................................................. 21

OUT-OF-SCHOOL SUSPENSION (OSS) .......................................................................................... 21

    REASONS FOR OSS ............................................................................................................... 21

    PROCEDURE FOR OSS ........................................................................................................... 22

    MAKE-UP WORK ................................................................................................................. 22

DISCIPLINARY ALTERNATIVE EDUCATION PROGRAM (DAEP) ......................................................... 23

    REASONS FOR MANDATORY DAEP PLACEMENT ...................................................................... 23

    REASONS FOR DISCRETIONARY DAEP PLACEMENT .................................................................. 24

    EMERGENCY DAEP PLACEMENT ............................................................................................ 26

    PROCEDURE FOR DAEP PLACEMENT ...................................................................................... 26

    DAEP AT CAPACITY .............................................................................................................. 27

    LENGTH OF DAEP PLACEMENT ............................................................................................. 27

    APPEALS ............................................................................................................................ 28

    OTHER DAEP ISSUES ........................................................................................................... 29

    PARTICULAR RULES FOR REGISTERED SEX OFFENDERS .............................................................. 31

EXPULSION .............................................................................................................................. 33

    REASONS FOR MANDATORY EXPULSION ................................................................................. 33

    REASONS FOR DISCRETIONARY EXPULSION ............................................................................. 34

    EMERGENCY EXPULSION ...................................................................................................... 36

    PROCEDURE FOR EXPULSION ................................................................................................ 37

    LENGTH OF EXPULSION ........................................................................................................ 37

    APPEALS ............................................................................................................................ 38

    OTHER EXPULSION ISSUES ................................................................................................... 38

DEFINITIONS ............................................................................................................................ 40

## GENERAL OVERVIEW

**PURPOSE**

All Eanes ISD students are entitled to basic rights of citizenship recognized and protected by law for persons of their age and maturity. In addition, students are expected to demonstrate respect for the rights, privileges, and property of others. The District supports the position that the benefits of education are dependent upon positive student attitudes toward learning and student adherence to high principles of behavioral conduct.

Students who violate the rights of others and/or who violate classroom, campus, or District rules and/or state and federal law will be subject to appropriate disciplinary measures. These actions are designed to correct misconduct and to promote adherence by all students to their responsibilities as citizens in the school community.

The Board of Trustees adopted this Student Code of Conduct (SCC) to promote a safe, secure, and optimal learning environment for all students. Inside you will find information regarding:

- The District-wide discipline management plan;
- A description of prohibited conduct;
- The disciplinary options, methods, and consequences for preventing and addressing student misconduct; and
- The process the District will follow when administering disciplinary consequences.

If there is a conflict between the SCC and the Student Handbook, the terms of the SCC will control. If there is a conflict between the SCC and District policy, the more recently adopted item will control.

**ADDITIONAL RULES**

Students may be subject to campus, classroom, extracurricular, and/or organization rules in addition to those found in the SCC. Students may face consequences under these additional rules as well as possible disciplinary action under the SCC. Further, to the extent a student engages in misconduct that is not specifically addressed in the SCC, the student may still be disciplined if the misconduct disrupts or interferes with the educational process, learning environment, or school safety.

**GENERAL STANDARDS OF CONDUCT**

In order to promote a positive educational experience for all students, the District expects students to adhere to seven basic standards of conduct:

1. Exercise self-control, self-respect, and self-discipline;
2. Demonstrate a positive attitude;

3.    Respect the rights and feelings of others;
4.    Respect school property;
5.    Support the learning process;
6.    Adhere to rules; and
7.    Promote a safe environment.

Among other things, this means each student is expected to be honest; attend all classes, regularly and on time; be prepared for each class; be appropriately dressed and groomed, as outlined in the campus student handbook; and to cooperate with and/or assist school staff in maintaining safety, order and discipline.

Because of significant variations in student conduct, it is not always possible for the SCC to address each and every act of student misbehavior. To that end, the District retains discretion to address student misconduct that is inconsistent with these seven standards even though the conduct may not be specifically included in the SCC.

**NOTICE OF DISCIPLINARY ACTION**

Teachers and administrators strive to notify parents/guardians of student conduct concerns as they occur.  The campus principal/campus behavior coordinator or other administrator shall promptly notify a student's parent/guardian by phone or in person of any violation that may result in suspension, Disciplinary Alternative Education Program (DAEP) placement, or expulsion from school. The administrator shall also notify a student's parent/guardian if the student is taken into custody by a law enforcement officer under the disciplinary provisions of the Education Code.  A good faith effort shall be made on the day the action was taken to provide to the student for delivery to the student's parent/guardian written notification of the disciplinary action.  If the parent/guardian has not been reached by telephone or in person by 5:00 p.m. of the first business day after the day the disciplinary action was taken, the administrator shall send written notification by U.S. Mail.

Before the principal, campus behavior coordinator or other administrator assigns a student under 19 to detention outside regular school hours, notice shall be given to the student's parent/guardian to inform him or her of the reason for the detention and permit arrangements for necessary transportation.

**ELEMENTARY STUDENTS**

Students younger than 10 must receive services in a DAEP if they commit an expellable offense. However, a student younger than 6 may not be sent to DAEP unless the student commits a firearm offense under Texas Education Code section 37.007(e)(2).

For purposes of DAEP, elementary classification shall be kindergarten—grade 5 and secondary classification shall be grades 6—12.

**ANTI-DISCRIMINATION**

The District does not discriminate against students on the basis of race, color, religion, sex (including biological sex, gender identity, sexual orientation, and gender stereotypes), gender, national origin, age, disability, or any other basis prohibited by law when enforcing the provisions of the SCC.

**OFFENSIVE LANGUAGE**

It is the position of the Eanes ISD Board of Trustees and Administration that the use of offensive language in the school environment is unacceptable and creates a hostile work and educational environment. Such language includes, but is not limited to, the use of slurs or offensive language related to race, gender and/or sexual orientation, disability and religious beliefs. In order to maintain a safe and appropriate educational environment for students and employees, all district employees and students are required to report such violations of the SCC to the appropriate campus administrator. Such behavior is outlined under "General Conduct Violations" below.

**DISCIPLINE OF STUDENTS WITH DISABILITIES**

The discipline of students with disabilities is subject to applicable state and federal law, in addition to this SCC.  To the extent any conflict exists, the District shall comply with federal law. For more information regarding discipline of students with disabilities, see policy FOF(LEGAL).

In accordance with the Texas Education Code, a student who receives special education services may not be disciplined for conduct meeting the definition of bullying, cyberbullying, harassment, or making hit lists until an Admission, Review and Dismissal (ARD) meeting has been held to review the conduct.

In deciding whether to order suspension, DAEP placement, or expulsion, regardless of whether the action is mandatory or discretionary, the District shall take into consideration a disability that substantially impairs the student's capacity to appreciate the wrongfulness of the student's conduct.

**DISCIPLINE APPEALS**

Questions from parents regarding disciplinary measures should be addressed to the teacher, campus administration, or campus behavior coordinator, as appropriate. Appeals of disciplinary measures should be addressed in accordance with Board policy FNG(LOCAL). A copy of the policy may be obtained at the campus or central administration office or on the District's website under the *Board Policy Online* page: http://www.eanesisd.net/board. Depending on the disciplinary consequence assigned, different complaint procedures may apply as described in this SCC.

Timelines for filing appeals stated in the policy and this SCC will be enforced. Disciplinary consequences will not be delayed or deferred pending the outcome of an appeal.

**EFFECT OF STUDENT WITHDRAWAL**

Withdrawal from school after a student has been accused of a violation of the SCC will not prevent the District from investigating the alleged violation and, if it is determined that a violation did occur, assessing the appropriate disciplinary consequence and enforcing that consequence should the student re-enroll in the District.

**ACADEMIC AND DISCIPLINE RECORDS**

Placement in in-school suspension, out-of-school suspension, or DAEP is not referenced or noted on a student's official transcript. If a student is placed in the Juvenile Justice Alternative Education Program (JJAEP) and receives credit during that placement, such credit is noted on a student's official transcript as earned through the JJAEP.

If a student enrolls in another school district, Eanes ISD is required to transfer certain discipline records to the newly-enrolling district.

## SCOPE OF THE DISTRICT'S DISCIPLINARY AUTHORITY

### GENERAL AUTHORITY

In addition to the disciplinary authority established for certain types of offenses as described within the SCC, the District has general disciplinary authority over a student at the following times:

- At any time during the school day if a student is attending school in person;
- If a student is attending school remotely, at any time the student is accessing District learning with other District students and/or staff, including synchronous instruction, small group lessons, and special services;
- While traveling on district owned or operated transportation or during school-related travel;
- While attending any school-sponsored or school-related activity, regardless of time or location;
- As provided in extracurricular or organization handbooks, by-laws, or constitutions;
- During lunch periods, including those in which a student leaves the campus;
- While on District property at any time during or outside the school day;
- For any school-related misconduct, regardless of time or location, including misuse of District technology;
- Other off campus conduct, including cyberbullying, as permitted by Chapter 37 of the Texas Education Code;
- For certain offenses committed within 300 feet of school property as measured from any point on the school's real property boundary line;
- When retaliation against a school employee or volunteer occurs or is threatened, regardless of time or location; and
- If the student is a registered sex offender.

### THREAT ASSESSMENT AND SAFE AND SUPPORTIVE SCHOOL TEAM

The campus behavior coordinator/other appropriate administrator will work closely with the District's Safe and Supportive School Team to implement the District's threat assessment policy and procedures, as required by law, and shall take appropriate disciplinary action in accordance with this SCC.

### SEARCHES

District officials may conduct searches of students, their belongings, and their vehicles in accordance with state and federal law and District policy.  Searches of students shall be conducted in a reasonable and nondiscriminatory manner.  Refer to the District's policies at FNF for more information regarding investigations and searches.

A student's clothing, personal property, electronic equipment, method of transportation, or school property used by the student (such as lockers or desks) may be searched when there is reasonable suspicion to believe the search will reveal articles or materials prohibited by the District. Students are

responsible for ensuring that any personal property, method of transportation or school property used by the student does not contain prohibited items. Students may be disciplined for possession of prohibited items discovered during a search.

Desks, lockers, District-provided technology, and similar items are the property of the District and are provided for student use.  District property is subject to search or inspection at any time without notice.

## CRIMINAL CONDUCT

School administrators will report crimes as required by law and may contact local law enforcement regarding suspected criminal activity. Certain acts of misconduct may constitute criminal offenses in addition to violations of the SCC. Because school discipline is independent of criminal proceedings, disciplinary consequences may not be postponed pending the outcome of any criminal proceeding or affected by the outcome of any criminal proceeding.

## SECURITY PERSONNEL

To ensure sufficient security and protection of students, staff, and property, the Board utilizes peace officers, security officers, and school resource officers.  In accordance with law, the Board has coordinated with District staff to ensure appropriate law enforcement duties are assigned to these persons.  Provisions addressing the various types of security personnel and their duties can be found in Board Policy CK(LOCAL).

## EJECTION FROM CAMPUS

In accordance with Education Code 37.105, a school administrator, peace officer, security officer, or school resource officer shall have the authority to refuse entry or eject a person from district property if the person refuses to leave peaceably on request and:
1. The person poses a substantial risk of harm to any person; or
2. The person behaves in a manner that is inappropriate for a school setting, and the person persists in the behavior after being given a verbal warning that the behavior is inappropriate and may result in refusal of entry or ejection.

Appeals regarding refusal of entry or ejection from District property may be filed in accordance with policies FNG(LOCAL) or GF(LOCAL), as appropriate.  The timelines for the District's grievance procedures shall be adjusted as necessary to permit the person to address the Board within 90 days, unless the complaint is resolved before a Board hearing.

## DISCIPLINE CONSIDERATIONS AND TECHNIQUES

### DISCIPLINE CONSIDERATIONS

When deciding to order any mandatory or discretionary disciplinary consequence, including but not limited to, out-of-school suspension, DAEP placement, expulsion, or placement in JJAEP of a student, the District shall consider:

1. Self-defense (see *definitions*);
2. The student's intent (see *definitions*) or lack of intent at the time of the conduct;
3. The student's disciplinary history;
4. A disability that substantially impairs the student's capacity to appreciate the wrongfulness of the student's conduct to the extent required by state and federal law;
5. A student's status in the conservatorship of the Department of Family and Protective Services (foster care); or
6. A student's status as homeless.

Additionally, using their professional judgment, District employees shall also consider a variety of factors when administering all disciplinary consequences and determining the duration of the consequence, including but not limited to:

- The degree of severity and the risk of danger;
- The effect of the misconduct;
- The frequency of the misconduct;
- The age and grade level of the student;
- The student's demeanor; and
- Legal requirements, including consistency.

### DISCIPLINE MANAGEMENT TECHNIQUES

Discipline is designed to improve conduct, correct student behavior, and encourage students to adhere to their responsibilities as members of the school community. Disciplinary action shall draw on the professional judgement of teachers and administrators and on a range of discipline management techniques, including restorative practices. The District may use any one or a combination of the following strategies or techniques to manage student behavior, prevent or intervene in discipline problems, or address violations of the SCC, campus, or classroom rules:

- Verbal correction;
- Seating changes;
- Parent conferences, including telephone calls;
- Removal from the classroom;
- Contracts to modify student behavior;
- Sending the student to the office or other area;

- Assignment of school-related tasks or duties;
- Calming-down time, in accordance with law;
- Demerits or rewards;
- Confiscation of items;
- School probation;
- Restitution to the District or an individual;
- Transfer to a different classroom or campus;
- Revocation or restriction of transportation privileges;
- Loss or restriction of privileges, participation or membership in co-curricular or extracurricular activities, and seeking or holding honorary positions;
- Counseling by teachers, counselors, or administrators;
- In-school suspension;
- Out-of-school suspension;
- Placement in a DAEP;
- Expulsion;
- Consequences identified in co-curricular or extracurricular codes of conduct, constitutions, or by-laws;
- Detention;
- Mediation; and/or
- Other strategies and consequences determined by school officials to be appropriate and designed to further the goals outlined in this SCC.

Disciplinary consequences are not appropriate for failure to meet assigned academic requirements. However, teachers and administrators may impose academic consequences, including grade reductions, as permitted by policy regarding unexcused absences and academic dishonesty, and for the student's failure to meet assigned academic requirements consistent with grading standards and practices communicated to students at the beginning of the semester or school year.

By policy, Eanes ISD prohibits the use of corporal punishment for student discipline.

## PROHIBITED AVERSIVE TECHNIQUES

In accordance with law, aversive techniques are prohibited for use with students. Aversive techniques are defined as techniques or interventions intended to reduce the reoccurrence of a behavior by intentionally inflicting significant physical or emotional discomfort or pain.

## GENERAL TYPES OF PROHIBITED CONDUCT

Misconduct identified in the list of prohibited behaviors below will result in the assignment of one or more *Discipline Management Techniques* if the behavior is committed at school, a school-sponsored or school- related activity, during school-related travel, while traveling on District owned or operated transportation or when the District has *Disciplinary Authority* as described in the SCC. The list below does not include the most serious offenses. In the following sections on *Suspension*, *DAEP Placement*, and *Expulsion*, severe offenses that require or permit certain consequences are listed. Any offense, however, may be serious enough to result in *Removal from Classroom by the Teacher* as detailed in that section.

### MISCONDUCT INVOLVING OTHERS

- Horseplay, roughhousing, and other playful behavior that, though not intended to harm, presents a reasonable risk of harm and threatens the safety of others;
- Fighting (see *definitions*) or scuffling that does not result in physical pain, illness, or any impairment of a physical condition;
- Engaging in conduct, including throwing objects, that can cause bodily injury (see *definitions*) or property damage;
- Forcing an unwilling person to act or not act or obtaining money or another object of value from an unwilling person through duress, threats, force, extortion, coercion, or blackmail;
- Subjecting a student or District employee, official, or volunteer to physical harm, confinement or restraint;
- Bullying or cyberbullying (see *definitions*);
- Offensive language, including, but not limited to, the use of slurs or derogatory language related to race, gender and/or sexual orientation, disability and religious beliefs;
- Using profanity, vulgar language, or obscene gestures;
- Engaging in harassment (see *definitions*) toward another student or a District employee, official, or volunteer, including harassment motivated by race, color, religion, national origin, disability, sex, sexual orientation, or age;
- Engaging in sexual or gender-based harassment (see *definitions*) or sexual abuse;
- Inappropriate verbal (oral or written), physical, or sexual contact toward another student or a District employee, official, or volunteer regardless of whether it is consensual;
- Touching one's own private body parts in a sexual manner;
- Consensual hugging, touching, or other displays of affection that interfere with, detract from, or disrupt the school environment;
- Engaging in conduct that constitutes dating violence (see *definitions*);
- Engaging in oral or written threats to cause harm or bodily injury (see *definitions*) to another student, a District employee, official, or volunteer, or school property, including threats made using the Internet or other technology resources at school. Students may be disciplined for

threats made outside of school, including website or internet postings, if the threat causes a material or substantial disruption at school.;

- Wrongfully obtaining and using another person's identifying information or personal data without permission in order to mislead, defraud, or deceive;
- Hazing (see *definitions*);
- Retaliating against a student for (1) reporting either a violation of the Student Code of Conduct (SCC) or bullying, or (2) participating in an investigation of a violation of the SCC or bullying; or
- Adding any substance, whether harmful or not, without permission to any food or beverages belonging to, in the possession of, or meant to be consumed by another student or District employee, official, or volunteer;

## POSSESSING, USING, OFFERING, GIVING, DISTRIBUTING, SELLING, OR BUYING PROHIBITED ITEMS

- A firearm;
- BB gun, air gun, or stun gun;
- Ammunition, shells, bullets, or gunpowder;
- A firearm silencer or suppressor;
- Alcohol, alcoholic beverages, or products containing alcohol;
- Illegal drugs, including dangerous drugs (see *definitions*) or controlled substances (see *definitions*);
- Tobacco products; cigarettes; electronic cigarettes; vape product; any component, part, or accessory for an e-cigarette device (including tobacco/vapor oils); or any other smoking/vaping device or paraphernalia (including matches and lighters);
- Stems, seeds or other pieces of marijuana in less than a usable amount;
- Any consumable hemp (see *definitions*) products; oils (e.g., CBD oil), lotions, or similar products that contain hemp; hemp products in any form suitable for smoking, vaping or other uses. A student using such a product with a valid prescription for low-THC cannabis as authorized by Chapter 487 of the Health and Safety Code does not violate this provision;
- Prescription medication or over-the-counter drugs/medication other than as provided by District policy and procedures;
- Paraphernalia related to any prohibited item;
- "Look-alike" drugs or items attempted to be passed off as drugs, non-prescription drugs, medications, or herbal or dietary supplements except as permitted by District policy and procedures;
- Fireworks or any other pyrotechnic device;
- Smoke or stink bombs;
- Laser pointers (unauthorized use);
- Pepper spray or other small chemical dispenser sold commercially for personal protection;
- Razor blades, box cutters, or chains;

- A hand instrument designed to cut or stab another by being thrown;
- A location-restricted knife, pocketknife or any small knife;
- Knuckles;
- A club;
- Fake or "look-alike" weapons that are intended to be used as a weapon or could reasonable be perceived as a weapon;
- Poisons, caustic acids, or other materials that may be toxic to the human body;
- Material that is sexually-oriented, pornographic, or reveals a person's private body parts;
- Material, including published or electronic items, that promotes or encourages illegal behavior or could threaten school safely, or that falsely depicts wrongful, illegal, or inappropriate conduct by a student, volunteer or District staff member;
- Articles not generally considered to be weapons when the administrator determines that a danger exists or when used in a way that threatens or inflicts bodily injury to another;
- CD or DVD players, cassette players, electronic games, MP3 players, stereo head sets, or other electronic equipment for other than approved use; or
- Live animals, other than an authorized service animal or for approved school purposes.

## MISUSE OF PROPERTY

- Unless authorized, using, displaying, or having in operational mode a paging device, cellular telephone, or other telecommunications device (see *definitions*) in violation of District and/or campus rules;
- Stealing from others, including the District;
- Committing or assisting in a robbery, theft, or burglary that is not punishable as a felony;
- Damaging, destroying, or vandalizing property owned by others or the District;
- Marking District property such as textbooks, lockers, furniture, or equipment with graffiti, tagging, or by other means; or
- Entering, without authorization, District facilities that are not open for operations.

## SAFETY/DISRUPTION

- Attempting to start or starting a fire on or in any property owned, used, or controlled by a student, the District, or District employees, officials, or volunteer that does not rise to the level of arson or criminal mischief;
- Threatening to use or exhibiting a firearm;
- Discharging a fire extinguisher, pulling a fire alarm, calling 911, tampering with an Automated External Defibrillator (AED) or causing the sprinkler system to activate when there is no emergency;
- Making or participating in false statements or hoaxes regarding school safety;

- Engaging in any misbehavior, actions, or demonstrations that substantially disrupts or materially interfere with school activities or that gives school officials reasonable cause to believe that such conduct will substantially disrupt the school program or incite violence; or
- Making false accusation or providing false statements concerning wrongful, unlawful, inappropriate, or illegal conduct alleged to have been committed by another student or District employee, official, or volunteer.

## TECHNOLOGY

- Sending, possessing, delivering, or posting electronic messages or images that are abusive, obscene, sexually oriented, harassing, threatening, intimidating, illegal, or that cause a material or substantial disruption at school or infringes on the rights of another student at school, including cyberbullying (see *definitions*) and "sexting";
- Using any device to copy or capture an image or the content of any District materials (such as tests or exams) without permission of a teacher or administrator;
- Making, participating in the making of, transmitting to another via an electronic device, or posting to the Internet a digital video or audio recording of an actual or simulated act that involves a crime or conduct prohibited by the SCC (Students who are not involved in the prohibited conduct will not be disciplined under this provision so long as they report the incident to a school employee, turn over the recording to a school employee as soon as possible after the incident, and do not provide a copy of the recording to anyone other than the law enforcement or school employees.);
- Using any device or technology that permits recording the voice or image of another in any way that disrupts the educational environment, invades the privacy of others, or without the prior consent of the individual being recorded;
- Using any device or technology to take, disseminate, transfer, circulate, exhibit, present, or share audio, images, video, or photos that reveal private parts of the body that are normally covered by clothing (also known as "sexting");
- Release or threaten or release intimate visual material of a minor or a student who is 18 years of age or older without the student's consent;
- Using the name, persona, or image of a student, District employee, or volunteer to create a web page or post one or more messages on a website without the other person's consent for purposes of harassing, intimidating, embarrassing, or threatening another;
- Using email, website, or electronic devices to engage in or encourage illegal conduct, violations of the SCC, or to threaten school safety;
- Attempting to or successfully accessing or circumventing passwords or other security-related information of the District, officials, volunteers, employees, or other students by any means;
- Attempting to or successfully altering, destroying, interrupting, or disabling District technology resources including but not limited to computers and related equipment, District data, the data

of other users of the District's computer system, or other networks connected to the District's system, including uploading or creating computer viruses, worms, or other harmful material;

- Copying, downloading, reproducing, distributing, retransmitting, redisplaying, or modifying items from the District's website; or
- Engaging in any of the above forms of technological misconduct outside of school when such conduct causes a material or substantial disruption at school as determined by school officials.

*NOTE*: Students will not be disciplined for technological misconduct related to possessing items described above so long as the student (1) did not contribute to creation of the item in any way, (2) possessed it only after receiving the item unsolicited from another, (3) either promptly destroyed the item or reported it to a school employee as soon as possible, and (4) did not provide a copy, forward, or re-post the item to anyone other than law enforcement, a school employee, or the student's parent/guardian.

### FAILURE TO FOLLOW RULES

- Violating dress codes and grooming criteria;
- Violating any health and safety rules required by the District;
- Failing to ensure that personal property, method of transportation, or school property used by the student does not contain prohibited items (See "Possessing, using, giving, distributing, selling, or buying prohibited items" above);
- Being insubordinate or otherwise failing to comply with lawful directives given by school personnel;
- Attempting to or successfully evading, avoiding, or delaying questioning by a District employee;
- Failing to provide proper identification upon request of a District employee;
- Attempting to violate or assisting, encouraging, promoting, or attempting to assist another student in violating the SCC;
- Failing to immediately report to a school employee knowledge of a device, object, substance, or event that could cause harm to self or others;
- Unexcused tardiness to class;
- Skipping school or class without the District's or parent/guardian's permission;
- Leaving class, the campus, or school events without permission;
- Enticing or preventing another student from attending school, class, or a school activity that the student is require to attend;
- Violating rules for conduct on District-owned or operated transportation;
- Violating rules for operating or parking a motor vehicle on school property;
- Violating policies or rules, including the Eanes ISD Responsible Use Guidelines for Technology, regarding the use of technology resources and Internet access;
- Violating the District's medications policy and procedures regarding prescription and over-the-counter drugs;

- Academic dishonesty, including cheating, copying the work of another, allowing another student to copy work, plagiarism, unauthorized collaboration with another person in preparing an assignment, unauthorized communication with another person during an examination, or any use of artificial intelligence or computer-generated work in violation of District or campus rules;
- Failure to comply with guidelines applicable to student speakers who are speaking at school-sponsored or school-related events; or
- Violating other campus or classroom rules for behavior and/or safety or District policies.

## OTHER MISCONDUCT

- Using profanity, vulgar language, or obscene gestures;
- Loitering in unauthorized areas;
- Falsifying, altering, forging, or destroying school records, passes, other school-related documents, or documents presented to District employees;
- Gambling or betting money or other things of value;
- Inappropriate exposure of a student's private body parts which are ordinarily covered by clothing, including through such acts as sexting, mooning, streaking, or flashing; or
- Taking one or more steps toward violating the SCC even if the student fails to complete the intended misconduct.

## REMOVAL FROM DISTRICT-OWNED OR OPERATED TRANSPORTATION

### REASONS FOR REMOVAL

Appropriate student behavior is essential to the safe operation of District transportation.  Students must comply with the expectations of the SCC while using District transportation.  In addition to compliance with the SCC, students are expected to comply with the following transportation rules:

- Enter and exit transportation in an orderly manner at the designated stop;
- Remain seated in designated seats facing forward;
- Wear seat belts as directed by the driver;
- Keep aisles clear of books, bags, instruments, feet, or other obstructions;
- Comply with lawful directives issued by the driver;
- Follow the driver's rules for food or beverages;
- Do not bring live animals on the bus, other than an authorized service animal or for approved school purposes;
- Do not extend any body part, clothing, or other article outside of the transportation;
- Keep hands, feet, other body parts, or objects to yourself;
- Refrain from making loud or distracting noises;
- Do not obstruct the driver's view;
- Do not throw objects inside the transportation or out of the windows or doors;
- Do not mark, deface, destruct, or tamper with seats, windows, emergency doors, or other equipment;
- Refrain from engaging in the *General Types of Prohibited Conduct* as outlined in the SCC; and
- Follow any health and safety rules required by the District.

### PROCEDURE FOR REMOVAL

A driver of District owned or operated transportation may send a student to the administrator's office to maintain discipline during transport to or from school or a school-sponsored or school-related activity, to enforce the transportation rules, or when the student engages in behavior that violates the SCC.  The administrator may use one or more discipline management techniques to address the behavior, which may include temporarily suspending or permanently revoking school transportation privileges.

The student will be informed of the reason for suspension or revocation of transportation privileges and will be given an opportunity to respond before the administrator's decision is final.  Suspension of transportation privileges does not excuse a student from attending school.  It is the responsibility of the parent/guardian and/or student to make alternate transportation arrangements to and from school.

## REMOVAL FROM THE CLASSROOM

**ROUTINE REFERRAL**

A teacher may send a student to the administrator's office to maintain discipline in the classroom or when the student engages in behavior that violates the SCC. The administrator may use one or more discipline management techniques to address the behavior.

**FORMAL REMOVAL**

A teacher may remove a student from class when:
- The student's behavior has been documented by the teacher as repeatedly interfering with the teacher's ability to teach or with the learning of other students; or
- The behavior is so unruly, disruptive, or abusive that it seriously interferes with the teacher's ability to teach or with the learning of other students.

A teacher must remove a student from class if the student engages in conduct that requires or permits DAEP placement or expulsion under the Texas Education Code, in which case the procedures for DAEP placement or expulsion will apply.

**PROCEDURES FOR FORMAL REMOVAL**

Within three school days of the formal removal, the campus behavior coordinator/appropriate administrator will schedule a conference with the administrator, the teacher who removed the student from class, the student's parent/guardian, and the student. At the conference, the administrator shall inform the student of the alleged misconduct and the proposed consequences.  The student shall have an opportunity to respond to the allegations. After the conference, the administrator will render a discipline decision and inform the student and parent/guardian of the consequences.

**PLACEMENT DURING REMOVAL**

When a student is removed from the classroom by a teacher and a conference is pending, the administrator may place the student in another appropriate classroom, in-school suspension, out-of-school suspension, or DAEP.

**RETURN TO THE CLASSROOM**

If a student was formally removed from class because the student engaged in assault resulting in bodily injury, aggravated assault, sexual assault, or aggravated sexual assault against the teacher, the student may not be returned to the teacher's class without the teacher's consent.

For other formal removals, the student may only be returned to the teacher's class without the teacher's consent if the Placement Review Committee determines that the teacher's class is the best or only alternative.

## IN-SCHOOL SUSPENSION (ISS)

**REASONS FOR ISS**

Students may be placed in ISS for any misconduct listed in any category of the ISS, except for misconduct that requires mandatory placement in the DAEP or JJAEP.

**PROCEDURE FOR ISS**

Before being placed in ISS, the student will meet with the campus behavior coordinator/appropriate administrator, who will inform the student of the alleged misconduct. The student will be given an opportunity to respond before the administrator makes a decision.

While in ISS, the student will complete assignments from his or her teachers. The District shall ensure a student receives access to coursework for foundation curriculum courses while the student is placed in ISS, including at least one method of receiving this coursework that does not require the use of the internet.

## OUT-OF-SCHOOL SUSPENSION (OSS)

**REASONS FOR OSS**

Students in grades 3 or above may be suspended from school for any misconduct listed in any category of the SCC.

A student below grade 3 or a student who is homeless shall not be placed in out-of-school suspension unless, while on school property or while attending a school-sponsored or school-related activity on or off school property, the student engages in:

- Conduct that contains the elements of a weapons offense, as provided in Penal Code Section 46.02 or 46.05;
- Conduct that contains the elements of assault, sexual assault, aggravated assault, or aggravated sexual assault, as provided by the Penal Code; or
- Selling, giving, or delivering to another person or possessing, using, or being under the influence of any amount of marijuana, an alcoholic beverage, or a controlled substance or dangerous drug as defined by federal or state law.

The District shall use a positive behavior program as a disciplinary alternative for students below grade 3 who commit general conduct violations.

**PROCEDURE FOR OSS**

Before being suspended, a student will meet with the campus behavior coordinator/appropriate administrator, who will inform the student of the alleged misconduct.  The student will be given an opportunity to respond before the administrator makes a decision.

The appropriate administrator shall determine the number of days of a student's suspension.  Students may be suspended for a maximum of three school days per behavior violation.

While the student is suspended, the student may not attend or participate in school-sponsored or school-related activities.

**MAKE-UP WORK**

If a student is assigned out-of-school suspension, that student will be required to complete all class assignments, homework, tests, and other academic work covered during the time of suspension. The student will have the opportunity to receive full credit for completed academic work, when submitted in a timely manner and in accordance with the teacher's or administrator's instructions.

The District shall ensure a student receives access to coursework for foundation curriculum courses while the student is placed in OSS, including at least one method of receiving this coursework that does not require the use of the internet.

## DISCIPLINARY ALTERNATIVE EDUCATION PROGRAM (DAEP)

**REASONS FOR MANDATORY DAEP PLACEMENT**

**School-Related.** A student must be placed in DAEP for any of the following misconduct if committed while on school property, within 300 feet of school property as measured from any point on the school's real property boundary line, or while attending a school-sponsored or school-related activity on or off school property:

- Engages in conduct punishable as a felony.
- Commits an assault (see *definitions*) resulting in bodily injury (see *definitions*) to another.
- Sells, gives, delivers, possesses, uses, or is under the influence of a controlled substance (see *definitions*) or dangerous drug (see *definitions*) in any amount not punishable as a felony. Students shall be expelled for a second infraction (occurring in the same school year).
- Sells, gives, or delivers to another person or possesses, uses, or is under the influence of marijuana or THC. A student with a valid prescription for low-THC cannabis as authorized by Chapter 487 of the Health and Safety Code does not violate this provision with regard to possession or use.
- Sells, gives, delivers to another person or possesses an e-cigarette.
- Sells, gives, delivers, possesses, uses, or is under the influence of alcohol or an alcoholic beverage (see *definitions*), if the conduct is not punishable as a felony. Students shall be expelled for a second infraction (occurring in the same school year).
- Commits a serious act or offense while under the influence of an alcoholic beverage if the conduct is not punishable as a felony. Students shall be expelled for the second infraction (occurring in the same school year).
- Engages in an offense relating to abusable volatile chemicals (see *definitions*). Students shall be expelled for the second infraction (occurring in the same school year).
- Engages in conduct that contains the elements of harassment against an employee under Texas Penal Code 42.07(a)(1), (2), (3), or (7).
- Engages in public lewdness (see *definitions*).
- Engages in indecent exposure (see *definitions*).
- Possesses or uses a knife with a blade over 3 inches up to 5 ½ inches.
- Engages in expellable conduct if the student is six to nine years of age.
- Engages in a federal firearm offense if the student is six years of age or younger.

**Off-Campus.** A student must be placed in DAEP for engaging in a Title 5 (see *definitions*) felony offense or aggravated robbery while off-campus and not in attendance at a school-sponsored or school-related activity if:

- The student receives deferred prosecution;
- A court or jury finds the student engaged in delinquent conduct; or

- The administrator reasonably believes that the student engaged in the misconduct.

**Regardless of Location.** A student must be placed in DAEP if the student engages in the following misconduct, regardless of whether the conduct occurred on or off campus:

- Issues a false alarm or report (see *definitions*) (including a bomb threat) or a terroristic threat (see *definitions*) involving a public school. Students shall be expelled for a second infraction (occurring in the same school year).
- Retaliates (see *definitions*) against any school employee.
- Is involved with a public school fraternity, sorority, secret society, or gang (see *definitions*), including participating as a member or pledge, or soliciting another person to become a member or pledge.
- Is involved with a criminal street gang (see *definitions*) or encourages, solicits, enables, or causes another to become a member of a criminal street gang.
- Engages in criminal mischief if the damage is equal to or greater than $500 but less than $1,500.
- Is a registered sex offender (see *definitions*) under court supervision, probation, community supervision, or parole.

Students who are: (1) convicted of continuous sexual abuse of a young child or disabled individual; or (2) convicted, receive deferred adjudication or deferred prosecution, been found to have engaged in delinquent conduct or conduct in need of supervision, or been placed on probation for either sexual assault or aggravated sexual assault against another student assigned to the same campus at the time the offense occurred will be placed in DAEP (or JJAEP as appropriate) on the request of the victim's parents if the victim student does not wish to transfer, and there is only one campus serving that grade level. Placement in this circumstance may be for any length of time considered necessary.

### REASONS FOR DISCRETIONARY DAEP PLACEMENT

**School-Related.** A student may be placed in DAEP for any of the following misconduct if committed while on school property, within 300 feet of school property as measured from any point on the school's real property boundary line, or while attending a school-sponsored or school-related activity on or off school property:

- Possessing, giving, buying, or selling less than a usable amount of stems, seeds, or other pieces of marijuana.
  - A student with a valid prescription for low-THC cannabis as authorized by Chapter 487 of the Health and Safety Code does not violate this provision with regard to possession or use.
- Possessing, using, selling, buying, or giving paraphernalia (see *definitions*) related to any prohibited substance, including but not limited to marijuana, a controlled substance, a dangerous drug, or an alcoholic beverage.

- o A student with a valid prescription for low-THC cannabis as authorized by Chapter 487 of the Health and Safety Code does not violate this provision with regard to possession or use.
- Offering to sell marijuana, a controlled substance (see *definitions*), a dangerous drug (see *definitions*), abusable volatile chemicals (see *definitions*), a prescription drug, or an alcoholic beverage (see *definitions*) in any amount.
- Abusing the student's own prescription drug or using it in a way other than prescribed; giving, buying, or selling a prescription drug; possessing, using, or being under the influence of another person's prescription drug.
- Abusing over-the-counter drugs.
- Preparing a hit list (see *definitions*).
- Committing any offense included in the list of "General Types of Prohibited Misconduct" in this SCC.
- Engaging in serious (see *definitions*) or persistent misbehavior (see *definitions*) that violates this SCC.

**Off-Campus.** A student may be placed in DAEP for engaging in the following misconduct while off-campus and not in attendance at a school-sponsored or school-related activity:

- The administrator reasonably believes the student engaged in conduct punishable as a felony (other than aggravated robbery or a Title 5 felony offense), and the student's continued presence in the regular classroom is a threat to the safety of others or will be detrimental to the educational process.
- Off-campus conduct for which DAEP placement is required by state law when the administrator does not learn of the conduct until more than one year passes after the conduct occurred.

**Regardless of Location.** A student may be placed in DAEP if the student engages in the following misconduct, regardless of whether the conduct occurred on or off campus:

- Assault with threat of imminent bodily injury.
- Assault by offensive or provocative physical contact.
- If the student is a registered sex offender *(*see *definitions)* who is not under any form of court supervision. A registered sex offender who is not under any form of court supervision will be placed in regular classes if the student is not a threat to the safety of others, is not detrimental to the educational process, and such placement is not contrary to the best interests of the District's students.
- Engages in criminal mischief if the damage is less than $500.

**Bullying.** A student may be removed from class and placed in DAEP or expelled if the student:

- Engages in bullying (see *definitions)* that encourages a student to commit or attempt to commit suicide;

- Incites violence against a student through group bullying; or
- Releases or threatens to release intimate visual material (see *definitions*) of a minor or a student who is 18 years of age or older without the student's consent.

## EMERGENCY DAEP PLACEMENT

An administrator may order an emergency DAEP placement if the student has been so unruly, disruptive, or abusive that it seriously interferes with the teacher's ability to teach the class, the learning of other students, or the operation of a school-related or a school-sponsored activity. The reason for emergency placement must also be a reason for which DAEP placement could be ordered on a non-emergency basis. At the time of the emergency placement, the student will be told the reason for the action.

No later than the tenth day after the date of emergency DAEP placement, the student will be given a conference as required for regular placement in DAEP; see below.

## PROCEDURE FOR DAEP PLACEMENT

**Conference.** No later than three school days after the student is removed from class, the campus behavior coordinator/appropriate administrator will schedule a conference with the administrator, the student's parent/guardian, and the student. At the conference, the administrator shall inform the student, orally or in writing, of the reasons for the removal, shall give the student an explanation of the basis for the proposed DAEP placement, and give the student an opportunity to respond to the reasons for the removal.

Following valid and reasonable attempts to require attendance, the District may conduct the conference and make a discipline decision regardless of whether the student or the student's parent/guardian attends the conference. Unless the administrator is provided 24 hours' prior notice that the parent/guardian shall be represented by legal counsel at the conference, the administrator may reschedule the conference to a time when the District's legal counsel may also participate.

If during the term of DAEP placement the student engages in additional misconduct, additional conferences may be conducted and additional discipline imposed.

**Interim Placement.** Until a placement conference can be held, the student may be placed in another appropriate classroom, in-school suspension, or out-of-school suspension. The student may not be returned to the regular classroom pending the placement conference.

**DAEP Placement Order.** If the outcome of the conference is to place the student in DAEP, the administrator will issue a DAEP placement order. A copy of the DAEP placement order and information for the parent or person standing in parental relation to the student regarding the process for requesting

a full individual and initial evaluation of the student for purposes of special education services will be sent to the student and the student's parent/guardian.

If the length of placement differs from the guidelines included in this SCC, the DAEP placement order will give notice of the inconsistency.

For those students placed in DAEP for a reason identified in the Texas Education Code, the District will send the juvenile court a copy of the DAEP placement order no later than the second business day after the placement conference. A copy of the DAEP placement order will be included with any records sent to a school where the student seeks to enroll. The enrolling school district has discretion to enforce the DAEP placement order.

**DAEP AT CAPACITY**

If the DAEP is at capacity at the time the administrator is deciding placement for conduct related to marijuana, THC, an e-cigarette, alcohol, or an abusable volatile chemical, the student shall be placed in ISS then transferred to the DAEP for the remainder of the period if space becomes available before the expiration of the period of the placement.

If the DAEP is at capacity at the time the administrator is deciding placement for a student who engaged in violent conduct, a student placed in DAEP for conduct related to marijuana, THC, an e-cigarette, alcohol, or an abusable volatile chemical may be placed in ISS to make a position in the DAEP available for the student who engaged in violent conduct. If a position becomes available in the DAEP before the expiration of the period of the placement for the student removed, the student shall be returned to the DAEP for the remainder of the period.

**LENGTH OF DAEP PLACEMENT**

The length of a student's placement in DAEP will be determined on a case-by-case basis using the criteria identified in the *Discipline Considerations* section of this SCC.

Mandatory DAEP placements may result in placement for up to 120 school days. Discretionary DAEP placements may result in placement for up to 60 school days.

In order for a day to successfully count toward the DAEP assignment, the student must be present for the entire day, arrive on time, complete all assignments, follow all rules, and engage in no additional violations of the SCC.

Students may reduce DAEP placement days by successfully complying with DAEP policies and Campus expectations.

Students placed in DAEP at the end of one school year may be required to complete the assigned term at the beginning of the next school year.

**Drug and Alcohol Offenses.** Eanes ISD believes that all students have a right to participate in learning, extra-curricular, and all other activities in a drug and alcohol-free environment. Drug and alcohol offenses are serious, and disciplinary actions are intended to discourage drug and alcohol use by students.

The minimum mandatory DAEP placements for selling, giving, delivering, possessing, using, or being under the influence of marijuana, a controlled substance (see *definitions*), a dangerous drug (see *definitions*), or an alcoholic beverage (see *definitions*) in any amount not punishable as a felony will be 45 days. Students may reduce this placement by successfully completing a District-approved substance abuse program. Students may also further reduce placement days by successfully complying with DAEP policies and Campus expectations.

In accordance with this SCC, students may be expelled for multiple infractions.

**Exceeds One Year.** The length of DAEP placement may not exceed one year unless, after review, the District determines that the student is a threat to the safety of other students or to district employees.

**Exceeds School Year.** For DAEP placement to extend beyond the end of the school year, the administrator must determine that: (1) the student's presence in the regular classroom or campus presents a danger of physical harm to the student or others; or (2) the student has engaged in serious or persistent misbehavior (see *definitions*) that violates the SCC.

**Exceeds 60 Days/Grading Period.** If the DAEP placement extends beyond 60 days or the end of the next grading period, whichever is sooner, the student and the student's parent/guardian may participate in a proceeding before the Superintendent or designee. The decision of the Superintendent or designee is final and may not be appealed.

## APPEALS

Student or parent appeals regarding a student's placement in the DAEP should be addressed in accordance with Board policy FNG(LOCAL). A copy of the policy may be obtained at the campus office or on the District's website under the *Board Policy Online* page: http://www.eanesisd.net/board.  Appeals shall begin at Level One with the principal or designee.  The decision of the Superintendent or designee at Level Two is final and may not be appealed.

Disciplinary consequences shall not be delayed or deferred pending the outcome of an appeal.

**OTHER DAEP ISSUES**

**Report to Law Enforcement.** Suspected drug or alcohol use, including inappropriate use of prescription drugs, and a report to law enforcement required by law, shall be made by the District.

**No Participation in Activities While in DAEP.** Students placed in DAEP are not allowed to attend or participate in school-sponsored or school-related extracurricular or co-curricular activities during the period of DAEP placement. This restriction applies until the student fulfills the DAEP assignment at this or another school district. A student placed in the DAEP may not visit any District campus unless arrangements have been made with the campus principal.

**Impact on Extracurricular Code of Conduct**. The administration of consequences under the Eanes ISD Extra Curricular Code of Conduct ("ECC") is separate from the administration of any discipline under the SCC. Discipline imposed under the SCC will not limit or prevent the imposition of consequences in accordance with the ECC. Moreover, the modification of any discipline imposed under the SCC shall not affect the consequences that may have been imposed under the ECC.

**Impact on Graduation Activities.** For graduating seniors who are in DAEP during the last week of school, the DAEP placement will continue through the last instructional day. The student will be allowed to participate in commencement exercises and related graduation activities unless otherwise specified in the DAEP placement order.

**Impact on Other Privileges**. Exemptions from exams and other privileges shall be determined by the principal. The modification of any discipline imposed under the SCC does not automatically constitute a basis for restoring an exemption or other privileges. Summer programs provided by the district may serve students assigned to the DAEP in conjunction with other students.

**Impact on Academics**. While every effort is made for students to continue to perform at grade level, the DAEP setting is not intended to replicate a regular classroom, including the manner in which instruction is delivered. Texas Education Code 37.008(a)(4) requires each school district to provide a disciplinary alternative education program that focuses on English language arts, mathematics, science, history, and self- discipline.

A student's four-year graduation plan may not be altered when the student is assigned to a DAEP. The District will offer a student removed to a DAEP an opportunity to complete a foundation curriculum course in which the student was enrolled at the time of removal, before the beginning of the next school year, through any method available, including a correspondence course, distance learning, or summer school. The parent or guardian of a student placed in DAEP shall be given written notice of the student's opportunity to complete coursework required for graduation, at no cost to the student.

The District shall administer the required pre-and post-assessments for students assigned to DAEP for a period of 90 days or longer in accordance with administrative procedures for administering other diagnostic or benchmark assessments.

**Transition Services.** In accordance with law and District procedures, campus staff shall provide transition services to a student returning to the regular classroom from DAEP. See policy FOCA (LEGAL) for more information.

**Transportation.** A student placed in DAEP will not be provided transportation unless he or she is a student with a disability who has transportation designated as a related service in the student's IEP.

**Periodic Review.** The District will review a student's DAEP placement and academic status every 120 calendar days. In the case of a high school student, the student's progress toward graduation will be reviewed and a graduation plan will be established. At the review, the student or the parent/guardian will have an opportunity to present reasons for the student's return to the regular classroom or campus. The student may not be returned to the classroom of a teacher who removed the student without that teacher's consent.

**Additional Misconduct.** If during the term of DAEP placement the student engages in additional conduct for which placement in a DAEP or expulsion is required or permitted, additional conferences may be conducted and additional discipline may be imposed.

**Effect of Student Withdrawal.** When a student withdraws from school before a DAEP placement order is completed, the District may complete the proceedings and issue a DAEP placement order. If the student re- enrolls in the District during the same or subsequent school year, the District may enforce the DAEP placement order at that time, minus any portion of the placement that was served by the student during enrollment in another district. If the administrator does not issue a DAEP placement order after the student withdraws, the next district in which the student enrolls may complete the proceedings and issue a DAEP placement order.

**Student Transfers.** Students assigned to DAEP in another Texas district, a Texas open-enrollment charter school, or an out-of-state school district at the time of enrollment into the District will be placed into the District's DAEP to complete the term of their DAEP placement. In order to continue an out-of-state DAEP placement, the basis for the DAEP placement must also be a reason for DAEP placement in the District. If the out-of-state DAEP placement period exceeds one year, the District will reduce the period of placement so that the total placement does not exceed one year unless the District determines that the student is a threat to the safety of others or extended placement is in the best interests of the student.

**Review After Receiving Notice of Criminal Proceedings.** The review and appeal process described below does not apply if the student was placed in DAEP as required by law for conduct occurring on or within 300 feet of school property, at a school-sponsored or school-related activity, or for a false alarm or report or terroristic threat involving a public school.

If the District receives notice that prosecution of a student's case was refused and no formal proceedings, deferred adjudication, or deferred prosecution will be initiated or a court or jury found the student not guilty or did not engage in delinquent conduct or conduct indicating a need for supervision and dismissed the student's case with prejudice, the District will review the student's DAEP placement and will schedule a review with the student's parent/guardian no later than the third day after receiving notice. The student will not be returned to the regular classroom before the review. After reviewing the notice and receiving information from the student's parent/guardian, the administrator may only continue the student's DAEP placement if the administration has reason to believe the student's presence in the regular classroom threatens the safety of others.

The administrator's decision may be appealed to the Board. In the event of an appeal, at the next scheduled meeting the Board will: (1) review the notice, (2) hear statements from the student, the student's parent/guardian, and the administrator, and (3) confirm or reverse the decision of the administrator.

If the Board confirms the decision of the administrator, the student and the student's parent/guardian have the right to appeal to the Commissioner of Education. The student may not be returned to the regular classroom while the appeal is pending.

## PARTICULAR RULES FOR REGISTERED SEX OFFENDERS

The general SCC rules for DAEP placement apply to registered student sex offenders (see *definitions)* except as modified in this section.

**Placement.** Upon receiving notification in accordance with state law that a student is currently required to register as a sex offender, the District must remove the student from the regular classroom and determine appropriate placement. The placement shall be in DAEP unless: (1) the student is ordered to attend a Juvenile Justice Alternative Education Program (JJAEP) by a court, or (2) if permitted by agreement between the District and the JJAEP.

**Length of Placement.** Registered sex offenders under court supervision will be placed in DAEP for a minimum of 90 school days, which is the equivalent of one semester.  Registered sex offenders who are not under any form of court supervision but are assigned to DAEP must serve a minimum of 90 school days, which is the equivalent of one semester.

**Transfers.** Registered sex offenders (whether under court supervision or not) that transfer into the District will be required to complete the DAEP assignment assessed by the previous school district, but will receive credit for any time already spent in DAEP.  In making a decision regarding the placement of a registered sex offender that transfers into the District, the District will consider the recommendation of the review committee as described in the *Periodic Review* section described below.

**Periodic Review**. After 80 school days in DAEP, a review committee will determine by majority vote and recommend to the Superintendent or designee whether the student should remain in DAEP or be returned to the regular classroom. In the case of a high school student, the student's progress toward graduation and the student's graduation plan shall also be reviewed.  At the review, the student or the student's parent/guardian shall have the opportunity to present arguments for the student's return to the regular classroom or campus.

The District will follow the committee's decision to return the student to the regular classroom unless the student's presence in the regular classroom is a threat to the safety of others, is detrimental to the educational process, or is not in the best interests of the District's students. Conversely, the District will follow the committee's decision to continue the student's placement in DAEP unless the student's presence in the regular classroom is not a threat to the safety of others, is not detrimental to the educational process, or is not contrary to the best interests of the District's students.

If the student remains in DAEP, the review committee will re-consider the student's placement before the beginning of the next school year.

The placement review of a student with a disability who receives special education services must be made by the ARD committee.

**Appeals.** DAEP placement may be appealed as described in District policy FNG. However, the appeal is limited to the factual question of whether the student is required to register as a sex offender under the law. Any decision of the District's Board of Trustees is final and may not be appealed.

## EXPULSION

**REASONS FOR MANDATORY EXPULSION**

**School-Related.** A student must be expelled for any of the following misconduct that occurs on school property or while attending a school-sponsored or school-related activity on or off school property:

- Brings to school or possesses at school, including any setting that is under the District's control or supervision for the purpose of a school activity, a firearm, as defined by federal law (see *definitions*).
- Unlawfully carries on or about the student's person a handgun* or a location-restricted knife, as defined by state law. (see *definitions*)

    *NOTE*: A student will not be expelled solely for using, exhibiting, or possessing a firearm in the following circumstances: (1) at an approved target range facility not located at a school campus, (2) while participating in or preparing for a school-sponsored shooting sports competition, or (3) while participating in or preparing for a shooting sports educational activity sponsored or supported by the Parks and Wildlife Department or a shooting sports sanctioning organization with the Department so long as the firearm is not brought on school property.

- Possesses, manufactures, transports, repairs, or sells a prohibited weapon, as defined by state law (see *definition)*
- Engages in conduct that contains the elements of the following offenses as defined in the Texas Penal Code: (1) aggravated assault, (2) sexual assault, (3) aggravated sexual assault (4) arson, (5) murder, (6) capital murder, (7) criminal attempt to commit murder or capital murder, (8) indecency with a child, (9) aggravated kidnapping, (10) aggravated robbery, (11) manslaughter, (12) criminally negligent homicide, or (13) continuous sexual abuse of a young child or disabled individual.
- Sells, gives, delivers, possesses, uses, or is under the influence of a controlled substance (see *definitions*) or a dangerous drug (see *definitions*) if the behavior is punishable as a felony.
- Commits a serious act or offense while under the influence of an alcoholic beverage (see *definitions*) if the behavior is punishable as a felony.

A student will also be expelled for any of the following offenses that occur on school property, within 300 feet of school property as measured from any point on the District's real property boundary line, or while attending a school-sponsored or school-related activity on or off school property:

- Sells, gives, delivers, possesses, uses, or is under the influence of any amount of marijuana, a controlled substance, dangerous drug, or alcoholic beverage, if it is the second infraction in the same school year and the conduct is not punishable as a felony. A student with a valid

prescription for low-THC cannabis as authorized by Chapter 487 of the Health and Safety Code does not violate this provision with regard to possession and use.

- Commits a serious act while under the influence of an alcoholic beverage if it is the second infraction in the same school year and the conduct is not punishable as a felony.
- Engages in misconduct that contains the elements of an offense relating to abusable volatile chemicals (see definitions) if it is the second infraction in the same school year.

**Regardless of Location.** A student must be expelled if the student engages in the following misconduct, regardless of whether the conduct occurred on or off campus:

- Retaliates against a school employee or volunteer by committing a state-mandated expellable offense.
- Issues a false alarm or report (see *definitions*) (including a bomb threat) or a terroristic threat (see *definitions*) involving a public school and it is the second infraction.

## REASONS FOR DISCRETIONARY EXPULSION

**School-Related.** A student may be expelled for any of the following offenses that occur on school property, within 300 feet of school property as measured from any point on the District's real property boundary line, or while attending a school-sponsored or school-related activity on or off school property:

- Commits an assault (see *definitions*) resulting in bodily injury to a school employee or volunteer.
- Engages in deadly conduct (see *definitions*).
- Engages in a second or multiple infraction(s) that are reasons for mandatory DAEP placement.

**Three Hundred Feet.** Additionally, a student may be expelled for any of the following offenses that occur within 300 feet of school property as measured from any point on the District's real property boundary line:

- Possesses a firearm, as defined by federal law (see *definitions*).
- Unlawfully carries on or about the student's person a handgun or a location-restricted knife, as defined by state law. (see *definitions*)
- Possesses, manufactures, transports, repairs, or sells a prohibited weapon, as defined by state law (see *definitions*).
- Engages in the following misconduct as defined in the Texas Penal Code: (1) aggravated assault, (2) sexual assault (3) aggravated sexual assault (4) arson, (5) murder, (6) capital murder, (7) criminal attempt to commit murder or capital murder, (8) indecency with a child, (9) aggravated kidnapping, (10) aggravated robbery, (11) manslaughter, (12) criminally negligent homicide, or (13) continuous sexual abuse of a young child or children.
- Sells, gives, delivers, possesses, uses, or is under the influence of marijuana, a controlled substance (see *definitions*), a dangerous drug (see *definitions*), or alcohol if the behavior is punishable as a felony.

- Commits a serious or offense while under the influence of an alcoholic beverage (see *definitions*) if the behavior is punishable as a felony.

**At School.** A student may be expelled for engaging in documented serious misbehavior (see *definitions)* while the student is placed in DAEP or on the DAEP site/campus despite documented behavioral interventions.

**Regardless of Location.** A student may be expelled if the student engages in the following misconduct regardless of whether the conduct occurred on or off campus:

- Commits aggravated assault, sexual assault, aggravated sexual assault, murder, capital murder, criminal attempt to commit murder, or aggravated robbery against another student.
- Retaliates against a school employee or volunteer by committing an assault (see *definitions*) resulting in bodily injury.
- Issues a false alarm or report (see *definitions*) (including a bomb threat) or a terroristic threat (see *definitions*) involving a public school.
- Engages in criminal mischief if the damage is $1,500 or more.
- Commits a state-mandated expellable offense on the school property of another Texas school district or while attending a school-sponsored or school-related activity of another Texas school district.
- Engages in breach of computer security by accessing a computer, computer network or computer system owned by or operated on behalf of a school district and knowingly alters, damages, or deletes school district property or information or breaches any other computer, computer network, or computer system.

**Bullying.** A student may be removed from class and placed in DAEP or expelled if the student:

- Engages in bullying (see *definitions)* that encourages a student to commit or attempt to commit suicide;
- Incites violence against a student through group bullying; or
- Releases or threatens to release intimate visual material (see *definitions*) of a minor or a student who is 18 years of age or older without the student's consent.

**Title 5 Felonies Regardless of Location.** In addition to the expellable conduct listed above, a student may also be expelled and placed in DAEP or JJAEP if the student:

- Is arrested for, charged with, or convicted of a Title 5 felony offense (see *definitions*) or aggravated robbery;
- Received deferred adjudication or deferred prosecution for a Title 5 felony offense or aggravated robbery;
- Is on probation for a Title 5 felony offense or aggravated robbery;

- Was found by a court or jury to have engaged in delinquent conduct for a Title 5 felony offense or aggravated robbery, or
- Has been referred to a juvenile court for delinquent conduct based on a Title 5 felony offense or aggravated robbery.

Before a decision is made, the student must have a hearing before the Board or its designee, who must determine that, in addition to the circumstances above that allow for the expulsion, the student's presence in the regular classroom:

- Threatens the safety of other students or teachers;
- Will be detrimental to the educational process; or
- Is not in the best interests of the District's students.

Any decision of the Board or its designee under this section is final and may not be appealed.

In this circumstance, expulsion to an alternative setting may be ordered regardless of: (1) the date on which the conduct occurred, (2) the location at which the conduct occurred, (3) whether the student was enrolled in the District at the time the conduct occurred, or (4) whether the student successfully completed any court disposition requirements regarding the conduct.

A student may be subject to an expulsion under this circumstance until: (1) the student graduates from high school, (2) the charges are dismissed or reduced to a misdemeanor, (3) the student completes the term of the placement, or (4) the District assigns the student to another program. The student will be entitled to the same periodic review afforded to other students in alternate settings.

A student who enrolls in the District before completing a placement under this section from another school district must complete the term of the placement.

## EMERGENCY EXPULSION

An administrator may order the immediate expulsion of a student if the administrator reasonably believes the emergency expulsion is necessary to protect persons or property from imminent harm. The reason for the emergency expulsion must also be a reason for which expulsion could be ordered on a non-emergency basis. At the time of the emergency expulsion, the student will be told the reason for the action.

No later than the tenth day after the date of emergency expulsion, the student will be given a hearing as required for a regular expulsion; see below.

**PROCEDURE FOR EXPULSION**

**Hearing.** Students alleged to have committed an expellable offense will receive a hearing before the campus behavior coordinator/other administrator within a reasonable time following the alleged misconduct. The student's parent/guardian will be informed of the basis for the proposed expulsion and be invited in writing to attend the hearing. After making an effort to inform the student and parent/guardian of the hearing, the District may hold the hearing regardless of whether the student or the student's parent/guardian attends. At the hearing, the student is entitled to:

- Representation by an adult, including the student's parent/guardian, who can provide guidance to the student and who is not an employee of the District;
- An opportunity to question the District's witnesses; and
- An opportunity to testify and to review and present evidence and witnesses in the student's defense.

**Interim Placement.** Until an expulsion hearing can be held, the student may be placed in another appropriate classroom, in-school suspension, out-of-school suspension, or DAEP.

**Expulsion Order.** If the outcome of the expulsion hearing is that the student will be expelled, the campus behavior coordinator or other administrator will issue an expulsion order and provide a copy to the student and the student's parent/guardian. If the duration of the expulsion differs from the guidelines in this SCC, the expulsion order will give notice of the inconsistency.

The District will send a copy of the expulsion order to the juvenile court no later than the second business day after the expulsion hearing. A copy of the expulsion order will be included with any records sent to a school where the student seeks to enroll. The enrolling school district has discretion to enforce the expulsion order.

**LENGTH OF EXPULSION**

The duration of the expulsion will be determined on a case-by-case basis using the criteria identified in the *Discipline Considerations* section of this SCC.

Mandatory expulsions may result in expulsion for up to 180 school days. Discretionary expulsions may result in expulsion for up to 90 school days.

Students who bring a firearm (as defined by federal law) to school will be expelled from the regular classroom for at least one calendar year except as modified by the administrator on a case-by-case basis.

Students expelled at the end of one school year may be required to complete the term of their expulsion at the beginning of the next school year.

**Exceeds One Calendar Year.** An expulsion will not exceed one calendar year unless, after review, the District determines that: (1) the student is a threat to the safety of other students or to District employees; or (2) extended expulsion is in the best interest of the student.

## APPEALS

Student/parent appeals regarding a student's expulsion should be addressed in accordance with Board policy FNG(LOCAL). A copy of the policy may be obtained at the campus office or on the District's website under the *Board Policy Online* page: http://www.eanesisd.net/school-board. Appeals shall begin at Level Three with the Board.

Consequences will not be delayed or deferred pending the outcome of the appeal.

## OTHER EXPULSION ISSUES

**Academic Impact.** Students will not receive academic credit for work missed during the period of expulsion unless the student is enrolled in a (JJAEP) or other District-approved program or as required by IDEA or Section 504.

**Transition Services.** In accordance with law and District procedures, campus staff shall provide transition services to a student returning to the regular classroom from JJAEP. See policy FODA (LEGAL) for more information.

**Participation in Activities.** Expelled students are prohibited from being on school grounds or from attending or participating in school-sponsored or school-related activities while expelled.

**Additional Misconduct.** If during the term of expulsion, the student engages in additional conduct for which placement in a DAEP or expulsion is required or permitted, additional proceedings may be conducted and additional discipline may be imposed.

**Age Restrictions.** Students under the age of ten that engage in expellable behavior will not be expelled, but will be placed in DAEP.

**Effect of Student Withdrawal.** If a student withdraws from the District before the expulsion hearing is conducted, the District may proceed with conducting the hearing after sending written notice to the parent/guardian and student. If the student re-enrolls during the same or subsequent school year, the District may enforce the expulsion order at that time; students will be credited for any expulsion period that was served by the student while enrolled in another district.

If the administrator does not issue an expulsion order after the student withdraws, the next district in which the student enrolls may complete the proceedings and issue an expulsion order.

**Student Transfers.** The District will continue the expulsion of students expelled from either another Texas school district or from an out-of-state school district for behavior that is also a reason for expulsion in the District, until the term of expulsion has been served. If the out-of-state expulsion exceeds one year, the District will reduce the period of the expulsion so that the total expulsion does not exceed one year unless the District determines that the student is a threat to the safety of others or extended placement is in the best interest of the student.

## DEFINITIONS

**Abusing:** Using improperly or excessively.

**Abusable Volatile Chemicals:** Those substances as defined in Texas Health and Safely Code § 485.001.

**Alcoholic Beverage:** Those substances as defined in Texas Alcoholic Beverage Code § 1.04.

**Armor-Piercing Ammunition:** Handgun ammunition that is designed primarily for the purpose of penetrating metal or body armor and to be used primarily in pistols and revolvers or other firearms.

**Assault:** For discipline purposes, intentionally, knowingly, or recklessly causing bodily injury to another.

**Bodily Injury:** Physical pain, illness, or impairment of a physical condition.

**Bullying:** A single significant act or a pattern of acts by one or more students directed at another student that exploits an imbalance of power and involves engaging in written or verbal expression, expression through electronic means, or physical conduct that:

1. Has the effect or will have the effect of physically harming a student, damaging a student's property, or placing a student in reasonable fear of harm to the student's person or of damage to the student's property;
2. Is sufficiently severe, persistent, or pervasive enough that the action or threat creates an intimidating, threatening, or abusive educational environment for a student;
3. Materially and substantially disrupts the educational process or the orderly operation of a classroom or school; or
4. Infringes on the rights of the victim at school.

This state law on bullying prevention applies to:

1. Bullying that occurs on or is delivered to school property or to the site of a school-sponsored or school-related activity on or off school property;
2. Bullying that occurs on a publicly or privately owned school bus or vehicle being used for transportation of students to or from school or a school-sponsored or school-related activity; and
3. Cyberbullying that occurs off school property or outside of a school-sponsored or school-related activity if the cyberbullying interfered with a student's educational opportunities or substantially disrupts the orderly operation of a classroom, school, or school-sponsored or school-related activity.

See District policy FFI for additional information regarding bullying.

**Club:** An instrument specially designed, made, or adapted for the purpose of inflicting serious bodily injury or death by striking a person with the instrument, including a blackjack, nightstick, mace, and tomahawk.

**Controlled Substance:** Substances as defined in Chapter 481 of the Texas Health & Safety Code or 21 U.S.C. § 8O1 et seq.  This definition includes synthetic drugs such as synthetic cannabinoids (a.k.a. "Spice" or "K2") and substituted cathinones (a.k.a. "bath salts").

**Criminal Street Gang:** Three or more persons having a common identifying sign or symbol or an identifiable leadership which continuously or regularly associate in the commission of criminal activities.

**Cyberbullying:** Bullying that is done through the use of any electronic communication device, including through the use of a cellular or other type of telephone, a computer, a camera, electronic mail, instant messaging, text messaging, a social media application, an Internet website, or any other Internet-based communication tool.

**Dangerous Drug:** Substances as defined in Chapter 483 of the Texas Health and Safety Code.

**Dating Violence:** When a person in a current or past dating relationship uses physical, sexual, verbal, or emotional abuse to harm, threaten, intimidate, or control another person in the relationship. Dating violence also occurs when a person commits these acts against a person in a marriage or dating relationship with the individual who is or was once in a marriage or dating relationship with the person committing the offense, as defined by Section 71.0021 of the Family Code.

**Deadly Conduct:** Recklessly engaging in conduct that places another in imminent danger of serious bodily injury, such as by knowingly discharging a firearm in the direction of an individual, habitation, building, or vehicle.

**E-Cigarette:** An electronic cigarette or any other device that simulates smoking by using a mechanical heating element, battery or electronic circuit to deliver nicotine or other substances to the individual inhaling from the device or a consumable liquid solution or other material aerosolized or vaporized during the use of an electronic cigarette or other device described by this provision. Includes any device that is manufactured, distributed or sold as an e-cigarette, e-cigar, or epipe or under another name or description, and a component, part or accessory for the device.

**Explosive Weapon:** Any explosive or incendiary bomb, grenade, rocket, or mine that is designed, made, or adapted for the purpose of inflicting serious bodily injury, death, or substantial property damage, or for the principal purpose of causing such a loud report as to cause undue public alarm or terror. It includes a device designed, made or adapted for delivery or shooting an explosive weapon.

**False Alarm or Report:** Under Texas Penal Code 42.06, knowingly initiating, communicating, or circulating a report of a present, past, or future bombing, fire, offense, or other emergency that is known to be false or baseless and that would ordinarily: (1) cause action by an official or volunteer agency organized to deal with emergencies; (2) place a person in fear of imminent serious bodily injury; or (3) prevent or interrupt the occupation of a building, room, or place of assembly.

**Fighting:** Two or more persons engaged in any mutually violent or physically aggressive contact toward each other such as scuffling, pushing, shoving, or hitting.

**Firearm (Federal Law):** (1) any weapon, including a starter gun, that will, is designed to, or may readily be converted to expel a projectile by the action of an explosive; (2) the frame or receiver of any such weapon; (3) any firearm muffler or firearm silencer, defined as any device for silencing, muffling, or diminishing the report of a portable firearm; or (4) any destructive device, such as any explosive, incendiary or poison gas bomb, or grenade.

**Gang:** An organization, combination, or association of persons composed wholly or in part of students that: (1) seeks to perpetuate itself by taking in additional members on the basis of the decision of the membership rather than on the free choice of the individual, or (2) that engages in illegal and/or violent activities. In identifying gangs and associated gang attire, signs, or symbols, the District will consult with law enforcement authorities.

**Gender-Based Harassment**: Physical, verbal, or nonverbal conduct based on the student's gender, the student's expression of characteristics perceived as stereotypical for the student's gender, or the student's failure to conform to stereotypical notions of masculinity or femininity, if the conduct is so severe, persistent, or pervasive that the conduct affects a student's ability to participate in or benefit from an educational program or activity, or creates an intimidating, threatening, hostile, or offensive educational environment; has the purpose or effect of substantially or unreasonably interfering with the student's academic performance; or otherwise adversely affects the student's educational opportunities.

**Graffiti:** Making marks of any kind on the tangible property of another without the effective consent of the owner.  Includes markings with paint, an indelible pen or marker, or an etching or engraving device. The markings may include inscriptions, slogans, drawings, or paintings.

**Handgun:** Handgun is defined by Texas Penal Code 46.01 as any firearm that is designed, made, or adapted to be fired with one hand.

**Harassment:** Includes:

1. Conduct that meets the definition established in district policies DIA (LOCAL) and FFH (LOCAL);
2. Conduct that threatens to cause harm or bodily injury to another person, including a District student, employee, board member, or volunteer; is sexually intimidating; causes physical damage to the property of another student; subjects another student to physical confinement or restraint; or maliciously and substantially harms another student's physical or emotional health or safety, as defined in Texas Education Code 37.001(b)(2); or
3. Conduct that is punishable as a crime under Texas Penal Code 42.07, including the following types of conduct if carried out with the intent to harass, annoy, alarm, abuse, torment, or embarrass another:
   a. Initiating communication and, in the course of the communication, making a comment, request, suggestion, or proposal that is obscene, as defined by law;
   b. Threatening, in a manner reasonably likely to alarm the person receiving the threat, to inflict bodily injury on the person or to commit a felony against the person, a member of the person's family or household, or the person's property;
   c. Conveying, in a manner reasonably likely to alarm the person receiving the report, a false report, which is known by the conveyor to be false, that another person has suffered death or serious bodily injury;
   d. Causing the telephone of another to ring repeatedly or making repeated telephone communications anonymously or in a manner reasonably likely to harass, annoy, alarm, abuse, torment, embarrass, or offend another;
   e. Making a telephone call and intentionally failing to hang up or disengage the connection;
   f. Knowingly permitting a telephone under the person's control to be used by another to commit an offense under this section;
   g. Sending repeated electronic communications in a manner reasonably likely to harass, annoy, alarm, abuse, torment, embarrass, or offend another;
   h. Publishing on an internet website, including a social media platform, repeated electronic communications in a manner reasonably likely to cause emotional distress, abuse, or torment to another person, unless the communications are made in connection with a matter of public concern, as defined by law; or
   i. Making obscene, intimidating, or threatening telephone calls or other electronic communications from a temporary or disposable telephone number provided by an internet application or other technological means.

**Hazing:** Defined by Texas Education Code 37.151 as an intentional, knowing, or reckless act, on or off the campus, by one person alone or acting with others, directed against a student for the purposes of pledging, initiation into, affiliation with, holding office in, or maintaining membership in a student organization (including student government, band or a musical group, or an academic, athletic, dance or cheerleading team) if the act:

1. Is any type of physical brutality;
2. Subjects the student to an unreasonable risk of harm or that adversely affects the student's mental or physical health or safety, including sleep deprivation, exposure to the elements,

confinement in a small space, calisthenics, or consumption of food, liquids, drugs, or other substances;

3. Induces, causes, or requires the student to perform a duty or task that violates the Texas Penal Code; or

4. Involves coercing a student to consume a drug or alcoholic beverage in an amount that would lead a reasonable person to believe the student is intoxicated.

**Hemp:** As defined in Title 5, Chapter 121 of the Texas Agriculture Code.

**Hit List:** List of people targeted to be harmed using a firearm, knife, or any other object to be used with intent to cause bodily harm.

**Indecent Exposure:** Those acts defined in Texas Penal Code section 21.08.

**Intent:** The design, resolve, determination, or state of mind with which a person acts, ordinarily proven through inferences drawn from the act and/or circumstances surrounding the act.  Intent includes the conscious objective or desire to engage in the conduct or cause the result, an awareness that the conduct is reasonably certain to cause the result, or disregard of a substantial and justifiable risk when there is an awareness that the circumstances exist or the result will occur.  The fact that a student may not have been motivated by a desire to violate the SCC does not preclude imposing a disciplinary consequence so long as the student intended to engage in the underlying conduct that violated the SCC.

**Intimate Visual Material:** Visual material defined by Texas Civil Practice and Remedies Code 98B.001 and Texas Penal Code 21.16.

**Knife:** A bladed hand instrument that is capable of inflicting serious bodily injury or death by cutting or stabbing.

**Knuckles:** Any instrument consisting of finger rings or guards made of a hard substance that is designed, made, or adapted for the purpose of inflicting serious bodily injury or death by striking a person with a fist enclosed in the knuckles.

**Location-Restricted Knife:** A knife with a blade over 5 ½ inches.

**Machine Gun:** Any firearm capable of shooting more than two shots automatically, without manual reloading, by a single function of the trigger

**Paraphernalia:** Any article or device used or intended for use to inject, ingest, inhale, or otherwise introduce marijuana, a controlled substance, or a dangerous drug into the human body, including but not limited to roach clips, rolling papers, needles, baggies with residue, razor blades, or pipes.

**Persistent Misbehavior:** Two or more violations of the SCC or repeated occurrences of the same violation.

**Possession:** To have in or on: (1) a student's person or in the student's personal property, such as the student's clothing, purse, or backpack; (2) in any vehicle used by the student for transportation to or from school or school- related activities, such as an automobile, truck, motorcycle, or bicycle; (3) any other school property used by the student such as a locker or desk; or (4) telecommunications or electronic devices.

**Prohibited Weapons:** A prohibited weapon includes the following items: armor-piercing ammunition, chemical dispensing device, explosive weapon, knuckles, machine gun, short-barrel firearm, switchblade knife, zip gun, improvised explosive device, or a tire deflation device.

**Public Lewdness:** Those acts defined in Texas Penal Code § 21.07.

**Reasonable Belief:** That which an ordinary person of average intelligence and sound mind would believe. Chapter 37 requires certain disciplinary decisions when the superintendent or designee has a reasonable belief that a student engaged in conduct punishable as a felony offense. In forming such a reasonable belief, the superintendent or designee may use all available information and must consider the information furnished in the notice of a student's arrest under Article 15.27 of the Code of Criminal Procedure.

**Retaliation:** Harming or threatening to harm another: (1) on account of their service as a District employee or volunteer, (2) to prevent or delay another's service to the District, or (3) because the person intends to report a crime

**Self-Defense:** To claim self-defense, the student must (1) be without fault in provoking the encounter and not act as the aggressor, and (2) use the minimum force required to remove himself or herself from immediate danger of harm. Actions that escalate or continue the encounter will not be considered self-defense. Interactions prior to the encounter will also be considered.

**Serious Misbehavior:** To engage in (1) deliberate violent behavior that poses a direct threat to the health or safety of others, (2) extortion to gain money or other property by force or threat, (3) coercion, meaning to threaten to either commit an offense; inflict bodily harm; accuse a person of any offense; expose a person to hatred, contempt, or ridicule; or to harm the credit of any person, (4) public lewdness

as defined in Texas Penal Code § 21.07, (5) indecent exposure as defined in Texas Penal Code § 21.08, (6) criminal mischief as defined in Texas Penal Code § 28.03, (7) personal hazing as defined in Texas Education Code § 37.152, or (8) harassment of a student or District employee as defined in Texas Penal Code § 42.07 (a)(1).

**Sex Offender:** A student required to register as a sex offender under Chapter 62 of the Code of Criminal Procedure for an offense committed on or after September 1, 2007. The term does not include a student who: (1) is no longer required to register as a sex offender under Chapter 62, (2) is exempt from registering as a sex offender under Chapter 62, or (3) receives an early termination of the obligation to register as a sex offender under Chapter 62.

**Sexting:** The electronic transfer of a sexually suggestive or sexually explicit photo, video, or message by using a telecommunications or electronic device

**Sexual Harassment:** Unwelcome sexual advances, requests for sexual favors, and other verbal or physical conduct of a sexual nature that is so severe, persistent or pervasive that it has the purpose or effect of unreasonably interfering with a student's performance; creates an intimidating, hostile, or offensive educational environment; affects a student's ability to participate in or benefit from an educational program or activity; otherwise adversely affects the student's educational opportunities, or is prohibited by District policy FFH or FNC.

**Short-Barrel Firearm:** A rifle with a barrel length of less than 16 inches or a shotgun with a barrel length of less than 18 inches, or any weapon made from a rifle or shotgun if, as altered, has an overall length of less than 26 inches.

**Switchblade Knife:** Any knife with a blade that folds, closes, or retracts into the handle or sheath and that opens automatically by pressing a button or other device located on the handle or opens or releases a blade from the handle or sheath by the force of gravity or centrifugal force. It does not include a knife that has a spring, detent, or other mechanism designed to create a bias toward closure and that requires exertion applied to the blade by hand, wrist or arm to overcome the bias toward closure and open the knife (also known as one- handed openers or assisted openers).

**Telecommunications Device:** Any type of device that: (1) emits an audible signal, vibrates, displays a message, or otherwise summons or delivers a communication to the possessor, or (2) permits the recording, transmission, and/or receipt of messages, voices, images, or information in any format or media, electronic or otherwise. It does not include an amateur radio under control of someone with an amateur radio license.

**Terroristic Threat:** Threats to commit any offense involving violence to any person or property with intent to: (1) cause a reaction by an official or volunteer agency organized to deal with emergencies; (2) place any person in fear of imminent serious bodily injury; (3) prevent or interrupt the occupation or use of a building, room, place of assembly, place to which the public has access, place of employment or occupation, aircraft, automobile, or other form of conveyance, or other public place; (4) cause impairment or interruption of public communications, public transportation, public water, gas, or power supply or other public service; (5) place the public or a substantial group of the public in fear of serious bodily injury; or (6) influence the conduct or activities of a branch or agency of the federal government, the state, or a political subdivision of the state (including the District).

**Title 5 Offenses:** Those crimes listed in Title 5 of the Texas Penal Code that typically involve injury to a person and may include: murder; capital murder; manslaughter; criminally negligent homicide; unlawful restraint; kidnapping; aggravated kidnapping; trafficking of persons; unlawful transport; assault; aggravated assault; sexual assault; aggravated sexual assault; sexual coercion; bestiality; improper relationship between educator and student; indecency with a child; injury to a child, an elderly person, or a disabled person; abandoning or endangering a child; improper photography or visual recording; deadly conduct; terroristic threat; aiding a person to commit suicide; harassment by a person in a correctional facility; continuous sexual abuse of a young child or disabled individual; and tampering with a consumer product.

**Under the Influence:** When in the employee's professional judgment, the student does not have the normal use of mental or physical faculties likely attributable to the student's use of a prohibited substance. Such impairment may be evidenced by the symptoms typically associated with drug or alcohol use, including but not limited to an odor of alcohol on a student's breath or other abnormal or erratic behavior or by the student's admission. The student need not be legally intoxicated.

**Use:** With respect to substances, voluntarily injecting, ingesting, inhaling, or otherwise introducing a prohibited substance into the body. With respect to objects or devices, puffing into action or service or carrying out an action or purpose with the object or device.

**Zip Gun:** A device or combination of devices that was not originally a firearm and is adapted to expel a projectile through a smooth-bare or rifled-bare barrel by using the energy generated by an explosion or burning substance.

**Exhibit B**

```
1stdsc22.p 79-4              HILL COUNTRY MIDDLE SCHOOL              07/24/24         Page:1
05.24.06.00.00              STUDENT DISCIPLINE REPORT                                7:51 AM
```

| Off/Act Type | Per | Sch | Location | P N | Points | Day/ Hrs | Time | Served | Diff | Reason | Incident/ status |
|---|---|---|---|---|---|---|---|---|---|---|---|

Sch: 041  Gr: 08 - 2029 Type: R          Adv:                    HM:

2024 Entity: 041

Offense  05/23/2024        AB  Assault- attemt      041  COURT YARD      Y   0.00                                32431
Disc Officer:  CASSIE WINTER        Bus:        Referred By : CASSIE WINTER              Date Entered: 06/04/24

Initiated physical contact by pushing another student 3 times, slaps and then hits that same
student two times, pushes that same student, who is retreating, against a railing and punches him
in the head and face approximately 8 times, and chases that same student approximately 40 feet,
pushes him down and hits him in the head approximately 7 times while the student is crouched with
his arms covering his head.

Action          03  EXPL CAMPUS AEP      041                      Y   0.00  Day  45.00    1.00 SCH YR ENDED    Open
Follow-Up By:  CASSIE WINTER        Susp None

Due to the date of this offense the DEAP placement would begin next school year on August 14, 2024.
Detail 05/24/2024 11:06A                                          N               1.00                Served
Follow-Up By:


Offense  05/22/2024        AZ  Fighting             041  COURT YARD      N   0.00                                32428
Disc Officer:  CASSIE WINTER        Bus:        Referred By : CASSIE WINTER              Date Entered: 05/31/24

Student pushed another student 3 times. A fight of pushing and punching between the two students
continued for approximately 15 seconds.

Action          CAB CONF WITH ADMIN     041                      N   0.00  Hrs    .00   .00 OTHER          Served
Follow-Up By:  CASSIE WINTER        Susp None

We learned about this as a result of an investigation of an incident that occurred on 5/23. The
principal and AP met with parents on 5/31.


*********************** End of report ***********************

Exhibit

C

# SFDR – CISD
## Discipline Manual



## 2023 - 2024

# DISCIPLINE MANUAL RECIEPT

Please fill out and return to:

**Felisha Gomez**

[**peimsdataquality@sfdr-cisd.org**](mailto:peimsdataquality@sfdr-cisd.org)

Annex III, Building 1

PEIMS Data Quality, Compliance and Accountability

**Print** _____

**Sign** _____

**Date** _____





| 1 | **Attendance & Discipline Entry Planner/PEIMS Reporting Requirements** |
|---|---|
| 2 | **Disciplinary Action Reason (<u>Offense</u>) Code Table** |
| 3 | **<u>Mitigating Factors</u> Code Table** |
| 4 | **Disciplinary <u>Action</u> Code Table** |
| 5 | **<u>Difference Reason</u> Code Table** |
| 6 | **PEIMS: Questions and Answers** |
| 7 | **FAQ's Skyward Discipline Module** |
| 8 | **Secondary Consequence Guide** |
| 9 | **PEIMS  Discipline Data Chart and Definitions** |
| 10 | **Bullying Checklist** |
| 11 | **Chapter 37 Discipline Chart** |
| 12 | **2024 Discipline Training PowerPoint** |

Revised:06/20/2023



# Campus Attendance and Discipline Entry Planner
# 2023 - 2024

| Campus | Responsible for completing data entry for the reported six weeks in accordance with the dates found under *column 4* | Please continue to input missing and incomplete data for internal auditing purposes. |
|---|---|---|
| PEIMS Data Quality | Responsible for generating discipline reports from Skyward and submitting data to the appropriate CIO | |

| Six Weeks | Begins | Ends | *CAMPUS REPORTED DATA ENTERED BY 4:00 P.M.* | School Board Meeting* |
|---|---|---|---|---|
| 1 | Monday, August 14, 2023 | Friday, September 22, 2023 | *Tuesday, September 26, 2023* | Monday, October 16, 2023 |
| 2 | Monday, September 25, 2023 | Friday, November 3, 2023 | *Tuesday, November 7, 2023* | Monday, November 27, 2023 |
| 3 | Monday, November 6, 2023 | Friday, December 22, 2023 | *Tuesday, January 9, 2024* | Monday, January 22, 2024 |
| 4 | Tuesday, January 9, 2024 | Friday, February 23, 2024 | *Tuesday, February 14, 2023* | Monday, March 18, 2024 |
| 5 | Monday, February 26, 2024 | Friday, April 19, 2024 | *Tuesday, April 23, 2024* | Monday, May, 20 2024 |
| 6 | Monday, April 22, 2024 | Friday, May 30, 2024 | *Tuesday, June 4, 2024* | Monday, June 17, 2024 |

*Dates subject to change

# Discipline Reporting Requirements*

*Under TEC 37.008(m-1), failure to report all disciplinary removal actions as required by state and federal law may result in a review by the commissioner of education and notice to the local school board of any problems noted in the district's data, or a violation of a law or other rule. This review may also result in a notification to the county attorney, district attorney, criminal district attorney, as appropriate, and the attorney general. This provision can apply to missing, inaccurate, and/or falsified information/data.*

For purposes of discipline data reported to TEA, the **attendance/ PEIMS data personnel** are only responsible for entering information that has been provided to them by the Superintendent or their designee(s) who are responsible for applying the Student Code of Conduct to student behavior. **In no case should attendance/PEIMS data personnel be responsible for determining a student's coding information for discipline actions taken.**

## Reporting Requirements

Discipline records are reported at the end of the current school year, and are a part of Submission 3.

Discipline record data is required by TEC, Chapter 37, P.L. 114-95 - Every Student Succeeds Act (ESSA), and IDEA 2004, which includes students who are receiving special education and related services. TEA will maintain the privacy of this personally identifiable information in accordance with FERPA.

*A PEIMS discipline record **must** be reported for each disciplinary action that results in a removal of a student from any part of their regular academic program as required by TEC, Section 37. 020. A single student will have multiple discipline records if removed from his classroom more than once.*

Refer to the Data submission>Technical Resources>PEIMS Discipline Data guidance for additional information related to discipline reporting that includes detailed definitions of DISCIPLINARY-ACTION-CODES and DISCIPLINARY-ACTION-REASON-CODES.

*2023-2024 TSDS Web-Enabled Data Standards - Data Components-Complex Types - StudentDisciplineIncidentAssociationExtension

*2023-2024 TSDS Web-Enabled Data Standards - Data Submission - Technical Resources - PEIMS Discipline Data - Questions and Answers

# 2023 - 2024
# Disciplinary Action Reason Codes[1]
# (PEIMS OFFENSE CODES)

| Location Code | Offense Code | Short Description | Long Description | PEIMS Description |
|---|---|---|---|---|
| 01 | 01 | PERM REMOVAL | PERMANENT REMOVAL BY TEACHER | Permanent removal by a teacher from class |
| 01, 02, 03, 04, 05 | 02 | CONDUCT FELONY | CONDUCT PUNISHABLE AS FELONY | Engages in Conduct Punishable as a Felony |
| 01, 02, 03 | 04 | MARI/CONT SUBST | MARIHUANA/CONTROLLED SUBSTANCE | Marihuana or Controlled Substance or Dangerous Drug |
| 01, 02, 03 | 05 | ALCOHOL | ALCOHOL USE/SELL/GIVE/DELIVER | Alcohol |
| 01, 02, 03 | 06 | VOLATILE CHEM | VOLATILE CHEMICAL ABUSE | Abuse of a Volatile Chemical |
| 01, 02, 03 | 07 | PUB LEWDNESS | PUBLIC LEWDNESS/INDECENT EXPOS | Public Lewdness/Indecent Exposure |
| 01, 02, 03, 04 | 08 | RETALIATION EMP | RETALIATION SCHOOL EMPLOYEE | Retaliation against School Employee |
| 04 | 09 | O/C FELNY 5 | OFF CAMPUS- TITLE 5 FELONY | Title 5 Felony Committed Off Campus |
| 04 | 10 | O/C FELNY NOT 5 | OFF CAMPUS- NON TITLE 5 FELONY | Non-Title 5 Felony Committed Off Campus |
| 01, 02, 03, 05 | 11* | FIREARM | FIREARM OBTAIN/USE/EXHIBIT | Firearm |
| 01, 02, 03, 05 | 12* | ILLEGAL KNIFE | ILLEG. KNIFE BLADE LONGER 5.5" | Location Restricted Knife |
| 01, 02, 03, 05 | 14* | PROHIB WEAPON | PROHIBITED WEAPON | Prohibited Weapon |
| 01, 02, 03, 05 | 16* | ARSON | ARSON- START FIRE, EXPLOSION | Arson |
| 01, 02, 03, 05 | 17* | MURDER | MURDER- CAP./CRIM. ATPT/COMMIT | Murder, Capital Murder, or Criminal Attempt to Commit Murder/Capital Murder |
| 01, 02, 03, 05 | 18* | INDEC W/CHILD | INDECENCY W/ CHILD YOUNGER 17 | Indecency with a Child |
| 01, 02, 03, 05 | 19* | AGRVATED KIDNAP | AGGRAVATED KIDNAPPING | Aggravated Kidnapping |
| 00 | 21 | CONDUCT CODE | VIOLATION STUDENT CODE CONDUCT | Violation of Student Code of Conduct |
| 00 | 22 | CRIM MISCHIEF | CRIMINAL MISCHIEF | Criminal Mischief |
| 00 | 23 | EMERG PLACEMENT | EMERGENCY PLACEMENT/EXPULSION | Emergency Placement/Expulsion |
| 01, 02, 03, 04, 05 | 26 | TERRORISTIC THR | TERRORISTIC THREAT | Terroristic Threat |
| 01, 02, 03 | 27 | ASL TO EMPLOYEE | ASSAULT- TO EMPLOYEE | Assault of School Staff |
| 01, 02, 03 | 28 | ASL NON EMPL | ASSAULT- TO NON EMPLOYEE | Assault of Someone other than School Staff |
| 01, 02, 03, 04, 05 | 29* | AG ASSAULT EMPL | AGGRAVATED ASSAULT- TO EMPLOYEE | Aggravated Assault against School Staff |
| 01, 02, 03, 05 | 30* | AGGRAV ASL STUD | AGGRAVATED ASSAULT- TO STUDENT | Aggravated Assault against Student |
| 01, 02, 03, 05 | 31* | SEX ASL EMPL | SEXUAL ASSAULT- TO EMPLOYEE | Sexual Assault/Aggravated Sexual Assault against School Staff |
| 01, 02, 03, 05 | 32* | SEX ASL NON EMP | SEXUAL ASSAULT- TO NON EMPLOYEE | Sexual Assault/Aggravated Sexual Assault against Student |
| 01, 02, 03, 04, 05 | 35 | FALSE ALARM | FALSE ALARM/FALSE REPORT | False Alarm/False Report |
| 01, 03, 05 | 36* | FEL CONTRL SUB | FELONY CONTROLLED SUBSTANCE | Felony Controlled Substance Violation (Confirmed) |
| 01, 03, 05 | 37* | FELONY ALCOHOL | FELONY ALCOHOL VIOLATION | Felony Alcohol Violation (Confirmed) |
| 00 | 41 | FIGHTING | FIGHTING/MUTUAL COMBAT | Fighting/Mutual Combat (2 or More/Same Incident) |
| 01, 02, 03, 04, 05 | 46* | AG ROBBERY | AGGRAVATED ROBBERY | Aggravated Robbery |
| 01, 02, 03, 04, 05 | 47* | MANSLAUGHTER | MANSLAUGHTER | Manslaughter |
| 01, 02, 03, 04, 05 | 48* | HOMICIDE | CRIMINALLY NEGLIGENT HOMICIDE | Criminally Negligent Homicide |
| 01, 02, 03 | 49* | DEAD CONDUCT | DEADLY CONDUCT | Deadly Conduct |
| 00 | 55 | SEX OFF-CRT | RG SEX OFFENDER- SUPRVISED | Student Is Required To Register As A Sex Offender Under And Court Supervision |
| 00 | 56 | SEX OFF-NO CRT | RG SEX OFFENDER- NON SUPERVIS | Student Is Required To Register As A Sex Offender Under And Is Not Under Court Supervision |
| 01, 02, 03, 05 | 57* | CONT SEX ABUSE | CONTINUOUS SEX ABUSE OF CHILD | Continuous Sexual Abuse Of Young Child Or Children Under Penal Code §21.02 |
| 01, 02, 03, 04, 05 | 58 | BREACH OF COMP | BREACH OF COMPUTER SECUR (AUP) | Breach of Computer Security Under Penal Code §33.02 – TEC 37.007 |
| 01 | 59 | SERIOUS MISBEH | SERIOUS MISBEHAVIOR (SGLC ONLY) | Serious Misbehavior, as defined by TEC §37.007(c), while expelled to/placed in a DAEP |
| 01, 02, 03 | 60 | HARASS EMPLOYEE | HARASSMENT TO EMPLOYEE OF DISTRICT | Harassment To Employee of School District Employee under Texas Penal Code |

1 - Refer to Tab 8 for additional guidance
* - Unsafe School Code

**2023 - 2024**

# Disciplinary Action Reason Codes
## (LOCAL OFFENSE CODES)

| Location Code | Offense Code | Description | Explanation | PEIMS CODE | PEIMS Description |
|---|---|---|---|---|---|
| 00 | L04 | DRUG PARAPHERNALIA | Devices that can be used for inhaling, ingesting, injecting, or otherwise introducing a controlled susbstance into a human body | 21 | Violation of Student Code of Conduct |
| 00 | L05* | BULLYING-BASIS OF SEX/SEXUAL ORIENTATION | 1) Sexual Harassment includes: unwelcome verbal, physical, or visual conduct that is based on sex and that a reasonable person would find so severe, presistent, and pervasive that it effectively denies the victim equal access to the districts education program or activity. Such harassment can include words, gestures, requests for sexual favors, or any other unwelcome sexual conduct. Harassment is unwelcome if the student did not incite the attention or considers the attention undesirable or offensive.<br><br>2) Gender-based harassment such as physical, verbal, or nonverbal conduct based on a student's gender, or a student's failure to conform to stereotypical notions of masculinity or femininity. | 61 | Bullying - TEC 37.0052(b) |
| 00 | L10* | BULLYING-RACE,COLOR,NTL ORIGIN | Discrimination on the basis of race, color, or national origin in any educational program or activity that receives federal funds. Ex: Calling someone a terrorists | 61 | Bullying - TEC 37.0052(b) |
| 00 | L15* | BULLYING-BASIS OF DISABILITY | Discrimination on the basis of disability in programs or activities receiving federal financial assistance. Applies to all students; not just those identified with a disability | 61 | Bullying - TEC 37.0052(b) |
| 00 | L20 | BULLYING- BASIS OF RELIGION | Discrimination on the basis of race, color, or national origin in any educational program or activity that recieves federal funds | 61 | Bullying - TEC 37.0052(b) |
| 00 | L25 | BULLYING-CYBER* | Cyberbullying is bullying that is done through the use of any electronic communication device, including through the use of a celluar or other type of telephone, a computer, a camera, electronic mail, instant messaging, text messaging, a communication tool | 61 | Bullying - TEC 37.0052(b) |
| 00 | L30 | BULLYING-GROUP (2 OR MORE)* | Bullying means a single significant act or pattern of acts by one or more students directed at another student that exploits an imbalance of power and involves engaging in written or verbal expression, expression through electronic means, or physical conduct | 61 | Bullying - TEC 37.0052(b) |
| 00 | L35 | BULLYING-PERSISTENT BEHAVIOR* | Bullying means a single significant act or pattern of acts by one or more students directed at another student that exploits an imbalance of power and involves engaging in written or verbal expression, expression through electronic means, or physical conduct | 61 | Bullying - TEC 37.0052(b) |
| 00 | L40 | INSUBORDINATION | 1) Failure to comply with directives given by school personnel<br>2) Leave school grounds or school-sponsored events without permission<br>3) Disobey rules for conduct in district vehicles<br>4) Refuse to accept discipline management techniques assigned by a teacher or principal | 21 | Violation of Student Code of Conduct |
| 00 | L42 | ASSUALT W/O BODILY INJURY TO EMPLOYEE | Physcial contact that did not result in bodily injury *Two or more students cannot assualt each other* | 21 | Violation of Student Code of Conduct |
| 00 | L44 | ASSUALT W/O BODILY INJURY TO STUDENT | Physcial contact that did not result in bodily injury *Two or more students cannot assualt each other* | 21 | Violation of Student Code of Conduct |
| 00 | L50 | POSSESSION OF PROHIBITED ITEMS | fireworks, smoke or stink bombs, pyrotechnic devices, razor, box cutter, knife under 5.5" (SSC) | 21 | Violation of Student Code of Conduct |
| 00 | L59 | DESTRUCTION SCHOOL PROPERTY | Deface or damage school property (with graffiti or by other means) including:<br>1) Textbooks<br>2) Technology<br>3) Electronic resources<br>4) Lockers<br>5) Furniture<br>6) Other equipment | 21 | Violation of Student Code of Conduct |

*Refer to TAB 9 "BULLYING CHECKLIST" to determine if behavior meets the definition of bullying.

**2023-2024**

# Disciplinary Action Reason Codes
# (LOCAL OFFENSE CODES)

| Location Code | Offense Code | Description | Explanation | PEIMS CODE | PEIMS Description |
|---|---|---|---|---|---|
| 00 | L60 | FORGERY/PLAGERISM | Engage in academic dishonesty which includes:<br>1) Cheating<br>2) Copying the work of another student<br>3) Plagiarism<br>4) Unauthorized communication between students during an examination | 21 | Violation of Student Code of Conduct |
| 00 | L61 | THEFT | Steal from students, staff, or the school | 21 | Violation of Student Code of Conduct |
| 00 | L62 | SKIPPING CLASS | Did not report to scheduled class | 21 | Violation of Student Code of Conduct |
| 00 | L63 | SCUFFLE/HORSEPLAY | 1) Play Fighting<br>2) Rough/Boisterous play | 21 | Violation of Student Code of Conduct |
| 00 | L64 | VIOLATION CELL PHONE POLICY | Use of telecommunication device, including a cell phone, or other electronic device in violation of district and campus policy | 21 | Violation of Student Code of Conduct |
| 00 | L65 | LEAVE CLASS W/O PERMISSION | Reported to class then left the classroom without permission | 21 | Violation of Student Code of Conduct |
| 00 | L66 | SEXUAL HARASSMENT | Engages in sexual or gender-based harassment or sexual abuse whether by:<br>1) Word<br>2) Gesture<br>3) or any other conduct directed toward another person, including a district student, employee, board member, or volunteer | 21 | Violation of Student Code of Conduct |
| 00 | L67 | POSSESSION OF PORNOGRAPHY | In possession of obscene material (digital or paper copy) | 21 | Violation of Student Code of Conduct |
| 00 | L68 | DISTRIBUTION OF PORNOGRAPHY | Intentionally or knowingly displays or distributes obscene material | 21 | Violation of Student Code of Conduct |
| 00 | L72 | DRESS CODE VIOLATION | Violate dress and grooming standards as communicated in the Student Handbook | 21 | Violation of Student Code of Conduct |
| 00 | L73 | PROFANITY-VERBAL/GESTURES | 1) Profanity Language<br>2) Vulgar<br>3) Obscene gestures | 21 | Violation of Student Code of Conduct |
| 00 | L75 | BUS CONDUCT | Misconduct on school bus | 21 | Violation of Student Code of Conduct |
| 00 | L76 | TARDIES | *Excessive tardies - *refer to campus policy | 21 | Violation of Student Code of Conduct |
| 00 | L80 | PERSISTENT/HABITUAL MISEBHAVIOR ON CAMPUS | 5 or more referrals (not demerits) documented in Skyward. *Refer to campus policy regarding demerit system | 21 | Violation of Student Code of Conduct |
| 00 | L85 | CLASSROOM DISRUPTIONS | Engage in actions or demonstrations that substantially disrupt or materially interfere with school or classroom standard of conduct | 21 | Violation of Student Code of Conduct |
| 00 | L90 | DISREGARD OF PERSONAL SPACE | Hands/Feet - more comonally used at the elementary level | 21 | Violation of Student Code of Conduct |
| 00 | L95 | NAME CALLING | Engages in inappropriate verbal conduct toward another person | 21 | Violation of Student Code of Conduct |
| 00 | L96 | LEAVE CAMPUS W/O PERMISSION | Reported to campus then left the campus without permission | 21 | Violation of Student Code of Conduct |
| 00 | LD7 | 7 DEMERITS WITHIN 6 WEEK PERIOD | 7 DEMERITS WITHIN 6 WEEK PERIOD | 21 | Violation of Student Code of Conduct |
| 01, 02, 03 | VPC | VAPE - CONTROLLED SUBSTANCE - THC | Electronic vape containing THC | 04 | Marijuana or Controlled Substance |
| 00 | VAP | VAPE - NOT CONTROLLD SUBSTANCE | Students in possession of an e-cigarette, vaping device, parts of a vaping device, or any associated paraphernalia | 21 | Violation of Student Code of Conduct |

*Refer to TAB 9 "BULLYING CHECKLIST" to determine if behavior meets the definition of bullying.

# 2023 - 2024
# Mitigating Factor Codes

| Code | Short Description | Long Description |
|------|------------------|------------------|
| BU | BULLYING | PERPETRATING BULLYING BEHAVIOR |
| DIS | DISABILITY | DISABILITY SUBSTANTIALLY IMPAIRS CAPACITY |
| GA | GANG AFFILIATE | GANG AFFILIATION/INITIATION |
| HIS | DISC HISTORY | DISC HISTORY - LACK OF |
| INT | INTENT | INTENT |
| LOI | LACK OF INTENT | LACK OF INTENT |
| MB | MOB MENTALITY | MOB MENTALITY |
| RE | RETALIATION | RETALIATION FOR PRIOR ACTION |
| SD | SELF DEFENSE | SELF DEFENSE |
| TA | TAUNTING | ACTION AS A RESULT OF BEING TAUNTED |

*TIP: Where to add/edit Motivation Code*

*PATH: WS\ST\TB\DI*

*Steps:*
1. EDIT Offense
2. Select Mitigating Factors Code
4. SAVE



# 2023 - 2024
## Disciplinary Action Codes
## (ACTION CODES)

| Code | Short Description | Long Description | PEIMS Code | PEIMS Description |
|------|------------------|-----------------|-----------|------------------|
| 01* | EXPUL W/O PLACE | EXPULSION W/O PLACEMENT | 01 | Expulsion Without Placement In Another Educational Setting |
| 03* | EXPL CAMPUS AEP | EXPULSION ON CAMPUS AEP | 03 | Expulsion With Placement DAEP |
| 05* | OUT SCH SUSPENS | OUT OF SCHOOL SUSPENSION | 05 | Out-Of-School Suspension |
| 06* | IN SCH SUSPENSI | IN SCHOOL SUSPENSION | 06 | In-School Suspension |
| 07* | PLACE TO DAEP | PLACEMENT TO DAEP (SGLC) | 07 | Placement In An On-Campus Or Off-Campus DAEP |
| 08 | CONT OD AEP | CONTINUE OTHER DISTRICTS AEP | 08 | Continuation Of Other District's DAEP Placement |
| 09 | CONT OD EXPULSI | CONT OTHER DISTRICT EXPULSION | 09 | Continuation Of Other District's Expulsion Order |
| 10 | CONT PREYR AEP | CONTINUE PREVIOUS YEAR AEP | 10 | Continuation Of The District's DAEP Placement From The Prior School Year |
| 11 | CONT PREVYR EXP | CONTINUE PREV YEAR EXPULSION | 11 | Continuation Of The District's Expulsion Order From The Prior School Year |
| 14* | DAEP COURT ORDR | DAEP COURT ORDER | 14 | Placement in a DAEP by Court Order |
| 15 | CONT OD EXPUL W/ PLACE TO JJAEP | CONTINUE OTHER DISTRICT EXPUL W/ PLACEMENT TO JJAEP | 15 | Continuation Of Other District's Expulsion With Placement To JJAEP |
| 18 | DETENTION LUNCH | DETENTION LUNCH PERIOD ONLY | | |
| 19 | CONTRACT | PLACED ON CONTRACT | | |
| 20 | PARENT CONF | PARENT CONFERENCE ARRANGED | | |
| 22 | CORR COUNSELING | CORRECTIVE COUNSELING | | |
| 23 | BUS PRV REMOVED | BUS PRV REMOVED | | |
| 25* | PART DAY OSS | PARTIAL DAY OSS | 25 | Partial Day Out-Of-School Suspension |
| 26* | PART DAY ISS | PART DAY ISS | 26 | Partial Day In-School Suspension |
| 27* | NO DISC ACT-ARD | NO MAND DISC TAKEN-ARD | 27 | Mandatory Disciplinary Action Not Taken By District (ARD) |
| 28* | NO DISC ACT-TEC | NO MAND DISC ACT-TEC 37.001 | 28 | Mandatory Disciplinary Action Not Taken |
| 29 | PARK PRV REMOVED | PARKING PRIVLIGES TEMP REMOVED | | |
| 31 | VERBAL REPRIM | VERBAL REPRIMAND | | |
| 32 | CONFISC EQUIP | CONFISCATION OF EQUIP/OBJECT | | |
| A70 | REM ACCESS PRIV | REMOVE ACCESS PRIVLIGES | | |
| ARR | ARREST | ARREST | | |
| ASD | AFTER SCH DET | AFTER SCHOOL DETENTION | | |
| BSD | BEFOR SCH DET | BEFOR SCHOOL DETENTION | | |
| CFO | CIT/CAMPUS/OFF | CITATION/FR CAMPUS OFFICER | | |
| RLE | REF LAW ENFORCE | REFER TO LAW ENFORCEMENT | | |

## *SSSP

*When the mandatory action is not assigned please add an action of 27 or 28 (in addition to the assigned PEIMS action code(s)).*

*See tab 9 in the SFDR CISD Discipline Manual for additional guidance.*

Inconsistent with Code of Conduct



*AUDITABLE: Action Codes 27 & 28 require a predefined comment, additional action comments documented in the Student Referral.*

- ACTION CODE 27- Not Taken By District. As a result of ARD committee manifestation hearing determination.
- ACTION CODE 28- Not Taken (TEC 37.001(a)(4): (A) Self-defense.
- ACTION CODE 28- Not Taken (TEC 37.001(a)(4): (B) Intent or lack of intent at the time the student engaged in the conduct.
- ACTION CODE 28- Not Taken (TEC 37.001(a)(4): (C) A student's disciplinary history.
- ACTION CODE 28- Not Taken (TEC 37.001(a)(4): (D) A disability that substantially impairs the student's capacity to appreciate the wrongfulness of the student's conduct.

2023-2024

# Difference Reason Codes

| Code | Short Description | Long Description | *PEIMS Equivalent* |
|------|-------------------|------------------|--------------------|
| 00 | NO DIFFERENCE | NO DIF BTWN OFFICIAL & ACTUAL | *No difference Between Official And Actual Lengths Of Disciplinary Assignments* |
| 01 | DISTRICT MODIFY | TERM MODIFIED BY DISTRICT | *Term Modified By District* |
| 02 | COURT ORDER MOD | TERM MODIFIED BY COURT ORDER | *Term Modified By Court Order* |
| 03 | MOD/DIS/STU/PAR | MODIFIED AGGREE DIST/STUD/PAR | *Term Modified By Mutual Agreement Of District, Student, And/Or Parents* |
| 04 | COMPLETE SOONER | COMPLETED SOONER THAN EXPECTED | *Student Completed Term Requirements Sooner Than Expected* |
| 05 | INCARCERATED | STUDENT INCARCERATED | *Student Incarcerated* |
| 06 | HEALTH RELATED | TERM DECREASED HEALTH REASONS | *Term Decreased Due To Extenuating Health-Related Circumstances* |
| 07 | STUDENT W/DREW | STUDENT WITHDREW FROM SCHOOL | *Student Withdrew From School* |
| 08 | SCH YR ENDED | SCH YEAR ENDED BEFORE COMPLETE | *School Year Ended Before Completion Of Disciplinary Action Assignment* |
| 09 | CONTINUE PRE YR | CONTINUE PREVIOUS YEAR DISCIP | *Continuation Of Previous Year's Disciplinary Action Assignment* |
| 10 | GOOD BEHAVIOR | TERM MODIFIED GOOD BEHAVIOR | *Term Modified By Placement Program Due To Student Behavior While In Placement* |
| 99 | OTHER | OTHER | *Other* |

*Difference Reason :* Enter the appropriate reason when serving more or less days than orginally assigned.

TIP: Where to add a Difference Reason
PATH: WS\ST\TB\DI

| Steps: in the following order |
|-------------------------------|

| 1 | EDIT action |
| 2 | Set Action Status to SERVED |
| 3 | Select DIFF. REASON |
| 4 | Enter new RETURN DATE |
| 5 | Go to Action Details and EDIT each day the student served or didn't serve |
| 6 | Enter 0.00 or 1.00 in Time Served |
| 7 | Select PARENT NOTIFIED |
| 8 | Enter COMMENT |
| 9 | Select DIFFERENCE REASON |
| 10 | SAVE |
| * | Repeat steps 5 - 10 for the days the student will not serve |
| 11 | SAVE |









ORGINAL STATUS:

STATUS WITH DIFFERENCE:

# PEIMS Discipline Data - Questions and Answers

Additional PEIMS Reporting Information Regarding Disciplinary Alternative Education Program (DAEP) Conferences, Expulsion Hearings, Placement Reviews, and Other Actions

**1.  What is required if a student brings a firearm to school?**

In accordance with federal law (20 U.S.C. Section 7151), a local educational agency (LEA), including a school district, home-rule school district, or open- enrollment charter school, shall expel a student who brings a firearm, as defined by 18 U.S.C. Section 921, to school. The student must be expelled from the student's regular campus for a period of at least one year, except that:

(a) the superintendent or other chief administrative officer of the school district or of the other LEA, as defined by 20 U.S.C. Section 2891, may modify the length of the expulsion in the case of an individual student;

(b) the district or other LEA shall provide educational services to [the] an expelled student in an alternative education program as provided by TEC, §37.008 if the student is younger than 10 years of age on the date of expulsion; and

(c) the district or other LEA may provide educational services to an expelled student who is older than 10 years of age in an alternative education program as provided in TEC, §37.008.

TEC, §37.007(a)(1) requires that a school expel a student whose conduct contains the elements of the offense of "Unlawfully Carrying Weapons" on school property or while attending a school-sponsored or school related activity on or off school property.

**2.  What is a Campus Behavior Coordinator?**

Under the requirements of TEC, §37.0012, each campus must have a staff person

designated as the Campus Behavior Coordinator. The person designated may be the

principal of the campus or any other campus administrator selected by the principal.

The campus behavior coordinator is primarily responsible for maintaining student discipline and the implementation of this subchapter.

The campus behavior coordinator is required to promptly notify a student's parent or guardian if the student is placed into in-school or out-of-school suspension, placed in a disciplinary alternative education program, expelled, or placed in a juvenile justice alternative education program or is taken into custody by a law enforcement officer. A campus behavior coordinator must comply with this subsection by:

1. promptly contacting the parent or guardian by telephone or in person; and

2. making a good faith effort to provide written notice of the disciplinary action to the student, on the day the action is taken, for delivery to the student's parent or guardian.

If a parent or guardian entitled to notice of a student's disciplinary removal has not been reached by telephone or in person by 5 p.m. of the first business day after the day the disciplinary action is taken, the campus behavior coordinator must mail written notice of the disciplinary action to the parent or guardian at the parent's or guardian's last known address. If a Campus Behavior Coordinator is unable or not available to promptly provide the required notice to a parent or guardian of a student, the principal or other designee shall provide the notice.

**3.  What is required in order to send a student to a Disciplinary Alternative Education Program?**

Before removing a student to a DAEP under Texas Education Code (TEC) §37.008, the appropriate administrator shall schedule a conference among the principal or other appropriate administrator, a parent or guardian of the student, the teacher removing the student from class, if any, and the student. At the conference, the student is entitled to written or oral notice of the reasons for the removal, an explanation of the basis for the removal, and an opportunity to respond to the reasons for the removal. **If the student**

**has been alleged to have committed an offense as described in TEC, §37.006 then the district official holding the conference meeting must present substantiated documentation of the alleged behavior as provided by a law enforcement agency or as created/obtained by the school district administrator.**

**4.  What is required in order to expel a student?**

Before a student may be expelled under TEC, §37.007, the board or the board's designee must provide the student a hearing at which the student is afforded appropriate due process as required by the federal constitution and which the student's parent or guardian is invited, in writing, to attend. At the hearing, the student is entitled to be represented by the student's parent or guardian or another adult who can provide guidance to the student and who is not an employee of the school district. If the decision to expel a student is made by the board's designee, the decision may be appealed to the board. The decision of the board may be appealed by trial de novo to a district court of the county in which the school district's central administrative office is located. If the student has been alleged to have committed an offense as described in TEC, §37.007 then a district official holding the expulsion hearing must present substantiated documentation of the alleged behavior as provided by a law enforcement agency or as created/obtained by the school district administrator.

**5.  What is the maximum length for an out-of-school suspension placement?**

In accordance with TEC, §37.005, under no circumstance may an out-of-school suspension (OSS) for a particular incident exceed (3) three school days. If a student receives OSS for a partial school day (even if for one class period), that partial day is considered one of the three total allowable out-of-school suspension days.

**6.  What is the minimum grade for suspending a student with an out-of-school suspension?**

In accordance with TEC, §37.005(c), a student who is enrolled in a grade level below grade three may not be placed in out-of-school suspension unless, while on school property or while attending a school-sponsored or school-related activity on or off school property, the student engages in:

1. conduct that contains the elements of an offense related to weapons under Section 46.02 or 46.05, Penal Code;
2. conduct that contains the elements of a violent offense under Section 22.01, 22.011, 22.02, or 22.021, Penal Code; or
3. selling, giving, or delivering to another person or possessing, using, or being under the influence of any amount of:
   (a) marihuana or a controlled substance, as defined by Chapter 481, Health and Safety Code, or by 21 U.S.C. Section 801 et seq.;
   (b) a dangerous drug, as defined by Chapter 483, Health and Safety Code; or
   (c) an alcoholic beverage, as defined by Section 1.04, Alcoholic Beverage Code.

**7.  What is the statutory alternative to suspending a student less than grade three with an out-of-school-suspension?**

In accordance with TEC, §37.0013, each school district and open-enrollment charter school may develop and implement a program, in consultation with campus behavior coordinators employed by the district or school and representatives of a regional education service center, that provides a disciplinary alternative for a student enrolled in a grade level below grade three who engages in conduct described by Section 37.005(a) and is not subject to Section 37.005(c). The program must:

1. be age-appropriate and research-based;
2. provide models for positive behavior;

3. promote a positive school environment;

4. provide alternative disciplinary courses of action that do not rely on the use of in-school suspension, out-of-school suspension, or placement in a disciplinary alternative education program to manage student behavior; and

5. provide behavior management strategies, including:

   (a) positive behavioral intervention and support;

   (b) trauma-informed practices;

   (c) social and emotional learning;

   (d) a referral for services, as necessary; and

   (e) restorative practices.

**8. <u>What is required if a student's DAEP placement will extend beyond the end of the next grading period?</u>**

If the student's **placement** in a DAEP is to extend beyond the end of the next grading period, a student's parent or guardian is entitled to notice of and an opportunity to participate in a proceeding before the board of trustees of the school district or the board's designee, as provided by policy of the board of trustees of the district. Any decision of the board or the board's designee under this subsection is final and may not be appealed.

**9. <u>What is required if the student's DAEP placement will extend beyond the end of the current school year and into the next school year?</u>**

Before assigning a student to a disciplinary alternative education setting that extends beyond the end of the school year in which the initial assignment was made, the board or the board's designee must determine that:

1. the student's presence in the regular classroom program or at the student's regular campus presents a danger of physical harm to the student or to another individual, **<u>or</u>**

2. the student has engaged in serious or persistent misbehavior that violates the district's student code of conduct.

A student placed in a DAEP under TEC, §37.002 or 37.006 shall be provided a review of the student's status, including a review of the student's academic status, by the board's designee at intervals not to exceed 120 days. In the case of a high school student, the board's designee, with the student's parents or guardian, shall review the student's progress towards meeting high school graduation requirements and shall establish a specific graduation plan for the student.

At the review, the student or the student's parent or guardian must be given the opportunity to present arguments for the student's return to the regular classroom or campus.

**10. <u>What is required regarding special education students who commit behaviors that require a disciplinary removal action?</u>**

The disciplinary placement of all students who are served in special education with an Individualized Education Program (IEP) must be determined by an Admission, Review, and Dismissal (ARD) committee. TEC, §37.004(a) Further, any disciplinary action regarding a student with a disability who receives special education services that would constitute a change in placement under federal law may be taken only after the student's ARD committee conducts a manifestation determination review under 20 U.S.C. Section 1415(k)(4) and its subsequent amendments. Any disciplinary action regarding the student shall be determined in accordance with federal law and regulation, including laws or regulations requiring the provision of:

1. Functional behavioral assessments;
2. Positive behavioral interventions, strategies, and supports; and
3. Behavioral intervention plans.  TEC, §37.004(b)

For disciplinary removals of a student, who is receiving special education and related services, from the student's current educational placement, a change of placement occurs if the removal is for more than 10 consecutive days (CFR §300.530 - §300.536).  The ARD committee that deals with the change of placement must review the student's IEP to detail the special education and related services to be administered to the student while he is removed for discipline reasons.  Be careful not to confuse the 10-day change of placement requirement for special education purposes with the 1-day removal requirement for reporting student disciplinary removals.  The 44425 Student Discipline Interchange data is required for all students who are receiving special education and related services and are removed from their regularly scheduled classes for one day or more.  A change of placement occurs when the removal is for more than 10 consecutive days, and a change of placement may occur when the removal is for more than 10 cumulative days in a school year based on factors such as the length of each removal, the total amount of the time the child is removed, and the proximity of the removals to one another.  An ARD committee must be involved when the removal or series of removals constitute a change in placement.

11. **What is the minimum age that a student can be placed in a Disciplinary Alternative Education Program?**

Under TEC, §37.006(a), (b), (c), and (l), all students, who are at least 6 years of age on the date that an offense is committed, **must be removed to a DAEP**, for a time period that is determined by the local Student Code of Conduct, if one of the following acts are committed: on or within 300 feet of school property, or while the student is attending a school-sponsored, or school related activity, on or off of school property.  The school administrator designated must first establish a reasonable belief that the act has been committed and then corroborate and document that belief with appropriate law enforcement officials.

12. **What is the minimum age that a student can be expelled?**

Under TEC, §37.007(a), (d), and (h), and §37.007(f) students who are younger than 10 years of age on the date that an offense is committed, and have committed a mandatory expellable offense other than bringing a firearm to school, **must be placed in a DAEP** for a period of time that is determined by the superintendent or their designee.

Under TEC, §37.007(e), (student brings a firearm to school), students who are younger than 10 years of age on the date that an offense is committed,
**must be expelled and placed in a DAEP** for a minimum term of one year, unless the expulsion term is reduced by the superintendent or their designee.

13. **What are the required procedures for using Disciplinary Action Reason Code 23 – Emergency Placement/Emergency Expulsion?**

DISCIPLINARY-ACTION-REASON-CODE 23, as authorized by TEC, §37.019, allows for either emergency placement or emergency expulsion.  The use of this code is limited to reasons for which placement in a DAEP or expulsion may be made on a non-emergency basis.  At the time of an emergency placement or expulsion, the student shall be given oral notice of the reason for the action.

Not later than the tenth day after the date of the placement or expulsion, the student shall be accorded the appropriate due process as required until TEC, §37.009.  Thus emergency action under TEC, §37.019, should not be the only/final disciplinary action taken.

For additional constraints related to a student's behavior and the use of emergency placement/expulsion, please see TEDS Data Submission>Technical Resources>PEIMS Discipline Data - Disciplinary Action Reason Codes and Definitions for DISCIPLINARY-ACTION-REASON-CODE 23.

**14. What are the requirements for keeping documentation under Article 15.27, Code of Criminal Procedure received from law enforcement personnel investigating alleged criminal behaviors at/for a school?**

With regards to the documentation related to "TEC, §37.017 Destruction of Certain Records" states Information received by a school district under Article 15.27, Code of Criminal Procedure, these records may not be attached to the permanent academic file of the student who is the subject of the report. The school district shall destroy the information at the end of the school year in which the report was filed. Despite the requirement to destroy information received under Article 15.27, Code of Criminal Procedure, the district must retain documentation other than the information received under Article 15.27, Code of Criminal Procedure to support the discipline data submitted through the 44425 Student Discipline Interchange data for a period of 5 years.

**15. How should a school handle situations where a student(s) has committed multiple violations in the course of one disciplinary event?**

Multiple violations are sometimes committed in the course of one disciplinary event. When reporting the 44425 Student Discipline Interchange data, the district should report only the violations DISCIPLINARY-ACTION-REASON-CODE(s) for which disciplinary action(s) DISCIPLINARY-ACTION-CODE(s) are taken. If actions are only taken for the most serious violation, then only one DISCIPLINARY-INCIDENT-NUMBER should be reported in the 44425 Student Discipline Interchange data when reporting the DISCIPLINARY-ACTION-REASON-CODEs and DISCIPLINARY-ACTION-CODEs.

If the district takes disciplinary action on each violation that occurred during one disciplinary event, the district should enter a new DISCIPLINARY- INCIDENT-NUMBER for each separate DISCIPLINARY-ACTION-REASON-CODE (violation) being reported.

**16. What should a school do if a student attempts to withdraw from school before a disciplinary removal action has been determined for a particular incident?**

If a student is involved in a reportable disciplinary incident, and the student attempts to withdraw from school before the disciplinary assignment is made, the district/school should complete the due-process proceedings that result in the required disciplinary assignment before the student is allowed to withdraw. After completion of the due process proceedings, the district/school is required to report the 44425 Student Discipline Interchange data reflecting that assignment in order to remain in compliance with TEC, §37.009.

**17. What is an In-School Suspension setting?**

In-school-suspension (ISS) includes any disciplinary setting other than DAEP, JJAEP, or OSS. For Special Education student's behavior management or behavior adjustment classes are not considered ISS programs as established by the ARD committee and are not considered ISS removals.

**18. When is it appropriate to use Discipline Action Code 13 – Court Ordered Placement to a JJAEP and 14 – Court Ordered Placement to a DAEP?**

DISCIPLINARY-ACTION-CODE 13 may only be used when a Court order requires a student to attend the JJAEP independent of any action required to be taken by the school district and described in TEC, Chapter 37. Do not use DISCIPLINARY-ACTION-CODE 13 for students that are incarcerated in either a jail or juvenile detention center. A term of incarceration does not constitute a removal by a school district. The DISCIPLINARY-ACTION- REASON-CODE for DISCIPLINARY-ACTION-CODE 13 should always be 21 because the district is reporting a court ordered placement for a behavior which the district either could not or would not have acted.

DISCIPLINARY-ACTION-CODE 14 may only be used when a Court order requires a student to attend a DAEP independent of any action required to be taken by the school district and described in TEC, Chapter 37. Do not use DISCIPLINARY-ACTION-CODE 14 for students that are incarcerated in either a jail or juvenile detention center. A term of incarceration does not constitute a removal by a school district. The DISCIPLINARY-ACTION-REASON- CODE for DISCIPLINARY-ACTION-CODE 14 should always be 21 because the district is reporting a court ordered placement for a behavior which the district either could not or would not have acted.

When reporting DISCIPLINARY-ACTION-CODEs 13 (Placement in a JJAEP by Court order) and 14 (Placement in a DAEP by Court Order), please refer to the ADMINISTRATOR ADDRESSED letter dated May 29, 2002. This letter is available on the TEA website under the Correspondence link. In order to place a student in a JJAEP or DAEP by a Court order, there must be a MOU between the court ordering the placement and the school district that will affect and make the placement. **In all circumstances of court ordered placements to a JJAEP or DAEP, the DISCIPLINARY-ACTION-REASON- CODE must be a 21 (Violation of student code of conduct not included under TEC, §§37.002(b), 37.006, or 37.007). The use of DISCIPLINARY- ACTION-REASON-CODEs 09 (Off-Campus Title 5 Felony) and 10 (Off-Campus Non-Title 5 Felony) for Court ordered placements to a JJAEP or DAEP is not acceptable because the school district has original jurisdiction and a due-process responsibility to hold a conference meeting to enforce a DAEP removal/action as required or permitted in TEC, §37.006 (c) and (d).** The provisions for these court ordered placements must also be outlined in the Local Student Code of Conduct. Any behavior that a student engages in at school or a school related activity for which they will receive disciplinary attention as provided for under either the minimum requirements of TEC, §37.006/TEC, §37.007, or the minimum standards of the Local Student Code of Conduct, must be initiated and actuated by the local school district.

In the event that a school district finds it necessary to continue a Court ordered placement to a JJAEP or a DAEP from a prior school year or a prior school district, a new 44425 Student Discipline Interchange data event must be reported with a **DISCIPLINARY-ACTION-REASON-CODE of 21** and a **DISCIPLINARY-ACTION-CODE of 13 or 14** depending on the action taken. Remember that DAEP assignments that continue into a new school year are subject to the requirements of TEC, §37.009(c) referenced on the first page of Appendix E.

**19. Please explain the Discipline Action Reason Code 01 – Permanent Removal from Class by a Teacher.**

Permanent removal by a teacher from class (DISCIPLINARY-ACTION-REASON-CODE 01) under TEC, §37.002(b) is limited for use in those situations where the teacher has refused re-admittance of the student to that teacher's class. Otherwise, if the teacher allows re-admittance of the student to the class, then Code 21 (other Student Code of Conduct violation) should be used.

**20. What are the consequences of a school not reporting its discipline removal events through the Texas Student Data System PEIMS submission on the 44425 Student Discipline Interchange data?**

Under TEC, §37.008(m-1), failure to report all disciplinary removal actions as required by state and federal law may result in a review by the commissioner of education and notice to the local school board of any problems noted in the district's data, or a violation of a law or other rule. This review may also result in a notification to the county attorney, district attorney, criminal district attorney, as appropriate, and the attorney general. This provision can apply to missing, inaccurate, and/or falsified information/data.

**21. Which LEAs are required to participate in the county run Juvenile Justice Alternative Education Program (JJAEP)?**

In counties where the population is over 125,000, state law requires that expelled students be placed in an alternative education setting of some type. Districts located in these counties may place discretionary expelled students in a DAEP operated by the district and Mandatory expelled students in a JJAEP

operated by the juvenile board for the county.

**22. What options exist for an LEA that expels a student in a county that does not have a JJAEP?**

If a student has been expelled in a county that does not have a Juvenile Justice Alternative Education Program, the LEA may either expel the student without academic placement, or the student may be expelled with placement to the LEA Disciplinary Alternative Education Program.

**23. What kind of knives require that a student be expelled from school?**

House Bill 1935, 85th legislative session, revised the definition of illegal knives to be known as Location-restricted knives and defines a Location restricted knife as being a knife with a blade length greater than 5.5 inches. A student that is found in possession of a Location-restricted knife must be expelled if the possession occurs knife on school campus or off campus at a school sponsored or school related activity.

**24. What is the definition of an Off-Campus DAEP?**

An **off-campus** DAEP:

1. has its own **campus identification number**;
2. has its own **building** (is **not** a program on a regular campus or an at-risk alternative education campus);
3. has its own **budget**;
4. has its own **administrator**;
5. serves only students removed under the TEC, Chapter 37 (no other non-discipline program may be operated on the campus);
6. must use the services of **certified teachers** and
7. must provide for a **43,200-instructional minute school year**.

Note: If your school district or charter school has chosen to operate or participate in, through a shared services arrangement (SSA), an off-campus DAEP, your district or school must register the campus with the TEA as a DAEP instructional campus.

**25. What is the definition of an On-Campus DAEP?**

An **on-campus** DAEP is one that **may have its own campus identification number**. If an on-campus DAEP has its own campus identification number, then the campus must:

1. have an **administrator** (administrator can serve more than one campus);
2. have its own **budget**;
3. use the services of **certified teachers for delivering educational and behavioral instruction** to the students assigned to the on-campus DAEP;
4. provide for students who are assigned to the DAEP to be **separated from students who are not assigned to the DAEP** ("sight and sound barrier" should exist to provide adequate separation);
5. provide for a **43,200-instructional minute school year,** and;
6. **share a facility** with a non-disciplinary program.

Note: If your school district or charter school has chosen to operate or participate in, through an SSA, an on-campus DAEP your district or school must register the campus with the TEA as a DAEP instructional campus.

If an on-campus DAEP does not have its own campus number, then a student should remain enrolled at the campus at which the student was enrolled when he or she was removed while placed in the on-campus DAEP.

# FAQ's for Discipline

| **What is the offense date?** |
|---|
| The offense date is the date the student commits the discipline offense. |

| **What is the ordered date?** |
|---|
| The Ordered Date indicates the date on which the disciplinary assignment was ordered, not the start date for the action. **PLEASE NOTE:** For Level 1's - the ordered date is the <u>date of the letter.</u> For Emergency Placements - it is the <u>date the placement begins.</u> In most instances of emergency placements, the date of letter and date of placement should be the same. |

| **What is the action detail start date?** |
|---|
| The action detail start date is the date the student <u>begins serving</u> the assignment, not the date ordered. |

| Action Details  Add  Regenerate Dates | | | | | |
|---|---|---|---|---|---|
| | Date to Serve | Time | Status | Length (Days) | Time Served |
| Edit  Delete | 10/21/2020 | 1:23 PM | Open | 1.00 | 0.00 |

| **What is the return date and is a return date required for all discipline actions?** |
|---|
| The return date is ***the date the student returns to the home campus or regular school setting***, not the last date of the assignment.  Yes, a return date is required for all discipline actions. |

| **What should the SGLC campus do if a student returns from the SGLC campus earlier than the original assignment?** |
|---|
| *The SGLC campus should mark as served the days the student was in attendance at the SGLC campus.* Leave the remaining days open (not served). An appropriate difference reason should be entered. The return date should be adjusted and a note entered in the comment section indicating the reason. |

| **If more than one student is involved in the same discipline offense, is the same incident number used?** |
|---|
| ***Yes,*** *the same incident number must be used if one or more students are involved in the same offense.* The offense code must be the same; however, the action code(s) may be different. |

| **Does the action status need to reflect Served?** |
|---|
| Yes, all discipline should be marked served, including those with a difference reason or if the student withdrew before completing his/her assignment. |

| **Can a campus generate the Pre-PEIMS 425 report?** |
|---|
| Yes. The campus can generate the 425 report at their convenience. This report identifies errors for correction in order to submit discipline data to TEA. |

| **Why does the Pre-PEIMS 425 report not indicate all discipline entered in Skyward?** |
|---|
| The Pre-PEIMS 425 report will only include PEIMS reportable offenses. |

| **What other reports are available?** |
|---|
| Data Mining Reports. Please search for AA Discipline. . . |

| **When is it appropriate to use a 99 for a difference reason?** |
|---|
| A 99 should only be used for if no other difference reason applies. |

| **Does every offense require an action?** |
|---|
| Yes, all offenses require an action. |

# Steps for DAEP (SGLC)

| Continuations |
|---|
| All continuations must be entered prior to the start of the new school year. Verify that the prior year Offense Code was used and add an action code of **10** (cont. prior yr. placement) or **11** (cont. prior yr. expulsion). |

| Offense Date and Ordered Date |
|---|
| The Offense date is the date the offense occurred. The Ordered date is the date the action is assigned. |

| Action Detail Start Date |
|---|
| The Action Detail Start Date must be the day the student started at the alternative campus. |

| Days Served |
|---|
| If the student was released early from SGLC campus, only the days the student was enrolled at the alternative campus should be marked served with 1.00 (action detail) and the dates the student did not serve should reflect as 0.00. If the student did not serve all assigned days, a difference reason code must be added. |

| Additional Days Served |
|---|
| If the student served more than the days assigned, the Action Status would be marked Served, the Return Date must be adjusted, add the additional days to Action Details, enter a Difference Reason and add a comment to detail the reason for the additional days served. |

| Action Status |
|---|
| Action status should not be marked served until the student has been released back to the home campus. |

| Date Verification |
|---|
| Alternative campuses must verify that the Ordered Date is corresponding with the placement letter and the Action Detail Start Date reflect the first date the student began at the SGLC campus. |

# SECONDARY CONSEQUENCE GUIDE - SEQUENTIAL ORDER

| MANDATORY DAEP | MANDATORY EXPULSION | DISCRETIONARY DAEP | DISCRETIONARY EXPULSION | OFFENSE CODE | PEIMS CODE | INFRACTION | 1ST OFFENSE | 2ND OFFENSE | 3RD OFFENSE | EARLY EXIT REVIEW (if applicable) |
|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | **Important Chapter 37 Notes:**<br>(A) The Campus Behavior Coordinator (CBC) is required to promptly notify a student's parent or guardian of any disciplinary actions.<br>(B) Before a suspension, consideration must be given to (1) self-defense; (2) intent or lack of intent at the time the student engaged in the conduct; (3) disciplinary history; and (4) disability that substantially impairs the student's capacity to appreciate the wrongfulness of the student's conduct; (5) status under conservatorship of the Department of Family and Protective Services; and (6) a student status as a student who is homeless.<br>(C) An out of school suspension (OSS) may not exceed three school days.<br>(D) A student who is enrolled in a grade level below grade three may not be placed in out-of-school suspension unless the student engages in weapons-related offenses, violent assault offenses or drug or alcohol-related offenses.<br>(E) When a student under the age of ten engages in behavior that is an expellable behavior, the student shall not be expelled, but shall be placed in a DAEP. A student under age six shall not be placed in a DAEP unless the student commits a federal firearm offense.<br>(F) A student who is classified as "homeless" may not receive OSS unless the student has engaged in weapons-related offenses, violent assault offenses or drug or alcohol-related offenses. | | | |
| X | | X | | 02 | 02 | **Felony - At school, within 300 ft. of school property, at school event.** Includes Criminal Mischief >1500 | 30-day SGLC assignment & completion of intervention program | 60-day SGLC assignment & completion of intervention program | 90-day SGLC assignment & completion of intervention program | Not eligible for EER |
| X | | | X | 04 | 04 | **Drug Possession - Use/Under the Influence (Misdemeanor)** | 60-day SGLC assignment & completion of drug dependency program | 90-day SGLC assignment & completion of drug dependency program | 120-day SGLC assignment & completion of drug dependency program | Level 1 and Level 2 = EER contingent upon completion of intervention program |
| X | | | X | VPC | 04 | **Vaping (Controlled Substance)** Requires corroboration from law enforcement | Expulsion with 90-day SGLC assignment & completion of drug dependency program. Referral to TCHATT | Expulsion with 120-day SGLC assignment & completion of drug dependency program. Referral to TCHATT | Expulsion with 180-day SGLC assignment & completion of drug dependency program. Referral to TCHATT | Not eligible for EER |
| X | | | X | 05 | 05 | **Alcohol (Possession, use, under the influence).** | 45-day SGLC assignment & completion of drug dependency program | 60-day SGLC assignment & completion of drug dependency program | 90-day SGLC assignment & completion of drug dependency program | Level 1: 45/EER 30 days upon completion of dependency program. Level 2: 60/EER 45 days upon completion of dependency program. Level 3: 90/EER 60 days upon completion of dependency program. |
| X | | | X | 06 | 06 | **Abuse of a Volatile Chemical** (glue, aerosol paint,etc.) | 45-day SGLC assignment & completion of drug dependency program | 60-day SGLC assignment & completion of drug dependency program | 90-day SGLC assignment & completion of drug dependency program | Level 1: 45/EER 30 days upon completion of dependency program. Level 2: 60/EER 45 days upon completion of dependency program. Level 3: 90/EER 60 days upon completion of dependency program. |
| X | | | | 07 | 07 | **Indecent Exposure** (inappropriate display of body parts) | 90-day SGLC assignment & referral to TCHATT | SGLC assignment for remainder of school year & referral to TCHATT | | N/A |
| X | | | X | 08 | 08 | **Retaliation (School Employee)** | 90-day SGLC assignment & completion of anger management program | 120-day SGLC assignment & completion of anger management program | SGLC assignment for remainder of SY & completion of anger management program | Not eligible for EER |
| X | | | X | 09 | 09 | **Felony - Title 5 Committed Off Campus** (Title 5 felonies are those crimes listed in Title 5 of the Penal Code that typically involve injury to a person) | Assigned to SGLC until disposition of case. | | | N/A |
| | | X | X | 10 | 10 | **Felony - Non-Title 5 Committed Off Campus** | 30-day SGLC assignment & completion of intervention program | 60-day SGLC assignment & completion of intervention program | 90-day SGLC assignment & completion of intervention program | Not eligible for EER |
| | X | | X | 11 | 11* | **Firearms** (B) - (e.g., Used/exhibit/possession of any firearm - hand gun, starter gun, etc.) Does not include BB guns or Pellet Guns | Expulsion with Placement to SGLC; SGLC assignment for remainder of school year. Referral to TCHATT | | | Not eligible for EER |
| | X | | X | 12 | 12 | **Illegal Knife** (uses, exhibits, or possesses an illegal knife as defined by Section 46.01, Penal Code, or by local policy. An illegal knife as one with a blade length longer than 5.5 inches) | Expulsion with Placement to SGLC; SGLC assignment for remainder of school year. Referral to TCHATT | | | Not eligible for EER |
| | X | | X | 14 | 14* | **Prohibited Weapon**                    Penal Code Section 46.05 or (TAB 9)                    Includes explosion weapons, tire deflation device, chemical dispensing device, etc. | Expulsion without placement | | | N/A |
| | X | | X | 16 | 16* | **Arson -** Refer to TAB 9 for complete definition | Expulsion with Placement to SGLC until disposition of case. Referral to TCHATT | | | Not eligible for EER |
| | X | | X | 17 | 17* | **Attempted Murder/ Murder/Capital Murder** | Expulsion without placement | | | N/A |
| | X | | X | 18 | 18* | **Indecency with a Child** | Expulsion with Placement to SGLC until disposition of case. | | | N/A |
| | | | | 21 | 21 | **Fireworks (Ignition)** | 45-day SGLC assignment & completion of intervention program | 90-day SGLC assignment & completion of intervention program | SGLC assignment for remainder of SY & completion of intervention program | EER contingent upon completion of intervention program Level 3 = No EER |

**\*Unsafe School Coding**                                                                                                                                                          **CODING SUBJECT TO CHANGE**

# SECONDARY CONSEQUENCE GUIDE - SEQUENTIAL ORDER

| MANDATORY DAEP | MANDATORY EXPULSION | DISCRETIONARY DAEP | DISCRETIONARY EXPULSION | OFFENSE CODE | PEIMS CODE | INFRACTION | 1ST OFFENSE | 2ND OFFENSE | 3RD OFFENSE | EARLY EXIT REVIEW (if applicable) |
|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | **Important Chapter 37 Notes:**<br>(A) The Campus Behavior Coordinator (CBC) is required to promptly notify a student's parent or guardian of any disciplinary actions.<br>(B) Before a suspension, consideration must be given to (1) self-defense; (2) intent or lack of intent at the time the student engaged in the conduct; (3) disciplinary history; and (4) disability that substantially impairs the student's capacity to appreciate the wrongfulness of the student's conduct; (5) status under conservatorship of the Department of Family and Protective Services; and (6) a student status as a student who is homeless.<br>(C) An out of school suspension (OSS) may not exceed three school days.<br>(D) A student who is enrolled in a grade level below grade three may not be placed in out-of-school suspension unless the student engages in weapons-related offenses, violent assault offenses or drug or alcohol-related offenses.<br>(E) When a student under the age of ten engages in behavior that is an expellable behavior, the student shall not be expelled, but shall be placed in a DAEP. A student under age six shall not be placed in a DAEP unless the student commits a federal firearm offense.<br>(F) A student who is classified as "homeless" may not receive OSS unless the student has engaged in weapons-related offenses, violent assault offenses or drug or alcohol-related offenses. | | | |
| | | | | 21 | 21 | **Inappropriate Display of Affection** | Any individual of combination of discipline management techniques may be used by the campus administrator as part of a progressive set of interventions (Student Code of Conduct p. 9) | Any individual of combination of discipline management techniques may be used by the campus administrator as part of a progressive set of interventions (Student Code of Conduct p. 9) | Any individual of combination of discipline management techniques may be used by the campus administrator as part of a progressive set of interventions (Student Code of Conduct p. 9) | N/A |
| | | | | L96 | L96 | **Leaving School Grounds without Permission** | Any individual of combination of discipline management techniques may be used by the campus administrator as part of a progressive set of interventions (Student Code of Conduct p. 9) | Any individual of combination of discipline management techniques may be used by the campus administrator as part of a progressive set of interventions (Student Code of Conduct p. 9) | Any individual of combination of discipline management techniques may be used by the campus administrator as part of a progressive set of interventions (Student Code of Conduct p. 9) | N/A |
| | | | | 21 | 21 | **Loitering** | Any individual of combination of discipline management techniques may be used by the campus administrator as part of a progressive set of interventions (Student Code of Conduct p. 9) | Any individual of combination of discipline management techniques may be used by the campus administrator as part of a progressive set of interventions (Student Code of Conduct p. 9) | Any individual of combination of discipline management techniques may be used by the campus administrator as part of a progressive set of interventions (Student Code of Conduct p. 9) | N/A |
| | | | | 21 | 21 | **Retaliation (Student)** | 60-day SGLC assignment & completion of anger management program | 90-day SGLC assignment & completion of anger management program | 120-day SGLC assignment & completion of anger management program | Not eligible for EER |
| | | | | 21 | 21 | **Trespassing** | Warning | Any individual of combination of discipline management techniques may be used by the campus administrator as part of a progressive set of interventions (Student Code of Conduct p. 9) | Any individual of combination of discipline management techniques may be used by the campus administrator as part of a progressive set of interventions (Student Code of Conduct p. 9) | N/A |
| | | | X | 22 | 22 | **Criminal Mischief ≥ $1,500 (Felony Violation)** | Expulsion with placement to SGLC for remainder of school year. Referral to TCHATT | | | Not eligible for EER |
| X | | | X | 26 | 26 | **Terroristic Threat** *(Campus SSSP Team will be required to meet and assess the threat level/ Report to TEA)* | 90-day SGLC assignment & completion of intervention program | Expulsion to SGLC for remainder of SY & completion of anger management program | | Not Eligible for EER |
| X | | | X | 27 | 27 | **Assault (Bodily Injury - Employee)** | 90-day SGLC assignment & completion of anger management program | 120-day SGLC assignment & completion of anger management program | Expulsion with Placement for remainder of SY & completion of anger management program | Not eligible for EER |
| X | | | X | 28 | 28 | **Assault (Bodily Injury - Student)** | 60-day SGLC assignment & completion of anger management program | 90-day SGLC assignment & completion of anger management program | Expulsion with Placement for remainder of SY & completion of anger management program | Not eligible for EER |
| | X | | | 29 | 29* | **Assault (Aggravated - Employee)** | Expulsion with Placement to SGLC for remainder of school year. Referral to TCHATT | | | Not eligible for EER |
| | X | | X | 30 | 30* | **Assault (Aggravated - Student)** | Expulsion with Placement to SGLC for remainder of school year. Referral to TCHATT | | | Not eligible for EER |
| | X | | X | 31 | 31* | **Sexual Assault - Aggravated (against school staff)** | Expulsion without placement | | | N/A |
| | X | | X | 32 | 32* | **Sexual Assault - Aggravated (against student)** | Expulsion without placement | | | N/A |
| X | | | X | 35 | 35 | **False Alarm/False Report** (911 call, false alarm, false report including a bomb threat or a terroristic threat involving a public school, fire alarm pulled) | 60-day SGLC assignment & completion of intervention program | 90-day SGLC assignment & completion of intervention program | 120-day SGLC assignment & completion of intervention program | Not eligible for EER |

**\*Unsafe School Coding**                                                                                 **CODING SUBJECT TO CHANGE**

# SECONDARY CONSEQUENCE GUIDE - SEQUENTIAL ORDER

| MANDATORY DAEP | MANDATORY EXPULSION | DISCRETIONARY DAEP | DISCRETIONARY EXPULSION | OFFENSE CODE | PEIMS CODE | INFRACTION | 1ST OFFENSE | 2ND OFFENSE | 3RD OFFENSE | EARLY EXIT REVIEW (if applicable) |
|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | **Important Chapter 37 Notes:**<br>(A) The Campus Behavior Coordinator (CBC) is required to promptly notify a student's parent or guardian of any disciplinary actions.<br>(B) Before a suspension, consideration must be given to (1) self-defense; (2) intent or lack of intent at the time the student engaged in the conduct; (3) disciplinary history; and (4) disability that substantially impairs the student's capacity to appreciate the wrongfulness of the student's conduct; (5) status under conservatorship of the Department of Family and Protective Services; and (6) a student status as a student who is homeless.<br>(C) An out of school suspension (OSS) may not exceed three school days.<br>(D) A student who is enrolled in a grade level below grade three may not be placed in out-of-school suspension unless the student engages in weapons-related offenses, violent assault offenses or drug or alcohol-related offenses.<br>(E) When a student under the age of ten engages in behavior that is an expellable behavior, the student shall not be expelled, but shall be placed in a DAEP. A student under age six shall not be placed in a DAEP unless the student commits a federal firearm offense.<br>(F) A student who is classified as "homeless" may not receive OSS unless the student has engaged in weapons-related offenses, violent assault offenses or drug or alcohol-related offenses. | | | |
| | X | | X | 36 | 36* | **Drug Felony - Possession/Sold/Used Controlled Substance** (e.g. > 4 ounces of marijuana, any amount of cocaine, or other controled substances) Requires corroboration from law enforcement | Expulsion with 120-day SGLC assignment & completion of drug dependency program.<br>Referral to TCHATT | Expulsion with 180-day SGLC assignment & completion of drug dependency program.<br>Referral to TCHATT | Expulsion with 180-day SGLC assignment & completion of drug dependency program.<br>Referral to TCHATT | Not eligible for EER |
| | X | | X | 37 | 37* | **Felony Alcohol Violation** | | | | |
| | | X | | 41 | 41 | **Fighting (Mutual Combat)** | 3-day OSS; corrective counseling and discretionary 30-day SGLC assignment. | 30-day SGLC assignment & completion of anger management program | 45-day SGLC assignment & completion of anger management program | N/A |
| | X | | X | 46 | 46* | **Aggravated Robbery** | Expulsion with Placement to SGLC until disposition of case. Expulsion without placement | | | Not eligible for EER |
| | X | | X | 47 | 47* | **Manslaughter** | Expulsion without placement | | | N/A |
| | X | | X | 48 | 48* | **Criminally Negligent Homicide** | Expulsion without placement | | | N/A |
| | | | | 49 | 49* | **Deadly Conduct** | | | | |
| X | | | X | 55 | 55 | **Student Is Required to Register as A Sex Offender Under Chapter 62 Of The Code Of Criminal Procedure And Is Under Court Supervision** | | | | |
| | | X | | 56 | 56 | **Student Is Required to Register as A Sex Offender Under Chapter 62 Of The Code Of Criminal Procedure And Is Not Under Court Supervision** | | | | |
| | X | | X | 57 | 57* | **Continuous Sexual Abuse of Young Child or Disabled Individual Under Penal Code 21.02** | | | | |
| | X | | X | 58 | 58 | **Breach of Computer Security** See TAB 9 for definition | 30-day SGLC assignment, temporary loss of technology priveleges & completion of intervention program | 60-day SGLC assignment, loss of technology priveleges & completion of intervention program | 90-day SGLC assignment, loss of technology priveleges & completion of intervention program | EER contingent upon completion of intervention program |
| | | | | 59 | 59 | **Serious Misbehavior, as Defined by TEC 37.007(c), while expelled to/ placed in a DAEP -** See TAB 9 for definition | | | | |
| | | | | 60 | 60 | **Harassment Against an Employee of the School District under Texas penal Code 42.07(a)(1),(2),(3), or (7)** | | | | |
| | | X | X | 61 | 61 | **Bullying (Encourages a student to commit suicide)** | Expulsion with Placement to SGLC until disposition of case. Referral to TCHATT | | | Not eligible for EER |
| | | X | X | 61 | 61 | **Harassment** (Non-Sexual conduct that meets the definition established in district policies DIA(LOCAL) and FFH(LOCAL)) | 45-day SGLC assignment & completion of intervention program | 60-day SGLC assignment & completion of intervention program | 90-day SGLC assignment & completion of intervention program | Not eligible for EER |
| | | X | X | 61 | 61 | **Hazing** | Expulsion with Placement to SGLC for remainder of school year. Possible expulsion. Referral to TCHATT | | | Not eligible for EER |
| | | | | L04 | 21 | **Drug Paraphernalia** (e.g., pipes, vaping pens, etc.) | 3-day OSS; corrective counseling | 30-day SGLC assignment & completion of drug dependency program | 90-day SGLC assignment & completion of drug dependency program | Level 1 and Level 2 = EER contingent upon completion of intervention program |
| | | | | L25 | 21 | **Bullying - Cyber** | | | | |
| | | | | L25 | 21 | **Bullying (Releasing or threatening to release intimate material of a minor or student 18 years of age or older without consent)** | | | | |
| | | | | L30 | 21 | **Bullying (Inciting violence against a student through group bullying)** | | | | |
| | | | | L35 | 21 | **Bullying (Persistent Behavior)** | 3-day OSS; corrective counseling and assigned stay- away agreement. | 60-day SGLC assignment & completion of intervention program | 90-day SGLC assignment & completion of intervention program | Not eligible for EER |

**\*Unsafe School Coding**                                                          **CODING SUBJECT TO CHANGE**

# SECONDARY CONSEQUENCE GUIDE - SEQUENTIAL ORDER

| MANDATORY DAEP | MANDATORY EXPULSION | DISCRETIONARY DAEP | DISCRETIONARY EXPULSION | OFFENSE CODE | PEIMS CODE | INFRACTION | 1ST OFFENSE | 2ND OFFENSE | 3RD OFFENSE | EARLY EXIT REVIEW (if applicable) |
|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | **Important Chapter 37 Notes:**<br>(A) The Campus Behavior Coordinator (CBC) is required to promptly notify a student's parent or guardian of any disciplinary actions.<br>(B) Before a suspension, consideration must be given to (1) self-defense; (2) intent or lack of intent at the time the student engaged in the conduct; (3) disciplinary history; and (4) disability that substantially impairs the student's capacity to appreciate the wrongfulness of the student's conduct; (5) status under conservatorship of the Department of Family and Protective Services; and (6) a student status as a student who is homeless.<br>(C) An out of school suspension (OSS) may not exceed three school days.<br>(D) A student who is enrolled in a grade level below grade three may not be placed in out-of-school suspension unless the student engages in weapons-related offenses, violent assault offenses or drug or alcohol-related offenses.<br>(E) When a student under the age of ten engages in behavior that is an expellable behavior, the student shall not be expelled, but shall be placed in a DAEP. A student under age six shall not be placed in a DAEP unless the student commits a federal firearm offense.<br>(F) A student who is classified as "homeless" may not receive OSS unless the student has engaged in weapons-related offenses, violent assault offenses or drug or alcohol-related offenses. | | | |
| | | | | L40 | 21 | **Disregard for Authority** (Failure to comply with directives given by school personnel; insubordination) | Any individual or combination of discipline management techniques may be used by the campus administrator as part of a progressive set of interventions (Student Code of Conduct p. 9) | Any individual or combination of discipline management techniques may be used by the campus administrator as part of a progressive set of interventions (Student Code of Conduct p. 9) | 30-day SGLC assignment & completion of intervention program | N/A |
| | | | | L42 | 21 | **Assault** (Without Bodily Injury - Employee) | 90-day SGLC assignment & completion of anger management program | 120-day SGLC assignment & completion of anger management program | SGLC assignment for remainder of SY & completion of anger management program | Not eligible for EER |
| | | | | L44 | 21 | **Assault** (Without Bodily Injury- Student) | 30-day SGLC assignment & completion of anger management program | 45-day SGLC assignment & completion of anger management program | 60-day SGLC assignment & completion of anger management program | EER contingent upon completion of anger management program |
| | | | | L50 | 21 | **Possession of Prohibited Items**<br>(A) - (e.g., fireworks, smoke or stink bombs, any pyrotechnic device, location restricted knife - under 6", razor, box cutter) SCC | Any individual or combination of discipline management techniques may be used by the campus administrator as part of a progressive set of interventions (Student Code of Conduct p. 9) | 30-day SGLC assignment & completion of intervention program | 60-day SGLC assignment & completion of intervention program | Level 2 and 3 = EER contingent upon completion of intervention program |
| | | | | L59 | 21 | **Altering/Destroying School Records** | 5-day ISS assignment & completion of DRC guidance program | "10-day ISS assignment & completion of DRC guidance program" | 30-day SGLC assignment & completion of DRC guidance program | N/A |
| | | | | L59 | 21 | **Graffiti/Vandalism (Defacing School Property ≤ $50)**    Includes<br>Criminal Mischief less than $50 | Any individual or combination of discipline management techniques may be used by the campus administrator as part of a progressive set of interventions (Student Code of Conduct p. 9) plus restitution. | Any individual or combination of discipline management techniques may be used by the campus administrator as part of a progressive set of interventions (Student Code of Conduct p. 9) plus restitution. | 30-day SGLC assignment, completion of intervention program plus restitution. | Not eligible for EER |
| | | | | L59 | 21 | **Graffiti/Vandalism (Defacing School Property ≥ $50)**    Includes<br>Criminal Mischief more than $50 | 3-day OSS; corrective counseling and discretionary 30-day SGLC assignment with assignment of intervention program. | 30-day SGLC assignment, completion of intervention program plus restitution. | 60-day SGLC assignment, completion of intervention program plus restitution. | Not eligible for EER |
| | | | | L61 | 21 | **Theft** (Any Value) | Any individual or combination of discipline management techniques may be used by the campus administrator as part of a progressive set of interventions (Student Code of Conduct p. 9) plus restitution. | 30-day SGLC assignment & completion of intervention program plus restitution | 60-day SGLC assignment & completion of intervention program plus restitution | EER contingent upon completion of intervention program |
| | | | | L64 | 21 | **Possession of Cell Phone/Electronic Devices (Unauthorized)** | Any individual or combination of discipline management techniques may be used by the campus administrator as part of a progressive set of interventions (Student & Parent Handbook) | Any individual or combination of discipline management techniques may be used by the campus administrator as part of a progressive set of interventions (Student & Parent Handbook) | Any individual or combination of discipline management techniques may be used by the campus administrator as part of a progressive set of interventions (Student & Parent Handbook) | N/A |
| | | | | L66 | 21 | **Harassment (Sexual)** | 90-day SGLC assignment & completion of intervention program | 120-day SGLC assignment & completion of intervention program | 180-day SGLC assignment & completion of intervention program | Not eligible for EER |
| | | | | L67 | 21 | **Intimate Visual Material**<br>(possession of pornography) | 90-day SGLC assignment & referral to TCHATT | SGLC assignment for remainder of school year & referral to TCHATT | | N/A |
| | | | | L68 | 21 | **Intimate Visual Material**<br>(distribution of pornography) | 90-day SGLC assignment & referral to TCHATT | SGLC assignment for remainder of school year & referral to TCHATT | | |

**\*Unsafe School Coding**                                                      **CODING SUBJECT TO CHANGE**

# SECONDARY CONSEQUENCE GUIDE - SEQUENTIAL ORDER

| MANDATORY DAEP | MANDATORY EXPULSION | DISCRETIONARY DAEP | DISCRETIONARY EXPULSION | OFFENSE CODE | PEIMS CODE | INFRACTION | 1ST OFFENSE | 2ND OFFENSE | 3RD OFFENSE | EARLY EXIT REVIEW (if applicable) |
|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | **Important Chapter 37 Notes:**<br>(A) The Campus Behavior Coordinator (CBC) is required to promptly notify a student's parent or guardian of any disciplinary actions.<br>(B) Before a suspension, consideration must be given to (1) self-defense; (2) intent or lack of intent at the time the student engaged in the conduct; (3) disciplinary history; and  (4) disability that substantially impairs the student's capacity to appreciate the wrongfulness of the student's conduct; (5) status under conservatorship of the Department of Family and Protective Services; and (6) a student status as a student who is homeless.<br>(C) An out of school suspension (OSS) may not exceed three school days.<br>(D) A student who is enrolled in a grade level below grade three may not be placed in out-of-school suspension unless the student engages in weapons-related offenses, violent assault offenses or drug or alcohol-related offenses.<br>(E) When a student under the age of ten engages in behavior that is an expellable behavior, the student shall not be expelled, but shall be placed in a DAEP. A student under age six shall not be placed in a DAEP unless the student commits a federal firearm offense.<br>(F) A student who is classified as "homeless" may not receive OSS unless the student has engaged in weapons-related offenses, violent assault offenses or drug or alcohol-related offenses. | | | |
| | | | | L72 | 21 | **Dress Code Violation** | Any individual of combination of discipline management techniques may be used by the campus administrator as part of a progressive set of interventions (Student & Parent Handbook) | Any individual of combination of discipline management techniques may be used by the campus administrator as part of a progressive set of interventions (Student & Parent Handbook) | Any individual of combination of discipline management techniques may be used by the campus administrator as part of a progressive set of interventions (Student & Parent Handbook) | N/A |
| | | | | L73 | 21 | **Profanity towards school employee** | Corrective counseling, discretionary ISS or OSS, behavior contract and schedule change, warning of placement to SGLC. | 30-day SGLC assignment & completion of intervention program | 45-day SGLC assignment & completion of intervention program | Not eligible for EER |
| | | | | L73 | 21 | **Profanity towards student/non- employee** | Any individual of combination of discipline management techniques may be used by the campus administrator as part of a progressive set of interventions (Student Code of Conduct p. 9) | Any individual of combination of discipline management techniques may be used by the campus administrator as part of a progressive set of interventions (Student Code of Conduct p. 9) | 30-day SGLC assignment & completion of intervention program | N/A |
| | | | | L75 | 21 | **Bus Conduct** | "Warning of Loss of Bus Privileges (Parent Conference)" | Any individual of combination of discipline management techniques may be used by the campus administrator as part of a progressive set of interventions including loss of bus privileges. (Student Code of Conduct p. 9) | Any individual of combination of discipline management techniques may be used by the campus administrator as part of a progressive set of interventions including loss of bus privileges. (Student Code of Conduct p. 9) | N/A |
| | | | | L80 | 21 | **Persistent/Habitual Campus Disruption** (behavior that causes campus-wide disruption) | 30-day SGLC assignment & completion of intervention program | 60-day SGLC assignment & completion of intervention program | 90-day SGLC assignment & completion of intervention program | Not eligible for EER |
| | | | | L80 | 21 | **Persistent/Habitual Misbehavior on Campus** (5 or more documented referrals) | 45-day SGLC assignment & completion of intervention program | 60-day SGLC assignment & completion of intervention program | 90-day SGLC assignment & completion of intervention program | Level 1 = EER contingent upon completion of intervention program |
| | | | | L85 | 21 | **Classroom Disruption** | Any individual of combination of discipline management techniques may be used by the campus administrator as part of a progressive set of interventions (Student Code of Conduct p. 9) | Any individual of combination of discipline management techniques may be used by the campus administrator as part of a progressive set of interventions (Student Code of Conduct p. 9) | Any individual of combination of discipline management techniques may be used by the campus administrator as part of a progressive set of interventions (Student Code of Conduct p. 9) | N/A |
| | | | | VAP | 21 | **Vaping**                        Possession of an e-cigarette, vaping device, parts of a vaping device, or any associated paraphernalia | Any individual of combination of discipline management techniques may be used by the campus administrator as part of a progressive set of interventions (Student Code of Conduct p. 9) plus completion of DRC program | 30-day SGLC assignment & completion of drug dependency program | 45-day SGLC assignment & completion of drug dependency program | N/A |
| | | | | | | **Truancy (failure to attend school) - Student with at least 3 absences** (TEC § 25.094. Failure to Attend School - three or more days or parts of days within a four-week period.) | Warning - Parent awareness/reminder of truancy laws; counseling intervention to determine root cause of absences. | Parent Conference; Discipline Referral Form/Truancy charge issued to student - Requirement to attend Saturday School | Referral to BCFS Family Intervention Program; Discipline Referral Form/Truancy charge issued to student - Requirement to attend Saturday School | N/A |

**\*Unsafe School Coding**

# SECONDARY CONSEQUENCE GUIDE - SEQUENTIAL ORDER

| MANDATORY DAEP | MANDATORY EXPULSION | DISCRETIONARY DAEP | DISCRETIONARY EXPULSION | OFFENSE CODE | PEIMS CODE | INFRACTION | 1ST OFFENSE | 2ND OFFENSE | 3RD OFFENSE | EARLY EXIT REVIEW (if applicable) |
|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | **Important Chapter 37 Notes:**<br>(A) The Campus Behavior Coordinator (CBC) is required to promptly notify a student's parent or guardian of any disciplinary actions.<br>(B) Before a suspension, consideration must be given to (1) self-defense; (2) intent or lack of intent at the time the student engaged in the conduct; (3) disciplinary history; and (4) disability that substantially impairs the student's capacity to appreciate the wrongfulness of the student's conduct; (5) status under conservatorship of the Department of Family and Protective Services; and (6) a student status as a student who is homeless.<br>(C) An out of school suspension (OSS) may not exceed three school days.<br>(D) A student who is enrolled in a grade level below grade three may not be placed in out-of-school suspension unless the student engages in weapons-related offenses, violent assault offenses or drug or alcohol-related offenses.<br>(E) When a student under the age of ten engages in behavior that is an expellable behavior, the student shall not be expelled, but shall be placed in a DAEP. A student under age six shall not be placed in a DAEP unless the student commits a federal firearm offense.<br>(F) A student who is classified as "homeless" may not receive OSS unless the student has engaged in weapons-related offenses, violent assault offenses or drug or alcohol-related offenses. | | | |
| | | | | | | **Truancy (failure to attend school) - Student with 10 absences** (TEC § 25.094. Failure to Attend School - fails to attend school on 10 or more days or parts of days within a six-month period. ) | Parent Conference with District Truancy Officer issues warning to parent of charges and court referral of any subsequent unexcused absences. Discipline Referral Form/Truancy Charge Issued to Student | District Truancy Officer collects documentation of intervention efforts and attempts to address unexcused absences (parent contributing to truancy). If student is not in residency, then the student will be withdrawn from the District. Students not in residency who are withdrawn due to truancy reasons will not be permitted to re-enroll in the District. | | N/A |
| | | | | | | **Truancy (failure to attend school) - Parent Contributing to Truancy** | Referral to Court | | | N/A |
| **\*Unsafe School Coding** | | | | | | | | **CODING SUBJECT TO CHANGE** | | |

When the mandatory action is not assigned, an additional action code of 27 or 28 must be added to the discipline record (in addition to the assigned PEIMS action code(s)).
See tab K in the SFDR-CISD Discipline Manual for additional guidance.

Case 1:24-cv-00902-DBE    Document 1-3    Filed 06/13/24    Page 112 of 191

# PEIMS Discipline Data - Chart for Determining Mandatory and Discretionary DAEP Placements and Expulsions

**NOTE:** This chart represents the minimum required actions and maximum allowed actions for school districts. It does not apply to charter schools except for code 11 – (Possession or use of Firearms at school or a school related activity), unless a charter school has adopted one of the other mandatory provisions into its student code of conduct.

**TABLE KEY**
*Retaliation against school employee or volunteer coupled with an offense in TEC 37.007 (a) or (d).

■ Not allowed by TEC Chapter 37
▨ Not specified by TEC Chapter 37. Action for these items must be authorized by the local Student Code of Conduct

| | Disciplinary Action Reason Code (C165) | Behavior Location Code (C190) | Disciplinary Action Codes (C164) | | | |
|---|---|---|---|---|---|---|
| | Code and Definition | Behavior Location Code | Mandatory DAEP Placement | Mandatory Expulsion | Discretionary DAEP Placement | Discretionary Expulsion |
| 01 | **Permanent removal by a teacher from class** – TEC §37.002(c)<br>A teacher may permanently remove a student from the classroom **(1)** who has been documented by the teacher to repeatedly interfere with the teacher's ability to communicate effectively with the students in the class or with the ability of the student's classmates to learn; or **(2)** whose behavior the teacher determines is so unruly, disruptive, or abusive that it seriously interferes with the teacher's ability to communicate effectively with the students in the class or with the ability of the student's classmates to learn. | On campus (01) | | | D | |
| 02 | **Engages in Conduct Punishable as a Felony** - TEC §37.006(a)(2)(a)<br>Includes all felony activities that are not otherwise more specifically defined or included as a behavior that requires a mandatory expulsion action. | On campus (01) | M | | | |
| | TEC §37.006(a)(2)(A) | Off Campus, within 300 ft. (02) | M | | | |
| | TEC §37.006(a)(2)(A) | School Related/Sponsored Activity Off Campus (03) | M | | | |
| | TEC §37.006(d) | Off Campus, no school related/sponsored activity (04) | | | D | |
| | TEC §37.0081 | On school property, or at school related/sponsored activity, of another school district (05) | | | D | |
| 04 | **Non-Felony Marihuana or Controlled Substance or Dangerous Drug** - TEC §37.006(a)(2)(C) and §37.007(b)(2)(A)<br>Sells, gives, or delivers to another person or possesses or uses or is under the influence of marihuana or a controlled substance, as defined by Health and Safety Code Chapter 481, , or a dangerous drug, as defined by Health and Safety Code Chapter 483.<br>Health and Safety Code Chapter 481 defines marihuana as Cannabis Sativa whether growing or not, the seeds of the plant, and every compound, manufacture, salt, derivative, mixture, or preparation of that plant or its seeds. The term does not include resin extracted from a part of the plant, the mature stalks of the plant or fiber produced from the stalks, oil or cake made from the seeds of the plant, the sterilized seeds of the plant or a compound, manufacture, salt, derivative, mixture, or preparations of the mature stalks, fiber, oil or cake.<br><br>Health and Safety Code Chapter 481 defines a controlled substance as a substance, including a drug and an immediate precursor, listed in Schedules I-V or penalty Groups 1-4 of the Health and Safety Code. Possession of any amount in Penalty Groups 1 and 2 is a felony. Possession of a controlled substance in Penalty Groups 3 and 4 is a felony if the amount is more than 28 grams. It is also a felony to deliver a controlled substance to a minor. (However, this offense does not apply to minors in some circumstances.)<br>Health and Safety Code Chapter 483 defines a dangerous drug as a device or a drug that is unsafe for self-medication and that is not included in Schedules I-V or penalty Groups 1-4 of the Health and Safety Code. The term includes a device or drug that bears or is required to bear the legend:<br>(a) Caution: federal law prohibits dispensing without a prescription; or<br>(b) Caution: federal law restricts this drug to use by or on the order of a licensed veterinarian.<br><br>"Marihuana or Controlled Substance or Dangerous Drug" violation is also a discretionary expellable offense dependent on the local Student Code of Conduct.<br><br>If a violation under this category is committed at a felony level, then the student must be expelled from their regular education setting. Use Disciplinary Action Reason Code 36 for reporting when this occurs. | On campus (01) | M | | | D |
| | TEC §37.006(a)(2)(C) and 37.007(b)(2)(A) | (02) Off Campus, within 300 ft. | M | | | D |
| | TEC §37.006(a)(2)(C) and 37.007(b)(2)(A) | School Related/Sponsored Activity Off Campus (03) | M | | | D |

■ **Unsafe School Coding**

| | Code and Definition | Behavior Location Code | Mandatory DAEP Placement | Mandatory Expulsion | Discretionary DAEP Placement | Discretionary Expulsion |
|---|---|---|---|---|---|---|
| | | | **Disciplinary Action Codes (C164)** | | | |
| 05 | **Non-Felony Alcohol** - TEC §37.006(a)(2)(D) and 37.007(b)(2)(A)<br>Sells, gives, or delivers to another person an alcoholic beverage, as defined by Alcoholic Beverage Code Section 1.04 commits a serious act or offense while under the influence of alcohol, or possesses, uses, or is under the influence of an alcoholic beverage.<br><br>Alcoholic Beverage Code Section 1.04 defines an alcoholic beverage as alcohol, or any beverage containing more than one-half of one percent of alcohol by volume, which is capable of use for beverage purposes, either alone or when diluted.<br><br>"Alcohol" *violation is also a discretionary expellable offense dependent on the local Student Code of Conduct.*<br>If a violation under this category is committed at a felony level, then the student must be expelled from their regular education setting. Use Disciplinary Action Reason Code 37 for reporting when this occurs. | (01) On Campus | M | | | D |
| | TEC §37.006(a)(2)(D) and 37.007(b)(2)(A) | Off Campus, within 300 ft. (02) | M | | | D |
| 06 | **Abuse of a Volatile Chemical** - TEC §36.006(a)(2)(E) and 37.007(b)(2)(B)<br>Engages in conduct that contains the elements of an offense relating to an abusable volatile chemical (glue, aerosol paint, etc.) under Sections 485.031 through 485.034, Health and Safety Code, or relating to volatile chemicals under Chapter 484, Health and Safety Code.<br><br>Chapter 485.031, Health and Safety Code, defines the offense abuse of a volatile chemical as when a person inhales, ingests, applies, uses, or possesses a volatile chemical with the intent to inhale, ingest, apply, or use a volatile chemical (glue, aerosol paint, etc.) in a manner contrary to the directions for use, cautions or warnings appearing on a label of a container of chemical and is designed to affect the persons central nervous system, create or induce a condition of intoxication, hallucination, or elation or change or distort or disturb the person's eyesight, thinking process, balance or coordination.<br><br>"Abuse of a Volatile Chemical" *violation is also a discretionary expellable offense dependent on the local Student Code of Conduct.* | On campus (01) | M | | | D |
| | TEC §37.006(a)(2)(E) and 37.007(b)(2)(B) | Off Campus, within 300 ft. (02) | M | | | D |
| | TEC §37.006(a)(2)(E) and 37.007(b)(2)(B) | School Related/Sponsored Activity Off Campus (03) | M | | | D |
| 07 | **Public Lewdness/Indecent Exposure** - TEC §37.006(a)(2)(F)<br>Engages in conduct that contains the elements of the offense of public lewdness under Penal Code Section 21.07 or indecent exposure under Section 21.08, Penal Code.<br>Penal Code Chapter 21.07 defines public lewdness as when a person knowingly engages in any of the following acts in a public place or, if not in a public place, is reckless about whether another is present or will be offended or alarmed by:<br><br>(a) an act of sexual intercourse;<br>(b) act of deviate sexual intercourse;<br>(c) act of sexual contact; or<br>(d) act involving contact between the person's mouth or genitals and the anus or genitals of an animal or fowl.<br>Penal Code Chapter 21.08 defines indecent exposure as an offense when a person exposes his anus or any part of his genitals with intent to arouse or gratify the sexual desire of any person, and he is reckless about whether another is present who will be offended or alarmed by his act. | On campus (01) | M | | | |
| | TEC §37.006(a)(2)(F) | Off Campus, within 300 ft. (02) | M | | | |
| | TEC §37.006(a)(2)(F) | School Related/Sponsored Activity Off Campus (03) | M | | | |
| 08 | **Retaliation against School Employee** - TEC §37.006(b) and 37.007(d)<br>Engages in conduct that contains the elements of the offense of retaliation under Penal Code Section 36.06 against any school employee.<br>Penal Code Section 36.06 defines the offense of retaliation as when a person intentionally or knowingly harms or threatens to harm another by an unlawful act in retaliation for or on account of the service of another as a public servant, witness, prospective witness, informant, or a person who has reported or who the actor knows intends to report the occurrence of a crime or to prevent or delay the service of another as a public servant, witness, prospective witness, informant, or a person who has reported or who the actor knows intends to report the occurrence of a crime.<br><br>"Retaliation against School Employee" *violation is also a discretionary expellable offense dependent on the local Student Code of Conduct.*<br>**If a violation under this reason is committed at a felony level, then the student must be expelled from their regular education setting.** | On campus (01) | M | | | D* |
| | TEC §37.006(b) and 37.007(d) | Off Campus, within 300 ft. (02) | M | | | D* |
| | TEC §37.006(b) and 37.007(d) | School Related/Sponsored Activity Off Campus (03) | M | | | D* |
| | TEC §37.006(b) and 37.007(d) | Off Campus, no school related/sponsored activity (04) | M | | | D* |

■ Unsafe School Coding

Disciplinary Action Codes (C164)

| | Code and Definition | Behavior Location Code | Mandatory DAEP Placement | Mandatory Expulsion | Discretionary DAEP Placement | Discretionary Expulsion |
|---|---|---|---|---|---|---|
| 09 | **Title 5 Felony Committed Off Campus** - TEC §37.006(c) and §37.007(b)(4) and TEC §37.0081<br>A student who commits an off-campus felony must be removed from their regular education program and placed in a DAEP if:<br>(a)  the student receives deferred prosecution for conduct and the conduct is defined as a felony under Title 5 of the Penal Code;<br>(b)  a court or jury finds that the off-campus conduct engaged in by the student constitutes delinquent conduct and is defined as a felony under Title 5 of the Penal Code;<br>(c)  or, the superintendent or the superintendent's designee has a reasonable belief that the student engaged in conduct defined as a felony under Title 5 of the Penal Code.<br>Title 5 felonies include: murder; capital murder; manslaughter; criminally negligent homicide; kidnapping; aggravated kidnapping; indecency with a child; felony assault; sexual assault; aggravated assault; aggravated sexual assault; injury to a child, elderly individual, or disabled individual; abandoning or endangering a child; deadly conduct; terroristic threat; aiding suicide; and tampering with a consumer product.<br><br>A student who is at least 10 years of age may be expelled if the student engages in conduct that contains the elements of any offense listed in Subsection (a)(2)(A) or (C) (murder, capital murder, criminal attempt to commit murder or capital murder; aggravated assault under Penal Code §22.02; sexual assault under Penal Code §22.011 or aggravated sexual assault under Penal code §22.021), against another student from the same campus, without regard to whether the conduct occurs on or off of school property or while attending a school-sponsored or school-related activity on or off of school property.<br>The provision for a discretionary expulsion under for these offenses is dependent on the local Student Code of Conduct. | Off Campus, no school related/sponsored activity (04) | M | | | D |
| 10 | **Non-Title 5 Felony Committed Off Campus** - TEC §37.006(d) and TEC §37.007(b)(4)<br>A student **may be removed** from class and placed in a DAEP under TEC §37.008 based on conduct occurring off campus and while the student is not in attendance at a school-sponsored or school-related activity if;<br>(a) the superintendent or the superintendent's designee has a reasonable belief that the student has engaged in conduct defined as a felony offense other than those defined in Title 5, Penal Code; and<br>(b) the continued presence of the student in the regular classroom threatens the safety of other students or teachers or will be detrimental to the education process.<br><br>A student who is at least 10 years of age **may be expelled** if the student engages in conduct that contains the elements of **aggravated robbery** under Penal Code §29.03, **against another student from the same campus**, without regard to whether the conduct occurs on or off of school property or while attending a school-sponsored or school- related activity on or off of school property.<br>The provision for a *discretionary expulsion under this offense* is dependent on the local Student Code of Conduct. | Off Campus, no school related/sponsored activity (04) | | | D | D |
| **11** | **Firearm –**<br>Brought a Firearm to School – TEC 37.007(e) or Unlawful Carrying of a Handgun under Penal Code 46.02 – TEC 37.007(a)(1) 18 U.S.C. Section 921<br><br>Under 18 U.S.C. Section 921, the term "**firearm**" means:<br>(a) any weapon (including a starter gun) which will or is designed to or may readily be converted to expel a projectile by the action of an explosive;<br>(b) the frame or receiver of any such weapon;<br>(c) any firearm muffler or firearm silencer; or<br>(d) any destructive device.<br>Under 18 U.S.C. Section 921, antique firearms (manufactured prior to 1899) are not included in the definition of a firearm.<br>**BB and pellet guns are not considered firearms under this definition**.<br><br>The use, exhibition, or possession of these items, while probably prohibited by the local Student Code of Conduct, is not an acceptable reason for expelling a student. | On campus (01) | | M | | |
| | TEC §37.007(b)(3)(B) | Off Campus, within 300 ft. (02) | | | | D |
| | TEC §37.007(a)(1) and/or 37.007(e) | School Related/Sponsored Activity Off Campus (03) | | M | | |
| | TEC 37.007(i) | On school property, or at school related/sponsored activity, of another school district (05) | | | | D |
| **12** | **Location Restricted Knife –**<br>Unlawful Carrying of a Location-restricted Knife under Penal Code 46.02 – TEC 37.007(a)(1) (Location Restricted knife - blade longer than 5.5 inches).<br>Penal Code Section 46.01(6) defines a **location-restricted knife** as a knife with a blade length longer than 5.5 inches. | On campus (01) | | M | | |
| | TEC §37.007(b)(3)(B) | Off Campus, within 300 ft. (02) | | | | D |
| | TEC §37.007(a)(1) and/or 37.007(e) | School Related/Sponsored Activity Off Campus (03) | | M | | |
| | TEC 37.007(i) | On school property, or at school related/sponsored activity, of another school district (05) | | | | D |

<span style="background-color:red">■</span> **Unsafe School Coding**

| Code and Definition | Behavior Location Code | Disciplinary Action Codes (C164) | | | |
|---|---|---|---|---|---|
| | | Mandatory DAEP Placement | Mandatory Expulsion | Discretionary DAEP Placement | Discretionary Expulsion |
| **Prohibited Weapon –**<br>Conduct Containing the Elements of an Offense Relating to Prohibited Weapons Under Penal Code 46.05 – TEC 37.007(a)(1).<br><br>Penal Code Section 46.05 defines a **prohibited weapon** as one of the following:<br><br>(a) an explosive weapon (Penal Code 46.01(2)),<br>(b) a matching gun (Penal Code 46.01(9)),<br>(c) a short-barrel firearm (Penal Code 46.01(10)),<br>(d) armor-piercing ammunition (Penal Code 46.01(12)),<br>(e) a chemical dispensing device (Penal Code 46.01(14)),<br>(f) a zip gun (Penal Code 46.01(16)),<br>(g) a tire deflation device (Penal Code 46.01(17)), or<br>(h) an improvised explosive device (Penal Code 46.01(19)) | On campus (01) | | M | | |
| TEC §37.007(b)(3)(A) | Off Campus, within 300 ft. (02) | | | | D |
| TEC §37.007(a)(1) | School Related/Sponsored Activity Off Campus (03) | | M | | |
| TEC 37.007(i) | On school property, or at school related/sponsored activity, of another school district (05) | | | | D |
| **Arson** – TEC §37.007(a)(2)(B)<br>Penal Code Section 28.02 defines **arson** as when a person starts a fire or causes an explosion with intent to destroy or damage any vegetation, fence, structure, open-space land, building or vehicle knowing that it is within the limits of an incorporated city or town, it is insured, it is subject to mortgage or it is located on property belonging to another. | On campus (01) | | M | | D |
| TEC §37.007(b)(3)(A) | Off Campus, within 300 ft. (02) | | | | D |
| TEC §37.007(a)(2)(B) | School Related/Sponsored Activity Off Campus (03) | | M | | |
| TEC 37.007(i) | On school property, or at school related/sponsored activity, of another school district (05) | | | | D |
| **Murder, Capital Murder, or Criminal Attempt to Commit Murder/Capital Murder** – TEC §37.007(a)(2)(C)<br>Penal Code Section 19.02 defines **murder** as when a person intentionally or knowingly causes the death of another person, intends to cause serious bodily injury and commits an act clearly dangerous to human life that causes the death of an individual or commits or attempts to commit a felony, other than manslaughter, and in the course thereof he commits an act clearly dangerous to human life that causes the death of an individual.<br><br>Penal Code Section 19.03 defines **capital murder** as when a person commits an offense defined under Section 19.02 and the person murders a peace officer or fireman who is acting in the lawful discharge of an official duty, the person intentionally commits murder during the course of committing or attempting to commit kidnapping, burglary, robbery, aggravated sexual assault, arson, or obstruction or retaliation. A person also commits capital murder if the person commits murder for remuneration or the promise of remuneration or employs another to commit murder for remuneration.<br><br>Section 15.01, Penal Code, defines **criminal attempt** as when a person if, with specific intent to commit an offense, does the act amounting to more than mere preparation but fails to effect the commission of the offense intended. | On campus (01) | | M | | |
| TEC §37.007(b)(3)(A) | Off Campus, within 300 ft. (02) | | | | D |
| TEC §37.007(a)(2)(C) | School Related/Sponsored Activity Off Campus (03) | | M | | |
| TEC 37.007(i) | On school property, or at school related/sponsored activity, of another school district (05) | | | | D |
| **Indecency with a Child** - TEC §37.007(a)(2)(D)<br>Penal Code Section 21.11 defines **indecency with a child** as when a person, with a person younger than 17 years, engages in sexual contact with student or exposes his anus or any part of his genitals knowing the student is present with intent to arouse or gratify the sexual desire of any person. | On campus (01) | | M | | |

■ Unsafe School Coding

| | Behavior Location Code | Disciplinary Action Codes (C164) | | | |
|---|---|---|---|---|---|
| Code and Definition | | Mandatory DAEP Placement | Mandatory Expulsion | Discretionary DAEP Placement | Discretionary Expulsion |
| TEC §37.007(b)(3)(A) | Off Campus, within 300 ft. (02) | | | | D |
| TEC §37.007(a)(2)(D) | School Related/Sponsored Activity Off Campus (03) | | M | | |
| TEC 37.007(i) | On school property, or at school related/sponsored activity, of another school district (05) | | | | D |
| **Aggravated Kidnapping** – TEC §37.007(a)(2)(E)<br>Penal Code Section 20.04 defines **aggravated kidnapping** as when a person intentionally or knowingly abducts another person with intent to hold him for ransom, use him as a hostage, facilitate the commission of a felony, afflict bodily injury on him or abuse him sexually, terrorize him or a third person, or interfere with the performance of any governmental or political function. | On campus (01) | | M | | |
| TEC §37.007(b)(3)(A) | Off Campus, within 300 ft. (02) | | | | D |
| TEC §37.007(a)(2)(E) | School Related/Sponsored Activity Off Campus (03) | | M | | |
| TEC 37.007(i) | On school property, or at school related/sponsored activity, of another school district (05) | | | | D |
| **21** **Violation of Student Code of Conduct** - TEC §37.006, 37.007, or 37.002(c)<br>This category includes bullying, harassment, and making hit lists (TEC §37.001) and reasons not specifically identified in TEC Chapter 37 that are adopted by the local school board and itemized and identified in the local Student Code of Conduct. | Not Applicable (00) | | | D | |
| **22** **Criminal Mischief**-<br>A student may be expelled under Section 37.007(f) for conduct that contains the offense of criminal mischief **if that conduct is punishable as a felony**. Otherwise, the most severe action that may be taken would be placement in a DAEP.<br><br>Penal Code Section 28.03 defines criminal mischief as when a person intentionally or knowingly damages or destroys the tangible property of the owner, intentionally or knowingly tampers with the tangible property of the owner and causes a pecuniary loss or substantial inconvenience to the owner or a third person. A felony under this section occurs when damage exceeds $1,500. For example, this section would apply to cases of graffiti if the total cost of repair and cleaning exceeds $1,500. | Not Applicable (00) | | | | D |
| **23** **Emergency Placement/Expulsion** –<br>The use of this code is limited to reasons for which placement in a DAEP or expulsion may be made on a non-emergency basis according to TEC §37.019.<br><br>**Emergency DAEP Placement**<br>Chapter 37 authorizes the immediate placement of a student in a DAEP if the principal or their designee reasonably believes that the student's behavior is so unruly, disruptive, or abusive that it seriously interferes with a teacher's ability to communicate effectively with the students in a class, with the ability of the student's classmates to learn, or with the operation of school or a school-sponsored activity.<br><br>**Emergency Expulsion**<br>Chapter 37 authorizes the immediate expulsion of a student if the principal or their reasonably believes that the immediate expulsion of the student is necessary to protect persons or property from imminent harm. | Not Applicable (00) | | | D | D |
| **26** **Terroristic Threat** - TEC §37.006(a)(1) or 37.007(b)(1)<br>Under Penal Code Section 22.07, a person commits an offense if he threatens to commit any offense involving violence to any person or property with the intent to:<br><br>(a) cause a reaction of any type to his threat by an official or volunteer agency organized to deal with emergencies; or<br>(b) place any person in fear of imminent serious bodily injury; or<br>(c) prevent or interrupt the occupation or use of a building; room; place of assemble; place to which the public has access; place of employment or occupation; aircraft, automobile, or other form of conveyance; or other public place; or<br>(d) cause impairment or interruption of public communications, public transportation, public water, gas, or power supply or other public service.<br><br>A person who receives a terroristic threat must not only believe the threat, but also believe that the person making the threat will carry it out.<br><br>"Terroristic Threat" violation is also a discretionary expellable offense dependent on the local Student Code of Conduct. | On campus (01) | M | | | D |
| TEC §37.006(a)(1) or 37.007(b)(1) | Off Campus, within 300 ft. (02) | M | | | D |
| TEC §37.006(a)(1) or 37.007(b)(1) | School Related/Sponsored Activity Off Campus (03) | M | | | D |

**Unsafe School Coding**

| # | Code and Definition | Behavior Location Code | Mandatory DAEP Placement | Mandatory Expulsion | Discretionary DAEP Placement | Discretionary Expulsion |
|---|---|---|---|---|---|---|
| | TEC §37.006(a)(1) or 37.007(b)(1) | Off Campus, no school related/sponsored activity (04) | M | | | D |
| | TEC §37.006(a)(1) or 37.007(b)(1) | On school property, or at school related/sponsored activity, of another school district (05) | M | | | D |
| 27 | **Assault of School District Employee or Volunteer** - TEC §36.006(a)(2)(b) and/or TEC §37.007(b)(2)(C)<br>Penal Code Section 22.01 (a)(1) defines **assault** as when a person intentionally, knowingly, or recklessly causes bodily injury to another person.<br>For purposes of this reason, an assault must involve a victim and a perpetrator(s) and the victim must receive bodily injury.<br>If these criteria are not met, then the proper Discipline Action Reason Code would be **Other Student Code of Conduct Violation** (Action Reason Code 21). | On campus (01) | M | | | D |
| | TEC §36.006(a)(2)(B) and/or TEC §37.007(b)(2)(C) | Off Campus, within 300 ft. (02) | M | | | D |
| | TEC §36.006(a)(2)(B) and/or TEC §37.007(b)(2)(C) | School Related/Sponsored Activity Off Campus (03) | M | | | D |
| 28 | **Assault of Someone other than School District Employee or Volunteer** - TEC §37.006(a)(2)(B)<br>Penal Code Section 22.01 (a) (1) defines assault as when a person intentionally, knowingly, or recklessly causes bodily injury to another person.<br>For purposes of this reason, an assault must involve a victim and a perpetrator(s) and the victim must receive bodily injury. **Two or more students cannot assault each other.**<br>If these criteria are not met, then the proper Discipline Action Reason Code would be Other Student Code of Conduct Violation (Action Reason Code 21). | On campus (01) | M | | | |
| | TEC §37.006(a)(2)(B) | Off Campus, within 300 ft. (02) | M | | | |
| | TEC §37.006(a)(2)(B) | School Related/Sponsored Activity Off Campus (03) | M | | | |
| | **Aggravated Assault against School Staff** - TEC §37.007(d)<br>Aggravated assault against a school district employee or volunteer under Penal Code Section 22.02.<br>Penal Code Section 22.02 defines **aggravated assault** as an offense as defined in §22.01 if the person causes **serious bodily** injury to another, including the person's spouse, or **uses or exhibits a deadly weapon** during the commission of the assault.<br>For this Action Reason there must be a victim(s) and a perpetrator(s). **Two persons cannot commit aggravated assault against each other.** | On campus (01) | | M | | |
| | TEC §37.007(d) | Off Campus, within 300 ft. (02) | | M | | |
| | TEC §37.007(d) | School Related/Sponsored Activity Off Campus (03) | | M | | |
| | TEC §37.007(d) | Off Campus, no school related/sponsored activity (04) | | M | | |
| | TEC 37.007(i) | On school property, or at school related/sponsored activity, of another school district (05) | | M | | |
| | **Aggravated Assault against Student** - TEC §37.007(a)(2)A)<br>Aggravated assault against someone other than a school district employee or volunteer under Penal Code Section 22.02.<br>Penal Code Section 22.02 defines **aggravated assault** as an offense as defined in §22.01 if the person causes **serious bodily** injury to another, including the person's spouse, or **uses or exhibits a deadly weapon** during the commission of the assault.<br>For this Action Reason there must be a victim(s) and a perpetrator(s). Two persons cannot commit aggravated assault against each other. | On campus (01) | | M | | |
| | TEC §37.007(b)(3)(A) | Off Campus, within 300 ft. (02) | | | | D |
| | TEC §37.007(a)(2)(A) | School Related/Sponsored Activity Off Campus (03) | | M | | |

**Unsafe School Coding**

| Code and Definition | Behavior Location Code | Disciplinary Action Codes (C164) | | | |
|---|---|---|---|---|---|
| | | Mandatory DAEP Placement | Mandatory Expulsion | Discretionary DAEP Placement | Discretionary Expulsion |
| TEC 37.007(i) | On school property, or at school related/sponsored activity, of another school district (05) | ■ | | | D |
| **Sexual Assault/Aggravated Sexual Assault against School Staff** - TEC §37.007(d)<br>Sexual assault under Penal Code Section 22.011, or aggravated sexual assault under Penal Code Section 22.021 against a school district employee or volunteer.<br><br>Penal Code Section 22.011 defines **sexual assault** as when a person intentionally or knowingly causes the penetration of the anus or female sexual organ of another person by any means without that person's consent,  causes the penetration of the mouth of another person by the sexual organ of the actor without the person's consent or causes the sexual organ of another person, without the person's consent, to contact, or penetrate  the mouth, anus, or sexual organ of another person, including the actor.<br><br>**Sexual assault** is also defined as when a person intentionally or knowingly causes the penetration of the anus or female sexual organ of a child by any means, causes the penetration of the mouth of a child by the sexual  organ of the actor, causes the sexual organ of a child to contact or penetrate the mouth, anus, or sexual organ of another person, including the actor, or causes the anus of a child to contact the mouth, anus, or sexual  organ of another person, including the actor.<br><br>Penal Code Section 22.021, defines **aggravated sexual assault** as any of the offenses listed above in Penal Code Section 22.011 if the person causes serious bodily injury or attempts to cause the death of the victim or  another person in the course of the same criminal episode, places the victim in fear that death, serious bodily injury, or kidnapping will be imminently inflicted on any person, by acts or words threatens to cause death or  serious bodily injury or kidnapping of any person or who uses or exhibits a deadly weapon in the course of the same criminal episode.  A person also commits the offense of aggravated sexual assault if they act in concert  with another who engages in such conduct or commits the offense of sexual assault on a person who is younger than 14 or 65 years of age or older (Chapter 318, Section 9). | On campus (01) | ■ | M | | |
| TEC §37.007(d) | Off Campus, within 300 ft. (02) | ■ | | | D |
| TEC §37.007(d) | School Related/Sponsored Activity Off Campus (03) | ■ | | | |
| TEC 37.007(i) | On school property, or at school related/sponsored activity, of another school district (05) | ■ | | | D |
| **Sexual Assault/Aggravated Sexual Assault against Student** - TEC §37.007(a)(2)(A)<br>Sexual assault under Penal Code Section 22.011, or aggravated sexual assault under Penal Code Section 22.021 against someone other than a school district employee or volunteer.<br><br>Penal Code Section 22.011 defines **sexual assault** as when a person intentionally or knowingly causes the penetration of the anus or female sexual organ of another person by any means without that person's consent,  causes the penetration of the mouth of another person by the sexual organ of the actor without the person's consent or causes the sexual organ of another person, without the person's consent, to contact, or penetrate  the mouth, anus, or sexual organ of another person, including the actor.<br><br>**Sexual assault** is also defined as when a person intentionally or knowingly causes the penetration of the anus or female sexual organ of a child by any means, causes the penetration of the mouth of a child by the sexual  organ of the actor, causes the sexual organ of a child to contact or penetrate the mouth, anus, or sexual organ of another person, including the actor, or causes the anus of a child to contact the mouth, anus, or sexual  organ of another person, including the actor.<br><br>Penal Code Section 22.021 defines **aggravated sexual assault** as any of the offenses listed above in Penal Code Section 22.011 if the person causes serious bodily injury or attempts to cause the death of the victim or  another person in the course of the same criminal episode, places the victim in fear that death, serious bodily injury, or kidnapping will be imminently inflicted on any person, by acts or words threatens to cause death or  serious bodily injury or kidnapping of any person or who uses or exhibits a deadly weapon in the course of the same criminal episode.  A person also commits the offense of aggravated sexual assault if they act in concert  with another who engages in such conduct or commits the offense of sexual assault on a person who is younger than 14 or 65 years of age or older (Chapter 318, Section 9). | On campus (01) | ■ | M | | |
| TEC §37.007(b)(3)(A) | Off Campus, within 300 ft. (02) | ■ | | | D |
| TEC §37.007(a)(2)(A) | School Related/Sponsored Activity Off Campus (03) | | M | | |
| TEC 37.007(i) | On school property, or at school related/sponsored activity, of another school district (05) | ■ | | | D |

■ Unsafe School Coding

Disciplinary Action Codes (C164)

| Code and Definition | Behavior Location Code | Mandatory DAEP Placement | Mandatory Expulsion | Discretionary DAEP Placement | Discretionary Expulsion |
|---|---|---|---|---|---|
| **35** **False Alarm/False Report** - TEC §37.006(a)(1) and 37.007(b)(1)<br>A student who commits an offense if he knowingly initiates, communicates or circulates a report of a present, past, or future bombing, fire, offense, or other emergency that he knows is false or baseless and that would ordinarily:<br><br>(a)  cause action by an official or volunteer agency organized to deal with emergencies;<br>(b)  place a person in fear of imminent serious bodily injury; or<br>(c)  prevent or interrupt the occupation of a building, room, place of assembly, place to which the public has access, or aircraft, automobile, or other mode of conveyance.<br><br>*"False Alarm/False Report" violation is also a discretionary expellable offense dependent on the local Student Code of Conduct.* | On campus (01) | M | | | D |
| TEC §§37.006(a)(1) and 37.007(b)(1) | Off Campus, within 300 ft. (02) | M | | | D |
| TEC §§37.006(a)(1) and 37.007(b)(1) | School Related/Sponsored Activity Off Campus (03) | M | | | D |
| TEC §§37.006(a)(1) and 37.007(b)(1) | Off Campus, no school related/sponsored activity (04) | M | | | D |
| TEC §§37.006(a)(1) and 37.007(b)(1) | On school property, or at school related/sponsored activity, of another school district (05) | M | | | D |
| **36** **Felony Controlled Substance Violation** - TEC §37.007(a)(3)<br><br>Examples would include four (4) ounces or more of marijuana, any amount of cocaine, and other controlled substances.<br><br>Always get corroboration from law enforcement before using this Action Reason code. | On campus (01) | | M | | |
| TEC §37.007(a)(3) | School Related/Sponsored Activity Off Campus (03) | | M | | |
| TEC 37.007(i) | On school property, or at school related/sponsored activity, of another school district (05) | | | | D |
| **37** **Felony Alcohol Violation** - TEC §37.007(a)(3)<br><br>An example would be intoxication manslaughter.<br>Always get corroboration from law enforcement before using this Action Reason code. | On campus (01) | | M | | |
| TEC §37.007(a)(3) | School Related/Sponsored Activity Off Campus (03) | | M | | |
| TEC 37.007(i) | On school property, or at school related/sponsored activity, of another school district (05) | | | | D |
| **41** **Fighting/Mutual Combat** - Excludes all offenses under Penal Code §22.01<br><br>Fighting is defined as two or more students or persons that choose to mutually engage in physical combat using blows or force to strive to overcome the other student(s) or person(s). | Not Applicable (00) | | | D | |
| **46** **Aggravated Robbery** - TEC §37.007(a)(2)(F), TEC §37.006(C)-(D) (HB 9680)<br><br>Penal Code §29.03 defines **aggravated robbery** as when a person commits robbery as defined in Section 29.02, and he: (1) causes serious bodily injury to another; (2) uses or exhibits a deadly weapon; or (3) causes bodily injury to another person or threatens or places another person in fear of imminent bodily injury or death, if the other person is: (A) 65 years of age or older; or (B) a disabled person.<br><br>Penal Code §29.02 defines **robbery** as a person commits an offense if, in the course of committing theft as defined in Chapter 31 and with intent to obtain or maintain control of the property, he: (1)<br>intentionally, knowingly, or recklessly causes bodily injury to another; or (2) intentionally or knowingly threatens or places another in fear of imminent bodily injury or death. | On campus (01) | | M | | |
| TEC §37.007(b)(3)(A) | Off Campus, within 300 ft. (02) | | | | D |
| TEC §37.007(a)(2)(F) | School Related/Sponsored Activity Off Campus (03) | | M | | |
| TEC 37.0081 | Off Campus, no school related/sponsored activity (04) | | | | D |

**Unsafe School Coding**

| Code and Definition | Behavior Location Code | Mandatory DAEP Placement | Mandatory Expulsion | Discretionary DAEP Placement | Discretionary Expulsion |
|---|---|:---:|:---:|:---:|:---:|
| TEC 37.007(i) | On school property, or at school related/sponsored activity, of another school district (05) | | | | D |
| **Manslaughter** - TEC §37.007(a)(2)(G)<br>Penal Code §19.04 defines **manslaughter** as a person commits an offense if he recklessly causes the death of an individual. | On campus (01) | | M | | |
| | Off Campus, within 300 ft. (02) | | | | D |
| TEC §37.007(a)(2)(G) | School Related/Sponsored Activity Off Campus (03) | | | | |
| TEC 37.0081 | Off Campus, no school related/sponsored activity (04) | | | | D |
| TEC 37.007(i) | On school property, or at school related/sponsored activity, of another school district (05) | | | | D |
| **Criminally Negligent Homicide** - TEC §37.007(a)(2)(H)<br>Penal Code §19.05 defines **criminally negligent homicide** as a person commits an offense if he causes the death of an individual by criminal negligence. | On campus (01) | | M | | |
| TEC §37.007(b)(3)(A) | Off Campus, within 300 ft. (02) | | | | D |
| TEC §37.007(a)(2)(H) | School Related/Sponsored Activity Off Campus (03) | | M | | |
| TEC 37.0081 | Off Campus, no school related/sponsored activity (04) | | | | D |
| TEC 37.007(i) | On school property, or at school related/sponsored activity, of another school district (05) | | | | D |
| **Deadly Conduct** – TEC §37.007(b)(2)(D)<br>Penal Code §22.05 defines **deadly conduct** as when a person recklessly engages in conduct that places another in imminent danger of serious bodily injury, or a person commits an offense if he knowingly discharges a firearm at or in the direction of:<br><br>(1) one or more individuals; or<br>(2) a habitation, building, or vehicle and is reckless as to whether the habitation, building, or vehicle is occupied. Recklessness and danger are presumed if the actor knowingly pointed a firearm at or in the direction of another whether or not the actor believed the firearm to be loaded.<br><br>For purposes of this section, "building," "habitation," and "vehicle" have the meanings assigned those terms by Section 30.01.<br><br>An offense under Penal Code §22.05(a) is a Class A misdemeanor. An offense under Penal Code §22.05(b) is a felony of the third degree. | On campus (01) | | | D | D |
| TEC §37.007(b)(2)(D) | Off Campus, within 300 ft. (02) | | | D | D |
| TEC §37.007(b)(2)(D) | School Related/Sponsored Activity Off Campus (03) | | | D | D |
| **55** | **Student Is Required to Register as A Sex Offender Under Chapter 62 Of The Code Of Criminal Procedure And Is Under Court Supervision** - TEC §37.304.<br>The offense(s) for which the student is required to register as a sex offender must have occurred on or after Sept. 1, 2007. | Not Applicable (00) | M | | | D |
| **56** | **Student Is Required to Register as A Sex Offender Under Chapter 62 Of The Code Of Criminal Procedure And Is Not Under Court Supervision** - TEC §37.305.<br>The offense(s) for which the student is required to register as a sex offender must have occurred on or after Sept. 1, 2007. | Not Applicable (00) | | | D | |
| **Continuous Sexual Abuse of Young Child or Disabled Individual Under Penal Code §21.02** -<br>TEC §37.007(a)(2)(I) | On campus (01) | | M | | |
| TEC §37.007(b)(3)(A) | Off Campus, within 300 ft. (02) | | | | D |
| TEC §37.007(a)(2)(I) | School Related/Sponsored Activity Off Campus (03) | | M | | |
| TEC 37.007(i) | On school property, or at school related/sponsored activity, of another school district (05) | | | | D |

■ **Unsafe School Coding**

| | Disciplinary Action Codes (C164) | | | | | |
|---|---|---|---|---|---|---|
| | Code and Definition | Behavior Location Code | Mandatory DAEP Placement | Mandatory Expulsion | Discretionary DAEP Placement | Discretionary Expulsion |
| 58 | **Breach of Computer Security Under Penal Code §33.02** – TEC § 37.007(b)(5)<br>A student engages in conduct that contains the elements of the offense of breach of computer security under Section 33.02 if the person knowingly accesses a computer, computer network, or computer system without the effective consent of the owner if the conduct involves accessing a computer, computer network, or computer system owned by or operated on behalf of a school district; and the student knowingly: (i) alters, damages, or deletes school district property or information; or, (ii) commits a breach of any other computer, computer network, or computer system. | On campus (01) | | | | D |
| | TEC §37.007(b)(5) | Off Campus, within 300 ft. (02) | | | | D |
| | TEC §37.007(b)(5) | School Related/Sponsored Activity Off Campus (03) | | | | D |
| | TEC §37.007(b)(5) | Off Campus, no school related/sponsored activity (04) | | | | D |
| | TEC §37.007(b)(5) | On school property, or at school related/sponsored activity, of another school district (05) | | | | D |
| 59 | **Serious Misbehavior, as defined by TEC §37.007(c), while expelled to/placed in a Disciplinary Alternative Education Program (DAEP)** –<br>TEC §37.007(c) defines "**serious misbehavior**" as:<br><br>(1) deliberate violent behavior that poses a direct threat to the health or safety of others;<br>(2) extortion, meaning the gaining of money or other property by force or threat;<br>(3) conduct that constitutes coercion, as defined by Penal Code §1.07,; or<br>(4) conduct that constitutes the offense of:<br>    (a) public lewdness under Penal Code §21.07,<br>    (b) indecent exposure under Penal Code §21.08;<br>    (c) criminal mischief under Penal Code §28.03;<br>    (d) personal hazing under Penal Code §37.152; or<br>    (e) harassment under Penal Code §42.07(a)(1), of a student or district employee. | On Campus (01) | | | | D |
| 60 | **Harassment Against an Employee of the School District under Texas Penal Code 42.07(a)(1), (2), (3), or (7)** –<br>TEC 37.006(a)(2)(G) Texas Penal Code Section 42.07(a)(1), (2), (3), and (7) defines this behavior as:<br><br>A person commits an offense if, with intent to harass, annoy, alarm, abuse, torment, or embarrass another, the person:<br><br>(1) initiates communication and in the course of the communication makes a comment, request, suggestion, or proposal that is obscene;<br><br>(2) threatens, in a manner reasonably likely to alarm the person receiving the threat, to inflict bodily injury on the person or to commit a felony against the person, a member of the person's family or household, or the person's property.<br><br>(3) Conveys, in a manner reasonably likely to alarm the person receiving the report, a false report, which is known by the conveyor to be false, that another person has suffered death or serious bodily injury;<br><br>(4) Sends repeated electronic communications in a manner reasonably likely to harass, annoy, alarm, abuse, torment, embarrass, or offend another. | On campus (01) | M | | | |
| | TEC 37.006(a)(2)(G) | Off Campus, within 300 ft. (02) | M | | | |
| | TEC 37.006(a)(2)(G) | School Related/Sponsored Activity Off Campus (03) | M | | | |
| 61 | **Bullying** – TEC 37.0052(b)<br>TEC Sec.37.0052 (b) defines **bullying** behavior as:<br>(1) engages in bullying that encourages a student to commit or attempt to commit suicide;<br>(2) incites violence against a student through group bullying; or<br>(3) releases or threatens to release intimate visual material of a minor or a student who is 18 years of age or older without the student's consent | Not Applicable (00) | | | D | D |

<span style="color:red">■</span> **Unsafe School Coding**

# BULLYING CHECKLIST
## FOR SCHOOLS

## PLEASE READ BEFORE USING CHECKLIST

To determine whether an act is bullying or cyberbullying by law, proceed down the checklist and provide a checkmark for each true statement. If any identified section does not receive at least one checkmark, then the act is not considered bullying by state law.

SB 179, "David's Law" expanded authority to school districts, allowing public and charter schools to address cyberbullying off-campus and outside of school-related or school-sponsored activities based on specific criteria. In order to address this legislative change, this checklist may help parents, educators, and administrators determine if a student at their school has been bullied according to the legislative definition. Please follow the conditional 'yes/no' logic for the questions regarding the use of electronic communication devices in possible bullying scenarios.

## IS IT BULLYING?

- Was it a single significant act? ☐
- Was it a pattern of acts? ☐

- By one or more students directed at another student that **exploits an imbalance of power** ☐

- Through physical contact ☐
- Using verbal expression ☐
- Using written expression ☐
- Using electronic means ☐

- Physically harms a student or damages their property ☐
- Creates reasonable fear of harm to student or damage to their property ☐
- **Is sufficiently severe, persistent, or pervasive enough that the action or threat creates:**
    - Intimidating educational environment ☐
    - Threatening educational environment ☐
    - Abusive educational environment ☐
- Materially and substantially disrupts the educational process or operation of school ☐
- Infringes on rights of victim at school ☐

## Was the act committed by using any type of electronic communication device?

*(i.e. Cellular or other phone, computer, camera, e-mail, text or instant messaging, social media app, Internet website, Internet communication tool)*

**Yes** →

## Did the act occur outside of a school-sponsored or school-related activity?

*(This is an important distinction, as David's Law expands a school district's authority to include cyberbullying incidents that occur off campus and outside a school-sponsored or school-related activity, as long as it meets one of the below criteria.)*

**Yes** ↓

**No** →

**No** ↓

- On school property ☐
- At a school-sponsored or school-related activity (on or off campus) ☐
- On school bus or vehicle used to transport students ☐

## Did the act interfere with a student's educational opportunities; or substantially disrupt the orderly operation of a classroom, school, or school-sponsored/related activity?

**Yes** →

# YES, IT'S BULLYING
### *(Cyberbullying is bullying)*

**No** ↓

According to law, if the act **DID NOT** meet the criteria above, it is not under the school district's authority.



# TEXAS ★ STATE ®
## Texas School Safety Center
www.txssc.txstate.edu    *(Updated 2021)*

# BULLYING CHECKLIST EXAMPLES

The examples provided below are not an exhaustive list. They are provided to support you through the checklist to determine whether the act(s) meet the legal definition of bullying.

**Was it a single significant act?** What makes a single act 'significant' is the severe or pervasive effect it has on the target (victim) of the bullying. Examples of single significant acts include a student who is severely physically injured by their bully or a student who is told to kill themself. It can occur electronically, for example, an intimate photo is stolen and posted online, or a video showing a student being ridiculed is uploaded onto social media. With social media, it can be difficult to determine whether an act of bullying occurred once or was a pattern of acts. This is one reason why David's Law amended the Texas Education Code to include a single significant act. As hurtful comments, images, or videos may be posted one time, each comment, like, or share, as well as the permanent nature of the internet and technology adds additional pain to the target of the bullying. The important thing to focus on is not whether the act meets 'significant' status, but whether it is significant to the target of the bullying.

**Was it a pattern of acts?** There is no timeline for bullying behavior to be considered a pattern of acts. Repeated acts can occur within a short period of time or they can span months or even years. For example, a student is physically bullied in sixth grade, and is then cyberbullied in seventh grade when altered images and hurtful comments are posted online by the same student who bullied them in sixth grade. Or a student is repeatedly called hurtful names and has things thrown at them every time they walk down the school hallway.

**By one or more students directed at another student that exploits an imbalance of power.** An imbalance of power is a subjective determination and can include physical, social, emotional, informational, or other threats to a students' emotional wellbeing. This can change over time even if it involves the same students.

Power may include physical strength and stature, social status at school or on social media, or having access to embarrassing photos or personal information. For example, a student threatens to tell everyone at school that the target of their bullying lives at a shelter, or that the target's parents are unemployed. Another example is a student with a large social media following who has access to unflattering photos of the target and threatens to post the photos online.

**Through physical contact** Bullying through physical contact can include pinching, flicking, poking, punching, slapping, hitting, or being pushed down the stairs. Bullying through physical contact, such as flicking or pinching, can sometimes be dismissed as immature or childish behavior. Avoid minimizing or dismissing the behavior, especially when it meets all bullying checklist criteria.

**Using verbal expression** Bullying through verbal expression can include name calling, derogatory comments, ridiculing, threats to cause harm, or threats to take away friendship. It is important to distinguish between when a student is being rude or mean, and when they are bullying. Rude and mean comments hurt, but for it to rise to the level of bullying it would need to meet all checklist criteria.

**Using written expression** Bullying through written expression can include writing hurtful comments or threats in notes, on photos, lockers, mirrors, walls, or on paper or other material.

**Using electronic means** Bullying through electronic means includes using technology such as smartphones or computers to bully others. It can also include the use of a camera, e-mail, text or instant messaging, social media application, or internet website. Examples include spreading rumors or gossip through social media, taking and sending embarrassing pictures or videos without permission, creating a fake profile and pretending to be another student, threatening violence through group bullying, photoshopping someone's image to humiliate, harass, or embarrass, or recording and posting fight videos. The technology and devices used can be personal, or school issued.



# BULLYING CHECKLIST EXAMPLES

**Physically harms a student or damages their property** Physical harm could include bruises, cuts, burns, or a broken bone. Bullying can also include damage to property, including clothing, bookbags, smartphones, or laptops.

**Creates reasonable fear of harm to student or damage to their property** It is important to understand the fear of harm that bullying causes, either to a person or their property. For example, a student is told "you'll be sorry if you come to school tomorrow" and as a result the student is in fear of going to school. In this context, 'reasonable' fear of harm applies to whether other people in the same situation would feel similarly.

**Intimidating educational environment** The target of the bullying feels intimidated at school, and as a result, the school environment is not a safe place for them. For example, the student is fearful of going to class because the student who is bullying them is in the same class.

**Threatening educational environment** The target of the bullying feels threatened at school, and as a result, the school environment is not a safe place for them. For example, the student is threatened online for asking a particular girl to prom and is fearful to return to school. Or the student is told that they will "regret it" if they try out for the track team.

**Abusive educational environment** The target of the bullying feels abused at school, and as a result, the school environment is not a safe place for them. For example, the student is pushed down the stairs, or the student's friends are told to not sit with them at lunch.

**Materially and substantially disrupts the educational process or operation of school** The bullying or the impact of the bullying is significant enough to disrupt or interfere with the education process, the classroom, or school operations. For example, a teacher is unable to cover instructional content as a significant amount of class time is spent addressing the student who is bullying. Or students, even those who may not be a target, are fearful to go to class or have difficulty receiving instruction because of the behavior of the student who is bullying.

**Infringes on the rights of the victim at school** The bullying or impact of the bullying restricts the rights of the target who is being bullied. For example, a student is afraid to go to the restroom or try out for a team because of being bullied.



# APPLYING THE
# TXSSC'S BULLYING CHECKLIST
## *FOR SCHOOLS*

**Instructions:** *The following hypothetical scenarios are meant to provide further guidance, and act as an example, when using the* TxSSC's Bullying Checklist for Schools. *Each of the examples below provide a hypothetical scenario and then apply each component of the checklist to the situation, ultimately determining if the action or actions meets the legal definition of bullying according to the Texas Education Code.*

## ▌SCENARIO #1

Lee waits for Jessie to leave their first period class at the middle school every day. Lee is much larger stature, an athlete, and does not like Jessie. Almost every day, Lee confronts Jessie following their first period class by knocking Jessie's books from his hands. Jessie does nothing to retaliate.

### IS THIS BULLYING?

# YES | **According to the bullying checklist, it meets the necessary criteria to be considered bullying.**

*Application of the TxSSC's bullying checklist for schools:*
- This happening multiple times after 1st period makes this a pattern of acts.
- The acts are between Lee and Jessie, making it from one student directed at another. Since Lee is larger, it also exploits an imbalance of power. There also could be other imbalances of power that are not immediately apparent.
- The knocking of the books from the hands is physical expression.
- Lee knocking books from Jessie's hands damages Jessie's property and creates reasonable fear of harm to Jessie and damage to his property. Since the acts happen almost every day, the acts are persistent. The continuous knocking of books from Jessie's hands creates at least an intimidating and threatening educational environment.
- The incidents happen on school property.



TEXAS ★ STATE
Texas School Safety Center
*txssc.txstate.edu*

# APPLYING THE TXSSC'S BULLYING CHECKLIST FOR SCHOOLS

## ▋SCENARIO #2

Taylor and Devin communicate through text and social media every day. Taylor and Devin are both interested in dating a student named Ryan. At some point, Devin starts spreading false rumors to Ryan about Taylor, in order to get Ryan to dislike Taylor. After leaving school, Devin starts texting unflattering photos of Taylor to Ryan and making social media posts "bashing" Taylor. These texts and photos, as well as social media posts, are NOT done while at school, only while at home or at other friends' houses. Devin is from a wealthy family and their parents hold high positions in the community, while Taylor is from a moderate income, single-parent family. Other students are beginning to shun Taylor at school, resulting in Taylor socially withdrawing at school and no longer wanting to attend that school. When Taylor and Devin are in class together, they have had to be separated, as they obviously do not get along together in school.

### IS THIS BULLYING?

**YES** | **According to the bullying checklist, it meets the necessary criteria to be considered bullying (cyberbullying is bullying).**

*Application of the TxSSC's bullying checklist for schools:*
- Multiple incidents of texting and social media posts make this a pattern of acts.
- The acts are between Taylor and Devin, making it from one student directed at another. These actions have created a situation where Taylor is stunned by other students at school, making it more than one individual directed at another. Since Devin comes from a wealthy family who hold high positions in the community, and Taylor does not, there is a difference in socioeconomic status. This exploits an imbalance of power. There also could be other imbalances of power that are not immediately apparent.
- Social media and texting are considered electronic means.
- These acts are creating an intimidating and abusive environment. Since other students are starting to shun Taylor at schools, it is disrupting the educational process and school operations.
- Social media and texting were used as electronic communication devices.
- These incidents are happening off of school property and outside of a school-sponsored event or school-related activity.
- Since Taylor no longer wants to attend school, and both Taylor and Devin have to be separated at school, it is both interfering with Taylor's educational opportunities and disrupting orderly operations.



TEXAS ★ STATE®
Texas School Safety Center
*txssc.txstate.edu*

# APPLYING THE  TXSSC'S BULLYING CHECKLIST FOR SCHOOLS

## ▌SCENARIO #3

Jordan and Dakota are longtime friends and their families are friends as well.  They are the same age and live a few blocks from each in the same neighborhood.  They are both on the baseball team and both are well connected socially at school.  Lately, they have been more competitive in their sports activities and have grown further apart. At times, they have been observed at school trading verbal taunts about each other and making fun of each other's family members. No physical altercations have occurred, but they are both aligning with other friends to go "against" each other.

### IS THIS BULLYING?

**NO** ▌ **According to the bullying checklist, it does not meet all the necessary criteria to be considered bullying. Specifically, it lacks exploiting an imbalance of power.**

*Application of the TxSSC's bullying checklist for schools:*
- The trading of verbal taunts is a pattern of acts.
- Since both are exchanging verbal taunts, both are directing behavior toward each other.
- Jordan and Dakota are the same age, from the same neighborhood, and are both members of the baseball team. From this description, there does not appear to be an exploitation of an imbalance of power (even though there may be other imbalances of power unknown). Based on this information, the actions do not meet the legal definition of bullying.

▌ **Although these actions do not amount to bullying based on the legal definition in the education code, this DOES NOT mean that some intervention would not help to reduce conflict. It is also possible that other school policies in the code of conduct might be more applicable.**



TEXAS ★ STATE
TEXAS SCHOOL SAFETY CENTER
*txssc.txstate.edu*

# APPLYING THE  TXSSC'S BULLYING CHECKLIST FOR SCHOOLS

## SCENARIO #4

Logan and Cameron attend the same school and live in the same neighborhood. They ride the bus to school together every morning and afternoon. Logan is well-known around the school and has lots of friends, while Cameron is shy and does not have many. Recently, Logan has started to "pick on" Cameron on the bus. He throws paper planes at him and rounds up other students on the bus to make fun of him. This has occurred for the last several weeks. Logan does not talk to Cameron while at school. Cameron has started to miss several days of school, because he is afraid that Logan's taunts will start happening while at school.

### IS THIS BULLYING?

**YES** | **According to the bullying checklist, it meets the necessary criteria to be considered bullying.**

> *Application of the TxSSC's bullying checklist for schools:*
> - The behavior on the bus by Logan has occurred for several weeks, making it a pattern of acts.
> - The behavior on the bus from Logan and the other students is directed at Cameron, making it from one or more students directed at another student. The fact that Cameron is shy and does not have many friends, and Logan is well-known and has many friends creates an imbalance of power. The number of students involved also creates an imbalance of power.
> - The actions occurring on the bus, including throwing paper airplanes and making fun of Cameron represents both physical contact and verbal expression.
> - These actions are physically harming Cameron and have created fear of harm at school. The actions are also persistent, which has created an intimidating, threatening, and abusive educational environment that disrupts the educational process (by missing several days at school).
> - The actions occur on a bus used to transport students.



TEXAS ★ STATE
TEXAS SCHOOL SAFETY CENTER
*txssc.txstate.edu*

# APPLYING THE TXSSC'S BULLYING CHECKLIST FOR SCHOOLS

## ▮ SCENARIO #5

Parker and Morgan go to the same school and walk home every day. One day, after leaving the school campus, Parker decides to tease Morgan on their walk home. Parker pushes Morgan to the ground and dumps out her backpack. Parker is much bigger than Morgan, so it was easy for her to push her down. Morgan runs home crying. Morgan's mom has called up to the school to report that Morgan is the victim of bullying.

### IS THIS BULLYING?

**NO**

**While it does meet most of the criteria for being bullying, the action appeared to happen only once. Further, it did not happen on school grounds or at a school-sponsored activity. For actions to be considered bullying and under the school district's authority, cyberbullying is the only type of bullying that can happen off-campus where the school is required to intervene.**

*Application of the TxSSC's bullying checklist for schools:*
- The action happened one time. As far as we know, this was an isolated incident and was not a pattern of acts.
- The action happened from Parker to Morgan, making it from one student directed at another. Parker is bigger than Morgan, which creates and imbalance of power.
- Parker pushed and dumped out Morgan's bag, making it a physical expression. Parker also teased Morgan, which could be considered verbal expression.
- The action of pushing Morgan down physically harmed her and could have reasonably put her in fear.
- It occurred off of school property and outside of a school sponsored event or related activity.

**Although these actions do not amount to bullying based on the legal definition in the education code, this DOES NOT mean that some intervention would not help to reduce conflict. It is also possible that other school policies in the code of conduct might be more applicable.**



TEXAS STATE
Texas School Safety Center
txssc.txstate.edu

# APPLYING THE TXSSC'S BULLYING CHECKLIST FOR SCHOOLS

# ▌SCENARIO #6

Jayden and Avery go to high school together. Jayden is a junior and Avery is a freshman. They play basketball together every Saturday. One Saturday at the basketball court, Jayden stole Avery's basketball. When Avery confronts Jayden, Jayden denies doing it. That evening, Avery gets on Twitter and notices that Jayden posted a short video of Avery missing a basketball shot with the caption "This is what sucking at bball looks like". Avery notices that the video has been shared over 50 times by classmates and others. On Monday morning, students in school were laughing at Avery while walking through the halls. Avery has been unable to focus in class because of the laughing.

## IS THIS BULLYING?

## YES According to the bullying checklist, it meets the necessary criteria to be considered bullying.

*Application of the TxSSC's bullying checklist for schools:*
- Stealing the basketball, and then posting on social media is a pattern of acts. The fact that is was shared over 50 times could also be considered when determining this as a pattern of acts.
- Incidents are between Jayden and Avery (one student directed at another). The action also turns into multiple students directed at one student following the sharing of the video by other classmates. Differences in classification and age between Jayden and Avery leads to exploiting an imbalance of power.
- Using Twitter to post the video is considered electronic means.
- These acts are creating an intimidating, threatening, and abusive environment. It is infringing on Avery's rights as a student. Since other students are starting to laugh at Avery in the halls, it is disrupting the educational process and school operations.
- Social media was used as an electronic communication device.
- These incidents are happening off of school property and outside of a school-sponsored event or school-related activity.
- Since Avery has not been able to focus in class because of the laughing, it is both interfering with Avery's educational opportunities and disrupting orderly operations.



TEXAS ★ STATE®
Texas School Safety Center
**txssc.txstate.edu**

# FAQ's for Discipline

| **What is the offense date?** |
|---|
| The offense date is the date the student commits the discipline offense. |

| **What is the order date?** |
|---|
| The Ordered Date indicates the date on which the disciplinary assignment was ordered. This may or may not reflect the date on which the disciplinary infraction occurred. This may or may not reflect the date on which the disciplinary assignment begins. |

| **What is the action detail start date?** |
|---|
| The action detail start date is the date the student begins serving the assignment. |

| Action Details  Add   Regenerate Dates | | | | |
|---|---|---|---|---|
| | Date to Serve | Time | Status | Length (Days) | Time Served |
| Edit  Delete | 10/21/2020 | 1:23 PM | Open | 1.00 | 0.00 |

| **What is the return date and is a return date required for all discipline actions?** |
|---|
| The return date is ***the date the student returns to the home campus or regular school setting***, not the last date of the assignment.  Yes, a return date is required for all discipline actions. |

| **What should the SGLC campus do if a student returns from the alternative campus earlier than the original assignment?** |
|---|
| The sglc campus should mark as served the days the student was at the alternative campus and leave the remaining days open. An appropriate difference reason should be entered. The return date should be adjusted and a note entered in the comment section indicating the reason. |

| **If more than one student is involved in the same discipline offense, is the same incident number used?** |
|---|
| Yes, the same incident number should be used if one or more students are involved in the same offense. The offense code must be the same; however, the action code may be different. |

| **Does all discipline need to be marked served?** |
|---|
| Yes, all discipline should be marked served unless a difference reason is entered or the student withdrew before completing actions assigned. |

| **Can a campus generate the Pre-PEIMS 425 and Discipline Summary reports?** |
|---|
| All campuses should run the Pre-PEIMS 425 report, the discipline summary report for open discipline and the discipline summary report for incidents with no action assigned at their convenience. |

| **Why does the Pre-PEIMS 425 report not indicate all discipline entered in Skyward?** |
|---|
| The Pre-PEIMS 425 report will only include PEIMS reportable offenses. |

| **When is it appropriate to use a 99 for a difference reason?** |
|---|
| A 99 should only be used for if no other difference reason applies. |

| **Does every offense require an action?** |
|---|
| Yes, all offenses require an action. |

# Steps for DAEP (SGLC)

| Continuations |
| --- |
| All continuations must be entered prior to the start of the new school year. Verify that the prior year Offense Code was used and add an action code of **10** (cont. prior yr. placement) or **11** (cont. prior yr. expulsion). |

| Offense Dates and Ordered Dates |
| --- |
| The Offense date and Ordered date must be prior to the student's withdrawal date. Compare the dates to the Entry/Withdrawal tab. |

| Action Detail Start Date |
| --- |
| The Action Detail Start Date must be the day the student started at the alternative campus. |

| Days Served |
| --- |
| If the student was released early from SGLC campus, only the days the student was enrolled at the alternative campus should be marked served with 1.00 (action detail) and the dates the student did not serve should reflect as 0.00. If the student did not serve all assigned days, a difference reason code must be added. |

| Additional Days Served |
| --- |
| If the student served more than the days assigned, the Action Status would be marked Served, the Return Date must be adjusted, add the additional days to Action Details, enter a Difference Reason and add a comment to detail the reason for the additional days served. |

| Action Status |
| --- |
| Action status should not be marked served until the student has been released back to the home campus. |

| Date Verification |
| --- |
| Alternative campuses must verify that the Ordered Date is corresponding with the placement letter and the Action Detail Start Date reflect the first date the student began at the SGLC campus. |

## Chapter 37 Discipline Chart

*Published online in TASB School Law eSource*

This chart is designed to assist school officials in determining the appropriate disciplinary responses to student misconduct both on and off campus. The chart is based on the requirements of Texas Education Code chapter 37 and common provisions of districts' local student codes of conduct (SCOC). Before making any final disciplinary decision, school officials should always consult their local SCOC.

Key: ★ Chapter 37 states that a district "shall" take this action in response to the misconduct. [See Mitigating Factors, below.]

✓ Chapter 37 states that a district "may" take this action in response to the misconduct. The district may choose to impose this penalty if the district's SCOC provides for this option.

\* Chapter 37 does not specifically address this misconduct. The district may choose to impose a consequence if permitted under the local SCOC.

| | |
|---|---|
| SCOC | Student Code of Conduct |
| TEC | Texas Education Code |
| TPC | Texas Penal Code |
| H&SC | Texas Health & Safety Code |
| ISS | In-School Suspension |
| OSS | Out-of-School Suspension |
| DAEP | Disciplinary Alternative Education Program |
| JJAEP | Juvenile Justice Alternative Education Program |
| CBC | Campus Behavior Coordinator |

### Important Notes

**Campus behavior coordinator (CBC):** A school district is required to appoint one CBC per campus to be responsible for maintaining student discipline and implementing discipline management techniques. Districts must also post each CBC's e-mail address and dedicated telephone number on the district's website. Even if the district is exempt from the requirement to designate a CBC through a local innovation plan, the district must post contact information for a campus administrator responsible for student discipline. [TEC 26.015].

© 2023. Texas Association of School Boards, Inc. All rights reserved.
TASB Legal Services

The duties of the CBC may be executed by a designee if the coordinator is unavailable or unable to promptly address the situation. [TEC 37.0012(f)].

**Coursework during disciplinary placement:** The district is required to provide notice to the parent of a student who has been removed to DAEP of the opportunity to complete coursework required for graduation and any available methods to obtain such coursework. [TEC 37.008(l-1)]. In addition, a district must provide a student placed in ISS or OSS an alternative means of receiving all foundation curriculum coursework, including at least one option that does not require use of the Internet. [TEC 37.005(e)].

**Criminal penalties:** School officials may take disciplinary action regardless of whether law enforcement officials seek criminal consequences for the same misconduct. Nonetheless, the criminal consequences of a particular act or incident may impact school district discipline. For example, a student who engages in conduct punishable as a felony on or within 300 feet of school property or while attending a school-related activity is subject to mandatory placement in DAEP. [TEC 37.006(a)(2)(A)].

**DAEP at capacity:** If a DAEP is at capacity when a CBC is deciding placement for a student who engaged in an offense related to marijuana, THC, e-cigarettes, alcohol, or abusable volatile chemicals, the student must be placed in ISS. If a position becomes available at the DAEP before the expiration of the placement, then the student must be transferred to the DAEP for the remainder of the placement. [TEC 37.009(a-1)]. If a DAEP is at capacity when a CBC is deciding placement for a student who engaged in conduct described under TEC 37.007, as defined by commissioner rule, a student who has been placed in the DAEP for an offense related to marijuana, THC, e-cigarettes, alcohol, or abusable volatile chemicals, may be removed from the DAEP and placed in ISS to make room for the student who engaged in violent conduct. The student who was removed from the DAEP and placed in ISS must be transferred back to the DAEP if space becomes available before the expiration of their placement. [TEC 37.009(a-2)].

**Disabilities:** Special state and federal laws apply to the discipline of students with disabilities. See Policy FOF(LEGAL) and your SCOC. Before making a disciplinary decision regarding a student with a disability, school officials may want to seek legal advice to ensure compliance with the relevant laws.

**Homelessness:** A student who is homeless may not be placed in OSS unless the student engages in misconduct that is drug- or alcohol-related or that contains the elements of certain weapons offenses or violent offenses under the Texas Penal Code. The CBC may work with the district's homeless liaison to identify appropriate alternatives to OSS. [TEC 37.005(d)].

**Length of placement:** The district's SCOC includes guidelines on the length of a removal to DAEP or an expulsion. [TEC 37.001(a)(5)].

© 2023. Texas Association of School Boards, Inc. All rights reserved.
TASB Legal Services

**Mitigating factors:** Before deciding to assign a student OSS, DAEP, expulsion, or JJAEP, regardless of whether the decision is described as mandatory or discretionary in Chapter 37, a district must consider certain mitigating factors in relation to the student's misconduct: self-defense, intent, disciplinary history, a disability that substantially impairs the student's capacity to appreciate the wrongfulness of the conduct, and the student's status as homeless or in the conservatorship of DFPS (foster care). [TEC 37.001(a)].

**New students:** If a student withdraws from school before an order of expulsion or DAEP is entered, the district may complete the proceedings and enter the order. If the student reenrolls in the district during the same or the subsequent school year, the district may enforce the order, reduced for time served. If the student enrolls in another school district, the new district may honor the order, or, if the preceding district failed to enter an order, the new district may complete the proceedings and enter an order. [TEC 37.009(i)].

**Notice of process for requesting full individual and initial evaluation:** Districts must provide information to a student's parent or person standing in parental relation to the student about the process for requesting a full individual and initial evaluation of the student for purposes of special education services both when a student is placed in the DAEP for an offense under TEC 37.006, and as part of the student's personalized transition plan developed by the campus administrator. [TEC 37.006(p); TEC 37.023(d)(1)(B)].

**Notice of student discipline:** A CBC is required to provide prompt notice to a parent or guardian of a student who is placed in ISS, OSS, DAEP, JJAEP, or is taken into custody by law enforcement. This notice must be provided by telephone or in writing. [TEC 37.0012(d)]. If the coordinator is unable to make contact with the parent or guardian by 5pm of the first business day after the day the disciplinary action was taken, the coordinator must mail written notice to the parent or guardian. [TEC 37.0012(e)].

**Past misconduct:** School officials are permitted, but not required, to remove students for mandatory DAEP misconduct if school officials did not learn of the conduct for more than one year after the conduct occurred. [TEC 37.006(n)].

**Procedures:** Before a student is removed from the regular classroom setting, school officials must typically follow an established procedure. The formality of these proceedings varies according to the seriousness of the penalty; for example, the Texas Education Code includes procedures for a conference in the case of a DAEP placement and a formal due process hearing in the case of an expulsion. For more detail on the required procedures, see the FO series of policies and your SCOC.

**Temporary placement:** Pending expulsion or DAEP placement, a student may be placed in ISS, OSS for up to 3 days, or another appropriate placement in accordance with the district's SCOC.

**Transition to the regular classroom:** The district must provide transition services for a student who is exiting DAEP and returning to the student's local campus. [19 TAC 103.1201(k)]. In addition, the campus administrator or CBC must develop a personalized transition plan for a student exiting an alternative education program, including DAEP or JJAEP, to return to the regular classroom. [TEC 37.023].

© 2023. Texas Association of School Boards, Inc. All rights reserved.
TASB Legal Services

**Young students:** Students younger than 10 must receive services in a DAEP if they engage in expellable misconduct. [TEC 37.007(e)(3), (h)]. However, a student younger than 6 may not be sent to a DAEP unless the student brings a firearm to school under TEC 37.007(e)(2). [TEC 37.006(l)]. Students below third grade may not be placed in OSS unless the student engages in misconduct that is drug- or alcohol-related or that contains the elements of certain weapons offenses or violent offenses under the Texas Penal Code. [TEC 37.005(c)]. A district may adopt and implement a positive behavior program as an alternative to traditional discipline for students below third grade. [TEC 37.0013].

This document is continually updated at tasb.org/services/legal-services/tasb-school-law-esource/students/documents/discipline-chart-chapter-37.pdf. For more information on school law topics, visit TASB School Law eSource at schoollawesource.tasb.org.

*This document is provided for educational purposes and contains information to facilitate a general understanding of the law. References to judicial or other official proceedings are intended to be a fair and impartial account of public records, which may contain allegations that are not true. This publication is not an exhaustive treatment of the law, nor is it intended to substitute for the advice of an attorney. Consult your own attorney to apply these legal principles to specific fact situations.*

*© 2023. Texas Association of School Boards, Inc. All rights reserved.*

*This document is copyrighted by TASB but may be reproduced in order to share the information within your own school district. Further use or copying is prohibited without the consent of TASB Legal Services. Requests to duplicate or distribute this document should be made in writing to Director, Legal Services, Texas Association of School Boards, P.O. Box 400, Austin, Texas 78767-0400 or by e-mailing legal@tasb.org.*

*Originally published 2004. Updated July 2023.*

| Weapons | | | | | |
|---|---|---|---|---|---|
| **Misconduct** | **ISS, detention, or other local disciplinary techniques** | **Out-of-school suspension up to 3 days** | **DAEP** | **Expulsion** | **Notes** |
| Intentionally, knowingly, or recklessly carrying on or about the student's person a handgun, on school property or at a school-related activity | | | | 20 U.S.C. 7151; TEC 37.007(a)(1), (e) ★ | The federal Gun-Free Schools Act, which is incorporated into Chapter 37, requires expulsion for one year except that a superintendent may modify the expulsion in writing on a case-by-case basis. [20 U.S.C. 7151(b)(1); TEC 37.007(e)]. Exception: The Act does not apply to a firearm that is lawfully stored inside a locked vehicle on school property, or to firearms used in activities approved and authorized by the district when the district has adopted appropriate safeguards to ensure student safety. [20 U.S.C. 7151(g)]. |

| Weapons | | | | | |
|---|---|---|---|---|---|
| **Misconduct** | **ISS, detention, or other local disciplinary techniques** | **Out-of-school suspension up to 3 days** | **DAEP** | **Expulsion** | **Notes** |
| Possessing a firearm within 300 feet of school property | | | | TEC 37.007(b)(3)<br>✔ | Exception: Use, exhibition, or possession of a firearm at an approved off-campus target range facility while participating in or preparing for a shooting sports competition or activity sponsored by the district or affiliated with the Texas Parks and Wildlife Department. [TEC 37.007(k)]. |
| Intentionally, knowingly, or recklessly carrying on or about the minor student's person a location-restricted knife on school property or at a school-related activity | | | | TEC 37.007(a)(1); TPC 46.02(a-4); TPC 46.03(a)<br>★ | *Location-restricted knife* means a knife with a blade of over five and one-half inches. [TPC 46.01(6)]. |
| Same conduct within 300 feet of school property or while on the property or at a school-related activity of another Texas district | | | | TEC 37.007(b)(3)(A), (i)<br>✔ | |

© 2023. Texas Association of School Boards, Inc. All rights reserved.
TASB Legal Services

| Weapons | | | | | |
|---|---|---|---|---|---|
| **Misconduct** | **ISS, detention, or other local disciplinary techniques** | **Out-of-school suspension up to 3 days** | **DAEP** | **Expulsion** | **Notes** |
| Intentionally, knowingly, or recklessly going with or possessing a location-restricted knife on the premises of a school, any grounds or building owned by and under control of a school or post-secondary educational institution and where a school-sponsored activity is taking place, or a passenger vehicle of the school | | | TEC 37.006(a)(2)(A); TPC 46.03(a)(1), (g-1) ★ | | Possessing a location-restricted knife on school premises, school passenger vehicle, or a school-sponsored activity on any grounds or building owned by and under the control of a school or post-secondary educational institution is a felony offense. [TPC 46.03(a)(1), (g-1)]. District must place in DAEP a student who engages in conduct punishable as a felony on or within 300 feet of school property or while attending a school-related activity. [TEC 37.006(a)(2)(A)]. |

| Weapons | | | | | |
|---|---|---|---|---|---|
| **Misconduct** | **ISS, detention, or other local disciplinary techniques** | **Out-of-school suspension up to 3 days** | **DAEP** | **Expulsion** | **Notes** |
| Intentionally, knowingly, or recklessly carrying, or intentionally or knowingly possessing, manufacturing, transporting, repairing, or selling a prohibited weapon, on school property or at a school-related activity | | | | TEC 37.007(a)(1)  ★ | *Prohibited weapon* means an explosive weapon, machine gun, short-barrel firearm, armor-piercing ammunition, chemical dispensing device, zip gun, tire deflation device, improvised explosive device, or certain silencers. [TPC 46.05]. |
| Same conduct within 300 feet of campus or while on the property or at a school-related activity of another Texas district | | | | TEC 37.007(b)(3), (i)  ✓ | |
| Intentionally, knowingly, or recklessly possessing or going with a club, on the premises of the district, any grounds or building owned by and under the control of a school or post-secondary educational institution and on which a school-sponsored activity is being conducted, or a passenger vehicle of the district | | | TEC 37.006(a)(2)(A) | | Possessing a club (e.g., a blackjack, nightstick, mace, or tomahawk) in certain locations is a felony offense. [TPC 46.03(a)(1), (g)]. |

© 2023. Texas Association of School Boards, Inc. All rights reserved.
TASB Legal Services

| Weapons | | | | | |
|---|---|---|---|---|---|
| **Misconduct** | **ISS, detention, or other local disciplinary techniques** | **Out-of-school suspension up to 3 days** | **DAEP** | **Expulsion** | **Notes** |
| Possessing or using look-alike weapons | ✴ | ✴ | ✴ | | |
| Possessing or using air guns or BB guns | ✴ | ✴ | ✴ | | |
| Possessing or using razors, box cutters, pocketknives, or other knives with a blade of less than 5 1/2 inches | ✴ | ✴ | ✴ | | |
| Possessing or using various other dangerous objects, including knuckles | ✴ | ✴ | ✴ | | *Knuckles* include any instrument that consists of finger rings or guards made of a hard substance and designed, made, or adapted for the purpose of inflicting serious bodily injury or death by striking a person with a fist enclosed in the knuckles. |

© 2023. Texas Association of School Boards, Inc. All rights reserved.
TASB Legal Services

| Violence | | | | | |
|---|---|---|---|---|---|
| **Misconduct** | **ISS, detention, or other local disciplinary techniques** | **Out-of-school suspension up to 3 days** | **DAEP** | **Expulsion** | **Notes** |
| Murder or attempt to commit murder, on school property or at a school-related activity | | | | TEC 37.007(a)(2)(C)<br>★ | |
| Same conduct within 300 feet of school property or while on the property or at a school-related activity of another Texas district | | | | TEC 37.007(b)(3), (i)<br>✔ | |
| Aggravated assault, on campus or at a school-related activity | | | | TEC 37.007(a)(2)(A)<br>★ | |
| Same conduct within 300 feet of school property or while on the property or at a school-related activity of another Texas district | | | | TEC 37.007(b)(3), (i)<br>✔ | |
| Aggravated kidnapping, on school property or at a school-related activity | | | | TEC 37.007(a)(2)(E)<br>★ | |
| Same conduct within 300 feet of school property or while on the property or at a school-related activity of another Texas district | | | | TEC 37.007(b)(3), (i)<br>✔ | |

© 2023. Texas Association of School Boards, Inc. All rights reserved.
TASB Legal Services

| Violence | | | | | |
|---|---|---|---|---|---|
| **Misconduct** | **ISS, detention, or other local disciplinary techniques** | **Out-of-school suspension up to 3 days** | **DAEP** | **Expulsion** | **Notes** |
| Aggravated robbery, on school property or at a school-related activity | | | | TEC 37.007(a)(2)(F)<br>★ | |
|     Same conduct within 300 feet of school property or while on the property or at a school-related activity of another Texas district | | | | TEC 37.007(b)(3), (i)<br>✔ | |
| Aggravated assault, sexual assault, aggravated sexual assault, murder, capital murder, criminal attempt to commit murder or capital murder, or aggravated robbery against another student, on or off school property | | | | TEC 37.007(b)(4)<br>✔ | |
| Manslaughter, on school property or at a school-related activity | | | | TEC 37.007(a)(2)(G)<br>★ | |
|     Same conduct within 300 feet of school property or while on the property or at a school-related activity of another Texas district | | | | TEC 37.007(b)(3), (i)<br>✔ | |
| Criminally negligent homicide, on school property or at a school-related activity | | | | TEC 37.007(a)(2)(H)<br>★ | |

| Violence | | | | | |
|---|---|---|---|---|---|
| **Misconduct** | **ISS, detention, or other local disciplinary techniques** | **Out-of-school suspension up to 3 days** | **DAEP** | **Expulsion** | **Notes** |
| Same conduct within 300 feet of school property or while on the property or at a school-related activity of another Texas district | | | | TEC 37.007(b)(3), (i)<br>✔ | |
| [Assault with bodily injury](), on or within 300 feet of school property or at a school-related activity | | | TEC 37.006(a)(2)(B)<br>★ | | |
| Title 5 felony or [aggravated robbery]() off campus and not at a school-sponsored or school-related activity if: student receives deferred prosecution; a court or jury finds that student engaged in delinquent conduct based on the conduct; or superintendent reasonably believes that student engaged in the conduct | | | TEC 37.006(c)<br>★ | | *Title 5 felonies* are violent offenses defined in Texas Penal Code chapters 19-22. A list of Title 5 felonies can be found in the TASB Model SCOC glossary and FOC(LEGAL). |

© 2023. Texas Association of School Boards, Inc. All rights reserved.
TASB Legal Services

| Violence | | | | | |
|---|---|---|---|---|---|
| **Misconduct** | **ISS, detention, or other local disciplinary techniques** | **Out-of-school suspension up to 3 days** | **DAEP** | **Expulsion** | **Notes** |
| Same conduct plus charges, referral to juvenile court for delinquent conduct, probation, deferred adjudication, arrest, or conviction for a *violent felony* [TPC Title 5 or aggravated robbery], with special findings by board or designee, regardless of location or time or whether the student was enrolled at the time or completed court requirements | | | TEC 37.0081 ✔ | TEC 37.0081 ✔ | |
| Fighting or scuffling | ✱ | ✱ | ✱ | | |
| Threats against students, staff, or school property | ✱ | ✱ | ✱ | | |

© 2023. Texas Association of School Boards, Inc. All rights reserved.
TASB Legal Services

| Sexual Misconduct | | | | | |
|---|---|---|---|---|---|
| **Misconduct** | **ISS, detention, or other local disciplinary techniques** | **Out-of-school suspension up to 3 days** | **DAEP** | **Expulsion** | **Notes** |
| Sexual assault or aggravated sexual assault, on school property or at a school-related activity | | | | TEC 37.007(a)(2)(A) ★ | |
| Same conduct within 300 feet of school property or while on the property or at a school-related activity of another Texas district | | | | TEC 37.007(b)(3), (i) ✓ | |
| Sexual assault, or aggravated sexual assault against another student, on or off school property | | | | TEC 37.007(b)(4) ✓ | |
| Conviction, deferred adjudication, or probation based on continuous sexual abuse of a child or disabled individual, sexual assault, or aggravated sexual assault of another student attending the same campus, upon request of the victim's parent and if there is not another campus in the district to which the offending student may be transferred | | | TEC 25.0341(b)(2); TEC 37.0051 ★ | | Student shall be removed and placed in DAEP or JJAEP in accordance with state law. A limitation imposed by Chapter 37, Subchapter A, does not apply to placement under this section. [TEC 37.0051]. |

© 2023. Texas Association of School Boards, Inc. All rights reserved.
TASB Legal Services

| Sexual Misconduct | | | | | |
|---|---|---|---|---|---|
| **Misconduct** | **ISS, detention, or other local disciplinary techniques** | **Out-of-school suspension up to 3 days** | **DAEP** | **Expulsion** | **Notes** |
| Indecency with a child, on school property or at a school-related activity | | | | TEC 37.007(a)(2)(D)  ★ | |
| Same conduct within 300 feet of school property or while on the property or at a school-related activity of another Texas district | | | | TEC 37.007(b)(3), (i)  ✓ | |
| Continuous sexual abuse of a young child or disabled individual, on school property or at a school-related activity | | | | TEC 37.007(a)(2)(I)  ★ | |
| Same conduct within 300 feet of school property or while on the property or at a school-related activity of another Texas district | | | | TEC 37.007(b)(3), (i)  ✓ | |
| Public lewdness or indecent exposure, on or within 300 feet of school property or at a school-related activity | | | TEC 37.006(a)(2)(F)  ★ | | |
| Voyeurism, on or within 300 feet of school property or at a school-related activity, if victim is a child under the age of 14 | | | TEC 37.006(a)(2)(A)  ★ | | Voyeurism is punishable as a felony if the victim is a child under the age of 14 at the time of the offense. |

© 2023. Texas Association of School Boards, Inc. All rights reserved.
TASB Legal Services

| Sexual Misconduct | | | | | |
|---|---|---|---|---|---|
| **Misconduct** | **ISS, detention, or other local disciplinary techniques** | **Out-of-school suspension up to 3 days** | **DAEP** | **Expulsion** | **Notes** |
| Invasive visual recording, on or within 300 feet of campus or at a school-related activity | | | TEC 37.006(a)(2)(A) ★ | | |
| Unlawful disclosure or promotion of intimate visual material, on or within 300 feet of school property or at a school-related activity | | | TEC 37.006(a)(2)(A) ★ | | |
| Sexual misconduct punishable as Title 5 felony off campus and not at a school-sponsored or school-related activity if: student receives deferred prosecution; court finding of delinquent conduct; or superintendent reasonably believes that student engaged in the conduct | | | TEC 37.006(c) ★ | | *Title 5 felonies* are violent offenses defined in Texas Penal Code chapters 19-22. A list of Title 5 felonies can be found in the TASB Model SCOC glossary and FOC(LEGAL). |
| Possession or promotion of child pornography, on or within 300 feet of school property or at a school-related activity | | | TEC 37.006(a)(2)(A) ★ | | |

© 2023. Texas Association of School Boards, Inc. All rights reserved.
TASB Legal Services

| Sexual Misconduct | | | | | |
|---|---|---|---|---|---|
| Misconduct | ISS, detention, or other local disciplinary techniques | Out-of-school suspension up to 3 days | DAEP | Expulsion | Notes |
| Registered sex offender—under court supervision | | | TEC 37.304 ★ | | If student is under court supervision, including probation, community supervision, or parole, district must assign to DAEP or JJAEP for at least one semester. [TEC 37.304, .309]. |
| Registered sex offender—not under court supervision | | | TEC 37.305 ✓ | | A student who is required to register as a sex offender but is not under any form of court supervision may be placed in DAEP or JJAEP for one semester. However, the student may not be placed in the regular classroom if the board or designee determines that such placement threatens the safety of other students or teachers, will be detrimental to the educational process, or is not in the best interests of the district's students. [TEC 37.305]. |

| Sexual Misconduct | | | | |
|---|---|---|---|---|
| **Misconduct** | **ISS, detention, or other local disciplinary techniques** | **Out-of-school suspension up to 3 days** | **DAEP** | **Expulsion** | **Notes** |
| Inappropriate exposure of body parts | ✳ | ✳ | ✳ | | |
| Sexual or gender-based harassment | ✳ | ✳ | ✳ | | |
| Inappropriate sexual conduct toward a student or employee | ✳ | ✳ | ✳ | | |

© 2023. Texas Association of School Boards, Inc. All rights reserved.
TASB Legal Services

| Substance Abuse | | | | | |
|---|---|---|---|---|---|
| **Misconduct** | **ISS, detention, or other local disciplinary techniques** | **Out-of-school suspension up to 3 days** | **DAEP** | **Expulsion** | **Notes** |
| Drug-related misconduct [TEC 37.006(a)(2)(C)], on school property or at a school-related activity, if punishable as a felony | | | | TEC 37.007(a)(3) ★ | Does not include marijuana- or THC-related offenses. |
| Same conduct within 300 feet of school property or while on the property or at a school-related activity of another Texas district | | | | TEC 37.007(b)(3), (i) ✓ | |
| Selling, giving, delivering, possessing, using, or being under the influence of any amount of marijuana or THC, on or within 300 feet of school property or at a school-related activity | | | TEC 37.006(a)(2)(C-1) ★ | TEC 37.007(b)(2)(A) ✓ | District may not prohibit possession of low-THC cannabis pursuant to a valid prescription as authorized by Texas Health & Safety Code chapter 487. |
| Selling, giving, delivering, possessing, using, or being under the influence of any amount of a dangerous drug or a controlled substance, excluding marijuana and THC, on or within 300 feet of school property or at a school-related activity, if not punishable as a felony | | | TEC 37.006(a)(2)(C) ★ | TEC 37.007(b)(2)(A) ✓ | |

| Substance Abuse | | | | | |
|---|---|---|---|---|---|
| **Misconduct** | **ISS, detention, or other local disciplinary techniques** | **Out-of-school suspension up to 3 days** | **DAEP** | **Expulsion** | **Notes** |
| Selling, giving, delivering, possessing, or using an e-cigarette on or within 300 feet of school property or at a school-related activity | | | TEC 37.006(a)(2)(C-2) ★ | | Includes any component, part, or accessory for the e-cigarette. |
| Selling, giving, delivering, possessing, using, being under the influence of, or committing a serious act or offense while under the influence of alcohol, on or within 300 feet of school property or at a school-related activity | | | TEC 37.006(a)(2)(D) ★ | TEC 37.007(b)(2)(A) ✓ | |
| Abusable volatile chemical offense, on or within 300 feet of school property or at a school-related activity | | | TEC 37.006(a)(2)(E) ★ | TEC 37.007(b)(2)(B) ✓ | Chapter 37 addresses DAEP or expulsion for conduct containing the elements of offenses related to abusable volatile chemicals under Texas Health & Safety Code sections 485.031-.034, including possession, use, and delivery to a minor. |
| Off-campus non-violent felony, with special findings by superintendent or designee [see TEC 37.006(d)] | | | TEC 37.006(d) ✓ | | |

© 2023. Texas Association of School Boards, Inc. All rights reserved.
TASB Legal Services

| Substance Abuse | | | | |
|---|---|---|---|---|
| **Misconduct** | **ISS, detention, or other local disciplinary techniques** | **Out-of-school suspension up to 3 days** | **DAEP** | **Expulsion** | **Notes** |
| Possessing or using tobacco products | ✱ | ✱ | ✱ | | |
| Possessing, selling, giving, or using drug paraphernalia | ✱ | ✱ | ✱ | | |
| Possessing, selling, or using look-alike drugs or items attempted to be passed off as drugs | ✱ | ✱ | ✱ | | |
| Improper use, possession, or being under the influence of prescription drugs | ✱ | ✱ | ✱ | | |
| Improper use or being under the influence of over-the-counter drugs | ✱ | ✱ | ✱ | | |

© 2023. Texas Association of School Boards, Inc. All rights reserved.
TASB Legal Services

| Retaliation | | | | | |
|---|---|---|---|---|---|
| **Misconduct** | **ISS, detention, or other local disciplinary techniques** | **Out-of-school suspension up to 3 days** | **DAEP** | **Expulsion** | **Notes** |
| On- or off-campus retaliation through conduct containing the elements of a violent or weapons-related offense [TEC 37.007(a)] against a school employee or volunteer | | | | TEC 37.007(d)<br>★ | |
| Assault with bodily injury against a school employee or volunteer, on or within 300 feet of school property or at a school-related activity | | | TEC 37.006(a)(2)(B)<br>★ | TEC 37.007(b)(2)(C)<br>✓ | |
| On- or off-campus retaliatory assault with bodily injury on a school employee or volunteer | | | TEC 37.006(a)(2)(B) [on campus] or TEC 37.006(c) [off campus]<br>★ | TEC 37.007(d)<br>✓ | |
| On- or off-campus retaliation against any school employee | | | TEC 37.006(b)<br>★ | | |

© 2023. Texas Association of School Boards, Inc. All rights reserved.
TASB Legal Services

| Mistreatment of Others | | | | | |
|---|---|---|---|---|---|
| **Misconduct** | **ISS, detention, or other local disciplinary techniques** | **Out-of-school suspension up to 3 days** | **DAEP** | **Expulsion** | **Notes** |
| Bullying [TEC 37.0832(a)] that occurs on or is delivered to the site of a school-sponsored or school-related activity on or off school property | ✱ | ✱ | ✱ | | |
| Bullying [TEC 37.0832(a)] that occurs on a publicly or privately owned school bus or vehicle used for transportation of students to or from school or a school-sponsored or school-related activity | ✱ | ✱ | ✱ | | |
| Cyberbullying [TEC 37.0832(a)] that occurs off school property or outside of a school-sponsored or school-related activity if the cyberbullying: interferes with a student's educational opportunities; or substantially disrupts the orderly operation of a classroom, school, or school-sponsored or school-related activity | ✱ | ✱ | ✱ | | |
| Bullying [TEC 37.0832(a)] that encourages a student to commit or attempt to commit suicide | | | TEC 37.0052 ✓ | TEC 37.0052 ✓ | |

| Mistreatment of Others | | | | | |
|---|---|---|---|---|---|
| **Misconduct** | **ISS, detention, or other local disciplinary techniques** | **Out-of-school suspension up to 3 days** | **DAEP** | **Expulsion** | **Notes** |
| Inciting violence against a student through group bullying [TEC 37.0832(a)] | | | TEC 37.0052 ✔ | TEC 37.0052 ✔ | |
| Releasing or threatening to release intimate visual material [Tex. Civ. Prac. & Rem. Code 98B.001] of a minor or of an adult student without the student's consent | | | TEC 37.0052 ✔ | TEC 37.0052 ✔ | *Intimate visual material* means film, photograph, or other physical medium allowing an image to be displayed on a screen that depicts a person with the person's intimate parts exposed or engaged in a sexual conduct. |
| Harassment of a district employee in the form of initiating a communication and in the course of the communication making an obscene comment, request, suggestion, or proposal with intent to harass, annoy, alarm, abuse, torment, or embarrass the employee, on or within 300 feet of school property or while attending a school-related activity | | | TEC 37.006(a)(2)(G); TPC 42.07(a)(1) ★ | | *Obscene* means containing a patently offensive description of or a solicitation to commit an ultimate sex act, including sexual intercourse, masturbation, cunnilingus, fellatio, or anilingus, or a description of an excretory function. [TPC 42.07(a)(3)]. |

© 2023. Texas Association of School Boards, Inc. All rights reserved.
TASB Legal Services

| Mistreatment of Others | | | | | |
|---|---|---|---|---|---|
| Misconduct | ISS, detention, or other local disciplinary techniques | Out-of-school suspension up to 3 days | DAEP | Expulsion | Notes |
| Harassment of a district employee in the form of threatening to inflict bodily injury on the employee or to commit a felony against the employee, a member of the employee's family or household, or the employee's property, on or within 300 feet of school property or while attending a school-related activity | | | TEC 37.006(a)(2)(G); TPC 42.07(a)(2)  ★ | | |
| Harassment of a district employee in the form of conveying a false report regarding the death or serious bodily injury of another person, on or within 300 feet of school property or while attending a school-related activity | | | TEC 37.006(a)(2)(G); TPC 42.07(a)(3)  ★ | | |
| Harassment of a district employee by sending repeated electronic communications in a manner reasonably likely to harass, annoy, alarm, abuse, torment, embarrass, or offend the employee, on or within 300 feet of school property or while attending a school-related activity | | | TEC 37.006(a)(2)(G); TPC 42.07(a)(7)  ★ | | |
| Directing profanity or obscene gestures at students or staff | ✱ | ✱ | ✱ | | |

© 2023. Texas Association of School Boards, Inc. All rights reserved.
TASB Legal Services

| Mistreatment of Others | | | | |
|---|---|---|---|---|
| **Misconduct** | **ISS, detention, or other local disciplinary techniques** | **Out-of-school suspension up to 3 days** | **DAEP** | **Expulsion** | **Notes** |
| Hazing [TEC 37.151], dating violence [TEC 37.0831], harassment [TEC 37.001(b)(2)], or making a hit list [TEC 37.001(b)(3)] | ✱ | ✱ | ✱ | | |
| Assault with threat of imminent bodily injury but no bodily injury [TPC 22.01(a)(2)] | ✱ | ✱ | ✱ | | |
| Assault by offensive or provocative physical contact but no bodily injury [TPC 22.01(a)(3)] | ✱ | ✱ | ✱ | | |

| Other Misconduct | | | | | |
|---|---|---|---|---|---|
| **Misconduct** | **ISS, detention, or other local disciplinary techniques** | **Out-of-school suspension up to 3 days** | **DAEP** | **Expulsion** | **Notes** |
| Arson, on campus or at a school-related activity | | | | TEC 37.007(a)(2)(B) ★ | |
| Same conduct within 300 feet of school property or while on the property or at a school-related activity of another Texas district | | | | TEC 37.007(b)(3), (i) ✔ | |
| Documented serious misbehavior while in DAEP | | | | TEC 37.007(c) ✔ | *Serious misbehavior* means: (1) deliberate violent behavior that poses a direct threat to health or safety; (2) extortion, meaning gaining of money or property by force or threat; (3) coercion; (4) public lewdness; (5) indecent exposure; (6) criminal mischief; (7) hazing; or (8) harassment in the form of initiating a communication and in the course of the communication making an obscene comment, request, suggestion, or proposal with intent to harass, annoy, alarm, abuse, torment, or embarrass a student or employee. |

| Other Misconduct | | | | | |
|---|---|---|---|---|---|
| **Misconduct** | **ISS, detention, or other local disciplinary techniques** | **Out-of-school suspension up to 3 days** | **DAEP** | **Expulsion** | **Notes** |
| Terroristic threat or false alarm involving a public school | | | TEC 37.006(a)(1)  ★ | TEC 37.007(b)(1)  ✓ | |
| Deadly conduct, on or within 300 feet of school property or at a school-related activity | | | | TEC 37.007(b)(2)(D)  ✓ | |
| On- or off-campus felony criminal mischief | | | | TEC 37.007(f)  ✓ | *Felony criminal mischief* includes damage to property equal to or in excess of $2,500. [TPC 28.03]. |
| Non-felony criminal mischief | * | * | * | | |
| Any felony on or within 300 feet of school property or at a school-related activity | | | TEC 37.006(a)(2)(A)  ★ | | Check for potential expulsion, depending on type of felony |
| Off-campus non-violent felony, with special findings by superintendent or designee [TEC 37.006(d)] | | | TEC 37.006(d)-(e)  ✓ | | |

| Other Misconduct | | | | | |
|---|---|---|---|---|---|
| Misconduct | ISS, detention, or other local disciplinary techniques | Out-of-school suspension up to 3 days | DAEP | Expulsion | Notes |
| Breach of computer security if a student accesses a district's computers, computer system, or computer network and knowingly alters, damages, or deletes district property or information | | | | TEC 37.007(b) ✔ | |
| Stealing | ✳ | ✳ | ✳ | | |
| Other violations of SCOC | ✳ | ✳ | ✳ | | |

© 2023. Texas Association of School Boards, Inc. All rights reserved.
TASB Legal Services



# Discipline
## PEIMS CODING

August 2023

peimsdataquality@sfdr - cisd.org



# PEIMS Reporting Requirements

**01** For purposes of discipline data reported to TEA, the attendance/PEIMS personnel are only responsible for entering information that has been provided to them by the Superintendent or their designee(s) who are responsible for applying the Student Code of Conduct (SCC) to student behavior.

**02** *In no case should attendance/PEIMS personnel be responsible for determining a student's coding information for discipline actions taken.*

**03** A PEIMS disciplinary record **must** be reported for **each** disciplinary action that results in a removal of a student from **any** part of their academic program.

**04** A single student will have multiple discipline records if removed from his/her classroom more than once.

# Local Offense Coding

## WHEN ARE LOCAL CODES USED?

Local offense codes should be used when an incident that violates the Student Code of Conduct (SCC) takes place however, as an alternative to using the generalized code of **21** (Violation of SCC), a local code providing specific reason for the offense should be used, if available, for School Board reporting purposes.



| | |
|---|---|
| L04 | DRUG PARAPHERNALIA |
| L05 | BULLYING- BASIS OF SEX |
| L10 | BULLYING- RACE,COLOR,NTL ORIGIN |
| L15 | BULLYING- BASIS OF DISABILITY |
| L20 | BULLYING- BASIS OF RELIGION |
| L25 | BULLYING- CYBER |
| L30 | BULLYING - GROUP (2 OR MORE) |
| L35 | BULLYING - PERSISTENT BEHAVIOR |
| L40 | INSUBORDINATION |
| L42 | ASSUALT W/O BODILY INJURY TO EMPLOYEE |
| L44 | ASSUALT W/O BODILY INJURY TO STUDENT |
| L50 | NON ILLGL KNIFE (= OR -5.5") |
| L59 | DESTRUCTION OF SCHOOL PROPERTY |
| L60 | FORGERY/ PLAGERISM |
| L61 | THEFT |
| L62 | SKIPPING CLASS |
| L63 | SCUFFLE/ HORSEPLAY |
| L64 | VIOLATION CELL PHONE POLICY |
| L65 | LEAVE CLASSROOM W/O PERMISSION |
| L66 | SEXUAL HARASSMENT |
| L67 | POSSESSION OF PORNOGRAPHY |
| L68 | DISTRIBUTION OF PORNOGRAPHY |
| L72 | DRESS CODE VIOLATION |
| L73 | PROFANITY - VERBAL/GESTURES |
| L75 | BUS CONDUCT |
| L76 | TARDIES |
| L80 | PERSISTENT MSBHVR ON CAMPUS (5 OR MORE DOC. INFRACTIONS) |
| L85 | CLASSROOM DISRUPTIONS |
| L90 | DISREGARD PERSONAL SPACE |
| L95 | NAME CALLING |
| L96 | LEAVE CAMPUS WITHOUT PERMISSION |
| VPC | VAPE - CONTROLLED SUBSTANCE |
| VAP | VAPE- NOT CONTROLLED SUBSTANCE |

# PEIMS Offense Coding

## WHEN ARE PEIMS CODES USED?

| | |
|---|---|
| 01 | PERMANENT REMOVAL BY TEACHER |
| 02 | CONDUCT PUNISHABLE AS FELONY |
| 04 | MARIHUANA/CONTROLLED SUBSTANCE |
| 05 | ALCOHOL USE/SELL/GIVE/DELIVER |
| 06 | VOLATILE CHEMICAL ABUSE |
| 07 | PUBLIC LEWDNESS/INDECENT EXPOS |
| 08 | RETALIATION SCHOOL EMPLOYEE |
| 09 | OFF CAMPUS - TITLE 5 FELONY |
| 10 | OFF CAMPUS - NON TITLE 5 FELONY |
| 11 | FIREARM OBTAIN/USE/EXHIBIT |
| 12 | ILLEG. KNIFE BLADE LONGER 5.5" |
| 14 | PROHIBITED WEAPON |
| 16 | ARSON - START FIRE, EXPLOSION |
| 17 | MURDER - CAP./CRIM. ATPT/COMMIT |
| 18 | INDECENCY W/ CHILD YOUNGER 17 |
| 19 | AGGRAVATED KIDNAPPING |
| 21 | VIOLATION STUDENT CODE CONDUCT |
| 22 | CRIMINAL MISCHIEF |
| 23 | EMERGENCY PLACEMENT/EXPULSION |
| 26 | TERRORISTIC THREAT |
| 27 | ASSAULT - TO EMPLOYEE |

| | |
|---|---|
| 28 | ASSAULT - TO NON EMPLOYEE |
| 29 | AGGRAVATED ASSAULT - TO EMPLOYEE |
| 30 | AGGRAVATED ASSAULT - TO STUDENT |
| 31 | SEXUAL ASSAULT - TO EMPLOYEE |
| 32 | SEXUAL ASSAULT - TO STUDENT |
| 35 | FALSE ALARM/FALSE REPORT |
| 36 | FELONY CONTROLLED SUBSTANCE |
| 37 | FELONY ALCOHOL VIOLATION |
| 41 | FIGHTING/MUTUAL COMBAT |
| 46 | AGGRAVATED ROBBERY |
| 47 | MANSLAUGHTER |
| 48 | CRIMINALLY NEGLIGENT HOMICIDE |
| 49 | DEADLY CONDUCT |
| 55 | RG SEX OFFENDER - SUPRVISED |
| 56 | RG SEX OFFENDER - NON SUPRVISED |
| 57 | CONTINUOUS SEX ABUSE OF CHILD |
| 58 | BREACH OF COMPUTER SECUR (AUP) |
| 59 | SERIOUS MISBEHAVIOR (SGLC ONLY) |
| 60 | HARASSMENT TO EMPLOYEE OF DISTRICT |

PEIMS Reportable Codes should be used when a student(s) commits an offense that meets the criteria listed in the PEIMS Discipline Data Chart (See TAB 9)



# Bullying

## WHAT YOU NEED TO KNOW:

- The campus will report ALL incidents of bullying in the Skyward Discipline Module

- There are 3 types of bullying – **Cyber, Group, and Individual**

- When applying the codes of L25, L30, L35 – **a reason code must be entered in the area shown below detailing the specific type of bullying that occurred.**



**Federal State Reporting** requires all bullying incidents and Victim(s) to be reported through the District's Student Information System (SIS).

| L05 | BULLYING - BASIS OF SEX |
|-----|-------------------------|
| L10 | BULLYING - RACE,COLOR,NTL ORIGIN |
| L15 | BULLYING - BASIS OF DISABILITY |
| L20 | BULLYING - BASIS OF RELIGION |
| L25 | BULLYING - CYBER |
| L30 | BULLYING - GROUP (2 OR MORE) |
| L35 | BULLYING - INDIVIDUAL |

**Note:** When creating the discipline record, there is an area designated to reporting Harassment/Bullying Incidents based on **Religion Type.**

If the bullying incident is related to religion, this area **must** be completed.

Federal Reporting
☐ Harassment/Bullying based on Religion
Federal Religion Type:

# Assault Types

## 01
### Local Offense Code

**Physical contact that did not result in bodily injury**

*L42 - Employee*
*L44 - Student*

## 02
### Bodily Injury

**Physical pain, illness, or any impairment of physical condition**
Texas Penal Code § 1.07(8)

**To claim "Bodily Injury" there must be a campus nurses report on file of the incident.**

*27 - Employee*
*28 - Student*

## 03
### Serious Bodily Injury

**Bodily injury that creates a substantial risk of death or that causes death, serious permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ**
Texas Penal Code § 1.07(46)

**(Emergency Room Visit, Hospital etc.)**

*29 - Employee*
*30 - Student*

# Coding VS. Comments



**Offense coding should always correspond with offense comments**

**Q: How will the campus know if coding doesn't correspond with comments?**

A: PEIMS Data Quality (PDQ) will generate and distribute a report every 3 weeks for campuses to review possible discrepancies in coding based on comments.

**Q: What if the coding is correct, regardless of the comment listed?**

A: Unless the coding is in error, according to the PEIMS Data Standards, PDQ will never ask a campus to change coding; however the campus is asked to review and confirm for accuracy.

**Q: How can the campus view reports more often than every 3 weeks?**

A: Campus admin have access to generate discipline reports at their convenience.

# Coding VS. Comments cont.



Ex. Coding below does **not** correspond with comment

Offense code **VPC** would correspond with the comments listed

# TROUBLESOME CODING

## 41 – Fighting/Mutual Combat

Two or more students or persons that choose to mutually engage in physical combat using blows or force to strive to overcome the other student(s) or person(s)



### UNWILLING PARTICIPANT?

Assault of someone other than school staff

**TWO OR MORE STUDENTS CANNOT ASSAULT EACH OTHER**

## MULTIPLE STUDENTS INVOLVED IN SAME INCIDENT
### (ALL OFFENSES APPLY)

- Two or more students involved in the same incident must have the same incident number reported when entering the discipline records in Skyward. This applies to ANY incident that takes place.

- Students from different campuses who are involved in the same incident will have different incident numbers. *Ensure to link students in comment section.*

- Please note: entering separate incident numbers for a single incident involving 2 or more students will not only over report discipline infractions to TEA, but it will also over report to the District School Board.

# Troublesome Coding cont.

**01**

*Example: 2 students were found to be stealing Pokémon trading cards from another students backpack. The teacher sent a referral for each student and the office entered each referral as separate incidents.*
*Result:*
*The total count of incidents for Theft (L61) would reflect as a total of 2 for the campus, when only 1 incident occurred.*

**02**

*Example: 3 students were found to be vaping together in the restroom. The vape tested positive for THC. When the campus entered their discipline record, each student received a separate incident number.*
*Result:*
*The total count of VPC (Vape Controlled Substance) incidents for the campus will be reported to TEA and School Board as 3 separate incidents, when in reality only 1 incident occurred.*

*Over reporting may place campus in jeopardy of Persistent Dangerous Schools*

# Mandatory Actions

- **WHAT IS A MANDATORY ACTION?**
  Mandatory Actions are action codes of DAEP Placement or Expulsion that is required when specific offenses occur (*pictured right*)

- **WHAT IF THE MANDATORY ACTION DOESN'T TAKE PLACE?**
  Mandatory Actions that are not assigned will appear as an error/fatal on the PEIMS Discipline 425 report. Errors must be cleared each 6-wk term and before PEIMS submission at end of year.

- **WHEN DOES THE LEVEL 1 PROCESS TAKE PLACE?**
  Mandatory Actions are action codes of DAEP Placement or Expulsion that is required when specific offenses occur (*pictured right*)



# Additional Action Code: 27  or  28

**IMPORTANT**

- The reason why a mandatory action was not taken **must** be reported.

- These codes are used **in addition** to the decided action code.

- Action Codes 27 or 28 **cannot** stand alone - there **must** be a PEIMS reportable action entered for the incident (ISS/OSS etc.)

## CODE 27  CODE 28

**Mandatory Action not taken due to ARD manifestation hearing determination.**   (SPED Students Only)

**Mandatory Action not taken due to mitigating   factors.**
(All other students)

---

**Add Action Summary**

**Student**

Student:
Entity:

**Action Summary**

* Action: 28 ▾ NO DISC ACT-TEC
Suspension Type: None ▾
* Ordered Date: 08/15/2023  Tuesday
Return Date: 08/15/2023  Tuesday
Total Time: 0.00 Days ▾

☐ Parent Notified

☐ Inconsistent with Code of Conduct?
Comments: Mandatory Action of Placement to DAEP Not Taken

Maximum characters: 5000, Remaining characters: 4953

Action Status: Served ▾
School:
School Year: 2023-24 ▾
Diff. Reason: ▾
Days Served: 0.00
Follow Up Officer:
Authorized By:

Save
Back

# Mitigating Factors

Before deciding to assign a student OSS, DAEP, Expulsion or JJAEP, a district <u>must</u> consider certain mitigating factors in relation to the student's misconduct:

- Self defense
- Intent
- Disciplinary History
- Disability that substantially impairs the student's capacity of understanding the wrongfulness of the conduct
- Homeless / Foster Care





# Emergency Placements: Offense Code 23

**This code should not be used on a routine basis, only for emergency situations.**

**1** The central focus of this code is the principal's decision to take immediate action in an emergency situation that cannot wait for due process to occur.

**2** Placement letter must correspond with the student's Skyward discipline record.

**3** When a student is Emergency Placed/Expelled, the Level 1 hearing must take place within **10 days** of the placement/expulsion.

**4** When a student is Emergency Placed/Expelled, the Level 1 hearing must take place within **10 days** of the placement/expulsion.

Placement letter **must** correspond with the student's Skyward discipline record.

# Emergency Placements: Offense Code 23 cont.

When entering the emergency placement, ensure to use the Offense Code of **23 – Emergency Placement**.

When entering the action, ensure the **total time** assigned reflects 10 days and, the **time served** reflects the days the student served until the level 1 decision was made.



# Part Day ISS or OSS

In accordance with TEC 37.005, under no circumstance may an out-of-school suspension (OSS), for a particular incident exceed (3) three school days.

*ISS/OSS action codes MUST be used for ANY length of time a student is removed from his/her instructional setting*

**CODE 25**
Part Day OSS

---

**CODE 26**
Part Day ISS

*Partial Day OSS is used by PEIMS for calculating the 3 day OSS limit*

# Time Ordered Vs. Time Served

If the student does **not** serve the full time ordered, a **difference reason code** is **required** for the action.

| Code | Short Description | Long Description |
|------|-------------------|------------------|
| 00 | NO DIFFERENCE | NO DIF BTWN OFFICIAL & ACTUAL |
| 01 | DISTRICT MODIFY | TERM MODIFIED BY DISTRICT |
| 02 | COURT ORDER MOD | TERM MODIFIED BY COURT ORDER |
| 03 | MOD/DIS/STU/PAR | MODIFIED AGGREE DIST/STUD/PAR |
| 04 | COMPLETE SOONER | COMPLETED SOONER THAN EXPECTED |
| 05 | INCARCERATED | STUDENT INCARCERATED |
| 06 | HEALTH RELATED | TERM DECREASED HEALTH REASONS |
| 07 | STUDENT W/DREW | STUDENT WITHDREW FROM SCHOOL |
| 08 | SCH YR ENDED | SCH YEAR ENDED BEFORE COMPLETE |
| 09 | CONTINUE PRE YR | CONTINUE PREVIOUS YEAR DISCIP |
| 10 | GOOD BEHAVIOR | TERM MODIFIED GOOD BEHAVIOR |
| 99 | OTHER | OTHER |

*If there is **no difference** and student served full time ordered, a difference reason code is **not** needed/required.*



**Q & A's**

**Q: WHAT IS THE DIFFERENCE BETWEEN TIME ORDERED AND TIME SERVED?**

- <u>Time Ordered</u> reflects the total days a student is assigned to an action (ISS/OSS/DAEP etc.).

- <u>Time Served</u> reflects the total days the student actually served for the action.

**Q: IF A DIFFERENCE REASON CODE IS USED, HOW WILL IT BE DOCUMENTED?**

**A:** The difference reason code that was entered for the action should be added to the discipline referral for auditing purposes.

# Ordered Action Date

## Emergency Placement

Ordered Date will reflect the date the student begins SGLC, as stated in the emergency placement letter.

NOTICE OF EMERGENCY PLACEMENT AT THE STUDENT GUIDANCE & LEARNING CENTER

The student must report to the Student Guidance and Learning Center on Tuesday, April 11, 2023. The student may not enroll in a regular SFDRCISD educational setting until the duration of placement has expired.

## Level 1 Placement

Ordered Date will reflect the date of the placement letter.

NOTICE OF PLACEMENT AT STUDENT GUIDANCE & LEARNING CENTER

May 17, 2023                                    HAND-DELIVERED

Del Rio, Texas 78840

## All Other Actions

Ordered Date will reflect the date the decision was made to assign the action.

# Action Status

## Action Status: Open/Served

Ensure to mark each action as "SERVED" **after** the student has completed his/her ordered time.



## Remember Attendance

Attendance **must** reflect the discipline actions entered in Skyward.



**Ex:** *3 Days ISS should correspond with the student's attendance record for the dates ordered.* **A PEIMS disciplinary record must be reported for EACH disciplinary action that results in a removal of a student from any part of their academic program.**

## Discipline & Attendance Verification

The discipline/attendance secretary has access to generate reports at the convenience of the campus, to verify the attendance/discipline correspond in Skyward.

PDQ will task an attendance/discipline report to be distributed to campuses once a week, for review.



## ELEMENTARY

The campuses have only one attendance period therefore, discipline/attendance coding may not always correlate with one another in Skyward.

**Ex:** *Student is present at official attendance time, however at recess the student receives a discipline referral in which he/she is ordered ISS or OSS the remainder of the day – the original attendance coding will not be adjusted, but there must be a comment entered detailing the* **time** *the student was ordered ISS/OSS.*

# Student Restraints



## Understanding Restraint Coding

The purpose of the Restraint Reason-Code is to indicate that a student was **physically** or **mechanically** restrained by District Police Officer due to imminent serious physical harm to themselves or others, imminent serious property destruction, or a combination of both during the course of an incident warranting discipline. Applies to all: SPED, 504, LEP, GT, etc.

## When Does Coding Take Place?

Takes place at the time the discipline record is created for the incident.



Documentation for restraints should be filed for auditing purposes.

# Student Restraints

## How to Document Restraints?

- Student restraints must be documented on the discipline referral **AND** also on the Restraint Summary form **(pictured right)**.

- The form should then be submitted to the discipline office for processing.

- *Restraints are not performed by Staff Members*

*All restraints that are performed by school district police officers or school resource officers (SROs) while providing a police presence at school or at a school related activity* _must_ *be reported.*



### 2023 - 2024 Restraint Summary

District Police/Security Officers Complete Part I and II

**I.   Student Information**

Name_____Student ID_____Date_____Time_____

Campus_____Grade_____Special Education:   Y   N

**II.   PEIMS Information**

Restraint Reason:
(Code 8 Reported for Special Education and Non-Special Education Students)

_____ 08 Restraint by School District Police Officer/School Resource Officer Performing Law Enforcement Duties and/or Providing a Police Presence on School Property or at a School-Sponsored or School-Related Activity.

Staff Type:
_____02-District Police Officer

Restraint Type:
_____Mechanical
_____Physical

District Police/Security Officer Name: _____

_____   _____
District Police/Security Officer Signature   Date

**FOR OFFICE USE ONLY**

_Make 3 copies of this form_

☐ Original is attached to referral and given to the Campus Administrator – Used for data entry and retained in the discipline folder with discipline referral for auditing purposes

☐ One copy must be placed in the mail, or otherwise provided to the parent, on the day of the restraint

☐ One copy is sent to the Department of Special Education (Director)

Entered by _____   Date _____

**Restraint Steps**

Path: WS\ST\TB\SP\TB\CH

1. Select Child Res



2. Select Add



3. Fill out the fields with an * asterisk and Save



4. The Child Restraint record is now posted



5. Data Mining Report to process at your convenience

| Report Name ▲ | Report Title | Favorite | Created By |
|---|---|---|---|
| ▶ AA Discipline - w/ Student Restraints | AA Discipline - w/ Student Restrain | ⭐ | GOMEZFEL001 |

# Student Restraints cont.

## What is the Importance of Reporting Student Restraints?

─────────

**Restraints are reported to PEIMS during Summer Submission. Not reporting student restraints may appear as "hiding" restraint incidents.**

*Steps to code restraints can be found on the PDQ webpage*

# Inconsistent with Code of Conduct

## WHAT IS THE PURPOSE OF THE INCONSISTENT WITH CODE OF CONDUCT (ICC) INDICATOR?

**The purpose of the ICC is to indicate for reporting purposes, whether an out of school suspension, DAEP placement, or expulsion action is inconsistent with the LEA's student code of conduct.**



*Example:* If a student is sent to DAEP for an offense of L62 (Skipping Class), which translates to PEIMS as a 21 (Violation Student Code of Conduct), the campus will indicate in the action summary that the action is inconsistent with the District's Student Code of Conduct.

# Safe Supportive School Team Review

## WHAT IS THE PURPOSE OF THE SAFE SUPPORTIVE SCHOOL TEAM REVIEW INDICATOR?

This indicates whether the Safe and Supportive School Program (SSSP) team conducted a threat assessment related to a reported disciplinary incident.





# Behavior Location Codes

## WHAT ARE BEHAVIOR LOCATION CODES??

- Location Codes are PEIMS reportable codes that indicate where the disciplinary incident occurred for each specific offense code.

## HOW DOES THE CAMPUS KNOW WHICH LOCATION TO USE?

- Location Codes can be found in TAB 2 of the discipline manual.

## HOW ARE LOCATION CODES DOCUMENTED?

- Location Codes are PEIMS reportable codes that must be included on the discipline referral for each incident.

### 2023 -2024
### Behavior Location Codes

| Campus Location Codes | | SGLC Location Codes | |
|---|---|---|---|
| Code: | Translation: | Code: | Translation: |
| 00 | NOT APPLICABLE | SGLC0 | NOT APPLICABLE SGLC CAMPUS |
| 01 | ON CAMPUS | SGLC1 | ON SGLC CAMPUS |
| 02 | OFF CAMPUS, BUT WITHIN 300 FEET OF CAMPUS PROPERTY LINE | SGLC2 | OFF SGLC CAMPUS WITHIN 300' |
| 03 | OFF CAMPUS, BUT AT A SCHOOL SPONSORED OR SCHOOL RELATED ACTIVITY | | N/A |
| 04 | OFF CAMPUS, AND FURTHER THAN 300 FEET FROM THE CAMPUS BOUNDARY (STUDENT WAS NOT IN ATTENDANCE AT A SCHOOL SPONSORED OR SCHOOL RELATED ACTIVITY) | SGLC4 | OFF SGLC CAMPUS GREATER 300' |
| 05 | ON CAMPUS OF ANOTHER SCHOOL DISTRICT, OR WHILE IN ATTENDANCE AT A SCHOOL SPONSORED OR SCHOOL RELATED ACTIVITY OF ANOTHER SCHOOL DISTRICT | | N/A |

# Special Reminders

## AFFECTS FUNDING:

---

Students who are enrolled in special courses (CTE) and programs (Bilingual, SPED, etc.) and receive a discipline action of ISS, OSS, DAEP, or Expulsion for more than 5 consecutive days must have their funding removed for the course/program on the 6th day of the action effective the 1st day the action began.

Example: If a student is assigned OSS for 3 days beginning 09/06    – 09/08, and has ISS assigned immediately after for the dates of 09/09    – 09/13, totaling 6 days, the funding for CTE courses or special programs  MUST be removed effective 09  -06 – 09/13/23.

# Data Mining Reports

**The reports listed can be processed through Excel by discipline office personnel at any time throughout the year, to review and verify data entered into the Skyward Discipline Module.**

# FAQ's

- WHAT DO I DO IF A STUENT COMMITS MULTIPLE VIOLATIONS DURING ONE INCIDENT?

- WHAT CONSTITUTES AN EMERGENCY PLACEMENT?

- HOW DO I DETERMINE WHAT THE ORDERED DATE OF AN ACTION IS?

# THANKS!

---

## Do You Have Questions?

PEIMS DATA QUALITY COMPLIANCE AND ACCOUNTABILITY

830.778.4076

peimsdataquality@sfdr-cisd.org



