**FILED**

September 19, 2024

CLERK, U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS

BY: _Christian Rodriguez_
DEPUTY

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| JOHN DOE, a minor child, and | § | |
| JAMES AND JANE DOE, as next friends, | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | No. 1-24-cv-00902–DAE |
| | § | |
| EANES INDEPENDENT SCHOOL | § | |
| DISTRICT, and JEFF ARNETT, Ph.D., | § | |
| SUPERINTENDENT, KIMBERLY | § | |
| DEWRELL, CASSIE WINTER, HEATHER | § | |
| MEEK, and MOLLY MAY IN THEIR | § | |
| OFFICIAL and INDIVIDUAL CAPACITIES, | § | |
| | § | |
| *Defendants*. | § | |

## PLAINTIFFS' AMENDED COMPLAINT AND APPLICATION FOR TEMPORARY AND PERMANENT INJUNCTIVE RELIEF

### INTRODUCTION

Plaintiff John Doe, and his parents, Jane and James Doe,[1] file this Amended Complaint and Application for Temporary and Permanent Injunctive Relief against Defendants, Eanes Independent School District ("EISD" or "Eanes"), EISD Superintendent Jeffrey Arnett, Ph.D., Kimberly Dewrell, principal of Hill Country Middle School ("HCMS," an Eanes school), Cassie Winter, an assistant principal at HCMS, Heather Meek, EISD Director of Curriculum and Instruction, and Molly May, Assistant Superintendent of Curriculum, Instruction and Assessment, (collectively, "Defendants" or the "District"). In response to a fight that occurred at the end of the

---

[1] The name of the plaintiff John is a pseudonym that is being used to protect the privacy of John and prevent further harm to him through disclosure of his actual name and the events described herein. The names of John's parents are also pseudonyms that are used to avoid facilitating identification of John and to protect their privacy.

last school year, the Defendants immediately suspended John. After a woefully inadequate investigation that included Defendant Winter instructing students to destroy video evidence of the fight and events that occurred preceding the fight, Defendants committed John to a 45 day term in the Eanes Disciplinary Alternative Education Program ("DAEP") and expelled him from the District.

From virtually the beginning of the school's involvement in this situation, the District has failed to comply with the laws in Texas and disciplinary policies adopted by the EISD Board of Trustees. The investigation HCMS and Defendant Winter conducted was incomplete and biased. Defendant Winter refused to consider evidence or interview the witnesses Jane and James presented that would have bolstered John's defense of his actions. The District expelled John, failing to follow state law and its own policies and procedures relating to an expulsion, indeed, failing to notify John's parents that the district was even considering an expulsion.

This Amended Complaint seeks swift injunctive relief to prevent the Defendants from continuing to violate state law, continuing to violate John's constitutional rights further, and breaching their obligations to abide by the terms and conditions set forth in the EISD Board of Trustees' publicly adopted policies, and to prevent John from suffering additional irreparable harm consequent to being removed from the school he has attended for two years, and being denied the opportunity to engage in extracurricular activities, most immediately playing football for HCMS.

Finally, this Original Petition seeks redress for the District's breach of contract and violation of John's constitutional rights, as well as a judicial declaration from the Court that the District has failed to afford John the procedural safeguards described in its policies.

John appealed the District's initial decision and his appeal was denied.

The district asserts its decision was within the parameters of the existing policy and is supportable with the facts that were available to it at the time Defendants Winter and Dewrell made that decision.[2]

## I.    THE PARTIES

1.    Plaintiff John Doe ("John") is a minor, who resides with his parents, Plaintiffs Jane Doe ("Jane") and James Doe ("James") in Austin, Texas. From August 2023 until May 31, 2024, John was a student enrolled in Hill County Middle School in Austin, Texas.

2.    Defendant Eanes Independent School District ("EISD") is a governmental unit, organized and existing under the laws of Texas. EISD's principal office is located at 601 Camp Craft Road, Austin, Texas. EISD oversees the operations of schools located within its geographical boundaries. An elected board of trustees governs the operation of EISD and is charged with the responsibility of creating policies that, among other matters, govern the conduct of students and sets forth disciplinary measures for violations of student conduct policies. The EISD Board of Trustees delegated the authority and responsibility for implementing the Student Code of Conduct and all diciplinary measures for violations of student conduct policies to the Defendants.

3.    Defendant Jeff Arnett is the Superintendent of EISD; as such Arnett serves as the chief executive officer of EISD. Arnett may be served with process and a copy of this lawsuit at his place of work, 601 Camp Craft Road, Austin, Texas, or wherever he may be found.

4.    Defendant Kimberly Dewrell is employed as the Principal of Hill County Middle School ("HCMS") a middle school within the boundaries of, and under the control of, EISD. As the Principal of HCMS, Dewrell, or her designee, serves as the campus behavior coordinator (Texas

---

[2] Plaintiffs contend that the District's willful ignorance of facts provides no safe harbor for its plainly illegal and unconstitutional acts.

Education Code, § 37.0012(a)) and as such, "is primarily responsible for maintaining student discipline and the implementation of this subchapter [subchapter 31]." Dewrell may be served with process and a copy of this lawsuit at her place of work, 1300 Walsh Tarlton Ln, Austin, TX, at the EISD administrative offices, 601 Camp Craft Road, Austin, Texas, or wherever she may be found.

5.      Defendant Cassie Winter is employed as an Assistant Principal of HCMS. Upon information and belief, Winter was designated by Dewrell to: (i) assist as campus behavior coordinator, (ii) investigate the circumstances leading to the discipline described in this Amended Complaint, and (iii) decide, with the approval of Defendants Arnett and Dewrell, the discipline to be imposed on John. Winter may be served with process and a copy of this lawsuit at her place of work, 1300 Walsh Tarlton Ln, Austin, TX, at the EISD administrative offices, 601 Camp Craft Road, Austin, Texas, or wherever she may be found.

6.      Defendant Heather Meek is employed by Defendant EISD as its Director of Curriculum and Instruction. Meek was appointed, upon information and belief, at the direction and with the approval of Defendant Arnett, to serve as the presiding officer at the administrative hearing described in this Amended Complaint. Meek may be served with process and a copy of this lawsuit at her place of work, 601 Camp Craft Road, Austin, Texas, or wherever she may be found.

7.      Defendant Molly May is employed by EISD as Assistant Superintendent of Curriculum, Instruction and Assessment. On behalf of Defendants, May falsely altered the discipline report regarding Plaintiff John to make it appear that John was not expelled from HCMS, all as described below. May may be served with process and a copy of this lawsuit at his place of work, 601 Camp Craft Road, Austin, Texas, or wherever he may be found.

## II.        JURISDICTION & VENUE

8.        Jurisdiction is conferred on this Court by 28 U.S.C. § 1343(a)(3) and (a)(4), as well as 28 U.S.C. § 1331, as this is a civil rights action pursuant to 42 U.S.C. §§ 1983 and 1988 for deprivation of rights granted by the Fourteenth Amendment to the United States Constitution. In addition, Defendants have consented to the jurisdiction of this court by removing this case from State court.

9.        The remaining claims are subject to the Court's supplemental jurisdiction pursuant to 28 U.S.C. § 1367 for related state law claims that arise from the occurrences giving rise to the Federal claims and have a common nucleus of operative fact.

10.        Venue in this Court is appropriate under: (i) 28 U.S.C. § 1391(b)(1), because one or more of the Defendants reside in this district and all Defendants are residents of Texas, and (ii) 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims asserted in this Complaint occurred in this district.

## III.        FACTS COMMON TO ALL COUNTS

### A.    Plaintiff John's Enrollment at HCMS

11.        Because Plaintiff John does not reside within the boundaries of EISD, he required EISD approval to attend school at HCMS. EISD granted John approval to attend HCMS as a transfer student for the 2022-2023, 2023-2024 and 2024-2025 school years. Texas Educ. Code Section 25.036.

12.        During the 2023 – 2024 school year, Plaintiff John was a student in the seventh grade at HCMS, where he had an outstanding record of academic achievement, participating in school sports and other academic extracurricular activities. At no time prior to or since the events

described in this Complaint (which occurred at the end of the 2023-2024 school year) was John ever subject to school discipline, nor had he had any student conduct issues. To the contrary, John is a model student, as HCMS recognized when it presented him with a PAWS award for embodying the values of HCMS.

**B.    Student Code of Conduct**

13.    EISD, through its Board of Trustees, has adopted a Student Code of Conduct (SCOC). That SCOC governs behavior of EISD students and establishes conduct for which a student may be disciplined, the type of discipline the District can impose, and the process by which the District may effect punishment for violations of the SCOC.

14.    The SCOC contains the following provisions and guarantees:

    a.    *All Eanes ISD students are entitled to basic rights of citizenship, recognizing protected by law for persons of their age and maturity.* (Exhibit A, p. 4)

    *Process and Rules for Imposing Discipline – Non-Expulsion*

    b.    *When deciding to order any mandatory or discretionary disciplinary, consequence, including, but not limited to, out of school, suspension, DAEP placement, expulsion or placement in a JJAEP of a student, the district shall consider:*

        *1.    Self-defense;*

        *2.    The student's intent or lack of intent, at the time of the conduct;*

        *3.    The student's disciplinary history….* (Exhibit A, p. 10).

    c.    *[u]sing their professional judgment, district employees shall also consider a variety of factors when administering all disciplinary consequences and determining the duration of the consequence, including, but not limited to:*

        >    *the degree of severity and the risk of danger;*

        >    *the effect of the misconduct;*

        >    *the frequency of the misconduct;*

        >    *the age and grade level of the student;*

>         *the student's demeanor….*" (Exhibit A, p. 10).

d.     *Discipline is designed to improve conduct, correct student behavior, and encourage students to adhere to their responsibilities as members of the school community. Disciplinary action shall draw on the professional judgment of teachers and administrators, and on a range of discipline management techniques, including restorative practices.* (Exhibit A, p. 10).

e.     *Before being suspended, a student will meet with the campus behavior coordinator/appropriate administrator, who will inform the student of the alleged misconduct. The student will be given an opportunity to respond before the administrator makes a decision. The appropriate administrator shall determine the number of days of a student's suspension. Students may be suspended for a maximum of three school days per behavior violation….* (Exhibit A, p. 20).

f.     *No later than three school days after the student's removal from class, the campus behavior coordinator/appropriate administrator will schedule a conference with the administrator, the students parent/guardian and the student. At the conference, the administrator shall inform the student, orally or in writing, of the reasons for the removal, so give the student an explanation of the basis for the proposed DAEP [disciplinary alternative education program] placement, and give the student an opportunity to respond to the reasons for the removal.* (Exhibit A, p. 26)

g.     *If the outcome of the conference is to place a student in DAEP, the administrator will issue a DAEP placement order….* (Exhibit A, p. 26).

h.     *The length of a student's placement in DAEP will be determined on a case by case basis, using the criteria identified in the discipline consideration section of this* [SCOC].

i.     *Mandatory DAEP placements may result in placement for up to 120 school days. Discretionary DAEP placements may result in placement for up to 60 school days.* (Exhibit A, p. 27).

j.     *For DAEP placement to extend beyond the end of the school year, the administrator must determine that: (1) the student's presence in the regular classroom or campus presents a danger of physical harm to the student or others; (2) the student has engaged in serious or persistent misbehavior… that violates the* [SCOC]. (Exhibit A, p. 28)

k.     *The decision of the Superintendent or designee at level two [appeal] is final and may not be appealed.* (Exhibit A, p. 28).

l.     REASONS FOR DISCRETIONARY EXPULSION

*School-Related. A student may be expelled for any of the following offenses that occur on school property, within 300 feet of school property or while attending a school – sponsored or school – related activity on off school property:*

➢ *Commits an assault, resulting in bodily injury to a school employee or volunteer.*

➢ *Engages in deadly conduct.*

➢ *Engages in a second or multiple infraction(s) that are reasons for mandatory DAEP placement.* (Exhibit A, p. 34).

15.     Further, Eanes School Board Policy FOD (Legal Framework) discusses the procedure for and procedural safeguards in expulsion cases. In relevant part, that policy states:

Before a student may be expelled, a board or its designee shall provide the student a hearing at which the student is afforded appropriate due process as required by the federal constitution and which the student's parent or guardian is invited, in writing, to attend. *Education Code 37.009(f)*

The minimum procedural requirements necessary to satisfy due process depend upon the circumstances and the interests of the parties involved. Federal due process requires notice and some opportunity for hearing.

*Notice*

The notice should contain a statement of the specific charges and grounds that, if proven, would justify expulsion. In some cases, the student should be given the names of the witnesses against him or her and an oral or written report on the facts to which each witness testifies.

*Hearing*

The rights of the student may properly be determined upon the hearsay evidence of school administrators who investigate disciplinary infractions.

[See also *Brewer v. Austin Indep. Sch. Dist.*, 779 F.2d 260 (5th Cir. 1985); *Keough v. Tate Cnty. Bd. of Educ.*, 748 F.2d 1077 (5th Cir. 1984); *McClain v. Lafayette Cnty. Sch. Bd. of Educ.*, 673 F.2d 106 (5th Cir. 1982); *Tasby v. Estes*, 643 F.2d 1103 (5th Cir. 1981); *Boykins v. Fairfield Bd. of Educ.*, 492 F.2d 697 (5th Cir. 1974), cert. denied, 420 US 962 (1975); *Dixon v. Alabama State Bd. of Educ.*, 294 F.2d 150 (5th Cir. 1961), cert. denied, 368 U.S. 930 (1961)]

*Representative*

At the hearing, the student is entitled to be represented by the student's parent, guardian, or another adult who can provide guidance to the student and who is not an employee of the district. If a district makes a good-faith effort to inform the student and the student's parent or guardian of the time and place of the hearing, the district may hold the hearing regardless of whether the student, the student's parent or guardian, or another adult representing the student attends.

*Mitigating Factors Before Ordering Expulsion*

Before ordering the expulsion of a student, the board or the board's designee must consider whether the student acted in self-defense, the intent or lack of intent at the time the student engaged in the conduct, the student's disciplinary history, and whether the student has a disability that substantially impairs the student's capacity to appreciate the wrongfulness of the student's conduct, regardless of whether the decision of the board concerns a mandatory or discretionary action. [See Student Code of Conduct, item 4, at FO(LEGAL) for additional mitigating factors.]

*Appeal*

If the decision to expel a student is made by the board's designee, the decision may be appealed to the board. The decision of the board may be appealed by trial de novo to a district court of the county in which the district's central administrative office is located.

*Education Code 37.009(f)*

**I. Term of Expulsion**

If the period of expulsion is inconsistent with the guidelines on length of expulsion in the Student Code of Conduct, the order must give notice of the inconsistency.

Beyond One Year

The period of expulsion may not exceed one year unless a district determines that:

1. The student is a threat to the safety of other students or to district employees; or

2. Extended placement is in the best interest of the student.

   *Education Code 37.009(h).*

C.   **Student M.B.**

16.     During the 2022-2023 and 2023-2024 school years, M.B.[3] was also a student at HCMS. M.B. was well-known to the Defendants as having behavioral and impulse control problems that manifested themselves in the form of conduct meriting disciplinary measures (but which behavior HCMS and EISD officials regularly ignored). This behavior included physical confrontations, provocative and racist comments and language, threats, and a general disrespect for other students and teachers. For example, in November of 2023 at school during school hours, M.B. entered a classroom where he was not scheduled or supposed to be and, without warning or provocation, pushed a desk over on another student resulting in the other student requiring emergency room treatment and stitches in his face, leaving him with a permanent facial scar. M.B. received no punishment from the school for this behavior.

17.     Other HCMS students are afraid to walk down the hallway when M.B. is nearby and turn their backs to the wall when he passes to prevent him from pushing them in the back. M.B. has acted that way for two years and continues to act that way with impunity. M.B. makes racist comments to other students, referring to Black students as "monkeys." Despite the repugnant violation of school policy that comment represents, there is no evidence M.B. experienced any discipline or corrective actions.

18.     In addition, M.B. is known to be disruptive in class and to assault teachers verbally. In fact, on the morning of Thursday, May 23, 2024, M.B. verbally abused a Spanish teacher in front of other HCMS students. Moreover, upon information available to them, Plaintiffs believe discovery will demonstrate M.B. has a history of similar behavioral problems resulting in discipline

---

[3] This Amended Complaint uses the initials of this student to help protect his privacy because he is a minor.

while a student in California, a circumstance known to Defendants. Despite his lengthy history of foul-mouthed, racist, disruptive, verbally abusive and physically assaultive actions, Plaintiffs have been unable to identify *any* time that M.B. experienced school discipline, school-initiated corrective or restorative actions, or indeed, suffered *any* consequences for his behavior – including this occasion.[4]

**D.    Events Precipitating This Lawsuit**

19.     According to Defendant Winter, on Thursday May 23, 2024, M.B. admitted that he punched John on the preceding Monday, May 20, 2024 while the two boys were in the locker room at HCMS.

20.     Defendant Winter knew that on Wednesday, May 22, 2024, during the first class period of school while the students were left unsupervised by any teachers or other HCMS personnel, M.B. again attacked John, punching him in the face five times rapidly, breaking his glasses and injuring his face. John did not retaliate or otherwise engage M.B. The impetus for this assault was that immediately preceding this incident, M.B. had slammed a school door shut, causing the door to lock and preventing other students from entering through the door. M.B. refused to

---

[4] As detailed in this Amended Complaint, M.B. violated the Student Code of Conduct in ways that would require the school – at a minimum – to place him in disciplinary alternative education. He was not. In truth, his repeated offensive behavior and violations could easily support expulsion proceedings, had HCMS and the District properly documented the incidents and followed the letter – or even the general spirit – of the Student Code of Conduct. As explained in subsequent paragraphs, those are all unlikely events to occur. By all appearances, Eanes reserves removal of a child from classes and the school entirely, placement of that child in a disciplinary program, and then expulsion of that child from the District completely to only a small set of qualifying students. Judging from the facts of this case, and to illustrate the absurdity of this situation with sarcasm, this school district will not even consider that level of punishment unless the offending student has an A+ average, has never been in trouble before, is respectful to teachers and students, and is well liked. Even then, the offending action apparently must be minor before the prospect of expulsion is realistic.

open the door for other students, but instead taunted those who were trying to use the door, hurling insults and other forms of verbal abuse.

21.     Also on Wednesday, May 22, 2024, during the second class period at school, M.B. sought John out in the back of the classroom and verbally threatened him, demanding he not tell an adult about the attack during first period for fear that he would be suspended.

22.     On Thursday, May 23, 2024, M.B. again verbally harassed John, repeatedly calling him "a pussy." On the same day, M.B. verbally harassed two other HCMS students, leading to talk among students that there was going to be a fight between M.B. and the two other students.

23.     At approximately 4:00 p.m. on May 23, 2024, as they left school for the day, dozens of students noisily made their way through a crowded corridor; some of the students were yelling and cursing. No teachers or other HCMS personnel were present to supervise the students or to prevent the rowdy conduct from continuing. In addition, even though the school has cameras in all hallways that are streamed live into the school administration's office and monitored continuously, no HCMS staff member made an attempt to intervene in the rowdy conduct.

24.     John was among the students in the corridor walking behind the two students who purportedly were going to be involved in a fight with M.B. As the students proceeded down the corridor, M.B. again began calling John a "pussy," threatened John and demanded to fight him and not the other two students who were walking ahead of John. At one point, M.B. stopped, turned around and yelled words to the effect of, "y'all are a bunch of pussies. I want to fight John. I want to fight John alone." Another student can be heard to say, "he's going to jump him! He's going to jump him!" Yet another student said, "I'll bet!" John had not planned to be in a fight but other students propelled him to the forefront.

25.    The fight apparently had been at least partially organized, and fully prepared for, by M.B. As M.B. and John stood outside the school trying to figure out what was going to happen next, an older student, Dan LNU, approached M.B. and told him urgently in his ear, "I can't do shit! I can't do shit!" M.B. had recruited Dan LNU to provide back up support and jump in to beat John; the presence of John's friends stopped him.

26.    A fight ensued between M.B. and John. The fight ended 26 seconds after it started without any injury of moment to either M.B. or John.[5]

27.    Although the fight on May 23, 2024, ended shortly after it started, M.B.'s taunts to John did not. A short time after the fight ended, M.B. sent a text message to John, telling him, "Yo. You and me only. No one else around. Lets [sic] run it again."

**E.    Suspension from HCMS**

28.    On May 23, 2024, *less than one hour after the incident at school*, Defendant Winter called Jane Doe to inform her that HCMS had decided to suspend John for his participation in the May 23 incident.

29.    HCMS decided to suspend John without any meaningful investigation, with little or no evidence to support the suspension, without examining any evidence regarding the cause of the incident, without any investigation into John's exemplary performance and history as a student

---

[5] A number of student-made video recordings of the fight existed, but Defendant Winter was able to identify nearly every student who had a phone camera out and was recording the scuffle. She contacted the students she could identify who made those videos and ordered each student to destroy all fight videos in their possession or control. Winter did not obtain copies of student videos for safekeeping and for review by Plaintiffs before ordering students to destroy their videos. However, several videos survived this evidentiary Kristallnacht. The bootleg survivors show a different story from the official EISD version of happy students leaving school who suddenly began fighting, and Plaintiffs rely on those additional perspectives to support a part of this lawsuit. The available videos appear to show John dominating the fight, although M.B. walked away with a bloody nose and John walked away with a bruised eye.

at HCMS and without any opportunity for the Plaintiffs to examine the evidence on which the suspension was based or to present any evidence of their own. In fact, when she informed Jane Doe that her son was suspended, Winter did not even cite a provision of SCOC on which she based her suspension or request to interview John to get his side of the events leading up to the suspension.

30.     The school did not suspend or expel M.B. and did not assign him DAEP or, upon information and belief, any other discipline.

31.     On May 24, 2024, John and his parents received the welcome news that EISD had approved John's transfer into EISD from AISD for the 2024-25 school year.

**F.     The Sham Meeting of May 31, 2024**

32.     Beginning shortly after the May 23 incident, Plaintiffs Jane and James Doe sent emails to Defendant Winter (who was the school assistant principal in charge of investigating this matter and recommending whether the school should act and if so, how), requesting a meeting to discuss the incident and the events leading up to it.

33.     Eventually, Defendant Winter responded in one email to all the messages from the Doe family, informing Jane and James she would speak with them in due course as part of the school's ongoing, thorough investigation.

34.     Defendant Winter concluded her investigation in short order but without asking questions of the Does and without ever trying to interview John Doe, let alone determining what he believed had happened, why it happened, and his state of mind, both at the time it happened and currently. Nevertheless, Defendant Winter secured Dewrell's approval of her findings and recommendation. The two administrators then invited John's parents to a meeting at HCMS on May 31, 2024, telling them it was time to review the events that occurred during the week of May

20 (Defendant Winter, with the approval of Defendant Dewrell, had had already suspended John from HCMS).

35.     Plaintiffs Jane and James and Defendants Winter and Dewrell attended the May 31st meeting; neither Defendant Winter nor Dewrell invited John. Jane and James welcomed the opportunity to discuss the May 23rd incident and the events preceding it, and anticipated a discussion on finding a path forward. Because no one from EISD had interviewed them or John, plaintiffs Jane and James went to the meeting expecting to have a conversation among adults about an unfortunate and all too common rite of passage for many school-age children.

36.     During the meeting, Dewrell and Winter asked Jane and James a series of questions which seemed in retrospect to be designed to obtain admissions of John's culpability in a one-sided and unprovoked attack on M.B. Then, at the close of the May 31st meeting, Winter and Dewrell informed Jane and James of the discipline they had previously decided John would face. They announced he would need to serve 45 days – a full academic quarter – in a disciplinary alternative education program ("DAEP"). During that time, he could not be on the HCMS grounds and could not attend or participate in extracurricular activities. This had the effect of prohibiting him from playing football for HCMS for the 2024-25 academic year, stripping him of his quarterback position, a leadership role on the team he had struggled for two years to earn.

37.     Jane and James did not know it then, but Defendants Winter and Dewrell never intended the May 31st meeting to be a discussion, an exchange of ideas, or an exploration of how to teach and expand the growth experience of either (or both) students. They failed to follow the guarantees of the SCOC to ensure:

> Discipline is designed to improve conduct, correct student behavior, and encourage students to adhere to their responsibilities as members of the school community. Disciplinary action shall draw on the professional judgment of teachers and

*administrators, and on a range of discipline management techniques, including restorative practices.* (Exhibit A, p. 10).

38.    Unknown to the Doe family, prior to extending the invitation to meet, Winter and Dewrell had decided John committed an "assault"[6] on M.B. that warranted suspension and the additional extreme disciplinary measures discussed below.[7]

39.    At the meeting on May 31, Jane and James presented video evidence (with accompanying audio) – evidence that confirmed M.B.'s taunts, name-calling, and demand to fight John, and evidence of M.B.'s threats precipitating the May 23 incident. Winter and Dewrell admitted during the meeting they had not seen this evidence, although it quickly became clear they already had decided John needed to be punished. Neither Defendant Winter nor Defendant Dewrell asked for a copy of the video John's parents had, nor did they express any interest in it or its potential implications for the "investigation" they had completed and the decision they had made. And, although John's parents offered to provide the video evidence – and other exculpatory evidence as well – to Winter and Dewrell, neither Defendant requested any evidence of any type the Plaintiffs had and mentioned at the May 31st meeting.

---

[6] EISD's 2023-24 Student Code of Conduct ("SCOC") defines "assault" as "[f]or discipline purposes, intentionally, knowingly, or recklessly causing bodily injury to another." In turn, the Student Code of Conduct defines "bodily injury" this way: "[p]hysical pain, illness, or impairment of a physical condition." Exhibit A, p. 40.

[7] The choice Defendants Winter and Dewrell made to classify this incident as an "assault" is significant. The confrontation also could have been classified as "fighting," which the student code of conduct defines as: "[t]wo or more persons engaged in any mutually violent or physically aggressive contact toward each other, such as scuffling, pushing, shoving, or hitting." Exhibit A, p. 42. The difference between an assault and a fight is that an assault carries a mandatory period in a disciplinary alternative education program, which in turn triggers EISD's right to decline an inter-district transfer in a subsequent annual review. Exhibit A, p. 23.

**G.**   **The Punishment**

40.     At the conclusion of the May 31ˢᵗ meeting, Defendants Winter and Dewrell informed Jane and James that John's punishment would take two forms in addition to the suspension that John already served: (i) John would serve 45 days in a Disciplinary Alternative Education Program ("DAEP"); and (2) John would not be permitted to return to HCMS. The referral to DAEP means John will be banned from the HCMS campus (or any campus) while in DAEP and will be denied access to school premises, activities, extra-curricular activities and resources, including full-time, in-person instruction from teachers. Instead, John's schooling during the 45 day DAEP referral period will consist of receiving assignments through Google Classroom software and occasional Zoom conferences with teachers, which Winter said usually take place once or twice a week.

41.     John won't have to worry about any of that at an Eanes school, however. Eanes views its own imposition of DAEP as a good indication of future trouble (even for a student who has – literally – never had a disciplinary event in school before and is a credit to the school district in every measurable way, and even when the District's DAEP decision is wrong procedurally, legally, situationally and morally). Consequently, Defendants Winter and Dewrell advised Jane and James Doe EISD had already revoked, or would soon, its acceptance of the inter-district transfer that enabled John to attend HCMS. This action removed John from HCMS (and all other schools within the boundaries of EISD) but did not end the DAEP, which will follow John wherever he goes to school.

42.     Next, contrary to the reassurances EISD gave to Jane and James that EISD was "merely" revoking John's 2024-25 transfer acceptance, was not expelling him, and that nothing about this disciplinary matter would remain on John's permanent academic record, Defendant

Winter did just the opposite – *she expelled John*. Even a cursory review of John's school discipline record shows Defendant Winter expelled John. A copy of John's discipline record is attached and shows EISD expelled him, marking his disciplinary code as "03 EXPL" (expulsion) and his offending behavior as "Attempted Assault" ("Assault Ampt") Exhibit B.

43.     Further, Defendant Winter then added a code to John's disciplinary record (a record unavailable to parents online) that indicates John was in an alternative program to address behavioral problems. He is not. *See* Exhibit B and the corresponding code list in Exhibit C, the Discipline Manual at p. 10. That record of expulsion and related false comments will be available for anyone with access to John's academic and discipline records (other K-12 schools, for example, or colleges) to review.

44.     John does need to worry about DAEP elsewhere, though, beginning August 14, 2024. Although he was not able to attend the school he has attended for two years and where his friends – all of them – go, and will not play football for the team he worked for two years to lead, Defendant Dewrell made sure Jane and James knew their son would have to spend 45 days in DAEP at any public school in the state.[8] The bad decisions, unconstitutional acts and unlawful approaches Eanes uses will follow John everywhere.

---

[8] Dewrell joined that part of the conversation late, confusing the *maximum* DAEP placement for an assault (120 days) with a non-existent mandatory *minimum*, and conflating an assault with an attempted assault (which is how Defendant Winter coded John's offense). That resulted in her erroneously telling the Doe's the school had generously mitigated John's "mandatory" 120 day DAEP commitment to 45 days, in recognition of his PAWS award. This, again, was untrue. She and Defendant Winter imposed 45 days, but because there was no minimum they could have done as little as nothing. Had either of the two highest-ranking administrators in HCMS been trained, educated and qualified to discipline anyone or anything, they would have known there was no DAEP minimum placement for attempted assault, there was no expulsion for attempted assault – there wasn't even a DAEP *discretionary* placement for attempted assault. These two high-ranking HCMS administrators also could have avoided this situation altogether, or at least recognized their

45.    HCMS and EISD confirmed the decision to refer John to DAEP in two letters from Winter to Jane and James. Both letters were dated May 31, 2024 and Winter sent them by email shortly after concluding the meeting on that date, further confirming Defendants made the decision to discipline John before Winter and Dewrell met with Jane and John. Jeremy Trimble, Assistant Superintendent of EISD who previously accepted John's inter-district transfer for the 2024-25 academic year on May 24, 2024, confirmed the decision EISD made to prevent John from returning to EISD in a letter – also dated May 31, 2024.

46.    Texas school districts can choose to accept a student transferring from another school district. If a district accepts a transfer student, that acceptance is for an annual basis. Although state law contemplates an annual review of the student's transfer status (and even describes criteria – including discipline – a district may consider in deciding whether to renew a transfer student's status for another year), it has no provision for a review of transfer status more frequently than once a year, and *there is no statutory authority for revocation of a transfer already approved.*

47.    School districts are aware they have no legal authority to revoke acceptance of a transfer student. The Texas Education Agency has told them that and repeated efforts by legislators to confer that power on school districts have failed. See, e.g., See Exhibit D, TEA Correspondence (Aug. 18, 2008), which is referenced on Ex. A at FN10, (Aug. 18, 2008); and Exhibit E, TEA Correspondence (July 28, 2011), referenced on Exhibit A at FN23. *See also* TX

---

role in creating an environment where it could occur, and refused to make a 12 year-old boy pay the price for their lack of competence. The correct DAEP commitment policy is up to 120 school days for a mandatory placement and up to 60 school days for discretionary placements. Exhibit A, p. 27. The allegation against John, "Assault Ampt" isn't even listed as an offense in the SCOC, let alone one for which DAEP is a mandatory or discretionary possibility.

SB8, 88th Session, Section 1.003 (2023); TX SB418, 88th Session, Section 25.036(k) (2023); Bill Analysis, Clore, SB66; Bill Analysis, Zaffrini, SB66 (2011). Unless the Texas Legislature changes the law, school districts can accept transfer students but once accepted must treat them for the year as if they were students residing inside the district's boundaries.

48.     Following notice to EISD that Plaintiffs intended to appeal the decision of Winter and Dewrell, Plaintiff Jane *received* phone call from the HCMS safety officer, a sworn police officer employed by the EISD Police, who stated on several occasions John could go to jail for assault. When Jane asked if Winter or Dewrell had notified him of the assault by M.B. on the other HCMS student with the desk in November 2023, he responded that they had not. He also stated that neither Winter nor Dewrell notified him that M.B. admitted to punching John on Monday May 20, 2024. He stated no one advised him of the connection between the fight Wednesday morning and the one Thursday after school. He stated he was unaware of M.B.'s behavioral problems, including fights, provocative and racist comments and language, threats, and a general disrespect for other students and teachers, nor had anybody advised him of M. B.'s history and propensity for violence and offensive behavior, extending as far back to the time he lived in and was a student in California.

49.     Plaintiffs appealed according to EISD policy and an adversarial appeal hearing occurred on July 29, 2024, with Defendant Dewrell *appearing* for HCMS and Amber King appearing as counsel for HCMS. Defendant Meek, an EISD executive, sat as the appeals officer. A timely decision issued in her name ruled against John on every issue. Exhibit D. Meek's decision bore electronic metadata demonstrating she was not solely responsible for the content of her decision and reveals Amber King, counsel for HCMS, to be an author of the decision. Exhibit E.

50.    In late July, EISD complied with requirements of the Texas Education Agency ("TEA") and submitted its data for the annual Public Education Information Management Systems ("PEIMS") report. TEA describes the PEIMS system this way:

> [PEIMS] encompasses all data requested and received by TEA about public education, including student demographic and academic performance, personnel, financial, and organizational information.
> The data collected through the PEIMS electronic collection method has:
> - A standard set of definitions, codes, formats, procedures, and dates for the collection of data published as the PEIMS Data Standards;
> - Standard edit procedures;
> - An established database design;
> - A production system to format and load data into the TEA enterprise database; and
> - Written documentation describing the numeric and alphanumeric values stored in the database published as the Data Documentation.
>
> For the PEIMS electronic collection, school districts submit their data via standardized computer files, as defined by the PEIMS Data Standards.

"PEIMS–Overview," https://tea.texas.gov/reports-and-data/data-submission/peims/peims-overview.

51.    The PEIMS system compiles data on a wide range of subjects related to School operations, including school discipline. The superintendent from each school district must certify the accuracy of that district's PEIMS school discipline report. This duty cannot be delegated. TEA LEA Responsibilities, https://tealprod.tea.state.tx.us/TWEDS/103/0/0/0/DataSubmission/Responsibilities/1844.

52.    For the 2023-2024 school year, TEA required superintendents to submit PEIMS preliminary data by June 20, 2024. The resubmission due date was July 18, 2024. The period between the first submission and the resubmission deadlines is an extension provided to all LEAs to review their original submission for any errors and make corrections.

53.     PEIMS annual reports for the last 6 school years demonstrate the entire Eanes Independent School District has not reported to TEA a single expulsion since before the 2017-2018 school year, nor during the same period has it referred a single middle school student to DAEP.

54.     TREx is the Texas Records Exchange system, a TEA system that "enables electronic transfers of student records and transcripts to other districts or institutions of higher education."

55.     On August 29th, Defendant May sent the following email to Jane and James Doe, counsel for the Does, and counsel for EISD:

*Mr. Doe and Ms. Doe,*

*My name is Molly May, and I am the Assistant Superintendent of Curriculum, Instruction and Assessment. As part of my job responsibilities, I oversee the Student Information Systems Department. This department is responsible for all state and federal student data reporting such as attendance, student program codes, discipline, etc.*

*Recently, I had heard some concerns regarding the coding and was also assisting in fulfilling a Texas Records Exchange (TREx) request for John, which is the records request system from one public school district in Texas to another. In doing so, I noticed the discipline coding of 03 as the entry for John's placement to DAEP. After further researching the various codes and TEA guidance, I determined this was a coding error. John's order from the campus administration was for a DAEP placement and, therefore, the correct coding should have been 07. Upon discovering the mistake, I reached out to TEA to get further information on how to correct it.*

*This error was not isolated to John, so we are working to ensure we correct our coding accordingly.*

*Specifically for John, I was able to correct this error in Skyward, the Eanes student information system, and I have attached an updated copy of his discipline report. I have also ensured AISD has the correct information. The previous data has been sent to the Texas Education Agency (TEA) through the mandatory summer PEIMS submission process. As soon as TEA has opened the corrections window, I will also correct this coding error in their system. I will let you know when this occurs.*

*I apologize for the confusion this coding error may have caused.*

*Sincerely,*
*Molly May*

*Molly May*
*Assistant Superintendent*
*Curriculum, Instruction & Assessment*

56.    This disingenuous attempt to cover the Defendants' tracks was made even though the Plaintiffs had pointed out the expulsion language in John's discipline report when they filed their State Court Petition in early August. Indeed, the discipline report, which was specifically coded as an "03" expulsion, was appended to the original petition. Even with the original discipline report in hand, Defendants made the remarkable argument in their Motion to Dismiss that the expulsion claim was a ruse to cover the "real" object of their Petition – the DAEP referral – and that Plaintiffs "intentionally misrepresented" the expulsion "in an attempt to mislead the Court into believing [John] was owed a level of due process not available to him or to avoid the fact that the Court has no authority to hear a complaint regarding placement in the DAEP." ECF Doc. 13 at p. 36, Defendants' Rule 12(b)(1) and 12(b)(6) Motion to Dismiss Plaintiffs' Original Petition and Application for Temporary Restraining Order and Injunctive Relief.

57.    Given the date of Ms. May's attempt to correct John's discipline record (just 2 days after Plaintiffs argued at length in their Response to the Motion to Dismiss (ECF Doc. 20) that the Discipline Record confirmed Defendants had expelled John, and immediately after counsel for Plaintiffs raised the same issue in an informal scheduling conference with this Court attended by all counsel and Defendant Arnett), it is apparent Defendants finally acknowledged they had expelled John only after their "intentional misrepresentation" argument was itself exposed as intentional misrepresentation.

58.    *To be clear: Defendants expelled John and, to avoid a restraining order, repeatedly said they did not. Plaintiffs gave Defendants proof of the expulsion. Again, Defendants repeatedly said they did not. Plaintiffs then argued before this Court that Defendants had expelled John, and Defendants denied it yet again. Each of those denials accompanied a second, false claim that Plaintiffs were misrepresenting or misleading the Court, and each denial was a lie, subverting the proper administration of justice.*

59.    Mistakes happen, but not like this. Like the Apostle Peter, Defendants denied the obvious. Peter, at least, had the good sense to stop at three times.

60.    Regardless of how the Defendants now want to spin what they did to John, one unassailable fact remains: because of the discipline imposed and approved by the Defendants, John cannot return to HCMS, despite having been approved to attend HCMS for the 2024-2025 school year. Whether one calls it expulsion, revocation, reconsideration or anything else, the impact on John is the same.

61.    The TREx report containing and transmitting John's academic and disciplinary record from EISD to AISD arrived at AISD August 23rd. That report advised AISD that John had been expelled from EISD.

62.    Because of compressed timing so close to the beginning of the academic year, and before Plaintiffs were aware of the extent to which appealing the District's decision to rid itself of John would be futile, Plaintiffs timely gave notice of their intent to appeal to a second level and filed this lawsuit.

**H.    Failure to Comply with State Law and EISD Policies**

63.    Defendants Winter, Dewrell, Meek and Arnett failed to follow established state law and EISD policies during the investigation and imposition of suspension and then expulsion[9] on John by:

A.    Failing to base his expulsion on an offense that carries as a potential penalty either mandatory or discretionary expulsion;

B.    Failing to advise John or his parents that he was even facing discipline, let alone expulsion;

C.    Failing to provide John with a hearing at which he was afforded appropriate due process, with notice and some opportunity for a hearing as required by the federal constitution and EISD policy, to which his parents were invited, in writing, to attend;

D.    Failing to provide a statement of the specific charges and grounds that, if proven, would justify expulsion;

E.    Failing to provide the names of witnesses against him, and an oral or written report on the facts to which each witness would testify;

F.    Failing to provide an opportunity for representation by an adult who could provide guidance to him;

---

[9] In placing John in DAEP, Defendants also violated their own rules and regulations, including, without limitation, the obligation to "schedule a conference with the administrator, the student's parent/guardian, and the student. At the conference, the administrator shall inform the student, orally or in writing, of the reasons for the removal, shall give the student an explanation of the basis for the proposed DAEP placement, and give the student an opportunity to respond to the reasons for the removal."

G. Failing to provide appropriate consideration of various factors required by EISD and HCMS policies, including at least the following factors: whether he acted in self-defense, the intent or lack of intent at the time he engaged in the conduct, and his disciplinary history;

H. Failing to advise John of his right to appeal to the board of trustees, and that the decision of the board could be appealed by a trial *de novo* to a district court in Travis County, Texas;

I. Failure to establish a period of expulsion and failure to give notice of the reason for inconsistency in the length of expulsion from the SCOC;

J. Other acts and omissions described elsewhere in this Amended Complaint; and

K. In a transparent effort to intimidate the Doe family into accepting the punishment, directed a school safety officer to contact Jane and threaten multiple times that John could go to jail.

64.    In a letter dated May 31, 2024 from Assistant Superintendent Jeremy Trimble, EISD, notified the Doe family John could not return to HCMS, despite his previous acceptance of John as a transfer student for the 2024–25 school year. EISD sent this letter without legal authority.

65.    Thereafter, Defendants were never consistent in how they explained John's expulsion, alternately referring to the discipline as a denial of John's transfer[10] (even though his

---

[10] "Based on John Doe's behavior the last week of school, including but not limited to, the assault causing bodily injury, John Doe's interdistrict transfer to EISD for the 2024-2025 school year *was denied*." ECF Doc. 1 at p. 3 of 6, Notice of Removal.

transfer for the 2024-2025 school year had already been approved) or placement in DAEP[11], before deciding to call the discipline a revocation of John's transfer to HCMS.

66.     On July 10th, prior to any appeal hearing James Doe wrote to Defendant Arnett, asking to meet to discuss, calmly, alternatives to a situation that had become out of control. Superintendent Arnett refused the request James made, writing in response that, "I respect the extensive conversations Mr. Stick had with our General Counsel on John's behalf. Nonetheless, my greater responsibility is to support the judicious decisions our principals must make to enforce the safe environment for all students. **Therefore, it would not be productive for me to meet with you.**"[12]

67.     Defendant Arnett, as the Eanes ISD's Superintendent, supervises every EISD employee who could possibly sit as an appeals officer to hear John Doe's appeal of the discipline unfairly imposed by Defendants. Not only did Defendant Arnett refuse to meet with James Doe or the Doe family, he disclosed he had already decided – without the benefit of any information from the Does and without the benefit of any appeal information -- to support the "judicious decision"

---

[11] "The discipline imposed by the campus administration was placement in a DAEP, which is distinct from expulsion." ECF Doc. 13 at p. 36, Defendants' Rule 12(b)(1) and 12(b)(6) Motion to Dismiss Plaintiffs' Original Petition and Application for Temporary Restraining Order and Injunctive Relief.

[12] As the leader of a large organization, Dr. Arnett's commitment to supporting his subordinates' "judicious decisions" is admirable and to be commended – were there a judicious decision to support. Unfortunately, Dr. Arnett's role as the EISD Board of Trustees' disciplinary designee is not to support his subordinates. Instead, his role is to trust the process and trust the decision-makers' ability to investigate, weigh, mitigate and impose discipline when required. Then, his role is to appoint an appeal officer to hear an appeal, as appropriate. And if an appeal is taken from that first appeal, *then* his role is to engage, directly or indirectly, as a second level appeal. But in this case, Dr. Arnett was sitting with the first line decision-makers, advised of the "facts" and their decisions. Neither he nor anybody who reported to him (which would include all EISD employees) could serve as an unbiased appellate officer because he -- the ultimate decision-maker -- had already reached a decision.

his subordinates had made "to enforce the safe environment for all students." In other words, the superintendent of the school district – the final executive authority in disciplinary matters – already had received information about this matter, already had decided he would not exercise his authority to intervene regardless of what additional information he could learn, and had communicated those facts to his subordinates. Further, Defendant Arnett failed to disclose in his response to James that John Doe had been expelled, even though as Superintendent he was required to submit to the TEA the discipline report showing the expulsion (the first during his tenure as Superintendent) by June 20, 2024.

68.     Similarly, despite subsequently reviewing and certifying the accuracy of the PEIMS data EISD submitted to TEA – the data that disclosed John Doe had been sentenced to a full academic quarter in DAEP and expelled from EISD (thereby reminding him in the event he had previously forgotten his school district had expelled its first student in years) -- Defendant Arnett continued to take no steps to review the factual basis for the district's actions, nor did he take any action even to advise James or Jane Doe that the subordinates at EISD whom he supervised and supported had expelled their son.

69.     As Superintendent, Arnett enjoys wide latitude on disciplinary matters. Upon information and belief, the Board defers to the recommended decisions and actions he and his staff offer, and neither his proposed disciplinary policies nor his actual decisions on matters of discipline have ever been rejected or reversed by the board of trustees.

### I.     Harm to Plaintiffs

70.     Plaintiffs must comply with the EISD discipline plan while an appeal is pending, and there is no certainty that appeal will be successful. That is particularly true in this circumstance, given Defendant Superintendent Arnett's unhesitating but uninformed support for the DAEP

commitment and expulsion ordered by Defendants Winter and Dewrell. The harm John will suffer, apart from EISD's insults to the rights he is guaranteed by the U.S. Constitution, started to accrue on Wednesday, August 14th, when he was prohibited by reason of his expulsion from attending the first day of school at HCMS. The harm has continue to accrue unabated since that time and will continue to accrue unless the Defendants acknowledge their numerous violations of the United States Constitution and readmit John to HCMS.

71.     All of this harm has, and will continue to, accrue because Defendants rushed to complete a deficient investigation, destroyed evidence, refused to acknowledge any possibility they erred, trampled John's Constitutional rights, and used the fatally flawed, biased investigation to support a decision they had made within an hour of the incident happening.

72.     Unknown to Jane and James Doe during the meeting on May 31st, Defendant EISD Superintendent Arnett was already fully aware of the HCMS administrators' investigative conclusions and the punishment they would impose.

73.     Jane and James never had the opportunity to present a "case" to Defendant Winter or to Dewrell. Neither Defendant Winter nor Dewrell had ever advised the Doe family that John was at risk of severe discipline and/or expulsion, let alone that EISD had already made exactly that decision. Even if the Does had the opportunity to defend their son, and even if John Doe had the opportunity to defend himself (neither of which occurred), the facts demonstrate any such opportunity would have been illusory.

74.     At the conclusion of the meeting on May 31st, Defendants Winter and Dewrell also advised Jane and James Doe that John would suffer other consequences because of the discipline he was about to face. In addition to their decision that he should be referred to a full academic

quarter's confinement in a disciplinary alternative education program ("DAEP"), he would in all likelihood lose his ability to transfer into EISD from AISD.

75.    Superintendent Arnett's involvement in the investigation and decision to discipline John was entirely inappropriate because under EISD policies, the Superintendent or his designee is required to consider the merits of an appeal filed by an aggrieved student. Arnett's involvement in or approval of the decision to punish John assured any administrative appeal by the Plaintiffs would be futile.

76.    Despite promising a "thorough" investigation, the Defendants, each of them, conducted or accepted the conclusions of an investigation that was rushed, unbalanced, incomplete, highly discriminatory against John, performed in violation of nearly every recognized investigative technique, and had an outcome preordained. At no time during the "thorough" investigation did any defendant provide John with an opportunity to present his explanation of what occurred during the week of May 20. Yet during that investigation, as Jane and James continued to send emails to Defendant Winter in unsuccessful efforts to have a direct, in-person discussion, M.B. and his parents had a surfeit of opportunity to get M.B.'s version of what occurred in front of the Defendant decision-makers, including the day after the incident, when they appeared uninvited at HCMS to demand the school take action against John.

77.    Neither did any defendant attempt to hear from other witnesses who supported John's version of the events that occurred during the week of May 20, culminating in the incident of May 23rd. The HCMS investigation, such as it was, was so untrained, so incomplete, and so inept that it embarrasses use of the word. Conducted primarily by Defendant Winter, there are no contemporaneous notes from interviews she conducted of any witness. There are no recorded interviews. There are no post–interview summaries. There are no signed witness statements. There

is no investigative report. There are no indications of what interviews Defendant Winter conducted. There is no list of witnesses. There is no list of student-made video recordings or audio recordings, nor is there any description of what those videos contained. In fact, most student video evidence no longer exists because Defendant Winter, with the approval of or ratification by Defendants Arnett and Dewrell, ordered students to destroy their videos immediately after the event and decided it was unimportant to retain copies. There is no information about events that contributed to causing the conflict to occur. There is no discussion of the assault M.B. committed against John the day before.[13] There is no memorialization of information favorable to John – not a single mention.[14]

---

[13] Tellingly, however, Defendant Winter did refer to the Wednesday AM altercation between John and M.B. in John's permanent school discipline file. Her entry reads, "Student [John] pushed another student 3 times. A fight of pushing and punching between the two students continued for approximately 15 seconds." Defendant Winter's description of the altercation between John and M. B. Wednesday morning is so inaccurate and so one-sided, it defies explanation – other than intentional misrepresentation. That "fight" (according to Defendant Winter, not an "assault") resulted in John suffering broken glasses, bruising, and a cut on his nose after M. B. struck him five times in the face. John never hit back during the "fight of pushing and punching between the two students" Winter described.

[14] For any mandatory or discretionary disciplinary consequence, including DAEP placement or expulsion, the SCOC requires the District to consider various mitigating factors, including self-defense, the student's intent or lack of intent at the time of the conduct, and the student's disciplinary history. The SCOC also mandates that "using their professional judgment, employees shall also consider a variety of factors when administering all disciplinary consequences and determining the duration of the consequence, including, but not limited to: the degree of severity and risk of danger; the effective the misconduct; frequency of the misconduct; the agent grade level of the student; and the students demeanor. Exhibit A, p. 10. Other than a cursory, conclusory statement that Defendant Winter considered mitigating factors, there is no evidence or indication defendants, any of them, gave any thought to these mandatory considerations.

**J.**    **The Sham Appeal Hearing**

78.    On July 29, 2024, at the request of the Plaintiffs, the Defendants conducted an appeal hearing (the "Level 1 Appeal"). Even before the Level 1 Appeal hearing started, Defendants confirmed that due process would be ignored. It did so by informing the Plaintiffs:

A.    The parties could not ask each other any questions, thereby precluding the Plaintiffs from cross-examining any Defendant or any person associated with EIDS or HCMS.

B.    Precluding any "outside" witnesses from attending the hearing, thereby precluding the Plaintiffs from calling any witness that supported John's version of the events involved in the incident leading to his discipline or cross-examining any witness who provided information relied on by the Defendants to support the discipline they imposed on John.

79.    Defendant Meek, acting individually and in her official capacity as presider of the Level 1 Appeal hearing enforced each of the above-described rules precluding cross-examination and precluding "outside" witnesses from attending the hearing.

80.    Defendant Meek, acting individually and in her official capacity, with the approval of all other Defendants then further violated John's due process rights by:

A.    Conducting an ex parte investigation after the conclusion of the Level 1 Appeal hearing, without informing the Plaintiffs that she would be conferring with Defendants Winter and Dewrell to gather additional information and without providing Plaintiffs with an opportunity to participate in this phase of her ongoing investigation. Meek relied on her ex parte interview with Winter and Dewrell in reaching her decision to confirm the discipline imposed on John.

B.    Allowing Amber King, the opposing counsel who represented the Defendants at the Level 1 Appeal, to write part, if not all, of the Level 1 Appeal decision, or at a

minimum, sharing the Level 1 Appeal decision with Ms. King for her review and approval before providing it to the Plaintiffs.

## IV.    CLAIMS

### CLAIM I
### Violation of 42 U.S.C §1983 (Deprivation of Property Rights Guaranteed by the Fourteenth Amendment to the United States Constitution) - Expulsion

81.    Plaintiffs reallege and incorporate herein by reference each allegation contained in the preceding paragraphs of this Amended Complaint.

82.    As a student in a public school system, John has a property interest in a public education that is protected by the Due Process Clause of the Fourteenth Amendment to the United States Constitution.

83.    Defendants Arnett, Winter, and Dewrell individually and collectively, acting in their individual capacities and in their official capacities as employees, administrators, representatives or agents of EISD or HCMS, or both, violated John's entitlement to due process by (1) immediately suspending John from school without conducting even the outline of a legitimate investigation, (2) ordering his referral to DAEP without affording John an opportunity to present his side of the incident and otherwise failing to comply with known safeguards intended to protect due process, and (3) expelling John from HCMS, all without providing him even the rudimentary elements of due process (collectively, the "Disciplinary Measures").

84.    Defendants Arnett, Winter, and Dewrell, individually and collectively, acting in their individual capacities, and in their official capacities as employees, administrators, representatives or agents of EISD or HCMS, or both, violated John's entitlement to due process by failing to notify him and/or his parents that he was facing expulsion from EISD and HCMS,

processing his exclusion from EISD as a placement in a disciplinary alternative education program with expulsion, failing to advise John or his parents that EISD had coded his exclusion from the school district as an expulsion, falsely claiming to James and Jane Doe that the school district had merely "revoked" its approval of John's transfer into the school district when Defendants knew they had coded the discipline they imposed on John as a discipline code "03" (representing a 45 school day placement in DAEP along with an expulsion), transferring John's academic and disciplinary records to AISD knowing they contained an "03" designation while concomitantly representing in various filings in the district court of Travis County, Texas and this United States District Court that EISD had not expelled John, and falsely claiming in filings before this Court and the district court of Travis County, Texas that Plaintiffs' claims that Defendants had expelled John were "misleading."

85.     Defendants Arnett, Winter, and Dewrell, individually and collectively, acting in their individual capacities and in their official capacities as employees, administrators, representatives or agents of EISD or HCMS, or both,, violated John's entitlement to due process by (among other means as described in the preceding paragraphs) destroying exculpatory and/or potentially exculpatory evidence, failing to conduct a reasonable investigation into the incident which led to them expelling John from EISD, failing to provide John and/or his parents with proper notice of the allegations against him and/or an opportunity to refute those allegations, a hearing with constitutional due process, proper appeal information and/or admonitions, and imposing expulsion from the school district for an alleged offense, which, even if it were true, is not behavior for which either mandatory or discretionary expulsion is possible under state law and EISD policy.

86.     By the conduct described in this Amended Complaint, the Defendants Arnett, Winter, and Dewrell, individually and collectively, violated John's property interest in a public

education, protected by the Fourteenth Amendment of the United States Constitution – a right that was clear and established, and had been for decades, at the time of the wrongful conduct described throughout this Amended Complaint.

87.    Defendant Meek also violated John's property right protected by the Fourteenth Amendment by conducting the sham Level 1 Appeal hearing described above.

88.    Defendant Meek violated John's property right by severely restricting the scope and manner in which the Level 1 Appeal hearing was conducted, as alleged more particularly above.

89.    John's property right in his education was clear when Meek's violations occurred.

90.    The individual Defendants knew or reasonably should have known the action they took within their sphere of official responsibility violated John's constitutional rights. The Individual Defendants, each and all of them, knew or reasonably should have known they had expelled John from EISD and, despite that knowledge and their awareness of the extreme adversity a record of expulsion has on a student so affected, unlawfully expelled him nevertheless or, in the alternative, covered up the expulsion or failed to take steps to correct it, all with malicious intent to cause John to suffer a loss of his constitutional rights, and/or cause him emotional distress.

91.    John's constitutionally-recognized property interest in a free, appropriate, public education follows him to whatever school district he lawfully attends. Transfer students accepted by a school district for the upcoming academic year must be treated as in-district, resident students for all purposes during the period for which they are accepted as transfers.

92.    Suspension and expulsion of a student are serious actions, affecting not just that student's academic, emotional and social well-being, but also his reputation and right to an education. Because of the serious nature and effect of an expulsion, state law and the United States Constitution guarantee students that a school district and its representatives will take certain steps

to ensure that any suspension or expulsion proceeding meets constitutional and legislatively-mandated standards of fairness, notice and due process.

93.     Among the statutorily-imposed requirements are a conference including a school administrator, the parent/guardian and the student; notice to the student of the allegations and an opportunity to respond; representation by an adult at a hearing; and due process protections consistent with the Constitution.

94.     Defendants failed to provide notice to Plaintiffs that the Defendants had begun conducting an investigation that could (and would) end in John's expulsion, failed to invite John to a conference, failed to offer John a hearing, failed to inform John he had a right to have an adult advise him or represent him, failed to provide John with witness statements, failed to advise John properly of his right to appeal, and affirmatively misled John and his parents by minimizing the seriousness and nature of the disciplinary action EISD intended to, and did, take against him. Defendants then compounded these assaults on John's rights by conducting the Level 1 Appeal hearing in a manner that further violated his due process rights, as noted above.

95.     Defendants, each and all of them, knew the outcome of HCMS' investigation of the May 23, 2024 after school altercation between John and M.B. was to remove John from HCMS, and each defendant knew John's discipline record reflected discipline code "03," representing a placement in a disciplinary alternative education program and an expulsion.

96.     *At a minimum*, the Due Process Clause required the Defendants to provide John with notice of any alleged wrongful conduct and an opportunity to be heard. Defendants not only failed to comply with this most basic requirement of due process, but further violated John's right to due process and his constitutionally protected property right in a public education by failing to:

a.   Conduct any meaningful investigation into whether the discipline was warranted, in violation of federal and state constitutional protections, and in violation of published, EISD policies, and procedure guarantees;

b.   Prepare and maintain records of interviews and other investigative actions, such as contemporaneous interview notes, interview summaries, an investigative report, a list of audio and/or visual recordings, and records relating to aggravating/mitigating factors;

c.   Preserve evidence, relevant or potentially relevant to Jon's defense coming, including, but not limited to, ordering the destruction of audio/visual recordings, failing to provide written, contemporaneous interview notes and/or summaries of interviews to John;

d.   Interview witnesses who could provide exculpatory information, the identities of whom John provided to Defendant Winter through his parents;

e.   Provide the written, contemporaneous interview notes and/or summaries of interviews Defendant Winter and Defendant Dewrell conducted that were exculpatory or that conflicted in some way with the school – approved version of what happened;

f.   Provide John with an opportunity to examine the evidence, if any, that the Defendants had collected to support the Disciplinary Measures;

g.   Provide John with an opportunity to present evidence that would establish the arbitrary nature of the Disciplinary Measures and establish that the Disciplinary Measures were not appropriate under all of the circumstances; the failure to provide John with an opportunity to be heard was particularly egregious in that Defendants allowed M.B. to be heard, thereby assuring that the Disciplinary Measures would be imposed on a record that was woefully inadequate and unequivocally biased;

h.   Examine or consider John's excellent record of achievement at HCMS and the lack of any prior events warranting discipline, or indeed, examine or consider any factor mitigating against the Disciplinary Measures;

i.   Protect John from the willful misconduct of M.B., whom Defendants knew had a history of threats, violence toward others, racist taunting, disrespect for students and teachers, and other forms of misconduct;

j.   Supervise M.B., thereby enabling his ongoing wrongful conduct, including M.B.'s role in instigating the misconduct that occurred during the week of May 20, 2024;

each of these enumerated acts being in violation of federal and state constitutional protections, and in violation of published EISD policies and procedure guarantees.

97.    Defendants expelled John without following their own procedures for notice, hearing, permitting John to have an adult representative, considering mitigating factors, appeal and assessing a term of expulsion, thereby denying him due process and equal protection of law, and breaching the contract EISD has with all students who must agree to abide by the District's policies.

98.    Further, Defendants expelled John impermissibly; the offense they used as a basis for his expulsion is not an expellable offense, either under the District's mandatory or discretionary authority.

99.    In imposing the Disciplinary Measures contrary to John's due process rights, Defendants violated the provisions of 42 U.S.C. §1983, which prohibits them from subjecting John "to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws" and did so acting as officials on behalf of the school district, as well as acting as individuals with malicious intent to cause John a loss of his constitutional rights and/or emotional distress.

100.    As a direct and proximate cause of the Defendants' deprivation of John's property right to a public education and his right to due process, John has suffered, and will continue to suffer, damage to his reputation, honor, and integrity; has seen his academic performance decline; has suffered physical injuries and damages; will suffer social disadvantage; will be jeopardized in future efforts to obtain educational, employment and other opportunities; and was otherwise harmed.

101.    James and Jane have incurred damages in the form (among others) of medical care for John arising from the events described herein, lost earnings from the time it is taking them to

assert and defend John's constitutional and legal rights, legal fees, and will likely incur additional damages for each of those areas and others in the future.

102.    The wrongful conduct of the individual Defendants reflected a reckless or callous indifference to John's federally protected property rights. As a result, Plaintiffs are entitled to an award of punitive damages.

## CLAIM II
### Violation of 42 U.S.C §1983 (Deprivation of Property Rights Guaranteed by the Fourteenth Amendment to the United States Constitution) – Revocation of Transfer Status

103.    Plaintiffs reallege and incorporate herein by reference each allegation contained in the preceding paragraphs of this Amended Complaint.

104.    As a student in a public school system, John has a property interest in a public education that is protected by the Due Process Clause of the Fourteenth Amendment to the United States Constitution.

105.    Defendants, individually and collectively, acting as individuals and in their official capacities as employees, administrators, representatives or agents of EISD or HCMS, or both, violated John's entitlement to due process by "revoking" EISD's acceptance of John as a transfer student at HCMS (included in the "Disciplinary Measures").

106.    Defendants, individually and collectively, acting in their individual capacities and in their official capacities as employees, administrators, representatives or agents of EISD or HCMS, or both, violated John'sproperty interest in attending HCMS for 2024-25 and his right to due process of law before a property interest lawfully can be taken from him.

107.    Defendants claimed to have "revoked" their acceptance of John as a transfer student, after formally accepting him in writing for the 2024-25 school year.

108.    Once a school district accepts an out of district transfer student, it does not have authority to revoke its acceptance of that transfer student. The TEA has long advised school districts they do not have statutory power to revoke transfer acceptance once they have accepted a student and recent efforts to amend the transfer statutes to afford districts that authority have failed.

109.    Defendants knew they did not have authority to expel John, and they knew they did not have authority to revoke his transfer acceptance. Like the expulsion, Defendants tried to revoke John's transfer acceptance anyway, eventually going so far as to use this patently unlawful act as a defense to the expulsion (expulsion, apparently, being a more difficult unlawful activity to disguise or defend). In "revoking" John's transfer acceptance, Defendants acted knowingly and without legal authority to deceive, disguise and hide more egregious, unlawful conduct, to John's detriment and with malicious intent to cause John to suffer a loss of his constitutional rights, and/or cause him emotional distress.

110.    Defendants, individually and collectively, acting in their individual capacities, and in their official capacities as employees, administrators, representatives or agents of EISD or HCMS, or both, violated John's entitlement to due process by (among other means as described in the preceding paragraphs) claiming to have "revoked" John's transfer status and refusing to accept him as a student when they knew or should have known they could not "revoke" his acceptance because they had no legal authority to do so, because TEA instructions were that once accepted, no such revocation of a student's right to attend school in the accepting district could occur, and because recent history in the Texas Legislature demonstrated the Legislature acknowledged school districts did not have authority to consider a transfer more frequently than annually and the Legislature declined to give school districts that authority.

111.    By the conduct described in this Amended Complaint, the Defendants, individually and collectively, violated John's property interest in a public education, protected by the Fourteenth Amendment of the United States Constitution – a right that was clear and established at the time of the wrongful conduct described throughout this Amended Complaint.

112.    As a direct and proximate cause of the Defendants' deprivation of John's property right to a public education and his right to due process, John has suffered, and will continue to suffer, damage to his reputation, honor, and integrity; has seen his academic performance decline; has suffered physical injuries and damages; will suffer social disadvantage; will be jeopardized in future efforts to obtain educational, employment and other opportunities; and was otherwise harmed

113.    James and Jane have incurred damages in the form (among others) of medical care for John arising from the events described herein, lost earnings from the time it is taking them to assert and defend John's constitutional and legal rights, legal fees, and will likely incur additional damages for each of those areas and others in the future.

114.    The wrongful conduct of the individual Defendants reflected a reckless or callous indifference to John's federally protected property rights. As a result, Plaintiffs are entitled to an award of punitive damages.

## CLAIM III
### Violation of 42 U.S.C §1983 (Deprivation of Property Rights Guaranteed by the Fourteenth Amendment to the United States Constitution) – False Statements

115.    Plaintiffs reallege and incorporate herein by reference each allegation contained in the preceding paragraphs of this Amended Complaint.

116.    As a student in a public school system, John has a property interest in a public education that is protected by the Due Process Clause of the Fourteenth Amendment to the United States Constitution.

117.    Defendants, individually and collectively, acting as individuals and in their official capacities as employees, administrators, representatives or agents of EISD or HCMS, or both, violated John's entitlement to due process by imposing the Disciplinary Measures.

118.    Defendants, individually and collectively, acting in their individual capacities and in their official capacities as employees, administrators, representatives or agents of EISD or HCMS, or both, violated John'sproperty interest in John attending HCMS in EISD for 2024-25, and the Plaintiffs' right to due process of law before a property interest lawfully can be taken from them, by propounding Defendant May's claim that she discovered the "03" disciplinary code on John's school record while assisting in preparing a TREx package transferring John's records from EISD to AISD -- a blatant falsehood designed to provide a superficially plausible (though deceptive) explanation for EISD finally acknowledging Defendants had, in fact, expelled John, all with malicious intent to cause John to suffer a loss of his constitutional rights, and/or cause him emotional distress.

119.    Defendant May, acting in her individual capacity, and in her official capacity as an employee, administrator, representative or agent of EISD, knowingly and falsely claimed EISD's expulsion of John was an error, which was a falsehood designed to mislead Plaintiffs, further Defendants' plan and scheme to remove John from EISD after formally accepting him in writing as a transfer student for the 2024–25 school year, all with malicious intent to cause John to suffer a loss of his constitutional rights, and/or cause him emotional distress.

120.    By the conduct described in this Amended Complaint, the Defendants, individually and collectively, violated John's property interest in a public education, protected by the Fourteenth Amendment of the United States Constitution – a right that was clear and established at the time of the wrongful conduct described throughout this Amended Complaint.

121.    As a direct and proximate cause of the Defendants' deprivation of John's property right to a public education and his right to due process, John has suffered, and will continue to suffer, damage to his reputation, honor, and integrity; has seen his academic performance decline; has suffered physical injuries and damages; will suffer social disadvantage; will be jeopardized in future efforts to obtain educational, employment and other opportunities; and was otherwise harmed.

122.    James and Jane have incurred damages in the form (among others) of medical care for John arising from the events described herein, lost earnings from the time it is taking them to assert and defend John's constitutional and legal rights, legal fees, and will likely incur additional damages for each of those areas and others in the future.

123.    The wrongful conduct of the individual Defendants reflected a reckless or callous indifference to John's federally protected property rights. As a result, Plaintiffs are entitled to an award of punitive damages.

## CLAIM IV
### Violation of 42 U.S.C §1983 (Deprivation of Liberty Interests Guaranteed by the Fourteenth Amendment to the United States Constitution)

124.    Plaintiffs reallege and incorporate herein by reference each allegation contained in the preceding paragraphs of this Complaint.

125.    Separately from the protected right to a public education, the Due Process Clause of the Fourteenth Amendment to the United States Constitution also proscribes the arbitrary deprivation of liberty.

126.    Like their deprivation of John's property right in a public education and their resulting violation of the Due Process Clause, Defendants deprived John of his right to liberty, and thereby violated the Due Process Clause through the conduct alleged in Claim I, which is incorporated herein by reference.

127.    By imposing the Disciplinary Measures contrary to John's right to liberty protected under the Due Process Clause, Defendants, acting individually and in their official capacities as employees, administrators, representatives or agents of EISD or HCMS, or both, violated the provisions of 42 U.S.C. § 1983.

128.    By imposing the Disciplinary Measures contrary to John's right to liberty protected under the due process clause, Defendants, acting in their individual capacities, knowingly violated the law either by expelling John or by "revoking" his transfer status, lying to James and Jane Doe about John's disciplinary status, misrepresenting facts to this Court, accusing Plaintiffs of misrepresentation before this Court, and by failing to provide even the most basic compliance with statutory and EISD-adopted policies relating to the conduct and minimum standards of disciplinary investigations, all of which they did as individuals without legal authority and with the malicious intent to cause John to suffer a loss of their constitutional rights, and r to cause John and his parents emotional distress.

129.    By the conduct described in this Amended Complaint, the Defendants, individually and collectively, violated John's liberty interest protected by the Fourteenth Amendment of the

United States Constitution – a right that was clear and established at the time of the wrongful conduct described throughout this Amended Complaint.

130.    As a direct and proximate cause of the Defendants' deprivation of John's right to liberty and his entitlement to due process, John has suffered, and will continue to suffer, damage to his reputation, honor, and integrity; has seen his academic performance decline; has suffered physical injuries and damages; will suffer social disadvantage; will be jeopardized in future efforts to obtain educational, employment and other opportunities; and was otherwise harmed.

131.    James and Jane have incurred damages in the form of medical care for John arising from the events described herein, lost earnings from the time it is taking them to assert and defend John's constitutional and legal rights, legal fees, and will likely incur additional damages for each of those areas and others in the future.

132.    The wrongful conduct of the individual Defendants reflected a reckless or callous indifference to John's federally protected liberty right. As a result, Plaintiffs are entitled to an award of punitive damages.

### CLAIM V
**Violation of 42 U.S.C §1983 (Deprivation of Due Process and Liberty Interest in Bodily Safety) - Failure to Supervise M.B. and Protect Plaintiff**

133.    Plaintiffs reallege and incorporate herein by reference each allegation contained in the preceding paragraphs of this Complaint.

134.    The Defendants, who, at all times material to this Claim, were acting individually and in their official capacities as school administrators, agents or representatives, owed students in their schools an obligation to protect against foreseeable harm.

135.    John has a substantive due process right to bodily integrity.

136.    M.B. repeatedly engaged in conduct that exhibited serious behavioral problems (see, e.g., paras. 14-16 regarding M.B.'s history of inappropriate conduct, including physical violence toward other students) in both HCMS and a school in California. This history predated the events of the week of May 20, 2024 described above. For example, an incident that occurred in November 2023, resulted in M.B.'s victim sustaining serious injuries that required medical attention in a hospital emergency room.

137.    Upon information and belief, Plantiffs anticipate discovery will reveal the Defendants were well aware of M.B.'s behavioral issues, including his history of violence to other students, before the events that occurred during the week of May 20, 2024.

138.    The Defendants' knowledge of M.B.'s behavior problems, including his propensity for causing bodily harm, made the incidents during the week of May 20, 2024 (described above; see, e.g., par. 11-27) foreseeable and alerted the Defendants to the real possibility that M.B.'s physical violence would continue if the Defendants did not take measures to protect students and carefully monitor M.B.'s activities.

139.    Notwithstanding their knowledge that M.B. had serious behavioral problems, the Defendants rarely, if ever, disciplined M.B. (or disciplined him with negligible sanctions) and turned a blind eye to the harm he was causing, thereby increasing the risk that he would continue to cause harm.

140.    Under the circumstances described above, the Defendants had an obligation to protect students, specifically including John, from the ongoing threat of harm caused by M.B. Defendants had the accompanying obligation to closely monitor M.B.'s conduct to minimize the continued risk that M.B. posed. Defendants failed to meet these obligations through their deliberate indifference to the risk of harm that M.B. presented.

141.     By failing to protect John and to monitor M.B.'s conduct, Defendants exposed students, including John, to the risks of violence that M.B. presented and violated John's substantive due process right to bodily integrity in contravention of the Fourteenth Amendment of the United States Constitution.

142.     The bodily injury and damages sustained by John when M.B. accosted him during the week of May 20, 2024, were proximately caused by Defendants' deliberate indifference to the risks presented by M.B.'s conduct and their violation of John's due process right to bodily integrity.

143.     By the conduct described in this Amended Complaint, the Defendants, individually and collectively, violated John's liberty interest in bodily safety, protected by the Fourteenth Amendment of the United States Constitution – a right that was clear and established at the time of the wrongful conduct described throughout this Amended Complaint.

144.     As a direct and proximate result of Defendants' denial of John's right to due process, John has suffered, and will continue to suffer, damage to his reputation, honor, and integrity; has seen his academic performance decline; has suffered physical injuries and damages; will suffer social disadvantage; will be jeopardized in future efforts to obtain educational, employment and other opportunities; and was otherwise harmed.

145.     James and Jane have incurred damages in the form of medical care for John arising from the events described herein, lost earnings from the time it is taking them to assert and defend John's constitutional and legal rights, legal fees, and will likely incur additional damages for each of those areas and others in the future.

146.     The wrongful conduct of the individual Defendants reflected a reckless or callous indifference to John's federally protected liberty right. As a result, Plaintiffs are entitled to an award of punitive damages.

## CLAIM VI
## Violation of 42 U.S.C §1983 (Denial of Equal Protection Under The Fourteenth Amendment To The United States Constitution) –Disparate Treatment

147.    Plaintiffs reallege and incorporate herein by reference all prior allegations contained in this Complaint.

148.    The Fourteenth Amendment to the United States Constitution prohibits states from "deny[ing] to any person within its jurisdiction the equal protection of the laws." To comply with the Equal Protection Clause, a governing body must treat an individual in the same manner as others who are similarly situated.

149.    The Defendants have a history of either excusing M.B.'s conduct when it warranted discipline or providing discipline that ignored the severity of his conduct. For example, M.B. was not expelled from HCMS following the November 2023 incident described above. Nor was he expelled, suspended or placed in DAEP for his involvement in incidents that occurred during the week of May 20, 2024. Upon information and belief, M.B. suffered no disciplinary consequences whatsoever for any of his actions.

150.    By the Defendants' expulsion and then later their attempt to revoke John's transfer rights, the Defendants have expelled John from HCMS and EISD, despite John's record of scholastic achievement, his lack of any disciplinary history, and his recognition by HCMS that John embodies the values of HCMS and EISD.

151.    By imposing the Disciplinary Measures on John for his involvement in the incident on May 23, 2024, but not M.B. despite his history of wrongful conduct (which includes violence), the Defendants, acting individually and additionally and/or alternatively, in their official capacities as employees, administrators, representatives or agents of EISD or HCMS, or both, have treated

John and M.B. disparately. The imbalanced punishment meted out by Defendants deprives John of his right to equal protection, as contemplated by the Fourteenth Amendment.

152.    By imposing the disciplinary measures on John, but not M.B., contrary to John's right to equal protection under the Fourteenth Amendment, Defendants, acting in their official capacities as employees, administrators, representatives or agents of EISD or HCMS, or both, violated the provisions of 42 U.S.C. §1983.

153.    By the conduct described in this Amended Complaint, the Defendants, individually and collectively, violated John's right to equal protection, protected by the Fourteenth Amendment of the United States Constitution – a right that was clear and established at the time of the wrongful conduct described throughout this Amended Complaint.

154.    As a direct and proximate cause of the Defendants' deprivation of John's right to equal protection, John has suffered, and will continue to suffer, damage to his reputation, honor, and integrity; has seen his academic performance decline; has suffered physical injuries and damages; will suffer social disadvantage; will be jeopardized in future efforts to obtain educational, employment and other opportunities; and was otherwise harmed.James and Jane have incurred damages in the form of medical care for John arising from the events described herein, lost earnings from the time it is taking them to assert and defend John's constitutional and legal rights, legal fees, and will likely incur additional damages for each of those areas, and others, in the future.

155.    The wrongful conduct of the individual Defendants reflected a reckless or callous indifference to John's federally protected liberty right. As a result, Plaintiffs are entitled to an award of punitive damages.

## CLAIM VII
### Breach of Contract

156.    The Eanes ISD Board of Trustees has adopted policies governing all major aspects of student life within the EISD education delivery system. Among those policies is the Student Code of Conduct. The SCOC sets out behavioral expectations EISD has of students, and it also sets out the procedures the District will follow should it need to enforce its policies and/or impose discipline on a student.

157.    By conditioning the District's acceptance of John as an inter-district transfer student on John's agreement to comply with the District's policies, EISD made the those policies – including the SCOC – a valid and enforceable agreement between it and Plaintiffs. More specifically, the Eanes ISD Transfer Policy contains the following provision:

> A transfer student shall be notified in the written transfer agreement that he or she must follow all rules and regulations of the District. Violation of the terms of the agreement may result in a transfer request not being approved the following year.

158.    Defendants expelled John impermissibly; the offense they used as a basis for his expulsion is not an expellable offense, either under the District's mandatory or discretionary authority.

159.    Defendants expelled John without following their own procedures for notice, hearing, permitting a representative, considering mitigating factors, appeal and assessing a term of expulsion, thereby denying him due process and equal protection of law, and breaching the contract EISD has with all students who must agree to abide by the District's policies.

160.    Defendants "revoked" John's previously approved transfer status, contrary to state law and EISD policy, thereby breaching the contract, the school district entered to provide John

an education for the 2024–25 academic school year and treat him as they would any other in district student, including affording him all the rights to a complete and fair investigative process.

161.    Plaintiffs have fully performed their obligations under the EISD policies.

162.    As set forth above, Defendants have breached their duties under the EISD-adopted policies, specifically, but not exclusively or limited to: failing to conduct a proper investigation, ordering the destruction of evidence, failing to interview witnesses, failing to provide meaningful due process, failing to ensure equal application and protection of the law, failing to follow processes and procedures described in and guaranteed by EISD Board of Trustees' adopted policies, and imposing punishment impermissible under the SCOC.

163.    As a result of EISD's breach, Plaintiffs have sustained and will continue to sustain irreparable harm, as well as actual, special, and consequential damages, as described in preceding claims.

164.    Plaintiffs are entitled to and do seek injunctive relief restraining the Eanes Independent School District from further violating their own policies and procedures, as more fully described in this Amended Complaint.

## CLAIM VIII
### Declaratory Relief

165.    Section 37.002 of the Texas Civil Practices and Remedies Code states that the purpose of the Declaratory Judgment Act is remedial. It is to settle and to afford relief from uncertainty and insecurity with respect to rights, status, and other legal relations. It is to be liberally construed and administered. Section 37.004 further states it applies to a person interested under a deed, will, written contract, or other writings constituting a contract or whose rights, status, or other legal relations are affected by a statute, municipal ordinance, contract, or franchise may have

determined any question of construction or validity arising under the instrument, statute, ordinance, contract, or franchise and obtain a declaration of rights, status, or other legal relations thereunder.

166.    Justifiable controversies exist between Plaintiffs and Defendants.

167.    For the foregoing reasons explained above, Plaintiffs seek a judicial declaration that EISD failed to follow state law and its own policies when it investigated this event, imposed discipline on and expelled John.

**V.    APPLICATION FOR
TEMPORARY AND PERMANENT INJUNCTION**

168.    A temporary restraining order or temporary injunction is intended to preserve the status quo. To obtain injunctive relief, an applicant must demonstrate: 1) he is likely to succeed in the lawsuit, (2) irreparable injury, (3) the threatened injury outweighs any damage the injunction might cause the defendant, and (4) the injunction will not disserve the public interest.

169.    Here, Plaintiffs seeks temporary and permanent injunctive relief, enjoining EISD from violating John's constitutional rights by imposing an unduly harsh, disparately impactful sanction that is predicated on a biased, incomplete, amateur and ineffective investigation that is so infected with incompetent techniques and conclusions that it cannot be corrected. Further, they request temporary and permanent injunctions based on their inability ever to secure a fair and impartial decision from EISD, because the final decision maker, the superintendent, was involved in the initial decision-making process and has already indicated (without reviewing any evidence or argument presented in John's favor) that he continues to support the erroneous decision of his subordinates.

170.    It is substantially likely that Plaintiffs will prevail on their claims against EISD and the Defendants.

171.    The requested injunctive relief will promote, and not disserve, the public interest by reversing the harmful results caused by the Defendants' violations of John's Constitutional rights and lessening the chance that other students will be subjected to similar violations in the future. As a direct and proximate result of the Defendants' breach of John's constitutional rights, violation of common law and breach of contract, Plaintiffs have suffered and will continue to suffer imminent injury that will be irreparable and for which no remedy at law exists without the protections of injunctive relief. Specifically, the Defendants have violated Title 42 U.S.C. §1983 as described above and in so doing, have (1) prevented John from obtaining the education they had agreed to provide, (2) placed him in a punitive educational environment where he will be one of the youngest attendees and at risk for learning very little, but being exposed to too much, (3) illegally expelled him from EISD, (4) prevented him from participating in extracurricular activities, such that even if John prevails in his claims quickly, he will still lose being able to play or meaningfully play in the coming football season.

172.    The only adequate, effective, and complete relief to Plaintiffs is to restrain the Defendants from further engaging in certain proscribed activities, as set forth below.

173.    , Plaintiffs seek temporary and permanent injunctions, ordering and immediately restraining the Defendants and their agents, servants, employees, independent contractors, attorneys, representatives, and those persons or entities in active concert or participation with them (collectively, the "EISD Restrained Parties") from, directly or indirectly:

      a.    Imposing any DAEP sanction on John;

      b.    Revoking John's 2024-25 school year transfer into EISD;

c.       Conducting any additional efforts to interview or intimidate any student, parent or employee regarding this matter;

d.       Retaliating in any way against John, Jane or James Doe or other Doe family members;

e.       Entering any adverse coding or descriptions of this event in John's academic or discipline records; and

f.       Considering in any way this lawsuit or the facts underlying it in any future transfer request John makes or his parents make on his behalf.

174.    The requested injunctive relief will not result in any harm to Defendants; rather Defendants will benefit by having an excellent student with a strong educational and outstanding reputation returned to HCMS.

175.    Plaintiffs are willing to post a reasonable bond.

176.    Plaintiffs seek compensatory and incidental costs and expenses, along with court costs and attorneys' fees. Because Defendants recklessly or callously disregarded John's constitutional rights, forced Plaintiffs to court to assert and defend those rights, and then repeatedly lied about their own actions Plaintiffs also seek punitive damages against the Defendants, individually.

177.    Plaintiffs seek recovery of their reasonable and necessary attorneys' fees from the Defendants for violating John's constitutional rights.

## VI.     JURY DEMAND

Plaintiffs request a trial by jury on all issues so triable.

## VII.    PRAYER

Plaintiffs requests they be awarded the injunctive relief sought herein, and upon final trial, be further awarded damages and permanent injunctive relief as requested herein, along with pre-

and post-judgment interest, attorneys' fees, court costs, and all such other and further relief to which it may be justly entitled.

Respectfully submitted:

By:    */s/ Jack Stick* _____

Jack Stick
State Bar No. 00795156
VERISLAW, PLLC
3801 North Capital of Texas Highway
Suite E240-624
Austin, Texas 78746
(512) 710-6000 telephone
(512) 717-7230 fax
jstick@verislaw.net

AND

Michael S. Alfred
State Bar No. 24014416
VERISLAW, PLLC
4843 Colleyville Boulevard
Suite 251-391
Colleyville, Texas 76034
(817) 678-4121 telephone
(512) 717-7230 fax
malfred@verislaw.net

COUNSEL FOR PLAINTIFFS

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on _____, I electronically filed the foregoing document with the clerk of court for the U.S. District Court, Western District of Texas, using the electronic case filing system, which sent a "Notice of Electronic Filing" to all attorneys of record, in accordance with the Federal Rules of Civil Procedure.

*/s/ Jack Stick*  _____
Jack Stick



# Eanes Independent School District

## Student Code of Conduct
## 2023–24 School Year



Approved by the Eanes ISD Board of Trustees on August 8, 2023.

If you have difficulty accessing the information in this document because of disability, please contact the Communication Department at 512-732-9002.

GENERAL OVERVIEW .................................................................................................................. 4

   PURPOSE ................................................................................................................................. 4

   ADDITIONAL RULES ................................................................................................................ 4

   GENERAL STANDARDS OF CONDUCT ..................................................................................... 4

   NOTICE OF DISCIPLINARY ACTION ........................................................................................ 5

   ELEMENTARY STUDENTS ...................................................................................................... 5

   ANTI-DISCRIMINATION .......................................................................................................... 6

   OFFENSIVE LANGUAGE ......................................................................................................... 6

   DISCIPLINE OF STUDENTS WITH DISABILITIES ..................................................................... 6

   DISCIPLINE APPEALS ............................................................................................................. 6

   EFFECT OF STUDENT WITHDRAWAL ..................................................................................... 7

   ACADEMIC AND DISCIPLINE RECORDS ................................................................................. 7

SCOPE OF THE DISTRICT'S DISCIPLINARY AUTHORITY ............................................................... 8

   GENERAL AUTHORITY ........................................................................................................... 8

   THREAT ASSESSMENT AND SAFE AND SUPPORTIVE SCHOOL TEAM .................................... 8

   SEARCHES ............................................................................................................................. 8

   CRIMINAL CONDUCT ............................................................................................................ 9

   SECURITY PERSONNEL .......................................................................................................... 9

   EJECTION FROM CAMPUS ..................................................................................................... 9

DISCIPLINE CONSIDERATIONS AND TECHNIQUES ..................................................................... 10

   DISCIPLINE CONSIDERATIONS ............................................................................................ 10

   DISCIPLINE MANAGEMENT TECHNIQUES .......................................................................... 10

   PROHIBITED AVERSIVE TECHNIQUES ................................................................................. 11

GENERAL TYPES OF PROHIBITED CONDUCT ............................................................................. 12

   MISCONDUCT INVOLVING OTHERS .................................................................................... 12

   POSSESSING, USING, OFFERING, GIVING, DISTRIBUTING, SELLING, OR BUYING PROHIBITED ITEMS . 13

   MISUSE OF PROPERTY ........................................................................................................ 14

   SAFETY/DISRUPTION .......................................................................................................... 14

   TECHNOLOGY ..................................................................................................................... 15

   FAILURE TO FOLLOW RULES ............................................................................................... 16

   OTHER MISCONDUCT ......................................................................................................... 17

REMOVAL FROM DISTRICT-OWNED OR OPERATED TRANSPORTATION ................................... 18

   REASONS FOR REMOVAL ................................................................................................... 18

   PROCEDURE FOR REMOVAL ............................................................................................... 18

REMOVAL FROM THE CLASSROOM ............................................................................ 19

    ROUTINE REFERRAL ...................................................................................... 19

    FORMAL REMOVAL ....................................................................................... 19

    PROCEDURES FOR FORMAL REMOVAL ......................................................... 19

    PLACEMENT DURING REMOVAL ................................................................... 19

    RETURN TO THE CLASSROOM ...................................................................... 19

IN-SCHOOL SUSPENSION (ISS) ............................................................................... 21

    REASONS FOR ISS ......................................................................................... 21

    PROCEDURE FOR ISS ..................................................................................... 21

OUT-OF-SCHOOL SUSPENSION (OSS) ..................................................................... 21

    REASONS FOR OSS ........................................................................................ 21

    PROCEDURE FOR OSS .................................................................................... 22

    MAKE-UP WORK ........................................................................................... 22

DISCIPLINARY ALTERNATIVE EDUCATION PROGRAM (DAEP) .................................. 23

    REASONS FOR MANDATORY DAEP PLACEMENT ......................................... 23

    REASONS FOR DISCRETIONARY DAEP PLACEMENT ..................................... 24

    EMERGENCY DAEP PLACEMENT .................................................................. 26

    PROCEDURE FOR DAEP PLACEMENT ........................................................... 26

    DAEP AT CAPACITY ....................................................................................... 27

    LENGTH OF DAEP PLACEMENT .................................................................... 27

    APPEALS ....................................................................................................... 28

    OTHER DAEP ISSUES .................................................................................... 29

    PARTICULAR RULES FOR REGISTERED SEX OFFENDERS ............................... 31

EXPULSION .......................................................................................................... 33

    REASONS FOR MANDATORY EXPULSION .................................................... 33

    REASONS FOR DISCRETIONARY EXPULSION ............................................... 34

    EMERGENCY EXPULSION ............................................................................. 36

    PROCEDURE FOR EXPULSION ...................................................................... 37

    LENGTH OF EXPULSION ............................................................................... 37

    APPEALS ....................................................................................................... 38

    OTHER EXPULSION ISSUES .......................................................................... 38

DEFINITIONS ....................................................................................................... 40

## GENERAL OVERVIEW

**PURPOSE**

All Eanes ISD students are entitled to basic rights of citizenship recognized and protected by law for persons of their age and maturity. In addition, students are expected to demonstrate respect for the rights, privileges, and property of others. The District supports the position that the benefits of education are dependent upon positive student attitudes toward learning and student adherence to high principles of behavioral conduct.

Students who violate the rights of others and/or who violate classroom, campus, or District rules and/or state and federal law will be subject to appropriate disciplinary measures. These actions are designed to correct misconduct and to promote adherence by all students to their responsibilities as citizens in the school community.

The Board of Trustees adopted this Student Code of Conduct (SCC) to promote a safe, secure, and optimal learning environment for all students. Inside you will find information regarding:

- The District-wide discipline management plan;
- A description of prohibited conduct;
- The disciplinary options, methods, and consequences for preventing and addressing student misconduct; and
- The process the District will follow when administering disciplinary consequences.

If there is a conflict between the SCC and the Student Handbook, the terms of the SCC will control. If there is a conflict between the SCC and District policy, the more recently adopted item will control.

**ADDITIONAL RULES**

Students may be subject to campus, classroom, extracurricular, and/or organization rules in addition to those found in the SCC. Students may face consequences under these additional rules as well as possible disciplinary action under the SCC. Further, to the extent a student engages in misconduct that is not specifically addressed in the SCC, the student may still be disciplined if the misconduct disrupts or interferes with the educational process, learning environment, or school safety.

**GENERAL STANDARDS OF CONDUCT**

In order to promote a positive educational experience for all students, the District expects students to adhere to seven basic standards of conduct:

1. Exercise self-control, self-respect, and self-discipline;
2. Demonstrate a positive attitude;

3.      Respect the rights and feelings of others;
4.      Respect school property;
5.      Support the learning process;
6.      Adhere to rules; and
7.      Promote a safe environment.

Among other things, this means each student is expected to be honest; attend all classes, regularly and on time; be prepared for each class; be appropriately dressed and groomed, as outlined in the campus student handbook; and to cooperate with and/or assist school staff in maintaining safety, order and discipline.

Because of significant variations in student conduct, it is not always possible for the SCC to address each and every act of student misbehavior. To that end, the District retains discretion to address student misconduct that is inconsistent with these seven standards even though the conduct may not be specifically included in the SCC.

## NOTICE OF DISCIPLINARY ACTION

Teachers and administrators strive to notify parents/guardians of student conduct concerns as they occur.  The campus principal/campus behavior coordinator or other administrator shall promptly notify a student's parent/guardian by phone or in person of any violation that may result in suspension, Disciplinary Alternative Education Program (DAEP) placement, or expulsion from school. The administrator shall also notify a student's parent/guardian if the student is taken into custody by a law enforcement officer under the disciplinary provisions of the Education Code.  A good faith effort shall be made on the day the action was taken to provide to the student for delivery to the student's parent/guardian written notification of the disciplinary action.  If the parent/guardian has not been reached by telephone or in person by 5:00 p.m. of the first business day after the day the disciplinary action was taken, the administrator shall send written notification by U.S. Mail.

Before the principal, campus behavior coordinator or other administrator assigns a student under 19 to detention outside regular school hours, notice shall be given to the student's parent/guardian to inform him or her of the reason for the detention and permit arrangements for necessary transportation.

## ELEMENTARY STUDENTS

Students younger than 10 must receive services in a DAEP if they commit an expellable offense. However, a student younger than 6 may not be sent to DAEP unless the student commits a firearm offense under Texas Education Code section 37.007(e)(2).

For purposes of DAEP, elementary classification shall be kindergarten—grade 5 and secondary classification shall be grades 6—12.

**ANTI-DISCRIMINATION**

The District does not discriminate against students on the basis of race, color, religion, sex (including biological sex, gender identity, sexual orientation, and gender stereotypes), gender, national origin, age, disability, or any other basis prohibited by law when enforcing the provisions of the SCC.

**OFFENSIVE LANGUAGE**

It is the position of the Eanes ISD Board of Trustees and Administration that the use of offensive language in the school environment is unacceptable and creates a hostile work and educational environment. Such language includes, but is not limited to, the use of slurs or offensive language related to race, gender and/or sexual orientation, disability and religious beliefs. In order to maintain a safe and appropriate educational environment for students and employees, all district employees and students are required to report such violations of the SCC to the appropriate campus administrator. Such behavior is outlined under "General Conduct Violations" below.

**DISCIPLINE OF STUDENTS WITH DISABILITIES**

The discipline of students with disabilities is subject to applicable state and federal law, in addition to this SCC.  To the extent any conflict exists, the District shall comply with federal law. For more information regarding discipline of students with disabilities, see policy FOF(LEGAL).

In accordance with the Texas Education Code, a student who receives special education services may not be disciplined for conduct meeting the definition of bullying, cyberbullying, harassment, or making hit lists until an Admission, Review and Dismissal (ARD) meeting has been held to review the conduct.

In deciding whether to order suspension, DAEP placement, or expulsion, regardless of whether the action is mandatory or discretionary, the District shall take into consideration a disability that substantially impairs the student's capacity to appreciate the wrongfulness of the student's conduct.

**DISCIPLINE APPEALS**

Questions from parents regarding disciplinary measures should be addressed to the teacher, campus administration, or campus behavior coordinator, as appropriate. Appeals of disciplinary measures should be addressed in accordance with Board policy FNG(LOCAL). A copy of the policy may be obtained at the campus or central administration office or on the District's website under the *Board Policy Online* page: http://www.eanesisd.net/board. Depending on the disciplinary consequence assigned, different complaint procedures may apply as described in this SCC.

Timelines for filing appeals stated in the policy and this SCC will be enforced. Disciplinary consequences will not be delayed or deferred pending the outcome of an appeal.

**EFFECT OF STUDENT WITHDRAWAL**

Withdrawal from school after a student has been accused of a violation of the SCC will not prevent the District from investigating the alleged violation and, if it is determined that a violation did occur, assessing the appropriate disciplinary consequence and enforcing that consequence should the student re-enroll in the District.

**ACADEMIC AND DISCIPLINE RECORDS**

Placement in in-school suspension, out-of-school suspension, or DAEP is not referenced or noted on a student's official transcript. If a student is placed in the Juvenile Justice Alternative Education Program (JJAEP) and receives credit during that placement, such credit is noted on a student's official transcript as earned through the JJAEP.

If a student enrolls in another school district, Eanes ISD is required to transfer certain discipline records to the newly-enrolling district.

## SCOPE OF THE DISTRICT'S DISCIPLINARY AUTHORITY

**GENERAL AUTHORITY**

In addition to the disciplinary authority established for certain types of offenses as described within the SCC, the District has general disciplinary authority over a student at the following times:

- At any time during the school day if a student is attending school in person;
- If a student is attending school remotely, at any time the student is accessing District learning with other District students and/or staff, including synchronous instruction, small group lessons, and special services;
- While traveling on district owned or operated transportation or during school-related travel;
- While attending any school-sponsored or school-related activity, regardless of time or location;
- As provided in extracurricular or organization handbooks, by-laws, or constitutions;
- During lunch periods, including those in which a student leaves the campus;
- While on District property at any time during or outside the school day;
- For any school-related misconduct, regardless of time or location, including misuse of District technology;
- Other off campus conduct, including cyberbullying, as permitted by Chapter 37 of the Texas Education Code;
- For certain offenses committed within 300 feet of school property as measured from any point on the school's real property boundary line;
- When retaliation against a school employee or volunteer occurs or is threatened, regardless of time or location; and
- If the student is a registered sex offender.

**THREAT ASSESSMENT AND SAFE AND SUPPORTIVE SCHOOL TEAM**

The campus behavior coordinator/other appropriate administrator will work closely with the District's Safe and Supportive School Team to implement the District's threat assessment policy and procedures, as required by law, and shall take appropriate disciplinary action in accordance with this SCC.

**SEARCHES**

District officials may conduct searches of students, their belongings, and their vehicles in accordance with state and federal law and District policy. Searches of students shall be conducted in a reasonable and nondiscriminatory manner. Refer to the District's policies at FNF for more information regarding investigations and searches.

A student's clothing, personal property, electronic equipment, method of transportation, or school property used by the student (such as lockers or desks) may be searched when there is reasonable suspicion to believe the search will reveal articles or materials prohibited by the District. Students are

responsible for ensuring that any personal property, method of transportation or school property used by the student does not contain prohibited items. Students may be disciplined for possession of prohibited items discovered during a search.

Desks, lockers, District-provided technology, and similar items are the property of the District and are provided for student use.  District property is subject to search or inspection at any time without notice.

## CRIMINAL CONDUCT

School administrators will report crimes as required by law and may contact local law enforcement regarding suspected criminal activity. Certain acts of misconduct may constitute criminal offenses in addition to violations of the SCC. Because school discipline is independent of criminal proceedings, disciplinary consequences may not be postponed pending the outcome of any criminal proceeding or affected by the outcome of any criminal proceeding.

## SECURITY PERSONNEL

To ensure sufficient security and protection of students, staff, and property, the Board utilizes peace officers, security officers, and school resource officers.  In accordance with law, the Board has coordinated with District staff to ensure appropriate law enforcement duties are assigned to these persons.  Provisions addressing the various types of security personnel and their duties can be found in Board Policy CK(LOCAL).

## EJECTION FROM CAMPUS

In accordance with Education Code 37.105, a school administrator, peace officer, security officer, or school resource officer shall have the authority to refuse entry or eject a person from district property if the person refuses to leave peaceably on request and:
1. The person poses a substantial risk of harm to any person; or
2. The person behaves in a manner that is inappropriate for a school setting, and the person persists in the behavior after being given a verbal warning that the behavior is inappropriate and may result in refusal of entry or ejection.

Appeals regarding refusal of entry or ejection from District property may be filed in accordance with policies FNG(LOCAL) or GF(LOCAL), as appropriate.  The timelines for the District's grievance procedures shall be adjusted as necessary to permit the person to address the Board within 90 days, unless the complaint is resolved before a Board hearing.

## DISCIPLINE CONSIDERATIONS AND TECHNIQUES

**DISCIPLINE CONSIDERATIONS**

When deciding to order any mandatory or discretionary disciplinary consequence, including but not limited to, out-of-school suspension, DAEP placement, expulsion, or placement in JJAEP of a student, the District shall consider:

1. Self-defense (see *definitions*);
2. The student's intent (see *definitions*) or lack of intent at the time of the conduct;
3. The student's disciplinary history;
4. A disability that substantially impairs the student's capacity to appreciate the wrongfulness of the student's conduct to the extent required by state and federal law;
5. A student's status in the conservatorship of the Department of Family and Protective Services (foster care); or
6. A student's status as homeless.

Additionally, using their professional judgment, District employees shall also consider a variety of factors when administering all disciplinary consequences and determining the duration of the consequence, including but not limited to:

- The degree of severity and the risk of danger;
- The effect of the misconduct;
- The frequency of the misconduct;
- The age and grade level of the student;
- The student's demeanor; and
- Legal requirements, including consistency.

**DISCIPLINE MANAGEMENT TECHNIQUES**

Discipline is designed to improve conduct, correct student behavior, and encourage students to adhere to their responsibilities as members of the school community. Disciplinary action shall draw on the professional judgement of teachers and administrators and on a range of discipline management techniques, including restorative practices. The District may use any one or a combination of the following strategies or techniques to manage student behavior, prevent or intervene in discipline problems, or address violations of the SCC, campus, or classroom rules:

- Verbal correction;
- Seating changes;
- Parent conferences, including telephone calls;
- Removal from the classroom;
- Contracts to modify student behavior;
- Sending the student to the office or other area;

- Assignment of school-related tasks or duties;
- Calming-down time, in accordance with law;
- Demerits or rewards;
- Confiscation of items;
- School probation;
- Restitution to the District or an individual;
- Transfer to a different classroom or campus;
- Revocation or restriction of transportation privileges;
- Loss or restriction of privileges, participation or membership in co-curricular or extracurricular activities, and seeking or holding honorary positions;
- Counseling by teachers, counselors, or administrators;
- In-school suspension;
- Out-of-school suspension;
- Placement in a DAEP;
- Expulsion;
- Consequences identified in co-curricular or extracurricular codes of conduct, constitutions, or by-laws;
- Detention;
- Mediation; and/or
- Other strategies and consequences determined by school officials to be appropriate and designed to further the goals outlined in this SCC.

Disciplinary consequences are not appropriate for failure to meet assigned academic requirements. However, teachers and administrators may impose academic consequences, including grade reductions, as permitted by policy regarding unexcused absences and academic dishonesty, and for the student's failure to meet assigned academic requirements consistent with grading standards and practices communicated to students at the beginning of the semester or school year.

By policy, Eanes ISD prohibits the use of corporal punishment for student discipline.

## PROHIBITED AVERSIVE TECHNIQUES

In accordance with law, aversive techniques are prohibited for use with students. Aversive techniques are defined as techniques or interventions intended to reduce the reoccurrence of a behavior by intentionally inflicting significant physical or emotional discomfort or pain.

## GENERAL TYPES OF PROHIBITED CONDUCT

Misconduct identified in the list of prohibited behaviors below will result in the assignment of one or more *Discipline Management Techniques* if the behavior is committed at school, a school-sponsored or school- related activity, during school-related travel, while traveling on District owned or operated transportation or when the District has *Disciplinary Authority* as described in the SCC. The list below does not include the most serious offenses. In the following sections on *Suspension*, *DAEP Placement*, and *Expulsion*, severe offenses that require or permit certain consequences are listed. Any offense, however, may be serious enough to result in *Removal from Classroom by the Teacher* as detailed in that section.

### MISCONDUCT INVOLVING OTHERS

- Horseplay, roughhousing, and other playful behavior that, though not intended to harm, presents a reasonable risk of harm and threatens the safety of others;
- Fighting (see *definitions*) or scuffling that does not result in physical pain, illness, or any impairment of a physical condition;
- Engaging in conduct, including throwing objects, that can cause bodily injury (see *definitions*) or property damage;
- Forcing an unwilling person to act or not act or obtaining money or another object of value from an unwilling person through duress, threats, force, extortion, coercion, or blackmail;
- Subjecting a student or District employee, official, or volunteer to physical harm, confinement or restraint;
- Bullying or cyberbullying (see *definitions*);
- Offensive language, including, but not limited to, the use of slurs or derogatory language related to race, gender and/or sexual orientation, disability and religious beliefs;
- Using profanity, vulgar language, or obscene gestures;
- Engaging in harassment (see *definitions*) toward another student or a District employee, official, or volunteer, including harassment motivated by race, color, religion, national origin, disability, sex, sexual orientation, or age;
- Engaging in sexual or gender-based harassment (see *definitions*) or sexual abuse;
- Inappropriate verbal (oral or written), physical, or sexual contact toward another student or a District employee, official, or volunteer regardless of whether it is consensual;
- Touching one's own private body parts in a sexual manner;
- Consensual hugging, touching, or other displays of affection that interfere with, detract from, or disrupt the school environment;
- Engaging in conduct that constitutes dating violence (see *definitions*);
- Engaging in oral or written threats to cause harm or bodily injury (see *definitions*) to another student, a District employee, official, or volunteer, or school property, including threats made using the Internet or other technology resources at school. Students may be disciplined for

threats made outside of school, including website or internet postings, if the threat causes a material or substantial disruption at school.;

- Wrongfully obtaining and using another person's identifying information or personal data without permission in order to mislead, defraud, or deceive;
- Hazing (see *definitions*);
- Retaliating against a student for (1) reporting either a violation of the Student Code of Conduct (SCC) or bullying, or (2) participating in an investigation of a violation of the SCC or bullying; or
- Adding any substance, whether harmful or not, without permission to any food or beverages belonging to, in the possession of, or meant to be consumed by another student or District employee, official, or volunteer;

## POSSESSING, USING, OFFERING, GIVING, DISTRIBUTING, SELLING, OR BUYING PROHIBITED ITEMS

- A firearm;
- BB gun, air gun, or stun gun;
- Ammunition, shells, bullets, or gunpowder;
- A firearm silencer or suppressor;
- Alcohol, alcoholic beverages, or products containing alcohol;
- Illegal drugs, including dangerous drugs (see *definitions*) or controlled substances (see *definitions*);
- Tobacco products; cigarettes; electronic cigarettes; vape product; any component, part, or accessory for an e-cigarette device (including tobacco/vapor oils); or any other smoking/vaping device or paraphernalia (including matches and lighters);
- Stems, seeds or other pieces of marijuana in less than a usable amount;
- Any consumable hemp (see *definitions*) products; oils (e.g., CBD oil), lotions, or similar products that contain hemp; hemp products in any form suitable for smoking, vaping or other uses.  A student using such a product with a valid prescription for low-THC cannabis as authorized by Chapter 487 of the Health and Safety Code does not violate this provision;
- Prescription medication or over-the-counter drugs/medication other than as provided by District policy and procedures;
- Paraphernalia related to any prohibited item;
- "Look-alike" drugs or items attempted to be passed off as drugs, non-prescription drugs, medications, or herbal or dietary supplements except as permitted by District policy and procedures;
- Fireworks or any other pyrotechnic device;
- Smoke or stink bombs;
- Laser pointers (unauthorized use);
- Pepper spray or other small chemical dispenser sold commercially for personal protection;
- Razor blades, box cutters, or chains;

- A hand instrument designed to cut or stab another by being thrown;
- A location-restricted knife, pocketknife or any small knife;
- Knuckles;
- A club;
- Fake or "look-alike" weapons that are intended to be used as a weapon or could reasonable be perceived as a weapon;
- Poisons, caustic acids, or other materials that may be toxic to the human body;
- Material that is sexually-oriented, pornographic, or reveals a person's private body parts;
- Material, including published or electronic items, that promotes or encourages illegal behavior or could threaten school safely, or that falsely depicts wrongful, illegal, or inappropriate conduct by a student, volunteer or District staff member;
- Articles not generally considered to be weapons when the administrator determines that a danger exists or when used in a way that threatens or inflicts bodily injury to another;
- CD or DVD players, cassette players, electronic games, MP3 players, stereo head sets, or other electronic equipment for other than approved use; or
- Live animals, other than an authorized service animal or for approved school purposes.

## MISUSE OF PROPERTY

- Unless authorized, using, displaying, or having in operational mode a paging device, cellular telephone, or other telecommunications device (see *definitions*) in violation of District and/or campus rules;
- Stealing from others, including the District;
- Committing or assisting in a robbery, theft, or burglary that is not punishable as a felony;
- Damaging, destroying, or vandalizing property owned by others or the District;
- Marking District property such as textbooks, lockers, furniture, or equipment with graffiti, tagging, or by other means; or
- Entering, without authorization, District facilities that are not open for operations.

## SAFETY/DISRUPTION

- Attempting to start or starting a fire on or in any property owned, used, or controlled by a student, the District, or District employees, officials, or volunteer that does not rise to the level of arson or criminal mischief;
- Threatening to use or exhibiting a firearm;
- Discharging a fire extinguisher, pulling a fire alarm, calling 911, tampering with an Automated External Defibrillator (AED) or causing the sprinkler system to activate when there is no emergency;
- Making or participating in false statements or hoaxes regarding school safety;

- Engaging in any misbehavior, actions, or demonstrations that substantially disrupts or materially interfere with school activities or that gives school officials reasonable cause to believe that such conduct will substantially disrupt the school program or incite violence; or
- Making false accusation or providing false statements concerning wrongful, unlawful, inappropriate, or illegal conduct alleged to have been committed by another student or District employee, official, or volunteer.

## **TECHNOLOGY**

- Sending, possessing, delivering, or posting electronic messages or images that are abusive, obscene, sexually oriented, harassing, threatening, intimidating, illegal, or that cause a material or substantial disruption at school or infringes on the rights of another student at school, including cyberbullying (see *definitions*) and "sexting";
- Using any device to copy or capture an image or the content of any District materials (such as tests or exams) without permission of a teacher or administrator;
- Making, participating in the making of, transmitting to another via an electronic device, or posting to the Internet a digital video or audio recording of an actual or simulated act that involves a crime or conduct prohibited by the SCC (Students who are not involved in the prohibited conduct will not be disciplined under this provision so long as they report the incident to a school employee, turn over the recording to a school employee as soon as possible after the incident, and do not provide a copy of the recording to anyone other than the law enforcement or school employees.);
- Using any device or technology that permits recording the voice or image of another in any way that disrupts the educational environment, invades the privacy of others, or without the prior consent of the individual being recorded;
- Using any device or technology to take, disseminate, transfer, circulate, exhibit, present, or share audio, images, video, or photos that reveal private parts of the body that are normally covered by clothing (also known as "sexting");
- Release or threaten or release intimate visual material of a minor or a student who is 18 years of age or older without the student's consent;
- Using the name, persona, or image of a student, District employee, or volunteer to create a web page or post one or more messages on a website without the other person's consent for purposes of harassing, intimidating, embarrassing, or threatening another;
- Using email, website, or electronic devices to engage in or encourage illegal conduct, violations of the SCC, or to threaten school safety;
- Attempting to or successfully accessing or circumventing passwords or other security-related information of the District, officials, volunteers, employees, or other students by any means;
- Attempting to or successfully altering, destroying, interrupting, or disabling District technology resources including but not limited to computers and related equipment, District data, the data

of other users of the District's computer system, or other networks connected to the District's system, including uploading or creating computer viruses, worms, or other harmful material;

- Copying, downloading, reproducing, distributing, retransmitting, redisplaying, or modifying items from the District's website; or
- Engaging in any of the above forms of technological misconduct outside of school when such conduct causes a material or substantial disruption at school as determined by school officials.

*NOTE*: Students will not be disciplined for technological misconduct related to possessing items described above so long as the student (1) did not contribute to creation of the item in any way, (2) possessed it only after receiving the item unsolicited from another, (3) either promptly destroyed the item or reported it to a school employee as soon as possible, and (4) did not provide a copy, forward, or re-post the item to anyone other than law enforcement, a school employee, or the student's parent/guardian.

## FAILURE TO FOLLOW RULES

- Violating dress codes and grooming criteria;
- Violating any health and safety rules required by the District;
- Failing to ensure that personal property, method of transportation, or school property used by the student does not contain prohibited items (See "Possessing, using, giving, distributing, selling, or buying prohibited items" above);
- Being insubordinate or otherwise failing to comply with lawful directives given by school personnel;
- Attempting to or successfully evading, avoiding, or delaying questioning by a District employee;
- Failing to provide proper identification upon request of a District employee;
- Attempting to violate or assisting, encouraging, promoting, or attempting to assist another student in violating the SCC;
- Failing to immediately report to a school employee knowledge of a device, object, substance, or event that could cause harm to self or others;
- Unexcused tardiness to class;
- Skipping school or class without the District's or parent/guardian's permission;
- Leaving class, the campus, or school events without permission;
- Enticing or preventing another student from attending school, class, or a school activity that the student is require to attend;
- Violating rules for conduct on District-owned or operated transportation;
- Violating rules for operating or parking a motor vehicle on school property;
- Violating policies or rules, including the Eanes ISD Responsible Use Guidelines for Technology, regarding the use of technology resources and Internet access;
- Violating the District's medications policy and procedures regarding prescription and over-the-counter drugs;

- Academic dishonesty, including cheating, copying the work of another, allowing another student to copy work, plagiarism, unauthorized collaboration with another person in preparing an assignment, unauthorized communication with another person during an examination, or any use of artificial intelligence or computer-generated work in violation of District or campus rules;
- Failure to comply with guidelines applicable to student speakers who are speaking at school-sponsored or school-related events; or
- Violating other campus or classroom rules for behavior and/or safety or District policies.

## OTHER MISCONDUCT

- Using profanity, vulgar language, or obscene gestures;
- Loitering in unauthorized areas;
- Falsifying, altering, forging, or destroying school records, passes, other school-related documents, or documents presented to District employees;
- Gambling or betting money or other things of value;
- Inappropriate exposure of a student's private body parts which are ordinarily covered by clothing, including through such acts as sexting, mooning, streaking, or flashing; or
- Taking one or more steps toward violating the SCC even if the student fails to complete the intended misconduct.

## REMOVAL FROM DISTRICT-OWNED OR OPERATED TRANSPORTATION

### REASONS FOR REMOVAL

Appropriate student behavior is essential to the safe operation of District transportation. Students must comply with the expectations of the SCC while using District transportation. In addition to compliance with the SCC, students are expected to comply with the following transportation rules:

- Enter and exit transportation in an orderly manner at the designated stop;
- Remain seated in designated seats facing forward;
- Wear seat belts as directed by the driver;
- Keep aisles clear of books, bags, instruments, feet, or other obstructions;
- Comply with lawful directives issued by the driver;
- Follow the driver's rules for food or beverages;
- Do not bring live animals on the bus, other than an authorized service animal or for approved school purposes;
- Do not extend any body part, clothing, or other article outside of the transportation;
- Keep hands, feet, other body parts, or objects to yourself;
- Refrain from making loud or distracting noises;
- Do not obstruct the driver's view;
- Do not throw objects inside the transportation or out of the windows or doors;
- Do not mark, deface, destruct, or tamper with seats, windows, emergency doors, or other equipment;
- Refrain from engaging in the *General Types of Prohibited Conduct* as outlined in the SCC; and
- Follow any health and safety rules required by the District.

### PROCEDURE FOR REMOVAL

A driver of District owned or operated transportation may send a student to the administrator's office to maintain discipline during transport to or from school or a school-sponsored or school-related activity, to enforce the transportation rules, or when the student engages in behavior that violates the SCC. The administrator may use one or more discipline management techniques to address the behavior, which may include temporarily suspending or permanently revoking school transportation privileges.

The student will be informed of the reason for suspension or revocation of transportation privileges and will be given an opportunity to respond before the administrator's decision is final. Suspension of transportation privileges does not excuse a student from attending school. It is the responsibility of the parent/guardian and/or student to make alternate transportation arrangements to and from school.

## REMOVAL FROM THE CLASSROOM

**ROUTINE REFERRAL**

A teacher may send a student to the administrator's office to maintain discipline in the classroom or when the student engages in behavior that violates the SCC. The administrator may use one or more discipline management techniques to address the behavior.

**FORMAL REMOVAL**

A teacher may remove a student from class when:
- The student's behavior has been documented by the teacher as repeatedly interfering with the teacher's ability to teach or with the learning of other students; or
- The behavior is so unruly, disruptive, or abusive that it seriously interferes with the teacher's ability to teach or with the learning of other students.

A teacher must remove a student from class if the student engages in conduct that requires or permits DAEP placement or expulsion under the Texas Education Code, in which case the procedures for DAEP placement or expulsion will apply.

**PROCEDURES FOR FORMAL REMOVAL**

Within three school days of the formal removal, the campus behavior coordinator/appropriate administrator will schedule a conference with the administrator, the teacher who removed the student from class, the student's parent/guardian, and the student. At the conference, the administrator shall inform the student of the alleged misconduct and the proposed consequences. The student shall have an opportunity to respond to the allegations. After the conference, the administrator will render a discipline decision and inform the student and parent/guardian of the consequences.

**PLACEMENT DURING REMOVAL**

When a student is removed from the classroom by a teacher and a conference is pending, the administrator may place the student in another appropriate classroom, in-school suspension, out-of-school suspension, or DAEP.

**RETURN TO THE CLASSROOM**

If a student was formally removed from class because the student engaged in assault resulting in bodily injury, aggravated assault, sexual assault, or aggravated sexual assault against the teacher, the student may not be returned to the teacher's class without the teacher's consent.

For other formal removals, the student may only be returned to the teacher's class without the teacher's consent if the Placement Review Committee determines that the teacher's class is the best or only alternative.

## IN-SCHOOL SUSPENSION (ISS)

**REASONS FOR ISS**

Students may be placed in ISS for any misconduct listed in any category of the ISS, except for misconduct that requires mandatory placement in the DAEP or JJAEP.

**PROCEDURE FOR ISS**

Before being placed in ISS, the student will meet with the campus behavior coordinator/appropriate administrator, who will inform the student of the alleged misconduct.  The student will be given an opportunity to respond before the administrator makes a decision.

While in ISS, the student will complete assignments from his or her teachers.  The District shall ensure a student receives access to coursework for foundation curriculum courses while the student is placed in ISS, including at least one method of receiving this coursework that does not require the use of the internet.

## OUT-OF-SCHOOL SUSPENSION (OSS)

**REASONS FOR OSS**

Students in grades 3 or above may be suspended from school for any misconduct listed in any category of the SCC.

A student below grade 3 or a student who is homeless shall not be placed in out-of-school suspension unless, while on school property or while attending a school-sponsored or school-related activity on or off school property, the student engages in:

- Conduct that contains the elements of a weapons offense, as provided in Penal Code Section 46.02 or 46.05;
- Conduct that contains the elements of assault, sexual assault, aggravated assault, or aggravated sexual assault, as provided by the Penal Code; or
- Selling, giving, or delivering to another person or possessing, using, or being under the influence of any amount of marijuana, an alcoholic beverage, or a controlled substance or dangerous drug as defined by federal or state law.

The District shall use a positive behavior program as a disciplinary alternative for students below grade 3 who commit general conduct violations.

**PROCEDURE FOR OSS**

Before being suspended, a student will meet with the campus behavior coordinator/appropriate administrator, who will inform the student of the alleged misconduct.  The student will be given an opportunity to respond before the administrator makes a decision.

The appropriate administrator shall determine the number of days of a student's suspension.  Students may be suspended for a maximum of three school days per behavior violation.

While the student is suspended, the student may not attend or participate in school-sponsored or school-related activities.

**MAKE-UP WORK**

If a student is assigned out-of-school suspension, that student will be required to complete all class assignments, homework, tests, and other academic work covered during the time of suspension. The student will have the opportunity to receive full credit for completed academic work, when submitted in a timely manner and in accordance with the teacher's or administrator's instructions.

The District shall ensure a student receives access to coursework for foundation curriculum courses while the student is placed in OSS, including at least one method of receiving this coursework that does not require the use of the internet.

## DISCIPLINARY ALTERNATIVE EDUCATION PROGRAM (DAEP)

**REASONS FOR MANDATORY DAEP PLACEMENT**

**School-Related.** A student must be placed in DAEP for any of the following misconduct if committed while on school property, within 300 feet of school property as measured from any point on the school's real property boundary line, or while attending a school-sponsored or school-related activity on or off school property:

- Engages in conduct punishable as a felony.
- Commits an assault (see *definitions*) resulting in bodily injury (see *definitions*) to another.
- Sells, gives, delivers, possesses, uses, or is under the influence of a controlled substance (see *definitions*) or dangerous drug (see *definitions*) in any amount not punishable as a felony. Students shall be expelled for a second infraction (occurring in the same school year).
- Sells, gives, or delivers to another person or possesses, uses, or is under the influence of marijuana or THC.  A student with a valid prescription for low-THC cannabis as authorized by Chapter 487 of the Health and Safety Code does not violate this provision with regard to possession or use.
- Sells, gives, delivers to another person or possesses an e-cigarette.
- Sells, gives, delivers, possesses, uses, or is under the influence of alcohol or an alcoholic beverage (see *definitions*), if the conduct is not punishable as a felony. Students shall be expelled for a second infraction (occurring in the same school year).
- Commits a serious act or offense while under the influence of an alcoholic beverage if the conduct is not punishable as a felony. Students shall be expelled for the second infraction (occurring in the same school year).
- Engages in an offense relating to abusable volatile chemicals (see *definitions*). Students shall be expelled for the second infraction (occurring in the same school year).
- Engages in conduct that contains the elements of harassment against an employee under Texas Penal Code 42.07(a)(1), (2), (3), or (7).
- Engages in public lewdness (see *definitions*).
- Engages in indecent exposure (see *definitions*).
- Possesses or uses a knife with a blade over 3 inches up to 5 ½ inches.
- Engages in expellable conduct if the student is six to nine years of age.
- Engages in a federal firearm offense if the student is six years of age or younger.

**Off-Campus.** A student must be placed in DAEP for engaging in a Title 5 (see *definitions*) felony offense or aggravated robbery while off-campus and not in attendance at a school-sponsored or school-related activity if:

- The student receives deferred prosecution;
- A court or jury finds the student engaged in delinquent conduct; or

- The administrator reasonably believes that the student engaged in the misconduct.

**Regardless of Location.** A student must be placed in DAEP if the student engages in the following misconduct, regardless of whether the conduct occurred on or off campus:

- Issues a false alarm or report (see *definitions*) (including a bomb threat) or a terroristic threat (see *definitions*) involving a public school. Students shall be expelled for a second infraction (occurring in the same school year).
- Retaliates (see *definitions*) against any school employee.
- Is involved with a public school fraternity, sorority, secret society, or gang (see *definitions*), including participating as a member or pledge, or soliciting another person to become a member or pledge.
- Is involved with a criminal street gang (see *definitions*) or encourages, solicits, enables, or causes another to become a member of a criminal street gang.
- Engages in criminal mischief if the damage is equal to or greater than $500 but less than $1,500.
- Is a registered sex offender (see *definitions*) under court supervision, probation, community supervision, or parole.

Students who are: (1) convicted of continuous sexual abuse of a young child or disabled individual; or (2) convicted, receive deferred adjudication or deferred prosecution, been found to have engaged in delinquent conduct or conduct in need of supervision, or been placed on probation for either sexual assault or aggravated sexual assault against another student assigned to the same campus at the time the offense occurred will be placed in DAEP (or JJAEP as appropriate) on the request of the victim's parents if the victim student does not wish to transfer, and there is only one campus serving that grade level. Placement in this circumstance may be for any length of time considered necessary.

## REASONS FOR DISCRETIONARY DAEP PLACEMENT

**School-Related.** A student may be placed in DAEP for any of the following misconduct if committed while on school property, within 300 feet of school property as measured from any point on the school's real property boundary line, or while attending a school-sponsored or school-related activity on or off school property:

- Possessing, giving, buying, or selling less than a usable amount of stems, seeds, or other pieces of marijuana.
    - A student with a valid prescription for low-THC cannabis as authorized by Chapter 487 of the Health and Safety Code does not violate this provision with regard to possession or use.
- Possessing, using, selling, buying, or giving paraphernalia (see *definitions*) related to any prohibited substance, including but not limited to marijuana, a controlled substance, a dangerous drug, or an alcoholic beverage.

- o A student with a valid prescription for low-THC cannabis as authorized by Chapter 487 of the Health and Safety Code does not violate this provision with regard to possession or use.
- Offering to sell marijuana, a controlled substance (see *definitions*), a dangerous drug (see *definitions*), abusable volatile chemicals (see *definitions*), a prescription drug, or an alcoholic beverage (see *definitions*) in any amount.
- Abusing the student's own prescription drug or using it in a way other than prescribed; giving, buying, or selling a prescription drug; possessing, using, or being under the influence of another person's prescription drug.
- Abusing over-the-counter drugs.
- Preparing a hit list (see *definitions*).
- Committing any offense included in the list of "General Types of Prohibited Misconduct" in this SCC.
- Engaging in serious (see *definitions*) or persistent misbehavior (see *definitions*) that violates this SCC.

**Off-Campus.** A student may be placed in DAEP for engaging in the following misconduct while off-campus and not in attendance at a school-sponsored or school-related activity:
- The administrator reasonably believes the student engaged in conduct punishable as a felony (other than aggravated robbery or a Title 5 felony offense), and the student's continued presence in the regular classroom is a threat to the safety of others or will be detrimental to the educational process.
- Off-campus conduct for which DAEP placement is required by state law when the administrator does not learn of the conduct until more than one year passes after the conduct occurred.

**Regardless of Location.** A student may be placed in DAEP if the student engages in the following misconduct, regardless of whether the conduct occurred on or off campus:
- Assault with threat of imminent bodily injury.
- Assault by offensive or provocative physical contact.
- If the student is a registered sex offender *(see definitions)* who is not under any form of court supervision. A registered sex offender who is not under any form of court supervision will be placed in regular classes if the student is not a threat to the safety of others, is not detrimental to the educational process, and such placement is not contrary to the best interests of the District's students.
- Engages in criminal mischief if the damage is less than $500.

**Bullying.** A student may be removed from class and placed in DAEP or expelled if the student:
- Engages in bullying (see *definitions)* that encourages a student to commit or attempt to commit suicide;

- Incites violence against a student through group bullying; or
- Releases or threatens to release intimate visual material (see *definitions*) of a minor or a student who is 18 years of age or older without the student's consent.

## EMERGENCY DAEP PLACEMENT

An administrator may order an emergency DAEP placement if the student has been so unruly, disruptive, or abusive that it seriously interferes with the teacher's ability to teach the class, the learning of other students, or the operation of a school-related or a school-sponsored activity. The reason for emergency placement must also be a reason for which DAEP placement could be ordered on a non-emergency basis. At the time of the emergency placement, the student will be told the reason for the action.

No later than the tenth day after the date of emergency DAEP placement, the student will be given a conference as required for regular placement in DAEP; see below.

## PROCEDURE FOR DAEP PLACEMENT

**Conference.** No later than three school days after the student is removed from class, the campus behavior coordinator/appropriate administrator will schedule a conference with the administrator, the student's parent/guardian, and the student. At the conference, the administrator shall inform the student, orally or in writing, of the reasons for the removal, shall give the student an explanation of the basis for the proposed DAEP placement, and give the student an opportunity to respond to the reasons for the removal.

Following valid and reasonable attempts to require attendance, the District may conduct the conference and make a discipline decision regardless of whether the student or the student's parent/guardian attends the conference. Unless the administrator is provided 24 hours' prior notice that the parent/guardian shall be represented by legal counsel at the conference, the administrator may reschedule the conference to a time when the District's legal counsel may also participate.

If during the term of DAEP placement the student engages in additional misconduct, additional conferences may be conducted and additional discipline imposed.

**Interim Placement.** Until a placement conference can be held, the student may be placed in another appropriate classroom, in-school suspension, or out-of-school suspension. The student may not be returned to the regular classroom pending the placement conference.

**DAEP Placement Order.** If the outcome of the conference is to place the student in DAEP, the administrator will issue a DAEP placement order. A copy of the DAEP placement order and information for the parent or person standing in parental relation to the student regarding the process for requesting

a full individual and initial evaluation of the student for purposes of special education services will be sent to the student and the student's parent/guardian.

If the length of placement differs from the guidelines included in this SCC, the DAEP placement order will give notice of the inconsistency.

For those students placed in DAEP for a reason identified in the Texas Education Code, the District will send the juvenile court a copy of the DAEP placement order no later than the second business day after the placement conference. A copy of the DAEP placement order will be included with any records sent to a school where the student seeks to enroll. The enrolling school district has discretion to enforce the DAEP placement order.

## DAEP AT CAPACITY

If the DAEP is at capacity at the time the administrator is deciding placement for conduct related to marijuana, THC, an e-cigarette, alcohol, or an abusable volatile chemical, the student shall be placed in ISS then transferred to the DAEP for the remainder of the period if space becomes available before the expiration of the period of the placement.

If the DAEP is at capacity at the time the administrator is deciding placement for a student who engaged in violent conduct, a student placed in DAEP for conduct related to marijuana, THC, an e-cigarette, alcohol, or an abusable volatile chemical may be placed in ISS to make a position in the DAEP available for the student who engaged in violent conduct. If a position becomes available in the DAEP before the expiration of the period of the placement for the student removed, the student shall be returned to the DAEP for the remainder of the period.

## LENGTH OF DAEP PLACEMENT

The length of a student's placement in DAEP will be determined on a case-by-case basis using the criteria identified in the *Discipline Considerations* section of this SCC.

Mandatory DAEP placements may result in placement for up to 120 school days. Discretionary DAEP placements may result in placement for up to 60 school days.

In order for a day to successfully count toward the DAEP assignment, the student must be present for the entire day, arrive on time, complete all assignments, follow all rules, and engage in no additional violations of the SCC.

Students may reduce DAEP placement days by successfully complying with DAEP policies and Campus expectations.

Students placed in DAEP at the end of one school year may be required to complete the assigned term at the beginning of the next school year.

**Drug and Alcohol Offenses.** Eanes ISD believes that all students have a right to participate in learning, extra-curricular, and all other activities in a drug and alcohol-free environment. Drug and alcohol offenses are serious, and disciplinary actions are intended to discourage drug and alcohol use by students.

The minimum mandatory DAEP placements for selling, giving, delivering, possessing, using, or being under the influence of marijuana, a controlled substance (see *definitions*), a dangerous drug (see *definitions*), or an alcoholic beverage (see *definitions*) in any amount not punishable as a felony will be 45 days. Students may reduce this placement by successfully completing a District-approved substance abuse program. Students may also further reduce placement days by successfully complying with DAEP policies and Campus expectations.

In accordance with this SCC, students may be expelled for multiple infractions.

**Exceeds One Year.** The length of DAEP placement may not exceed one year unless, after review, the District determines that the student is a threat to the safety of other students or to district employees.

**Exceeds School Year.** For DAEP placement to extend beyond the end of the school year, the administrator must determine that: (1) the student's presence in the regular classroom or campus presents a danger of physical harm to the student or others; or (2) the student has engaged in serious or persistent misbehavior (see *definitions*) that violates the SCC.

**Exceeds 60 Days/Grading Period.** If the DAEP placement extends beyond 60 days or the end of the next grading period, whichever is sooner, the student and the student's parent/guardian may participate in a proceeding before the Superintendent or designee. The decision of the Superintendent or designee is final and may not be appealed.

## APPEALS

Student or parent appeals regarding a student's placement in the DAEP should be addressed in accordance with Board policy FNG(LOCAL). A copy of the policy may be obtained at the campus office or on the District's website under the *Board Policy Online* page: http://www.eanesisd.net/board.  Appeals shall begin at Level One with the principal or designee.  The decision of the Superintendent or designee at Level Two is final and may not be appealed.

Disciplinary consequences shall not be delayed or deferred pending the outcome of an appeal.

**OTHER DAEP ISSUES**

**Report to Law Enforcement.** Suspected drug or alcohol use, including inappropriate use of prescription drugs, and a report to law enforcement required by law, shall be made by the District.

**No Participation in Activities While in DAEP.** Students placed in DAEP are not allowed to attend or participate in school-sponsored or school-related extracurricular or co-curricular activities during the period of DAEP placement. This restriction applies until the student fulfills the DAEP assignment at this or another school district. A student placed in the DAEP may not visit any District campus unless arrangements have been made with the campus principal.

**Impact on Extracurricular Code of Conduct**. The administration of consequences under the Eanes ISD Extra Curricular Code of Conduct ("ECC") is separate from the administration of any discipline under the SCC. Discipline imposed under the SCC will not limit or prevent the imposition of consequences in accordance with the ECC. Moreover, the modification of any discipline imposed under the SCC shall not affect the consequences that may have been imposed under the ECC.

**Impact on Graduation Activities.** For graduating seniors who are in DAEP during the last week of school, the DAEP placement will continue through the last instructional day. The student will be allowed to participate in commencement exercises and related graduation activities unless otherwise specified in the DAEP placement order.

**Impact on Other Privileges**. Exemptions from exams and other privileges shall be determined by the principal. The modification of any discipline imposed under the SCC does not automatically constitute a basis for restoring an exemption or other privileges. Summer programs provided by the district may serve students assigned to the DAEP in conjunction with other students.

**Impact on Academics**. While every effort is made for students to continue to perform at grade level, the DAEP setting is not intended to replicate a regular classroom, including the manner in which instruction is delivered. Texas Education Code 37.008(a)(4) requires each school district to provide a disciplinary alternative education program that focuses on English language arts, mathematics, science, history, and self- discipline.

A student's four-year graduation plan may not be altered when the student is assigned to a DAEP. The District will offer a student removed to a DAEP an opportunity to complete a foundation curriculum course in which the student was enrolled at the time of removal, before the beginning of the next school year, through any method available, including a correspondence course, distance learning, or summer school. The parent or guardian of a student placed in DAEP shall be given written notice of the student's opportunity to complete coursework required for graduation, at no cost to the student.

The District shall administer the required pre-and post-assessments for students assigned to DAEP for a period of 90 days or longer in accordance with administrative procedures for administering other diagnostic or benchmark assessments.

**Transition Services.** In accordance with law and District procedures, campus staff shall provide transition services to a student returning to the regular classroom from DAEP. See policy FOCA (LEGAL) for more information.

**Transportation.** A student placed in DAEP will not be provided transportation unless he or she is a student with a disability who has transportation designated as a related service in the student's IEP.

**Periodic Review.** The District will review a student's DAEP placement and academic status every 120 calendar days. In the case of a high school student, the student's progress toward graduation will be reviewed and a graduation plan will be established. At the review, the student or the parent/guardian will have an opportunity to present reasons for the student's return to the regular classroom or campus. The student may not be returned to the classroom of a teacher who removed the student without that teacher's consent.

**Additional Misconduct.** If during the term of DAEP placement the student engages in additional conduct for which placement in a DAEP or expulsion is required or permitted, additional conferences may be conducted and additional discipline may be imposed.

**Effect of Student Withdrawal.** When a student withdraws from school before a DAEP placement order is completed, the District may complete the proceedings and issue a DAEP placement order. If the student re- enrolls in the District during the same or subsequent school year, the District may enforce the DAEP placement order at that time, minus any portion of the placement that was served by the student during enrollment in another district. If the administrator does not issue a DAEP placement order after the student withdraws, the next district in which the student enrolls may complete the proceedings and issue a DAEP placement order.

**Student Transfers.** Students assigned to DAEP in another Texas district, a Texas open-enrollment charter school, or an out-of-state school district at the time of enrollment into the District will be placed into the District's DAEP to complete the term of their DAEP placement. In order to continue an out-of-state DAEP placement, the basis for the DAEP placement must also be a reason for DAEP placement in the District. If the out-of-state DAEP placement period exceeds one year, the District will reduce the period of placement so that the total placement does not exceed one year unless the District determines that the student is a threat to the safety of others or extended placement is in the best interests of the student.

**Review After Receiving Notice of Criminal Proceedings.** The review and appeal process described below does not apply if the student was placed in DAEP as required by law for conduct occurring on or within 300 feet of school property, at a school-sponsored or school-related activity, or for a false alarm or report or terroristic threat involving a public school.

If the District receives notice that prosecution of a student's case was refused and no formal proceedings, deferred adjudication, or deferred prosecution will be initiated or a court or jury found the student not guilty or did not engage in delinquent conduct or conduct indicating a need for supervision and dismissed the student's case with prejudice, the District will review the student's DAEP placement and will schedule a review with the student's parent/guardian no later than the third day after receiving notice. The student will not be returned to the regular classroom before the review. After reviewing the notice and receiving information from the student's parent/guardian, the administrator may only continue the student's DAEP placement if the administration has reason to believe the student's presence in the regular classroom threatens the safety of others.

The administrator's decision may be appealed to the Board. In the event of an appeal, at the next scheduled meeting the Board will: (1) review the notice, (2) hear statements from the student, the student's parent/guardian, and the administrator, and (3) confirm or reverse the decision of the administrator.

If the Board confirms the decision of the administrator, the student and the student's parent/guardian have the right to appeal to the Commissioner of Education. The student may not be returned to the regular classroom while the appeal is pending.

## PARTICULAR RULES FOR REGISTERED SEX OFFENDERS

The general SCC rules for DAEP placement apply to registered student sex offenders (see *definitions*) except as modified in this section.

**Placement.** Upon receiving notification in accordance with state law that a student is currently required to register as a sex offender, the District must remove the student from the regular classroom and determine appropriate placement. The placement shall be in DAEP unless: (1) the student is ordered to attend a Juvenile Justice Alternative Education Program (JJAEP) by a court, or (2) if permitted by agreement between the District and the JJAEP.

**Length of Placement.** Registered sex offenders under court supervision will be placed in DAEP for a minimum of 90 school days, which is the equivalent of one semester. Registered sex offenders who are not under any form of court supervision but are assigned to DAEP must serve a minimum of 90 school days, which is the equivalent of one semester.

**Transfers.** Registered sex offenders (whether under court supervision or not) that transfer into the District will be required to complete the DAEP assignment assessed by the previous school district, but will receive credit for any time already spent in DAEP.  In making a decision regarding the placement of a registered sex offender that transfers into the District, the District will consider the recommendation of the review committee as described in the *Periodic Review* section described below.

**Periodic Review**. After 80 school days in DAEP, a review committee will determine by majority vote and recommend to the Superintendent or designee whether the student should remain in DAEP or be returned to the regular classroom. In the case of a high school student, the student's progress toward graduation and the student's graduation plan shall also be reviewed.  At the review, the student or the student's parent/guardian shall have the opportunity to present arguments for the student's return to the regular classroom or campus.

The District will follow the committee's decision to return the student to the regular classroom unless the student's presence in the regular classroom is a threat to the safety of others, is detrimental to the educational process, or is not in the best interests of the District's students. Conversely, the District will follow the committee's decision to continue the student's placement in DAEP unless the student's presence in the regular classroom is not a threat to the safety of others, is not detrimental to the educational process, or is not contrary to the best interests of the District's students.

If the student remains in DAEP, the review committee will re-consider the student's placement before the beginning of the next school year.

The placement review of a student with a disability who receives special education services must be made by the ARD committee.

**Appeals.** DAEP placement may be appealed as described in District policy FNG. However, the appeal is limited to the factual question of whether the student is required to register as a sex offender under the law. Any decision of the District's Board of Trustees is final and may not be appealed.

## EXPULSION

**REASONS FOR MANDATORY EXPULSION**

**School-Related.** A student must be expelled for any of the following misconduct that occurs on school property or while attending a school-sponsored or school-related activity on or off school property:

- Brings to school or possesses at school, including any setting that is under the District's control or supervision for the purpose of a school activity, a firearm, as defined by federal law (see *definitions*).
- Unlawfully carries on or about the student's person a handgun* or a location-restricted knife, as defined by state law. (see *definitions*)

    *NOTE*: A student will not be expelled solely for using, exhibiting, or possessing a firearm in the following circumstances: (1) at an approved target range facility not located at a school campus, (2) while participating in or preparing for a school-sponsored shooting sports competition, or (3) while participating in or preparing for a shooting sports educational activity sponsored or supported by the Parks and Wildlife Department or a shooting sports sanctioning organization with the Department so long as the firearm is not brought on school property.

- Possesses, manufactures, transports, repairs, or sells a prohibited weapon, as defined by state law (see *definition*)
- Engages in conduct that contains the elements of the following offenses as defined in the Texas Penal Code: (1) aggravated assault, (2) sexual assault, (3) aggravated sexual assault (4) arson, (5) murder, (6) capital murder, (7) criminal attempt to commit murder or capital murder, (8) indecency with a child, (9) aggravated kidnapping, (10) aggravated robbery, (11) manslaughter, (12) criminally negligent homicide, or (13) continuous sexual abuse of a young child or disabled individual.
- Sells, gives, delivers, possesses, uses, or is under the influence of a controlled substance (see *definitions*) or a dangerous drug (see *definitions*) if the behavior is punishable as a felony.
- Commits a serious act or offense while under the influence of an alcoholic beverage (see *definitions*) if the behavior is punishable as a felony.

A student will also be expelled for any of the following offenses that occur on school property, within 300 feet of school property as measured from any point on the District's real property boundary line, or while attending a school-sponsored or school-related activity on or off school property:

- Sells, gives, delivers, possesses, uses, or is under the influence of any amount of marijuana, a controlled substance, dangerous drug, or alcoholic beverage, if it is the second infraction in the same school year and the conduct is not punishable as a felony. A student with a valid

prescription for low-THC cannabis as authorized by Chapter 487 of the Health and Safety Code does not violate this provision with regard to possession and use.

- Commits a serious act while under the influence of an alcoholic beverage if it is the second infraction in the same school year and the conduct is not punishable as a felony.
- Engages in misconduct that contains the elements of an offense relating to abusable volatile chemicals (see definitions) if it is the second infraction in the same school year.

**Regardless of Location.** A student must be expelled if the student engages in the following misconduct, regardless of whether the conduct occurred on or off campus:

- Retaliates against a school employee or volunteer by committing a state-mandated expellable offense.
- Issues a false alarm or report (see *definitions*) (including a bomb threat) or a terroristic threat (see *definitions*) involving a public school and it is the second infraction.

## REASONS FOR DISCRETIONARY EXPULSION

**School-Related.** A student may be expelled for any of the following offenses that occur on school property, within 300 feet of school property as measured from any point on the District's real property boundary line, or while attending a school-sponsored or school-related activity on or off school property:

- Commits an assault (see *definitions*) resulting in bodily injury to a school employee or volunteer.
- Engages in deadly conduct (see *definitions*).
- Engages in a second or multiple infraction(s) that are reasons for mandatory DAEP placement.

**Three Hundred Feet.** Additionally, a student may be expelled for any of the following offenses that occur within 300 feet of school property as measured from any point on the District's real property boundary line:

- Possesses a firearm, as defined by federal law (see *definitions*).
- Unlawfully carries on or about the student's person a handgun or a location-restricted knife, as defined by state law. (see *definitions*)
- Possesses, manufactures, transports, repairs, or sells a prohibited weapon, as defined by state law (see *definitions*).
- Engages in the following misconduct as defined in the Texas Penal Code: (1) aggravated assault, (2) sexual assault (3) aggravated sexual assault (4) arson, (5) murder, (6) capital murder, (7) criminal attempt to commit murder or capital murder, (8) indecency with a child, (9) aggravated kidnapping, (10) aggravated robbery, (11) manslaughter, (12) criminally negligent homicide, or (13) continuous sexual abuse of a young child or children.
- Sells, gives, delivers, possesses, uses, or is under the influence of marijuana, a controlled substance (see *definitions*), a dangerous drug (see *definitions*), or alcohol if the behavior is punishable as a felony.

- Commits a serious or offense while under the influence of an alcoholic beverage (see *definitions*) if the behavior is punishable as a felony.

**At School.**  A student may be expelled for engaging in documented serious misbehavior (see *definitions)* while the student is placed in DAEP or on the DAEP site/campus despite documented behavioral interventions.

**Regardless of Location.** A student may be expelled if the student engages in the following misconduct regardless of whether the conduct occurred on or off campus:

- Commits aggravated assault, sexual assault, aggravated sexual assault, murder, capital murder, criminal attempt to commit murder, or aggravated robbery against another student.
- Retaliates against a school employee or volunteer by committing an assault (see *definitions*) resulting in bodily injury.
- Issues a false alarm or report (see *definitions*) (including a bomb threat) or a terroristic threat (see *definitions*) involving a public school.
- Engages in criminal mischief if the damage is $1,500 or more.
- Commits a state-mandated expellable offense on the school property of another Texas school district or while attending a school-sponsored or school-related activity of another Texas school district.
- Engages in breach of computer security by accessing a computer, computer network or computer system owned by or operated on behalf of a school district and knowingly alters, damages, or deletes school district property or information or breaches any other computer, computer network, or computer system.

**Bullying.** A student may be removed from class and placed in DAEP or expelled if the student:

- Engages in bullying (see *definitions)* that encourages a student to commit or attempt to commit suicide;
- Incites violence against a student through group bullying; or
- Releases or threatens to release intimate visual material (see *definitions*) of a minor or a student who is 18 years of age or older without the student's consent.

**Title 5 Felonies Regardless of Location.** In addition to the expellable conduct listed above, a student may also be expelled and placed in DAEP or JJAEP if the student:

- Is arrested for, charged with, or convicted of a Title 5 felony offense (see *definitions*) or aggravated robbery;
- Received deferred adjudication or deferred prosecution for a Title 5 felony offense or aggravated robbery;
- Is on probation for a Title 5 felony offense or aggravated robbery;

- Was found by a court or jury to have engaged in delinquent conduct for a Title 5 felony offense or aggravated robbery, or
- Has been referred to a juvenile court for delinquent conduct based on a Title 5 felony offense or aggravated robbery.

Before a decision is made, the student must have a hearing before the Board or its designee, who must determine that, in addition to the circumstances above that allow for the expulsion, the student's presence in the regular classroom:

- Threatens the safety of other students or teachers;
- Will be detrimental to the educational process; or
- Is not in the best interests of the District's students.

Any decision of the Board or its designee under this section is final and may not be appealed.

In this circumstance, expulsion to an alternative setting may be ordered regardless of: (1) the date on which the conduct occurred, (2) the location at which the conduct occurred, (3) whether the student was enrolled in the District at the time the conduct occurred, or (4) whether the student successfully completed any court disposition requirements regarding the conduct.

A student may be subject to an expulsion under this circumstance until: (1) the student graduates from high school, (2) the charges are dismissed or reduced to a misdemeanor, (3) the student completes the term of the placement, or (4) the District assigns the student to another program. The student will be entitled to the same periodic review afforded to other students in alternate settings.

A student who enrolls in the District before completing a placement under this section from another school district must complete the term of the placement.

## EMERGENCY EXPULSION

An administrator may order the immediate expulsion of a student if the administrator reasonably believes the emergency expulsion is necessary to protect persons or property from imminent harm. The reason for the emergency expulsion must also be a reason for which expulsion could be ordered on a non-emergency basis. At the time of the emergency expulsion, the student will be told the reason for the action.

No later than the tenth day after the date of emergency expulsion, the student will be given a hearing as required for a regular expulsion; see below.

**PROCEDURE FOR EXPULSION**

**Hearing.** Students alleged to have committed an expellable offense will receive a hearing before the campus behavior coordinator/other administrator within a reasonable time following the alleged misconduct. The student's parent/guardian will be informed of the basis for the proposed expulsion and be invited in writing to attend the hearing. After making an effort to inform the student and parent/guardian of the hearing, the District may hold the hearing regardless of whether the student or the student's parent/guardian attends. At the hearing, the student is entitled to:

- Representation by an adult, including the student's parent/guardian, who can provide guidance to the student and who is not an employee of the District;
- An opportunity to question the District's witnesses; and
- An opportunity to testify and to review and present evidence and witnesses in the student's defense.

**Interim Placement.** Until an expulsion hearing can be held, the student may be placed in another appropriate classroom, in-school suspension, out-of-school suspension, or DAEP.

**Expulsion Order.** If the outcome of the expulsion hearing is that the student will be expelled, the campus behavior coordinator or other administrator will issue an expulsion order and provide a copy to the student and the student's parent/guardian. If the duration of the expulsion differs from the guidelines in this SCC, the expulsion order will give notice of the inconsistency.

The District will send a copy of the expulsion order to the juvenile court no later than the second business day after the expulsion hearing. A copy of the expulsion order will be included with any records sent to a school where the student seeks to enroll. The enrolling school district has discretion to enforce the expulsion order.

**LENGTH OF EXPULSION**

The duration of the expulsion will be determined on a case-by-case basis using the criteria identified in the *Discipline Considerations* section of this SCC.

Mandatory expulsions may result in expulsion for up to 180 school days. Discretionary expulsions may result in expulsion for up to 90 school days.

Students who bring a firearm (as defined by federal law) to school will be expelled from the regular classroom for at least one calendar year except as modified by the administrator on a case-by-case basis.

Students expelled at the end of one school year may be required to complete the term of their expulsion at the beginning of the next school year.

**Exceeds One Calendar Year.** An expulsion will not exceed one calendar year unless, after review, the District determines that: (1) the student is a threat to the safety of other students or to District employees; or (2) extended expulsion is in the best interest of the student.

## APPEALS

Student/parent appeals regarding a student's expulsion should be addressed in accordance with Board policy FNG(LOCAL). A copy of the policy may be obtained at the campus office or on the District's website under the *Board Policy Online* page: http://www.eanesisd.net/school-board.  Appeals shall begin at Level Three with the Board.

Consequences will not be delayed or deferred pending the outcome of the appeal.

## OTHER EXPULSION ISSUES

**Academic Impact.** Students will not receive academic credit for work missed during the period of expulsion unless the student is enrolled in a (JJAEP) or other District-approved program or as required by IDEA or Section 504.

**Transition Services.**  In accordance with law and District procedures, campus staff shall provide transition services to a student returning to the regular classroom from JJAEP.  See policy FODA (LEGAL) for more information.

**Participation in Activities.** Expelled students are prohibited from being on school grounds or from attending or participating in school-sponsored or school-related activities while expelled.

**Additional Misconduct.** If during the term of expulsion, the student engages in additional conduct for which placement in a DAEP or expulsion is required or permitted, additional proceedings may be conducted and additional discipline may be imposed.

**Age Restrictions.** Students under the age of ten that engage in expellable behavior will not be expelled, but will be placed in DAEP.

**Effect of Student Withdrawal.** If a student withdraws from the District before the expulsion hearing is conducted, the District may proceed with conducting the hearing after sending written notice to the parent/guardian and student. If the student re-enrolls during the same or subsequent school year, the District may enforce the expulsion order at that time; students will be credited for any expulsion period that was served by the student while enrolled in another district.

If the administrator does not issue an expulsion order after the student withdraws, the next district in which the student enrolls may complete the proceedings and issue an expulsion order.

**Student Transfers.** The District will continue the expulsion of students expelled from either another Texas school district or from an out-of-state school district for behavior that is also a reason for expulsion in the District, until the term of expulsion has been served. If the out-of-state expulsion exceeds one year, the District will reduce the period of the expulsion so that the total expulsion does not exceed one year unless the District determines that the student is a threat to the safety of others or extended placement is in the best interest of the student.

## DEFINITIONS

**Abusing:** Using improperly or excessively.

**Abusable Volatile Chemicals:** Those substances as defined in Texas Health and Safely Code § 485.001.

**Alcoholic Beverage:** Those substances as defined in Texas Alcoholic Beverage Code § 1.04.

**Armor-Piercing Ammunition:** Handgun ammunition that is designed primarily for the purpose of penetrating metal or body armor and to be used primarily in pistols and revolvers or other firearms.

**Assault:** For discipline purposes, intentionally, knowingly, or recklessly causing bodily injury to another.

**Bodily Injury:** Physical pain, illness, or impairment of a physical condition.

**Bullying:** A single significant act or a pattern of acts by one or more students directed at another student that exploits an imbalance of power and involves engaging in written or verbal expression, expression through electronic means, or physical conduct that:

1. Has the effect or will have the effect of physically harming a student, damaging a student's property, or placing a student in reasonable fear of harm to the student's person or of damage to the student's property;
2. Is sufficiently severe, persistent, or pervasive enough that the action or threat creates an intimidating, threatening, or abusive educational environment for a student;
3. Materially and substantially disrupts the educational process or the orderly operation of a classroom or school; or
4. Infringes on the rights of the victim at school.

This state law on bullying prevention applies to:

1. Bullying that occurs on or is delivered to school property or to the site of a school-sponsored or school-related activity on or off school property;
2. Bullying that occurs on a publicly or privately owned school bus or vehicle being used for transportation of students to or from school or a school-sponsored or school-related activity; and
3. Cyberbullying that occurs off school property or outside of a school-sponsored or school-related activity if the cyberbullying interfered with a student's educational opportunities or substantially disrupts the orderly operation of a classroom, school, or school-sponsored or school-related activity.

See District policy FFI for additional information regarding bullying.

**Club:** An instrument specially designed, made, or adapted for the purpose of inflicting serious bodily injury or death by striking a person with the instrument, including a blackjack, nightstick, mace, and tomahawk.

**Controlled Substance:** Substances as defined in Chapter 481 of the Texas Health & Safety Code or 21 U.S.C. § 8O1 et seq.  This definition includes synthetic drugs such as synthetic cannabinoids (a.k.a. "Spice" or "K2") and substituted cathinones (a.k.a. "bath salts").

**Criminal Street Gang:** Three or more persons having a common identifying sign or symbol or an identifiable leadership which continuously or regularly associate in the commission of criminal activities.

**Cyberbullying:** Bullying that is done through the use of any electronic communication device, including through the use of a cellular or other type of telephone, a computer, a camera, electronic mail, instant messaging, text messaging, a social media application, an Internet website, or any other Internet-based communication tool.

**Dangerous Drug:** Substances as defined in Chapter 483 of the Texas Health and Safety Code.

**Dating Violence:** When a person in a current or past dating relationship uses physical, sexual, verbal, or emotional abuse to harm, threaten, intimidate, or control another person in the relationship. Dating violence also occurs when a person commits these acts against a person in a marriage or dating relationship with the individual who is or was once in a marriage or dating relationship with the person committing the offense, as defined by Section 71.0021 of the Family Code.

**Deadly Conduct:** Recklessly engaging in conduct that places another in imminent danger of serious bodily injury, such as by knowingly discharging a firearm in the direction of an individual, habitation, building, or vehicle.

**E-Cigarette:** An electronic cigarette or any other device that simulates smoking by using a mechanical heating element, battery or electronic circuit to deliver nicotine or other substances to the individual inhaling from the device or a consumable liquid solution or other material aerosolized or vaporized during the use of an electronic cigarette or other device described by this provision. Includes any device that is manufactured, distributed or sold as an e-cigarette, e-cigar, or epipe or under another name or description, and a component, part or accessory for the device.

**Explosive Weapon:** Any explosive or incendiary bomb, grenade, rocket, or mine that is designed, made, or adapted for the purpose of inflicting serious bodily injury, death, or substantial property damage, or for the principal purpose of causing such a loud report as to cause undue public alarm or terror. It includes a device designed, made or adapted for delivery or shooting an explosive weapon.

**False Alarm or Report:** Under Texas Penal Code 42.06, knowingly initiating, communicating, or circulating a report of a present, past, or future bombing, fire, offense, or other emergency that is known to be false or baseless and that would ordinarily: (1) cause action by an official or volunteer agency organized to deal with emergencies; (2) place a person in fear of imminent serious bodily injury; or (3) prevent or interrupt the occupation of a building, room, or place of assembly.

**Fighting:** Two or more persons engaged in any mutually violent or physically aggressive contact toward each other such as scuffling, pushing, shoving, or hitting.

**Firearm (Federal Law):** (1) any weapon, including a starter gun, that will, is designed to, or may readily be converted to expel a projectile by the action of an explosive; (2) the frame or receiver of any such weapon; (3) any firearm muffler or firearm silencer, defined as any device for silencing, muffling, or diminishing the report of a portable firearm; or (4) any destructive device, such as any explosive, incendiary or poison gas bomb, or grenade.

**Gang:** An organization, combination, or association of persons composed wholly or in part of students that: (1) seeks to perpetuate itself by taking in additional members on the basis of the decision of the membership rather than on the free choice of the individual, or (2) that engages in illegal and/or violent activities. In identifying gangs and associated gang attire, signs, or symbols, the District will consult with law enforcement authorities.

**Gender-Based Harassment**: Physical, verbal, or nonverbal conduct based on the student's gender, the student's expression of characteristics perceived as stereotypical for the student's gender, or the student's failure to conform to stereotypical notions of masculinity or femininity, if the conduct is so severe, persistent, or pervasive that the conduct affects a student's ability to participate in or benefit from an educational program or activity, or creates an intimidating, threatening, hostile, or offensive educational environment; has the purpose or effect of substantially or unreasonably interfering with the student's academic performance; or otherwise adversely affects the student's educational opportunities.

**Graffiti:** Making marks of any kind on the tangible property of another without the effective consent of the owner. Includes markings with paint, an indelible pen or marker, or an etching or engraving device. The markings may include inscriptions, slogans, drawings, or paintings.

**Handgun:** Handgun is defined by Texas Penal Code 46.01 as any firearm that is designed, made, or adapted to be fired with one hand.

**Harassment:** Includes:

1. Conduct that meets the definition established in district policies DIA (LOCAL) and FFH (LOCAL);

2. Conduct that threatens to cause harm or bodily injury to another person, including a District student, employee, board member, or volunteer; is sexually intimidating; causes physical damage to the property of another student; subjects another student to physical confinement or restraint; or maliciously and substantially harms another student's physical or emotional health or safety, as defined in Texas Education Code 37.001(b)(2); or

3. Conduct that is punishable as a crime under Texas Penal Code 42.07, including the following types of conduct if carried out with the intent to harass, annoy, alarm, abuse, torment, or embarrass another:

    a. Initiating communication and, in the course of the communication, making a comment, request, suggestion, or proposal that is obscene, as defined by law;

    b. Threatening, in a manner reasonably likely to alarm the person receiving the threat, to inflict bodily injury on the person or to commit a felony against the person, a member of the person's family or household, or the person's property;

    c. Conveying, in a manner reasonably likely to alarm the person receiving the report, a false report, which is known by the conveyor to be false, that another person has suffered death or serious bodily injury;

    d. Causing the telephone of another to ring repeatedly or making repeated telephone communications anonymously or in a manner reasonably likely to harass, annoy, alarm, abuse, torment, embarrass, or offend another;

    e. Making a telephone call and intentionally failing to hang up or disengage the connection;

    f. Knowingly permitting a telephone under the person's control to be used by another to commit an offense under this section;

    g. Sending repeated electronic communications in a manner reasonably likely to harass, annoy, alarm, abuse, torment, embarrass, or offend another;

    h. Publishing on an internet website, including a social media platform, repeated electronic communications in a manner reasonably likely to cause emotional distress, abuse, or torment to another person, unless the communications are made in connection with a matter of public concern, as defined by law; or

    i. Making obscene, intimidating, or threatening telephone calls or other electronic communications from a temporary or disposable telephone number provided by an internet application or other technological means.

**Hazing:** Defined by Texas Education Code 37.151 as an intentional, knowing, or reckless act, on or off the campus, by one person alone or acting with others, directed against a student for the purposes of pledging, initiation into, affiliation with, holding office in, or maintaining membership in a student organization (including student government, band or a musical group, or an academic, athletic, dance or cheerleading team) if the act:

1. Is any type of physical brutality;

2. Subjects the student to an unreasonable risk of harm or that adversely affects the student's mental or physical health or safety, including sleep deprivation, exposure to the elements,

confinement in a small space, calisthenics, or consumption of food, liquids, drugs, or other substances;

3. Induces, causes, or requires the student to perform a duty or task that violates the Texas Penal Code; or

4. Involves coercing a student to consume a drug or alcoholic beverage in an amount that would lead a reasonable person to believe the student is intoxicated.

**Hemp:** As defined in Title 5, Chapter 121 of the Texas Agriculture Code.

**Hit List:** List of people targeted to be harmed using a firearm, knife, or any other object to be used with intent to cause bodily harm.

**Indecent Exposure:** Those acts defined in Texas Penal Code section 21.08.

**Intent:** The design, resolve, determination, or state of mind with which a person acts, ordinarily proven through inferences drawn from the act and/or circumstances surrounding the act.  Intent includes the conscious objective or desire to engage in the conduct or cause the result, an awareness that the conduct is reasonably certain to cause the result, or disregard of a substantial and justifiable risk when there is an awareness that the circumstances exist or the result will occur.  The fact that a student may not have been motivated by a desire to violate the SCC does not preclude imposing a disciplinary consequence so long as the student intended to engage in the underlying conduct that violated the SCC.

**Intimate Visual Material:** Visual material defined by Texas Civil Practice and Remedies Code 98B.001 and Texas Penal Code 21.16.

**Knife:** A bladed hand instrument that is capable of inflicting serious bodily injury or death by cutting or stabbing.

**Knuckles:** Any instrument consisting of finger rings or guards made of a hard substance that is designed, made, or adapted for the purpose of inflicting serious bodily injury or death by striking a person with a fist enclosed in the knuckles.

**Location-Restricted Knife:** A knife with a blade over 5 ½ inches.

**Machine Gun:** Any firearm capable of shooting more than two shots automatically, without manual reloading, by a single function of the trigger

**Paraphernalia:** Any article or device used or intended for use to inject, ingest, inhale, or otherwise introduce marijuana, a controlled substance, or a dangerous drug into the human body, including but not limited to roach clips, rolling papers, needles, baggies with residue, razor blades, or pipes.

**Persistent Misbehavior:** Two or more violations of the SCC or repeated occurrences of the same violation.

**Possession:** To have in or on: (1) a student's person or in the student's personal property, such as the student's clothing, purse, or backpack; (2) in any vehicle used by the student for transportation to or from school or school- related activities, such as an automobile, truck, motorcycle, or bicycle; (3) any other school property used by the student such as a locker or desk; or (4) telecommunications or electronic devices.

**Prohibited Weapons:** A prohibited weapon includes the following items: armor-piercing ammunition, chemical dispensing device, explosive weapon, knuckles, machine gun, short-barrel firearm, switchblade knife, zip gun, improvised explosive device, or a tire deflation device.

**Public Lewdness:** Those acts defined in Texas Penal Code § 21.07.

**Reasonable Belief:** That which an ordinary person of average intelligence and sound mind would believe. Chapter 37 requires certain disciplinary decisions when the superintendent or designee has a reasonable belief that a student engaged in conduct punishable as a felony offense. In forming such a reasonable belief, the superintendent or designee may use all available information and must consider the information furnished in the notice of a student's arrest under Article 15.27 of the Code of Criminal Procedure.

**Retaliation:** Harming or threatening to harm another: (1) on account of their service as a District employee or volunteer, (2) to prevent or delay another's service to the District, or (3) because the person intends to report a crime

**Self-Defense:** To claim self-defense, the student must (1) be without fault in provoking the encounter and not act as the aggressor, and (2) use the minimum force required to remove himself or herself from immediate danger of harm. Actions that escalate or continue the encounter will not be considered self-defense. Interactions prior to the encounter will also be considered.

**Serious Misbehavior:** To engage in (1) deliberate violent behavior that poses a direct threat to the health or safety of others, (2) extortion to gain money or other property by force or threat, (3) coercion, meaning to threaten to either commit an offense; inflict bodily harm; accuse a person of any offense; expose a person to hatred, contempt, or ridicule; or to harm the credit of any person, (4) public lewdness

as defined in Texas Penal Code  § 21.07, (5) indecent exposure as defined in Texas Penal Code § 21.08, (6) criminal mischief as defined in Texas Penal Code § 28.03, (7) personal hazing as defined in Texas Education Code § 37.152, or (8) harassment of a student or District employee as defined in Texas Penal Code § 42.07 (a)(1).

**Sex Offender:** A student required to register as a sex offender under Chapter 62 of the Code of Criminal Procedure for an offense committed on or after September 1, 2007. The term does not include a student who: (1) is no longer required to register as a sex offender under Chapter 62, (2) is exempt from registering as a sex offender under Chapter 62, or (3) receives an early termination of the obligation to register as a sex offender under Chapter 62.

**Sexting:** The electronic transfer of a sexually suggestive or sexually explicit photo, video, or message by using a telecommunications or electronic device

**Sexual Harassment:** Unwelcome sexual advances, requests for sexual favors, and other verbal or physical conduct of a sexual nature that is so severe, persistent or pervasive that it has the purpose or effect of unreasonably interfering with a student's performance; creates an intimidating, hostile, or offensive educational environment; affects a student's ability to participate in or benefit from an educational program or activity; otherwise adversely affects the student's educational opportunities, or is prohibited by District policy FFH or FNC.

**Short-Barrel Firearm:** A rifle with a barrel length of less than 16 inches or a shotgun with a barrel length of less than 18 inches, or any weapon made from a rifle or shotgun if, as altered, has an overall length of less than 26 inches.

**Switchblade Knife:** Any knife with a blade that folds, closes, or retracts into the handle or sheath and that opens automatically by pressing a button or other device located on the handle or opens or releases a blade from the handle or sheath by the force of gravity or centrifugal force. It does not include a knife that has a spring, detent, or other mechanism designed to create a bias toward closure and that requires exertion applied to the blade by hand, wrist or arm to overcome the bias toward closure and open the knife (also known as one- handed openers or assisted openers).

**Telecommunications Device:** Any type of device that: (1) emits an audible signal, vibrates, displays a message, or otherwise summons or delivers a communication to the possessor, or (2) permits the recording, transmission, and/or receipt of messages, voices, images, or information in any format or media, electronic or otherwise. It does not include an amateur radio under control of someone with an amateur radio license.

**Terroristic Threat:** Threats to commit any offense involving violence to any person or property with intent to: (1) cause a reaction by an official or volunteer agency organized to deal with emergencies; (2) place any person in fear of imminent serious bodily injury; (3) prevent or interrupt the occupation or use of a building, room, place of assembly, place to which the public has access, place of employment or occupation, aircraft, automobile, or other form of conveyance, or other public place; (4) cause impairment or interruption of public communications, public transportation, public water, gas, or power supply or other public service; (5) place the public or a substantial group of the public in fear of serious bodily injury; or (6) influence the conduct or activities of a branch or agency of the federal government, the state, or a political subdivision of the state (including the District).

**Title 5 Offenses:** Those crimes listed in Title 5 of the Texas Penal Code that typically involve injury to a person and may include: murder; capital murder; manslaughter; criminally negligent homicide; unlawful restraint; kidnapping; aggravated kidnapping; trafficking of persons; unlawful transport; assault; aggravated assault; sexual assault; aggravated sexual assault; sexual coercion; bestiality; improper relationship between educator and student; indecency with a child; injury to a child, an elderly person, or a disabled person; abandoning or endangering a child; improper photography or visual recording; deadly conduct; terroristic threat; aiding a person to commit suicide; harassment by a person in a correctional facility; continuous sexual abuse of a young child or disabled individual; and tampering with a consumer product.

**Under the Influence:** When in the employee's professional judgment, the student does not have the normal use of mental or physical faculties likely attributable to the student's use of a prohibited substance. Such impairment may be evidenced by the symptoms typically associated with drug or alcohol use, including but not limited to an odor of alcohol on a student's breath or other abnormal or erratic behavior or by the student's admission. The student need not be legally intoxicated.

**Use:** With respect to substances, voluntarily injecting, ingesting, inhaling, or otherwise introducing a prohibited substance into the body. With respect to objects or devices, puffing into action or service or carrying out an action or purpose with the object or device.

**Zip Gun:** A device or combination of devices that was not originally a firearm and is adapted to expel a projectile through a smooth-bare or rifled-bare barrel by using the energy generated by an explosion or burning substance.

Exhibit

B

exhibitsticker.com

```
1stdsc22.p 79-4                    HILL COUNTRY MIDDLE SCHOOL            07/24/24            Page:1
05.24.06.00.00                     STUDENT DISCIPLINE REPORT                                7:51 AM
```

|  | Off/Act | Per | Sch | Location | P N | Points | Day/ Hrs | Time | Served | Diff | Reason | Incident/ |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
|  | Type | | | | | | | | | | | Status |

Sch: 041  Gr: 08 - 2029 Type: R            Adv:                    HM:

2024 Entity: 041

```
   Offense  05/23/2024       AB  Assault- attemt       041  COURT YARD    Y    0.00                        32431
   Disc Officer:  CASSIE WINTER       Bus:         Referred By : CASSIE WINTER          Date Entered: 06/04/24
       Initiated physical contact by pushing another student 3 times, slaps and then hits that same
       student two times, pushes that same student, who is retreating, against a railing and punches him
       in the head and face approximately 8 times, and chases that same student approximately 40 feet,
       pushes him down and hits him in the head approximately 7 times while the student is crouched with
       his arms covering his head.
   Action          03  EXPL CAMPUS AEP      041                   Y    0.00  Day  45.00   1.00 SCH YR ENDED  Open
   Follow-Up By:  CASSIE WINTER           Susp None
       Due to the date of this offense the DEAP placement would begin next school year on August 14, 2024.
   Detail 05/24/2024 11:06A                                       N                 1.00               Served
   Follow-Up By:


   Offense  05/22/2024       AZ  Fighting              041  COURT YARD    N    0.00                        32428
   Disc Officer:  CASSIE WINTER       Bus:         Referred By : CASSIE WINTER          Date Entered: 05/31/24
       Student pushed another student 3 times. A fight of pushing and punching between the two students
       continued for approximately 15 seconds.
   Action          CAB CONF WITH ADMIN    041                    N    0.00  Hrs   .00    .00 OTHER         Served
   Follow-Up By:  CASSIE WINTER           Susp None
       We learned about this as a result of an investigation of an incident that occurred on 5/23. The
       principal and AP met with parents on 5/31.


   ************************** End of report ***************************
```

Exhibit

C



# SFDR – CISD
## Discipline Manual

## 2023 - 2024

# DISCIPLINE MANUAL RECIEPT

Please fill out and return to:

**Felisha Gomez**

**[peimsdataquality@sfdr-cisd.org](mailto:peimsdataquality@sfdr-cisd.org)**

Annex III, Building 1

PEIMS Data Quality, Compliance and Accountability

**Print** _____

**Sign** _____

**Date** _____





| 1 | **Attendance & Discipline Entry Planner/PEIMS Reporting Requirements** |
|---|---|
| 2 | **Disciplinary Action Reason (<u>Offense</u>) Code Table** |
| 3 | **<u>Mitigating Factors</u> Code Table** |
| 4 | **Disciplinary <u>Action</u> Code Table** |
| 5 | **<u>Difference Reason</u> Code Table** |
| 6 | **PEIMS: Questions and Answers** |
| 7 | **FAQ's Skyward Discipline Module** |
| 8 | **Secondary Consequence Guide** |
| 9 | **PEIMS  Discipline Data Chart and Definitions** |
| 10 | **Bullying Checklist** |
| 11 | **Chapter 37 Discipline Chart** |
| 12 | **2024 Discipline Training PowerPoint** |

Revised:06/20/2023



# Campus Attendance and Discipline Entry Planner
# 2023 - 2024

| Campus | Responsible for completing data entry for the reported six weeks in accordance with the dates found under *column 4* | Please continue to input missing and incomplete data for internal auditing purposes. |
|---|---|---|
| PEIMS Data Quality | Responsible for generating discipline reports from Skyward and submitting data to the appropriate CIO | |

| Six Weeks | Begins | Ends | *CAMPUS REPORTED DATA ENTERED BY 4:00 P.M.* | School Board Meeting* |
|---|---|---|---|---|
| 1 | Monday, August 14, 2023 | Friday, September 22, 2023 | *Tuesday, September 26, 2023* | Monday, October 16, 2023 |
| 2 | Monday, September 25, 2023 | Friday, November 3, 2023 | *Tuesday, November 7, 2023* | Monday, November 27, 2023 |
| 3 | Monday, November 6, 2023 | Friday, December 22, 2023 | *Tuesday, January 9, 2024* | Monday, January 22, 2024 |
| 4 | Tuesday, January 9, 2024 | Friday, February 23, 2024 | *Tuesday, February 14, 2023* | Monday, March 18, 2024 |
| 5 | Monday, February 26, 2024 | Friday, April 19, 2024 | *Tuesday, April 23, 2024* | Monday, May, 20 2024 |
| 6 | Monday, April 22, 2024 | Friday, May 30, 2024 | *Tuesday, June 4, 2024* | Monday, June 17, 2024 |

*Dates subject to change

## Discipline Reporting Requirements*

*Under TEC 37.008(m-1), failure to report all disciplinary removal actions as required by state and federal law may result in a review by the commissioner of education and notice to the local school board of any problems noted in the district's data, or a violation of a law or other rule. This review may also result in a notification to the county attorney, district attorney, criminal district attorney, as appropriate, and the attorney general. This provision can apply to missing, inaccurate, and/or falsified information/data.*

For purposes of discipline data reported to TEA, the **attendance/ PEIMS data personnel** are only responsible for entering information that has been provided to them by the Superintendent or their designee(s) who are responsible for applying the Student Code of Conduct to student behavior. **In no case should attendance/PEIMS data personnel be responsible for determining a student's coding information for discipline actions taken.**

## Reporting Requirements

Discipline records are reported at the end of the current school year, and are a part of Submission 3.

Discipline record data is required by TEC, Chapter 37, P.L. 114-95 - Every Student Succeeds Act (ESSA), and IDEA 2004, which includes students who are receiving special education and related services. TEA will maintain the privacy of this personally identifiable information in accordance with FERPA.

*A PEIMS discipline record* **must** *be reported for each disciplinary action that results in a removal of a student from any part of their regular academic program as required by TEC, Section 37. 020. A single student will have multiple discipline records if removed from his classroom more than once.*

Refer to the Data submission>Technical Resources>PEIMS Discipline Data guidance for additional information related to discipline reporting that includes detailed definitions of DISCIPLINARY-ACTION-CODES and DISCIPLINARY-ACTION-REASON-CODES.

*2023-2024 TSDS Web-Enabled Data Standards - Data Components-Complex Types - StudentDisciplineIncidentAssociationExtension

*2023-2024 TSDS Web-Enabled Data Standards - Data Submission - Technical Resources - PEIMS Discipline Data - Questions and Answers

# 2023 - 2024
# Disciplinary Action Reason Codes[1]
# (PEIMS OFFENSE CODES)

| Location Code | Offense Code | Short Description | Long Description | PEIMS Description |
|---|---|---|---|---|
| 01 | 01 | PERM REMOVAL | PERMANENT REMOVAL BY TEACHER | Permanent removal by a teacher from class |
| 01, 02, 03, 04, 05 | 02 | CONDUCT FELONY | CONDUCT PUNISHABLE AS FELONY | Engages in Conduct Punishable as a Felony |
| 01, 02, 03 | 04 | MARI/CONT SUBST | MARIHUANA/CONTROLLED SUBSTANCE | Marihuana or Controlled Substance or Dangerous Drug |
| 01, 02, 03 | 05 | ALCOHOL | ALCOHOL USE/SELL/GIVE/DELIVER | Alcohol |
| 01, 02, 03 | 06 | VOLATILE CHEM | VOLATILE CHEMICAL ABUSE | Abuse of a Volatile Chemical |
| 01, 02, 03 | 07 | PUB LEWDNESS | PUBLIC LEWDNESS/INDECENT EXPOS | Public Lewdness/Indecent Exposure |
| 01, 02, 03, 04 | 08 | RETALIATION EMP | RETALIATION SCHOOL EMPLOYEE | Retaliation against School Employee |
| 04 | 09 | O/C FELNY 5 | OFF CAMPUS- TITLE 5 FELONY | Title 5 Felony Committed Off Campus |
| 04 | 10 | O/C FELNY NOT 5 | OFF CAMPUS- NON TITLE 5 FELONY | Non-Title 5 Felony Committed Off Campus |
| 01, 02, 03, 05 | 11* | FIREARM | FIREARM OBTAIN/USE/EXHIBIT | Firearm |
| 01, 02, 03, 05 | 12* | ILLEGAL KNIFE | ILLEG. KNIFE BLADE LONGER 5.5" | Location Restricted Knife |
| 01, 02, 03, 05 | 14* | PROHIB WEAPON | PROHIBITED WEAPON | Prohibited Weapon |
| 01, 02, 03, 05 | 16* | ARSON | ARSON- START FIRE, EXPLOSION | Arson |
| 01, 02, 03, 05 | 17* | MURDER | MURDER- CAP./CRIM. ATPT/COMMIT | Murder, Capital Murder, or Criminal Attempt to Commit Murder/Capital Murder |
| 01, 02, 03, 05 | 18* | INDEC W/CHILD | INDECENCY W/ CHILD YOUNGER 17 | Indecency with a Child |
| 01, 02, 03, 05 | 19* | AGRVATED KIDNAP | AGGRAVATED KIDNAPPING | Aggravated Kidnapping |
| 00 | 21 | CONDUCT CODE | VIOLATION STUDENT CODE CONDUCT | Violation of Student Code of Conduct |
| 00 | 22 | CRIM MISCHIEF | CRIMINAL MISCHIEF | Criminal Mischief |
| 00 | 23 | EMERG PLACEMENT | EMERGENCY PLACEMENT/EXPULSION | Emergency Placement/Expulsion |
| 01, 02, 03, 04, 05 | 26 | TERRORISTIC THR | TERRORISTIC THREAT | Terroristic Threat |
| 01, 02, 03 | 27 | ASL TO EMPLOYEE | ASSAULT- TO EMPLOYEE | Assault of School Staff |
| 01, 02, 03 | 28 | ASL NON EMPL | ASSAULT- TO NON EMPLOYEE | Assault of Someone other than School Staff |
| 01, 02, 03, 04, 05 | 29* | AG ASSAULT EMPL | AGGRAVATED ASSAULT- TO EMPLOYEE | Aggravated Assault against School Staff |
| 01, 02, 03, 05 | 30* | AGGRAV ASL STUD | AGGRAVATED ASSAULT- TO STUDENT | Aggravated Assault against Student |
| 01, 02, 03, 05 | 31* | SEX ASL EMPL | SEXUAL ASSAULT- TO EMPLOYEE | Sexual Assault/Aggravated Sexual Assault against School Staff |
| 01, 02, 03, 05 | 32* | SEX ASL NON EMP | SEXUAL ASSAULT- TO NON EMPLOYEE | Sexual Assault/Aggravated Sexual Assault against Student |
| 01, 02, 03, 04, 05 | 35 | FALSE ALARM | FALSE ALARM/FALSE REPORT | False Alarm/False Report |
| 01, 03, 05 | 36* | FEL CONTRL SUB | FELONY CONTROLLED SUBSTANCE | Felony Controlled Substance Violation (Confirmed) |
| 01, 03, 05 | 37* | FELONY ALCOHOL | FELONY ALCOHOL VIOLATION | Felony Alcohol Violation (Confirmed) |
| 00 | 41 | FIGHTING | FIGHTING/MUTUAL COMBAT | Fighting/Mutual Combat (2 or More/Same Incident) |
| 01, 02, 03, 04, 05 | 46* | AG ROBBERY | AGGRAVATED ROBBERY | Aggravated Robbery |
| 01, 02, 03, 04, 05 | 47* | MANSLAUGHTER | MANSLAUGHTER | Manslaughter |
| 01, 02, 03, 04, 05 | 48* | HOMICIDE | CRIMINALLY NEGLIGENT HOMICIDE | Criminally Negligent Homicide |
| 01, 02, 03 | 49* | DEAD CONDUCT | DEADLY CONDUCT | Deadly Conduct |
| 00 | 55 | SEX OFF-CRT | RG SEX OFFENDER- SUPRVISED | Student Is Required To Register As A Sex Offender Under And Court Supervision |
| 00 | 56 | SEX OFF-NO CRT | RG SEX OFFENDER- NON SUPERVIS | Student Is Required To Register As A Sex Offender Under And Is Not Under Court Supervision |
| 01, 02, 03, 05 | 57* | CONT SEX ABUSE | CONTINUOUS SEX ABUSE OF CHILD | Continuous Sexual Abuse Of Young Child Or Children Under Penal Code §21.02 |
| 01, 02, 03, 04, 05 | 58 | BREACH OF COMP | BREACH OF COMPUTER SECUR (AUP) | Breach of Computer Security Under Penal Code §33.02 – TEC 37.007 |
| 01 | 59 | SERIOUS MISBEH | SERIOUS MISBEHAVIOR (SGLC ONLY) | Serious Misbehavior, as defined by TEC §37.007(c), while expelled to/placed in a DAEP |
| 01, 02, 03 | 60 | HARASS EMPLOYEE | HARASSMENT TO EMPLOYEE OF DISTRICT | Harassment To Employee of School District Employee under Texas Penal Code |

1 - Refer to Tab 8 for additional guidance
* - Unsafe School Code

2023 - 2024

# Disciplinary Action Reason Codes
## (LOCAL OFFENSE CODES)

| Location Code | Offense Code | Description | Explanation | PEIMS CODE | PEIMS Description |
|---|---|---|---|---|---|
| 00 | L04 | DRUG PARAPHERNALIA | Devices that can be used for inhaling, ingesting, injecting, or otherwise introducing a controlled susbstance into a human body | 21 | Violation of Student Code of Conduct |
| 00 | L05* | BULLYING-BASIS OF SEX/SEXUAL ORIENTATION | 1) Sexual Harassment includes: unwelcome verbal, physical, or visual conduct that is based on sex and that a reasonable person would find so severe, presistent, and pervasive that it effectively denies the victim equal access to the districts education program or activity. Such harassment can include words, gestures, requests for sexual favors, or any other unwelcome sexual conduct. Harassment is unwelcome if the student did not incite the attention or considers the attention undesirable or offensive.

2) Gender-based harassment such as physical, verbal, or nonverbal conduct based on a student's gender, or a student's failure to conform to stereotypical notions of masculinity or femininity. | 61 | Bullying - TEC 37.0052(b) |
| 00 | L10* | BULLYING-RACE,COLOR,NTL ORIGIN | Discrimination on the basis of race, color, or national origin in any educational program or activity that receives federal funds. Ex: Calling someone a terrorists | 61 | Bullying - TEC 37.0052(b) |
| 00 | L15* | BULLYING-BASIS OF DISABILITY | Discrimination on the basis of disability in programs or activities receiving federal financial assistance. Applies to all students; not just those identified with a disability | 61 | Bullying - TEC 37.0052(b) |
| 00 | L20 | BULLYING- BASIS OF RELIGION | Discrimination on the basis of race, color, or national origin in any educational program or activity that recieves federal funds | 61 | Bullying - TEC 37.0052(b) |
| 00 | L25 | BULLYING-CYBER* | Cyberbullying is bullying that is done through the use of any electronic communication device, including through the use of a celluar or other type of telephone, a computer, a camera, electronic mail, instant messaging, text messaging, or communication tool | 61 | Bullying - TEC 37.0052(b) |
| 00 | L30 | BULLYING-GROUP (2 OR MORE)* | Bullying means a single significant act or pattern of acts by one or more students directed at another student that exploits an imbalance of power and involves engaging in written or verbal expression, expression through electronic means, or physical conduct | 61 | Bullying - TEC 37.0052(b) |
| 00 | L35 | BULLYING-PERSISTENT BEHAVIOR* | Bullying means a single significant act or pattern of acts by one or more students directed at another student that exploits an imbalance of power and involves engaging in written or verbal expression, expression through electronic means, or physical conduct | 61 | Bullying - TEC 37.0052(b) |
| 00 | L40 | INSUBORDINATION | 1) Failure to comply with directives given by school personnel
2) Leave school grounds or school-sponsored events without permission
3) Disobey rules for conduct in district vehicles
4) Refuse to accept discipline management techniques assigned by a teacher or principal | 21 | Violation of Student Code of Conduct |
| 00 | L42 | ASSUALT W/O BODILY INJURY TO EMPLOYEE | Physcial contact that did not result in bodily injury
*Two or more students cannot assualt each other* | 21 | Violation of Student Code of Conduct |
| 00 | L44 | ASSUALT W/O BODILY INJURY TO STUDENT | Physcial contact that did not result in bodily injury
*Two or more students cannot assualt each other* | 21 | Violation of Student Code of Conduct |
| 00 | L50 | POSSESSION OF PROHIBITED ITEMS | fireworks, smoke or stink bombs, pyrotechnic devices, razor, box cutter, knife under 5.5" (SSC) | 21 | Violation of Student Code of Conduct |
| 00 | L59 | DESTRUCTION SCHOOL PROPERTY | Deface or damage school property (with graffiti or by other means) including:
1) Textbooks
2) Technology
3) Electronic resources
4) Lockers
5) Furniture
6) Other equipment | 21 | Violation of Student Code of Conduct |

*Refer to TAB 9 "BULLYING CHECKLIST" to determine if behavior meets the definition of bullying.

**2023 - 2024**
# Disciplinary Action Reason Codes
## (LOCAL OFFENSE CODES)

| Location Code | Offense Code | Description | Explanation | PEIMS CODE | PEIMS Description |
|---|---|---|---|---|---|
| 00 | L60 | FORGERY/PLAGERISM | Engage in academic dishonesty which includes: 1) Cheating 2) Copying the work of another student 3) Plagiarism 4) Unauthorized communication between students during an examination | 21 | Violation of Student Code of Conduct |
| 00 | L61 | THEFT | Steal from students, staff, or the school | 21 | Violation of Student Code of Conduct |
| 00 | L62 | SKIPPING CLASS | Did not report to scheduled class | 21 | Violation of Student Code of Conduct |
| 00 | L63 | SCUFFLE/HORSEPLAY | 1) Play Fighting 2) Rough/Boisterous play | 21 | Violation of Student Code of Conduct |
| 00 | L64 | VIOLATION CELL PHONE POLICY | Use of telecommunication device, including a cell phone, or other electronic device in violation of district and campus policy | 21 | Violation of Student Code of Conduct |
| 00 | L65 | LEAVE CLASS W/O PERMISSION | Reported to class then left the classroom without permission | 21 | Violation of Student Code of Conduct |
| 00 | L66 | SEXUAL HARASSMENT | Engages in sexual or gender-based harassment or sexual abuse whether by: 1) Word 2) Gesture 3) or any other conduct directed toward another person, including a district student, employee, board member, or volunteer | 21 | Violation of Student Code of Conduct |
| 00 | L67 | POSSESSION OF PORNOGRAPHY | In possession of obscene material (digital or paper copy) | 21 | Violation of Student Code of Conduct |
| 00 | L68 | DISTRIBUTION OF PORNOGRAPHY | Intentionally or knowingly displays or distributes obscene material | 21 | Violation of Student Code of Conduct |
| 00 | L72 | DRESS CODE VIOLATION | Violate dress and grooming standards as communicated in the Student Handbook | 21 | Violation of Student Code of Conduct |
| 00 | L73 | PROFANITY-VERBAL/GESTURES | 1) Profanity Language 2) Vulgar 3) Obscene gestures | 21 | Violation of Student Code of Conduct |
| 00 | L75 | BUS CONDUCT | Misconduct on school bus | 21 | Violation of Student Code of Conduct |
| 00 | L76 | TARDIES | *Excessive tardies - *refer to campus policy | 21 | Violation of Student Code of Conduct |
| 00 | L80 | PERSISTENT/HABITUAL MISEBHAVIOR ON CAMPUS | 5 or more referrals (not demerits) documented in Skyward. *Refer to campus policy regarding demerit system | 21 | Violation of Student Code of Conduct |
| 00 | L85 | CLASSROOM DISRUPTIONS | Engage in actions or demonstrations that substantially disrupt or materially interfere with school or classroom standard of conduct | 21 | Violation of Student Code of Conduct |
| 00 | L90 | DISREGARD OF PERSONAL SPACE | Hands/Feet - more comonally used at the elementary level | 21 | Violation of Student Code of Conduct |
| 00 | L95 | NAME CALLING | Engages in inappropriate verbal conduct toward another person | 21 | Violation of Student Code of Conduct |
| 00 | L96 | LEAVE CAMPUS W/O PERMISSION | Reported to campus then left the campus without permission | 21 | Violation of Student Code of Conduct |
| 00 | LD7 | 7 DEMERITS WITHIN 6 WEEK PERIOD | 7 DEMERITS WITHIN 6 WEEK PERIOD | 21 | Violation of Student Code of Conduct |
| 01, 02, 03 | VPC | VAPE - CONTROLLED SUBSTANCE - THC | Electronic vape containing THC | 04 | Marijuana or Controlled Substance |
| 00 | VAP | VAPE - NOT CONTROLLD SUBSTANCE | Students in possession of an e-cigarette, vaping device, parts of a vaping device, or any associated paraphernalia | 21 | Violation of Student Code of Conduct |

*Refer to TAB 9 "BULLYING CHECKLIST" to determine if behavior meets the definition of bullying.

# 2023 - 2024
# Mitigating Factor Codes

| Code | Short Description | Long Description |
|------|------------------|------------------|
| BU | BULLYING | PERPETRATING BULLYING BEHAVIOR |
| DIS | DISABILITY | DISABILITY SUBSTANTIALLY IMPAIRS CAPACITY |
| GA | GANG AFFILIATE | GANG AFFILIATION/INITIATION |
| HIS | DISC HISTORY | DISC HISTORY - LACK OF |
| INT | INTENT | INTENT |
| LOI | LACK OF INTENT | LACK OF INTENT |
| MB | MOB MENTALITY | MOB MENTALITY |
| RE | RETALIATION | RETALIATION FOR PRIOR ACTION |
| SD | SELF DEFENSE | SELF DEFENSE |
| TA | TAUNTING | ACTION AS A RESULT OF BEING TAUNTED |

*TIP: Where to add/edit Motivation Code*

*PATH: WS\ST\TB\DI*

*Steps:*
1. EDIT Offense
2. Select Mitigating Factors Code
4. SAVE



# 2023 - 2024
# Disciplinary Action Codes
## (ACTION CODES)

| Code | Short Description | Long Description | PEIMS Code | PEIMS Description |
|------|------------------|------------------|------------|------------------|
| 01* | EXPUL W/O PLACE | EXPULSION W/O PLACEMENT | 01 | *Expulsion Without Placement In Another Educational Setting* |
| 03* | EXPL CAMPUS AEP | EXPULSION ON CAMPUS AEP | 03 | *Expulsion With Placement DAEP* |
| 05* | OUT SCH SUSPENS | OUT OF SCHOOL SUSPENSION | 05 | *Out-Of-School Suspension* |
| 06* | IN SCH SUSPENSI | IN SCHOOL SUSPENSION | 06 | *In-School Suspension* |
| 07* | PLACE TO DAEP | PLACEMENT TO DAEP (SGLC) | 07 | *Placement In An On-Campus Or Off-Campus DAEP* |
| 08 | CONT OD AEP | CONTINUE OTHER DISTRICTS AEP | 08 | *Continuation Of Other District's DAEP Placement* |
| 09 | CONT OD EXPULSI | CONT OTHER DISTRICT EXPULSION | 09 | *Continuation Of Other District's Expulsion Order* |
| 10 | CONT PREYR AEP | CONTINUE PREVIOUS YEAR AEP | 10 | *Continuation Of The District's DAEP Placement From The Prior School Year* |
| 11 | CONT PREVYR EXP | CONTINUE PREV YEAR EXPULSION | 11 | *Continuation Of The District's Expulsion Order From The Prior School Year* |
| 14* | DAEP COURT ORDR | DAEP COURT ORDER | 14 | *Placement in a DAEP by Court Order* |
| 15 | CONT OD EXPUL W/ PLACE TO JJAEP | CONTINUE OTHER DISTRICT EXPUL W/ PLACEMENT TO JJAEP | 15 | *Continuation Of Other District's Expulsion With Placement To JJAEP* |
| 18 | DETENTION LUNCH | DETENTION LUNCH PERIOD ONLY | | |
| 19 | CONTRACT | PLACED ON CONTRACT | | |
| 20 | PARENT CONF | PARENT CONFERENCE ARRANGED | | |
| 22 | CORR COUNSELING | CORRECTIVE COUNSELING | | |
| 23 | BUS PRV REMOVED | BUS PRV REMOVED | | |
| 25* | PART DAY OSS | PARTIAL DAY OSS | 25 | *Partial Day Out-Of-School Suspension* |
| 26* | PART DAY ISS | PART DAY ISS | 26 | *Partial Day In-School Suspension* |
| 27* | NO DISC ACT-ARD | NO MAND DISC TAKEN-ARD | 27 | *Mandatory Disciplinary Action Not Taken By District (ARD)* |
| 28* | NO DISC ACT-TEC | NO MAND DISC ACT-TEC 37.001 | 28 | *Mandatory Disciplinary Action Not Taken* |
| 29 | PARK PRV REMOVED | PARKING PRIVLIGES TEMP REMOVED | | |
| 31 | VERBAL REPRIM | VERBAL REPRIMAND | | |
| 32 | CONFISC EQUIP | CONFISCATION OF EQUIP/OBJECT | | |
| A70 | REM ACCESS PRIV | REMOVE ACCESS PRIVLIGES | | |
| ARR | ARREST | ARREST | | |
| ASD | AFTER SCH DET | AFTER SCHOOL DETENTION | | |
| BSD | BEFOR SCH DET | BEFORE SCHOOL DETENTION | | |
| CFO | CIT/CAMPUS/OFF | CITATION/FR CAMPUS OFFICER | | |
| RLE | REF LAW ENFORCE | REFER TO LAW ENFORCEMENT | | |

## *SSSP

*When the mandatory action is not assigned please add an action of 27 or 28 (in addition to the assigned PEIMS action code(s)).*

*See tab 9 in the SFDR CISD Discipline Manual for additional guidance.*

Inconsistent with Code of Conduct



*AUDITABLE: Action Codes 27 & 28 require a predefined comment, additional action comments documented in the Student Referral.*

- ACTION CODE 27- Not Taken By District. As a result of ARD committee manifestation hearing determination.
- ACTION CODE 28- Not Taken (TEC 37.001(a)(4): (A) Self-defense.
- ACTION CODE 28- Not Taken (TEC 37.001(a)(4): (B) Intent or lack of intent at the time the student engaged in the conduct.
- ACTION CODE 28- Not Taken (TEC 37.001(a)(4): (C) A student's disciplinary history.
- ACTION CODE 28- Not Taken (TEC 37.001(a)(4): (D) A disability that substantially impairs the student's capacity to appreciate the wrongfulness of the student's conduct.

2023 2024

# Difference Reason Codes

| Code | Short Description | Long Description | PEIMS Equivalent |
|------|------------------|------------------|------------------|
| 00 | NO DIFFERENCE | NO DIF BTWN OFFICIAL & ACTUAL | No difference Between Official And Actual Lengths Of Disciplinary Assignments |
| 01 | DISTRICT MODIFY | TERM MODIFIED BY DISTRICT | Term Modified By District |
| 02 | COURT ORDER MOD | TERM MODIFIED BY COURT ORDER | Term Modified By Court Order |
| 03 | MOD/DIS/STU/PAR | MODIFIED AGGREE DIST/STUD/PAR | Term Modified By Mutual Agreement Of District, Student, And/Or Parents |
| 04 | COMPLETE SOONER | COMPLETED SOONER THAN EXPECTED | Student Completed Term Requirements Sooner Than Expected |
| 05 | INCARCERATED | STUDENT INCARCERATED | Student Incarcerated |
| 06 | HEALTH RELATED | TERM DECREASED HEALTH REASONS | Term Decreased Due To Extenuating Health-Related Circumstances |
| 07 | STUDENT W/DREW | STUDENT WITHDREW FROM SCHOOL | Student Withdrew From School |
| 08 | SCH YR ENDED | SCH YEAR ENDED BEFORE COMPLETE | School Year Ended Before Completion Of Disciplinary Action Assignment |
| 09 | CONTINUE PRE YR | CONTINUE PREVIOUS YEAR DISCIP | Continuation Of Previous Year's Disciplinary Action Assignment |
| 10 | GOOD BEHAVIOR | TERM MODIFIED GOOD BEHAVIOR | Term Modified By Placement Program Due To Student Behavior While In Placement |
| 99 | OTHER | OTHER | Other |

*__Difference Reason__ :   Enter the appropriate reason when serving more or less days than orginally assigned.*

**TIP: Where to add a Difference Reason**
**PATH: WS\ST\TB\DI**

| Steps: in the following order | |
|---|---|
| 1 | EDIT action |
| 2 | Set Action Status to SERVED |
| 3 | SELECT DIFF. REASON |
| 4 | Enter new RETURN DATE |
| 5 | Go to Action Details and EDIT each day the student served or didn't serve |
| 6 | Enter 0.00 or 1.00 in Time Served |
| 7 | Select PARENT NOTIFIED |
| 8 | Enter COMMENT |
| 9 | Select DIFFERENCE REASON |
| 10 | SAVE |
| * | Repeat steps 5 - 10 for the days the student will not serve |
| 11 | SAVE |





**ORGINAL STATUS:**

**STATUS WITH DIFFERENCE:**

# PEIMS Discipline Data - Questions and Answers

Additional PEIMS Reporting Information Regarding Disciplinary Alternative Education Program (DAEP) Conferences, Expulsion Hearings, Placement Reviews, and Other Actions

**1.   What is required if a student brings a firearm to school?**

In accordance with federal law (20 U.S.C. Section 7151), a local educational agency (LEA), including a school district, home-rule school district, or open- enrollment charter school, shall expel a student who brings a firearm, as defined by 18 U.S.C. Section 921, to school. The student must be expelled from the student's regular campus for a period of at least one year, except that:

(a) the superintendent or other chief administrative officer of the school district or of the other LEA, as defined by 20 U.S.C. Section 2891, may modify the length of the expulsion in the case of an individual student;

(b) the district or other LEA shall provide educational services to [the] an expelled student in an alternative education program as provided by TEC, §37.008 if the student is younger than 10 years of age on the date of expulsion; and

(c) the district or other LEA may provide educational services to an expelled student who is older than 10 years of age in an alternative education program as provided in TEC, §37.008.

TEC, §37.007(a)(1) requires that a school expel a student whose conduct contains the elements of the offense of "Unlawfully Carrying Weapons" on school property or while attending a school-sponsored or school related activity on or off school property.

**2.   What is a Campus Behavior Coordinator?**

Under the requirements of TEC, §37.0012, each campus must have a staff person

designated as the Campus Behavior Coordinator. The person designated may be the

principal of the campus or any other campus administrator selected by the principal.

The campus behavior coordinator is primarily responsible for maintaining student discipline and the implementation of this subchapter.

The campus behavior coordinator is required to promptly notify a student's parent or guardian if the student is placed into in-school or out-of-school suspension, placed in a disciplinary alternative education program, expelled, or placed in a juvenile justice alternative education program or is taken into custody by a law enforcement officer. A campus behavior coordinator must comply with this subsection by:

1. promptly contacting the parent or guardian by telephone or in person; and

2. making a good faith effort to provide written notice of the disciplinary action to the student, on the day the action is taken, for delivery to the student's parent or guardian.

If a parent or guardian entitled to notice of a student's disciplinary removal has not been reached by telephone or in person by 5 p.m. of the first business day after the day the disciplinary action is taken, the campus behavior coordinator must mail written notice of the disciplinary action to the parent or guardian at the parent's or guardian's last known address. If a Campus Behavior Coordinator is unable or not available to promptly provide the required notice to a parent or guardian of a student, the principal or other designee shall provide the notice.

**3.   What is required in order to send a student to a Disciplinary Alternative Education Program?**

Before removing a student to a DAEP under Texas Education Code (TEC) §37.008, the appropriate administrator shall schedule a conference among the principal or other appropriate administrator, a parent or guardian of the student, the teacher removing the student from class, if any, and the student. At the conference, the student is entitled to written or oral notice of the reasons for the removal, an explanation of the basis for the removal, and an opportunity to respond to the reasons for the removal. **If the student**

**has been alleged to have committed an offense as described in TEC, §37.006 then the district official holding the conference meeting must present substantiated documentation of the alleged behavior as provided by a law enforcement agency or as created/obtained by the school district administrator.**

4. **What is required in order to expel a student?**

Before a student may be expelled under TEC, §37.007, the board or the board's designee must provide the student a hearing at which the student is afforded appropriate due process as required by the federal constitution and which the student's parent or guardian is invited, in writing, to attend. At the hearing, the student is entitled to be represented by the student's parent or guardian or another adult who can provide guidance to the student and who is not an employee of the school district. If the decision to expel a student is made by the board's designee, the decision may be appealed to the board. The decision of the board may be appealed by trial de novo to a district court of the county in which the school district's central administrative office is located. If the student has been alleged to have committed an offense as described in TEC, §37.007 then a district official holding the expulsion hearing must present substantiated documentation of the alleged behavior as provided by a law enforcement agency or as created/obtained by the school district administrator.

5. **What is the maximum length for an out-of-school suspension placement?**

In accordance with TEC, §37.005, under no circumstance may an out-of-school suspension (OSS) for a particular incident exceed (3) three school days. If a student receives OSS for a partial school day (even if for one class period), that partial day is considered one of the three total allowable out-of-school suspension days.

6. **What is the minimum grade for suspending a student with an out-of-school suspension?**

In accordance with TEC, §37.005(c), a student who is enrolled in a grade level below grade three may not be placed in out-of-school suspension unless, while on school property or while attending a school-sponsored or school-related activity on or off school property, the student engages in:

1. conduct that contains the elements of an offense related to weapons under Section 46.02 or 46.05, Penal Code;
2. conduct that contains the elements of a violent offense under Section 22.01, 22.011, 22.02, or 22.021, Penal Code; or
3. selling, giving, or delivering to another person or possessing, using, or being under the influence of any amount of:
   (a) marihuana or a controlled substance, as defined by Chapter 481, Health and Safety Code, or by 21 U.S.C. Section 801 et seq.;
   (b) a dangerous drug, as defined by Chapter 483, Health and Safety Code; or
   (c) an alcoholic beverage, as defined by Section 1.04, Alcoholic Beverage Code.

7. **What is the statutory alternative to suspending a student less than grade three with an out-of-school-suspension?**

In accordance with TEC, §37.0013, each school district and open-enrollment charter school may develop and implement a program, in consultation with campus behavior coordinators employed by the district or school and representatives of a regional education service center, that provides a disciplinary alternative for a student enrolled in a grade level below grade three who engages in conduct described by Section 37.005(a) and is not subject to Section 37.005(c). The program must:

1. be age-appropriate and research-based;
2. provide models for positive behavior;

3. promote a positive school environment;

4. provide alternative disciplinary courses of action that do not rely on the use of in-school suspension, out-of-school suspension, or placement in a disciplinary alternative education program to manage student behavior; and

5. provide behavior management strategies, including:

   (a) positive behavioral intervention and support;

   (b) trauma-informed practices;

   (c) social and emotional learning;

   (d) a referral for services, as necessary; and

   (e) restorative practices.

8. **What is required if a student's DAEP placement will extend beyond the end of the next grading period?**

If the student's **placement** in a DAEP is to extend beyond the end of the next grading period, a student's parent or guardian is entitled to notice of and an opportunity to participate in a proceeding before the board of trustees of the school district or the board's designee, as provided by policy of the board of trustees of the district. Any decision of the board or the board's designee under this subsection is final and may not be appealed.

9. **What is required if the student's DAEP placement will extend beyond the end of the current school year and into the next school year?**

Before assigning a student to a disciplinary alternative education setting that extends beyond the end of the school year in which the initial assignment was made, the board or the board's designee must determine that:

1. the student's presence in the regular classroom program or at the student's regular campus presents a danger of physical harm to the student or to another individual, **or**

2. the student has engaged in serious or persistent misbehavior that violates the district's student code of conduct.

A student placed in a DAEP under TEC, §37.002 or 37.006 shall be provided a review of the student's status, including a review of the student's academic status, by the board's designee at intervals not to exceed 120 days. In the case of a high school student, the board's designee, with the student's parents or guardian, shall review the student's progress towards meeting high school graduation requirements and shall establish a specific graduation plan for the student.

At the review, the student or the student's parent or guardian must be given the opportunity to present arguments for the student's return to the regular classroom or campus.

10. **What is required regarding special education students who commit behaviors that require a disciplinary removal action?**

The disciplinary placement of all students who are served in special education with an Individualized Education Program (IEP) must be determined by an Admission, Review, and Dismissal (ARD) committee. TEC, §37.004(a) Further, any disciplinary action regarding a student with a disability who receives special education services that would constitute a change in placement under federal law may be taken only after the student's ARD committee conducts a manifestation determination review under 20 U.S.C. Section 1415(k)(4) and its subsequent amendments. Any disciplinary action regarding the student shall be determined in accordance with federal law and regulation, including laws or regulations requiring the provision of:

1. Functional behavioral assessments;
2. Positive behavioral interventions, strategies, and supports; and
3. Behavioral intervention plans.  TEC, §37.004(b)

For disciplinary removals of a student, who is receiving special education and related services, from the student's current educational placement, a change of placement occurs if the removal is for more than 10 consecutive days (CFR §300.530 - §300.536).  The ARD committee that deals with the  change of placement must review the student's IEP to detail the special education and related services to be administered to the student while he is  removed for discipline reasons.  Be careful not to confuse the 10-day change of placement requirement for special education purposes with the 1-day  removal requirement for reporting student disciplinary removals.  The 44425 Student Discipline Interchange data is required for all students who are  receiving special education and related services and are removed from their regularly scheduled classes for one day or more.  A change of placement  occurs when the removal is for more than 10 consecutive days, and a change of placement may occur when the removal is for more than 10 cumulative  days in a school year based on factors such as the length of each removal, the total amount of the time the child is removed, and the proximity of the  removals to one another.  An ARD committee must be involved when the removal or series of removals constitute a change in placement.

11. **What is the minimum age that a student can be placed in a Disciplinary Alternative Education Program?**

Under TEC, §37.006(a), (b), (c), and (l), all students, who are at least 6 years of age on the date that an offense is committed, **must be removed to a  DAEP**, for a time period that is determined by the local Student Code of Conduct, if one of the following acts are committed: on or within 300 feet of  school property, or while the student is attending a school-sponsored, or school related activity, on or off of school property.  The school administrator  designated must first establish a reasonable belief that the act has been committed and then corroborate and document that belief with appropriate law  enforcement officials.

12. **What is the minimum age that a student can be expelled?**

Under TEC, §37.007(a), (d), and (h), and §37.007(f) students who are younger than 10 years of age on the date that an offense is committed, and have committed a mandatory expellable offense other than bringing a firearm to school, **must be placed in a DAEP** for a period of time that is determined by the superintendent or their designee.

Under TEC, §37.007(e), (student brings a firearm to school), students who are younger than 10 years of age on the date that an offense is committed, **must be expelled and placed in a DAEP** for a minimum term of one year, unless the expulsion term is reduced by the superintendent or their designee.

13. **What are the required procedures for using Disciplinary Action Reason Code 23 – Emergency Placement/Emergency Expulsion?**

DISCIPLINARY-ACTION-REASON-CODE 23, as authorized by TEC, §37.019, allows for either emergency placement or emergency expulsion.  The use of this code is limited to reasons for which placement in a DAEP or expulsion may be made on a non-emergency basis.  At the time of an emergency placement or expulsion, the student shall be given oral notice of the reason for the action.

Not later than the tenth day after the date of the placement or expulsion, the student shall be accorded the appropriate due process as required until  TEC, §37.009.  Thus emergency action under TEC, §37.019, should not be the only/final disciplinary action taken.

For additional constraints related to a student's behavior and the use of emergency placement/expulsion, please see TEDS Data Submission>Technical  Resources>PEIMS Discipline Data - Disciplinary Action Reason Codes and Definitions for DISCIPLINARY-ACTION-REASON-CODE 23.

**14.** **What are the requirements for keeping documentation under Article 15.27, Code of Criminal Procedure received from law enforcement personnel investigating alleged criminal behaviors at/for a school?**

With regards to the documentation related to "TEC, §37.017 Destruction of Certain Records" states Information received by a school district under Article 15.27, Code of Criminal Procedure, these records may not be attached to the permanent academic file of the student who is the subject of the report. The school district shall destroy the information at the end of the school year in which the report was filed. Despite the requirement to destroy information received under Article 15.27, Code of Criminal Procedure, the district must retain documentation other than the information received under Article 15.27, Code of Criminal Procedure to support the discipline data submitted through the 44425 Student Discipline Interchange data for a period of 5 years.

**15.** **How should a school handle situations where a student(s) has committed multiple violations in the course of one disciplinary event?**

Multiple violations are sometimes committed in the course of one disciplinary event. When reporting the 44425 Student Discipline Interchange data, the district should report only the violations DISCIPLINARY-ACTION-REASON-CODE(s) for which disciplinary action(s) DISCIPLINARY-ACTION-CODE(s) are taken. If actions are only taken for the most serious violation, then only one DISCIPLINARY-INCIDENT-NUMBER should be reported in the 44425 Student Discipline Interchange data when reporting the DISCIPLINARY-ACTION-REASON-CODEs and DISCIPLINARY-ACTION-CODEs.

If the district takes disciplinary action on each violation that occurred during one disciplinary event, the district should enter a new DISCIPLINARY- INCIDENT-NUMBER for each separate DISCIPLINARY-ACTION-REASON-CODE (violation) being reported.

**16.** **What should a school do if a student attempts to withdraw from school before a disciplinary removal action has been determined for a particular incident?**

If a student is involved in a reportable disciplinary incident, and the student attempts to withdraw from school before the disciplinary assignment is made, the district/school should complete the due-process proceedings that result in the required disciplinary assignment before the student is allowed to withdraw. After completion of the due process proceedings, the district/school is required to report the 44425 Student Discipline Interchange data reflecting that assignment in order to remain in compliance with TEC, §37.009.

**17.** **What is an In-School Suspension setting?**

In-school-suspension (ISS) includes any disciplinary setting other than DAEP, JJAEP, or OSS. For Special Education student's behavior management or behavior adjustment classes are not considered ISS programs as established by the ARD committee and are not considered ISS removals.

**18.** **When is it appropriate to use Discipline Action Code 13 – Court Ordered Placement to a JJAEP and 14 – Court Ordered Placement to a DAEP?**

DISCIPLINARY-ACTION-CODE 13 may only be used when a Court order requires a student to attend the JJAEP independent of any action required to be taken by the school district and described in TEC, Chapter 37. Do not use DISCIPLINARY-ACTION-CODE 13 for students that are incarcerated in either a jail or juvenile detention center. A term of incarceration does not constitute a removal by a school district. The DISCIPLINARY-ACTION- REASON-CODE for DISCIPLINARY-ACTION-CODE 13 should always be 21 because the district is reporting a court ordered placement for a behavior which the district either could not or would not have acted.

DISCIPLINARY-ACTION-CODE 14 may only be used when a Court order requires a student to attend a DAEP independent of any action required to be taken by the school district and described in TEC, Chapter 37. Do not use DISCIPLINARY-ACTION-CODE 14 for students that are incarcerated in either a jail or juvenile detention center. A term of incarceration does not constitute a removal by a school district. The DISCIPLINARY-ACTION-REASON- CODE for DISCIPLINARY-ACTION-CODE 14 should always be 21 because the district is reporting a court ordered placement for a behavior which the district either could not or would not have acted.

When reporting DISCIPLINARY-ACTION-CODEs 13 (Placement in a JJAEP by Court order) and 14 (Placement in a DAEP by Court Order), please refer to the ADMINISTRATOR ADDRESSED letter dated May 29, 2002. This letter is available on the TEA website under the Correspondence link. In order to place a student in a JJAEP or DAEP by a Court order, there must be a MOU between the court ordering the placement and the school district that will affect and make the placement. **In all circumstances of court ordered placements to a JJAEP or DAEP, the DISCIPLINARY-ACTION-REASON- CODE must be a 21 (Violation of student code of conduct not included under TEC, §§37.002(b), 37.006, or 37.007). The use of DISCIPLINARY- ACTION-REASON-CODEs 09 (Off-Campus Title 5 Felony) and 10 (Off-Campus Non-Title 5 Felony) for Court ordered placements to a JJAEP or DAEP is not acceptable because the school district has original jurisdiction and a due-process responsibility to hold a conference meeting to enforce a DAEP removal/action as required or permitted in TEC, §37.006 (c) and (d).** The provisions for these court ordered placements must also be outlined in the Local Student Code of Conduct. Any behavior that a student engages in at school or a school related activity for which they will receive disciplinary attention as provided for under either the minimum requirements of TEC, §37.006/TEC, §37.007, or the minimum standards of the Local Student Code of Conduct, must be initiated and actuated by the local school district.

In the event that a school district finds it necessary to continue a Court ordered placement to a JJAEP or a DAEP from a prior school year or a prior school district, a new 44425 Student Discipline Interchange data event must be reported with a **DISCIPLINARY-ACTION-REASON-CODE of 21** and a **DISCIPLINARY-ACTION-CODE of 13 or 14** depending on the action taken. Remember that DAEP assignments that continue into a new school year are subject to the requirements of TEC, §37.009(c) referenced on the first page of Appendix E.

### 19. Please explain the Discipline Action Reason Code 01 – Permanent Removal from Class by a Teacher.

Permanent removal by a teacher from class (DISCIPLINARY-ACTION-REASON-CODE 01) under TEC, §37.002(b) is limited for use in those situations where the teacher has refused re-admittance of the student to that teacher's class. Otherwise, if the teacher allows re-admittance of the student to the class, then Code 21 (other Student Code of Conduct violation) should be used.

### 20. What are the consequences of a school not reporting its discipline removal events through the Texas Student Data System PEIMS submission on the 44425 Student Discipline Interchange data?

Under TEC, §37.008(m-1), failure to report all disciplinary removal actions as required by state and federal law may result in a review by the commissioner of education and notice to the local school board of any problems noted in the district's data, or a violation of a law or other rule. This review may also result in a notification to the county attorney, district attorney, criminal district attorney, as appropriate, and the attorney general. This provision can apply to missing, inaccurate, and/or falsified information/data.

### 21. Which LEAs are required to participate in the county run Juvenile Justice Alternative Education Program (JJAEP)?

In counties where the population is over 125,000, state law requires that expelled students be placed in an alternative education setting of some type. Districts located in these counties may place discretionary expelled students in a DAEP operated by the district and Mandatory expelled students in a JJAEP

operated by the juvenile board for the county.

**22. What options exist for an LEA that expels a student in a county that does not have a JJAEP?**

If a student has been expelled in a county that does not have a Juvenile Justice Alternative Education Program, the LEA may either expel the student without academic placement, or the student may be expelled with placement to the LEA Disciplinary Alternative Education Program.

**23. What kind of knives require that a student be expelled from school?**

House Bill 1935, 85th legislative session, revised the definition of illegal knives to be known as Location-restricted knives and defines a Location  restricted knife as being a knife with a blade length greater than 5.5 inches.  A student that is found in possession of a Location-restricted knife must be expelled if the possession occurs knife on school campus or off campus at a school sponsored or school related activity.

**24. What is the definition of an Off-Campus DAEP?**

An **off-campus** DAEP:

1. has its own **campus identification number**;
2. has its own **building** (is **not** a program on a regular campus or an at-risk alternative education campus);
3. has its own **budget**;
4. has its own **administrator**;
5. serves only students removed under the TEC, Chapter 37 (no other non-discipline program may be operated on the campus);
6. must use the services of **certified teachers** and
7. must provide for a **43,200-instructional minute school year**.

Note: If your school district or charter school has chosen to operate or participate in, through a shared services arrangement (SSA), an off-campus DAEP,  your district or school must register the campus with the TEA as a DAEP instructional campus.

**25. What is the definition of an On-Campus DAEP?**

An **on-campus** DAEP is one that **may have its own campus identification number**.  If an on-campus DAEP has its own campus identification number,  then the campus must:

1. have an **administrator** (administrator can serve more than one campus);
2. have its own **budget**;
3. use the services of **certified teachers for delivering educational and behavioral instruction** to the students assigned to the on-campus DAEP;
4. provide for students who are assigned to the DAEP to be **separated from students who are not assigned to the DAEP** ("sight and sound barrier"  should exist to provide adequate separation);
5. provide for a **43,200-instructional minute school year,** and;
6. **share a facility** with a non-disciplinary program.

Note: If your school district or charter school has chosen to operate or participate in, through an SSA, an on-campus DAEP your district or school must  register the campus with the TEA as a DAEP instructional campus.

If an on-campus DAEP does not have its own campus number, then a student should remain enrolled at the campus at which the student was enrolled  when he or she was removed while placed in the on-campus DAEP.

# FAQ's for Discipline

**What is the offense date?**

The offense date is the date the student commits the discipline offense.

**What is the ordered date?**

The Ordered Date indicates the date on which the disciplinary assignment was ordered, not the start date for the action.

**PLEASE NOTE:** For Level 1's - the ordered date is the date of the letter. For Emergency Placements - it is the date the placement begins. In most instances of emergency placements, the date of letter and date of placement should be the same.

**What is the action detail start date?**

The action detail start date is the date the student begins serving the assignment, not the date ordered.

| Action Details | Add | Regenerate Dates | | | |
|---|---|---|---|---|---|
| | Date to Serve | Time | Status | Length (Days) | Time Served |
| Edit  Delete | 10/21/2020 | 1:23 PM | Open | 1.00 | 0.00 |

**What is the return date and is a return date required for all discipline actions?**

The return date is ***the date the student returns to the home campus or regular school setting***, not the last date of the assignment.  Yes, a return date is required for all discipline actions.

**What should the SGLC campus do if a student returns from the SGLC campus earlier than the original assignment?**

*The SGLC campus should mark as served the days the student was in attendance at the SGLC campus.* Leave the remaining days open (not served). An appropriate difference reason should be entered. The return date should be adjusted and a note entered in the comment section indicating the reason.

**If more than one student is involved in the same discipline offense, is the same incident number used?**

***Yes,*** *the same incident number must be used if one or more students are involved in the same offense.* The offense code must be the same; however, the action code(s) may be different.

**Does the action status need to reflect Served?**

Yes, all discipline should be marked served, including those with a difference reason or if the student withdrew before completing his/her assignment.

**Can a campus generate the Pre-PEIMS 425 report?**

Yes. The campus can generate the 425 report at their convenience. This report identifies errors for correction in order to submit discipline data to TEA.

**Why does the Pre-PEIMS 425 report not indicate all discipline entered in Skyward?**

The Pre-PEIMS 425 report will only include PEIMS reportable offenses.

**What other reports are available?**

Data Mining Reports. Please search for AA Discipline. . .

**When is it appropriate to use a 99 for a difference reason?**

A 99 should only be used for if no other difference reason applies.

**Does every offense require an action?**

Yes, all offenses require an action.

# Steps for DAEP (SGLC)

| Continuations |
|---|
| All continuations must be entered prior to the start of the new school year. Verify that the prior year Offense Code was used and add an action code of **10** (cont. prior yr. placement) or **11** (cont. prior yr. expulsion). |

| Offense Date and Ordered Date |
|---|
| The Offense date is the date the offense occurred. The Ordered date is the date the action is assigned. |

| Action Detail Start Date |
|---|
| The Action Detail Start Date must be the day the student started at the alternative campus. |

| Days Served |
|---|
| If the student was released early from SGLC campus, only the days the student was enrolled at the alternative campus should be marked served with 1.00 (action detail) and the dates the student did not serve should reflect as 0.00. If the student did not serve all assigned days, a difference reason code must be added. |

| Additional Days Served |
|---|
| If the student served more than the days assigned, the Action Status would be marked Served, the Return Date must be adjusted, add the additional days to Action Details, enter a Difference Reason and add a comment to detail the reason for the additional days served. |

| Action Status |
|---|
| Action status should not be marked served until the student has been released back to the home campus. |

| Date Verification |
|---|
| Alternative campuses must verify that the Ordered Date is corresponding with the placement letter and the Action Detail Start Date reflect the first date the student began at the SGLC campus. |

# SECONDARY CONSEQUENCE GUIDE - SEQUENTIAL ORDER

| MANDATORY DAEP | MANDATORY EXPULSION | DISCRETIONARY DAEP | DISCRETIONARY EXPULSION | OFFENSE CODE | PEIMS CODE | INFRACTION | 1ST OFFENSE | 2ND OFFENSE | 3RD OFFENSE | EARLY EXIT REVIEW (if applicable) |
|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | **Important Chapter 37 Notes:**<br>(A) The Campus Behavior Coordinator (CBC) is required to promptly notify a student's parent or guardian of any disciplinary actions.<br>(B) Before a suspension, consideration must be given to (1) self-defense; (2) intent or lack of intent at the time the student engaged in the conduct; (3) disciplinary history; and (4) disability that substantially impairs the student's capacity to appreciate the wrongfulness of the student's conduct; (5) status under conservatorship of the Department of Family and Protective Services; and (6) a student status as a student who is homeless.<br>(C) An out of school suspension (OSS) may not exceed three school days.<br>(D) A student who is enrolled in a grade level below grade three may not be placed in out-of-school suspension unless the student engages in weapons-related offenses, violent assault offenses or drug or alcohol-related offenses.<br>(E) When a student under the age of ten engages in behavior that is an expellable behavior, the student shall not be expelled, but shall be placed in a DAEP. A student under age six shall not be placed in a DAEP unless the student commits a federal firearm offense.<br>(F) A student who is classified as "homeless" may not receive OSS unless the student has engaged in weapons-related offenses, violent assault offenses or drug or alcohol-related offenses. | | | |
| X | | X | | 02 | 02 | **Felony - At school, within 300 ft. of school property, at school event.** Includes Criminal Mischief >1500 | 30-day SGLC assignment & completion of intervention program | 60-day SGLC assignment & completion of intervention program | 90-day SGLC assignment & completion of intervention program | Not eligible for EER |
| X | | | X | 04 | 04 | **Drug Possession - Use/Under the Influence (Misdemeanor)** | 60-day SGLC assignment & completion of drug dependency program | 90-day SGLC assignment & completion of drug dependency program | 120-day SGLC assignment & completion of drug dependency program | Level 1 and Level 2 = EER contingent upon completion of intervention program |
| X | | | X | VPC | 04 | **Vaping (Controlled Substance) Requires corroboration from law enforcement** | Expulsion with 90-day SGLC assignment & completion of drug dependency program. Referral to TCHATT | Expulsion with 120-day SGLC assignment & completion of drug dependency program. Referral to TCHATT | Expulsion with 180-day SGLC assignment & completion of drug dependency program. Referral to TCHATT | Not eligible for EER |
| X | | | X | 05 | 05 | **Alcohol (Possesion, use, under the influence).** | 45-day SGLC assignment & completion of drug dependency program | 60-day SGLC assignment & completion of drug dependency program | 90-day SGLC assignment & completion of drug dependency program | Level 1: 45/EER 30 days upon completion of dependency program. Level 2: 60/EER 45 days upon completion of dependency program. Level 3: 90/EER 60 days upon completion of dependency program. |
| X | | | X | 06 | 06 | **Abuse of a Volatile Chemical** (glue, aerosol paint,etc.) | 45-day SGLC assignment & completion of drug dependency program | 60-day SGLC assignment & completion of drug dependency program | 90-day SGLC assignment & completion of drug dependency program | Level 1: 45/EER 30 days upon completion of dependency program. Level 2: 60/EER 45 days upon completion of dependency program. Level 3: 90/EER 60 days upon completion of dependency program. |
| X | | | | 07 | 07 | **Indecent Exposure** (inappropriate display of body parts) | 90-day SGLC assignment & referral to TCHATT | SGLC assignment for remainder of school year & referral to TCHATT | | N/A |
| X | | | X | 08 | 08 | **Retaliation (School Employee)** | 90-day SGLC assignment & completion of anger management program | 120-day SGLC assignment & completion of anger management program | SGLC assignment for remainder of SY & completion of anger management program | Not eligible for EER |
| X | | | X | 09 | 09 | **Felony - Title 5  Committed Off Campus** (Title 5 felonies are those crimes listed in Title 5 of the Penal Code that typically involve injury to a person) | Assigned to SGLC until disposition of case. | | | N/A |
| | | X | X | 10 | 10 | **Felony - Non-Title 5 Committed Off Campus** | 30-day SGLC assignment & completion of intervention program | 60-day SGLC assignment & completion of intervention program | 90-day SGLC assignment & completion of intervention program | Not eligible for EER |
| | X | | X | 11 | 11* | **Firearms** (B) - (e.g., Used/exhibit/possession of any firearm - hand gun, starter gun, etc.) Does not include BB guns or Pellet Guns | Expulsion with Placement to SGLC; SGLC assignment for remainder of school year. Referral to TCHATT | | | Not eligible for EER |
| | X | | X | 12 | 12 | **Illegal Knife** (uses, exhibits, or possesses an illegal knife as defined by Section 46.01, Penal Code, or by local policy. An illegal knife as one with a blade length longer than 5.5 inches) | Expulsion with Placement to SGLC; SGLC assignment for remainder of school year. Referral to TCHATT | | | Not eligible for EER |
| | X | | X | 14 | 14* | **Prohibited Weapon** Penal Code Section 46.05 or (TAB 9)   Includes explosion weapons, tire deflation device, chemical despensing device, etc. | Expulsion without placement | | | N/A |
| | X | | X | 16 | 16* | **Arson** - Refer to TAB 9 for complete definition | Expulsion with Placement to SGLC until disposition of case. Referral to TCHATT | | | Not eligible for EER |
| | X | | X | 17 | 17* | **Attempted Murder/ Murder/Capital Murder** | Expulsion without placement | | | N/A |
| | X | | X | 18 | 18* | **Indecency with a Child** | Expulsion with Placement to SGLC until disposition of case. | | | N/A |
| | | | | 21 | 21 | **Fireworks (Ignition)** | 45-day SGLC assignment & completion of intervention program | 90-day SGLC assignment & completion of intervention program | SGLC assignment for remainder of SY & completion of intervention program | EER contingent upon completion of intervention program Level 3 = No EER |

*Unsafe School Coding                                                                                    CODING SUBJECT TO CHANGE

# SECONDARY CONSEQUENCE GUIDE - SEQUENTIAL ORDER

| MANDATORY DAEP | MANDATORY EXPULSION | DISCRETIONARY DAEP | DISCRETIONARY EXPULSION | OFFENSE CODE | PEIMS CODE | INFRACTION | 1ST OFFENSE | 2ND OFFENSE | 3RD OFFENSE | EARLY EXIT REVIEW (if applicable) |
|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | **Important Chapter 37 Notes:**<br>(A) The Campus Behavior Coordinator (CBC) is required to promptly notify a student's parent or guardian of any disciplinary actions.<br>(B) Before a suspension, consideration must be given to (1) self-defense; (2) intent or lack of intent at the time the student engaged in the conduct; (3) disciplinary history; and (4) disability that substantially impairs the student's capacity to appreciate the wrongfulness of the student's conduct; (5) status under conservatorship of the Department of Family and Protective Services; and (6) a student status as a student who is homeless.<br>(C) An out of school suspension (OSS) may not exceed three school days.<br>(D) A student who is enrolled in a grade level below grade three may not be placed in out-of-school suspension unless the student engages in weapons-related offenses, violent assault offenses or drug or alcohol-related offenses.<br>(E) When a student under the age of ten engages in behavior that is an expellable behavior, the student shall not be expelled, but shall be placed in a DAEP. A student under age six shall not be placed in a DAEP unless the student commits a federal firearm offense.<br>(F) A student who is classified as "homeless" may not receive OSS unless the student has engaged in weapons-related offenses, violent assault offenses or drug or alcohol-related offenses. | | | |
| | | | | 21 | 21 | **Inappropriate Display of Affection** | Any individual of combination of discipline management techniques may be used by the campus administrator as part of a progressive set of interventions (Student Code of Conduct p. 9) | Any individual of combination of discipline management techniques may be used by the campus administrator as part of a progressive set of interventions (Student Code of Conduct p. 9) | Any individual of combination of discipline management techniques may be used by the campus administrator as part of a progressive set of interventions (Student Code of Conduct p. 9) | N/A |
| | | | | L96 | L96 | **Leaving School Grounds without Permission** | Any individual of combination of discipline management techniques may be used by the campus administrator as part of a progressive set of interventions (Student Code of Conduct p. 9) | Any individual of combination of discipline management techniques may be used by the campus administrator as part of a progressive set of interventions (Student Code of Conduct p. 9) | Any individual of combination of discipline management techniques may be used by the campus administrator as part of a progressive set of interventions (Student Code of Conduct p. 9) | N/A |
| | | | | 21 | 21 | **Loitering** | Any individual of combination of discipline management techniques may be used by the campus administrator as part of a progressive set of interventions (Student Code of Conduct p. 9) | Any individual of combination of discipline management techniques may be used by the campus administrator as part of a progressive set of interventions (Student Code of Conduct p. 9) | Any individual of combination of discipline management techniques may be used by the campus administrator as part of a progressive set of interventions (Student Code of Conduct p. 9) | N/A |
| | | | | 21 | 21 | **Retaliation (Student)** | 60-day SGLC assignment & completion of anger management program | 90-day SGLC assignment & completion of anger management program | 120-day SGLC assignment & completion of anger management program | Not eligible for EER |
| | | | | 21 | 21 | **Trespassing** | Warning | Any individual of combination of discipline management techniques may be used by the campus administrator as part of a progressive set of interventions (Student Code of Conduct p. 9) | Any individual of combination of discipline management techniques may be used by the campus administrator as part of a progressive set of interventions (Student Code of Conduct p. 9) | N/A |
| | | | X | 22 | 22 | **Criminal Mischief ≥ $1,500 (Felony Violation)** | Expulsion with placement to SGLC for remainder of school year. Referral to TCHATT | | | Not eligible for EER |
| X | | | X | 26 | 26 | **Terroristic Threat** *(Campus SSSP Team will be required to meet and assess the threat level/ Report to TEA)* | 90-day SGLC assignment & completion of intervention program | Expulsion to SGLC for remainder of SY & completion of anger management program | | Not Eligible for EER |
| X | | | X | 27 | 27 | **Assault (Bodily Injury - Employee)** | 90-day SGLC assignment & completion of anger management program | 120-day SGLC assignment & completion of anger management program | Expulsion with Placement for remainder of SY & completion of anger management program | Not eligible for EER |
| X | | | X | 28 | 28 | **Assault (Bodily Injury - Student)** | 60-day SGLC assignment & completion of anger management program | 90-day SGLC assignment & completion of anger management program | Expulsion with Placement for remainder of SY & completion of anger management program | Not eligible for EER |
| | X | | X | 29 | 29* | **Assault (Aggravated - Employee)** | Expulsion with Placement to SGLC for remainder of school year. Referral to TCHATT | | | Not eligible for EER |
| | X | | X | 30 | 30* | **Assault (Aggravated - Student)** | Expulsion with Placement to SGLC for remainder of school year. Referral to TCHATT | | | Not eligible for EER |
| | X | | X | 31 | 31* | **Sexual Assault - Aggravated (against school staff)** | Expulsion without placement | | | N/A |
| | X | | X | 32 | 32* | **Sexual Assault - Aggravated (against student)** | Expulsion without placement | | | N/A |
| X | | | X | 35 | 35 | **False Alarm/False Report** (911 call, false alarm, false report including a bomb threat or a terroristic threat involving a public school, fire alarm pulled) | 60-day SGLC assignment & completion of intervention program | 90-day SGLC assignment & completion of intervention program | 120-day SGLC assignment & completion of intervention program | Not eligible for EER |

*Unsafe School Coding

CODING SUBJECT TO CHANGE

# SECONDARY CONSEQUENCE GUIDE - SEQUENTIAL ORDER

| MANDATORY DAEP | MANDATORY EXPULSION | DISCRETIONARY DAEP | DISCRETIONARY EXPULSION | OFFENSE CODE | PEIMS CODE | INFRACTION | 1ST OFFENSE | 2ND OFFENSE | 3RD OFFENSE | EARLY EXIT REVIEW (if applicable) |
|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | **Important Chapter 37 Notes:**<br>(A) The Campus Behavior Coordinator (CBC) is required to promptly notify a student's parent or guardian of any disciplinary actions.<br>(B) Before a suspension, consideration must be given to (1) self-defense; (2) intent or lack of intent at the time the student engaged in the conduct; (3) disciplinary history; and (4) disability that substantially impairs the student's capacity to appreciate the wrongfulness of the student's conduct; (5) status under conservatorship of the Department of Family and Protective Services; and (6) a student status as a student who is homeless.<br>(C) An out of school suspension (OSS) may not exceed three school days.<br>(D) A student who is enrolled in a grade level below grade three may not be placed in out-of-school suspension unless the student engages in weapons-related offenses, violent assault offenses or drug or alcohol-related offenses.<br>(E) When a student under the age of ten engages in behavior that is an expellable behavior, the student shall not be expelled, but shall be placed in a DAEP. A student under age six shall not be placed in a DAEP unless the student commits a federal firearm offense.<br>(F) A student who is classified as "homeless" may not receive OSS unless the student has engaged in weapons-related offenses, violent assault offenses or drug or alcohol-related offenses. | | | |
| | X | | X | 36 | 36* | **Drug Felony - Possession/Sold/Used Controlled Substance** (e.g. > 4 ounces of marijuana, any amount of cocaine, or other controlded substances) Requires corroboration from law enforcement | Expulsion with 120-day SGLC assignment & completion of drug dependency program.<br>Referral to TCHATT | Expulsion with 180-day SGLC assignment & completion of drug dependency program.<br>Referral to TCHATT | Expulsion with 180-day SGLC assignment & completion of drug dependency program.<br>Referral to TCHATT | Not eligible for EER |
| | X | | X | 37 | 37* | **Felony Alcohol Violation** | | | | |
| | | X | | 41 | 41 | **Fighting (Mutual Combat)** | 3-day OSS; corrective counseling and discretionary 30-day SGLC assignment. | 30-day SGLC assignment & completion of anger management program | 45-day SGLC assignment & completion of anger management program | N/A |
| | X | | X | 46 | 46* | **Aggravated Robbery** | Expulsion with Placement to SGLC until disposition of case. Expulsion without placement | | | Not eligible for EER |
| | X | | X | 47 | 47* | **Manslaughter** | Expulsion without placement | | | N/A |
| | X | | X | 48 | 48* | **Criminally Negligent Homicide** | Expulsion without placement | | | N/A |
| | | | | 49 | 49* | **Deadly Conduct** | | | | |
| X | | | X | 55 | 55 | **Student Is Required to Register as A Sex Offender Under Chapter 62 Of The Code Of Criminal Procedure And Is Under Court Supervision** | | | | |
| | | X | | 56 | 56 | **Student Is Required to Register as A Sex Offender Under Chapter 62 Of The Code Of Criminal Procedure And Is Not Under Court Supervision** | | | | |
| | X | | | 57 | 57* | **Continuous Sexual Abuse of Young Child or Disabled Individual Under Penal Code 21.02** | | | | |
| | X | | | 58 | 58 | **Breach of Computer Security** See TAB 9 for definition | 30-day SGLC assignment, temporary loss of technology priveleges & completion of intervention program | 60-day SGLC assignment, loss of technology priveleges & completion of intervention program | 90-day SGLC assignment, loss of technology priveleges & completion of intervention program | EER contingent upon completion of intervention program |
| | | | | 59 | 59 | **Serious Misbehavior, as Defined by TEC 37.007(c), while expelled to/ placed in a DAEP** - See TAB 9 for definition | | | | |
| | | | | 60 | 60 | **Harassment Against an Employee of the School District under Texas penal Code 42.07(a)(1),(2),(3), or (7)** | | | | |
| | | X | X | 61 | 61 | **Bullying (Encourages a student to commit suicide)** | Expulsion with Placement to SGLC until disposition of case. Referral to TCHATT | | | Not eligible for EER |
| | | X | X | 61 | 61 | **Harassment** (Non-Sexual conduct that meets the definition established in district policies DIA(LOCAL) and FFH(LOCAL)) | 45-day SGLC assignment & completion of intervention program | 60-day SGLC assignment & completion of intervention program | 90-day SGLC assignment & completion of intervention program | Not eligible for EER |
| | | X | X | 61 | 61 | **Hazing** | Expulsion with Placement to SGLC for remainder of school year. Possible expulsion. Referral to TCHATT | | | Not eligible for EER |
| | | | | L04 | 21 | **Drug Paraphernalia** (e.g., pipes, vaping pens, etc.) | 3-day OSS; corrective counseling | 30-day SGLC assignment & completion of drug dependency program | 90-day SGLC assignment & completion of drug dependency program | Level 1 and Level 2 = EER contingent upon completion of intervention program |
| | | | | L25 | 21 | **Bullying - Cyber** | | | | |
| | | | | L25 | 21 | **Bullying (Releasing or threatening to release intimate material of a minor or student 18 years of age or older without consent)** | | | | |
| | | | | L30 | 21 | **Bullying (Inciting violence against a student through group bullying)** | | | | |
| | | | | L35 | 21 | **Bullying (Persistent Behavior)** | 3-day OSS; corrective counseling and assigned stay- away agreement. | 60-day SGLC assignment & completion of intervention program | 90-day SGLC assignment & completion of intervention program | Not eligible for EER |

**\*Unsafe School Coding**                                                                                             **CODING SUBJECT TO CHANGE**

# SECONDARY CONSEQUENCE GUIDE - SEQUENTIAL ORDER

| MANDATORY DAEP | MANDATORY EXPULSION | DISCRETIONARY DAEP | DISCRETIONARY EXPULSION | OFFENSE CODE | PEIMS CODE | INFRACTION | 1ST OFFENSE | 2ND OFFENSE | 3RD OFFENSE | EARLY EXIT REVIEW (if applicable) |
|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | **Important Chapter 37 Notes:** (A) The Campus Behavior Coordinator (CBC) is required to promptly notify a student's parent or guardian of any disciplinary actions. (B) Before a suspension, consideration must be given to (1) self-defense; (2) intent or lack of intent at the time the student engaged in the conduct; (3) disciplinary history; and (4) disability that substantially impairs the student's capacity to appreciate the wrongfulness of the student's conduct; (5) status under conservatorship of the Department of Family and Protective Services; and (6) a student status as a student who is homeless. (C) An out of school suspension (OSS) may not exceed three school days. (D) A student who is enrolled in a grade level below grade three may not be placed in out-of-school suspension unless the student engages in weapons-related offenses, violent assault offenses or drug or alcohol-related offenses. (E) When a student under the age of ten engages in behavior that is an expellable behavior, the student shall not be expelled, but shall be placed in a DAEP. A student under age six shall not be placed in a DAEP unless the student commits a federal firearm offense. (F) A student who is classified as "homeless" may not receive OSS unless the student has engaged in weapons-related offenses, violent assault offenses or drug or alcohol-related offenses. | | | |
| | | | | L40 | 21 | **Disregard for Authority** (Failure to comply with directives given by school personnel; insubordination) | Any individual or combination of discipline management techniques may be used by the campus administrator as part of a progressive set of interventions (Student Code of Conduct p. 9) | Any individual or combination of discipline management techniques may be used by the campus administrator as part of a progressive set of interventions (Student Code of Conduct p. 9) | 30-day SGLC assignment & completion of intervention program | N/A |
| | | | | L42 | 21 | **Assault** (Without Bodily Injury - Employee) | 90-day SGLC assignment & completion of anger management program | 120-day SGLC assignment & completion of anger management program | SGLC assignment for remainder of SY & completion of anger management program | Not eligible for EER |
| | | | | L44 | 21 | **Assault** (Without Bodily Injury- Student) | 30-day SGLC assignment & completion of anger management program | 45-day SGLC assignment & completion of anger management program | 60-day SGLC assignment & completion of anger management program | EER contingent upon completion of anger management program |
| | | | | L50 | 21 | **Possession of Prohibited Items** (A) - (e.g., fireworks, smoke or stink bombs, any pyrotechnic device, location restricted knife - under 6", razor, box cutter) SCC | Any individual or combination of discipline management techniques may be used by the campus administrator as part of a progressive set of interventions (Student Code of Conduct p. 9) | 30-day SGLC assignment & completion of intervention program | 60-day SGLC assignment & completion of intervention program | Level 2 and 3 = EER contingent upon completion of intervention program |
| | | | | L59 | 21 | **Altering/Destroying School Records** | 5-day ISS assignment & completion of DRC guidance program | "10-day ISS assignment & completion of DRC guidance program" | 30-day SGLC assignment & completion of DRC guidance program | N/A |
| | | | | L59 | 21 | **Graffiti/Vandalism (Defacing School Property ≤ $50)** Includes Criminal Mischief less than $50 | Any individual or combination of discipline management techniques may be used by the campus administrator as part of a progressive set of interventions (Student Code of Conduct p. 9) plus restitution. | Any individual or combination of discipline management techniques may be used by the campus administrator as part of a progressive set of interventions (Student Code of Conduct p. 9) plus restitution. | 30-day SGLC assignment, completion of intervention program plus restitution. | Not eligible for EER |
| | | | | L59 | 21 | **Graffiti/Vandalism (Defacing School Property ≥ $50)** Includes Criminal Mischief more than $50 | 3-day OSS; corrective counseling and discretionary 30-day SGLC assignment with assignment of intervention program. | 30-day SGLC assignment, completion of intervention program plus restitution. | 60-day SGLC assignment, completion of intervention program plus restitution. | Not eligible for EER |
| | | | | L61 | 21 | **Theft** (Any Value) | Any individual or combination of discipline management techniques may be used by the campus administrator as part of a progressive set of interventions (Student Code of Conduct p. 9) plus restitution. | 30-day SGLC assignment & completion of intervention program plus restitution | 60-day SGLC assignment & completion of intervention program plus restitution | EER contingent upon completion of intervention program |
| | | | | L64 | 21 | **Possession of Cell Phone/Electronic Devices (Unauthorized)** | Any individual or combination of discipline management techniques may be used by the campus administrator as part of a progressive set of interventions (Student & Parent Handbook) | Any individual or combination of discipline management techniques may be used by the campus administrator as part of a progressive set of interventions (Student & Parent Handbook) | Any individual or combination of discipline management techniques may be used by the campus administrator as part of a progressive set of interventions (Student & Parent Handbook) | N/A |
| | | | | L66 | 21 | **Harassment (Sexual)** | 90-day SGLC assignment & completion of intervention program | 120-day SGLC assignment & completion of intervention program | 180-day SGLC assignment & completion of intervention program | Not eligible for EER |
| | | | | L67 | 21 | **Intimate Visual Material** (possession of pornography) | 90-day SGLC assignment & referral to TCHATT | SGLC assignment for remainder of school year & referral to TCHATT | | N/A |
| | | | | L68 | 21 | **Intimate Visual Material** (distribution of pornography) | 90-day SGLC assignment & referral to TCHATT | SGLC assignment for remainder of school year & referral to TCHATT | | |

**\*Unsafe School Coding**

**CODING SUBJECT TO CHANGE**

# SECONDARY CONSEQUENCE GUIDE - SEQUENTIAL ORDER

| MANDATORY DAEP | MANDATORY EXPULSION | DISCRETIONARY DAEP | DISCRETIONARY EXPULSION | OFFENSE CODE | PEIMS CODE | INFRACTION | 1ST OFFENSE | 2ND OFFENSE | 3RD OFFENSE | EARLY EXIT REVIEW (if applicable) |
|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | **Important Chapter 37 Notes:**<br>(A) The Campus Behavior Coordinator (CBC) is required to promptly notify a student's parent or guardian of any disciplinary actions.<br>(B) Before a suspension, consideration must be given to (1) self-defense; (2) intent or lack of intent at the time the student engaged in the conduct; (3) disciplinary history; and (4) disability that substantially impairs the student's capacity to appreciate the wrongfulness of the student's conduct; (5) status under conservatorship of the Department of Family and Protective Services; and (6) a student status as a student who is homeless.<br>(C) An out of school suspension (OSS) may not exceed three school days.<br>(D) A student who is enrolled in a grade level below grade three may not be placed in out-of-school suspension unless the student engages in weapons-related offenses, violent assault offenses or drug or alcohol-related offenses.<br>(E) When a student under the age of ten engages in behavior that is an expellable behavior, the student shall not be expelled, but shall be placed in a DAEP. A student under age six shall not be placed in a DAEP unless the student commits a federal firearm offense.<br>(F) A student who is classified as "homeless" may not receive OSS unless the student has engaged in weapons-related offenses, violent assault offenses or drug or alcohol-related offenses. | | | |
| | | | | L72 | 21 | **Dress Code Violation** | Any individual of combination of discipline management techniques may be used by the campus administrator as part of a progressive set of interventions (Student & Parent Handbook) | Any individual of combination of discipline management techniques may be used by the campus administrator as part of a progressive set of interventions (Student & Parent Handbook) | Any individual of combination of discipline management techniques may be used by the campus administrator as part of a progressive set of interventions (Student & Parent Handbook) | N/A |
| | | | | L73 | 21 | **Profanity towards school employee** | Corrective counseling, discretionary ISS or OSS, behavior contract and schedule change, warning of placement to SGLC. | 30-day SGLC assignment & completion of intervention program | 45-day SGLC assignment & completion of intervention program | Not eligible for EER |
| | | | | L73 | 21 | **Profanity towards student/non- employee** | Any individual of combination of discipline management techniques may be used by the campus administrator as part of a progressive set of interventions (Student Code of Conduct p. 9) | Any individual of combination of discipline management techniques may be used by the campus administrator as part of a progressive set of interventions (Student Code of Conduct p. 9) | 30-day SGLC assignment & completion of intervention program | N/A |
| | | | | L75 | 21 | **Bus Conduct** | "Warning of Loss of Bus Privileges (Parent Conference)" | Any individual of combination of discipline management techniques may be used by the campus administrator as part of a progressive set of interventions including loss of bus privileges. (Student Code of Conduct p. 9) | Any individual of combination of discipline management techniques may be used by the campus administrator as part of a progressive set of interventions including loss of bus privileges. (Student Code of Conduct p. 9) | N/A |
| | | | | L80 | 21 | **Persistent/Habitual Campus Disruption** (behavior that causes campus-wide disruption) | 30-day SGLC assignment & completion of intervention program | 60-day SGLC assignment & completion of intervention program | 90-day SGLC assignment & completion of intervention program | Not eligible for EER |
| | | | | L80 | 21 | **Persistent/Habitual Misbehavior on Campus** (5 or more documented referrals) | 45-day SGLC assignment & completion of intervention program | 60-day SGLC assignment & completion of intervention program | 90-day SGLC assignment & completion of intervention program | Level 1 = EER contingent upon completion of intervention program |
| | | | | L85 | 21 | **Classroom Disruption** | Any individual of combination of discipline management techniques may be used by the campus administrator as part of a progressive set of interventions (Student Code of Conduct p. 9) | Any individual of combination of discipline management techniques may be used by the campus administrator as part of a progressive set of interventions (Student Code of Conduct p. 9) | Any individual of combination of discipline management techniques may be used by the campus administrator as part of a progressive set of interventions (Student Code of Conduct p. 9) | N/A |
| | | | | VAP | 21 | **Vaping** Possession of an e-cigarette, vaping device, parts of a vaping device, or any associated paraphernalia | Any individual of combination of discipline management techniques may be used by the campus administrator as part of a progressive set of interventions (Student Code of Conduct p. 9) plus completion of DRC program | 30-day SGLC assignment & completion of drug dependency program | 45-day SGLC assignment & completion of drug dependency program | N/A |
| | | | | | | **Truancy (failure to attend school) - Student with at least 3 absences** (TEC § 25.094. Failure to Attend School - three or more days or parts of days within a four-week period.) | Warning - Parent awareness/reminder of truancy laws; counseling intervention to determine root cause of absences. | Parent Conference; Discipline Referral Form/Truancy charge issued to student - Requirement to attend Saturday School | Referral to BCFS Family Intervention Program; Discipline Referral Form/Truancy charge issued to student - Requirement to attend Saturday School | N/A |

**\*Unsafe School Coding**

# SECONDARY CONSEQUENCE GUIDE - SEQUENTIAL ORDER

| MANDATORY DAEP | MANDATORY EXPULSION | DISCRETIONARY DAEP | DISCRETIONARY EXPULSION | OFFENSE CODE | PEIMS CODE | INFRACTION | 1ST OFFENSE | 2ND OFFENSE | 3RD OFFENSE | EARLY EXIT REVIEW (if applicable) |
|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | **Important Chapter 37 Notes:**<br>(A) The Campus Behavior Coordinator (CBC) is required to promptly notify a student's parent or guardian of any disciplinary actions.<br>(B) Before a suspension, consideration must be given to (1) self-defense; (2) intent or lack of intent at the time the student engaged in the conduct; (3) disciplinary history; and (4) disability that substantially impairs the student's capacity to appreciate the wrongfulness of the student's conduct; (5) status under conservatorship of the Department of Family and Protective Services; and (6) a student status as a student who is homeless.<br>(C) An out of school suspension (OSS) may not exceed three school days.<br>(D) A student who is enrolled in a grade level below grade three may not be placed in out-of-school suspension unless the student engages in weapons-related offenses, violent assault offenses or drug or alcohol-related offenses.<br>(E) When a student under the age of ten engages in behavior that is an expellable behavior, the student shall not be expelled, but shall be placed in a DAEP. A student under age six shall not be placed in a DAEP unless the student commits a federal firearm offense.<br>(F) A student who is classified as "homeless" may not receive OSS unless the student has engaged in weapons-related offenses, violent assault offenses or drug or alcohol-related offenses. | | | |
| | | | | | | **Truancy (failure to attend school) - Student with 10 absences** (TEC § 25.094. Failure to Attend School - fails to attend school on 10 or more days or parts of days within a six-month period. ) | Parent Conference with District Truancy Officer issues warning to parent of charges and court referral of any subsequent unexcused absences. Discipline Referral Form/Truancy Charge Issued to Student | District Truancy Officer collects documentation of intervention efforts and attempts to address unexcused absences (parent contributing to truancy). If student is not in residency, then the student will be withdrawn from the District. Students not in residency who are withdrawn due to truancy reasons will not be permitted to re-enroll in the District. | | N/A |
| | | | | | | **Truancy (failure to attend school) - Parent Contributing to Truancy** | Referral to Court | | | N/A |

| | | |
|---|---|---|
| ***Unsafe School Coding** | | **CODING SUBJECT TO CHANGE** |

When the mandatory action is not assigned, an additional action code of 27 or 28 must be added to the discipline record (in addition to the assigned PEIMS action code(s)).

See tab K in the SFDR-CISD Discipline Manual for additional guidance.

Case 1:24-cv-00902-RAL    Document 40    Filed 09/29/24    Page 131 of 259

# PEIMS Discipline Data - Chart for Determining Mandatory and Discretionary DAEP Placements and Expulsions

*NOTE:* This chart represents the minimum required actions and maximum allowed actions for school districts.  It does not apply to charter schools except for code 11 – (Possession or use of Firearms at school or a school related activity), unless a charter school has adopted one of the other mandatory provisions into its student code of conduct.

TABLE KEY
*Retaliation against school employee or volunteer coupled with an offense in TEC 37.007 (a) or (d).

■ Not allowed by TEC Chapter 37

▓ Not specified by TEC Chapter 37.  Action for these items must be authorized by the local Student Code of Conduct

| Disciplinary Action Reason Code (C165) Code and Definition | Behavior Location Code (C190) Behavior Location Code | Mandatory DAEP Placement | Mandatory Expulsion | Discretionary DAEP Placement | Discretionary Expulsion |
|---|---|---|---|---|---|
| **01** **Permanent removal by a teacher from class** – TEC §37.002(c)<br>A teacher may  permanently remove a student from the classroom **(1)** who has been documented by the teacher to repeatedly interfere with the teacher's ability to  communicate effectively with the students in the class or with the ability of the student's classmates to learn; or **(2)** whose behavior the teacher determines is  so unruly, disruptive, or abusive that it seriously interferes with the teacher's ability to communicate effectively with the students in the class or with the ability of the student's classmates to learn. | On campus (01) | | | D | |
| **02** **Engages in Conduct Punishable as a Felony** - TEC §37.006(a)(2)(a)<br>Includes all felony activities that are not otherwise more specifically defined or included as a behavior that requires a mandatory expulsion action. | On campus (01) | M | | | |
| TEC §37.006(a)(2)(A) | Off Campus, within 300 ft. (02) | M | | | |
| TEC §37.006(a)(2)(A) | School Related/Sponsored Activity Off Campus (03) | M | | | |
| TEC §37.006(d) | Off Campus, no school related/sponsored activity (04) | | | D | |
| TEC §37.0081 | On school property, or at school related/sponsored activity, of another school district (05) | | | D | |
| **04** **Non-Felony Marihuana or Controlled Substance or Dangerous Drug** - TEC §37.006(a)(2)(C) and §37.007(b)(2)(A)<br>Sells, gives, or delivers to another person or possesses or uses or is under the influence of marihuana or a controlled substance, as defined by Health and Safety Code Chapter 481, , or a dangerous drug, as defined by Health and Safety Code Chapter  483.<br>Health and Safety Code Chapter 481 defines marihuana as Cannabis Sativa whether growing or not, the seeds of that plant, and every compound, manufacture, salt, derivative, mixture, or preparation of that plant or its seeds.  The term does not  include resin extracted from a part of the plant, the mature stalks of the plant or fiber produced from the stalks, oil or cake made from the seeds of the plant, the sterilized seeds of the plant or a compound, manufacture, salt, derivative, mixture, or  preparations of the mature stalks, fiber, oil or cake.<br><br>Health and Safety Code Chapter 481 defines a controlled substance as a substance, including a drug and an immediate precursor, listed in Schedules I-V or penalty Groups 1-4 of the Health and Safety Code.  Possession of any amount in Penalty Groups  1 and 2 is a felony.  Possession of a controlled substance in Penalty Groups 3 and 4 is a felony if the amount is more than 28 grams.  It is also a felony to deliver a controlled substance to a minor.  (However, this offense does not apply to minors in   some circumstances.)<br>Health and Safety Code Chapter 483 defines a dangerous drug as a device or a drug that is unsafe for self-medication and that is not included in Schedules I-V or penalty Groups 1-4 of the Health and Safety Code.  The term includes a device or drug that  bears or is required to bear the legend:<br>(a) Caution: federal law prohibits dispensing without a prescription; or<br>(b) Caution: federal law restricts this drug to use by or on the order of a licensed veterinarian.<br><br>"Marihuana or Controlled Substance or Dangerous Drug" violation is also a discretionary expellable offense dependent on the local Student Code of Conduct.<br><br>If a violation under this category is committed at a felony level, then the student must be expelled from their regular education setting. Use Disciplinary Action Reason Code 36 for reporting when this occurs. | On campus (01) | M | | | D |
| TEC §37.006(a)(2)(C) and 37.007(b)(2)(A) | (02) Off Campus, within 300 ft. | M | | | D |
| TEC §37.006(a)(2)(C) and 37.007(b)(2)(A) | School Related/Sponsored Activity Off Campus (03) | M | | | D |

■ Unsafe School Coding

| | Code and Definition | Behavior Location Code | Mandatory DAEP Placement | Mandatory Expulsion | Discretionary DAEP Placement | Discretionary Expulsion |
|---|---|---|---|---|---|---|
| 05 | **Non-Felony Alcohol** - TEC §37.006(a)(2)(D) and 37.007(b)(2)(A)<br>Sells, gives, or delivers to another person an alcoholic beverage, as defined by Alcoholic Beverage Code Section 1.04 commits a serious act or offense while under the influence of alcohol, or possesses, uses, or is under the influence of an alcoholic beverage.<br><br>Alcoholic Beverage Code Section 1.04 defines an alcoholic beverage as alcohol, or any beverage containing more than one-half of one percent of alcohol by volume, which is capable of use for beverage purposes, either alone or when diluted.<br><br>*"Alcohol" violation is also a discretionary expellable offense dependent on the local Student Code of Conduct.*<br>If a violation under this category is committed at a felony level, then the student must be expelled from their regular education setting. Use Disciplinary Action Reason Code 37 for reporting when this occurs. | (01) On Campus | M | | | D |
| | TEC §37.006(a)(2)(D) and 37.007(b)(2)(A) | Off Campus, within 300 ft. (02) | M | | | D |
| 06 | **Abuse of a Volatile Chemical** - TEC §36.006(a)(2)(E) and 37.007(b)(2)(B)<br>Engages in conduct that contains the elements of an offense relating to an abusable volatile chemical (glue, aerosol paint, etc.) under Sections 485.031 through 485.034, Health and Safety Code, or relating to volatile chemicals under Chapter 484, Health and Safety Code.<br><br>Chapter 485.031, Health and Safety Code, defines the offense abuse of a volatile chemical as when a person inhales, ingests, applies, uses, or possesses a volatile chemical with the intent to inhale, ingest, apply, or use a volatile chemical (glue, aerosol paint, etc.) in a manner contrary to the directions for use, cautions or warnings appearing on a label of a container of chemical and is designed to affect the persons central nervous system, create or induce a condition of intoxication, hallucination, or elation or change or distort or disturb the person's eyesight, thinking process, balance or coordination.<br><br>*"Abuse of a Volatile Chemical" violation is also a discretionary expellable offense dependent on the local Student Code of Conduct.* | On campus (01) | M | | | D |
| | TEC §37.006(a)(2)(E) and 37.007(b)(2)(B) | Off Campus, within 300 ft. (02) | M | | | D |
| | TEC §37.006(a)(2)(E) and 37.007(b)(2)(B) | School Related/Sponsored Activity Off Campus (03) | M | | | D |
| 07 | **Public Lewdness/Indecent Exposure** - TEC §37.006(a)(2)(F)<br>Engages in conduct that contains the elements of the offense of public lewdness under Penal Code Section 21.07 or indecent exposure under Section 21.08, Penal Code.<br><br>Penal Code Chapter 21.07 defines public lewdness as when a person knowingly engages in any of the following acts in a public place or, if not in a public place, is reckless about whether another is present or will be offended or alarmed by:<br><br>(a) an act of sexual intercourse;<br>(b) act of deviate sexual intercourse;<br>(c) act of sexual contact; or<br>(d) act involving contact between the person's mouth or genitals and the anus or genitals of an animal or fowl.<br>Penal Code Chapter 21.08 defines indecent exposure as an offense when a person exposes his anus or any part of his genitals with intent to arouse or gratify the sexual desire of any person, and he is reckless about whether another is present who will be offended or alarmed by his act. | On campus (01) | M | | | |
| | TEC §37.006(a)(2)(F) | Off Campus, within 300 ft. (02) | M | | | |
| | TEC §37.006(a)(2)(F) | School Related/Sponsored Activity Off Campus (03) | M | | | |
| 08 | **Retaliation against School Employee** - TEC §37.006(b) and 37.007(d)<br>Engages in conduct that contains the elements of the offense of retaliation under Penal Code Section 36.06 against any school employee.<br>Penal Code Section 36.06 defines the offense of retaliation as when a person intentionally or knowingly harms or threatens to harm another by an unlawful act in retaliation for or on account of the service of another as a public servant, witness, prospective witness, informant, or a person who has reported or who the actor knows intends to report the occurrence of a crime or to prevent or delay the service of another as a public servant, witness, prospective witness, informant, or a person who has reported or who the actor knows intends to report the occurrence of a crime.<br><br>*"Retaliation against School Employee" violation is also a discretionary expellable offense dependent on the local Student Code of Conduct.*<br>**If a violation under this reason is committed at a felony level, then the student must be expelled from their regular education setting.** | On campus (01) | M | | | D* |
| | TEC §37.006(b) and 37.007(d) | Off Campus, within 300 ft. (02) | M | | | D* |
| | TEC §37.006(b) and 37.007(d) | School Related/Sponsored Activity Off Campus (03) | M | | | D* |
| | TEC §37.006(b) and 37.007(d) | Off Campus, no school related/sponsored activity (04) | M | | | D* |

🟥 Unsafe School Coding

| | Code and Definition | Behavior Location Code | Mandatory DAEP Placement | Mandatory Expulsion | Discretionary DAEP Placement | Discretionary Expulsion |
|---|---|---|---|---|---|---|
| | | | | | Disciplinary Action Codes (C164) | |
| 09 | **Title 5 Felony Committed Off Campus** - TEC §37.006(c) and §37.007(b)(4) and TEC §37.0081<br>A student who commits an off-campus felony must be removed from their regular education program and placed in a DAEP if:<br>(a) the student receives deferred prosecution for conduct and the conduct is defined as a felony under Title 5 of the Penal Code;<br>(b) a court or jury finds that the off-campus conduct engaged in by the student constitutes delinquent conduct and is defined as a felony under Title 5 of the Penal Code;<br>(c) or, the superintendent or the superintendent's designee has a reasonable belief that the student engaged in conduct defined as a felony under Title 5 of the Penal Code.<br>Title 5 felonies include: murder; capital murder; manslaughter; criminally negligent homicide; kidnapping; aggravated kidnapping; indecency with a child; felony assault; sexual assault; aggravated assault; aggravated sexual assault; injury to a child, elderly individual, or disabled individual; abandoning or endangering a child; deadly conduct; terroristic threat; aiding suicide; and tampering with a consumer product.<br><br>A student who is at least 10 years of age may be expelled if the student engages in conduct that contains the elements of any offense listed in Subsection (a)(2)(A) or (C) (murder, capital murder, criminal attempt to commit murder or capital murder; aggravated assault under Penal Code §22.02; sexual assault under Penal Code §22.011 or aggravated sexual assault under Penal code §22.021), against another student from the same campus, without regard to whether the conduct occurs on or off of school property or while attending a school-sponsored or school-related activity on or off of school property.<br>The provision for a discretionary expulsion under for these offenses is dependent on the local Student Code of Conduct. | Off Campus, no school related/sponsored activity (04) | M | | | D |
| 10 | **Non-Title 5 Felony Committed Off Campus** - TEC §37.006(d) and TEC §37.007(b)(4)<br>A student **may be removed** from class and placed in a DAEP under TEC §37.008 based on conduct occurring off campus and while the student is not in attendance at a school-sponsored or school-related activity if;<br>(a) the superintendent or the superintendent's designee has a reasonable belief that the student has engaged in conduct defined as a felony offense other than those defined in Title 5, Penal Code; and<br>(b) the continued presence of the student in the regular classroom threatens the safety of other students or teachers or will be detrimental to the education process.<br><br>A student who is at least 10 years of age **may be expelled** if the student engages in conduct that contains the elements of **aggravated robbery** under Penal Code §29.03, **against another student from the same campus**, without regard to whether the conduct occurs on or off of school property or while attending a school-sponsored or school- related activity on or off of school property.<br>The provision for a *discretionary expulsion under this offense* is dependent on the local Student Code of Conduct. | Off Campus, no school related/sponsored activity (04) | | | D | D |
| 11 | **Firearm** –<br>Brought a Firearm to School – TEC 37.007(e) or Unlawful Carrying of a Handgun under Penal Code 46.02 – TEC 37.007(a)(1) 18 U.S.C. Section 921<br><br>Under 18 U.S.C. Section 921, the term "**firearm**" means:<br>(a) any weapon (including a starter gun) which will or is designed to or may readily be converted to expel a projectile by the action of an explosive;<br>(b) the frame or receiver of any such weapon;<br>(c) any firearm muffler or firearm silencer; or<br>(d) any destructive device.<br><br>Under 18 U.S.C. Section 921, antique firearms (manufactured prior to 1899) are not included in the definition of a firearm.<br>**BB and pellet guns are not considered firearms under this definition**.<br><br>The use, exhibition, or possession of these items, while probably prohibited by the local Student Code of Conduct, is not an acceptable reason for expelling a student. | On campus (01) | | M | | |
| | TEC §37.007(b)(3)(B) | Off Campus, within 300 ft. (02) | | | | D |
| | TEC §37.007(a)(1) and/or 37.007(e) | School Related/Sponsored Activity Off Campus (03) | | M | | |
| | TEC 37.007(i) | On school property, or at school related/sponsored activity, of another school district (05) | | | | D |
| 12 | **Location Restricted Knife** –<br>Unlawful Carrying of a Location-restricted Knife under Penal Code 46.02 – TEC 37.007(a)(1) (Location Restricted knife - blade longer than 5.5 inches).<br>Penal Code Section 46.01(6) defines a **location-restricted knife** as a knife with a blade length longer than 5.5 inches. | On campus (01) | | M | | |
| | TEC §37.007(b)(3)(B) | Off Campus, within 300 ft. (02) | | | | D |
| | TEC §37.007(a)(1) and/or 37.007(e) | School Related/Sponsored Activity Off Campus (03) | | M | | |
| | TEC 37.007(i) | On school property, or at school related/sponsored activity, of another school district (05) | | | | D |

■ **Unsafe School Coding**

| Code and Definition | Behavior Location Code | Mandatory DAEP Placement | Mandatory Expulsion | Discretionary DAEP Placement | Discretionary Expulsion |
|---|---|---|---|---|---|
| **14** **Prohibited Weapon –** Conduct Containing the Elements of an Offense Relating to Prohibited Weapons Under Penal Code 46.05 – TEC 37.007(a)(1).<br><br>Penal Code Section 46.05 defines a **prohibited weapon** as one of the following:<br><br>(a) an explosive weapon (Penal Code 46.01(2)),<br>(b) a matching gun (Penal Code 46.01(9)),<br>(c) a short-barrel firearm (Penal Code 46.01(10)),<br>(d) armor-piercing ammunition (Penal Code 46.01(12)),<br>(e) a chemical dispensing device (Penal Code 46.01(14)),<br>(f) a zip gun (Penal Code 46.01(16)),<br>(g) a tire deflation device (Penal Code 46.01(17)), or<br>(h) an improvised explosive device (Penal Code 46.01(19)) | On campus (01) | | M | | |
| TEC §37.007(b)(3)(A) | Off Campus, within 300 ft. (02) | | | | D |
| TEC §37.007(a)(1) | School Related/Sponsored Activity Off Campus (03) | | M | | |
| TEC 37.007(i) | On school property, or at school related/sponsored activity, of another school district (05) | | | | D |
| **16** **Arson** – TEC §37.007(a)(2)(B) Penal Code Section 28.02 defines **arson** as when a person starts a fire or causes an explosion with intent to destroy or damage any vegetation, fence, structure, open-space land, building or vehicle knowing that it is within the limits of an incorporated city or town, it is insured, it is subject to mortgage or it is located on property belonging to another. | On campus (01) | | M | | D |
| TEC §37.007(b)(3)(A) | Off Campus, within 300 ft. (02) | | | | D |
| TEC §37.007(a)(2)(B) | School Related/Sponsored Activity Off Campus (03) | | M | | |
| TEC 37.007(i) | On school property, or at school related/sponsored activity, of another school district (05) | | | | D |
| **17** **Murder, Capital Murder, or Criminal Attempt to Commit Murder/Capital Murder** – TEC §37.007(a)(2)(C) Penal Code Section 19.02 defines **murder** as when a person intentionally or knowingly causes the death of another person, intends to cause serious bodily injury and commits an act clearly dangerous to human life that causes the death of an individual or commits or attempts to commit a felony, other than manslaughter, and in the course thereof he commits an act clearly dangerous to human life that causes the death of an individual.<br><br>Penal Code Section 19.03 defines **capital murder** as when a person commits an offense defined under Section 19.02 and the person murders a peace officer or fireman who is acting in the lawful discharge of an official duty, the person intentionally commits murder during the course of committing or attempting to commit kidnapping, burglary, robbery, aggravated sexual assault, arson, or obstruction or retaliation. A person also commits capital murder if the person commits murder for remuneration or the promise of remuneration or employs another to commit murder for remuneration.<br><br>Section 15.01, Penal Code, defines **criminal attempt** as when a person if, with specific intent to commit an offense, does the act amounting to more than mere preparation but fails to effect the commission of the offense intended. | On campus (01) | | M | | |
| TEC §37.007(b)(3)(A) | Off Campus, within 300 ft. (02) | | | | D |
| TEC §37.007(a)(2)(C) | School Related/Sponsored Activity Off Campus (03) | | M | | |
| TEC 37.007(i) | On school property, or at school related/sponsored activity, of another school district (05) | | | | D |
| **18** **Indecency with a Child** - TEC §37.007(a)(2)(D) Penal Code Section 21.11 defines **indecency with a child** as when a person, with a person younger than 17 years, engages in sexual contact with student or exposes his anus or any part of his genitals knowing the student is present with intent to arouse or gratify the sexual desire of any person. | On campus (01) | | M | | |

🟥 Unsafe School Coding

| | Code and Definition | Behavior Location Code | Mandatory DAEP Placement | Mandatory Expulsion | Discretionary DAEP Placement | Discretionary Expulsion |
|---|---|---|---|---|---|---|
| | TEC §37.007(b)(3)(A) | Off Campus, within 300 ft. (02) | | | | D |
| | TEC §37.007(a)(2)(D) | School Related/Sponsored Activity Off Campus (03) | | M | | |
| | TEC 37.007(i) | On school property, or at school related/sponsored activity, of another school district (05) | | | | D |
| 19 | **Aggravated Kidnapping** – TEC §37.007(a)(2)(E)<br>Penal Code Section 20.04 defines **aggravated kidnapping** as when a person intentionally or knowingly abducts another person with intent to hold him for ransom, use him as a hostage, facilitate the commission of a felony, afflict bodily injury on him or abuse him sexually, terrorize him or a third person, or interfere with the performance of any governmental or political function. | On campus (01) | | M | | |
| | TEC §37.007(b)(3)(A) | Off Campus, within 300 ft. (02) | | | | D |
| | TEC §37.007(a)(2)(E) | School Related/Sponsored Activity Off Campus (03) | | M | | |
| | TEC 37.007(i) | On school property, or at school related/sponsored activity, of another school district (05) | | | | D |
| 21 | **Violation of Student Code of Conduct** - TEC §37.006, 37.007, or 37.002(c)<br>This category includes bullying, harassment, and making hit lists (TEC §37.001) and reasons not specifically identified in TEC Chapter 37 that are adopted by the local school board and itemized and identified in the local Student Code of Conduct. | Not Applicable (00) | | | D | |
| 22 | **Criminal Mischief** -<br>A student may be expelled under Section 37.007(f) for conduct that contains the offense of criminal mischief **if that conduct is punishable as a felony**. Otherwise, the most severe action that may be taken would be placement in a DAEP.<br><br>Penal Code Section 28.03 defines criminal mischief as when a person intentionally or knowingly damages or destroys the tangible property of the owner, intentionally or knowingly tampers with the tangible property of the owner and causes a pecuniary loss or substantial inconvenience to the owner or a third person. A felony under this section occurs when damage exceeds $1,500. For example, this section would apply to cases of graffiti if the total cost of repair and cleaning exceeds $1,500. | Not Applicable (00) | | | | D |
| 23 | **Emergency Placement/Expulsion** –<br>The use of this code is limited to reasons for which placement in a DAEP or expulsion may be made on a non-emergency basis according to TEC §37.019.<br><br>**Emergency DAEP Placement**<br>Chapter 37 authorizes the immediate placement of a student in a DAEP if the principal or their designee reasonably believes that the student's behavior is so unruly, disruptive, or abusive that it seriously interferes with a teacher's ability to communicate effectively with the students in a class, with the ability of the student's classmates to learn, or with the operation of school or a school-sponsored activity.<br><br>**Emergency Expulsion**<br>Chapter 37 authorizes the immediate expulsion of a student if the principal or their reasonably believes that the immediate expulsion of the student is necessary to protect persons or property from imminent harm. | Not Applicable (00) | | | D | D |
| 26 | **Terroristic Threat** - TEC §37.006(a)(1) or 37.007(b)(1)<br>Under Penal Code Section 22.07, a person commits an offense if he threatens to commit any offense involving violence to any person or property with the intent to:<br><br>(a) cause a reaction of any type to his threat by an official or volunteer agency organized to deal with emergencies; or<br>(b) place any person in fear of imminent serious bodily injury; or<br>(c) prevent or interrupt the occupation or use of a building; room; place of assemble; place to which the public has access; place of employment or occupation; aircraft, automobile, or other form of conveyance; or other public place; or<br>(d) cause impairment or interruption of public communications, public transportation, public water, gas, or power supply or other public service.<br><br>A person who receives a terroristic threat must not only believe the threat, but also believe that the person making the threat will carry it out.<br><br>"Terroristic Threat" violation is also a discretionary expellable offense dependent on the local Student Code of Conduct. | On campus (01) | M | | | D |
| | TEC §37.006(a)(1) or 37.007(b)(1) | Off Campus, within 300 ft. (02) | M | | | D |
| | TEC §37.006(a)(1) or 37.007(b)(1) | School Related/Sponsored Activity Off Campus (03) | M | | | D |

🟥 **Unsafe School Coding**

| | Code and Definition | Behavior Location Code | Mandatory DAEP Placement | Mandatory Expulsion | Discretionary DAEP Placement | Discretionary Expulsion |
|---|---|---|---|---|---|---|
| | TEC §37.006(a)(1) or 37.007(b)(1) | Off Campus, no school related/sponsored activity (04) | M | | | D |
| | TEC §37.006(a)(1) or 37.007(b)(1) | On school property, or at school related/sponsored activity, of another school district (05) | M | | | D |
| 27 | **Assault of School District Employee or Volunteer** - TEC §36.006(a)(2)(b) and/or TEC §37.007(b)(2)(C)<br>Penal Code Section 22.01 (a)(1) defines **assault** as when a person intentionally, knowingly, or recklessly causes bodily injury to another person.<br>For purposes of this reason, an assault must involve a victim and a perpetrator(s) and the victim must receive bodily injury.<br>If these criteria are not met, then the proper Discipline Action Reason Code would be **Other Student Code of Conduct Violation** (Action Reason Code 21). | On campus (01) | M | | | D |
| | TEC §36.006(a)(2)(B) and/or TEC §37.007(b)(2)(C) | Off Campus, within 300 ft. (02) | M | | | D |
| | TEC §36.006(a)(2)(B) and/or TEC §37.007(b)(2)(C) | School Related/Sponsored Activity Off Campus (03) | M | | | D |
| 28 | **Assault of Someone other than School District Employee or Volunteer** - TEC §37.006(a)(2)(B)<br>Penal Code Section 22.01 (a) (1) defines assault as when a person intentionally, knowingly, or recklessly causes bodily injury to another person.<br>For purposes of this reason, an assault must involve a victim and a perpetrator(s) and the victim must receive bodily injury. **Two or more students cannot assault each other.**<br>If these criteria are not met, then the proper Discipline Action Reason Code would be Other Student Code of Conduct Violation (Action Reason Code 21). | On campus (01) | M | | | |
| | TEC §37.006(a)(2)(B) | Off Campus, within 300 ft. (02) | M | | | |
| | TEC §37.006(a)(2)(B) | School Related/Sponsored Activity Off Campus (03) | M | | | |
| 29 | **Aggravated Assault against School Staff** - TEC §37.007(d)<br>Aggravated assault against a school district employee or volunteer under Penal Code Section 22.02.<br>Penal Code Section 22.02 defines **aggravated assault** as an offense as defined in §22.01 if the person causes **serious bodily** injury to another, including the person's spouse, or **uses or exhibits a deadly weapon** during the commission of the assault.<br>For this Action Reason there must be a victim(s) and a perpetrator(s). **Two persons cannot commit aggravated assault against each other.** | On campus (01) | | M | | |
| | TEC §37.007(d) | Off Campus, within 300 ft. (02) | | M | | |
| | TEC §37.007(d) | School Related/Sponsored Activity Off Campus (03) | | M | | |
| | TEC §37.007(d) | Off Campus, no school related/sponsored activity (04) | | M | | |
| | TEC 37.007(i) | On school property, or at school related/sponsored activity, of another school district (05) | | M | | |
| 30 | **Aggravated Assault against Student** - TEC §37.007(a)(2)A<br>Aggravated assault against someone other than a school district employee or volunteer under Penal Code Section 22.02.<br>Penal Code Section 22.02 defines **aggravated assault** as an offense as defined in §22.01 if the person causes **serious bodily** injury to another, including the person's spouse, or **uses or exhibits a deadly weapon** during the commission of the assault.<br>For this Action Reason there must be a victim(s) and a perpetrator(s).  Two persons cannot commit aggravated assault against each other. | On campus (01) | | M | | |
| | TEC §37.007(b)(3)(A) | Off Campus, within 300 ft. (02) | | | | D |
| | TEC §37.007(a)(2)(A) | School Related/Sponsored Activity Off Campus (03) | | M | | |

🟥 Unsafe School Coding

Disciplinary Action Codes (C164)

| Code and Definition | Behavior Location Code | Mandatory DAEP Placement | Mandatory Expulsion | Discretionary DAEP Placement | Discretionary Expulsion |
|---|---|---|---|---|---|
| TEC 37.007(i) | On school property, or at school related/sponsored activity, of another school district (05) | | | | D |
| **Sexual Assault/Aggravated Sexual Assault against School Staff** - TEC §37.007(d)<br>Sexual assault under Penal Code Section 22.011, or aggravated sexual assault under Penal Code Section 22.021 against a school district employee or volunteer.<br><br>Penal Code Section 22.011 defines **sexual assault** as when a person intentionally or knowingly causes the penetration of the anus or female sexual organ of another person by any means without that person's consent,  causes the penetration of the mouth of another person by the sexual organ of the actor without the person's consent or causes the sexual organ of another person, without the person's consent, to contact, or penetrate  the mouth, anus, or sexual organ of another person, including the actor.<br><br>**Sexual assault** is also defined as when a person intentionally or knowingly causes the penetration of the anus or female sexual organ of a child by any means, causes the penetration of the mouth of a child by the sexual  organ of the actor, causes the sexual organ of a child to contact or penetrate the mouth, anus, or sexual organ of another person, including the actor, or causes the anus of a child to contact the mouth, anus, or sexual  organ of another person, including the actor.<br><br>Penal Code Section 22.021, defines **aggravated sexual assault** as any of the offenses listed above in Penal Code Section 22.011 if the person causes serious bodily injury or attempts to cause the death of the victim or  another person in the course of the same criminal episode, places the victim in fear that death, serious bodily injury, or kidnapping will be imminently inflicted on any person, by acts or words threatens to cause death or  serious bodily injury or kidnapping of any person or who uses or exhibits a deadly weapon in the course of the same criminal episode.  A person also commits the offense of aggravated sexual assault if they act in concert  with another who engages in such conduct or commits the offense of sexual assault on a person who is younger than 14 or 65 years of age or older (Chapter 318, Section 9). | On campus (01) | | M | | |
| TEC §37.007(d) | Off Campus, within 300 ft. (02) | | | | D |
| TEC §37.007(d) | School Related/Sponsored Activity Off Campus (03) | | | | |
| TEC 37.007(i) | On school property, or at school related/sponsored activity, of another school district (05) | | | | D |
| **Sexual Assault/Aggravated Sexual Assault against Student** - TEC §37.007(a)(2)(A)<br>Sexual assault under Penal Code Section 22.011, or aggravated sexual assault under Penal Code Section 22.021 against someone other than a school district employee or volunteer.<br><br>Penal Code Section 22.011 defines **sexual assault** as when a person intentionally or knowingly causes the penetration of the anus or female sexual organ of another person by any means without that person's consent,  causes the penetration of the mouth of another person by the sexual organ of the actor without the person's consent or causes the sexual organ of another person, without the person's consent, to contact, or penetrate  the mouth, anus, or sexual organ of another person, including the actor.<br><br>**Sexual assault** is also defined as when a person intentionally or knowingly causes the penetration of the anus or female sexual organ of a child by any means, causes the penetration of the mouth of a child by the sexual  organ of the actor, causes the sexual organ of a child to contact or penetrate the mouth, anus, or sexual organ of another person, including the actor, or causes the anus of a child to contact the mouth, anus, or sexual  organ of another person, including the actor.<br><br>Penal Code Section 22.021 defines **aggravated sexual assault** as any of the offenses listed above in Penal Code Section 22.011 if the person causes serious bodily injury or attempts to cause the death of the victim or  another person in the course of the same criminal episode, places the victim in fear that death, serious bodily injury, or kidnapping will be imminently inflicted on any person, by acts or words threatens to cause death or  serious bodily injury or kidnapping of any person or who uses  or exhibits a deadly weapon in the course of the same criminal episode.  A person also commits the offense of aggravated sexual assault if they act in concert  with another who engages in such conduct or commits the offense of sexual assault on a person who is younger than 14 or 65 years of age or older (Chapter 318, Section 9). | On campus (01) | | M | | |
| TEC §37.007(b)(3)(A) | Off Campus, within 300 ft. (02) | | | | D |
| TEC §37.007(a)(2)(A) | School Related/Sponsored Activity Off Campus (03) | | M | | |
| TEC 37.007(i) | On school property, or at school related/sponsored activity, of another school district (05) | | | | D |

🟥 **Unsafe School Coding**

| | Disciplinary Action Codes (C164) | | | |
|---|---|---|---|---|
| **Code and Definition** | **Behavior Location Code** | **Mandatory DAEP Placement** | **Mandatory Expulsion** | **Discretionary DAEP Placement** | **Discretionary Expulsion** |

| # | Code and Definition | Behavior Location Code | Mandatory DAEP Placement | Mandatory Expulsion | Discretionary DAEP Placement | Discretionary Expulsion |
|---|---|---|---|---|---|---|
| 35 | **False Alarm/False Report** - TEC §37.006(a)(1) and 37.007(b)(1)<br>A student who commits an offense if he knowingly initiates, communicates or circulates a report of a present, past, or future bombing, fire, offense, or other emergency that he knows is false or baseless and that would ordinarily:<br><br>(a) cause action by an official or volunteer agency organized to deal with emergencies;<br>(b) place a person in fear of imminent serious bodily injury; or<br>(c) prevent or interrupt the occupation of a building, room, place of assembly, place to which the public has access, or aircraft, automobile, or other mode of conveyance.<br><br>"False Alarm/False Report" *violation is also a discretionary expellable offense dependent on the local Student Code of Conduct.* | On campus (01) | M | | | D |
| | TEC §§37.006(a)(1) and 37.007(b)(1) | Off Campus, within 300 ft. (02) | M | | | D |
| | TEC §§37.006(a)(1) and 37.007(b)(1) | School Related/Sponsored Activity Off Campus (03) | M | | | D |
| | TEC §§37.006(a)(1) and 37.007(b)(1) | Off Campus, no school related/sponsored activity (04) | M | | | D |
| | TEC §§37.006(a)(1) and 37.007(b)(1) | On school property, or at another school related/sponsored activity, of another school district (05) | M | | | D |
| 36 | **Felony Controlled Substance Violation** - TEC §37.007(a)(3)<br><br>Examples would include four (4) ounces or more of marijuana, any amount of cocaine, and other controlled substances.<br><br>Always get corroboration from law enforcement before using this Action Reason code. | On campus (01) | | M | | |
| | TEC §37.007(a)(3) | School Related/Sponsored Activity Off Campus (03) | | M | | |
| | TEC 37.007(i) | On school property, or at school related/sponsored activity, of another school district (05) | | | | D |
| 37 | **Felony Alcohol Violation** - TEC §37.007(a)(3)<br><br>An example would be intoxication manslaughter.<br>Always get corroboration from law enforcement before using this Action Reason code. | On campus (01) | | M | | |
| | TEC §37.007(a)(3) | School Related/Sponsored Activity Off Campus (03) | | M | | |
| | TEC 37.007(i) | On school property, or at school related/sponsored activity, of another school district (05) | | | | D |
| 41 | **Fighting/Mutual Combat** - Excludes all offenses under Penal Code §22.01<br><br>Fighting is defined as two or more students or persons that choose to mutually engage in physical combat using blows or force to strive to overcome the other student(s) or person(s). | Not Applicable (00) | | | D | |
| 46 | **Aggravated Robbery** - TEC §37.007(a)(2)(F), TEC §37.006(C)-(D) (HB 9680)<br><br>Penal Code §29.03 defines **aggravated robbery** as when a person commits robbery as defined in Section 29.02, and he: (1) causes serious bodily injury to another; (2) uses or exhibits a deadly weapon; or (3) causes bodily injury to another person or threatens or places another person in fear of imminent bodily injury or death, if the other person is: (A) 65 years of age or older; or (B) a disabled person.<br><br>Penal Code §29.02 defines **robbery** as a person commits an offense if, in the course of committing theft as defined in Chapter 31 and with intent to obtain or maintain control of the property, he: (1)<br>intentionally, knowingly, or recklessly causes bodily injury to another; or (2) intentionally or knowingly threatens or places another in fear of imminent bodily injury or death. | On campus (01) | | M | | |
| | TEC §37.007(b)(3)(A) | Off Campus, within 300 ft. (02) | | | | D |
| | TEC §37.007(a)(2)(F) | School Related/Sponsored Activity Off Campus (03) | | M | | |
| | TEC 37.0081 | Off Campus, no school related/sponsored activity (04) | | | | D |

🟥 **Unsafe School Coding**

| Code and Definition | Behavior Location Code | Mandatory DAEP Placement | Mandatory Expulsion | Discretionary DAEP Placement | Discretionary Expulsion |
|---|---|---|---|---|---|
| TEC 37.007(i) | On school property, or at school related/sponsored activity, of another school district (05) | | | | D |
| **Manslaughter** - TEC §37.007(a)(2)(G) Penal Code §19.04 defines **manslaughter** as a person commits an offense if he recklessly causes the death of an individual. | On campus (01) | | M | | |
| | Off Campus, within 300 ft. (02) | | | | D |
| TEC §37.007(a)(2)(G) | School Related/Sponsored Activity Off Campus (03) | | | | |
| TEC 37.0081 | Off Campus, no school related/sponsored activity (04) | | | | D |
| TEC 37.007(i) | On school property, or at school related/sponsored activity, of another school district (05) | | | | D |
| **Criminally Negligent Homicide** - TEC §37.007(a)(2)(H) Penal Code §19.05 defines **criminally negligent homicide** as a person commits an offense if he causes the death of an individual by criminal negligence. | On campus (01) | | M | | |
| TEC §37.007(b)(3)(A) | Off Campus, within 300 ft. (02) | | | | D |
| TEC §37.007(a)(2)(H) | School Related/Sponsored Activity Off Campus (03) | | M | | |
| TEC 37.0081 | Off Campus, no school related/sponsored activity (04) | | | | D |
| TEC 37.007(i) | On school property, or at school related/sponsored activity, of another school district (05) | | | | D |
| **Deadly Conduct** – TEC §37.007(b)(2)(D) Penal Code §22.05 defines **deadly conduct** as when a person recklessly engages in conduct that places another in imminent danger of serious bodily injury, or a person commits an offense if he knowingly discharges a firearm at or in the direction of: (1) one or more individuals; or (2) a habitation, building, or vehicle and is reckless as to whether the habitation, building, or vehicle is occupied. Recklessness and danger are presumed if the actor knowingly pointed a firearm at or in the direction of another whether or not the actor believed the firearm to be loaded. For purposes of this section, "building," "habitation," and "vehicle" have the meanings assigned those terms by Section 30.01. An offense under Penal Code §22.05(a) is a Class A misdemeanor. An offense under Penal Code §22.05(b) is a felony of the third degree. | On campus (01) | | | D | D |
| TEC §37.007(b)(2)(D) | Off Campus, within 300 ft. (02) | | | D | D |
| TEC §37.007(b)(2)(D) | School Related/Sponsored Activity Off Campus (03) | | | D | D |
| 55 **Student Is Required to Register as A Sex Offender Under Chapter 62 Of The Code Of Criminal Procedure And Is Under Court Supervision** - TEC §37.304. The offense(s) for which the student is required to register as a sex offender must have occurred on or after Sept. 1, 2007. | Not Applicable (00) | M | | | D |
| 56 **Student Is Required to Register as A Sex Offender Under Chapter 62 Of The Code Of Criminal Procedure And Is Not Under Court Supervision** - TEC §37.305. The offense(s) for which the student is required to register as a sex offender must have occurred on or after Sept. 1, 2007. | Not Applicable (00) | | | D | |
| **Continuous Sexual Abuse of Young Child or Disabled Individual Under Penal Code §21.02** - TEC §37.007(a)(2)(I) | On campus (01) | | M | | |
| TEC §37.007(b)(3)(A) | Off Campus, within 300 ft. (02) | | | | D |
| TEC §37.007(a)(2)(I) | School Related/Sponsored Activity Off Campus (03) | | M | | |
| TEC 37.007(i) | On school property, or at school related/sponsored activity, of another school district (05) | | | | D |

**Unsafe School Coding**

| | Code and Definition | Behavior Location Code | Mandatory DAEP Placement | Mandatory Expulsion | Discretionary DAEP Placement | Discretionary Expulsion |
|---|---|---|---|---|---|---|
| | | | | | | Disciplinary Action Codes (C164) |
| 58 | **Breach of Computer Security Under Penal Code §33.02** – TEC § 37.007(b)(5)<br>A student engages in conduct that contains the elements of the offense of breach of computer security under Section 33.02 if the person knowingly accesses a computer, computer network, or computer system without the effective consent of the owner if the conduct involves accessing a computer, computer network, or computer system owned by or operated on behalf of a school district; and the student knowingly: (i) alters, damages, or deletes school district property or information; or, (ii) commits a breach of any other computer, computer network, or computer system. | On campus (01) | | | | D |
| | TEC §37.007(b)(5) | Off Campus, within 300 ft. (02) | | | | D |
| | TEC §37.007(b)(5) | School Related/Sponsored Activity Off Campus (03) | | | | D |
| | TEC §37.007(b)(5) | Off Campus, no school related/sponsored activity (04) | | | | D |
| | TEC §37.007(b)(5) | On school property, or at school related/sponsored activity, of another school district (05) | | | | D |
| 59 | **Serious Misbehavior, as defined by TEC §37.007(c), while expelled to/placed in a Disciplinary Alternative Education Program (DAEP)** -<br>TEC §37.007(c) defines "**serious misbehavior**" as:<br>(1) deliberate violent behavior that poses a direct threat to the health or safety of others;<br>(2) extortion, meaning the gaining of money or other property by force or threat;<br>(3) conduct that constitutes coercion, as defined by Penal Code §1.07,; or<br>(4) conduct that constitutes the offense of:<br>　(a) public lewdness under Penal Code §21.07,<br>　(b) indecent exposure under Penal Code §21.08;<br>　(c) criminal mischief under Penal Code §28.03;<br>　(d) personal hazing under Penal Code §37.152; or<br>　(e) harassment under Penal Code §42.07(a)(1), of a student or district employee. | On Campus (01) | | | | D |
| 60 | **Harassment Against an Employee of the School District under Texas Penal Code 42.07(a)(1), (2), (3), or (7)** –<br>TEC 37.006(a)(2)(G) Texas Penal Code Section 42.07(a)(1), (2), (3), and (7) defines this behavior as:<br>A person commits an offense if, with intent to harass, annoy, alarm, abuse, torment, or embarrass another, the person:<br>(1) initiates communication and in the course of the communication makes a comment, request, suggestion, or proposal that is obscene;<br>(2) threatens, in a manner reasonably likely to alarm the person receiving the threat, to inflict bodily injury on the person or to commit a felony against the person, a member of the person's family or household, or the person's property.<br>(3) Conveys, in a manner reasonably likely to alarm the person receiving the report, a false report, which is known by the conveyor to be false, that another person has suffered death or serious bodily injury;<br>(4) Sends repeated electronic communications in a manner reasonably likely to harass, annoy, alarm, abuse, torment, embarrass, or offend another. | On campus (01) | M | | | |
| | TEC 37.006(a)(2)(G) | Off Campus, within 300 ft. (02) | M | | | |
| | TEC 37.006(a)(2)(G) | School Related/Sponsored Activity Off Campus (03) | M | | | |
| 61 | **Bullying** – TEC 37.0052(b)<br>TEC Sec.37.0052 (b) defines **bullying** behavior as:<br>(1) engages in bullying that encourages a student to commit or attempt to commit suicide;<br>(2) incites violence against a student through group bullying; or<br>(3) releases or threatens to release intimate visual material of a minor or a student who is 18 years of age or older without the student's consent | Not Applicable (00) | | | D | D |

■ Unsafe School Coding

# BULLYING CHECKLIST

## FOR SCHOOLS

## IS IT BULLYING?

- Was it a single significant act? ☐
- Was it a pattern of acts? ☐

- By one or more students directed at another student that **exploits an imbalance of power** ☐

- Through physical contact ☐
- Using verbal expression ☐
- Using written expression ☐
- Using electronic means ☐

- Physically harms a student or damages their property ☐
- Creates reasonable fear of harm to student or damage to their property ☐
- *Is sufficiently severe, persistent, or pervasive enough that the action or threat creates:*
  - Intimidating educational environment ☐
  - Threatening educational environment ☐
  - Abusive educational environment ☐
- Materially and substantially disrupts the educational process or operation of school ☐
- Infringes on rights of victim at school ☐

## PLEASE READ BEFORE USING CHECKLIST

To determine whether an act is bullying or cyberbullying by law, proceed down the checklist and provide a checkmark for each true statement. If any identified section does not receive at least one checkmark, then the act is not considered bullying by state law.

SB 179, "David's Law" expanded authority to school districts, allowing public and charter schools to address cyberbullying off-campus and outside of school-related or school-sponsored activities based on specific criteria. In order to address this legislative change, this checklist may help parents, educators, and administrators determine if a student at their school has been bullied according to the legislative definition. Please follow the conditional 'yes/no' logic for the questions regarding the use of electronic communication devices in possible bullying scenarios.

### Was the act committed by using any type of electronic communication device?

*(i.e. Cellular or other phone, computer, camera, e-mail, text or instant messaging, social media app, Internet website, Internet communication tool)*

**Yes**

**No**

### Did the act occur outside of a school-sponsored or school-related activity?

*(This is an important distinction, as David's Law expands a school district's authority to include cyberbullying incidents that occur off campus and outside a school-sponsored or school-related activity, as long as it meets one of the below criteria.)*

**No**

- On school property ☐
- At a school-sponsored or school-related activity (on or off campus) ☐
- On school bus or vehicle used to transport students ☐

**Yes**

### Did the act interfere with a student's educational opportunities; or substantially disrupt the orderly operation of a classroom, school, or school-sponsored/related activity?

**Yes**

## YES, IT'S BULLYING

*(Cyberbullying is bullying)*

**No**

According to law, if the act **DID NOT** meet the criteria above, it is not under the school district's authority.



TEXAS ★ STATE®

Texas School Safety Center

www.txssc.txstate.edu    *(Updated 2021)*

# BULLYING CHECKLIST EXAMPLES

The examples provided below are not an exhaustive list. They are provided to support you through the checklist to determine whether the act(s) meet the legal definition of bullying.

**Was it a single significant act?** What makes a single act 'significant' is the severe or pervasive effect it has on the target (victim) of the bullying. Examples of single significant acts include a student who is severely physically injured by their bully or a student who is told to kill themself. It can occur electronically, for example, an intimate photo is stolen and posted online, or a video showing a student being ridiculed is uploaded onto social media. With social media, it can be difficult to determine whether an act of bullying occurred once or was a pattern of acts. This is one reason why David's Law amended the Texas Education Code to include a single significant act. As hurtful comments, images, or videos may be posted one time, each comment, like, or share, as well as the permanent nature of the internet and technology adds additional pain to the target of the bullying. The important thing to focus on is not whether the act meets 'significant' status, but whether it is significant to the target of the bullying.

**Was it a pattern of acts?** There is no timeline for bullying behavior to be considered a pattern of acts. Repeated acts can occur within a short period of time or they can span months or even years. For example, a student is physically bullied in sixth grade, and is then cyberbullied in seventh grade when altered images and hurtful comments are posted online by the same student who bullied them in sixth grade. Or a student is repeatedly called hurtful names and has things thrown at them every time they walk down the school hallway.

**By one or more students directed at another student that exploits an imbalance of power.** An imbalance of power is a subjective determination and can include physical, social, emotional, informational, or other threats to a students' emotional wellbeing. This can change over time even if it involves the same students.

Power may include physical strength and stature, social status at school or on social media, or having access to embarrassing photos or personal information. For example, a student threatens to tell everyone at school that the target of their bullying lives at a shelter, or that the target's parents are unemployed. Another example is a student with a large social media following who has access to unflattering photos of the target and threatens to post the photos online.

**Through physical contact** Bullying through physical contact can include pinching, flicking, poking, punching, slapping, hitting, or being pushed down the stairs. Bullying through physical contact, such as flicking or pinching, can sometimes be dismissed as immature or childish behavior. Avoid minimizing or dismissing the behavior, especially when it meets all bullying checklist criteria.

**Using verbal expression** Bullying through verbal expression can include name calling, derogatory comments, ridiculing, threats to cause harm, or threats to take away friendship. It is important to distinguish between when a student is being rude or mean, and when they are bullying. Rude and mean comments hurt, but for it to rise to the level of bullying it would need to meet all checklist criteria.

**Using written expression** Bullying through written expression can include writing hurtful comments or threats in notes, on photos, lockers, mirrors, walls, or on paper or other material.

**Using electronic means** Bullying through electronic means includes using technology such as smartphones or computers to bully others. It can also include the use of a camera, e-mail, text or instant messaging, social media application, or internet website. Examples include spreading rumors or gossip through social media, taking and sending embarrassing pictures or videos without permission, creating a fake profile and pretending to be another student, threatening violence through group bullying, photoshopping someone's image to humiliate, harass, or embarrass, or recording and posting fight videos. The technology and devices used can be personal, or school issued.



# BULLYING CHECKLIST EXAMPLES

**Physically harms a student or damages their property** Physical harm could include bruises, cuts, burns, or a broken bone. Bullying can also include damage to property, including clothing, bookbags, smartphones, or laptops.

**Creates reasonable fear of harm to student or damage to their property** It is important to understand the fear of harm that bullying causes, either to a person or their property. For example, a student is told "you'll be sorry if you come to school tomorrow" and as a result the student is in fear of going to school. In this context, 'reasonable' fear of harm applies to whether other people in the same situation would feel similarly.

**Intimidating educational environment** The target of the bullying feels intimidated at school, and as a result, the school environment is not a safe place for them. For example, the student is fearful of going to class because the student who is bullying them is in the same class.

**Threatening educational environment** The target of the bullying feels threatened at school, and as a result, the school environment is not a safe place for them. For example, the student is threatened online for asking a particular girl to prom and is fearful to return to school. Or the student is told that they will "regret it" if they try out for the track team.

**Abusive educational environment** The target of the bullying feels abused at school, and as a result, the school environment is not a safe place for them. For example, the student is pushed down the stairs, or the student's friends are told to not sit with them at lunch.

**Materially and substantially disrupts the educational process or operation of school** The bullying or the impact of the bullying is significant enough to disrupt or interfere with the education process, the classroom, or school operations. For example, a teacher is unable to cover instructional content as a significant amount of class time is spent addressing the student who is bullying. Or students, even those who may not be a target, are fearful to go to class or have difficulty receiving instruction because of the behavior of the student who is bullying.

**Infringes on the rights of the victim at school** The bullying or impact of the bullying restricts the rights of the target who is being bullied. For example, a student is afraid to go to the restroom or try out for a team because of being bullied.



# APPLYING THE
# TXSSC'S BULLYING CHECKLIST
## *FOR SCHOOLS*

**Instructions:** *The following hypothetical scenarios are meant to provide further guidance, and act as an example, when using the* TxSSC's Bullying Checklist for Schools. *Each of the examples below provide a hypothetical scenario and then apply each component of the checklist to the situation, ultimately determining if the action or actions meets the legal definition of bullying according to the Texas Education Code.*

## SCENARIO #1

Lee waits for Jessie to leave their first period class at the middle school every day. Lee is much larger stature, an athlete, and does not like Jessie. Almost every day, Lee confronts Jessie following their first period class by knocking Jessie's books from his hands. Jessie does nothing to retaliate.

### IS THIS BULLYING?

## YES | **According to the bullying checklist, it meets the necessary criteria to be considered bullying.**

*Application of the TxSSC's bullying checklist for schools:*
- This happening multiple times after 1st period makes this a pattern of acts.
- The acts are between Lee and Jessie, making it from one student directed at another. Since Lee is larger, it also exploits an imbalance of power. There also could be other imbalances of power that are not immediately apparent.
- The knocking of the books from the hands is physical expression.
- Lee knocking books from Jessie's hands damages Jessie's property and creates reasonable fear of harm to Jessie and damage to his property. Since the acts happen almost every day, the acts are persistent. The continuous knocking of books from Jessie's hands creates at least an intimidating and threatening educational environment.
- The incidents happen on school property.



TEXAS ★ STATE ®
Texas School Safety Center
*txssc.txstate.edu*

# APPLYING THE TXSSC'S BULLYING CHECKLIST FOR SCHOOLS

## █ SCENARIO #2

Taylor and Devin communicate through text and social media every day. Taylor and Devin are both interested in dating a student named Ryan. At some point, Devin starts spreading false rumors to Ryan about Taylor, in order to get Ryan to dislike Taylor. After leaving school, Devin starts texting unflattering photos of Taylor to Ryan and making social media posts "bashing" Taylor. These texts and photos, as well as social media posts, are NOT done while at school, only while at home or at other friends' houses. Devin is from a wealthy family and their parents hold high positions in the community, while Taylor is from a moderate income, single-parent family. Other students are beginning to shun Taylor at school, resulting in Taylor socially withdrawing at school and no longer wanting to attend that school. When Taylor and Devin are in class together, they have had to be separated, as they obviously do not get along together in school.

### IS THIS BULLYING?

## YES │ According to the bullying checklist, it meets the necessary criteria to be considered bullying (cyberbullying is bullying).

*Application of the TxSSC's bullying checklist for schools:*
- Multiple incidents of texting and social media posts make this a pattern of acts.
- The acts are between Taylor and Devin, making it from one student directed at another. These actions have created a situation where Taylor is stunned by other students at school, making it more than one individual directed at another. Since Devin comes from a wealthy family who hold high positions in the community, and Taylor does not, there is a difference in socioeconomic status. This exploits an imbalance of power. There also could be other imbalances of power that are not immediately apparent.
- Social media and texting are considered electronic means.
- These acts are creating an intimidating and abusive environment. Since other students are starting to shun Taylor at schools, it is disrupting the educational process and school operations.
- Social media and texting were used as electronic communication devices.
- These incidents are happening off of school property and outside of a school-sponsored event or school-related activity.
- Since Taylor no longer wants to attend school, and both Taylor and Devin have to be separated at school, it is both interfering with Taylor's educational opportunities and disrupting orderly operations.



TEXAS ★ STATE
TEXAS SCHOOL SAFETY CENTER
txssc.txstate.edu

# APPLYING THE TXSSC'S BULLYING CHECKLIST FOR SCHOOLS

## ▌SCENARIO #3

Jordan and Dakota are longtime friends and their families are friends as well. They are the same age and live a few blocks from each in the same neighborhood. They are both on the baseball team and both are well connected socially at school. Lately, they have been more competitive in their sports activities and have grown further apart. At times, they have been observed at school trading verbal taunts about each other and making fun of each other's family members. No physical altercations have occurred, but they are both aligning with other friends to go "against" each other.

### IS THIS BULLYING?

**NO** │ **According to the bullying checklist, it does not meet all the necessary criteria to be considered bullying. Specifically, it lacks exploiting an imbalance of power.**

> *Application of the TxSSC's bullying checklist for schools:*
> - The trading of verbal taunts is a pattern of acts.
> - Since both are exchanging verbal taunts, both are directing behavior toward each other.
> - Jordan and Dakota are the same age, from the same neighborhood, and are both members of the baseball team. From this description, there does not appear to be an exploitation of an imbalance of power (even though there may be other imbalances of power unknown). Based on this information, the actions do not meet the legal definition of bullying.

│ **Although these actions do not amount to bullying based on the legal definition in the education code, this DOES NOT mean that some intervention would not help to reduce conflict. It is also possible that other school policies in the code of conduct might be more applicable.**



TEXAS ★ STATE®
TEXAS SCHOOL SAFETY CENTER
*txssc.txstate.edu*

# APPLYING THE TXSSC'S BULLYING CHECKLIST FOR SCHOOLS

## ▌SCENARIO #4

Logan and Cameron attend the same school and live in the same neighborhood. They ride the bus to school together every morning and afternoon. Logan is well-known around the school and has lots of friends, while Cameron is shy and does not have many. Recently, Logan has started to "pick on" Cameron on the bus. He throws paper planes at him and rounds up other students on the bus to make fun of him. This has occurred for the last several weeks. Logan does not talk to Cameron while at school. Cameron has started to miss several days of school, because he is afraid that Logan's taunts will start happening while at school.

### IS THIS BULLYING?

**YES** | **According to the bullying checklist, it meets the necessary criteria to be considered bullying.**

*Application of the TxSSC's bullying checklist for schools:*
- The behavior on the bus by Logan has occurred for several weeks, making it a pattern of acts.
- The behavior on the bus from Logan and the other students is directed at Cameron, making it from one or more students directed at another student. The fact that Cameron is shy and does not have many friends, and Logan is well-known and has many friends creates an imbalance of power. The number of students involved also creates an imbalance of power.
- The actions occurring on the bus, including throwing paper airplanes and making fun of Cameron represents both physical contact and verbal expression.
- These actions are physically harming Cameron and have created fear of harm at school. The actions are also persistent, which has created an intimidating, threatening, and abusive educational environment that disrupts the educational process (by missing several days at school).
- The actions occur on a bus used to transport students.



# APPLYING THE TXSSC'S BULLYING CHECKLIST FOR SCHOOLS

## SCENARIO #5

Parker and Morgan go to the same school and walk home every day. One day, after leaving the school campus, Parker decides to tease Morgan on their walk home. Parker pushes Morgan to the ground and dumps out her backpack. Parker is much bigger than Morgan, so it was easy for her to push her down. Morgan runs home crying. Morgan's mom has called up to the school to report that Morgan is the victim of bullying.

### IS THIS BULLYING?

**NO**    **While it does meet most of the criteria for being bullying, the action appeared to happen only once. Further, it did not happen on school grounds or at a school-sponsored activity. For actions to be considered bullying and under the school district's authority, cyberbullying is the only type of bullying that can happen off-campus where the school is required to intervene.**

*Application of the TxSSC's bullying checklist for schools:*
- The action happened one time. As far as we know, this was an isolated incident and was not a pattern of acts.
- The action happened from Parker to Morgan, making it from one student directed at another. Parker is bigger than Morgan, which creates and imbalance of power.
- Parker pushed and dumped out Morgan's bag, making it a physical expression. Parker also teased Morgan, which could be considered verbal expression.
- The action of pushing Morgan down physically harmed her and could have reasonably put her in fear.
- It occurred off of school property and outside of a school sponsored event or related activity.

**Although these actions do not amount to bullying based on the legal definition in the education code, this DOES NOT mean that some intervention would not help to reduce conflict. It is also possible that other school policies in the code of conduct might be more applicable.**



TEXAS STATE
TEXAS SCHOOL SAFETY CENTER
**txssc.txstate.edu**

# APPLYING THE TXSSC'S BULLYING CHECKLIST FOR SCHOOLS

## SCENARIO #6

Jayden and Avery go to high school together. Jayden is a junior and Avery is a freshman. They play basketball together every Saturday. One Saturday at the basketball court, Jayden stole Avery's basketball. When Avery confronts Jayden, Jayden denies doing it. That evening, Avery gets on Twitter and notices that Jayden posted a short video of Avery missing a basketball shot with the caption "This is what sucking at bball looks like". Avery notices that the video has been shared over 50 times by classmates and others. On Monday morning, students in school were laughing at Avery while walking through the halls. Avery has been unable to focus in class because of the laughing.

### IS THIS BULLYING?

**YES** | **According to the bullying checklist, it meets the necessary criteria to be considered bullying.**

*Application of the TxSSC's bullying checklist for schools:*
- Stealing the basketball, and then posting on social media is a pattern of acts. The fact that is was shared over 50 times could also be considered when determining this as a pattern of acts.
- Incidents are between Jayden and Avery (one student directed at another). The action also turns into multiple students directed at one student following the sharing of the video by other classmates. Differences in classification and age between Jayden and Avery leads to exploiting an imbalance of power.
- Using Twitter to post the video is considered electronic means.
- These acts are creating an intimidating, threatening, and abusive environment. It is infringing on Avery's rights as a student. Since other students are starting to laugh at Avery in the halls, it is disrupting the educational process and school operations.
- Social media was used as an electronic communication device.
- These incidents are happening off of school property and outside of a school-sponsored event or school-related activity.
- Since Avery has not been able to focus in class because of the laughing, it is both interfering with Avery's educational opportunities and disrupting orderly operations.



# FAQ's for Discipline

**What is the offense date?**

The offense date is the date the student commits the discipline offense.

**What is the order date?**

The Ordered Date indicates the date on which the disciplinary assignment was ordered. This may or may not reflect the date on which the disciplinary infraction occurred. This may or may not reflect the date on which the disciplinary assignment begins.

**What is the action detail start date?**

The action detail start date is the date the student begins serving the assignment.

| Action Details | Add | Regenerate Dates | | | |
|---|---|---|---|---|---|
| | **Date to Serve** | **Time** | **Status** | **Length (Days)** | **Time Served** |
| Edit   Delete | 10/21/2020 | 1:23 PM | Open | 1.00 | 0.00 |

**What is the return date and is a return date required for all discipline actions?**

The return date is ***the date the student returns to the home campus or regular school setting***, not the last date of the assignment.  Yes, a return date is required for all discipline actions.

**What should the SGLC campus do if a student returns from the alternative campus earlier than the original assignment?**

The sglc campus should mark as served the days the student was at the alternative campus and leave the remaining days open. An appropriate difference reason should be entered. The return date should be adjusted and a note entered in the comment section indicating the reason.

**If more than one student is involved in the same discipline offense, is the same incident number used?**

Yes, the same incident number should be used if one or more students are involved in the same offense. The offense code must be the same; however, the action code may be different.

**Does all discipline need to be marked served?**

Yes, all discipline should be marked served unless a difference reason is entered or the student withdrew before completing actions assigned.

**Can a campus generate the Pre-PEIMS 425 and Discipline Summary reports?**

All campuses should run the Pre-PEIMS 425 report, the discipline summary report for open discipline and the discipline summary report for incidents with no action assigned at their convenience.

**Why does the Pre-PEIMS 425 report not indicate all discipline entered in Skyward?**

The Pre-PEIMS 425 report will only include PEIMS reportable offenses.

**When is it appropriate to use a 99 for a difference reason?**

A 99 should only be used for if no other difference reason applies.

**Does every offense require an action?**

Yes, all offenses require an action.

# Steps for DAEP (SGLC)

| Continuations |
|---|
| All continuations must be entered prior to the start of the new school year. Verify that the prior year Offense Code was used and add an action code of **10** (cont. prior yr. placement) or **11** (cont. prior yr. expulsion). |

| Offense Dates and Ordered Dates |
|---|
| The Offense date and Ordered date must be prior to the student's withdrawal date. Compare the dates to the Entry/Withdrawal tab. |

| Action Detail Start Date |
|---|
| The Action Detail Start Date must be the day the student started at the alternative campus. |

| Days Served |
|---|
| If the student was released early from SGLC campus, only the days the student was enrolled at the alternative campus should be marked served with 1.00 (action detail) and the dates the student did not serve should reflect as 0.00. If the student did not serve all assigned days, a difference reason code must be added. |

| Additional Days Served |
|---|
| If the student served more than the days assigned, the Action Status would be marked Served, the Return Date must be adjusted, add the additional days to Action Details, enter a Difference Reason and add a comment to detail the reason for the additional days served. |

| Action Status |
|---|
| Action status should not be marked served until the student has been released back to the home campus. |

| Date Verification |
|---|
| Alternative campuses must verify that the Ordered Date is corresponding with the placement letter and the Action Detail Start Date reflect the first date the student began at the SGLC campus. |

# Chapter 37 Discipline Chart

*Published online in TASB School Law eSource*

This chart is designed to assist school officials in determining the appropriate disciplinary responses to student misconduct both on and off campus. The chart is based on the requirements of Texas Education Code chapter 37 and common provisions of districts' local student codes of conduct (SCOC). Before making any final disciplinary decision, school officials should always consult their local SCOC.

Key:    ★    Chapter 37 states that a district "shall" take this action in response to the misconduct. [See Mitigating Factors, below.]

    ✓    Chapter 37 states that a district "may" take this action in response to the misconduct. The district may choose to impose this penalty if the district's SCOC provides for this option.

    *    Chapter 37 does not specifically address this misconduct. The district may choose to impose a consequence if permitted under the local SCOC.

| | |
|---|---|
| SCOC | Student Code of Conduct |
| TEC | Texas Education Code |
| TPC | Texas Penal Code |
| H&SC | Texas Health & Safety Code |
| ISS | In-School Suspension |
| OSS | Out-of-School Suspension |
| DAEP | Disciplinary Alternative Education Program |
| JJAEP | Juvenile Justice Alternative Education Program |
| CBC | Campus Behavior Coordinator |

## Important Notes

**Campus behavior coordinator (CBC):** A school district is required to appoint one CBC per campus to be responsible for maintaining student discipline and implementing discipline management techniques. Districts must also post each CBC's e-mail address and dedicated telephone number on the district's website. Even if the district is exempt from the requirement to designate a CBC through a local innovation plan, the district must post contact information for a campus administrator responsible for student discipline. [TEC 26.015].

© 2023. Texas Association of School Boards, Inc. All rights reserved.
TASB Legal Services

The duties of the CBC may be executed by a designee if the coordinator is unavailable or unable to promptly address the situation. [TEC 37.0012(f)].

**Coursework during disciplinary placement:** The district is required to provide notice to the parent of a student who has been removed to DAEP of the opportunity to complete coursework required for graduation and any available methods to obtain such coursework. [TEC 37.008(l-1)]. In addition, a district must provide a student placed in ISS or OSS an alternative means of receiving all foundation curriculum coursework, including at least one option that does not require use of the Internet. [TEC 37.005(e)].

**Criminal penalties:** School officials may take disciplinary action regardless of whether law enforcement officials seek criminal consequences for the same misconduct. Nonetheless, the criminal consequences of a particular act or incident may impact school district discipline. For example, a student who engages in conduct punishable as a felony on or within 300 feet of school property or while attending a school-related activity is subject to mandatory placement in DAEP. [TEC 37.006(a)(2)(A)].

**DAEP at capacity:** If a DAEP is at capacity when a CBC is deciding placement for a student who engaged in an offense related to marijuana, THC, e-cigarettes, alcohol, or abusable volatile chemicals, the student must be placed in ISS. If a position becomes available at the DAEP before the expiration of the placement, then the student must be transferred to the DAEP for the remainder of the placement. [TEC 37.009(a-1)]. If a DAEP is at capacity when a CBC is deciding placement for a student who engaged in conduct described under TEC 37.007, as defined by commissioner rule, a student who has been placed in the DAEP for an offense related to marijuana, THC, e-cigarettes, alcohol, or abusable volatile chemicals, may be removed from the DAEP and placed in ISS to make room for the student who engaged in violent conduct. The student who was removed from the DAEP and placed in ISS must be transferred back to the DAEP if space becomes available before the expiration of their placement. [TEC 37.009(a-2)].

**Disabilities:** Special state and federal laws apply to the discipline of students with disabilities. See Policy FOF(LEGAL) and your SCOC. Before making a disciplinary decision regarding a student with a disability, school officials may want to seek legal advice to ensure compliance with the relevant laws.

**Homelessness:** A student who is homeless may not be placed in OSS unless the student engages in misconduct that is drug- or alcohol-related or that contains the elements of certain weapons offenses or violent offenses under the Texas Penal Code. The CBC may work with the district's homeless liaison to identify appropriate alternatives to OSS. [TEC 37.005(d)].

**Length of placement:** The district's SCOC includes guidelines on the length of a removal to DAEP or an expulsion. [TEC 37.001(a)(5)].

© 2023. Texas Association of School Boards, Inc. All rights reserved.
TASB Legal Services

**Mitigating factors:** Before deciding to assign a student OSS, DAEP, expulsion, or JJAEP, regardless of whether the decision is described as mandatory or discretionary in Chapter 37, a district must consider certain mitigating factors in relation to the student's misconduct: self-defense, intent, disciplinary history, a disability that substantially impairs the student's capacity to appreciate the wrongfulness of the conduct, and the student's status as homeless or in the conservatorship of DFPS (foster care). [TEC 37.001(a)].

**New students:** If a student withdraws from school before an order of expulsion or DAEP is entered, the district may complete the proceedings and enter the order. If the student reenrolls in the district during the same or the subsequent school year, the district may enforce the order, reduced for time served. If the student enrolls in another school district, the new district may honor the order, or, if the preceding district failed to enter an order, the new district may complete the proceedings and enter an order. [TEC 37.009(i)].

**Notice of process for requesting full individual and initial evaluation:** Districts must provide information to a student's parent or person standing in parental relation to the student about the process for requesting a full individual and initial evaluation of the student for purposes of special education services both when a student is placed in the DAEP for an offense under TEC 37.006, and as part of the student's personalized transition plan developed by the campus administrator. [TEC 37.006(p); TEC 37.023(d)(1)(B)].

**Notice of student discipline:** A CBC is required to provide prompt notice to a parent or guardian of a student who is placed in ISS, OSS, DAEP, JJAEP, or is taken into custody by law enforcement. This notice must be provided by telephone or in writing. [TEC 37.0012(d)]. If the coordinator is unable to make contact with the parent or guardian by 5pm of the first business day after the day the disciplinary action was taken, the coordinator must mail written notice to the parent or guardian. [TEC 37.0012(e)].

**Past misconduct:** School officials are permitted, but not required, to remove students for mandatory DAEP misconduct if school officials did not learn of the conduct for more than one year after the conduct occurred. [TEC 37.006(n)].

**Procedures:** Before a student is removed from the regular classroom setting, school officials must typically follow an established procedure. The formality of these proceedings varies according to the seriousness of the penalty; for example, the Texas Education Code includes procedures for a conference in the case of a DAEP placement and a formal due process hearing in the case of an expulsion. For more detail on the required procedures, see the FO series of policies and your SCOC.

**Temporary placement:** Pending expulsion or DAEP placement, a student may be placed in ISS, OSS for up to 3 days, or another appropriate placement in accordance with the district's SCOC.

**Transition to the regular classroom:** The district must provide transition services for a student who is exiting DAEP and returning to the student's local campus. [19 TAC 103.1201(k)]. In addition, the campus administrator or CBC must develop a personalized transition plan for a student exiting an alternative education program, including DAEP or JJAEP, to return to the regular classroom. [TEC 37.023].

© 2023. Texas Association of School Boards, Inc. All rights reserved.
TASB Legal Services

**Young students:** Students younger than 10 must receive services in a DAEP if they engage in expellable misconduct. [TEC 37.007(e)(3), (h)]. However, a student younger than 6 may not be sent to a DAEP unless the student brings a firearm to school under TEC 37.007(e)(2). [TEC 37.006(l)]. Students below third grade may not be placed in OSS unless the student engages in misconduct that is drug- or alcohol-related or that contains the elements of certain weapons offenses or violent offenses under the Texas Penal Code. [TEC 37.005(c)]. A district may adopt and implement a positive behavior program as an alternative to traditional discipline for students below third grade. [TEC 37.0013].

This document is continually updated at tasb.org/services/legal-services/tasb-school-law-esource/students/documents/discipline-chart-chapter-37.pdf. For more information on school law topics, visit TASB School Law eSource at schoollawesource.tasb.org.

*This document is provided for educational purposes and contains information to facilitate a general understanding of the law. References to judicial or other official proceedings are intended to be a fair and impartial account of public records, which may contain allegations that are not true. This publication is not an exhaustive treatment of the law, nor is it intended to substitute for the advice of an attorney. Consult your own attorney to apply these legal principles to specific fact situations.*

*© 2023. Texas Association of School Boards, Inc. All rights reserved.*

*This document is copyrighted by TASB but may be reproduced in order to share the information within your own school district. Further use or copying is prohibited without the consent of TASB Legal Services. Requests to duplicate or distribute this document should be made in writing to Director, Legal Services, Texas Association of School Boards, P.O. Box 400, Austin, Texas 78767-0400 or by e-mailing legal@tasb.org.*

*Originally published 2004. Updated July 2023.*

| Weapons | | | | | |
|---|---|---|---|---|---|
| **Misconduct** | **ISS, detention, or other local disciplinary techniques** | **Out-of-school suspension up to 3 days** | **DAEP** | **Expulsion** | **Notes** |
| Intentionally, knowingly, or recklessly carrying on or about the student's person a handgun, on school property or at a school-related activity | | | | 20 U.S.C. 7151; TEC 37.007(a)(1), (e) ★ | The federal Gun-Free Schools Act, which is incorporated into Chapter 37, requires expulsion for one year except that a superintendent may modify the expulsion in writing on a case-by-case basis. [20 U.S.C. 7151(b)(1); TEC 37.007(e)]. Exception: The Act does not apply to a firearm that is lawfully stored inside a locked vehicle on school property, or to firearms used in activities approved and authorized by the district when the district has adopted appropriate safeguards to ensure student safety. [20 U.S.C. 7151(g)]. |

© 2023. Texas Association of School Boards, Inc. All rights reserved.
TASB Legal Services

| Weapons | | | | | |
|---------|---|---|---|---|---|
| **Misconduct** | **ISS, detention, or other local disciplinary techniques** | **Out-of-school suspension up to 3 days** | **DAEP** | **Expulsion** | **Notes** |
| Possessing a firearm within 300 feet of school property | | | | TEC 37.007(b)(3)<br>✔ | Exception: Use, exhibition, or possession of a firearm at an approved off-campus target range facility while participating in or preparing for a shooting sports competition or activity sponsored by the district or affiliated with the Texas Parks and Wildlife Department. [TEC 37.007(k)]. |
| Intentionally, knowingly, or recklessly carrying on or about the minor student's person a location-restricted knife on school property or at a school-related activity | | | | TEC 37.007(a)(1); TPC 46.02(a-4); TPC 46.03(a)<br>★ | *Location-restricted knife* means a knife with a blade of over five and one-half inches. [TPC 46.01(6)]. |
| Same conduct within 300 feet of school property or while on the property or at a school-related activity of another Texas district | | | | TEC 37.007(b)(3)(A), (i)<br>✔ | |

© 2023. Texas Association of School Boards, Inc. All rights reserved.
TASB Legal Services

| Weapons | | | | | |
|---|---|---|---|---|---|
| **Misconduct** | **ISS, detention, or other local disciplinary techniques** | **Out-of-school suspension up to 3 days** | **DAEP** | **Expulsion** | **Notes** |
| Intentionally, knowingly, or recklessly going with or possessing a location-restricted knife on the premises of a school, any grounds or building owned by and under control of a school or post-secondary educational institution and where a school-sponsored activity is taking place, or a passenger vehicle of the school | | | TEC 37.006(a)(2)(A); TPC 46.03(a)(1), (g-1) ★ | | Possessing a location-restricted knife on school premises, school passenger vehicle, or a school-sponsored activity on any grounds or building owned by and under the control of a school or post-secondary educational institution is a felony offense. [TPC 46.03(a)(1), (g-1)]. District must place in DAEP a student who engages in conduct punishable as a felony on or within 300 feet of school property or while attending a school-related activity. [TEC 37.006(a)(2)(A)]. |

© 2023. Texas Association of School Boards, Inc. All rights reserved.
TASB Legal Services

| Weapons | | | | | |
|---|---|---|---|---|---|
| **Misconduct** | **ISS, detention, or other local disciplinary techniques** | **Out-of-school suspension up to 3 days** | **DAEP** | **Expulsion** | **Notes** |
| Intentionally, knowingly, or recklessly carrying, or intentionally or knowingly possessing, manufacturing, transporting, repairing, or selling a prohibited weapon, on school property or at a school-related activity | | | | TEC 37.007(a)(1) ★ | *Prohibited weapon* means an explosive weapon, machine gun, short-barrel firearm, armor-piercing ammunition, chemical dispensing device, zip gun, tire deflation device, improvised explosive device, or certain silencers. [TPC 46.05]. |
| Same conduct within 300 feet of campus or while on the property or at a school-related activity of another Texas district | | | | TEC 37.007(b)(3), (i) ✓ | |
| Intentionally, knowingly, or recklessly possessing or going with a club, on the premises of the district, any grounds or building owned by and under the control of a school or post-secondary educational institution and on which a school-sponsored activity is being conducted, or a passenger vehicle of the district | | | TEC 37.006(a)(2)(A) | | Possessing a club (e.g., a blackjack, nightstick, mace, or tomahawk) in certain locations is a felony offense. [TPC 46.03(a)(1), (g)]. |

© 2023. Texas Association of School Boards, Inc. All rights reserved.
TASB Legal Services

| Weapons | | | | | |
|---|---|---|---|---|---|
| **Misconduct** | **ISS, detention, or other local disciplinary techniques** | **Out-of-school suspension up to 3 days** | **DAEP** | **Expulsion** | **Notes** |
| Possessing or using look-alike weapons | ✳ | ✳ | ✳ | | |
| Possessing or using air guns or BB guns | ✳ | ✳ | ✳ | | |
| Possessing or using razors, box cutters, pocketknives, or other knives with a blade of less than 5 1/2 inches | ✳ | ✳ | ✳ | | |
| Possessing or using various other dangerous objects, including knuckles | ✳ | ✳ | ✳ | | *Knuckles* include any instrument that consists of finger rings or guards made of a hard substance and designed, made, or adapted for the purpose of inflicting serious bodily injury or death by striking a person with a fist enclosed in the knuckles. |

| Violence | | | | | |
|---|---|---|---|---|---|
| **Misconduct** | **ISS, detention, or other local disciplinary techniques** | **Out-of-school suspension up to 3 days** | **DAEP** | **Expulsion** | **Notes** |
| Murder or attempt to commit murder, on school property or at a school-related activity | | | | TEC 37.007(a)(2)(C) ★ | |
| Same conduct within 300 feet of school property or while on the property or at a school-related activity of another Texas district | | | | TEC 37.007(b)(3), (i) ✓ | |
| Aggravated assault, on campus or at a school-related activity | | | | TEC 37.007(a)(2)(A) ★ | |
| Same conduct within 300 feet of school property or while on the property or at a school-related activity of another Texas district | | | | TEC 37.007(b)(3), (i) ✓ | |
| Aggravated kidnapping, on school property or at a school-related activity | | | | TEC 37.007(a)(2)(E) ★ | |
| Same conduct within 300 feet of school property or while on the property or at a school-related activity of another Texas district | | | | TEC 37.007(b)(3), (i) ✓ | |

© 2023. Texas Association of School Boards, Inc. All rights reserved.
TASB Legal Services

| Violence | | | | | |
|---|---|---|---|---|---|
| **Misconduct** | **ISS, detention, or other local disciplinary techniques** | **Out-of-school suspension up to 3 days** | **DAEP** | **Expulsion** | **Notes** |
| Aggravated robbery, on school property or at a school-related activity | | | | TEC 37.007(a)(2)(F) ★ | |
| Same conduct within 300 feet of school property or while on the property or at a school-related activity of another Texas district | | | | TEC 37.007(b)(3), (i) ✓ | |
| Aggravated assault, sexual assault, aggravated sexual assault, murder, capital murder, criminal attempt to commit murder or capital murder, or aggravated robbery against another student, on or off school property | | | | TEC 37.007(b)(4) ✓ | |
| Manslaughter, on school property or at a school-related activity | | | | TEC 37.007(a)(2)(G) ★ | |
| Same conduct within 300 feet of school property or while on the property or at a school-related activity of another Texas district | | | | TEC 37.007(b)(3), (i) ✓ | |
| Criminally negligent homicide, on school property or at a school-related activity | | | | TEC 37.007(a)(2)(H) ★ | |

© 2023. Texas Association of School Boards, Inc. All rights reserved.
TASB Legal Services

| Violence | | | | | |
|---|---|---|---|---|---|
| **Misconduct** | **ISS, detention, or other local disciplinary techniques** | **Out-of-school suspension up to 3 days** | **DAEP** | **Expulsion** | **Notes** |
| Same conduct within 300 feet of school property or while on the property or at a school-related activity of another Texas district | | | | TEC 37.007(b)(3), (i) ✔ | |
| [Assault with bodily injury](#), on or within 300 feet of school property or at a school-related activity | | | TEC 37.006(a)(2)(B) ★ | | |
| Title 5 felony or [aggravated robbery](#) off campus and not at a school-sponsored or school-related activity if: student receives deferred prosecution; a court or jury finds that student engaged in delinquent conduct based on the conduct; or superintendent reasonably believes that student engaged in the conduct | | | TEC 37.006(c) ★ | | *Title 5 felonies* are violent offenses defined in Texas Penal Code chapters 19-22. A list of Title 5 felonies can be found in the TASB Model SCOC glossary and FOC(LEGAL). |

© 2023. Texas Association of School Boards, Inc. All rights reserved.
TASB Legal Services

| Violence | | | | | |
|---|---|---|---|---|---|
| Misconduct | ISS, detention, or other local disciplinary techniques | Out-of-school suspension up to 3 days | DAEP | Expulsion | Notes |
| Same conduct plus charges, referral to juvenile court for delinquent conduct, probation, deferred adjudication, arrest, or conviction for a *violent felony* [TPC Title 5 or aggravated robbery], with special findings by board or designee, regardless of location or time or whether the student was enrolled at the time or completed court requirements | | | TEC 37.0081 ✔ | TEC 37.0081 ✔ | |
| Fighting or scuffling | ✱ | ✱ | ✱ | | |
| Threats against students, staff, or school property | ✱ | ✱ | ✱ | | |

© 2023. Texas Association of School Boards, Inc. All rights reserved.
TASB Legal Services

| Sexual Misconduct | | | | | |
|---|---|---|---|---|---|
| **Misconduct** | **ISS, detention, or other local disciplinary techniques** | **Out-of-school suspension up to 3 days** | **DAEP** | **Expulsion** | **Notes** |
| Sexual assault or aggravated sexual assault, on school property or at a school-related activity | | | | TEC 37.007(a)(2)(A) ★ | |
| Same conduct within 300 feet of school property or while on the property or at a school-related activity of another Texas district | | | | TEC 37.007(b)(3), (i) ✔ | |
| Sexual assault, or aggravated sexual assault against another student, on or off school property | | | | TEC 37.007(b)(4) ✔ | |
| Conviction, deferred adjudication, or probation based on continuous sexual abuse of a child or disabled individual, sexual assault, or aggravated sexual assault of another student attending the same campus, upon request of the victim's parent and if there is not another campus in the district to which the offending student may be transferred | | | TEC 25.0341(b)(2); TEC 37.0051 ★ | | Student shall be removed and placed in DAEP or JJAEP in accordance with state law. A limitation imposed by Chapter 37, Subchapter A, does not apply to placement under this section. [TEC 37.0051]. |

© 2023. Texas Association of School Boards, Inc. All rights reserved.
TASB Legal Services

| Sexual Misconduct | | | | | |
|---|---|---|---|---|---|
| **Misconduct** | **ISS, detention, or other local disciplinary techniques** | **Out-of-school suspension up to 3 days** | **DAEP** | **Expulsion** | **Notes** |
| Indecency with a child, on school property or at a school-related activity | | | | TEC 37.007(a)(2)(D) ★ | |
| Same conduct within 300 feet of school property or while on the property or at a school-related activity of another Texas district | | | | TEC 37.007(b)(3), (i) ✓ | |
| Continuous sexual abuse of a young child or disabled individual, on school property or at a school-related activity | | | | TEC 37.007(a)(2)(I) ★ | |
| Same conduct within 300 feet of school property or while on the property or at a school-related activity of another Texas district | | | | TEC 37.007(b)(3), (i) ✓ | |
| Public lewdness or indecent exposure, on or within 300 feet of school property or at a school-related activity | | | TEC 37.006(a)(2)(F) ★ | | |
| Voyeurism, on or within 300 feet of school property or at a school-related activity, if victim is a child under the age of 14 | | | TEC 37.006(a)(2)(A) ★ | | Voyeurism is punishable as a felony if the victim is a child under the age of 14 at the time of the offense. |

| Sexual Misconduct | | | | | |
|---|---|---|---|---|---|
| **Misconduct** | **ISS, detention, or other local disciplinary techniques** | **Out-of-school suspension up to 3 days** | **DAEP** | **Expulsion** | **Notes** |
| Invasive visual recording, on or within 300 feet of campus or at a school-related activity | | | TEC 37.006(a)(2)(A) ★ | | |
| Unlawful disclosure or promotion of intimate visual material, on or within 300 feet of school property or at a school-related activity | | | TEC 37.006(a)(2)(A) ★ | | |
| Sexual misconduct punishable as Title 5 felony off campus and not at a school-sponsored or school-related activity if: student receives deferred prosecution; court finding of delinquent conduct; or superintendent reasonably believes that student engaged in the conduct | | | TEC 37.006(c) ★ | | *Title 5 felonies* are violent offenses defined in Texas Penal Code chapters 19-22. A list of Title 5 felonies can be found in the TASB Model SCOC glossary and FOC(LEGAL). |
| Possession or promotion of child pornography, on or within 300 feet of school property or at a school-related activity | | | TEC 37.006(a)(2)(A) ★ | | |

© 2023. Texas Association of School Boards, Inc. All rights reserved.
TASB Legal Services

| Sexual Misconduct | | | | | |
|---|---|---|---|---|---|
| Misconduct | ISS, detention, or other local disciplinary techniques | Out-of-school suspension up to 3 days | DAEP | Expulsion | Notes |
| Registered sex offender—under court supervision | | | TEC 37.304 ★ | | If student is under court supervision, including probation, community supervision, or parole, district must assign to DAEP or JJAEP for at least one semester. [TEC 37.304, .309]. |
| Registered sex offender—not under court supervision | | | TEC 37.305 ✓ | | A student who is required to register as a sex offender but is not under any form of court supervision may be placed in DAEP or JJAEP for one semester. However, the student may not be placed in the regular classroom if the board or designee determines that such placement threatens the safety of other students or teachers, will be detrimental to the educational process, or is not in the best interests of the district's students. [TEC 37.305]. |

| Sexual Misconduct | | | | |
|---|---|---|---|---|
| **Misconduct** | **ISS, detention, or other local disciplinary techniques** | **Out-of-school suspension up to 3 days** | **DAEP** | **Expulsion** | **Notes** |
| Inappropriate exposure of body parts | ✳ | ✳ | ✳ | | |
| Sexual or gender-based harassment | ✳ | ✳ | ✳ | | |
| Inappropriate sexual conduct toward a student or employee | ✳ | ✳ | ✳ | | |

| Substance Abuse | | | | | |
|---|---|---|---|---|---|
| **Misconduct** | **ISS, detention, or other local disciplinary techniques** | **Out-of-school suspension up to 3 days** | **DAEP** | **Expulsion** | **Notes** |
| Drug-related misconduct [TEC 37.006(a)(2)(C)], on school property or at a school-related activity, if punishable as a felony | | | | TEC 37.007(a)(3) ★ | Does not include marijuana- or THC-related offenses. |
| Same conduct within 300 feet of school property or while on the property or at a school-related activity of another Texas district | | | | TEC 37.007(b)(3), (i) ✓ | |
| Selling, giving, delivering, possessing, using, or being under the influence of any amount of marijuana or THC, on or within 300 feet of school property or at a school-related activity | | | TEC 37.006(a)(2)(C-1) ★ | TEC 37.007(b)(2)(A) ✓ | District may not prohibit possession of low-THC cannabis pursuant to a valid prescription as authorized by Texas Health & Safety Code chapter 487. |
| Selling, giving, delivering, possessing, using, or being under the influence of any amount of a dangerous drug or a controlled substance, excluding marijuana and THC, on or within 300 feet of school property or at a school-related activity, if not punishable as a felony | | | TEC 37.006(a)(2)(C) ★ | TEC 37.007(b)(2)(A) ✓ | |

© 2023. Texas Association of School Boards, Inc. All rights reserved.
TASB Legal Services

| Substance Abuse | | | | | |
|---|---|---|---|---|---|
| **Misconduct** | **ISS, detention, or other local disciplinary techniques** | **Out-of-school suspension up to 3 days** | **DAEP** | **Expulsion** | **Notes** |
| Selling, giving, delivering, possessing, or using an e-cigarette on or within 300 feet of school property or at a school-related activity | | | TEC 37.006(a)(2)(C-2)<br>★ | | Includes any component, part, or accessory for the e-cigarette. |
| Selling, giving, delivering, possessing, using, being under the influence of, or committing a serious act or offense while under the influence of alcohol, on or within 300 feet of school property or at a school-related activity | | | TEC 37.006(a)(2)(D)<br>★ | TEC 37.007(b)(2)(A)<br>✓ | |
| Abusable volatile chemical offense, on or within 300 feet of school property or at a school-related activity | | | TEC 37.006(a)(2)(E)<br>★ | TEC 37.007(b)(2)(B)<br>✓ | Chapter 37 addresses DAEP or expulsion for conduct containing the elements of offenses related to abusable volatile chemicals under Texas Health & Safety Code sections 485.031-.034, including possession, use, and delivery to a minor. |
| Off-campus non-violent felony, with special findings by superintendent or designee [see TEC 37.006(d)] | | | TEC 37.006(d)<br>✓ | | |

© 2023. Texas Association of School Boards, Inc. All rights reserved.<br>TASB Legal Services

| Substance Abuse | | | | |
|---|---|---|---|---|
| **Misconduct** | **ISS, detention, or other local disciplinary techniques** | **Out-of-school suspension up to 3 days** | **DAEP** | **Expulsion** | **Notes** |
| Possessing or using tobacco products | ✳ | ✳ | ✳ | | |
| Possessing, selling, giving, or using drug paraphernalia | ✳ | ✳ | ✳ | | |
| Possessing, selling, or using look-alike drugs or items attempted to be passed off as drugs | ✳ | ✳ | ✳ | | |
| Improper use, possession, or being under the influence of prescription drugs | ✳ | ✳ | ✳ | | |
| Improper use or being under the influence of over-the-counter drugs | ✳ | ✳ | ✳ | | |

© 2023. Texas Association of School Boards, Inc. All rights reserved.
TASB Legal Services

| Retaliation | | | | | |
|---|---|---|---|---|---|
| **Misconduct** | **ISS, detention, or other local disciplinary techniques** | **Out-of-school suspension up to 3 days** | **DAEP** | **Expulsion** | **Notes** |
| On- or off-campus retaliation through conduct containing the elements of a violent or weapons-related offense [TEC 37.007(a)] against a school employee or volunteer | | | | TEC 37.007(d)<br>★ | |
| Assault with bodily injury against a school employee or volunteer, on or within 300 feet of school property or at a school-related activity | | | TEC 37.006(a)(2)(B)<br>★ | TEC 37.007(b)(2)(C)<br>✓ | |
| On- or off-campus retaliatory assault with bodily injury on a school employee or volunteer | | | TEC 37.006(a)(2)(B) [on campus] or TEC 37.006(c) [off campus]<br>★ | TEC 37.007(d)<br>✓ | |
| On- or off-campus retaliation against any school employee | | | TEC 37.006(b)<br>★ | | |

© 2023. Texas Association of School Boards, Inc. All rights reserved.
TASB Legal Services

| Mistreatment of Others | | | | | |
|---|---|---|---|---|---|
| **Misconduct** | **ISS, detention, or other local disciplinary techniques** | **Out-of-school suspension up to 3 days** | **DAEP** | **Expulsion** | **Notes** |
| Bullying [TEC 37.0832(a)] that occurs on or is delivered to the site of a school-sponsored or school-related activity on or off school property | ✳ | ✳ | ✳ | | |
| Bullying [TEC 37.0832(a)] that occurs on a publicly or privately owned school bus or vehicle used for transportation of students to or from school or a school-sponsored or school-related activity | ✳ | ✳ | ✳ | | |
| Cyberbullying [TEC 37.0832(a)] that occurs off school property or outside of a school-sponsored or school-related activity if the cyberbullying: interferes with a student's educational opportunities; or substantially disrupts the orderly operation of a classroom, school, or school-sponsored or school-related activity | ✳ | ✳ | ✳ | | |
| Bullying [TEC 37.0832(a)] that encourages a student to commit or attempt to commit suicide | | | TEC 37.0052 ✓ | TEC 37.0052 ✓ | |

| Mistreatment of Others | | | | | |
|---|---|---|---|---|---|
| **Misconduct** | **ISS, detention, or other local disciplinary techniques** | **Out-of-school suspension up to 3 days** | **DAEP** | **Expulsion** | **Notes** |
| Inciting violence against a student through group bullying [TEC 37.0832(a)] | | | TEC 37.0052 ✓ | TEC 37.0052 ✓ | |
| Releasing or threatening to release intimate visual material [Tex. Civ. Prac. & Rem. Code 98B.001] of a minor or of an adult student without the student's consent | | | TEC 37.0052 ✓ | TEC 37.0052 ✓ | *Intimate visual material* means film, photograph, or other physical medium allowing an image to be displayed on a screen that depicts a person with the person's intimate parts exposed or engaged in a sexual conduct. |
| [Harassment](#) of a district employee in the form of initiating a communication and in the course of the communication making an obscene comment, request, suggestion, or proposal with intent to harass, annoy, alarm, abuse, torment, or embarrass the employee, on or within 300 feet of school property or while attending a school-related activity | | | TEC 37.006(a)(2)(G); TPC 42.07(a)(1) ★ | | *Obscene* means containing a patently offensive description of or a solicitation to commit an ultimate sex act, including sexual intercourse, masturbation, cunnilingus, fellatio, or anilingus, or a description of an excretory function. [TPC 42.07(a)(3)]. |

© 2023. Texas Association of School Boards, Inc. All rights reserved.
TASB Legal Services

| Mistreatment of Others | | | | | |
|---|---|---|---|---|---|
| **Misconduct** | **ISS, detention, or other local disciplinary techniques** | **Out-of-school suspension up to 3 days** | **DAEP** | **Expulsion** | **Notes** |
| Harassment of a district employee in the form of threatening to inflict bodily injury on the employee or to commit a felony against the employee, a member of the employee's family or household, or the employee's property, on or within 300 feet of school property or while attending a school-related activity | | | TEC 37.006(a)(2)(G); TPC 42.07(a)(2)<br><br>★ | | |
| Harassment of a district employee in the form of conveying a false report regarding the death or serious bodily injury of another person, on or within 300 feet of school property or while attending a school-related activity | | | TEC 37.006(a)(2)(G); TPC 42.07(a)(3)<br><br>★ | | |
| Harassment of a district employee by sending repeated electronic communications in a manner reasonably likely to harass, annoy, alarm, abuse, torment, embarrass, or offend the employee, on or within 300 feet of school property or while attending a school-related activity | | | TEC 37.006(a)(2)(G); TPC 42.07(a)(7)<br><br>★ | | |
| Directing profanity or obscene gestures at students or staff | ✱ | ✱ | ✱ | | |

© 2023. Texas Association of School Boards, Inc. All rights reserved.<br>TASB Legal Services

| Mistreatment of Others | | | | |
|---|---|---|---|---|
| **Misconduct** | **ISS, detention, or other local disciplinary techniques** | **Out-of-school suspension up to 3 days** | **DAEP** | **Expulsion** | **Notes** |
| Hazing [TEC 37.151], dating violence [TEC 37.0831], harassment [TEC 37.001(b)(2)], or making a hit list [TEC 37.001(b)(3)] | ✳ | ✳ | ✳ | | |
| Assault with threat of imminent bodily injury but no bodily injury [TPC 22.01(a)(2)] | ✳ | ✳ | ✳ | | |
| Assault by offensive or provocative physical contact but no bodily injury [TPC 22.01(a)(3)] | ✳ | ✳ | ✳ | | |

| Other Misconduct | | | | | |
|---|---|---|---|---|---|
| **Misconduct** | **ISS, detention, or other local disciplinary techniques** | **Out-of-school suspension up to 3 days** | **DAEP** | **Expulsion** | **Notes** |
| Arson, on campus or at a school-related activity | | | | TEC 37.007(a)(2)(B) ★ | |
| Same conduct within 300 feet of school property or while on the property or at a school-related activity of another Texas district | | | | TEC 37.007(b)(3), (i) ✓ | |
| Documented serious misbehavior while in DAEP | | | | TEC 37.007(c) ✓ | *Serious misbehavior* means: (1) deliberate violent behavior that poses a direct threat to health or safety; (2) extortion, meaning gaining of money or property by force or threat; (3) coercion; (4) public lewdness; (5) indecent exposure; (6) criminal mischief; (7) hazing; or (8) harassment in the form of initiating a communication and in the course of the communication making an obscene comment, request, suggestion, or proposal with intent to harass, annoy, alarm, abuse, torment, or embarrass a student or employee. |

© 2023. Texas Association of School Boards, Inc. All rights reserved.
TASB Legal Services

| Other Misconduct | | | | | |
|---|---|---|---|---|---|
| **Misconduct** | **ISS, detention, or other local disciplinary techniques** | **Out-of-school suspension up to 3 days** | **DAEP** | **Expulsion** | **Notes** |
| Terroristic threat or false alarm involving a public school | | | TEC 37.006(a)(1) ★ | TEC 37.007(b)(1) ✓ | |
| Deadly conduct, on or within 300 feet of school property or at a school-related activity | | | | TEC 37.007(b)(2)(D) ✓ | |
| On- or off-campus felony criminal mischief | | | | TEC 37.007(f) ✓ | *Felony criminal mischief* includes damage to property equal to or in excess of $2,500. [TPC 28.03]. |
| Non-felony criminal mischief | * | * | * | | |
| Any felony on or within 300 feet of school property or at a school-related activity | | | TEC 37.006(a)(2)(A) ★ | | Check for potential expulsion, depending on type of felony |
| Off-campus non-violent felony, with special findings by superintendent or designee [TEC 37.006(d)] | | | TEC 37.006(d)-(e) ✓ | | |

| Other Misconduct | | | | |
|---|---|---|---|---|
| **Misconduct** | **ISS, detention, or other local disciplinary techniques** | **Out-of-school suspension up to 3 days** | **DAEP** | **Expulsion** | **Notes** |
| Breach of computer security if a student accesses a district's computers, computer system, or computer network and knowingly alters, damages, or deletes district property or information | | | | TEC 37.007(b) ✔ | |
| Stealing | ✳ | ✳ | ✳ | | |
| Other violations of SCOC | ✳ | ✳ | ✳ | | |

© 2023. Texas Association of School Boards, Inc. All rights reserved.
TASB Legal Services



# Discipline
## PEIMS CODING

August 2023

peimsdataquality@sfdr-cisd.org



# PEIMS Reporting Requirements

01    For purposes of discipline data reported to TEA, the attendance/PEIMS personnel are only responsible for entering information that has been provided to them by the Superintendent or their designee(s) who are responsible for applying the Student Code of Conduct (SCC) to student behavior.

02    *In no case should attendance/PEIMS personnel be responsible for determining a student's coding information for discipline actions taken.*

03    A PEIMS disciplinary record **must** be reported for **each** disciplinary action that results in a removal of a student from **any** part of their academic program.

04    A single student will have multiple discipline records if removed from his/her classroom more than once.

# Local Offense Coding

## WHEN ARE LOCAL CODES USED?

Local offense codes should be used when an incident that violates the Student Code of Conduct (SCC) takes place however, as an alternative to using the generalized code of **21** (Violation of SCC), a local code providing specific reason for the offense should be used, if available, for School Board reporting purposes.



| Code | Description |
|---|---|
| L04 | DRUG PARAPHERNALIA |
| L05 | BULLYING- BASIS OF SEX |
| L10 | BULLYING- RACE,COLOR,NTL ORIGIN |
| L15 | BULLYING- BASIS OF DISABILITY |
| L20 | BULLYING- BASIS OF RELIGION |
| L25 | BULLYING- CYBER |
| L30 | BULLYING - GROUP (2 OR MORE) |
| L35 | BULLYING - PERSISTENT BEHAVIOR |
| L40 | INSUBORDINATION |
| L42 | ASSUALT W/O BODILY INJURY TO EMPLOYEE |
| L44 | ASSUALT W/O BODILY INJURY TO STUDENT |
| L50 | NON ILLGL KNIFE (= OR -5.5") |
| L59 | DESTRUCTION OF SCHOOL PROPERTY |
| L60 | FORGERY/ PLAGERISM |
| L61 | THEFT |
| L62 | SKIPPING CLASS |
| L63 | SCUFFLE/ HORSEPLAY |
| L64 | VIOLATION CELL PHONE POLICY |
| L65 | LEAVE CLASSROOM W/O PERMISSION |
| L66 | SEXUAL HARASSMENT |
| L67 | POSSESSION OF PORNOGRAPHY |
| L68 | DISTRIBUTION OF PORNOGRAPHY |
| L72 | DRESS CODE VIOLATION |
| L73 | PROFANITY - VERBAL/GESTURES |
| L75 | BUS CONDUCT |
| L76 | TARDIES |
| L80 | PERSISTENT MSBHVR ON CAMPUS (5 OR MORE DOC. INFRACTIONS) |
| L85 | CLASSROOM DISRUPTIONS |
| L90 | DISREGARD PERSONAL SPACE |
| L95 | NAME CALLING |
| L96 | LEAVE CAMPUS WITHOUT PERMISSION |
| VPC | VAPE - CONTROLLED SUBSTANCE |
| VAP | VAPE- NOT CONTROLLED SUBSTANCE |

# PEIMS Offense Coding

## WHEN ARE PEIMS CODES USED?

| | |
|---|---|
| 01 | PERMANENT REMOVAL BY TEACHER |
| 02 | CONDUCT PUNISHABLE AS FELONY |
| 04 | MARIHUANA/CONTROLLED SUBSTANCE |
| 05 | ALCOHOL USE/SELL/GIVE/DELIVER |
| 06 | VOLATILE CHEMICAL ABUSE |
| 07 | PUBLIC LEWDNESS/INDECENT EXPOS |
| 08 | RETALIATION SCHOOL EMPLOYEE |
| 09 | OFF CAMPUS - TITLE 5 FELONY |
| 10 | OFF CAMPUS - NON TITLE 5 FELONY |
| 11 | FIREARM OBTAIN/USE/EXHIBIT |
| 12 | ILLEG. KNIFE BLADE LONGER 5.5" |
| 14 | PROHIBITED WEAPON |
| 16 | ARSON - START FIRE, EXPLOSION |
| 17 | MURDER - CAP./CRIM. ATPT/COMMIT |
| 18 | INDECENCY W/ CHILD YOUNGER 17 |
| 19 | AGGRAVATED KIDNAPPING |
| 21 | VIOLATION STUDENT CODE CONDUCT |
| 22 | CRIMINAL MISCHIEF |
| 23 | EMERGENCY PLACEMENT/EXPULSION |
| 26 | TERRORISTIC THREAT |
| 27 | ASSAULT - TO EMPLOYEE |

| | |
|---|---|
| 28 | ASSAULT - TO NON EMPLOYEE |
| 29 | AGGRAVATED ASSAULT - TO EMPLOYEE |
| 30 | AGGRAVATED ASSAULT - TO STUDENT |
| 31 | SEXUAL ASSAULT - TO EMPLOYEE |
| 32 | SEXUAL ASSAULT - TO STUDENT |
| 35 | FALSE ALARM/FALSE REPORT |
| 36 | FELONY CONTROLLED SUBSTANCE |
| 37 | FELONY ALCOHOL VIOLATION |
| 41 | FIGHTING/MUTUAL COMBAT |
| 46 | AGGRAVATED ROBBERY |
| 47 | MANSLAUGHTER |
| 48 | CRIMINALLY NEGLIGENT HOMICIDE |
| 54 | DEADLY CONDUCT |
| 55 | RG SEX OFFENDER - SUPRVISED |
| 56 | RG SEX OFFENDER - NON SUPRVISED |
| 57 | CONTINUOUS SEX ABUSE OF CHILD |
| 58 | BREACH OF COMPUTER SECUR (AUP) |
| 59 | SERIOUS MISBEHAVIOR (SGLC ONLY) |
| 60 | HARASSMENT TO EMPLOYEE OF DISTRICT |

PEIMS Reportable Codes should be used when a student(s) commits an offense that meets the criteria listed in the PEIMS Discipline Data Chart (See TAB 9)



# Bullying

## WHAT YOU NEED TO KNOW:

- The campus will report ALL incidents of bullying in the Skyward Discipline Module

- There are 3 types of bullying – **Cyber, Group, and Individual**

- When applying the codes of L25, L30, L35 – **a reason code must be entered in the area shown below detailing the specific type of bullying that occurred.**



**Federal State Reporting** requires all bullying incidents and Victim(s) to be reported through the District's Student Information System (SIS).

| L05 | BULLYING - BASIS OF SEX |
|-----|-------------------------|
| L10 | BULLYING - RACE,COLOR,NTL ORIGIN |
| L15 | BULLYING - BASIS OF DISABILITY |
| L20 | BULLYING - BASIS OF RELIGION |
| L25 | BULLYING - CYBER |
| L30 | BULLYING - GROUP (2 OR MORE) |
| L35 | BULLYING - INDIVIDUAL |

**Note:** When creating the discipline record, there is an area designated to reporting Harassment/Bullying Incidents based on **Religion Type.**

If the bullying incident is related to religion, this area **must** be completed.

# Assault Types

## 01
### Local Offense Code

Physical contact that did not result in bodily injury

**L42 - Employee**
**L44 - Student**

## 02
### Bodily Injury

Physical pain, illness, or any impairment of physical condition
Texas Penal Code § 1.07(8)

To claim "Bodily Injury" there must be a campus nurses report on file of the incident.

**27 - Employee**
**28 - Student**

## 03
### Serious Bodily Injury

Bodily injury that creates a substantial risk of death or that causes death, serious permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ
Texas Penal Code § 1.07(46)

(Emergency Room Visit, Hospital etc.)

**29 - Employee**
**30 - Student**

# Coding VS. Comments



Offense coding should always correspond with offense comments

**Q: How will the campus know if coding doesn't correspond with comments?**

A: PEIMS Data Quality (PDQ) will generate and distribute a report every 3 weeks for campuses to review possible discrepancies in coding based on comments.

**Q: What if the coding is correct, regardless of the comment listed?**

A: Unless the coding is in error, according to the PEIMS Data Standards, PDQ will never ask a campus to change coding; however the campus is asked to review and confirm for accuracy.

**Q: How can the campus view reports more often than every 3 weeks?**

A: Campus admin have access to generate discipline reports at their convenience.

# Coding VS. Comments cont.



# TROUBLESOME CODING

## **41** – Fighting/Mutual Combat

Two or more students or persons that choose to mutually engage in physical combat using blows or force to strive to overcome the other student(s) or person(s)



### UNWILLING PARTICIPANT?

Assault of someone other than school staff

**TWO OR MORE STUDENTS CANNOT ASSAULT EACH OTHER**

## MULTIPLE STUDENTS INVOLVED IN <span style="color:red">SAME</span> INCIDENT
### (<u>ALL OFFENSES APPLY</u>)

- Two or more students involved in the same incident must have the <u>same</u> incident number reported when entering the discipline records in Skyward. This applies to <span style="color:red"><u>ANY</u></span> incident that takes place.

- Students from different campuses who are involved in the same incident will have different incident numbers. *Ensure to link students in comment section.*

- Please note: entering separate incident numbers for a single incident involving 2 or more students will not only over report discipline infractions to TEA, but it will also over report to the District School Board.

# Troublesome Coding cont.

| 01 | **Example:** **2** students were found to be stealing Pokémon trading cards from another students backpack. The teacher sent a referral for each student and the office entered each referral as separate incidents.<br>**Result:**<br>The total count of incidents for Theft (L61) would reflect as a total of **2** for the campus, when only **1** incident occurred. |

| 02 | **Example:** **3** students were found to be vaping together in the restroom. The vape tested positive for THC. When the campus entered their discipline record, each student received a separate incident number.<br>**Result:**<br>The total count of VPC (Vape Controlled Substance) incidents for the campus will be reported to TEA and School Board as **3** separate incidents, when in reality only **1** incident occurred. |

*Over reporting may place campus in jeopardy of Persistent Dangerous Schools*

# Mandatory Actions

- **WHAT IS A MANDATORY ACTION?**
  Mandatory Actions are action codes of DAEP Placement or Expulsion that is required when specific offenses occur (*pictured right*)

- **WHAT IF THE MANDATORY ACTION DOESN'T TAKE PLACE?**
  Mandatory Actions that are not assigned will appear as an error/fatal on the PEIMS Discipline 425 report. Errors must be cleared each 6-wk term and before PEIMS submission at end of year.

- **WHEN DOES THE LEVEL 1 PROCESS TAKE PLACE?**
  Mandatory Actions are action codes of DAEP Placement or Expulsion that is required when specific offenses occur (*pictured right*)



# Additional Action Code: 27  or  28

## CODE 27 ⟷ CODE 28

**CODE 27**
Mandatory Action not taken due to ARD manifestation hearing determination.   (SPED Students Only)

**CODE 28**
Mandatory Action not taken due to mitigating   factors.
(All other students)

### IMPORTANT

- The reason why a mandatory action was not taken **must** be reported.

- These codes are used **in addition** to the decided action code.

- Action Codes 27 or 28 **cannot** stand alone - there **must** be a PEIMS reportable action entered for the incident (ISS/OSS etc.)



**Add Action Summary**

**Student**
Student:
Entity:

Save
Back

**Action Summary**
* Action: 28  NO DISC ACT-TEC
Suspension Type: None
* Ordered Date: 08/15/2023  Tuesday
Return Date: 08/15/2023  Tuesday
Total Time: 0.00  Days
☐ Parent Notified

Action Status: Served
School:
School Year: 2023-24
Diff. Reason:
Days Served: 0.00
Follow Up Officer:
Authorized By:

☐ Inconsistent with Code of Conduct?
Comments: Mandatory Action of Placement to DAEP Not Taken

Maximum characters: 5000, Remaining characters: 4953

# Mitigating Factors

Before deciding to assign a student OSS, DAEP, Expulsion or JJAEP, a district <u>must</u> consider certain mitigating factors in relation to the student's misconduct:

- Self defense
- Intent
- Disciplinary History
- Disability that substantially impairs the student's capacity of understanding the wrongfulness of the conduct
- Homeless / Foster Care





# Emergency Placements: Offense Code 23

This code should not be used on a routine basis, only for emergency situations.

**1** The central focus of this code is the principal's decision to take immediate action in an emergency situation that cannot wait for due process to occur.

**2** Placement letter must correspond with the student's Skyward discipline record.

**3** When a student is Emergency Placed/Expelled, the Level 1 hearing must take place within **10 days** of the placement/expulsion.

**4** When a student is Emergency Placed/Expelled, the Level 1 hearing must take place within **10 days** of the placement/expulsion.

Placement letter **must** correspond with the student's Skyward discipline record.

# Emergency Placements: Offense Code 23 cont.

When entering the emergency placement, ensure to use the Offense Code of **23 – Emergency Placement**.

When entering the action, ensure the **total time** assigned reflects 10 days and, the **time served** reflects the days the student served until the level 1 decision was made.



# Part Day ISS or OSS

In accordance with TEC 37.005, under no circumstance may an out-of-school suspension (OSS), for a particular incident exceed (3) three school days.

*ISS/OSS action codes MUST be used for ANY length of time a student is removed from his/her instructional setting*

**CODE 25**
Part Day OSS

———————————

**CODE 26**
Part Day ISS

*Partial Day OSS is used by PEIMS for calculating the 3 day OSS limit*

# Time Ordered Vs. Time Served

If the student does **not** serve the full time ordered, a **difference reason code** is **required** for the action.

| Code | Short Description | Long Description |
|------|-------------------|------------------|
| 00 | NO DIFFERENCE | NO DIF BTWN OFFICIAL & ACTUAL |
| 01 | DISTRICT MODIFY | TERM MODIFIED BY DISTRICT |
| 02 | COURT ORDER MOD | TERM MODIFIED BY COURT ORDER |
| 03 | MOD/DIS/STU/PAR | MODIFIED AGGREE DIST/STUD/PAR |
| 04 | COMPLETE SOONER | COMPLETED SOONER THAN EXPECTED |
| 05 | INCARCERATED | STUDENT INCARCERATED |
| 06 | HEALTH RELATED | TERM DECREASED HEALTH REASONS |
| 07 | STUDENT W/DREW | STUDENT WITHDREW FROM SCHOOL |
| 08 | SCH YR ENDED | SCH YEAR ENDED BEFORE COMPLETE |
| 09 | CONTINUE PRE YR | CONTINUE PREVIOUS YEAR DISCIP |
| 10 | GOOD BEHAVIOR | TERM MODIFIED GOOD BEHAVIOR |
| 99 | OTHER | OTHER |

*If there is **no difference** and student served full time ordered, a difference reason code is **not** needed/required.*



**Q & A's**

**Q: WHAT IS THE DIFFERENCE BETWEEN TIME ORDERED AND TIME SERVED?**

- **Time Ordered** reflects the total days a student is assigned to an action (ISS/OSS/DAEP etc.).

- **Time Served** reflects the total days the student actually served for the action.

**Q: IF A DIFFERENCE REASON CODE IS USED, HOW WILL IT BE DOCUMENTED?**

**A:** The difference reason code that was entered for the action should be added to the discipline referral for auditing purposes.

# Ordered Action Date

---

**Emergency Placement**

Ordered Date will reflect the date the student begins SGLC, as stated in the emergency placement letter.

> NOTICE OF EMERGENCY PLACEMENT AT THE STUDENT GUIDANCE & LEARNING CENTER
>
> The student must report to the Student Guidance and Learning Center on Tuesday, April 11, 2023. The student may not enroll in a regular SFDRCISD educational setting until the duration of placement has expired.

**Level 1 Placement**

Ordered Date will reflect the date of the placement letter.

> NOTICE OF PLACEMENT AT STUDENT GUIDANCE & LEARNING CENTER
>
> May 17, 2023                                    HAND-DELIVERED
>
> Del Rio, Texas 78840

**All Other Actions**

Ordered Date will reflect the date the decision was made to assign the action.

# Action Status

## Action Status: Open/Served

Ensure to mark each action as "SERVED" **after** the student has completed his/her ordered time.



## Remember Attendance

Attendance **must** reflect the discipline actions entered in Skyward.



**Ex:** *3 Days ISS should correspond with the student's attendance record for the dates ordered.* **A PEIMS disciplinary record must be reported for __EACH__ disciplinary action that results in a removal of a student from any part of their academic program.**

## Discipline & Attendance Verification

The discipline/attendance secretary has access to generate reports at the convenience of the campus, to verify the attendance/discipline correspond in Skyward.

PDQ will task an attendance/discipline report to be distributed to campuses once a week, for review.



## ELEMENTARY

The campuses have only one attendance period therefore, discipline/attendance coding may not always correlate with one another in Skyward.

**Ex:** *Student is present at official attendance time, however at recess the student receives a discipline referral in which he/she is ordered ISS or OSS the remainder of the day – the original attendance coding will not be adjusted, but there must be a comment entered detailing the __time__ the student was ordered ISS/OSS.*

# Student Restraints



## Understanding Restraint Coding

The purpose of the Restraint Reason-Code is to indicate that a student was **physically** or **mechanically** restrained by District Police Officer due to imminent serious physical harm to themselves or others, imminent serious property destruction, or a combination of both during the course of an incident warranting discipline. Applies to all: SPED, 504, LEP, GT, etc.

## When Does Coding Take Place?

Takes place at the time the discipline record is created for the incident.



Documentation for restraints should be filed for auditing purposes.

# Student Restraints

## How to Document Restraints?

- Student restraints must be documented on the discipline referral **AND** also on the Restraint Summary form (**pictured right**).

- The form should then be submitted to the discipline office for processing.

- *Restraints are not performed by Staff Members*

*All restraints that are performed by school district police officers or school resource officers (SROs) while providing a police presence at school or at a school related activity* **must** *be reported.*

---

### 2023 - 2024 Restraint Summary

**District Police/Security Officers Complete Part I and II**

**I.   Student Information**

Name_____Student ID_____Date_____Time_____

Campus_____Grade_____Special Education:  Y   N

**II.   PEIMS Information**

**Restraint Reason:**
**(Code 8 Reported for Special Education and Non-Special Education Students)**

_____ 08 Restraint by School District Police Officer/School Resource Officer Performing Law Enforcement Duties and/or Providing a Police Presence on School Property or at a School-Sponsored or School-Related Activity.

**Staff Type:**
_____02-District Police Officer

**Restraint Type:**
_____Mechanical
_____Physical

District Police/Security Officer Name: _____

_____    _____
District Police/Security Officer Signature        Date

**FOR OFFICE USE ONLY**

*Make 3 copies of this form*

☐ Original is attached to referral and given to the Campus Administrator – Used for data entry and retained in the discipline folder with discipline referral for auditing purposes

☐ One copy must be placed in the mail, or otherwise provided to the parent, on the day of the restraint

☐ One copy is sent to the Department of Special Education (Director)

Entered by _____   Date _____

Path: WS\ST\TB\SP\TB\CH

**Restraint Steps**

1. Select **Child Res**



2. Select **Add**



3. Fill out the fields with an * asterisk and Save



4. The Child Restraint record is now posted



5. Data Mining Report to process at your convenience

| Report Name ▲ | Report Title | Favorite | Created By |
|---|---|---|---|
| ▶ AA Discipline - w/ Student Restraints | AA Discipline - w/ Student Restrain | ⭐ | GOMEZFEL001 |

# Student Restraints cont.

## What is the Importance of Reporting Student Restraints?

───────

**Restraints are reported to PEIMS during Summer Submission. Not reporting student restraints may appear as "hiding" restraint incidents.**

*Steps to code restraints can be found on the PDQ webpage*

# Inconsistent with Code of Conduct

## WHAT IS THE PURPOSE OF THE INCONSISTENT WITH CODE OF CONDUCT (ICC) INDICATOR?

**The purpose of the ICC is to indicate for reporting purposes, whether an out of school suspension, DAEP placement, or expulsion action is inconsistent with the LEA's student code of conduct.**



*Example:* If a student is sent to DAEP for an offense of L62 (Skipping Class), which translates to PEIMS as a 21 (Violation Student Code of Conduct), the campus will indicate in the action summary that the action is inconsistent with the District's Student Code of Conduct.

# Safe Supportive School Team Review

## WHAT IS THE PURPOSE OF THE SAFE SUPPORTIVE SCHOOL TEAM REVIEW INDICATOR?

———

**This indicates whether the Safe and Supportive School Program (SSSP) team conducted a threat assessment related to a reported disciplinary incident.**





# Behavior Location Codes

## WHAT ARE BEHAVIOR LOCATION CODES??

- Location Codes are PEIMS reportable codes that indicate where the disciplinary incident occurred for each specific offense code.

## HOW DOES THE CAMPUS KNOW WHICH LOCATION TO USE?

- Location Codes can be found in TAB 2 of the discipline manual.

## HOW ARE LOCATION CODES DOCUMENTED?

- Location Codes are PEIMS reportable codes that must be included on the discipline referral for each incident.

### 2023 -2024
### Behavior Location Codes

| Campus Location Codes | | SGLC Location Codes | |
|---|---|---|---|
| Code: | Translation: | Code: | Translation: |
| 00 | NOT APPLICABLE | SGLC0 | NOT APPLICABLE SGLC CAMPUS |
| 01 | ON CAMPUS | SGLC1 | ON SGLC CAMPUS |
| 02 | OFF CAMPUS, BUT WITHIN 300 FEET OF CAMPUS PROPERTY LINE | SGLC2 | OFF SGLC CAMPUS WITHIN 300' |
| 03 | OFF CAMPUS, BUT AT A SCHOOL SPONSORED OR SCHOOL RELATED ACTIVITY | | N/A |
| 04 | OFF CAMPUS, AND FURTHER THAN 300 FEET FROM THE CAMPUS BOUNDARY (STUDENT WAS NOT IN ATTENDANCE AT A SCHOOL SPONSORED OR SCHOOL RELATED ACTIVITY) | SGLC4 | OFF SGLC CAMPUS GREATER 300' |
| 05 | ON CAMPUS OF ANOTHER SCHOOL DISTRICT, OR WHILE IN ATTENDANCE AT A SCHOOL SPONSORED OR SCHOOL RELATED ACTIVITY OF ANOTHER SCHOOL DISTRICT | | N/A |

# Special Reminders

## AFFECTS FUNDING:

___

Students who are enrolled in special courses (CTE) and programs (Bilingual, SPED, etc.) and receive a discipline action of ISS, OSS, DAEP, or Expulsion for more than 5 consecutive days must have their funding removed for the course/program on the 6th day of the action effective the 1st day the action began.

Example: If a student is assigned OSS for 3 days beginning 09/06 – 09/08, and has ISS assigned immediately after for the dates of 09/09 – 09/13, totaling 6 days, the funding for CTE courses or special programs MUST be removed effective 09-06 – 09/13/23.

# Data Mining Reports

| Report Name ▲ | Report Title | Favorite | Created By |
|---|---|---|---|
| ▶ AA Discipline - Actions 27 & 28 | REQUIRED: Predefined Comments | ⭐ | GOMEZFEL001 |
| ▶ AA Discipline - Campus Location Code 00 | Location Code Must Be 00 -Please Correct | ⭐ | GOMEZFEL001 |
| ▶ AA Discipline - Campus Location Code 01 | Location Code Must Be 01 -Please Correct | ⭐ | GOMEZFEL001 |
| ▶ AA Discipline - Campus Location Code 04 | Location Code Must Be 04 -Please Correct | ⭐ | GOMEZFEL001 |
| ▶ AA Discipline - Continuation From 2022 | AA Discipline - Continuation From 2022 | ⭐ | GOMEZFEL001 |
| ▶ AA Discipline - Continuation From 2023 | AA Discipline - Continuation From 2023 | ⭐ | GOMEZFEL001 |
| ▶ AA Discipline - Emerg. Place. & Expul. | Emergency Placements & Expulsions | ⭐ | GOMEZFEL001 |
| ▶ AA Discipline - Mandatory Expulsion | Requires PEIMS Action | ⭐ | GOMEZFEL001 |
| ▶ AA Discipline - Mandatory Placement | Requires PEIMS Action | ⭐ | GOMEZFEL001 |
| ▶ AA Discipline - Open Actions @ Campus | AA Discipline - Open Actions @ Campus | ⭐ | GOMEZFEL001 |
| ▶ AA Discipline - Open Actions @ SGLC | AA Discipline - Open Actions @ SGLC | ⭐ | GOMEZFEL001 |
| ▶ AA Discipline - School Board Rpt AllYear | All Terms Discipline Combined | ⭐ | GOMEZFEL001 |
| ▶ AA Discipline - School Board Rpt Term 1 | Term 1 Discipline | ⭐ | GOMEZFEL001 |
| ▶ AA Discipline - School Board Rpt Term 2 | Term 2 Discipline | ⭐ | GOMEZFEL001 |
| ▶ AA Discipline - School Board Rpt Term 3 | Term 3 Discipline | ⭐ | GOMEZFEL001 |
| ▶ AA Discipline - School Board Rpt Term 4 | Term 4 Discipline | ⭐ | GOMEZFEL001 |
| ▶ AA Discipline - School Board Rpt Term 5 | Term 5 Discipline | ⭐ | GOMEZFEL001 |
| ▶ AA Discipline - School Board Rpt Term 6 | Term 6 Discipline | ⭐ | GOMEZFEL001 |
| ▶ AA Discipline - SGLC | Students Set to SGLC & SGLC Schedule | ⭐ | GOMEZFEL001 |
| ▶ AA Discipline - SpeEd (current year) | AA Discipline - SpeEd (current year) | ⭐ | GOMEZFEL001 |
| ▶ AA Discipline - SpeEd (previous year) | AA Discipline - SpeEd (previous year) | ⭐ | GOMEZFEL001 |
| ▶ AA Discipline - w/ Student Restraints | AA Discipline - w/ Student Restraints | ⭐ | GOMEZFEL001 |
| ▶ AA Discipline VS Attendance | Discipline Coding VS Attendance | ⭐ | GOMEZFEL001 |
| ▶ AA Discipline VS Attendance DRFS | AA Discipline VS Attendance DRFS | ⭐ | GOMEZFEL001 |
| ▶ AA Discipline VS Attendance DRHS | AA Discipline VS Attendance DRHS | ⭐ | GOMEZFEL001 |

**The reports listed can be processed through Excel by discipline office personnel at any time throughout the year, to review and verify data entered into the Skyward Discipline Module.**

# FAQ's

- WHAT DO I DO IF A STUENT COMMITS MULTIPLE VIOLATIONS DURING ONE INCIDENT?

- WHAT CONSTITUTES AN EMERGENCY PLACEMENT?

- HOW DO I DETERMINE WHAT THE ORDERED DATE OF AN ACTION IS?

# THANKS!

---

## Do You Have Questions?

PEIMS DATA QUALITY COMPLIANCE AND ACCOUNTABILITY

830.778.4076

peimsdataquality@sfdr-cisd.org





INFORMATION ONLY

Exhibit

D

**July 28, 2011**

**TO THE ADMINISTRATOR ADDRESSED:**

**Re:  Attendance, Admission, Enrollment Records and Tuition**

This letter summarizes several important statutes relating to attendance, public school admission, enrollment records, and tuition.  Part I of the letter relates to attendance, Part II relates to public school admission, Part III relates to enrollment records, and Part IV relates to tuition.  In each part, we have identified which statutes do or do not apply to open-enrollment charter schools. [1]  We hope you will find this summary helpful as you begin the 2011-2012 school year.

## I. ATTENDANCE

The statutes described in this Part apply to **open-enrollment charter schools** in addition to **school districts**, except for §25.092[2] (Minimum Attendance for Class Credit).

**§25.085 (Compulsory Attendance)**
Compulsory attendance applies to students who are at least six years old as of September 1 of the applicable school year.  The law requires a student to attend public school until the student's 18th birthday, unless the student is exempt under §25.086. This requirement is enforced through §§25.093 and 25.094 (see page 5).

Under §25.085(d), compulsory attendance applies to certain extended-year programs, tutorial classes, accelerated reading instruction programs, accelerated instruction programs, basic skills programs, and summer programs for students subject to certain disciplinary removals.  Under §25.085(c), it also applies to students below the age for compulsory attendance during any period that the student is voluntarily enrolled in pre-kindergarten or kindergarten.

Under §25.085(e), a person who voluntarily enrolls in or attends school after the person's 18th birthday is required to attend each school day for the entire period the program of instruction for which the student is enrolled is offered.  This state requirement is <u>not</u> enforceable through §§25.093 and 25.094. However, if the person has more than five unexcused absences in a semester, the school district may revoke the person's enrollment for the remainder of the school year under this subsection.  This authority to revoke enrollment, however, does not override the district's responsibility to provide a free appropriate public education to a student who is eligible for special education services.

---

[1] For additional information relating to open-enrollment charter schools, see the To The Charter Administrator Addressed letter regarding Admission, Enrollment, and Withdrawal.

[2] All statutory citations are to the Texas Education Code unless otherwise noted.

Also, please note that a student whose enrollment is revoked under this provision is considered a dropout for accountability purposes.

Section 25.085(f) purports to authorize the board of trustees of a school district to adopt a policy requiring a person described by Subsection (e) who is under the age of 21 to attend school until the end of the school year and to subject the person to §25.094.   However, §25.085(f) is no longer effective due to the amendment of §25.094, limiting the application of that section to persons "younger than 18 years of age."[3]

### §25.086 (Compulsory Attendance Exemptions)
Section 25.086 lists the exemptions from compulsory attendance. Three of the exemptions are addressed below.

### Expelled Students
The exemption from compulsory attendance for students who have been expelled applies only in a school district that does not participate in a mandatory juvenile justice alternative education program (JJAEP).   With certain exceptions, counties with populations greater than 125,000 are required to have JJAEPs.[4][5] [6]   In those counties, expelled students are subject to compulsory attendance.  Expelled students must attend the JJAEP, if they are placed there, or another educational program provided by the school district.  If an expelled student from a county that does not have a JJAEP moves to a county that has a mandatory JJAEP, the new school district may honor the expulsion under Chapter 37 but must assign the student to either the JJAEP or another educational program provided by the school district for expelled students.   An open-enrollment charter school may deny admission to a student expelled from a school district if its charter so provides.[7]

Notwithstanding the above-described exemption from compulsory attendance, a school district has a continuing obligation under federal and state law to provide a free appropriate public education to a student with a disability who has been removed for disciplinary reasons from his or her current educational placement, regardless of the population of the county in which the school district is located.

---

[3] S.B 1489, Acts of the 82nd Legislature, Regular Session, 2011.

[4] A county with a population greater than 125,000 is not required to have a JJAEP if its population was 125,000 or less according to the 2000 federal census and the county enters into the memoranda of understanding required under Section 37.011(a-1).

[5] Under Section 37.011(a-2) as added by H.B. 592, Acts of the 82nd Legislature, Regular Session (2011), a county with a population greater than 125,000 is not required to have a JJAEP if the county has a population of 180,000 or less; is adjacent to two counties, each of which has a population of more than 1.7 million; and has seven or more school districts located wholly within the county's boundaries.  This exception is currently applicable to Ellis County.

[6] Under Section 37.011(a-3) as added by S.B. 1, Acts of the 82nd Legislature, First Called Session (2011), a county with a population greater than 125,000 is considered to be a county with a population of 125,000 or less if the county has a population of more than 200,000 and less than 220,000; has five or more school districts located wholly within the county's boundaries; and has located in the county a juvenile justice alternative education program that, on May 1, 2011, served fewer than 15 students.  The district must provide education services to expelled students as provided by Section 37.011(a-3) and (a-4).  This exception is currently applicable to Smith County.

[7] Section 12.111(a)(6)(A).

**17 year-old in GED course**

The exemption from compulsory attendance for a child attending a GED course who is at least 17 years of age applies if: 1) the child has the permission of the child's parent or guardian to attend the course; 2) the child is required by court order to attend the course; 3) the child has established a residence separate and apart from the child's parent, guardian, or other person having lawful control; or 4) the child is homeless. (For a discussion of the enrollment in a school district of children with separate residences or who are homeless see Part II, Admission.)

**16 year-old in GED course**

There is a separate exemption for a child attending a GED course who is at least 16 years old. This exemption applies if the student is recommended to take the course by a public agency that has supervision or custody of the child under a court order. Under Article 45.054 of the Texas Code of Criminal Procedure, a county,[8] justice or municipal court that finds that a child who is at least 16 years of age engaged in truant conduct may order the child to take a GED examination and to attend a preparatory course. The exemption applicable to a 16 year-old attending a GED course includes those enrolled in a Job Corps training program. These are the only conditions under which 16 year-olds are exempt from compulsory attendance due to attending a GED course. In addition, certain 16 year-olds may attend a GED program operated by a school district or open-enrollment charter school under §29.087.

**§25.087 (Excused Absences)**

Section 25.087 relates to excused absences. Subsection (a) provides that a person required to attend school under §25.085 "may be excused for temporary absence resulting from any cause acceptable to the teacher, principal, or superintendent of the school in which the person is enrolled." As discussed under "Duties of School Attendance Officer" below, excused absences are not counted when determining the number of absences that trigger a referral or complaint for failure to comply with the compulsory attendance requirement. Excused absences are counted in determining whether a student is in compliance with the attendance requirements for class credit, which are also discussed below, but local policies under §25.092 regarding the award of class credit may take into account whether an absence is excused.

Under §25.087(b)(1), a school district is required to excuse a student's absence for observance of a religious holy day, for attending a required court appearance, to appear at a governmental office to complete paperwork required in connection with the student's application for United States citizenship, to take part in a United States naturalization oath ceremony, or for service as an election clerk. The period of an excused absence under §25.087(b)(1) includes travel time.[9]

---

[8] Applicability to a county court is only in a county with a population of 1.75 million or more and is due to the extension of jurisdiction of complaints under §§25.093 or 25.094 to constitutional county courts in a county of that population. H.B. 734, Acts of the 82nd Legislature, Regular Session (2011).

[9] For student attendance accounting for state funding, the number of excused days for travel under §25.087(b)(1) is limited to not more than one day to and one day from the site of the applicable event. 19 T.A.C. §129.21(k).

Under §25.087(b)(2), a school district must excuse a temporary absence for the purpose of an appointment with a health care professional if the student comes to school the day of the appointment, either before or after the appointment. According to §25.087(b-3), an absence subject to this provision includes a temporary absence of student diagnosed with autism spectrum disorder for an appointment with a health care practitioner[10] to receive a generally recognized service[11] for persons with autism spectrum disorder.

Under §25.087(b-2), a district may excuse the absence of a student who is a junior or senior for the purpose of visiting an accredited institution of higher education if the district adopts a policy to determine when an absence will be excused for that purpose and a procedure to verify the visit. In addition, under §25.087(c), a school district may excuse a student in grades 6 through 12 for the purpose of sounding "Taps" at a military honors funeral held in this state for a deceased veteran.

A student whose absence is excused under Subsections (b) - (c) described above may not be penalized for the absence. Also, the district must allow the student a reasonable time to make up missed school work  If an absence is excused under §25.087(b) - (c) and the student successfully completes the missed school work, the student is included in average daily attendance for that day. A student may not be included in average daily attendance for an absence that is excused for a reason that is not included under §25.087 (b) – (c).

Under the Interstate Compact on Educational Opportunity for Military Children,[12] a school superintendent may excuse a student's absence for the purpose of visiting with a parent or legal guardian who is an active duty member of the uniformed services and has been called to duty for, is on leave from, or immediately returned from deployment to a combat zone or combat support posting.

### §§25.088 and 25.090 (Designation of School Attendance Officer)
Under §25.088, the governing body of a school district or of an open-enrollment charter school may select an attendance officer to enforce the attendance of students.   If an open-enrollment charter school does not select an attendance officer, §25.090 requires the county peace officers to perform the duties of attendance officer with respect to students in the open-enrollment charter school.

### §§25.091, 25.0915 and 25.095 (Duties of School Attendance Officer)
Section 25.091 lists the duties of a school attendance officer. The section lists separately the duties of attendance officers who are peace officers and the duties of those who are not peace officers. Please note that the statute authorizes an attendance officer to refer a student to juvenile court or file a complaint in a county, justice or municipal court only for "unexcused absences." Excused absences are not included in the number of absences required for a referral or complaint.[13]  In addition to enrolled students with unexcused

---

[10] See Section 1355.015(b), Insurance Code, for a description of "health care practitioner".

[11] Under §25.087(b-3), "generally recognized service" includes applied behavioral analysis, speech therapy, and occupational therapy.

[12] Chapter 162, Education Code.

[13] This issue is addressed further in an Administrator Addressed letter dated November 13, 2001.  The letter can be found at http://ritter.tea.state.tx.us/taa/legal011113.html.

absences, a school attendance officer's duties extend to persons within compulsory attendance age who are not exempt from compulsory attendance and are not enrolled in school.

Section 25.091(b-1) authorizes a peace officer who has probable cause to believe that a child is violation of the compulsory school attendance law under §25.085 to take the child into custody for the purpose of returning the child to the child's school campus.[14]

An attendance officer is required to apply truancy prevention measures adopted by the district under §25.0915 and may make a referral or file a complaint under §25.091 only if the truancy prevention measures fail to meaningfully address the student's conduct.[15]

Section 25.095 requires school districts and open-enrollment charter schools to notify parents of attendance requirements at the beginning of the school year. Also, an additional notice is required after a student has a certain number of unexcused absences. Tardies are generally not considered absences for purposes of compulsory attendance enforcement.[16]

### §§25.092 and 11.158 (Ninety Percent Rule; Fees)

Section 25.092 contains the provision of law commonly referred to as "the 90 percent rule." Section 25.092 does not apply directly to open-enrollment charter schools. However, some open-enrollment charter schools have included "the 90 percent rule" in their charters.

Section 25.092 conditions credit for a class on a student's attendance for at least 90 percent of the days a class is offered. A student who is in attendance for at least 75 percent, but less than 90 percent, of the days a class is offered may be given credit if the student completes a plan approved by the principal that provides for the student to meet the instructional requirement of the class. If the student is under the jurisdiction of a court in a criminal or juvenile justice proceeding, the student may not receive credit by completing such a plan without the consent of the presiding judge.

The board of trustees is required to appoint one or more attendance committees to hear petitions from students who do not regain credit through a plan approved by the principal. An attendance committee may grant credit due to extenuating circumstances. The board is also required to adopt policies establishing alternative ways for such students to make up work or regain credit lost because of absences.

Under §25.092, a district may establish ways to make up work or regain credit that are workable in consideration of the circumstances. The section does not require that students spend a certain amount of time in a "Saturday school" or other educational

---

[14]  Additional statutes regarding delivery of a child to school by a law enforcement officer or a person
    authorized to take a child into custody include §§52.01(e), 52.02(a)(7), and 52.026(a), Texas Family Code.
[15] S.B. 1489, Acts of the 82nd Legislature, Regular Session (2011).
[16]  Op. Tex. Att'y Gen. No. DM-200 (1993).
    http://www.oag.state.tx.us/opinions/opinions/48morales/op/1993/pdf/dm0200.pdf

setting equal to time missed during regular school hours. The district should be prepared with other options that give the student a reasonable opportunity to make up work or regain credit even under challenging circumstances, including excessive absences that occur late in the school year. Additionally, this law is not intended to penalize students for not attending a class before the student was enrolled in the class. Students, including migrant students or transfer students, who could not have attended a class before enrollment should not have the days of class that occurred before their enrollment counted against them for purposes of "the 90 percent rule". As with any other student, to receive credit a student who enrolls after instruction for the year or semester has begun is required to demonstrate academic achievement and proficiency of the subject matter as required under §28.021 and 19 T.A.C. §74.26.

If a district offers an educational program outside of regular school hours as a means for students to make up work or regain credit, under §11.158(a)(15) and (h), a district may charge a fee for such an education program under restricted circumstances. The school district may assess the fee only if the student returns a form signed by the student's parent or other legal guardian stating that the fee would not create a financial hardship or discourage the student from attending the program. The fee may not exceed $50. Also, under §25.092(b) and (f), the board must provide at least one alternative for making up work or regaining credit that does not require a student to pay a fee under §11.158(a)(15). The availability of that alternative must be substantially the same as the availability of an educational program for which a fee is charged.

### §§25.093, 25.094, and 25.0951 (Compulsory Attendance Enforcement)

There are three options for compulsory attendance enforcement, which are outlined in §25.0951. Section 25.093 is an offense for contributing to nonattendance, which is committed by a parent.[17] Section 25.094 is an offense for failing to attend school, which is committed by a student who is 12 years of age or older and younger than 18 years of age.[18] A district may file an action to enforce compulsory attendance in any justice precinct in the county in which the school is located or in which the person filed against resides.[19] Alternatively, an action may be filed in municipal court or, in a county with a population of 1.75 million or more, in a constitutional county court.[20] Section 25.093 provides for the deposit of one-half of a fine collected under that section to the credit of the open-enrollment charter, JJAEP, or school district that the child attends. The third option for enforcement is to proceed against the child in juvenile court as a "child in need of supervision" under §51.03 of the Texas Family Code. This option applies if the child is 10 years of age or older for conduct committed before becoming 18 years of age.[21] It is an affirmative defense under both the Texas Education Code and the Texas Family Code that an absence has been excused by a school official or the court. For the student, there is also an affirmative defense for absences that are involuntary. The affirmative

---

[17] For purposes of §25.093, "parent" is defined to include "a person standing in parental relation."
[18] S.B. 1489, Acts of the 82nd Legislature, Regular Session (2011).
[19] Op. Tex. Att'y Gen. No. GA-0701 (2009).
   http://www.oag.state.tx.us/opinions/opinions/50abbott/op/2009/pdf/ga0701.pdf
[20] H.B. 734, Acts of the 82nd Legislature, Regular Session (2011).
[21] S.B. 1489, Acts of the 82nd Legislature, Regular Session (2011).

defenses apply only if there are an insufficient number of absences remaining to constitute an offense.

Under §25.0951(a), a complaint or referral for 10 or more unexcused absences within six months must be made within 10 school days from the date of the student's 10th absence. A court shall dismiss a complaint or referral that is not made in compliance with §25.0951.

## II. ADMISSION

Section 25.001 applies to an **open-enrollment charter school** for the purposes of determining whether the student meets the residency requirements for the open-enrollment charter school's designated geographic boundary. Also, the eligibility standards for prekindergarten programs, summarized in this Part, apply to an **open-enrollment charter school**. For more information regarding **open-enrollment charter school** admissions, please see the separate To The Charter Administrator Addressed letter relating to admission, enrollment and withdrawal.

Section 25.001 sets out the circumstances under which a person, who is at least five years of age and less than 21 on September 1 of a school year, is entitled to admission in a school district. A school also may choose to admit under this section a person who is at least 21 years of age and under 26 years of age on September 1 of a school year in order for the person to complete the requirements for a high school diploma. There is additional information regarding students age 21 and over near the end of this Part (see page 12).

A student's entitlement to admission is established if <u>any one</u> (or more) of the bases for admission in §25.001 applies to the student. Most, <u>but not all</u>, of the bases require that the student live in the district. It is important to consider that most students are entitled to enrollment in <u>at least one district</u> regardless of with whom they live. The exceptions under §25.001(d) apply <u>only if</u> a student is a minor living in a different district than the student's parent, guardian, or other person with lawful control under a court order (for discussion of these exceptions, see §25.001(b)(4) below).

All nine subdivisions of §25.001(b), as well as §25.001(g) and (h), are discussed below. These provisions create entitlements to enroll. A district may choose to accept, as transfers, students who are not entitled to enroll in the district under §25.001.[22] Under §25.036, a transfer is an annual agreement. The district may charge tuition under a transfer agreement to the extent permitted under §25.038.[23]

---

[22] Formerly, districts were required to report student transfers to the agency for approval pursuant to the statewide desegregation order known as "Civil Action 5281. Effective September 27, 2010, only the nine districts that were parties to the lawsuit remain subject to the order. Please see agency correspondence on this subject at http://ritter.tea.state.tx.us/taa/comm093010.html.

[23] Other than tuition, the Education Code does not impose any conditions on the annual agreement and does not grant general authority to revoke the agreement during its term nor is such authority inferred. Therefore, in the opinion of the TEA Office of Legal Services, the failure to pay lawfully required tuition is the only basis for a district to terminate a tuition agreement during the school year to which the agreement applies. With regard to other issues that may arise during the applicable school year, such as unsatisfactory grades or disciplinary infractions, transfer students are subject to the same consequences as the district's other students.

If a district legally admits a school age Texas resident, the district may include the student in its average daily attendance, unless the student is a high school graduate. An individual is eligible for the Foundation School Program if the individual is under the age of 21 on September 1 of the applicable school year and is not a high school graduate or if the individual is at least 21 years of age and under 26 years of age on September 1 of the school year and has been admitted to complete the requirements for a high school diploma.

An individual who is eligible for special education services and is not a high school graduate is eligible for enrollment and funding through the end of the school year or until graduation, whichever comes first, if the individual is under the age of 22 on September 1 of the applicable school year. A student who is eligible for special education services, and who has graduated from high school by successfully completing his or her individualized education program (IEP) and the other requirements of 19 T.A.C. §89.1070(b)(3), but meets the age eligibility requirements, may receive additional educational services (and be eligible for enrollment and funding) if the student's admission, review, and dismissal (ARD) committee determines that services need to be resumed. A student with a disability who has graduated in accordance with 19 T.A.C. §89.1070(b)(1), (2) or (4) is not eligible for special education services under state or federal law or for the benefits of the Foundation School Program.[24]

### §25.001(b)(1) (Parent and Student in District)
This provision entitles a student to admission if the student and either parent reside in the district. Although this subdivision applies only if the student and parent reside in the same district, it does not require that they live at the same address. (For a student living in a different district, separate and apart from a parent, guardian, or other person having lawful control of the student under a court order, see §25.001(b)(4).)

### §25.001(b)(2) (Parent Only in District)
This provision entitles a student who resides in Texas but <u>does not reside</u> in the district to admission if 1) a parent of the child resides in the district <u>and</u> 2) the parent is a joint managing conservator, sole managing conservator, or possessory conservator of the child. This provision does not apply to all parents living apart from their children. It applies only if the parent is a joint managing conservator, sole managing conservator, or possessory conservator. Those designations are established <u>by the order of a court</u> in a suit affecting the parent-child relationship under Title 5 of the Texas Family Code. If the parent's relationship with the child has not been the subject of such a suit, this provision of §25.001(b) does not apply. The designation by a court of a parent as a joint managing conservator, sole managing conservator, or possessory conservator can occur under a number of different circumstances, but occurs most commonly in relationship to a divorce proceeding. A temporary order pending final disposition of a divorce action would qualify a student for enrollment under this provision.

---

[24] 19 T.A.C. §89.1070(a). References to §89.1070(a) or (b) are to the section as amended, which takes effect on August 22, 2011.

**§25.001(b)(3) (Student and Guardian or Person with Lawful Control in District)**

This provision entitles a student to admission if the student <u>and</u> the student's "guardian or other person having lawful control of the [student] under a court order reside within the school district." (For a student living separate and apart from a parent, guardian, or other person having lawful control of the student, see §25.001(b)(4).)

To determine a student's entitlement under §25.001(b)(3), a district must determine if a court order exists that identifies a guardian or other person with lawful control residing in the district. A child is entitled to admission if a court orders the placement of the child with a person or in a facility in the district or if, pursuant to a court order, an entity such as the Department of Family and Protective Services or the Texas Youth Commission places a child in the district. If such a court order exists, the child is entitled to admission under this provision regardless of whether the student would be ineligible under the exclusions of §25.001(d), which are discussed below.

**§25.001(b)(4) (Student Only in District)**

This provision, by reference to §25.001(d), allows a student under 18 years of age to "establish a residence for the purpose of attending the public schools separate and apart from the [student's] parent, guardian, or other person having lawful control of the [student] under a court order...."[25] However, the student's presence in the district may not be "for the primary purpose of participation in extracurricular activities."[26]

The district is not required to admit a student under §25.001(b)(4) and (d) if the student:

    (1) has engaged in conduct or misbehavior within the preceding year that has resulted in:
        (A) removal to a disciplinary alternative education program (DAEP); or
        (B) expulsion;
    (2) has engaged in delinquent conduct or conduct in need of supervision and is on probation or other conditional release for that conduct; or
    (3) has been convicted of a criminal offense and is on other conditional release.[27]

These exceptions apply <u>only if</u> a student is living in a different district than the student's parent, guardian, or other person with lawful control of the child under a court order. The exceptions cannot be used to prevent a student eligible for admission under a different provision of §25.001 from being enrolled, including homeless students. Please consult this entire Part to determine if another basis for eligibility applies.

**Proof of Residency**

Under §25.001(d), "[t]he board of trustees shall determine whether an applicant for admission is a resident . . . for purposes of attending the public schools" under that

---

[25] Section 25.001(d).
[26] <u>Id</u>.
[27] <u>Id</u>.

subsection and "may adopt reasonable guidelines for making a determination as necessary to <u>protect the best interests of students</u> *(emphasis added)*." [28]

This ability to adopt guidelines should not be misinterpreted as the ability to redefine the legal concept of residency established by our state law.  The traditional, basic residence criteria are living in the district and having the present intention to remain there.  See, Martinez v. Bynum, 461 U.S. 321, 330-333 (1983), Arredondo v. Brockette, 648 F.2d 425 (5th Cir. 1981).  The board of trustees' authority is to provide guidelines that will enable a student to substantiate his or her residency and enable the board to determine if the student is a resident of the district.  Residency is not defined by an address on a driver's license, a signature on a lease, or the address on a utility bill. These are indicators that may expedite verifying residency, but the absence of such indicators is not conclusive that the student is not a resident.  Furthermore, the fact that a student is living in a household that is leased or owned by someone outside the student's immediate family may be an indicator that the student is homeless and entitled to admission under §25.001(b)(5).

### §25.001(b)(5) (Homeless Student)

This provision entitles a person defined as "homeless" under 42 U.S.C. §11302 to admission "regardless of the residence of the person, of either parent of the person, or of the person's guardian or other person having lawful control of the person."  Therefore, a person who is homeless is entitled to admission in any Texas school district.  The definition in 42 U.S.C. §11302 is similar, but not identical, to the definition of "homeless children and youths" enacted in the No Child Left Behind (NCLB) legislation enacted by Congress in 2002.  As the definition in the NCLB legislation applies specifically under federal law to the enrollment of homeless children and youth, the Texas Education Agency advises that school districts apply the NCLB definition, in addition to the definition in 42 U.S.C. §11302, when determining if a student is eligible for enrollment under §25.001(b)(5).  Both definitions are set out below.  Under federal law, homeless students may not be segregated from students who are not homeless, prohibiting assignments to a "shelter school" or other segregated setting.  Limited exceptions are provided for a short period to deal with a health and safety emergency or to provide temporary, special, and supplementary services that are unique to the needs of homeless children.[29]

42 U.S.C. §11302(a) provides:

For purposes of this chapter, the terms "homeless", "homeless individual", and "homeless person" means--

(1) an individual or family who lacks a fixed, regular, and adequate nighttime residence;

---

[28] See also, §25.001(c) (board may require evidence of residency, may establish minimum proof of residency, and may make reasonable inquiries to verify eligibility for admission).

[29] 42 U.S.C. §§11432(e)(3)(A) and 11433(a)(2)(B).

(2) an individual or family with a primary nighttime residence that is a public or private place not designed for or ordinarily used as a regular sleeping accommodation for human beings, including a car, park, abandoned building, bus or train station, airport, or camping ground;

(3) an individual or family living in a supervised publicly or privately operated shelter designated to provide temporary living arrangements (including hotels and motels paid for by Federal, State, or local government programs for low-income individuals or by charitable organizations, congregate shelters, and transitional housing);

(4) an individual who resided in a shelter or place not meant for human habitation and who is exiting an institution where he or she temporarily resided;

(5) an individual or family who--

(A) will imminently lose their housing, including housing they own, rent, or live in without paying rent, are sharing with others, and rooms in hotels or motels not paid for by Federal, State, or local government programs for low-income individuals or by charitable organizations, as evidenced by--

(i) a court order resulting from an eviction action that notifies the individual or family that they must leave within 14 days;

(ii) the individual or family having a primary nighttime residence that is a room in a hotel or motel and where they lack the resources necessary to reside there for more than 14 days; or

(iii) credible evidence indicating that the owner or renter of the housing will not allow the individual or family to stay for more than 14 days, and any oral statement from an individual or family seeking homeless assistance that is found to be credible shall be considered credible evidence for purposes of this clause;

(B) has no subsequent residence identified; and

(C) lacks the resources or support networks needed to obtain other permanent housing; and

(6) unaccompanied youth and homeless families with children and youth defined as homeless under other Federal statutes who--

(A) have experienced a long term period without living independently in permanent housing,

(B) have experienced persistent instability as measured by frequent moves over such period, and

(C) can be expected to continue in such status for an extended period of time because of chronic disabilities, chronic physical health or mental health conditions, substance addiction, histories of domestic violence or childhood abuse, the presence of a child or youth with a disability, or multiple barriers to employment.

42 U.S.C. §11434a provides:

* * * * *

(2) The term "homeless children and youths"--

(A) means individuals who lack a fixed, regular, and adequate nighttime residence (within the meaning of section 11302(a)(1) of this title); and

(B) includes--

(i) children and youths who are sharing the housing of other persons due to loss of housing, economic hardship, or a similar reason;  are living in motels, hotels, trailer parks, or camping grounds due to the lack of alternative adequate accommodations;  are living in emergency or transitional shelters;  are

abandoned in hospitals;  or are awaiting foster care placement;

        (ii) children and youths who have a primary nighttime residence that is a public or private place not designed for or ordinarily used as a regular sleeping accommodation for human beings (within the meaning of section 11302(a)(2)(C)[30] of this title);

        (iii) children and youths who are living in cars, parks, public spaces, abandoned buildings, substandard housing, bus or train stations, or similar settings;  and

        (iv) migratory children (as such term is defined in section 6399 of Title 20) who qualify as homeless for the purposes of this part because the children are living in circumstances described in clauses (i) through (iii).

## § 25.001(b)(6) (Foreign Exchange Student)

This provision entitles a foreign exchange student to admission if the student is placed with a host family that resides in the school district by a nationally recognized foreign exchange program.  The only exception is under the terms of a waiver granted by the commissioner on application of a district under §25.001(e).[31]  For a waiver to be granted, the admission of a foreign exchange student must create one of three possible conditions. It must 1) create a financial or staffing hardship for the district, 2) diminish the district's ability to provide high quality educational services for the district's domestic students, or 3) require domestic students to compete with foreign exchange students for educational resources.  The period of a waiver may not exceed three years.[32]

## F-1 Visa

Under federal law, a nonimmigrant may not be granted an F-1 visa in order to pursue a public elementary or publicly-funded adult education program.  Federal law permits a nonimmigrant F-1 immigration status for public secondary school if the aggregate period of study at the school will not exceed twelve months and the student reimburses the secondary school for the full unsubsidized per capita cost of the student's education.[33] Texas law does not authorize a school district to charge a student tuition under these circumstances.  This conflict between the federal law and Texas law prevents a student from being able to meet the second condition for the issuance of an F-1 visa.

The federal reimbursement requirement does not apply to foreign exchange students who hold J-1 visas.  It applies only to nonimmigrant students who seek F-1 student status by obtaining an I-20 certificate of eligibility from a local educational agency.  The ineligibility for an F-1 visa does not affect the entitlement to admission of a student actually residing in the district.  Please remember that, under the United States Supreme Court decision in Plyler v. Doe, 102 S.Ct. 2382 (1982), a student's immigration status is not a permissible basis for denying admission to a public school.[34]

---

[30] Due to the amendment of §11302(a), currently the correct cross-reference is §11302(a)(2).

[31] Subsection (e) cross-references Subsection (b)(5), however, the current designation for the Subsection regarding foreign exchange students is (b)(6).

[32] For additional information regarding foreign exchange waivers, please refer to the Foreign Exchange Guidelines and FAQ accessible at http://www.tea.state.tx.us/uploadedFiles/State_Waivers/attachments/waivers.pdf.

[33] 8 U.S.C. §1184(m).

[34] A recent letter issued by the U.S. Department of Justice and the U.S. Department of Education advises public schools to refrain from inquiring into students' citizenship or immigration status or that of their parents or guardians. The

**§25.001(b)(7) (Student in Residential Facility)**
This provision entitles a student residing at a residential facility located in the district to admission.  A "residential facility" is defined in §5.001(8) as follows:

> "Residential facility" means:
> > (A) a facility operated by a state agency or political subdivision, including a child placement agency, that provides 24-hour custody or care of a person 22 years of age or younger, if the person resides in the facility for detention, treatment, foster care, or any noneducational purpose; and
> > (B) any person or entity that contracts with or is funded, licensed, certified, or regulated by a state agency or political subdivision to provide custody or care for a person under Paragraph (A).

Under §29.012, a residential facility is required to notify the school district in which the facility is located of the placement of a person three years of age or older.[35]  The facility is required to give the notice not later than the third day after the date of placement.  A district should contact residential facilities in the district to coordinate implementation of this notice provision.  In general, students placed in residential facilities are entitled to admission under other provisions of §25.001.  However, §25.001(b)(7) provides a uniform admissions provision for children in such facilities.  Additionally, the notice requirement should generate communication between the facilities and school districts that will promote efficiency in the provision of educational services to these children.

**§25.001(b)(8) (Adult Student)**
This provision entitles a student residing in the district to admission if the student is over 18 years of age or if the student is less than 18 years of age and has had the disabilities of minority removed through marriage or as otherwise permitted by law.

**§25.001(b)(9) (Grandparent in District)**
This provision entitles a student who resides in Texas but does not reside in the district to admission if a grandparent of the student resides in the district and the grandparent provides a substantial amount of after-school care for the student as determined by the local school board.

**§25.001(f) and (g) (Foster Care)**
The law makes special provision for children in foster care.[36]  Subsection (f) provides for tuition-free admission in the district in which the foster parents reside.  In addition, the subsection forbids the use of a durational residence requirement to prohibit a foster child

---

letter and an accompanying question and answer document is available at http://www2.ed.gov/about/offices/list/ocr/letters/colleague-201101.html.

[35]  Section 29.012 does not apply to a residential treatment facility for juveniles established under Section 221.056, Human Resources Code.  Section 29.012(e), Education Code, as amended by S.B. 653, Acts of the 82nd Legislature, Regular Session (2011).

[36]  Under new §33.904, each school district is required to appoint at least one employee as a liaison officer to facilitate the enrollment in or transfer to a public school of a child in the district who is in the conservatorship of the state.  The initial appointment must be made not later than December 1, 2011.  H.B. 826, Acts of the 82nd Legislature, Regular Session (2011).

from participating in any school-sponsored activity.  Subsection (g) specifically provides a high school student placed in temporary foster care with the option of continuing to attend, without payment of tuition, the school in which the student was enrolled at the time of placement, regardless of the residence of the foster parents.

### §29.153 (Prekindergarten)

There are additional eligibility criteria for prekindergarten programs for three and four year olds.  Under §29.153, a child of the appropriate age is eligible for a prekindergarten program if the child:

> (1) is unable to speak and comprehend the English language;
>
> (2) is educationally disadvantaged[37];
>
> (3) is a homeless child[38];
>
> (4) is the child or stepchild of an active duty member of the armed forces, including state military forces or a reserve component of the armed forces, who is ordered to active duty;
>
> (5) is the child or stepchild of a member of the armed forces, including state military forces or a reserve component of the armed forces, who was injured or killed while serving on active duty; or
>
> (6) is or ever has been in the conservatorship of the Department of Family and Protective Services following an adversary hearing under §262.201 of the Texas Family Code.[39]

### Appeal

A decision of a school district to deny admission may be appealed to the commissioner of education under §7.057(a).  In an appeal under that section, the commissioner will review the record developed at the district level to determine if the decision is supported by substantial evidence.[40]

### §25.001(b-1) and (b-2) (Students at least age 21 but under age 26)

Section 25.001 grants districts discretionary authority to admit students who are at least 21 years of age and under 26 years of age on September 1 of the school year and are admitted to complete the requirements for a high school diploma.

These older students are not eligible for placement in a DAEP or a JJAEP.  If a student admitted under this discretionary authority engages in conduct that would require such placement for a student under age 21, the district shall revoke admission of the student into the public schools of the district.

---

[37] "Educationally disadvantaged" means "eligible to participate in the national free or reduced price lunch program".  See §5.001(4).

[38] As defined in 42 U.S.C. §11434a(2).  See discussion of §25.001(b)(5) above.

[39] Additional information regarding prekindergarten eligibility is available on the TEA Early Childhood webpage at http://www.tea.state.tx.us/index2.aspx?id=2147495267&menu_id=2147483 and in the Prekindergarten section of the Student Attendance Accounting Handbook at http://www.tea.state.tx.us/index2.aspx?id=7739.

[40] Section 7.057(c).

If a student admitted under this discretionary authority has not attended school in the three preceding school years, the student may not be placed with a student who is 18 years of age or younger in a classroom setting, a cafeteria, or another district-sanctioned school activity.  However, the student may attend a school-sponsored event that is open to the public as a member of the public.

An older student admitted under this authority is entitled to Foundation School Program funding under §42.003.  However, a student with a disability is not eligible for either federal or state special education programs or funding unless the student was under the age of 22 on September 1 of the applicable school year.  A student with a disability who no longer qualifies for special education due to the student's age and who has not graduated must meet the regular state graduation requirements regardless of whether the student previously could have graduated under an IEP with different requirements.  Generally, students with disabilities will qualify for §504,[41] but that law does not allow modification of graduation requirements or provide any additional funding.  A public school may not deny admission based on the presence of a disability, prior special education status, or §504 status.

### Address Confidentiality Program
The Address Confidentiality Program (ACP) is mandated by Subchapter C, Chapter 56, Texas Code of Criminal Procedure.  The rules of the Attorney General regarding the program are in 1 T.A.C. Chapter 61.[42]

The ACP is available to a person who is a victim of domestic violence, sexual assault, or stalking. The goal of the program is keep the victim's location confidential through the use of a substitute address and mail-forwarding service.  A substitute legal address (P.O. Box) is established for the participant and is displayed on a participation card issued by the Office of Attorney General.  On presentment of a participant's card, the statute and the rules require that state and local agencies accept the substitute post office address in lieu of the person's actual address.  The substitute address has no relation to the participant's actual location within the state.

## III. Enrollment Records

The statutes described in this Part apply to **open-enrollment charter schools** in addition to **school districts**.

### §25.002 (Requirements for Enrollment)
Section 25.002 requires that a child's prior school district or the person enrolling the child provide certain records.  The required records are 1) a birth certificate or other proof of identity, 2) the child's records from the school most recently attended, and 3)

---

[41] Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. §794.

[42] Information regarding the ACP is available on the website of the Office of Attorney General at https://www.oag.state.tx.us/victims/acp.shtml and on the Texas Education Agency website at http://www.tea.state.tx.us/index2.aspx?id=2147485600.

immunization records.[43]  These are the only records statutorily required for enrollment. Student social security numbers are used for purposes of the Public Education Information Management System; however, a district or open-enrollment charter will assign the student a state-approved alternative student identification number if the student's social security number is not provided.

The prior school district should promptly provide records to the enrolling district that are needed for the appropriate placement and continued education of the student, including records relating to §504 or to special education services under the Individuals with Disabilities Education Act.  Under §25.002, the prior district must provide the records not later than the 10th working day after the date a request for the records is received.  This requirement also applies to the transfer of records to or from other public schools, including open-enrollment charter schools and JJAEPs. [44]

School districts and open-enrollment charter schools are required to participate in the electronic transfer of student records through the Texas Records Exchange (TREx).  For more information regarding TREx, visit http://www.tea.state.tx.us/trex/.

Records furnished by a parent or other person with legal control of a child under a court order must be furnished not later than the 30th day after the date the child is enrolled.  The 30 day provision is duplicated in Subsection (g) in relation to a child taken into possession by the Department of Family and Protective Services under Chapter 262 of the Texas Family Code.  A school district is specifically required to accept the child for enrollment without the records required under §25.002, but the department is required to furnish such records not later than the 30th day after the date the child is enrolled.

A school district may not prohibit a student from attending school pending receipt of transcripts or records from the school district the student previously attended.[45] Additionally, the failure of a prior district or the person enrolling the student to provide identification or school records under §25.002 does not constitute grounds for refusing to admit an eligible student.  However, if identifying records are not furnished within the 30-day period, §25.002(c) requires the district to notify law enforcement and request a determination of whether the student has been reported as missing.  This requirement applies regardless of the student's age.  If a student is enrolled under a name other than the name in the identifying documents, the school district is required to notify the missing children and missing person's information clearinghouse under §25.002(b).  The notice is confidential.  (Please note that a student must be enrolled under the student's legal surname; see subsequent summary of §25.0021.)

---

[43] On enrollment, a school district is required to request food allergy information under §25.0022, but provision of the information is not required for enrollment.  H.B. 742, Acts of the 82nd Legislature, Regular Session (2011).

[44] The requirements of §25.002 apply regardless of whether the student has unreturned instructional materials or technological equipment.  Under § 31.104(d), a school district has discretion to withhold the records of a student if the student has not returned or paid for instructional materials or technological equipment.  This discretionary authority does not exempt a school district from the mandatory provision in §25.002 to send records to another public school in which the student is enrolling.  In situations in which there is not a conflicting mandate, the district may implement the discretionary authority under § 31.104(d).  For definitions of "instructional materials" and "technical equipment", see §31.002.

[45] 19. T.A.C. §74.26(a)(1).

With respect to homeless students, a school district or open-enrollment charter school is required under federal law to enroll a homeless student immediately, even if the student is unable to produce records normally required for enrollment.[46]

**Absence of parent or guardian**

During the 1995-1996 and 1996-1997 school years, a school district was required under §25.002(f) to notify the Department of Protective and Regulatory Services (DPRS)[47] if a child was enrolled by a person other than the child's parent, guardian, or other person with legal control of the child under a court order. The district was then to send parental communication regarding that child to DPRS or whomever DPRS directed. During the 1997 legislative session, the section was amended by removing the requirement to notify DPRS. The amendment did not remove the first sentence of §25.002(f), but that sentence is no longer effective because the referenced exception was removed. The district must determine with whom communication regarding the child is appropriate as the DPRS is no longer a default. **The absence of a parent, guardian, or other person with legal control of a child under a court order is not grounds for refusing admission to which a child is entitled under §25.001.**

Regardless of whether or not a child's parent, guardian, or other person with legal control of the child under a court order is enrolling a child, under §25.002(f) as amended in 2001, a district is required to record the name, address, and date of birth of the person enrolling a child.[48]

**Immunization Records**

Subject to the exceptions in §38.001(c), a student is required to be fully immunized against certain diseases. However, under §38.001 a student may be provisionally admitted if the student has begun the required immunizations and continues to receive the necessary immunizations as rapidly as medically feasible. Except as provided by §38.001(c), a student who is not fully immunized and has not begun the required immunizations may not attend school.[49]

Under §38.019, a school district that maintains an Internet website is required to post prominently on the website lists, in English and Spanish, of the immunizations required for admission to public school, any additional immunizations recommended by the Department of State Health Services (DSHS), and health clinics in the district that offer influenza vaccine. The district must also post a link to the DSHS website information relating to claiming an exemption from immunization requirements. This information is available at www.dshs.state.tx.us/immunize/school/default.shtm.

---

[46] 42 U.S.C. §11432(g)(3)(C)(i).

[47] The department's name has changed to Department of Family and Protective Services.

[48] Certain close relatives who are not a child's legal guardian may have express authority to enroll a child in school pursuant to an authorization agreement under Chapter 34, Family Code. The form required for this purpose is available on the Department of Family and Protective Services website at http://www.dfps.state.tx.us/documents/Child_Protection/2638.pdf.

[49] For further information regarding immunization requirements, immunization exemptions, and immunization documentation, please contact the Department of State Health Services. Information about immunization and the department's Immunization Branch is available at www.dshs.state.tx.us/immunize/default.shtm.

**§25.0021 (Use of Legal Surname)**
This section requires that a public school identify a student by that student's legal surname as it appears on the student's birth certificate or other document suitable as proof of the student's identity or in a court order changing the student's name.

**Texas Code of Criminal Procedure School Records Requirements**
There are additional requirements relating to school records in Chapter 63 of the Texas Code of Criminal Procedure, which relates to the missing children and missing person information clearinghouse in the Department of Public Safety.  The requirements apply to the records maintained by primary schools for children under 11 years of age.

**Enrollment Procedure**
When a child under the age of 11 initially enrolls in a primary school, the school is required to take the following steps:

1. Request from the person enrolling the child the name of each previous school attended by the child.
2. Request from each school the school records for the child or, if the person enrolling the child provides the records, request verification from the school of the child's name, address, birth date, and grades and dates attended.
3.  Notify the person enrolling the student that not later than the 30th day after enrollment, or the 90th day if the child was not born in the United States, the person must provide a certified copy of the child's birth certificate or other reliable proof of the child's identity and age with a signed statement explaining the inability to produce a copy of the birth certificate.
4. If the person enrolling the child does not provide valid prior school information or the required documentation, the school shall notify the appropriate law enforcement agency before the 31st day after the person fails to comply.  The failure to provide records does not constitute grounds for refusing to admit an eligible student.

**Records of Children Identified as Missing**
When a law enforcement agency receives a report that a child under 11 years of age is missing, the law enforcement agency or the clearinghouse will notify each primary school in which the child has been enrolled or has attended.  When the school receives the notice, the school is required to take the following steps:

1. Flag the child's records that are maintained by the school.
2. On receipt of a request regarding the child made in person:
    (a)  require the requesting party to complete a form stating the person's name, address, telephone number, and relationship to the child and the name, address, and birth date of the child;
    (b) obtain a copy of the requesting party's driver's license or other photographic identification, if possible; and
.   (c) notify law enforcement or the clearinghouse that a request for a flagged record has been made, enclosing a physical description of the requesting party, the identity and address of the requesting party, and a copy of the requesting party's driver's license or other photographic identification.

3.  On receipt of a request regarding a child that is made in writing, notify law enforcement or the clearinghouse and include a copy of the request.
4.  Do not disclose to the requesting party that the request concerns a missing child.
5.  After notifying law enforcement, mail a copy of the requested record to the requesting party on or after the 21st day after the date of the request.

**Removal of Flag**

On the return of a missing child whose records have been flagged, the law enforcement agency or the clearinghouse will notify each primary school the child has attended.  On receipt of that notification, the school shall remove the flag from the records.  A school that has reason to believe a missing child has been recovered may request confirmation of that from the appropriate law enforcement agency or the clearinghouse.  If a response is not received after the 45th day after the date of the request for confirmation, the school may remove the flag from the record and notify the law enforcement agency or the clearinghouse that the flag has been removed.

**Relationship to FERPA**

When a school receives a request for records, the school first needs to consider whether the information may be released at all.  The provisions in the Texas Code of Criminal Procedure do not replace the limitations on the disclosure of educational records that are found in the federal Family Educational Rights and Privacy Act (FERPA).[50] FERPA prohibits the disclosure of educational records to persons other than the student's parent, guardian, or an individual acting as a parent in the absence of a parent or guardian or, if age 18, the student, unless the disclosure comes within certain exceptions provided under FERPA.[51]  If the requestor is someone other than the student's parent or guardian, an individual acting as a parent in the absence of a parent or guardian, or the student, if age 18 or older, the district should still notify law enforcement of the request but may not release the records to the requestor unless consent to the release is obtained or a FERPA exception to the general requirement for consent applies.  Whether or not the information is released, the school may not disclose to <u>any</u> requestor (including a parent, guardian, individual acting as a parent, or student) that the request concerns a missing child.[52]

**Relationship to Public Information Act**

Article 63.021(c) of the Texas Code of Criminal Procedure requires that a school wait 21 days before mailing copies of flagged records to a requestor.  However, the Public Information (or Open Records) Act provides that "[i]f an officer for public information cannot produce public information for inspection or duplication within 10 calendar days after the date the information is requested . . . , the officer shall certify that fact in writing to the requestor and set a date and hour within a reasonable time when the information will be available for inspection or duplication."[53] Due to this provision, a district should notify a requestor within 10 days that the records will be mailed on a certain date that is on or after the 21st day after the request is received.

---

[50] 20 U.S.C. 1232g and 34 C.F.R. Part 99.
[51] A FERPA exception permits disclosure to another school in which the student is enrolling, which is required by §25.002 of the Texas Education Code.
[52] Article 63.021(d), Texas Code of Criminal Procedure.
[53] Section 552.221(d), Texas Government Code.

## IV. TUITION

**Prekindergarten**:  Eligibility for free prekindergarten is determined under §29.153.  In addition to free prekindergarten, under §29.1531 a school district or an open-enrollment charter school may provide, on a tuition basis or using district funds, an additional half-day of prekindergarten for children eligible for classes under §29.153 or offer prekindergarten classes for children not eligible under §29.153.[54]

**Other:**  Other than tuition for certain prekindergarten students discussed above, an open-enrollment charter school may not charge tuition.[55]  A school district may charge tuition only if it is specifically authorized to do so by statute or under the constitution.  If your district is charging tuition for any purpose, please review the statutes to determine if there is authority for the tuition.   Statutes authorizing tuition under certain limited circumstances include §§25.003 (Certain Children from Other States), 25.038 (Transfer Students), 25.039 (Contract for Education Outside District)[56], 25.041 (Children of State School Employees), and 25.042 (Children of Texas Youth Commission Employees).

We hope this summary is helpful to you in preparing for the 2011-2012 school year.  If you have questions about the statutory provisions summarized in this letter, you are welcome to call the Office of Legal Services at (512) 463-9720.

Sincerely,


David A. Anderson
General Counsel


DA/shs/ds

---

[54] Tuition may not be charged under §29.1531 for a student, including an eligible student served a full day, whose attendance is funded through a prekindergarten grant awarded by the commissioner under §29.155.  However, no grants are available under §29.155 for the 2011-2012 school year due to lack of funding for that purpose.

[55] Section 12.108.

[56] The maximum tuition under this section is affected by 19 T.A.C. §61.1012.



Exhibit

E

INFORMATION ONLY

August 18, 2008  **(Revised November, 2008; see page 6)**

**TO THE ADMINISTRATOR ADDRESSED:**

**Re:  Attendance, Admission, Enrollment Records and Tuition**

This letter summarizes several important statutes relating to attendance, public school admission, enrollment records, and tuition.  Part I of the letter relates to attendance, Part II relates to public school admission, Part III relates to enrollment records, and Part IV relates to tuition.  In each part, we have identified which statutes do or do not apply to open-enrollment charter schools.  We hope you will find this summary helpful as you begin the 2008-2009 school year.

## I.  Attendance

The statutes described in this Part apply to **open-enrollment charter schools** in addition to **school districts**, except for §25.092[1] (Minimum Attendance for Class Credit).

**§25.085 (Compulsory Attendance)**
Compulsory attendance applies to students who are at least six years old as of September 1 of the applicable school year.  The law requires a student to attend public school until the student's 18th birthday, unless the student is exempt under §25.086. This requirement is enforced through §§25.093 and 25.094 (see page 5).

Under §25.085(d), compulsory attendance applies to certain extended-year programs, tutorial classes, accelerated reading instruction programs, accelerated instruction programs, basic skills programs, and summer programs for students subject to certain disciplinary removals.  Under §25.085(c), it also applies to students below the age for compulsory attendance during any period that the student is voluntarily enrolled in pre-kindergarten or kindergarten.

Under §25.085(e), a person who voluntarily enrolls in or attends school after the person's 18th birthday is required to attend each school day for the entire period the program of instruction for which the student is enrolled is offered.  This state requirement is <u>not</u> enforceable through §§25.093 and 25.094.[2]  However, if the person has more than

---

[1] All statutory citations are to the Texas Education Code unless otherwise noted.
[2] See §25.085(f) for enforcement of a related local policy.

five unexcused absences in a semester, the school district may revoke the person's enrollment for the remainder of the school year under this subsection. This authority to revoke enrollment, however, does not override the district's responsibility to provide a free appropriate public education to a student who is eligible for special education services. Also, please note that a student whose enrollment is revoked under this provision is considered a dropout for accountability purposes.

Under §25.085(f), the board of trustees of a school district may adopt a policy requiring a person described by Subsection (e) who is under the age of 21 to attend school until the end of the school year. Section 25.094 applies to a person subject to the policy, but §§ 25.093 and 25.095 do not apply to the person's parent.

### §25.086 (Compulsory Attendance Exemptions)
Section 25.086 lists the exemptions from compulsory attendance. Three of the exemptions are addressed below.

### Expelled Students
The exemption from compulsory attendance for students who have been expelled applies only in counties with a population of 125,000 or less. Counties with populations greater than 125,000 are required to have juvenile justice alternative education programs. In those counties, expelled students are subject to compulsory attendance. Expelled students must attend the juvenile justice alternative education program (JJAEP), if they are placed there, or another educational program provided by the school district. If an expelled student from a county of 125,000 or less moves to a county of more than 125,000, the new school district may honor the expulsion under Chapter 37 but must assign the student to either the JJAEP or another educational program provided by the school district for expelled students. An open-enrollment charter school may deny admission to a student expelled from a school district if its charter so provides.[3]

Notwithstanding the above-described exemption from compulsory attendance, a school district has a continuing obligation under federal and state law to provide a free appropriate public education to a student with a disability who has been removed for disciplinary reasons from his or her current educational placement, regardless of the population of the county in which the school district is located.

### 17 year-old in GED course
The exemption from compulsory attendance for a child attending a GED course who is at least 17 years of age applies if:  1) the child has the permission of the child's parent or guardian to attend the course; 2) the child is required by court order to attend the course; 3) the child has established a residence separate and apart from the child's parent, guardian, or other person having lawful control; or 4) the child is homeless. (For a discussion of the enrollment in a school district of children with separate residences or who are homeless see Part II, Admission.)

### 16 year-old in GED course
There is a separate exemption for a child attending a GED course who is at least 16 years old. This exemption applies if the student is recommended to take the course by a public agency that has supervision or custody of the child under a court order. Under

---

[3] Section 12.111(a)(6)(A).

Article 45.054 of the Texas Code of Criminal Procedure, a county,[4] justice or municipal court that finds that a child who is at least 16 years of age engaged in truant conduct may order the child to take a GED examination and to attend a preparatory course. The exemption applicable to a 16 year-old attending a GED course includes those enrolled in a Job Corps training program. These are the only conditions under which 16 year-olds are exempt from compulsory attendance due to attending a GED course. In addition, certain 16 year-olds may attend a GED program operated by a school district or open-enrollment charter school under §29.087.

### §25.087 and 19 T.A.C. §129.22 (Excused Absences)

Section 25.087 relates to excused absences. Subsection (a) provides that a person required to attend school under §25.085 "may be excused for temporary absence resulting from any cause acceptable to the teacher, principal, or superintendent of the school in which the person is enrolled." As discussed under "Duties of School Attendance Officer" below, excused absences are not counted when determining the number of absences that trigger a referral or complaint for failure to comply with the compulsory attendance requirement. Excused absences are counted in determining whether a student is in compliance with the attendance requirements for class credit, which are also discussed below, but local policies under §25.092 regarding the award of class credit may take into account whether an absence is excused.

Under §25.087(b), a school district is required to excuse an absence, including travel time, for observance of a religious holy day or for attending a required court appearance.[5] This subsection also requires that a school district excuse a temporary absence for the purpose of an appointment with a health care professional if the student comes to school the day of the appointment, either before or after the appointment.

Under §25.087(c), a school district may excuse a student in grades 6 through 12 for the purpose of sounding "Taps" at a military honors funeral held in this state for a deceased veteran.

A student whose absence is excused under Subsection (b) or (c) described above may not be penalized for the absence, including under the attendance requirements for class credit under §25.092. Also, the district must allow the student a reasonable time to make up missed school work If an absence is excused under §25.087(b) or (c) and the student successfully completes the missed school work, the student is included in average daily attendance for that day.

### §§25.088 and 25.090 (Designation of School Attendance Officer)

Under §25.088, the governing body of a school district or of an open-enrollment charter school may select an attendance officer to enforce the attendance of students. If an open-enrollment charter school does not select an attendance officer, §25.090 requires the county peace officers to perform the duties of attendance officer with respect to students in the open-enrollment charter school.

---

[4] Applicability to a county court is only in a county with a population of two million or more and is due to the extension of jurisdiction of complaints under §§25.093 or 25.094 to constitutional county courts in a county of that population.

[5] For student attendance accounting for state funding, the number of excused days for travel under §25.087(b) is limited to not more than one day to and one day from the site where the student will observe the holy days. 19 T.A.C. §129.21(k)(4).

**§§25.091 and 25.095 (Duties of School Attendance Officer)**

Section 25.091 lists the duties of a school attendance officer. The section lists separately the duties of attendance officers who are peace officers and the duties of those who are not peace officers.  Please note that the statute authorizes an attendance officer to refer a student to juvenile court or file a complaint in a county, justice or municipal court only for "unexcused absences." Excused absences should not be considered when deciding to make a referral or file a complaint.[6]  In addition to enrolled students with unexcused absences, a school attendance officer's duties extend to persons within compulsory attendance age who are not exempt from compulsory attendance and are not enrolled in school.

Section 25.091(b-1) authorizes a peace officer who has probable cause to believe that a child is violation of the compulsory school attendance law under §28.085 to take the child into custody for the purpose of returning the child to the child's school campus.[7]

Section 25.095 requires school districts and charter schools to notify parents of attendance requirements at the beginning of the school year.  Also, an additional notice is required after a student has a certain number of unexcused absences.  Tardies are generally not considered absences for purposes of compulsory attendance enforcement.[8]

**§§25.092 and 11.158 (Ninety Percent Rule; Fees)**

Section 25.092 contains the provision of law commonly referred to as "the 90 percent rule".  Section 25.092 does not apply directly to open-enrollment charter schools. However, some open-enrollment charter schools have included "the 90 percent rule" in their charters.

Section 25.092 conditions credit for a class on a student's attendance for at least 90 percent of the days a class is offered.  A student who is in attendance for at least 75 percent, but less than 90 percent, of the days a class is offered may be given credit if the student completes a plan approved by the principal that provides for the student to meet the instructional requirement of the class.  If the student is under the jurisdiction of a court in a criminal or juvenile justice proceeding, the student may not receive credit by completing such a plan without the consent of the presiding judge.

The board of trustees is required to appoint one or more attendance committees to hear petitions from students who do not regain credit through a plan approved by the principal.  An attendance committee may grant credit due to extenuating circumstances. The board is also required to adopt policies establishing alternative ways for such students to make up work or regain credit lost because of absences.

Under §25.092, a district may establish ways to make up work or regain credit that are workable in consideration of the circumstances.  The section does not require that students spend a certain amount of time in a "Saturday school" or other educational

---

[6] This point is outlined further in an Administrator Addressed letter dated November 13, 2001.  The letter can be found at http://www.tea.state.tx.us/taa/legal011113.html.

[7] Additional statutes regarding delivery of a child to school by a law enforcement officer or a person authorized to take a child into custody include §§52.01(e), 52.02(a)(7), and 52.026(a), Texas Family Code.

[8] Op. Tex. Att'y Gen. No. DM-200 (1993).

setting equal to time missed during regular school hours. The district should be prepared with other options that give the student a reasonable opportunity to make up work or regain credit even under challenging circumstances, including excessive absences that occur late in the school year.  Additionally, this law is not intended to penalize students for not attending a class before the student was enrolled in the class.  Students, including migrant students or transfer students, who could not have attended a class before enrollment should not have the days of class that occurred before their enrollment counted against them for purposes of "the 90 percent rule".  As with any other student, to receive credit a student who enrolls after instruction for the year or semester has begun is required to demonstrate academic achievement and proficiency of the subject matter as required under §28.021 and 19 T.A.C. §74.26.

If a district offers an educational program outside of regular school hours as a means for students to make up work or regain credit, under §11.158(a)(15) and (h), a district may charge a fee for such an educational program under restricted circumstances.  The school district may assess the fee only if the student returns a form signed by the student's parent or other legal guardian stating that the fee would not create a financial hardship or discourage the student from attending the program.  The fee may not exceed $50.  Also, under §25.092(b) and (f), the board must provide at least one alternative for making up work or regaining credit that does not require a student to pay a fee under §11.158(a)(15).  The availability of that alternative must be substantially the same as the availability of an educational program for which a fee is charged.

**§§25.093, 25.094, and 25.0951 (Compulsory Attendance Enforcement)**
There are three options for compulsory attendance enforcement, which are outlined in §25.0951.  Section 25.093 is an offense for contributing to nonattendance, which is committed by a parent.[9]  Section 25.094 is an offense for failing to attend school, which is committed by a student.  A district may file an action to enforce compulsory attendance in any justice precinct in the county in which the school is located or in which the person filed against resides.  Alternatively, an action may be filed in municipal court or, in a county with a population of 2 million or more, in a constitutional county court. Section 25.093 provides for the deposit of one-half of a fine collected under that section to the credit of the open-enrollment charter, juvenile justice alternative education program, or school district that the child attends.  The third option for enforcement is to proceed against the child in juvenile court as a "child in need of supervision" under §51.03 of the Texas Family Code.  It is an affirmative defense under both the Texas Education Code and the Texas Family Code that an absence has been excused by a school official or the court.  For the student, there is also an affirmative defense for absences that are involuntary.  The affirmative defenses apply only if there are an insufficient number of absences remaining to constitute an offense.

Under §25.0951(a), a complaint or referral for 10 or more absences within six months must be made within 10 school days from the date of the student's 10th absence.  A court shall dismiss a complaint or referral that is not made in compliance with §25.0951.

---

[9] For purposes of §25.093, "parent" is defined to include "a person standing in parental relation."

## II. Admission

Section 25.001 applies to an **open-enrollment charter school** for the purposes of determining whether the student meets the residency requirements for the open-enrollment charter school's designated geographic boundary.  Also, the eligibility standards for prekindergarten programs, summarized in this Part, apply to an **open-enrollment charter school**.  For more information regarding **open-enrollment charter schoo**l admissions, please see the final section of this Part.

Section 25.001 sets out the circumstances under which a person, who is at least five years of age and less than 21 on September 1 of a school year, is entitled to admission in a school district.  A school also may choose to admit under this section a person who is at least 21 years of age and under 26 years of age on September 1 of a school year in order for the person to complete the requirements for a high school diploma. There is additional information regarding students age 21 and over near the end of this Part (see page 12).

A student's entitlement to admission is established if <u>any one</u> (or more) of the bases for admission in §25.001 applies to the student.  Most, <u>but not all</u>, of the bases require that the student live in the district.  It is important to consider that most students are entitled to enrollment in <u>at least one district</u> regardless of with whom they live.  The exceptions under §25.001(d) apply <u>only if</u> a student is a minor living in a different district than the student's parent, guardian, or other person with lawful control under a court order (for discussion of these exceptions, see §25.001(b)(4) below).

**(Text of Paragraph Revised November, 2008)** All nine subdivisions of §25.001(b), as well as §25.001(g) and (h), are discussed below.  These provisions create entitlements to enroll.  A district may choose to accept, as transfers, students who are not entitled to enroll in the district under §25.001.  Under §25.036, a transfer is an annual agreement. The district may charge tuition under a transfer agreement to the extent permitted under §25.038.[10]  The acceptance of transfer students must be in compliance with Civil Action No. 5281 and must be reported to the Texas Education Agency (TEA) Division of Program Monitoring and Interventions.  Additional information regarding reporting transfers is available on the TEA website at <u>http://www.tea.state.tx.us/pmi/ca5281/</u>.[11]

---

[10]Other than tuition, the Education Code does not impose any conditions on the annual agreement and does not grant general authority to revoke the agreement during its term nor is such authority inferred.  Therefore, in the opinion of the TEA Office of Legal Services, the failure to pay lawfully required tuition is the only basis for a district to terminate a tuition agreement during the school year to which the agreement applies.  With regard to other issues that may arise during the applicable school year, such as unsatisfactory grades or disciplinary infractions, transfer students are subject to the same consequences as the district's other students.

[11] On June 25, 2008, the Fifth Circuit issued a judgment in favor of two intervening school districts holding that the districts are not subject to the student transfer provisions in the Civil Action No. 5281 Modified Order or to the TEA's regulations promulgated to enforce those provisions because the districts were desegregated before the initiation of the original litigation, were not parties to the original litigation, and had not been found to engage in discriminatory acts since their desegregation.  <u>Samnorwood Independent School District v. Texas Education Agency</u>, No. 06-41347 (5th. Cir. 6/24/2008).  The TEA is currently c onsulting with the Office of Attorney General regarding the impact of the judgment on the agency's implementation of the Civil Action No. 5281 Modified Order.  Until further notice from the agency, districts

If a district legally admits a school age Texas resident, the district may include the student in its average daily attendance, unless the student is a high school graduate. An individual is eligible for the Foundation School Program if the individual is under the age of 21 on September 1 of the applicable school year and is not a high school graduate or if the individual is at least 21 years of age and under 26 years of age on September 1 of the school year and has been admitted to complete the requirements for a high school diploma.

An individual who is eligible for special education services and is not a high school graduate is eligible for enrollment and funding through the end of the school year or until graduation, whichever comes first, if the individual is under the age of 22 on September 1 of the applicable school year. A student who is eligible for special education services, and who has graduated from high school by successfully completing his or her IEP and the other requirements of 19 T.A.C. §89.1070(c), but meets the age eligibility requirements, may receive additional educational services (and be eligible for enrollment and funding) if the student's ARD committee determines that services need to be resumed. A student with a disability who has graduated in accordance with 19 T.A.C. §89.1070(b) or (d) is not eligible for special education services under state or federal law or for the benefits of the Foundation School Program.[12]

### §25.001(b)(1) (Parent and Student in District)
This provision entitles a student to admission if the student and either parent reside in the district. Although this subdivision applies only if the student and parent reside in the same district, it does not require that they live at the same address. (For a student living in a different district, separate and apart from a parent, guardian, or other person having lawful control of the student under a court order, see §25.001(b)(4).)

### §25.001(b)(2) (Parent Only in District)
This provision entitles a student who resides in Texas but does not reside in the district to admission if 1) a parent of the child resides in the district and 2) the parent is a joint managing conservator, sole managing conservator, or possessory conservator of the child. This provision does not apply to all parents living apart from their children. It applies only if the parent is a joint managing conservator, sole managing conservator, or possessory conservator. Those designations are established by the order of a court in a suit affecting the parent-child relationship under Title 5 of the Texas Family Code. If the parent's relationship with the child has not been the subject of such a suit, this provision of §25.001(b) does not apply. The designation by a court of a parent as a joint managing conservator, sole managing conservator, or possessory conservator can occur under a number of different circumstances, but occurs most commonly in relationship to a divorce proceeding. A temporary order pending final disposition of a divorce action would qualify a student for enrollment under this provision.

### §25.001(b)(3) (Student and Guardian or Person with Lawful Control in District)
This provision entitles a student to admission if the student and the student's "guardian or other person having lawful control of the [student] under a court order reside within

---

should continue to report transfers to the agency and could be subject to sanction for the failure to do so or for accepting transfers that are impermissible under the Modified Order.
[12] 19 T.A.C. §89.1070(a).

the school district." (For a student living separate and apart from a parent, guardian, or other person having lawful control of the student, see §25.001(b)(4).)

To determine a student's entitlement under §25.001(b)(3), a district must determine if a court order exists that identifies a guardian or other person with lawful control residing in the district. A child is entitled to admission if a court orders the placement of the child with a person or in a facility in the district or if, pursuant to a court order, an entity such as the Department of Family and Protective Services or the Texas Youth Commission places a child in the district. If such a court order exists, the child is entitled to admission under this provision regardless of whether the student would be ineligible under the exclusions of §25.001(d), which are discussed below.

### §25.001(b)(4) (Student Only in District)
This provision, by reference to §25.001(d), allows a student under 18 years of age to "establish a residence for the purpose of attending the public schools separate and apart from the [student's] parent, guardian, or other person having lawful control of the [student] under a court order...."[13] However, the student's presence in the district may not be "for the primary purpose of participation in extracurricular activities."[14]

The district is not required to admit a student under §25.001(b)(4) and (d) if the student:

(1) has engaged in conduct or misbehavior within the preceding year that has resulted in:
(A) removal to a disciplinary alternative education program; or
(B) expulsion;

(2) has engaged in delinquent conduct or conduct in need of supervision and is on probation or other conditional release for that conduct; or

(3) has been convicted of a criminal offense and is on other conditional release.[15]

These exceptions apply <u>only if</u> a student is living in a different district than the student's parent, guardian, or other person with lawful control of the child under a court order. The exceptions cannot be used to prevent a student eligible for admission under a different provision of §25.001 from being enrolled, including homeless students. Please consult this entire Part to determine if another basis for eligibility applies.

### Proof of Residency
Under §25.001(d), "[t]he board of trustees shall determine whether an applicant for admission is a resident . . . for purposes of attending the public schools" under that subsection and "may adopt reasonable guidelines for making a determination as necessary to <u>protect the best interests of students</u> *(emphasis added)*." [16]

---

[13] Section 25.001(d).
[14] <u>Id</u>.
[15] <u>Id</u>.
[16] <u>See also</u>, §25.001(c) (board may require evidence of residency, may establish minimum proof of residency, and may make reasonable inquiries to verify eligibility for admission).

This ability to adopt guidelines should not be misinterpreted as the ability to redefine the legal concept of residency established by our state law. Residency is not defined by an address on a driver's license, a signature on a lease, or the address on a utility bill. These are indicators that may assist a district in verifying residency, but do not define it. The traditional, basic residence criteria are living in the district and having the present intention to remain there. See, Martinez v. Bynum, 461 U.S. 321, 330-333 (1983), Arredondo v. Brockette, 648 F.2d 425 (5th Cir. 1981). The board of trustees' authority is to provide guidelines that will enable a student to substantiate his or her residency and enable the board to determine if the student is a resident of the district.

**§25.001(b)(5) (Homeless Student)**
This provision entitles a person defined as "homeless" under 42 U.S.C. §11302 to admission "regardless of the residence of the person, of either parent of the person, or of the person's guardian or other person having lawful control of the person." Therefore, a person who is homeless is entitled to admission in any Texas school district. The definition in 42 U.S.C. §11302 is similar, but not identical, to the definition of "homeless children and youths" enacted in the No Child Left Behind (NCLB) legislation enacted by Congress in 2002. As the definition in the NCLB legislation applies specifically under federal law to the enrollment of homeless children and youth, the Texas Education Agency advises that school districts apply the NCLB definition, in addition to the definition in 42 U.S.C. §11302, when determining if a student is eligible for enrollment under §25.001(b)(5). Both definitions are set out below. Under federal law, homeless students may not be segregated from students who are not homeless, prohibiting assignments to a "shelter school" or other segregated setting. Limited exceptions are provided for a short period to deal with a health and safety emergency or to provide temporary, special, and supplementary services that are unique to the needs of homeless children.[17]

42 U.S.C. §11302 provides:

For purposes of this chapter, the term "homeless" or "homeless individual or homeless person" includes -

(1)  an individual who lacks a fixed, regular, and adequate nighttime residence; and

(2) an individual who has a primary nighttime residence that is -

(A) a supervised publicly or privately operated shelter designed to provide temporary living accommodations (including welfare hotels, congregate shelters, and transitional housing for the mentally ill);

(B) an institution that provides a temporary residence for individuals intended to be institutionalized; or

(C) a public or private place not designed for, or ordinarily used as, a regular sleeping accommodation for human beings.

---

[17] 42 U.S.C. §§11432(e)(3)(A) and 11433(a)(2)(B).

42 U.S.C. §11434a provides:

* * * * *

(2) The term "homeless children and youths"--

(A) means individuals who lack a fixed, regular, and adequate nighttime residence (within the meaning of section 11302(a)(1) of this title); and

(B) includes--

(i) children and youths who are sharing the housing of other persons due to loss of housing, economic hardship, or a similar reason; are living in motels, hotels, trailer parks, or camping grounds due to the lack of alternative adequate accommodations; are living in emergency or transitional shelters; are abandoned in hospitals; or are awaiting foster care placement;

(ii) children and youths who have a primary nighttime residence that is a public or private place not designed for or ordinarily used as a regular sleeping accommodation for human beings (within the meaning of section 11302(a)(2)(C) of this title);

(iii) children and youths who are living in cars, parks, public spaces, abandoned buildings, substandard housing, bus or train stations, or similar settings; and

(iv) migratory children (as such term is defined in section 6399 of Title 20) who qualify as homeless for the purposes of this part because the children are living in circumstances described in clauses (i) through (iii).

## § 25.001(b)(6) (Foreign Exchange Student)

This provision entitles a foreign exchange student to admission if the student is placed with a host family that resides in the school district by a nationally recognized foreign exchange program. The only exception is under the terms of a waiver granted by the commissioner on application of a district under §25.001(e).[18] For a waiver to be granted, the admission of a foreign exchange student must create one of three possible conditions. It must 1) create a financial or staffing hardship for the district, 2) diminish the district's ability to provide high quality educational services for the district's domestic students, or 3) require domestic students to compete with foreign exchange students for educational resources. The period of a waiver may not exceed three years. Please refer to http://www.tea.state.tx.us/waivers/waiverapps.html for additional information regarding foreign exchange waivers.

## F-1 Visa

Under federal law, a nonimmigrant may not be granted an F-1 visa in order to pursue a public elementary or publicly-funded adult education program. Federal law permits a nonimmigrant F-1 immigration status for public secondary school if the aggregate period of study at the school will not exceed twelve months and the student reimburses the

---

[18] Subsection (e) cross-references Subsection (b)(5), however, the current designation for the Subsection regarding foreign exchange students is (b)(6).

secondary school for the full unsubsidized per capita cost of the student's education.[19] Texas law does not authorize a school district to charge a student tuition under these circumstances. This conflict between the federal law and Texas law prevents a student from being able to meet the second condition for the issuance of an F-1 visa.

The federal reimbursement requirement <u>does not</u> apply to foreign exchange students who hold J-1 visas. It applies only to nonimmigrant students who seek F-1 student status by obtaining an I-20 certificate of eligibility from a local educational agency. The ineligibility for an F-1 visa does not affect the entitlement to admission of a student actually residing in the district. Please remember that, under the United States Supreme Court decision in <u>Plyler v. Doe</u>, 102 S.Ct. 2382 (1982), a student's immigration status is not a permissible basis for denying admission to a public school.

### §25.001(b)(7) (Student in Residential Facility)
This provision entitles a student residing at a residential facility located in the district to admission. A "residential facility" is defined in §5.001(8) as follows:

> "Residential facility" means:
>> (A) a facility operated by a state agency or political subdivision, including a child placement agency, that provides 24-hour custody or care of a person 22 years of age or younger, if the person resides in the facility for detention, treatment, foster care, or any noneducational purpose; and
>> (B) any person or entity that contracts with or is funded, licensed, certified, or regulated by a state agency or political subdivision to provide custody or care for a person under Paragraph (A).

Under §29.012, a residential facility is required to notify the school district in which the facility is located of the placement of a person three years of age or older. The facility is required to give the notice not later than the third day after the date of placement. A district should contact residential facilities in the district to coordinate implementation of this notice provision. In general, students placed in residential facilities are entitled to admission under other provisions of §25.001. However, §25.001(b)(7) provides a uniform admissions provision for children in such facilities. Additionally, the notice requirement should generate communication between the facilities and school districts that will promote efficiency in the provision of educational services to these children.

### §25.001(b)(8) (Adult Student)
This provision entitles a student residing in the district to admission if the student is over 18 years of age <u>or</u> if the student is less than 18 years of age and has had the disabilities of minority removed through marriage or as otherwise permitted by law.

### §25.001(b)(9) (Grandparent in District)
This provision entitles a student who resides in Texas but <u>does not reside</u> in the district to admission if a grandparent of the student resides in the district <u>and</u> the grandparent provides a substantial amount of after-school care for the student as determined by the local school board.

---

[19] 8 U.S.C. §1184(m).

**§25.001(f) and (g) (Foster Care)**
The law makes special provision for children in foster care. Subsection (f) provides for tuition-free admission in the district in which the foster parents reside. In addition, the subsection forbids the use of a durational residence requirement to prohibit a foster child from participating in any school-sponsored service. Subsection (g) specifically provides a high school student placed in temporary foster care with the option of continuing to attend, without payment of tuition, the school in which the student was enrolled at the time of placement, regardless of the residence of the foster parents.

**§29.153 (Prekindergarten)**
There are additional eligibility criteria for prekindergarten programs for three and four year olds. Under §29.153, a child of the appropriate age is eligible for a prekindergarten program if the child:

> (1) is unable to speak and comprehend the English language;
> (2) is educationally disadvantaged[20];
> (3) is a homeless child[21];
> (4) is the child of an active duty member of the armed forces, including state military forces or a reserve component of the armed forces, who is ordered to active duty;
> (5) is the child of a member of the armed forces, including state military forces or a reserve component of the armed forces, who was injured or killed while serving on active duty; or
> (6) is or ever has been in the conservatorship of the Department of Family and Protective Services following an adversary hearing under §262.201 of the Texas Family Code.[22]

**Appeal**
A decision of a school district to deny admission may be appealed to the commissioner of education under §7.057(a). In an appeal under that section, the commissioner will review the record developed at the district level to determine if the decision is supported by substantial evidence.[23]

**§25.001(b-1) and (b-2) (Students at least age 21 but under age 26)**
Section 25.001 grants districts discretionary authority to admit students who are at least 21 years of age and under 26 years of age on September 1 of the school year and are admitted to complete the requirements for a high school diploma.

These older students are not eligible for placement in a disciplinary alternative education program or a juvenile justice alternative education program. If a student admitted under this discretionary authority engages in conduct that would require such placement for a student under age 21, the district shall revoke admission of the student into the public schools of the district.

---

[20] "Educationally disadvantaged" means "eligible to participate in the national free or reduced price lunch program". See §5.001(4).
[21] As defined in 42 U.S.C. §11434a(2). See discussion of §25.001(b)(5) above.
[22] Additional information regarding prekindergarten eligibility is available on the TEA Early Childhood webpage at http://www.tea.state.tx.us/curriculum/early/index.html and in the Prekindergarten section of the Student Attendance Accounting Handbook at http://www.tea.state.tx.us/school.finance/handbook/index.html.
[23] Section 7.057(c).

If a student admitted under this discretionary authority has not attended school in the three preceding school years, the student may not be placed with a student who is 18 years of age or younger in a classroom setting, a cafeteria, or another district-sanctioned school activity.  However, the student may attend a school-sponsored event that is open to the public as a member of the public.

An older student admitted under this authority is entitled to Foundation School Program funding under §42.003.  However, a student with a disability is not eligible for either federal or state special education programs or funding unless the student was under the age of 22 on September 1 of the applicable school year.  A student with a disability who no longer qualifies for special education due to the student's age and who has not graduated must meet the regular state graduation requirements regardless of whether the student previously could have graduated under an individualized education program (IEP) with different requirements.  Generally, students with disabilities will qualify for §504,[24] but that law does not allow modification of graduation requirements or provide any additional funding.  A public school may not deny admission based on the presence of a disability, prior special education status, or §504 status.

**Address Confidentiality Program (NEW)**
The Address Confidentiality Progam (ACP) is mandated by Subchapter C, Chapter 56, Texas Code of Criminal Procedure.  The Attorney General adopted rules implementing the program that took effect on May 25, 2008.

The ACP is available to a person who is a victim of domestic violence, sexual assault, or stalking.  The goal of the program is keep the victim's location confidential through the use of a substitute address and mail-forwarding service.  A substitute legal address (P.O. Box) is established for the participant and is displayed on a participation card issued by the Office of Attorney General.  On presentment of a participant's card, the statute and the rules require that state and local agencies accept the substitute post office address in lieu of the person's actual address.  The substitute address has no relation to the participant's actual location within the state.

The Texas Education Agency is currently working with the Office of Attorney General to provide additional guidance regarding verifying the enrollment eligibility of a student who is a member of an ACP household, which will be provided when it is available. Information regarding the ACP is available on the website of the Office of Attorney General at http://www.oag.state.tx.us/victims/acp.shtml.

**Open-Enrollment Charter Schools**
As stated at the beginning of this Part, the provisions in §25.001 apply to open-enrollment charter schools for the purposes of determining whether the student meets the residency requirements for the open-enrollment charter school's designated geographic boundary.  However, charter schools have more discretion in some regards than school districts in setting admissions criteria and also have enrollment caps that limit the number of students who may be enrolled.  Charter schools are required to establish application deadlines for admission.[25]  Once the application period has ended, a charter school is required to accept all timely applications from students who meet the residency requirements for the open-enrollment charter school's designated geographic

---

[24] Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. §794.
[25] Section 12.117(a)(1).

boundary up to the enrollment capacity set out in the charter. A charter school may deny enrollment to students with a documented history of a criminal offense, a juvenile court adjudication, or discipline problems under Chapter 37, Subchapter A, <u>if its charter so provides</u>.[26]

If more students apply to a charter school than can be accommodated, a charter school should allocate spaces through a lottery process if the school receives federal Charter School Program (CSP) funds or if its charter provides for a lottery process.[27] If a charter school has first enrolled all eligible applicants from its designated geographic boundary but its enrollment has not reached the maximum number of students approved in its charter, it may admit students from outside its designated geographic boundary in accordance with the terms of its charter.[28]

## III. Enrollment Records

The statutes described in this Part apply to **open-enrollment charter schools** in addition to **school districts**.

### §25.002 (Requirements for Enrollment)

Section 25.002 requires that a child's prior school district or the person enrolling the child provide certain records. The required records are 1) a birth certificate or other proof of identity, 2) the child's records from the school most recently attended, and 3) immunization records. These are the only records statutorily required for enrollment. Student social security numbers are used for purposes of the Public Education Information Management System; however, a district or charter will assign the student a state-approved alternative student identification number if the student's social security number is not provided.

The prior school district should promptly provide records to the enrolling district that are needed for the appropriate placement and continued education of the student, including records relating to §504 or to special education services under the Individuals with Disabilities Education Improvement Act. Under §25.002, the prior district must provide the records not later than the 10th working day after the date a request for the records is received. This requirement also applies to the transfer of records to or from other public schools, including open-enrollment charter schools and JJAEPs.

School districts and open-enrollment charter schools are required to participate in the electronic transfer of student records through the Texas Records Exchange (TREx). For more information regarding TREx, visit http://www.tea.state.tx.us/trex/.

Records furnished by a parent or other person with legal control of a child under a court order must be furnished not later than the 30th day after the date the child is enrolled. The 30 day provision is duplicated in Subsection (g) in relation to a child taken into possession by the Department of Family and Protective Services under Chapter 262 of the Texas Family Code. A school district is specifically required to accept the child for

---

[26] Section 12.111(a)(6)(A).

[27] 20 U.S.C. §7221i(1)(H); U.S. Dept. of Educ.,*Charter Schools Program, Non-regulatory Guidance* @ http://www.ed.gov/policy/elsec/guid/cspguidance03.pdf.

[28] 19 T.A.C. §100.1207(f).

enrollment without the records required under §25.002, but the department is required to furnish such records not later than the 30th day after the date the child is enrolled.

A school district may not prohibit a student from attending school pending receipt of transcripts or records from the school district the student previously attended.  19. T.A.C. §74.26(a)(1).  Additionally, the failure of a prior district or the person enrolling the student to provide identification or school records under §25.002 does not constitute grounds for refusing to admit an eligible student.  However, if identifying records are not furnished within the 30-day period, §25.002(c) requires the district to notify law enforcement and request a determination of whether the student has been reported as missing.  This requirement applies regardless of the student's age.  If a student is enrolled under a name other than the name in the identifying documents, the school district is required to notify the missing children and missing person's information clearinghouse under §25.002(b).  The notice is confidential.  (Please note that a student must be enrolled under the student's legal surname; see subsequent summary of §25.0021.)

With respect to homeless students, a school district or open-enrollment charter school is required under federal law to enroll a homeless student immediately, even if the student is unable to produce records normally required for enrollment.[29]

**Absence of parent or guardian**
During the 1995-1996 and 1996-1997 school years, a school district was required under §25.002(f) to notify the Department of Protective and Regulatory Services (DPRS)[30] if a child was enrolled by a person other than the child's parent, guardian, or other person with legal control of the child under a court order.  The district was then to send parental communication regarding that child to DPRS or whomever DPRS directed.  During the 1997 legislative session, the section was amended by removing the requirement to notify DPRS.  The amendment did not remove the first sentence of §25.002(f), but that sentence is no longer effective because the referenced exception was removed.  The district must determine with whom communication regarding the child is appropriate as the DPRS is no longer a default.  **The absence of a parent, guardian, or other person with legal control of a child under a court order is not grounds for refusing admission to which a child is entitled under §25.001.**

Regardless of whether or not a child's parent, guardian, or other person with legal control of the child under a court order is enrolling a child, under §25.002(f) as amended in 2001, a district is required to record the name, address, and date of birth of the person enrolling a child.

**Immunization Records**
Subject to the exceptions in §38.001(c), a student is required to be fully immunized against certain diseases.  However, under §38.001 a student may be provisionally admitted if the student has begun the required immunizations and continues to receive the necessary immunizations as rapidly as medically feasible.  Except as provided by

---

[29] 42 U.S.C. §11432(g)(3)(C)(i).
[30] The department's name has changed to Department of Family and Protective Services.

§38.001(c), a student who is not fully immunized and has not begun the required immunizations may not attend school.[31]

Under §38.019, a school district that maintains an Internet website is required to post prominently on the website lists, in English and Spanish, of the immunizations required for admission to public school, any additional immunizations recommended by the Department of State Health Services (DSHS), and health clinics in the district that offer influenza vaccine.  The district must also post a link to the DSHS website information relating to claiming an exemption from immunization requirements.  This information is available at www.dshs.state.tx.us/immunize/school/default.shtm.

### §25.0021 (Use of Legal Surname)
This section requires that a public school identify a student by that student's legal surname as it appears on the student's birth certificate or other document suitable as proof of the student's identity or in a court order changing the student's name.

### Texas Code of Criminal Procedure School Records Requirements
There are additional requirements relating to school records in Chapter 63 of the Texas Code of Criminal Procedure, which relates to the missing children and missing person information clearinghouse in the Department of Public Safety.  The requirements apply to the records maintained by primary schools for children under 11 years of age.

### Enrollment Procedure
When a child under the age of 11 initially enrolls in a primary school, the school is required to take the following steps:

1. Request from the person enrolling the child the name of each previous school attended by the child.
2. Request from each school the school records for the child or, if the person enrolling the child provides the records, request verification from the school of the child's name, address, birth date, and grades and dates attended.
3. Notify the person enrolling the student that not later than the 30th day after enrollment, or the 90th day if the child was not born in the United States, the person must provide a certified copy of the child's birth certificate or other reliable proof of the child's identity and age with a signed statement explaining the inability to produce a copy of the birth certificate.
4. If the person enrolling the child does not provide valid prior school information or the required documentation, the school shall notify the appropriate law enforcement agency before the 31st day after the person fails to comply.  The failure to provide records does not constitute grounds for refusing to admit an eligible student.

### Records of Children Identified as Missing
When a law enforcement agency receives a report that a child under 11 years of age is missing, the law enforcement agency or the clearinghouse will notify each primary school in which the child has been enrolled or has attended.  When the school receives the notice, the school is required to take the following steps:
1. Flag the child's records that are maintained by the school.

---

[31] For further information regarding immunization requirements, immunization exemptions, and immunization documentation, please contact the Department of State Health Services.  Information about immunization and the department's Immunization Branch is available at www.dshs.state.tx.us/immunize/default.shtm.

2. On receipt of a request regarding the child made in person:

(a)  require the requesting party to complete a form stating the person's name, address, telephone number, and relationship to the child and the name, address, and birth date of the child;

(b) obtain a copy of the requesting party's driver's license or other photographic identification, if possible; and

.    (c) notify law enforcement or the clearinghouse that a request for a flagged record has been made, enclosing a physical description of the requesting party, the identity and address of the requesting party, and a copy of the requesting party's driver's license or other photographic identification.

3.  On receipt of a request regarding a child that is made in writing, notify law enforcement or the clearinghouse and include a copy of the request.

4.  Do not disclose to the requesting party that the request concerns a missing child.

5. After notifying law enforcement, mail a copy of the requested record to the requesting party on or after the 21st day after the date of the request.

**Removal of Flag**

On the return of a missing child whose records have been flagged, the law enforcement agency or the clearinghouse will notify each primary school the child has attended.  On receipt of that notification, the school shall remove the flag from the records.  A school that has reason to believe a missing child has been recovered may request confirmation of that from the appropriate law enforcement agency or the clearinghouse.  If a response is not received after the 45th day after the date of the request for confirmation, the school may remove the flag from the record and notify the law enforcement agency or the clearinghouse that the flag has been removed.

**Relationship to FERPA**

When a school receives a request for records, the school first needs to consider whether the information may be released at all.  The provisions in the Texas Code of Criminal Procedure do not replace the limitations on the disclosure of educational records that are found in the federal Family Educational Rights and Privacy Act (FERPA).[32] FERPA prohibits the disclosure of educational records to persons other than the student's parent, guardian, or an individual acting as a parent in the absence of a parent or guardian or, if age 18, the student, unless the disclosure comes within certain exceptions provided under FERPA.[33]  If the requestor is someone other than the student's parent or guardian, an individual acting as a parent in the absence of a parent or guardian, or the student, if age 18 or older, the district should still notify law enforcement of the request but may not release the records to the requestor unless consent to the release is obtained or a FERPA exception to the general requirement for consent applies. Whether or not the information is released, the school may not disclose to <u>any</u> requestor (including a parent, guardian, individual acting as a parent, or student) that the request concerns a missing child.[34]

**Relationship to Public Information Act**

Article 63.021(c) of the Texas Code of Criminal Procedure requires that a school wait 21 days before mailing copies of flagged records to a requestor.  However, the Public

---

[32] 20 U.S.C. 1232g and 34 C.F.R. Part 99.

[33] A FERPA exception permits disclosure to another school in which the student is enrolling, which is required by §25.002 of the Texas Education Code.

[34] Article 63.021(d), Texas Code of Criminal Procedure.

17

Information (or Open Records) Act provides that "[i]f an officer for public information cannot produce public information for inspection or duplication within 10 calendar days after the date the information is requested . . . , the officer shall certify that fact in writing to the requestor and set a date and hour within a reasonable time when the information will be available for inspection or duplication."[35] Due to this provision, a district should notify a requestor within 10 days that the records will be mailed on a certain date that is on or after the 21st day after the request is received.

## IV. TUITION

**Prekindergarten**:  Eligibility for free prekindergarten is determined under §29.153.  In addition to free prekindergarten, under §29.1531 a school district or an open-enrollment charter school may provide, on a tuition basis or using district funds, an additional half-day of prekindergarten for children eligible for classes under §29.153 or offer prekindergarten classes for children not eligible under §29.153.  Tuition may not be charged under §29.1531 for a student, including an eligible student served a full day, whose attendance is funded through a prekindergarten grant awarded by the commissioner under §29.155.

**Other:**  Other than tuition for certain prekindergarten students discussed above, an open-enrollment charter school may not charge tuition.[36]  A school district may charge tuition only if it is specifically authorized to do so by statute or under the constitution.  If your district is charging tuition for any purpose, please review the statutes to determine if there is authority for the tuition.  Statutes authorizing tuition under certain limited circumstances include §§25.003 (Certain Children From Other States), 25.038 (Transfer Students), 25.039 (Contract for Education Outside District)[37], 25.041 (Children of State School Employees), and 25.042 (Children of Texas Youth Commission Employees).

We hope this summary is helpful to you in preparing for the 2008-2009 school year.  If you have questions about the statutory provisions summarized in this letter, you are welcome to call the Office of Legal Services at (512) 463-9720.

Sincerely,



David A. Anderson
General Counsel


DA/shs/ds

---

[35] Section 552.221(d), Texas Government Code.
[36] Section 12.108.
[37] The maximum tuition under this section is affected by 19 T.A.C. §61.1012.



A MESSAGE FROM EANES ISD

**Exhibit**

**F**

August 7, 2024

**_Via Email PDF_**
The ███ Family
c/o Jack Stick
VerisLaw, PLLC
Suite E240-624
3801 N. Capital of Texas Highway
Austin, TX 78746

Re:     Level One Appeal of DAEP Placement – ███

Dear ███:

On May 31, 2024, the Hill Country Middle School administration ordered that your student ███ ███ be placed in a disciplinary alternative education placement ("DAEP") for 45 attended school days for engaging in an assault causing bodily injury. On June 10, 2024, you filed a Level One appeal of the placement decision. I was appointed as the Level One appeal officer, and on July 29, 2024, I held an appeal conference. Those present at the conference included you; your attorney, Jack Stick; HCMS principal, Kimberly Dewrell; attorney for the District, Amber King; and me. In accordance with Eanes ISD Student Code of Conduct and Board Policy FNG (Local), this correspondence constitutes my decision.

At the outset, I believe it is important to address my ability to hear this appeal fairly and impartially. During the conference, you expressed concern that I would not be able to make my own decision because the Superintendent had already made the decision. I was assigned to serve as the Level One appeal officer by my supervisor Molly May. The only information Ms. May shared with me was that an appeal was filed, and I was assigned as the Level One appeal officer. I have not had any conversations with Dr. Arnett regarding this appeal, and I have not received any directives or expectations from anyone regarding the outcome. As I stated at the beginning of the hearing, I take this process seriously. I listened to each side's information during the hearing with an open mind and continued with that same open mind throughout this appeal. I came to the following decision on my own – uninfluenced by any of my superiors – based on my review, investigation, and professional experience.

Records Reviewed

I reviewed the following records as a part of this appeal:

- ██ DAEP appeal form dated June 10, 2024[1]
- May 31, 2024 Notice of Removal Conference Letter
- May 31, 2024 Placement Order
- Cassie Winter's investigation notes
- J Starnes statement
- L Embrey statement
- Videos from campus administration
  - May 22, 2024 videos – angle 1 and 2
  - May 23, 2024 hallway videos – hall to bathroom; returning to history class; students exiting class down hallway
  - May 23, 2024 student cell phone recording of incident
- Email communications to / from Ms. Winter and ██
- Eanes ISD Student Code of Conduct for 2023-2024
- ██ attendance records for 2022-2023 and 2023-2024
- ██ report cards for 2022-2023 and 2023-2024
- ██ discipline reports for 2022-2023 and 2023-2024
- Records submitted by parents at the appeal conference identified by the parents as follows:
  - 5/31/2024 Conference
  - Investigation Report
  - Student / EISD Records
  - Psych Report
  - ██
  - Student Code
- Student cell phone recording of May 23, 2024 incident submitted by the parents after the conference
- Audio recording of May 31, 2024 submitted by the parents after the conference
- Letters sent to Dr. Arnett regarding ██
- August 2, 2024 letter from J Stick to A King[2]

In addition to reviewing these records, I spoke with Assistant Principal Cassie Winter and asked Ms. Dewrell some follow-up questions.

<u>Summary of Allegations / Concerns</u>

You dispute the administration's decision to order ██ to DAEP for the following reasons:
1. The school did not conduct an appropriate or fair investigation. The school failed to follow policy identified in the student handbook in investigating the facts of this matter and determining punishment.
2. The school failed to meet with ██ prior to imposing punishment and failed to provide him with appropriate due process.
3. ██ was defending himself against a bully and the fight was consensual.
4. The school did not consider mitigating factors on the disposition.

---

[1] Under the remedy section it states, "See attached pages"; however, I confirmed that no attachment was sent in by the ██ at that time. The form also states that a "comprehensive description of facts supporting these complaints" would follow by letter; however, I confirmed that this "comprehensive description of facts" was not sent at that time either.

[2] Although the letter is dated August 1, 2024, it was not sent to Ms. King until Friday, August 2, 2024.

5. The school-imposed punishment was too harsh.
6. The punishment the school imposed has a disparate and unfair impact.
7. The school failed to address the behaviors of the other student involved and if they had this incident would not have occurred.
8. The school excluded exculpatory statements from student witnesses.

<u>Factual Findings</u>

On May 23, 2024, shortly after dismissal, Coach Embrey noticed a large crowd of students near the small deck outside. When the group of students saw Coach Embrey, they scattered and a few yelled "fight." Coach Embrey saw Student A leaning against the wall and went to check on him. As he came up to him, he observed that Student A was bleeding and holding his face. From the video evidence, Student A is heard crying and blood is visibly dripping from his nose onto the ground. Two other students were present with Student A when Coach Embrey came to help, one of whom had videoed the events. Coach Embrey took all of the boys to the nurse's office.

It was at this time that the administration first became aware of any conflict between ███ and Student A. The student who had a video of the events provided a copy to the administration. While Student A was being evaluated by the nurse, Student A reported to Assistant Principal Cassie Winter that there had also been a previous altercation between him and ███ earlier in the week. After that, students had been asking, "Are you going to finish it" or "███ is going to finish it" but Student A did not ███ they were serious.

The administration used the student video to identify those involved and potential witnesses and then began to contact parents that evening. From the video, it was apparent that other students had also videoed the incident. As the administration contacted parents, they asked that those additional videos be deleted. According to Ms. Winters and Ms. Dewrell, their intention in asking parents to delete these additional videos was to try to stop the spread of the videos among students and on social media.

That evening, Ms. Winter called and spoke with Ms. Ivers, at which time she informed her that ███ was videoed in an incident that may have started as a fight but then appeared that ███ became the aggressor. Ms. Winter informed Ms. Ivers that ███ would be assigned to out-of-school suspension the following day (May 24) while they further investigated the matter.

Late that evening, the ███ sent Ms. Winter an email, in which they stated, "We spoke with ███ again and have more information for you." The email provides a ███ of events that allegedly occurred between Student A and ███ on both Wednesday, May 22 and Thursday, May 23. Ms. Winter largely used this statement of events as a starting point for her investigation.

On May 24, 2024, the administration spoke with two student witnesses – DM and LF. Both students were identified as witnesses using the video. DM reported that Student A thought he was going to be in a fight and may need some help, so he asked DM to help him. DM is heard in the video telling Student A he can't help him. LF reported that the talk of a fight between Student A and ███ started on Monday when Student A hit ███ and broke his glasses. LF was not present when this encounter happened. LF agreed to help ███ if the fight got bad. LF also shared that Student A wouldn't fight LF and he would only fight ███ These were the only two student witnesses they spoke to. In the course of the investigation, Ms. Winter pulled school surveillance video footage

from both Wednesday and Thursday, to determine what the video footage did or did not substantiate.[3]

On Wednesday, May 22, 2024, Student A walks out of the red door of the locker room. A group of boys, including █ are seen running from the big gym toward the red door. While █ reported that Student A intentionally shut the red door on them, it is difficult to tell from the video if that is what occurred.[4] Regardless, Student A proceeds through the group of boys and, as █ approaches him, █ shoves Student A causing Student A to stumble back and hit his head on a pole. Student A responds by pushing █ back and hitting █ in the face. The two boys continue to push each other, and after approximately 7 seconds, █ pushes Student A up against the door and out of view of the video camera. █ reported being punched by Student A around 6 times in the face. In my review of the video, I could not confirm that █ was hit 6 times based on what was in view of the camera. The fight breaks up after approximately 15 seconds. Although it was reported in the email that █ "was on the ground crying for a period of time while other boys gathered around to see what happened," the video shows █ and the other boys walking into the red door immediately after the fight.

█ reported that when Student A hit him, one of the lenses in his glasses popped out and that he was crying most of the morning. The parents suggested this was likely noticed by his teachers. █ also reported that during his second-period class, Student A threatened █ by saying, "Don't snitch on me or I will get suspended." To follow up on these claims, Assistant Principal La Bissoneire spoke with Ms. Starnes, █ second-period teacher, which was the class █ reported to immediately after the fight. Ms. Starnes shared with Ms. La Bissoneire that she did not observe anything out of the ordinary and did not observe █ glasses; that █ and Student A did not sit by each other in class; and that she happened to sit next to █ throughout the class. Ms. La Bissoneire asked Ms. Starnes to send a written statement to Ms. Winter. In her written statement, Ms. Starnes reported, "I did not notice anything out of the ordinary with █ █ in 2nd period." She recalled having a conversation with █ during which he did not seem upset. She also reported that she did not overhear any chatter or anything else of concern during class. Notably, Ms. Starnes did not include all of the details in her written statement that she had shared verbally with Ms. La Bissoneire.

█ reported that the following day, May 23, he left his eighth-period class (Texas History) to fill up his water bottle and then Student A left the class after █ to use the bathroom, which seemed intentional. According to █ as they crossed paths, Student A told █ that he wanted to fight him. The video shows Student A outside in the hallway with 2 other students, after which █ and another student leave history class. █ is not seen filling up a water bottle; nor was it the case that Student A followed █ out into the hall. The group of boys is seen running down the hallway together, █ following after Student A, and at approximately 3:44 pm all of the boys go into the bathroom. Student A exits the bathroom first, followed by █ and the others. Student A goes back into class, and █ continues down the hall with the other students to the Foreign language hallway before returning to history class approximately 5 minutes later.

---

[3] The school's hallway and outside surveillance video cameras do not record audio. The only video available that includes audio is the student-recorded cell phone video.
[4] Notably, █ reported Student A intentionally shut the door on them "so they could not go in and had to walk around the building." However, after the fight between █ and Martin, █ and the other boys are seen entering the red door – indicating it clearly was not locked.

According to ██ he was in a big group of boys that walked out of school after eighth period, and ██ had heard that Student A was going to fight other boys. ██ reported he had no intention of getting into a fight with Student A and it appeared to be a setup. ██ reported that Student A was taunting the other boys calling them "pussies" and then Student A said he did not want to fight the other boys and that he wanted to fight ██ At the time of the investigation, Ms. Winter only had the hallway video, which does not include audio. In viewing that video, Ms. Winter noted that the students' demeanor appeared smiling and normal. Student A is seen leaving the classroom first, and shortly thereafter, ██ follows behind him. As they continue, Student A leads the group and ██ is seen making his way right behind and at times next to Student A, as the crowd makes their way out of the building and into the courtyard.[5]

After the conference, the parents provided a student-recorded video that Ms. Winter did not have at the time of her investigation. This video includes audio and captures more of the events leading up to the altercation. Together, both student-recorded videos show the following events:

As the students make their way down the hall and into the courtyard, they appear to be talking about a fight. As they are walking out, one student is heard saying, "Oh Sh**, they're jumping him." This video also reveals Student A saying, "all y'all are pussies, let me fight ██ by myself" and makes a reference to his "bodyguards." As the group continues into the courtyard, Student A says "all y'all gonna join in" and other students can be heard responding, "no, one-on-one." ██ exits the doors to the courtyard and is seen removing his backpack and placing it on the ground. As the two students appear to "square up," a student is heard saying to Student A, "I can't jump in." ██ is heard saying "let's go," "come on," and "are you ready." Student A has his hands to his side, palms up, and is heard stating, "you're all going to join in," and "I'm not doing this." ██ tells Student A, "Go," and pushes him backward.   Student A backs up this entire time until ██ pushes their hands apart and slaps Student A on the side of his face/head. ██ is seen pushing Student A, who turns around to run away. ██ punches Student A once in the back during this time. Student A is near the railing, where ██ grabs him and punches him two more times. Student A has his back to ██ and is seen swinging his fist, hitting ██ in the face. Student A is cornered. ██ hits Student A in the head approximately 8 times. Student A breaks free from being cornered by throwing a punch hitting ██ in the face and runs down the ramp to get away. ██ catches up to him and hits Student A in the back of his head approximately 5 times before Student A is pushed to the ground. Student A's backpack falls off due to these actions, and Student A is seen crouching on the ground steps. Student A covers his head with his hands as ██ hits him an additional 5-8 times in the head before walking away. Student A is seen to be visibly crying, bleeding from his face, holding his knees, leaning over, and pinching his nose to stop the bleeding. Blood marks are seen on the pavement.

The parents reported that on the evening of May 23, 2024, ██ received a Snapchat message from Student A states, "Yo, Nobody else just me and you. Run it again." The parents sent a copy of the message. The parents also reported that Student A's older brother who attends Westlake High School was overheard stating he plans to find ██ and beat him up. The administration shared this information with the other student's parents.

---

[5] The parents dispute Ms. Winter's statement about ██ being in front. Ms. Winter's notes state, "Student A and ██ are in front and walk to the courtyard." I do not ██ this is a mischaracterization by Ms. Winter. ██ is clearly seen up toward the front with Student A as the larger group of students are walking toward the doors to the courtyard.

On May 28, 2024, Ms. Winter emailed informing the ▓▓ that the investigation would likely be completed by the end of the week. On May 29, 2024, Ms. Winter emailed the ▓▓ to schedule a meeting on Friday, May 31, 2024, at 9:00 am.

Ms. Winter and Ms. Dewrell met with the ▓▓ on May 31, 2024. [6] The meeting lasted approximately an hour, during which Ms. Winter reviewed what she had found during her investigation and reviewed the videos with the parents. The parents responded to the evidence/videos during the discussion, asked questions, and provided additional information. The parents shared there was a different video Ms. Winter did not have and stated they would send it to Ms. Winter. [7] At the end of the conference, Ms. Winter shared that she determined ▓▓ behavior constituted assault causing bodily injury, which was a mandatory DAEP offense. She explained that the placement could be up to 120 school days, but her recommendation was for 45 school days.

Later that afternoon, shortly before 4:00 pm, Ms. Winter emailed the ▓▓ a notice letter confirming the meeting and a final placement order. She also informed the ▓▓ of their right to appeal the decision.

Findings Regarding Allegations / Concerns

***The school did not conduct an appropriate or fair investigation. The school failed to follow policy identified in the student handbook in investigating the facts of this matter and determining punishment.***

I find that the administration conducted an appropriate and fair investigation and disagree with the claim that there was no investigation but rather a predetermined outcome. The ▓▓ provided Ms. Winter with a detailed outline of events that allegedly occurred over the course of the two days, which Ms. Winter largely used as a guide for her investigation. She received information from the ▓▓ obtained information from students and staff, and reviewed multiple videos.

After doing so, Ms. Winter reviewed the EISD Student Code of Conduct (SCC) and determined that ▓▓ had engaged in an assault causing bodily injury, as defined in the SCC. While parents may ▓▓ that more should have or could have been done, disciplinary investigations and decisions are not tantamount to a criminal investigation and prosecution. "Assault" under the SCC is defined as, "intentionally, knowingly, or recklessly causing bodily injury to another." There is sufficient evidence that ▓▓ behavior amounted to an assault. "Bodily injury" is defined as "physical pain, illness, or impairment of a physical condition." There is also sufficient evidence that ▓▓ behavior resulted in physical pain to Student A – Student is seen crying, holding his nose, and bleeding. Accordingly, I find Ms. Winter has sufficient evidence based on her investigation to conclude that ▓▓ behavior amounted to assault with bodily injury. Also, contrary to what has been asserted, the administration never met with the other student's lawyer; thus, any claim that such a meeting intimidated or scared Ms. Winter into making her decision is not accurate.

As noted in the SCC, a mandatory DAEP placement "may result in placement for up to 120 school days." Taking into consideration mitigating factors, Ms. Winter determined, as is within her

---

[6] Unbeknownst to the administration, the ▓▓ recorded this conversation. During the hearing, the ▓▓ presented a transcript of the meeting. After the conference, they sent a copy of the full recording.

[7] This video was not shared until after the appeal conference.

discretion, that 45 school days was more appropriate. And, as noted in the placement order, the length of time could be reduced with consistent compliance with the DAEP rules and community service.

***The school failed to meet with █ prior to imposing punishment and failed to provide him with appropriate due process.***

Although Ms. Winter did not speak directly with █ I find it was reasonable to rely on the communications from the parents as █ statement or side of the story, especially given the events occurred the second-to-last day of school. The parent's email to Ms. Winter on the evening of May 23 states, "We spoke with █ again and have more information for you." The email provides an account of the events that could only have come from █ Importantly, and contrary to what has been asserted, the other student and his parents were not provided a substantially different opportunity to share information. Between May 23 and May 31, Ms. Winter emailed back and forth with the █ regarding the incident, █ account of events, updates on the investigation, and next steps. Ms. Winter met with the █ on May 31st for approximately an hour, during which time Ms. Winter reviewed what she had found during her investigation, including reviewing the videos together. The parents responded to the evidence/videos during the discussion and asked questions. I do note that Ms. Winter did not explicitly invite █ to this meeting when she emailed the parents. When asked about this, Ms. Winter explained that she and the parents had been going back and forth regarding █ side of the story for several days.

**█ *was defending himself against a bully and the fight was consensual.***

I do not agree that █ was merely defending himself during the events of May 23, 2024. Although the videos, including the one recently provided by the parents, show that a fight of some sort was contemplated, the videos also show █ walking outside to the courtyard voluntarily, placing his backpack on the ground, and squaring up to Student A. █ is heard saying "let's go," "come on," and "are you ready." Student A has his backpack on, hands to his side, palms up, and is heard stating, "you're all going to join in," and "I'm not doing this." █ tells Student A, "Go," and pushes him backward. █ is the first to engage physically and then continues. At one point, Student A attempts to get away and █ continues to pursue him, catches him again, and hits him repeatedly while Student A is on the ground attempting to cover his head and face with his arms. As discussed more fully below, this evidence does not demonstrate █ was acting in self-defense as that term is defined in the Eanes ISD SCC.

***The school did not consider mitigating factors on the disposition.***

In speaking with Ms. Winter, she shared that she did consider mitigating factors in coming to her recommendation. Moreover, in making my decision on appeal, I have taken into consideration the mitigating factors. When deciding to order any mandatory or discretionary disciplinary consequence, including but not limited to, out-of-school suspension, DAEP placement, expulsion, or placement in JJAEP of a student, the District shall consider: (1) Self-defense (as defined in the SCC); (2) The student's intent (see definitions) or lack of intent at the time of the conduct; (3) The student's disciplinary history; (4) A disability that substantially impairs the student's capacity to appreciate the wrongfulness of the student's conduct to the extent required by state and federal

law; (5) A student's status in the conservatorship of the Department of Family and Protective Services (foster care); or (6) A student's status as homeless.[8]

In reviewing these factors, the only one that weighs in ▮ favor is his discipline history. ▮ did not have any discipline history prior to the last week of school; although notably, ▮ did engage in a fight with Student A on the 22nd, and a discipline referral was entered for that fight.

The factors of intent and self-defense do not weigh in ▮ favor. The evidence demonstrates ▮ intended to engage in the behavior. Additionally, the SCC states the following regarding self-defense, "To claim self-defense, the student must (1) be without fault in provoking the encounter and not act as the aggressor, and (2) use the minimum force required to remove himself or herself from immediate danger of harm. Actions that escalate or continue the encounter will not be considered self-defense. Interactions prior to the encounter will also be considered." In applying this definition, the evidence shows that ▮ was not acting in self-defense. ▮ was not without fault in provoking the encounter with Student A on the 23rd; he was the initial aggressor first making physical contact with Student A; and he did not use the minimum force required to remove himself. Rather, ▮ continued to pursue Student A and escalate the encounter, even after Student A attempted to get away. Although there was a previous interaction between ▮ and Student A prior to the encounter, I do not find that these actions negate ▮ choices/actions on the 23rd.

In considering the duration of the placement, other factors such as the degree of severity and risk; the effect of the misconduct; the frequency of the misconduct; the age and grade level of the student; the student's demeanor; and legal requirements can be considered. When taking these factors into account, I find the decision to order a placement of less than the maximum number of days was appropriate.

***The school-imposed punishment was too harsh and imposed a disparate and unfair impact.***

I find that the school-imposed punishment is consistent with the SCC and aligns with other circumstances in which students have engaged in mandatory DAEP offenses.

***The school failed to address the behaviors of the other student involved and if they had this incident would not have occurred.***

Confidentiality laws prevent me from addressing the specifics of the other student's past behavior or discipline history. While the parents have presented information from other students and parents containing allegations of Student A misbehaving toward others, I do not know the full circumstances surrounding those events; I do not know what has or has not been reported to the school; I do not know what has or has not been done to address those things; and I do not know whether Student A has any protected status that could impact the type of discipline that can be assessed. Moreover, I do not find that this negates ▮ behavior or choices.

***The school excluded exculpatory statements from student witnesses.***

During the appeal conference, an allegation was made that the school obtained written exculpatory

---

[8] When making a placement decision regarding an offense identified as a mandatory DAEP offense, these are the only factors the law requires – or allows – to be considered. *See* Tex. Educ. Code §§37.001(a)(4); 37.009(a).

statements from student witnesses but failed to include these statements in the investigation documents and did not provide them to the parents upon request. After the conference, the district's attorney, Ms. King, asked the parents' attorney, Mr. Stick, for additional information including the names of the students, copies of any written statements, the name of the person who allegedly received the statement, and the dates they were provided. On August 2, 2024, the parents' attorney sent a letter alleging that Ms. Winter took statements from 5 students (LF, HD, VD, IH, and DW). On August 4, 2024, Ms. King sent a follow-up email to Mr. Stick again requesting additional information related to this allegation to ensure a full understanding of the claim and conduct a thorough investigation. Ms. King sought clarification on whether the allegation was that Ms. Winter took oral or written statements; whether each statement was provided in person, via phone, or via email; the date each statement was allegedly given; and a copy of the statements, to the extent available to the parents. In response, Mr. Stick clarified that the names provided were students who were present for at least one of the events relevant to the investigation, several of whom  parents had specifically requested Ms. Winter to interview. Mr. Stick stated, "Either Cassie interviewed them, or she didn't."

Ms. Winter did speak with LF on May 24, 2024. Notes from her discussion with LF are included in her investigation notes. LF did not provide a written statement. In the ▮▮ email dated May 23, 2024, it was reported that HD and VD were present for the encounter on May 22nd at the gym/locker. It was also reported that DW was with ▮ during second period when Student A told ▮ not to snitch. I confirmed that the administration did not interview these students. The other student name provided was IH. The administration did speak to IH and his parents, but the conversations were specific to IH's actions. IH did not share anything about ▮ or Student A.

According to Ms. Winter, she investigated what ▮ alleged happened by viewing videos and obtaining information from the teacher in the class. The two students the administration spoke to were seen in the video talking to ▮ and Student A shortly before the altercation. I do not find that there was any intent on the part of Ms. Winter to hide exculpatory evidence. Rather, Ms. Winter determined her investigation was sufficient to make a decision, and I agree that the evidence is sufficient to determine ▮ engaged in the behavior.

<u>Conclusion and Response to Requested Remedies</u>

Based on my review of the documentation and video evidence, the additional information presented by the parties at the appeal conference and thereafter, as well as my own investigation, I conclude that ▮ did engage in the behavior of assault causing bodily injury according to the Eanes ISD Student Code of Conduct. This offense constitutes a mandatory DAEP offense, and I find Ms. Winter's decision to order ▮ to DAEP for 45 school days was appropriate.

I make the following decision regarding your requested remedy:

1. Reverse the DAEP placement decision.

**Denied**. For all the reasons discussed at length above, I find placement in the DAEP for 45 school days was an appropriate decision.

In conclusion, I thank you for bringing your concerns to Eanes ISD's attention. If you disagree with my decision, you must file a written notice of appeal with the appropriate administrator within the time limits set in FNG (Local). The necessary forms are available on the Eanes ISD website.

Sincerely,


Heather Meek
Director of Curriculum and Instruction
Eanes ISD



**EANES ISD**

A MESSAGE FROM EANES ISD

# Curriculum, Instruction &

**Document Properties**                                                                    ✕

| Description | Security | Fonts | Initial View | Custom | Advanced |

**Description**

File:   Level One Response- with footnotes

Title:

Author:   Amber King

Subject:

Keywords:

Created:   8/7/2024 12:27:00 PM

Modified:   8/7/2024 12:27:06 PM          [Additional Metadata...]

Application:   Acrobat PDFMaker 24 for Word

**Advanced**

August 7, 2024

*Via Email PDF*
The ▮▮▮ Family
c/o Jack Stick
VerisLaw, PLLC
Suite E240-624
3801 N. Capital ▮
Austin, TX 7874

     Re:    L▮

Dear ▮▮▮

On May 31, 2024, the Hill Country Middle School administration ordered that your student ▮▮▮ be placed in a disciplinary alternative education placement ("DAEP") for 45 attended school days for engaging in an assault causing bodily injury. On June 10, 2024, you filed a Level One appeal of the placement decision. I was appointed as the Level One appeal officer, and on July 29, 2024, I held an appeal conference. Those present at the conference included you; your attorney, Jack Stick; HCMS principal, Kimberly Dewrell; attorney for the District, Amber King; and me. In accordance with Eanes ISD Student Code of Conduct and Board Policy FNG (Local), this correspondence constitutes my decision.